Kramer Levin

Daniel B. Goldman
Partner
T 212-715-9162
F 212-715-8162
DGoldman@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

April 4, 2018

VIA ECF and Hand Delivery

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *EIG Energy Fund XIV, L.P., et al. v. Keppel Offshore & Marine LTD.*, Case No. 18-cv-01047 (PGG)

Dear Judge Gardephe:

On behalf of the plaintiffs EIG Energy Fund XIV, L.P., *et al*. (the "Funds"), we submit this letter in opposition to the defendant Keppel Offshore & Marine LTD.'s ("Keppel") letter of March 30, 2018, requesting a pre-motion conference in connection with its anticipated motion to dismiss the complaint ("Keppel Ltr."). The proposed motion is futile for the reasons set forth herein.

**I. Background**

The Funds bring this action to obtain redress for the loss of their entire investment of $221 million in Sete Brasil Participações, S.A. ("Sete"). The Funds allege that Keppel was a member of a criminal organization that conspired to and did carry out a long-running bribery and kickback scheme through the commission of multiple predicate acts in violation of § 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). As Keppel knew, a critical component of that scheme was to raise money fraudulently from investors, including the Funds, by not disclosing that Sete would serve as a conduit to make millions of dollars of illegal bribes and kickbacks. When Brazilian prosecutors discovered this scheme, Sete collapsed into bankruptcy, and the Funds' investment in Sete evaporated.

As a direct result of its participation in the bribery and kickback scheme as alleged in the complaint, on December 22, 2017, Keppel reached a deferred prosecution agreement (the "DPA") with the U.S. Department of Justice in which it admitted that it "did knowingly and willfully conspire" to violate the Foreign Corrupt Practices Act (the "FCPA"), and agreed to pay a $422 million criminal penalty. Keppel's admission that it committed violations of the FCPA constitute admissions that it conspired to and did commit the RICO predicate acts of Travel Act violations and money laundering. Yet, Keppel persists in its attempt to move to dismiss the complaint. Each of its stated grounds for the proposed motion is baseless.

## II. Keppel's Defenses Lack Merit

### A. Keppel's Agreement to Join the RICO Conspiracy

Keppel contends that the complaint fails to plead an agreement. It first argues that the complaint does not allege "a meeting, conversation, event or document showing an agreement among the conspirators," Keppel Ltr. 2, but such allegations are not required. In the civil context, a plaintiff need only allege that the defendant "knew about and agreed to facilitate the scheme." *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003). Facts that "suggest" the entities "operated in a way that would create a pattern of racketeering activity," "coordination" among entities, and the commission of multiple predicate acts by the entities are sufficient to state an agreement. *Kriss v. Bayrock Group LLC*, No. 10 Civ. 3959, 2016 WL 7046816, at *18 (S.D.N.Y. Dec. 2, 2016). Moreover, "a defendant's agreement to join a conspiracy can be inferred from circumstantial evidence of the defendant's . . . knowledge of wrongdoing." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 154 (S.D.N.Y. 2014). The Funds have pled that and much more in their complaint. Compl. ¶¶ 43-86, 93-95, 101-08, 115-17.

