UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EIG Energy Fund XIV, L.P.,
EIG Energy Fund XIV-A, L.P.,
EIG Energy Fund XIV-B, L.P.,
EIG Energy Fund XIV (Cayman), L.P.,
EIG Energy Fund XV, L.P.,
EIG Energy Fund XV-A, L.P.,
EIG Energy Fund XV-B, L.P., and
EIG Energy Fund XV (Cayman), L.P.

18-cv-01047 (PGG)

Plaintiffs,

-against-

Keppel Offshore & Marine Ltd.,

Defendant.

MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT KEPPEL OFFSHORE & MARINE LTD.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Keppel Offshore &
Marine Ltd.*

July 20, 2018

# TABLE OF CONTENTS

Page

Preliminary Statement................................................................................1

Background .................................................................................................3

Argument ...................................................................................................9

I.      Plaintiffs Fail To State A Civil RICO Conspiracy Claim......................10

        A.      Plaintiffs fail to plead an agreement. ......................................10

        B.      Plaintiffs lack standing............................................................12

        C.      Plaintiffs fail to plead an underlying RICO violation..............14

                1.      Plaintiffs fail to plead a RICO enterprise......................14

                2.      Plaintiffs fail to plead racketeering activity. .................16

                3.      Plaintiffs fail to plead a pattern of racketeering activity...............18

        D.      Plaintiffs fail to overcome the presumption against
                extraterritoriality. ..................................................................19

II.     Plaintiffs Fail To State A Claim For Aiding and Abetting Fraud.........20

        A.      Plaintiffs fail to plead that Keppel had actual knowledge. .......20

        B.      Plaintiffs fail to plead that Keppel provided substantial assistance..........22

III.    Plaintiffs' Claims Are Barred By Res Judicata and Issue Preclusion...................23

Conclusion ................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abbatiello v. Monsanto Co.,
    522 F. Supp. 2d 524 (S.D.N.Y. 2007)..........................................................................20

Abbott Labs v. Adelphia Supply USA,
    No. 15-CV-5862, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ...............................10, 12

Anza v. Ideal Steel Supply Corp.,
    547 U.S. 451 (2006)..........................................................................................12, 13

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)............................................................................................9, 10

Batson v. RIM San Antonio Acquisition, LLC,
    No. 15-cv-07576, 2018 WL 1581675 (S.D.N.Y. Mar. 27, 2018)...............................21

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)............................................................................................9, 10

Berrios v. N.Y.C. Hous. Auth.,
    564 F.3d 130 (2d Cir. 2009)..............................................................................23, 24

Bigsby v. Barclays Capital Real Estate, Inc.,
    170 F. Supp. 3d 568 (S.D.N.Y. 2016)................................................................16, 17

Boyle v. United States,
    556 U.S. 938 (2009)..................................................................................................14

Bulovic v. Stop & Shop Supermarket Co.,
    698 F. App'x 21 (2d Cir. 2017) ................................................................................24

Cedar Swamp Holdings, Inc. v. Zaman,
    487 F. Supp. 2d 444 (S.D.N.Y. 2007)...............................................................15, 16

Chemtex, LLC v. St. Anthony Enterprises, Inc.,
    490 F. Supp. 2d 536 (S.D.N.Y. 2007).......................................................................22

D. Penguin Bros. Ltd. v. City Nat'l Bank,
    No. 13 Civ. 41, 2014 WL 982859 (S.D.N.Y. March 11, 2014)..................................14

DLJ Mortg. Capital, Inc. v. Kontogiannis,
    726 F. Supp. 2d 225 (E.D.N.Y. 2010) ......................................................................13

EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.,
    246 F. Supp. 3d 52 (D.D.C. 2017) ..................................................................... passim

Elsevier Inc. v. W.H.P.R., Inc.,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010)..................................................................15, 16

First Capital Asset Mgmt., Inc., v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004)........................................................................................14

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007)........................................................................22

Gucci Am., Inc. v. Alibaba Group Holding Ltd.,
    No. 15-cv-3784, 2016 WL 6110565 (S.D.N.Y Aug. 4, 2016)....................................15

Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Mkts., LLC,
    347 F. App'x 711 (2d Cir. 2009) ...............................................................................14

Hecht v. Commerce Clearing House, Inc.,
    897 F.2d 21 (2d Cir. 1990).........................................................................................11

Hemi Grp., LLC v. City of New York, N.Y.,
    559 U.S. 1 (2010).......................................................................................................12

In re Am. Express Co. S'holder Litig.,
    39 F.3d 395 (2d Cir. 1994).........................................................................................10

Krys v. Piggott,
    749 F.3d 117 (2d Cir. 2014)........................................................................................20

MLSMK Inv. Co. v. JP Morgan Chase & Co.,
    651 F.3d 268 (2d Cir. 2011)........................................................................................17

Moss v. BMO Harris Bank, N.A.,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) .......................................................................15

N.Y. Dist. Council of Carpenters Pension Fund v. Forde,
    939 F. Supp. 2d 268 (S.D.N.Y. 2013)........................................................................11

Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE,
    763 F.3d 198 (2d Cir. 2014)........................................................................................10

Petroleos Mexicanos v. SK Eng'g & Constr. Co.,
    572 F. App'x 60 (2d Cir. 2014) .................................................................................19

Poindexter v. Cash Money Records,
    No. 13 CIV. 1155, 2014 WL 818955 (S.D.N.Y. Mar. 3, 2014) .................................25

Reich v. Lopez,
    858 F.3d 55 (2d Cir. 2017)..........................................................................................18

Republic of Panama v. BCCI Holdings (Lux.) S.A.,
    119 F.3d 935 (11th Cir. 1997) ...................................................................................16

Rivas v. Fischer,
    687 F.3d 514 (2d Cir. 2012).........................................................................5

RJR Nabisco, Inc. v. European Cmty.,
    136 S. Ct. 2090 (2016).............................................................................19

RJR Nabisco, Inc. v. European Cmty.,
    764 F.3d 129 (2d Cir. 2014).....................................................................19

Schlaifer Nance & Co. v. Estate of Warhol,
    119 F.3d 91 (2d Cir. 1997).......................................................................19

Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.,
    17 F. Supp. 3d 207 (E.D.N.Y. 2014) .......................................................14

Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.,
    884 F.3d 489 (4th Cir. 2018) ...................................................................13

Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.,
    882 F.3d 52 (2d Cir. 2018).......................................................................23

Spool v. World Child Int'l Adoption Agency,
    520 F.3d 178 (2d Cir. 2008).....................................................................18

U.S. v. Pizzonia,
    577 F.3d 455 (2d. Cir. 2009)....................................................................10

United States v. Sasso,
    230 F. Supp. 2d 275 (E.D.N.Y. 2001) .....................................................12

**Statutes & Rules**

18 U.S.C. § 1962(c) ...............................................................................14

18 U.S.C. § 1962(d) ...............................................................................14

Federal Rule of Civil Procedure 9(b)...................................................1, 16, 20

Federal Rule of Civil Procedure 12(b)(6) .............................................1, 9, 23

Private Securities Litigation Reform Act,

    Pub. L. No. 104-67, 109 Stat. 737 .........................................................17

Defendant Keppel Offshore & Marine Ltd. ("Keppel") respectfully submits this memorandum in support of its motion to dismiss the First Amended Complaint ("FAC", ECF No. 17), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## Preliminary Statement

This is Plaintiffs' second attempt to assert liability against Keppel in connection with the alleged loss of their investment in Sete Brasil Participações, S.A. ("Sete"), an entirely separate and unrelated entity.  Plaintiffs previously brought a nearly identical claim against Keppel for conspiracy to defraud Sete investors in the United States District Court for the District of Columbia (the "D.C. Action").  That claim was dismissed as to Keppel for failure to state a conspiracy claim and for lack of personal jurisdiction.  EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A. ("EIG I"), 246 F. Supp. 3d 52, 91 (D.D.C. 2017).  In dismissing the conspiracy claim in the D.C. Action, the court found, among other things, that there were "no facts from which the court can infer that [Keppel] agreed to defraud Sete's investors".  Id.

Although Plaintiffs have recast their allegations as a claim for conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and a state law claim for aiding and abetting fraud, the allegations suffer from all the same deficiencies that were fatal to Plaintiffs' previous claim.

Sete is a Brazilian company that charters deep-water oil and gas drilling rigs ("drillships").  Keppel is a Singapore-based company that builds drillships and that entered into contracts to build six drillships for Sete.[1]  In December 2017, Keppel entered

---

[1] Keppel contracted with Sete to build six semi-submersible drilling units.  For purposes of this motion, however, Keppel adopts the "drillship" terminology used in the FAC.

into a Deferred Prosecution Agreement ("DPA") with the United States Department of Justice ("DOJ") in which it agreed to pay approximately $422 million to U.S., Brazilian and Singapore authorities to resolve bribery charges in connection with projects in Brazil tendered by the Brazilian state-controlled oil company Petróleo Brasileiro S.A. ("Petrobras") and Sete.

Plaintiffs are eight investment funds that purportedly invested over $221 million in Sete and subsequently lost the value of that investment after the bribery scheme—a scheme that involved Petrobras, Sete, Keppel and numerous other drillship builders ("shipbuilders")—was revealed publicly. Plaintiffs contend that Sete and Petrobras fraudulently raised funds for Sete from equity investors, such as Plaintiffs, through misleading statements, which failed to disclose that officials at Sete, Petrobras and the Workers' Party of Brazil ("Workers' Party") received kickbacks from shipbuilders in return for Sete contracts.

Plaintiffs continue to pursue claims against Petrobras—the entity that, along with Sete, made the allegedly misleading statements—in the D.C. Action. Yet, they also seek to reinstate claims against Keppel in this Court, despite the fact that they do not (because they cannot) allege that Keppel made (or even knew the content of) the challenged statements. Keppel has acknowledged in the DPA that it paid kickbacks on Sete contracts. But paying kickbacks is not the same as defrauding equity investors in a separate company, and Plaintiffs' efforts to equate them are unfounded. As the court in the D.C. Action noted: There are "no facts establishing that any Shipyard Defendant was aware Petrobras . . . prepared marketing materials to present to potential equity investors;

transmitted such materials to the United States . . . or intended to use investor money to underwrite the bribe scheme."  EIG I, 246 F. Supp. 3d at 90-91.

The claims in the FAC should be dismissed with prejudice for at least the following reasons.  First, Plaintiffs seek to hold Keppel "vicariously liable" as a RICO "co-conspirator".  (FAC ¶ 122.)  However, Plaintiffs fail to plead the most basic element of the RICO conspiracy they assert:  an agreement among the purported conspirators to defraud Sete investors as a way to underwrite the bribery scheme.  Plaintiffs also fail to plead RICO standing, an underlying substantive RICO violation or facts sufficient to overcome RICO's presumption against extraterritorial application of the statute.

Second, Plaintiffs' state law claim for aiding and abetting fraud—added nearly three months after they filed the initial Complaint and almost two years after they filed the D.C. Action, and in response to Keppel's pre-motion letter noting the deficiencies in Plaintiffs' RICO claim—also fails sufficiently to plead basic elements of the claim, including actual knowledge and substantial assistance.

Third, Plaintiffs seek to bring claims here that they should have asserted in the D.C. Action and to re-litigate issues previously decided against them.  The doctrines of res judicata and issue preclusion bar Plaintiffs from doing this.

### Background[2]

Formation of Sete:  Petrobras created Sete in 2011 to help finance the construction of a fleet of 28 drillships to extract oil from the Pre-Salt Reserves.  (FAC ¶¶ 4, 47.)  The plan was for Sete to contract with companies to build drillships, and then to charter the drillships to Petrobras.  (FAC ¶ 4, 49.)  Petrobras "installed" former

---

[2] The allegations in the FAC are assumed true for purposes of this motion only. All capitalized terms are used as defined in the FAC unless otherwise noted.

Petrobras executives in positions at Sete, and "controlled and dominated Sete".  (FAC ¶¶ 10, 52.)