Keppel also argues that the complaint does not allege "when Keppel made the agreement to join the conspiracy to defraud Sete's investors." Keppel Ltr. 2. This point is misleading because it assumes that the sole objective of the RICO conspiracy was to defraud investors. As the complaint explains, the overall objective of the conspiracy was to carry out the bribery and kickback scheme through Sete, and a necessary *part* of that scheme was the solicitation of investment funds through fraudulent means. Compl. ¶¶ 5, 68, 114. A plaintiff need not allege that a defendant "agree[d] to commit or facilitate each and every part of the substantive offense" to state a RICO conspiracy claim. *See Salinas v. U.S.*, 522 U.S. 52, 63 (1997). "[A] defendant may agree to join a RICO conspiracy . . . without 'full knowledge of the details of the conspiracy,'" so long as the defendant knows of and agrees to the "general criminal objective" of the scheme. *U.S. v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011) (citation omitted). Not only does the complaint allege Keppel's agreement to the "general criminal objective" of the bribery and kickback scheme, but the complaint further alleges that Keppel participated in the fraud against the Funds. For example, the Funds allege that Keppel knew the scheme would continue and expand through Sete and knew in 2011 that Sete required outside funding to exist. Compl. ¶¶ 5, 43, 46, 49, 50, 68, 73. The Funds further allege that by August 2011, Keppel knew that the Funds were potential investors, met with a representative of the Funds, and committed wire fraud in furtherance of the plan to defraud the Funds. Compl. ¶¶ 6, 68-77. *See Kriss*, 2016 WL 7046816, at *18 (extensive participation in the scheme supports an inference that the defendant adopted the goal of furthering or facilitating the criminal endeavor). These allegations sufficiently state an agreement under § 1962(d).[1]

---

[1] Keppel argues that the Funds failed to plead an agreement against Keppel in a separate action, but fails to note that the complaint there, unlike here, contained no facts concerning either Keppel's knowledge of Sete's fundraising efforts and the identity of the potential investors, or Keppel's own participation in these fundraising efforts. *See EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 90-91 (D.D.C. 2017).

**B. The Funds have Standing to Assert a RICO Conspiracy Claim**

**Proximate Causation.** Keppel argues that the Funds lack standing because their injury was not caused by Keppel's predicate acts, but by acts committed by other members of the conspiracy. Keppel Ltr. 4. This argument fails as it ignores the basic principle that "conspirators are liable for the acts of their co-conspirators." *Salinas*, 522 U.S. at 64; *see Beck v. Prupis*, 529 U.S. 494, 505-07 (2000) (noting that in a RICO conspiracy case, the injury occurs "by reason of a conspiracy"). The complaint alleges that Petrobras and Sete fraudulently induced the Funds to invest in Sete by committing multiple acts of wire fraud, which directly caused injury to the Funds. Compl. ¶¶ 52-65, 74, 118-20. Keppel is equally liable for the consequences of these acts as a fellow conspirator. *See Salinas*, 522 U.S. at 64.

Moreover, Keppel's own predicate acts proximately caused the Funds' injury as well. First, Keppel's wire fraud, which it committed by exchanging emails with the Funds' investment advisor, "contribute[d] directly to the deception of the plaintiffs" and was "at least incidental" to the scheme to fraudulently induce the Funds' investment in Sete. *Ctr. Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F. Supp. 213, 228 (S.D.N.Y. 1992). Second, Keppel's money laundering also directly harmed the Funds because it concealed the bribery and kickback scheme, which induced the Funds to make continued investments into Sete. Compl. ¶¶ 74, 84-86, 118-20. Had the Funds learned of the illicit scheme, it would have ceased its rolling Sete investments. *See City of N.Y. v. Venkataram*, 396 F. App'x 722, 724–25 (2d Cir. 2010) (Summary Order) (finding proximate causation where the defendant designed money laundering to conceal fraudulent activities and, absent these activities, the City would have grown suspicious of the scheme). Finally, the activities that took place after the public revelation of the conspiracy are irrelevant because the injury occurred beforehand, when the Funds parted with their money. *See EIG Energy Fund XIV, L.P.*, 246 F. Supp. 3d at 68, 72.