Sete "planned to rely heavily on borrowed money to build the drillships and to otherwise conduct its operations, with equity investments making up the remainder of Sete's overall capital structure."  (FAC ¶ 50.)  An "information memorandum" prepared by Sete and Petrobras (and allegedly provided to Plaintiffs) explained that Sete "would benefit by a 'special focus' on debt financing from Banco Nacional de Desenvolvimento Econômico e Social ("BNDES"), the Brazilian state-owned development bank", and that Sete "expected the single largest element of its overall capitalization to come in the form of loans from BNDES".  (FAC ¶¶ 49-50.)

The Kickback Scheme/Operation Car Wash:  "[F]rom at least as early as 2003, corruption within Petrobras was 'endemic and institutionalized.'  Bribery and kickbacks were 'built in' to contracts and were 'understood to be part of the relationship' between Petrobras and most persons and entities with whom Petrobras had business dealings . . . ."  (FAC ¶ 94.)  Sete was a "continuation" of Petrobras and "the practice of a 1% kickback in construction contracts came from Petrobras and migrated to Sete".  (FAC ¶ 48.)

Brazilian authorities began investigating corruption at Petrobras in a probe called "Operation Car Wash", which started as an investigation into "alleged money laundering" and grew into a larger corruption investigation involving "bribery and kickbacks" at Petrobras and Sete.  (FAC ¶¶ 10, 91.)  In 2015, after Operation Car Wash

was publicly disclosed,[3] "Sete's drillship construction lenders promptly cut off further critical construction funding for Sete", which caused Sete "to default on its drillship construction contracts".  (FAC ¶¶ 9-10.)  In April 2016, Sete filed "for the Brazilian equivalent of bankruptcy".  (FAC ¶ 9.)

In December 2017, Keppel entered the DPA to resolve charges, including that it paid kickbacks to receive Sete drillship contracts.  (FAC ¶¶ 2, 107.)  As Keppel acknowledges in the DPA and elsewhere, it "received six Sete contracts in exchange for its continued participation in the bribery and kickback scheme", totaling approximately $14.4 million.  (FAC ¶ 96); Ex. 2 at ¶¶ 70, 72.[4]  Of relevance here, the DPA does not charge Keppel with defrauding Sete investors, or with conspiring to defraud Sete (or any other) investors.

Plaintiffs' Sete Investment:  The Plaintiff funds—organized under Delaware law and the laws of the Cayman Islands—are managed by EIG Management Company LLC ("EIG").  (FAC ¶¶ 6, 15-22.)  Plaintiffs allege they invested "over US $221 million in Sete by wires emanating from banks in California and New York City".  (FAC ¶ 8.)[5]  Plaintiffs began investing in Sete in August 2012 and continued to invest

---

[3] Although Plaintiffs allege Operation Car Wash was "publicly disclosed" in 2015 (FAC ¶ 10), there were numerous news articles reporting on the investigation in fall 2014.  See, e.g., Will Connors, Ex-Petrobras Executive Says Kickbacks Were Paid to Ruling Party's Officials, Wall St. J., Oct. 9, 2014 [Ex. 1]; see also Rivas v. Fischer, 687 F.3d 514, 520 n.4 (2d Cir. 2012) (approving judicial notice that "press coverage contained certain information, without regard to the truth of [its] contents").

[4] The FAC is internally inconsistent—and inconsistent with the DPA—regarding the number of kickback payments and total kickback amount.  (Compare FAC ¶¶ 8, 80, 107 with id. ¶¶ 87-88 and Ex. 2 at ¶ 78 n.2.)  However, those discrepancies are not germane to the instant motion.

[5] The FAC contains a table of purported wire transfers "by EIG" from the United States "for the purpose of investing in Sete".  (FAC ¶ 76.)  There is no information pleaded that connects any of the amounts in the table to any of the individual Plaintiff funds.

"into early 2015". (FAC ¶ 76.) Plaintiffs contend that their investment in Sete is now "worthless" in light of Sete's bankruptcy filing. (FAC ¶ 9.)

Plaintiffs contend that Petrobras and Sete sought to "fraudulently raise from third parties billions of dollars of capital for Sete, including from U.S. investors such as plaintiffs, without disclosing that the investors' capital would actually finance millions of dollars of bribes and kickbacks". (FAC ¶ 5.) According to the FAC, "one of Sete's main but secret goals was to enrich the senior executives of Petrobras, Sete and the Workers' Party with bribes and kickbacks and to secure lucrative contracts for Keppel and other shipbuilders". (FAC ¶ 67.)

Between September 2010 and August 2012, certain investment materials and emails from Petrobras and Sete officials were received by EIG in Washington, D.C., although Plaintiffs do not allege who precisely received those materials. (FAC ¶¶ 55-67.) Nowhere does the FAC assert that Keppel was involved in preparing or sending those materials, or even that it was aware of the content of those materials.

Plaintiffs also allege that a Sete executive attended two meetings with EIG. The first meeting took place in spring 2013 in Houston, Texas. (FAC ¶ 68.) The second meeting was at an EIG investor conference in September 2013. (FAC ¶ 69.) The FAC does not claim that Keppel attended or was aware of either meeting.

There are only a handful of factual allegations in the FAC with respect to Keppel's interaction with EIG: In August 2011, an EIG executive "traveled to the Keppel Shipyard in Brazil" where he and individuals from other investment funds saw a "presentation about Keppel's shipbuilding business" and were given a tour of Keppel's shipyard. (FAC ¶ 71.) Plaintiffs do not allege that Keppel gave any investment advice or

statements in the presentation or tour about Sete.  Nor do they allege that any statements made by Keppel during the presentation and tour were misleading.

In August 2011, EIG hired Barrington Media ("Barrington") "to film the Keppel Shipyard for an informational video for EIG's investors".  (FAC ¶ 72.)  EIG asked a Sete executive to "contact[] Keppel Brazil" to "obtain[] approval from Keppel Brazil for Barrington's trip to the Keppel Shipyard".  (FAC ¶ 72.)  Barrington "spent a number of hours filming various areas of the Keppel Shipyard".  (FAC ¶ 73.)  The FAC does not plead that Keppel directed the filming; had knowledge of when, where or how the film would be used; or made any misleading statements to Barrington or on the film.