**Ripeness.** Keppel argues that the Funds' claim is not ripe because a separate lawsuit based on the same damages is proceeding in D.C. Keppel Ltr. 3. The Funds' RICO claim is ripe because they have alleged a "clear and definite" injury and the *validity* or *fact* of that injury is not contingent on the outcome of a separate lawsuit. *City of N.Y. v. Fedex Ground Package Sys., Inc.*, 175 F. Supp. 3d 351, 369-70 (S.D.N.Y. 2016). The cases cited by Keppel concern "damages [that] are still unknown" or injury that is "contingent upon uncertain litigation-related events." *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 520-21 (E.D.N.Y. 2011). For example, Keppel cites *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, where the plaintiff alleged defendants had colluded to fraudulently deny no-fault claims. 17 F. Supp. 3d 207, 214 (E.D.N.Y. 2014). The RICO claim could not be ripe because the plaintiff was still litigating the underlying no-fault claims, "meaning their validity was [still] being litigated in [a separate] court." *Id.* at 231. The court there distinguished that situation from one, like here, where the damages are based on funds "already paid" and thus, already lost, by plaintiff. *Id.* at 233-34. The mere "possibility that eventual recovery of damages under [a separate statute] may reduce or negate RICO damages" does not render a claim unripe where the amount of damages is fixed. *Fedex Ground Package Sys.*, 175 F. Supp. 3d at 369. Moreover, the existence of a separate lawsuit does not render Petrobras a necessary party

under Rule 19. *See Nelligan ex rel. Estate of Proia v. Cmty. Gen. Hosp. of Sullivan Cty.*, 240 F.R.D. 123, 125 (S.D.N.Y. 2007).

**C. The Underlying RICO Violation is Sufficiently Alleged**

Keppel contends that the complaint should also be dismissed because "it fails to plead the elements of a § 1962(c) violation," Keppel Ltr. 4, but a plaintiff need not plead every element of a substantive violation to succeed on a RICO conspiracy claim. *See City of N.Y. v. Bello*, 579 F. App'x 15, 17 (2d Cir. 2014) (Summary Order) ("'[T]he requirements for RICO's conspiracy charges under § 1962(d) are less demanding' than those for substantive violations." (citation omitted)). For example, Keppel argues that the complaint fails to plead the "enterprise" requirement of a § 1962(c) claim, Keppel Ltr. 2 n.2, but the Second Circuit recognizes "that the establishment of an enterprise is not an element of the RICO conspiracy offense." *Applins*, 637 F.3d at 75.[2] Indeed, the need to plead every element of a substantive offense would obviate the RICO conspiracy statute, when it is in fact an independent cause of action. *See Beck*, 529 U.S. at 506-07 ("a plaintiff could, through a § 1962(c) suit for a violation of § 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962"); *Hemmerdinger Corp. v. Ruocco*, No. 12-cv-2650, 2016 WL 5115337, at *3 (E.D.N.Y. Sept. 20, 2016), *aff'd*, 711 F. App'x 659, 663 (2d Cir. Oct. 3, 2017) (Summary Order). Notwithstanding, the complaint sufficiently pleads predicate acts and a pattern of racketeering, as required under § 1962(c).

**Predicate Acts.** With respect to wire fraud, the complaint plainly alleges each instance of wire fraud with sufficient detail to satisfy the heightened pleading requirement. *See* Compl. ¶¶ 53-65. Keppel argues that there are no facts to support either Keppel's "intent" or that Keppel used or caused the use of wires to further the conspiracy. Keppel Ltr. 4. But, under conspiracy law, Keppel may be charged with the intent and use of wires by its fellow conspirators. *See Salinas*, 522 U.S. at 64. In any event, the complaint does in fact plead Keppel's intent through facts establishing its motive and opportunity to defraud the Sete investors or conscious behavior. Compl. ¶¶ 5-6, 43, 46, 68-74, 114-15. *See Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) (intent may be alleged either through motive for committing fraud and a clear opportunity to do so or conscious behavior). Likewise, the complaint alleges Keppel's use of wires in furtherance of the conspiracy and its knowledge that the use of wires would follow in the ordinary course of business. Compl. ¶¶ 5-6, 68-74, 115. *See Ctr. Cadillac, Inc.*, 808 F. Supp. at 228 (The use of wires need not be "an essential part of the fraudulent scheme as long as they are incidental to an essential part of the scheme," and need not themselves contain misrepresentations.); *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 88-89 (E.D.N.Y. 2011) (defendants "caused" fraudulent mailings to occur where they acted with knowledge that mailings would likely follow in the ordinary course of business). Nor does the Private Securities Litigation Reform Act bar the wire fraud allegations, as Keppel cannot establish that any of the conduct alleged is actionable as a securities fraud claim. *See,*