On August 7, 2012, Keppel issued a press release announcing its contracts with Sete.  The release stated that Sete is a "Brazilian company . . . formed by Brazilian and International finance investors, including banks and the four biggest Brazilian pension funds, besides Petrobras".  (FAC ¶ 78.)  The FAC contends that the reference to "International finance investors" is a "direct reference" to Plaintiffs.  (FAC ¶ 78.)

An EIG representative visited Keppel's shipyard in August 2013 and met with "Keppel Brazil employees".  (FAC ¶ 79.)  The FAC provides no further details about this meeting, nor does it contend that Keppel made misleading statements in the meeting.

The D.C. Action:  In 2016, Plaintiffs brought the D.C. Action against Petrobras, Keppel and several other shipbuilders (with Keppel, the "Shipyard Defendants").  EIG I, 246 F. Supp. 3d at 52.  Plaintiffs alleged they were fraudulently induced to invest in Sete through misleading statements by Sete and Petrobras.  Id. at 61.

Plaintiffs asserted three claims:  fraud and aiding and abetting fraud against Petrobras, and conspiracy to defraud against all defendants based on the theory that the defendants had "conspired to conceal the existence of the Sete bribe scheme in an effort to fraudulently induce Plaintiffs, and other investors, to invest in Sete".  Id.  The court allowed the claims against Petrobras for fraud and aiding and abetting fraud to proceed, but dismissed the claim for conspiracy to defraud against all defendants for "fail[ure] to plead a plausible claim of conspiracy".  Id. at 62.  Because the conspiracy was the only basis pleaded for personal jurisdiction over the Shipyard Defendants, the court also dismissed the Shipyard Defendants for lack of personal jurisdiction.  Id. at 89-91.

In dismissing the conspiracy claim, the court found that Plaintiffs came "nowhere close to stating a sufficient claim of civil conspiracy", and noted there were "no facts establishing that any Shipyard Defendant was aware Petrobras . . . prepared marketing materials to present to potential equity investors; transmitted such materials to the United States . . . or intended to use investor money to underwrite the bribe scheme".  Id. at 90-91.

The court also found that it could not infer "an agreement to defraud Sete's investors" based on the Shipyard Defendants' silence, explaining that it could "conceive of any number of reasons why the Shipyard Defendants did not disclose the bribe scheme, including most obviously that they did not want to implicate themselves in criminal wrongdoing".  Id. at 91.  Although Keppel entered the DPA after the court's decision, Plaintiffs alleged, and Keppel did not dispute for purposes of the motion to dismiss in the D.C. Action, that kickbacks were paid.

The Allegations of the FAC:  Plaintiffs bring two claims against Keppel: one for a RICO conspiracy and one for aiding and abetting fraud.  Although Plaintiffs allege a conspiracy, Keppel is the sole named defendant.  Sete and Petrobras are not named, nor is any other shipbuilder.

The RICO conspiracy alleged in the FAC is that "Keppel, Petrobras, the Workers' Party, Sete and various other entities knowingly conspired with each other": (1) to use "Sete as a new vehicle to . . . expand the massive bribery and kickback scheme"; (2) "to conceal [the kickback] scheme"; (3) "to fund [the kickback] scheme by committing fraud on Sete's investors, including plaintiffs"; and (4) "to enrich the conspirators by systematically and unlawfully securing lucrative Sete contracts for Keppel in exchange for bribes and kickback payments".  (FAC ¶¶ 115, 117.)  The claim for aiding and abetting fraud similarly alleges that "Keppel was aware of the overall objective of the bribery and kickback scheme involving Sete and knew that a necessary component of that scheme was the solicitation of private investment funds through fraudulent means" (FAC ¶ 128) but "did not at any time disclose to EIG or plaintiffs" the payment of kickbacks "relating to the Sete drillship contracts" (FAC ¶¶ 6, 70-75, 79).

## **Argument**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'".  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's factual allegations are true."  Twombly, 550 U.S. at 545.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly,

550 U.S. at 555).  Similarly, "[w]here a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility

of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557)

(quotation marks omitted).  "Dismissal is appropriate when 'it is clear from the face of

the complaint, and matters of which the court may take judicial notice, that the plaintiff's

claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto.

Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (citation omitted).

## I.       Plaintiffs Fail To State A Civil RICO Conspiracy Claim.

Plaintiffs' RICO conspiracy claim is plainly deficient.  The FAC does not

sufficiently plead a RICO agreement, standing or an underlying substantive RICO

violation.  The FAC also does not contain allegations sufficient to overcome the

presumption against extraterritoriality.[6]

### A.     Plaintiffs fail to plead an agreement.

A RICO conspiracy requires "an agreement to conduct or to participate in

the conduct of a charged enterprise's affairs through a pattern of racketeering".  U.S. v.

Pizzonia, 577 F.3d 455, 464 (2d. Cir. 2009).  In other words, Plaintiffs "must allege that

the defendant 'knew about and agreed to facilitate the scheme.'"  Abbott Labs v.

Adelphia Supply USA, No. 15-CV-5862, 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017)

(citations omitted).  Plaintiffs do not meet this requirement.

---

[6] Leave to re-plead would be futile.  This is Plaintiffs' second attempt to state a claim
against Keppel (and third complaint) and there is no reason to believe that another
opportunity would cure the factual pleading deficiencies.  In re Am. Express Co. S'holder
Litig., 39 F.3d 395, 402 (2d Cir. 1994).

The FAC contains no allegation of an express agreement—whether in a meeting, conversation, document or otherwise—by Keppel to join the alleged conspiracy. While it may be possible in some limited circumstances to infer an agreement "from circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing", N.Y. Dist. Council of Carpenters Pension Fund v. Forde, 939 F. Supp. 2d 268, 282 (S.D.N.Y. 2013), a plaintiff must allege "some factual basis for a finding of a conscious agreement", Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990). No such basis is pleaded here.