---

[2] Even if this were not the law of this Circuit, the complaint would survive because it alleges sufficient facts to support the enterprise element. *See* Compl. ¶¶ 3-7, 10-12, 46, 50, 52-86, 93-95, 112-14.

*e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) (Section 10(b) of the Exchange Act only applies to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities.").

Likewise, the complaint alleges sufficient facts to support the predicate act of money laundering. *See, e.g.*, Compl. ¶¶ 2, 84-86, 93-94, 96, 104-05. Keppel, as it admitted in the DPA, routed bribes through New York City banks with the intent to promote and conceal its unlawful activity. *See In re BC Funding LLC*, 519 B.R. 394, 424 (E.D.N.Y. 2014) (discussing elements of money laundering).

The Travel Act allegations in the complaint are also adequate, and are based on Keppel's admissions that it violated the FCPA. *See, e.g.*, Compl. ¶¶ 2, 78-85, 101-05. A violation of the Travel Act based on conduct violating the FCPA sufficiently states a RICO predicate act. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 595 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016) (defendant violated the Travel Act by furthering a violation of the FCPA).

**Pattern of Racketeering.** Keppel is incorrect that the complaint fails to meet the continuity and relatedness requirements. Keppel Ltr. 4-5. The Second Circuit typically requires a period of at least two years of activity to satisfy the continuity requirement. *See De Sole v. Knoedler Gallery LLC*, 974 F. Supp. 2d 274, 306 (S.D.N.Y. 2013). This requirement is met since the complaint alleges facts relating to the wire fraud, money laundering and travel act claims that span from 2010 to 2015 and would have continued until 2019 had the Brazilian prosecutors not discovered the scheme. *See* Compl. ¶¶ 53-65, 68-87, 114-15. Predicate acts are sufficiently related where they share, for example, the same or similar purposes, results, and participants, and are not isolated events. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994). Here, the predicate acts are all related to the bribery and kickback scheme.

### D. The Complaint Overcomes the Presumption Against Extraterritoriality

Keppel's arguments concerning the domestic application of predicate acts and the domestic injury requirement also fail. Keppel Ltr. 5. First, the Funds' allegations support domestic applications of the wire fraud and Travel Act claims because "conduct relevant to the statute's focus occurred in the United States." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016). The complaint alleges substantial U.S. activities that were integral to these predicate acts, including the repeated use of wires to transmit fraudulent materials to the U.S., the repeated use of wires originating from and entering the U.S. that furthered the fraud scheme or occurred as a result of the scheme, the fundraising activities occurring in the U.S. and targeting of U.S. investors, the involvement of Keppel's U.S. subsidiary and employee in carrying out the scheme, and the repeated use of U.S. bank accounts to transmit bribes. Compl. ¶¶ 52-74, 84-86, 101-08. *See Elsevier, Inc. v. Grossman*, 199 F. Supp. 3d 768, 784 (S.D.N.Y. 2016). Second, the argument that the Funds' injuries were suffered in Luxembourg and not the U.S. was aptly rejected by the district court in D.C. on the ground that the injury occurred at the time the Funds were fraudulently induced to part with their money in the U.S. *See EIG Energy Fund XIV, L.P.*, 246 F. Supp. 3d at 68, 71-72.

The Honorable Paul G. Gardephe
April 4, 2018

Sincerely,

Daniel B. Goldman

DBG:nh

cc: All Counsel of Record (via ECF and email)

KRAMER LEVIN NAFTALIS & FRANKEL LLP 6