As noted above, the FAC fails to plead any factual content plausibly alleging that Keppel knew about, let alone agreed to facilitate, any alleged scheme to defraud Sete investors. The sole particularized allegation with respect to Keppel is that it authorized kickback payments to representatives of Petrobras, Sete and the Workers' Party in order to obtain drillship contracts from Sete. (FAC ¶ 118.) However, as the court in the D.C. Action already held, this assertion is inadequate to establish any agreement to participate in a conspiracy to defraud. Plaintiffs cannot escape the logic or effect of the court's ruling in the D.C. Action by rephrasing the question as whether Keppel agreed to enter into a RICO conspiracy as opposed to a common law civil conspiracy. The gravamen of the Plaintiffs' allegations—in this case just as in the D.C. Action—is that Plaintiffs were defrauded by making an investment in Sete as a result of a conspiracy in which Keppel participated. Plaintiffs' claims fail in both cases because Plaintiffs do not and cannot allege facts establishing that Keppel agreed to enter into any such conspiracy.

11

The FAC does allege that persons from EIG toured Keppel's shipyard on two occasions and filmed a marketing video for EIG investors.  (FAC ¶¶ 71-73, 79.)  It also alleges that Keppel referred to "International finance investors" in an August 2012 press release.  (FAC ¶ 78.)  But these allegations at best show that Keppel was aware that EIG was a potential investor in Sete.  They do not support the inference that Keppel "knew what the other conspirators were up to"—that is, allegedly committing fraud on United States equity investors—nor do they illustrate a situation that "would logically lead [Keppel] to suspect [it] was part of a larger enterprise".  United States v. Sasso, 230 F. Supp. 2d 275, 285 (E.D.N.Y. 2001).  Such defects are fatal as a matter of law to Plaintiffs' RICO claim.  See Abbott Labs, 2017 WL 57802, at *9 ("Even if [plaintiff's] allegations gave rise to the inference that the defendants knew about the scheme, 'mere knowledge of the scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy.'"  (citation omitted)).

B.      Plaintiffs lack standing.

Plaintiffs lack standing under RICO for two independent reasons, each of which is grounds for dismissal.

First, Plaintiffs fail adequately to plead that their injury was proximately caused by the alleged RICO violation.  Standing to sue for a civil RICO conspiracy claim requires that the plaintiff's injury be actually and proximately caused by the defendant's RICO violation.  Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 9 (2010).  "Proximate cause for RICO purposes . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.'  A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  Id. (citation omitted).  A plaintiff must adequately allege that the RICO "violation led directly to the plaintiff's injuries".  Anza

v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006); see also Slay's Restoration, LLC

v. Wright Nat'l Flood Ins. Co., 884 F.3d 489, 494 (4th Cir. 2018) ("RICO causation

requires . . . that the injury is sequentially the direct result [of the statutory violation]—

generally at 'the first step' in the chain of causation."  (citation omitted)).

Plaintiffs' purported injury is nowhere near the first step in the chain of

causation.  Plaintiffs' alleged loss was the "result of the material false statements and

omissions" by "Petrobras and Sete" that "defraud[ed] potential investors" by not

disclosing the "risk that if the corruption scheme underlying the RICO conspiracy ever

came to light, Sete's business would suffer . . . and the value of any investment in Sete

would decline."  (FAC ¶ 123.)  Plaintiffs' alleged loss occurred only after Sete "had its

bank financing lines cut off", was unable to access "further debt or equity" funding,

"defaulted on its shipbuilding contracts", and was unable to perform on contracts with

Petrobras.  (FAC ¶ 101.)  Thus, the FAC does not plead, nor is it plausible to infer, that

Keppel's kickback payments "led directly to the plaintiff's injuries".  Anza, 547 U.S. at

461.

Second, Plaintiffs' claim is not ripe under RICO's "enhanced ripeness

requirement:  'a cause of action does not accrue under RICO until the amount of damages

become clear and definite'".  DLJ Mortg. Capital, Inc. v. Kontogiannis, 726 F. Supp. 2d

225, 236 (E.D.N.Y. 2010) (citation omitted).

Sete filed for the "Brazilian equivalent of bankruptcy" in April 2016.

(FAC ¶ 9.)  Plaintiffs allege their investment in Sete is now "worthless" (FAC ¶ 9), but

Plaintiffs do not allege that Sete's bankruptcy proceedings have concluded, or that their

interests in Sete have been determined.  In fact, Sete's reorganization process is ongoing,

see Ex. 3, which means Plaintiffs' damages are "unknown" and their claim is not ripe.

Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Mkts,, LLC, 347 F.

App'x 711, 713 (2d Cir. 2009).

        Plaintiffs' claim also is not ripe because Plaintiffs are seeking to recover

the same alleged damages from Petrobras in the D.C. Action.  EIG I, 246 F. Supp. 3d at

84-89.  When a plaintiff is a party in a separate ongoing action involving the same

underlying facts and damages, the plaintiff's RICO claim is not ripe.  Sky Med. Supply

Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 233 (E.D.N.Y. 2014).

        C.      Plaintiffs fail to plead an underlying RICO violation.

        "[T]o state a conspiracy claim under § 1962(d), plaintiffs must plead the

requirements under one of the substantive RICO provisions, such as § 1962(c) . . . ."

D. Penguin Bros. Ltd. v. City Nat'l Bank, No. 13 Civ. 41, 2014 WL 982859 (S.D.N.Y.

March 11, 2014).  Plaintiffs allege that Keppel conspired to violate 18 U.S.C. § 1962(c)

(FAC ¶ 115), but they do not plead the elements of a § 1962(c) violation.

        1.      Plaintiffs fail to plead a RICO enterprise.

        Plaintiffs allege that "Keppel, Petrobras, the Workers' Party and Sete

together" constituted the enterprise.  (FAC ¶ 116.)  A valid enterprise requires factual

allegations "of an ongoing organization" and "evidence that the various associates

function as a continuing unit".  First Capital Asset Mgmt., Inc., v. Satinwood, Inc., 385

F.3d 159, 173 (2d Cir. 2004) (citation omitted).  A complaint must allege "a purpose,

relationships among those associated with the enterprise, and longevity sufficient to

permit these associates to pursue the enterprise's purpose".  Boyle v. United States, 556

U.S. 938, 946 (2009).  "[M]erely stringing together a list of defendants and labeling them

an enterprise is insufficient to state a RICO claim." Cedar Swamp Holdings, Inc. v. Zaman, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007).

The FAC contains virtually no allegations regarding the structure and organization of the alleged enterprise, or that Keppel had any control of the alleged enterprise.  See Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) ("[I]t is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise.").  To the contrary, Plaintiffs allege that "[s]enior executives of Petrobras conceived of the idea to perpetuate and expand their long-standing criminal scheme through the creation of Sete" (FAC ¶ 47), that the "initiative to create Sete" was taken by senior executives of Petrobras (FAC ¶ 47), that Petrobras and Sete "prepared and provided" the alleged misleading investor materials (FAC ¶ 49), that Petrobras "effectively exercised top management and ran [Sete]" (FAC ¶ 52), "Petrobras and Sete were primarily responsible for raising the capital for Sete" (FAC ¶ 54), that Petrobras "carefully selected Keppel as a Sete supplier" (FAC ¶ 75), and that the "1% kickback" amount in construction contracts "came from Petrobras" (FAC ¶ 48).

Similarly, Plaintiffs fail "to plausibly allege that [Keppel] engaged in anything but independent conduct, without coordination and for [its] own economic self-interest".  Gucci Am., Inc. v. Alibaba Group Holding Ltd., No. 15-cv-3784, 2016 WL 6110565, at *7 (S.D.N.Y Aug. 4, 2016).  Courts routinely reject RICO allegations where a business relationship exists and the alleged conduct was taken for the defendant's benefit—not for the benefit of the enterprise—"even when the defendant is aware of the enterprise's unlawful activity".  Moss v. BMO Harris Bank, N.A., 258 F. Supp. 3d 289,

307-08 (E.D.N.Y. 2017) (collecting cases). In the instant case, the FAC does not even attempt to plead relationships among the associates, including Keppel and the Workers' Party. See Elsevier, 692 F. Supp. 2d at 307 (finding no enterprise where relationships were not adequately alleged). Instead, the FAC asserts explicitly that Keppel paid kickbacks to obtain lucrative drillship contracts for itself. (FAC ¶ 4.)

Finally, there is no support for the inference Plaintiffs seek that Keppel's alleged kickbacks could only be accomplished through the purported fraud on Plaintiffs; among other things, the FAC does not adequately plead that funds from equity investors were used to underwrite the kickbacks by Keppel, and instead asserts that Sete planned to rely "heavily" on bank-issued debt financing. (FAC ¶ 50); see also EIG I, 246 F. Supp. 3d at 90-91. Plaintiffs' at best allege "a series of independent frauds", but more is required for a RICO enterprise. Cedar Swamp Holdings, 487 F. Supp. 2d at 452.

2.      Plaintiffs fail to plead racketeering activity.

To survive a motion to dismiss, a RICO plaintiff "must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." Republic of Panama v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 949 (11th Cir. 1997). Plaintiffs do not adequately plead the alleged predicate acts. (FAC ¶ 120.)

First, Plaintiffs' wire fraud allegations are insufficient because they do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Bigsby v. Barclays Capital Real Estate, Inc., 170 F. Supp. 3d 568, 575 (S.D.N.Y. 2016) ("The alleged predicate acts of mail and wire fraud 'merit particular scrutiny,' lest the courts allow the RICO statute 'to federalize garden-variety state common law claims.'" (citations omitted)). For example, the FAC alleges that "Keppel transmitted wires and/or

caused the transmission of wires in furtherance of the scheme to defraud potential Sete investors" (FAC ¶ 8), but the FAC offers no facts to support "proof of intent" by Keppel to defraud Sete investors, Bigsby, 170 F. Supp. 3d at 575.  Nor does it plead facts establishing that Keppel used or "caused" (FAC ¶ 8) others to use wires to further a scheme to defraud Sete investors.  See id. (requiring "(1) a scheme to defraud, including proof of intent; (2) money . . . as object of [the] scheme; (3) use of . . . wires to further the scheme.").  The FAC also does not assert facts to show that funds from equity investors were intended or used to underwrite the kickbacks by Keppel.  See EIG I, 246 F. Supp. 3d at 90-91.

The wire fraud allegations are further barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, because the allegations amount to a claim of securities fraud, involving misleading statements and omissions in investor materials.  MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 277 (2d Cir. 2011) ("[S]ection 107 of the PSLRA bars civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant."); id. at 280 (holding that PSLRA's RICO Amendment "bars a plaintiff from asserting a civil RICO claim premised upon predicate acts of securities fraud, including mail or wire fraud, even where the plaintiff could not bring a private securities law claim against the same defendant").

Second, Plaintiffs' money laundering allegations are pleaded insufficiently.  (FAC ¶ 120.)  Plaintiffs allege only that an agent of Keppel "laundered . . . funds through New York City bank accounts" (FAC ¶ 87) and was convicted of money laundering in Brazil (FAC ¶ 100).  Plaintiffs plead no facts showing how or when Keppel

17

committed money laundering under United States law.  The Travel Act allegations also are conclusory.  (FAC ¶ 120.)

        3.      Plaintiffs fail to plead a pattern of racketeering activity.

Plaintiffs' fail to plead a pattern of racketeering activity sufficient to withstand a motion to dismiss.  Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008) ("To survive a motion to dismiss, this pattern must be adequately alleged in the complaint.").  A pattern of racketeering activity requires that the predicate acts "pose a threat of continuous criminal activity and that they be related to each other." Reich v. Lopez, 858 F.3d 55, 59 (2d Cir. 2017).

Plaintiffs fail to satisfy the continuity requirement.  To satisfy closed-ended continuity, the alleged predicate acts must extend "over a substantial period of time", which in the Second Circuit is "at least two years".  Id. at 60.[7]  In addition, the relevant time period "is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated".  Spool, 520 F.3d at 184.  Although Plaintiffs allege, without any factual support, that "Keppel's bribery and money laundering" would have "continued at least through 2019 but for the Brazilian government's investigation" (FAC ¶ 90), the only Sete-related payments alleged in the FAC were made between late September 2013 and early November 2014—a period of less than two years (FAC ¶¶ 86-88).[8]

---

[7] Plaintiffs do not plead open-ended continuity because the alleged fraudulent conduct has ended.  See Spool, 520 F.3d at 186.

[8] Continuity also is lacking because the Keppel kickback payments concern six drillship contracts.  There is no allegation of additional contracts or projects.  The payments listed in paragraph 87 of the FAC are not additional bribes but instead reflect that the drillship contracts were paid in installments.  (See FAC ¶ 101 (discussing "money to pay necessary installments").)

Plaintiffs similarly fail to satisfy the relatedness requirement because the alleged RICO predicate acts are not connected.  To be related, the acts must "have the same or similar purposes, results, participants, victims, or methods of commission", and must not be "isolated events".  Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997).  Here, one of the alleged predicate acts involves preparing and sending misleading investor materials to investors, while the other involves paying kickbacks in return for contracts.  The two have different victims, methods of commission and purposes, and the involvement of Petrobras and Sete in both is not enough to establish relatedness.  See id. at 96-98.

> D.     Plaintiffs fail to overcome the presumption against extraterritoriality.

Plaintiffs' allegations indisputably concern conduct that occurred outside the United States.  To overcome the presumption against applying RICO outside the United States, a complaint must allege that at least two underlying predicate acts have extraterritorial reach. See RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 2100-03 (2016).

In addition to money laundering, Plaintiffs allege wire fraud and Travel Act violations, neither of which apply extraterritorially as a matter of law, RJR Nabisco, Inc. v. European Cmty., 764 F.3d 129, 140-41 (2d Cir. 2014), rev'd on other grounds, 136 S. Ct. 2090, and "[s]imply alleging that some domestic conduct occurred cannot support a claim of domestic application" of RICO, Petroleos Mexicanos v. SK Eng'g & Constr. Co., 572 F. App'x 60, 61 (2d Cir. 2014).  Accordingly, Plaintiffs' RICO claim fails because Plaintiffs have not pleaded the requisite number of predicate acts with extraterritorial reach to support an extraterritorial application of RICO.

**II.      Plaintiffs Fail To State A Claim For Aiding and Abetting Fraud.**

Aiding and abetting fraud requires a plaintiff to plead—subject to the heightened requirements of Rule 9(b)—facts sufficient to show that the defendant had "knowledge of the fraud" and "provided substantial assistance to advance the fraud's commission".  Krys v. Piggott, 749 F.3d 117, 127-29 (2d Cir. 2014).  Plaintiffs do not adequately allege that Keppel had actual knowledge of the alleged fraud or provided substantial assistance to advance the fraud, both of which are fatal to Plaintiffs' state law claim.[9]

A.      Plaintiffs fail to plead that Keppel had actual knowledge.

To sustain a claim for aiding and abetting fraud, a plaintiff must show that the defendant had actual knowledge of the primary violation.  Id. at 127.  Although Rule 9(b) permits a plaintiff to plead the element of knowledge generally, "generally is not the equivalent of conclusorily".  Id. at 129 (citation omitted).

But that is precisely what Plaintiffs do here—and what the court in the D.C. Action concluded when considering Plaintiffs' virtually identical conspiracy claim in that case.  EIG I, 246 F. Supp. 3d at 90-91.

In conclusory fashion, Plaintiffs allege that "Keppel was aware of the overall objective of the bribery and kickback scheme involving Sete and knew that a

---

[9] Indeed, Plaintiffs have not even adequately pleaded an underlying fraud claim. Presuming the claim is asserted under New York law (something the FAC fails to specify), it must identify with particularity "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff".  Abbatiello v. Monsanto Co., 522 F. Supp. 2d 524, 533 (S.D.N.Y. 2007).  Here, Plaintiffs refer generally to investor "materials" and "emails" and do not allege with any particularity the alleged misstatements and who made them.  Nor do Plaintiffs allege they actually relied on any of alleged fraudulent statements when investing in Sete.

necessary component of that scheme was the solicitation of private investment funds through fraudulent means".  (FAC ¶ 128.)  The FAC is devoid of any facts to support the contention that Keppel had actual knowledge of the "overall objective of the bribery and kickback scheme" or that a "necessary component" was the "solicitation of private investment funds" through fraud.  (FAC ¶ 128.)  As set forth above, the FAC does not assert that Keppel was aware of the existence of any of the allegedly misleading investor materials or emails, let alone the content of any of those materials.  (See FAC ¶¶ 55-69.)

Similarly, although the FAC contends that Keppel knew Plaintiffs "were potential investors in Sete and that Petrobras and Sete were soliciting investments without disclosing the bribery and kickback scheme", it pleads no facts to support this conclusory assertion.  (FAC ¶ 128.)  Among other things, although the FAC describes two visits by an EIG executive to Keppel's shipyards, and a marketing video EIG made at the shipyard for its own investors (FAC ¶¶ 71-73, 79), Plaintiffs do not allege when Keppel supposedly learned that Plaintiffs had in fact decided to invest in Sete.  The best the FAC can do is point to an August 2012 Keppel press release referring to "International finance investors"—a press release that makes no mention of any EIG entity.  (FAC ¶ 78.)  The failure to plead actual knowledge mandates dismissal of Plaintiffs' aiding and abetting claim.  See Batson v. RIM San Antonio Acquisition, LLC, No. 15-cv-07576, 2018 WL 1581675, at *11-12 (S.D.N.Y. Mar. 27, 2018).[10]

---

[10] Plaintiffs' assertion that Keppel had "a clear motive to assist in the fraud" (FAC ¶ 128) is also insufficient to plead knowledge, because Plaintiffs cannot and do not allege any facts to support that equity investor funds were intended "to underwrite the bribe scheme".  See EIG I, 246 F. Supp. 3d at 90-91.  In fact, Plaintiffs concede the "largest element" of Sete's "overall capital structure" consisted of loans from the Brazilian bank, BNDES.  (FAC ¶ 50.)

B.      <u>Plaintiffs fail to plead that Keppel provided substantial assistance.</u>

Plaintiffs have not alleged factual content sufficient to show that Keppel provided substantial assistance in furtherance of the underlying alleged fraud by Sete and Petrobras on Plaintiffs.  Substantial assistance typically requires affirmative action. Where the underlying fraud is based on misrepresentations in a document, the purported aider and abettor "must be alleged to have given substantial assistance to the making and dissemination of that document".  <u>Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC</u>, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007).  Crucially, Plaintiffs do not allege (and cannot allege) that Keppel assisted in making or distributing any of the supposedly false statements.

Presumably in an attempt to address this deficiency, Plaintiffs assert that Keppel "did not at any time disclose to EIG or plaintiffs" the payment of kickbacks "relating to the Sete drillship contracts".  (FAC ¶ 6; <u>see also</u> FAC ¶¶ 70-75, 79.) However, mere inaction does not constitute substantial assistance unless the alleged aider and abettor has an independent legal duty to the plaintiff, even if there were "obvious warning signs of fraud".  <u>Chemtex, LLC v. St. Anthony Enterprises, Inc.</u>, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007).  Plaintiffs do not allege that Keppel had any duty to Plaintiffs. Moreover, as the court in the D.C. Action explained, allegations of silence in this context are insufficient to establish an intent to further the fraud as there are "any number of reasons why the Shipyard Defendants did not disclose the bribe scheme, including most

obviously that they did not want to implicate themselves in criminal wrongdoing". <u>EIG I</u>, 246 F. Supp. 3d at 91.[11]

### III.    Plaintiffs' Claims Are Barred By Res Judicata and Issue Preclusion.

Plaintiffs seek to bring claims here that they should have asserted in the D.C. Action and to re-litigate issues previously decided against them.  Both efforts are barred by the doctrines of res judicata and issue preclusion, which provide yet another basis for dismissal of the FAC.

Res judicata requires a plaintiff to "bring all claims at once against the same defendant relating to the same transaction or event".  <u>Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.</u>, 882 F.3d 52, 55 (2d Cir. 2018).  A plaintiff who does not allege a potential claim against a defendant is barred from bringing that claim against the same defendant based on the same transaction in a separate proceeding when "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs . . . ; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action".  <u>Id.</u> at 55.  All these conditions are present here.

In the D.C. Action, Plaintiffs brought a conspiracy to defraud claim against all defendants, including Keppel.  The dismissal of Plaintiffs' conspiracy claim pursuant to Rule 12(b)(6) in the D.C. Action was an adjudication on the merits.  <u>Berrios v. N.Y.C. Hous. Auth.</u>, 564 F.3d 130, 134-35 (2d Cir. 2009).  Plaintiffs also brought an aiding and abetting fraud claim against Petrobras (but, notably, not against Keppel).  Although Plaintiffs attempt to style their claims as distinct from their claims in the D.C.

---

[11] Not only should Plaintiffs' state law claim be dismissed on the merits, if the Court dismisses the civil RICO conspiracy claim, it should also decline to exercise supplemental jurisdiction over this claim.

Action, it is well settled that "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence".  Id. at 135.

Issue preclusion also bars Plaintiffs' claims.  Under the doctrine of issue preclusion, a party is barred from re-litigating an issue of fact or law when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits".  Bulovic v. Stop & Shop Supermarket Co., 698 F. App'x 21, 22 (2d Cir. 2017), petition for cert. filed.  Again, all these conditions are met.

In the D.C. Action, Plaintiffs argued that Keppel, in furtherance of a conspiracy with Petrobras and Sete, "fraudulently conceal[ed] the existence of [kickbacks] from Sete investors".  EIG I, 246 F. Supp. 3d at 90 (quoting EIG I Am. Comp. ¶ 99).  The court in the D.C. Action found that Plaintiffs failed to allege facts to support a conspiracy by Keppel to conceal kickbacks from Sete investors and dismissed Plaintiffs' conspiracy claim not just against Keppel, but also against Petrobras.  Id. at 90-91.  Plaintiffs in the present action once again claim that Keppel was part of a conspiracy with Petrobras and Sete, and that Keppel "did its part in knowingly concealing the illicit bribery and kickback scheme from EIG in order to induce EIG and plaintiffs to invest in Sete".  (FAC ¶ 70.)  Likewise, the court in the D.C. Action found that Plaintiffs failed to show that Keppel even had knowledge of the marketing materials containing the alleged fraudulent statements sent to investors by Sete and Petrobras.  EIG I, 246 F. Supp. 3d at 90-91.  And here, actual knowledge of the fraud by Sete and Petrobras is a required element for Plaintiffs' aiding and abetting claim.  Plaintiffs are not permitted to re-litigate

these issues, which were decided by the court in the D.C. Action on the merits.  See Poindexter v. Cash Money Records, No. 13 CIV. 1155, 2014 WL 818955, at *2, *7 (S.D.N.Y. Mar. 3, 2014) (granting a motion to dismiss based on a previous 12(b)(6) dismissal of claim involving an identical issue).

Plaintiffs contend in their June 15 pre-motion letter (ECF No. 21) that the decision in the D.C. Action is not a final judgment on the merits—and that res judicata and issue preclusion thus do not apply—because the court also found that it lacked personal jurisdiction.  That is incorrect.  The only basis for personal jurisdiction alleged by plaintiffs was conspiracy jurisdiction, and thus the court was required to independently evaluate plaintiffs' conspiracy allegations on the merits.  Indeed, it was only because the court found that plaintiffs had failed adequately to allege a conspiracy, including against Petrobras over whom it has jurisdiction, that it concluded it lacked personal jurisdiction of the Shipyard Defendants.  See EIG I, 246 F. Supp. 3d at 90 ("Of course, conspiracy jurisdiction over the Shipyard Defendants cannot exist unless the Amended Complaint actually states a plausible claim of civil conspiracy.").  Thus, unlike in the cases cited in Plaintiffs' June 15 letter, where courts found that they lacked personal jurisdiction for reasons independent of any determination on the merits, here there needed to be and was a final judgment on the merits.  Id. at 91.

## Conclusion

The FAC fails adequately to plead RICO conspiracy and aiding and abetting fraud claims against Keppel.  This Court should therefore dismiss the claims with prejudice.

July 20, 2018

Respectfully submitted,


CRAVATH, SWAINE & MOORE LLP,

by
_____
/s/ Rachel G. Skaistis

Peter T. Barbur
Rachel G. Skaistis
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com
rskaistis@cravath.com

*Attorneys for Defendant Keppel Offshore &
Marine Ltd.*