UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EIG Energy Fund XIV, L.P.,<br>EIG Energy Fund XIV-A, L.P.,<br>EIG Energy Fund XIV-B, L.P.,<br>EIG Energy Fund XIV (Cayman), L.P.,<br>EIG Energy Fund XV, L.P.,<br>EIG Energy Fund XV-A, L.P.,<br>EIG Energy Fund XV-B, L.P., and<br>EIG Energy Fund XV (Cayman), L.P.,<br><br>                                  Plaintiffs,<br><br>              -against-<br><br>Keppel Offshore & Marine Ltd.,<br><br>                                  Defendant. | 18-cv-01047 (PGG) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FILED BY
DEFENDANT KEPPEL OFFSHORE & MARINE LTD.**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Keppel Offshore & Marine Ltd.*

August 24, 2018

## TABLE OF CONTENTS

                                                                                                                                               **Page**

Table of Authorities ................................................................................................. ii

Preliminary Statement ...............................................................................................1

Argument ...................................................................................................................2

I.      Plaintiffs Fail To State a Civil RICO Conspiracy Claim .........................................2

           A.      Plaintiffs do not plead an agreement ............................................2

           B.      Plaintiffs lack standing ..................................................................5

           C.      Plaintiffs fail to plead an underlying RICO violation ................6

           D.      Plaintiffs fail to overcome the presumption against extraterritoriality ..................................................................................9

II.     Plaintiffs Fail To State a Claim for Aiding and Abetting Fraud .............................9

III.    Plaintiffs' Claims Are Barred by Res Judicata and Issue Preclusion ....................10

Conclusion ...............................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abbott Labs v. Adelphia Supply USA,
   No. 15-CV-5826, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) .........................................4

Arnold v. Alphatec Spine, Inc.,
   No. 1:13-cv-714, 2014 WL 2896838 (S.D. Ohio June 26, 2014) .................................8

De Sole v. Knoedler Gallery, LLC,
   974 F. Supp. 2d 274 (S.D.N.Y. 2013) (Gardephe, J.) ....................................................4

Eastman Kodak v. Camarata,
   No. 05-CV-6384L, 2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006) ..............................10

EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.,
   246 F. Supp. 3d 52 (D.D.C. 2017) ....................................................................... passim

Elsevier Inc. v. W.H.P.R., Inc.,
   692 F. Supp. 2d 297 (S.D.N.Y. 2010) ...........................................................................1

Elsevier, Inc. v. Grossman,
   199 F. Supp. 3d 768 (S.D.N.Y. 2016) ...........................................................................9

Hemi Grp. LLC v. City of New York,
   559 U.S. 1 (2010) ..........................................................................................................5

In re Trilegiant Corp., Inc.,
   11 F. Supp. 3d 82 (D. Conn. 2014) ............................................................................3, 4

Kriss v. Bayrock Grp. LLC,
   No. 10 Civ. 3959, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) ....................................5

Leung v. Law,
   387 F. Supp. 2d 105 (E.D.N.Y. 2005) ...........................................................................8

Ling v. Deutsche Bank AG,
   No. 04 CV 4566, 2005 WL 1244689 (S.D.N.Y. May 26, 2005) ...................................7

MLSMK Inv. Co. v. JP Morgan Chase & Co.,
   651 F.3d 268 (2d Cir. 2011) .......................................................................................5, 7

Morin v. Trupin,
   747 F. Supp. 1051 (S.D.N.Y. 1990) ..............................................................................4

Nathel v. Siegal,
   592 F. Supp. 2d 452 (S.D.N.Y. 2008) .........................................................................10

Petroleos Mexicanos v. SK Eng'g & Constr. Co.,
    572 F. App'x 60 (2d Cir. 2014) ..................................................................................9

Picard v. Kohn,
    907 F. Supp. 2d 392 (S.D.N.Y. 2012) ........................................................................6

Reich v. Lopez,
    858 F.3d 55 (2d Cir. 2017) .........................................................................................8

Republic of Panama v. BCCI Holdings (Lux.) S.A.,
    119 F.3d 935 (11th Cir. 1997) ....................................................................................8

Salinas v. United States,
    522 U.S. 52 (1997) ......................................................................................................6

Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.,
    17 F. Supp. 3d 207 (E.D.N.Y. 2014) ..........................................................................6

Tymoshenko v. Firtash,
    57 F. Supp. 3d 311 (S.D.N.Y. 2014) ..........................................................................5

United States v. Applins,
    637 F.3d 59 (2d Cir. 2011) .........................................................................................4

Williams v. Affinion Grp., LLC,
    889 F.3d 116 (2d Cir. 2018) .......................................................................................7

Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC,
    286 F. Supp. 3d 634 (S.D.N.Y. 2017) ....................................................................5, 7

**Statutes & Rules**

18 U.S.C. § 1956(a) ................................................................................................................8

Private Securities Litigation Reform Act,

18 U.S.C. § 1964(c) .......................................................................................................5, 7, 9

iii

Defendant Keppel Offshore & Marine Ltd. ("Keppel") respectfully submits this reply memorandum in further support of its motion to dismiss the FAC.[1]

**Preliminary Statement**

Courts are "charged with flushing out frivolous RICO allegations at the earliest possible stage of litigation". Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 300 (S.D.N.Y. 2010). Plaintiffs' RICO and aiding and abetting fraud claims here are precisely the type of allegations that should be dismissed as a matter of law at the outset.

As Keppel showed in its Opening Brief, the only factual allegations sufficiently pleaded in the FAC as to Keppel are that it paid kickbacks (in Brazil) in order to secure contracts (in Brazil) to build drillships[2] for Sete. (See MTD 5; see also FAC ¶¶ 80-88; 104-11.) Indeed, Keppel publicly acknowledged the kickbacks, paying U.S. and foreign regulators over $400 million for its conduct.[3] However, paying kickbacks to win contracts from Sete is entirely different than conspiring with Sete and Petrobras to defraud Sete investors through misleading materials distributed by Sete and Petrobras—materials that Plaintiffs do not allege Keppel ever knew about or reviewed.

Like the FAC, Plaintiffs' response to Keppel's Opening Brief ("Opposition" or "Opp'n") offers speculation and innuendo but no factual assertions tying Keppel to a conspiracy to defraud Sete investors. This is fatal to Plaintiffs' claims, just as it was when Plaintiffs previously attempted to bring a virtually identical conspiracy claim against Keppel and other shipbuilders in federal court in Washington,

---

[1] "FAC", "Sete", "Petrobras" and the "Workers' Party" have the same definitions as those set forth in Keppel's opening brief ("Opening Brief" or "MTD").

[2] Keppel contracted with Sete to build six semi-submersible drilling units. For purposes of this motion, however, Keppel adopts the "drillship" terminology used in the FAC.

[3] In December 2017, Keppel entered into a Deferred Prosecution Agreement ("DPA") with the United States Department of Justice. (See MTD 1-2.)

D.C.  See EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A. ("EIG I" or "D.C. Action"), 246 F. Supp. 3d 52, 91 (D.D.C. 2017).  In dismissing Plaintiffs' claim, the court assumed as true that Keppel and the other named shipyard defendants paid kickbacks for Sete contracts, and found that Plaintiffs came "nowhere close to stating a sufficient claim of civil conspiracy".  Id. at 90-91.  Even though Keppel and the other shipyard defendants paid kickbacks, the EIG I court concluded there were "no facts establishing that any Shipyard Defendant was aware Petrobras . . . prepared marketing materials to present to potential equity investors; transmitted such materials to the United States . . . ; or intended to use investor money to underwrite the bribe scheme".  Id.

    Plaintiffs attempt to distance themselves from the EIG I court's refusal to find a conspiracy with respect to any of the defendants by arguing that the "allegations in the FAC . . . are more specific" because they plead that EIG representatives toured Keppel's shipyard in Brazil.  (Opp'n 9 n.1.)  That difference—the only one EIG points to—is of no moment to the outcome.  Among other things, it does not plausibly establish that Keppel knew about or agreed to participate in alleged securities fraud on Plaintiffs.

## Argument

**I. Plaintiffs Fail To State a Civil RICO Conspiracy Claim.**

  A. <u>Plaintiffs do not plead an agreement.</u>

    Although Plaintiffs' RICO claim is inadequate in a number of respects, the most significant—and most basic—deficiency is the absence of particularized allegations showing that Keppel "agreed" to join and participate in a conspiracy to defraud Sete investors.  (See MTD 10-12.)  Plaintiffs explicitly acknowledge they must adequately plead that Keppel "knew about and agreed to facilitate the scheme".  (Opp'n 8.)  Plaintiffs also acknowledge, as they must, that they do not allege an express agreement

2

by Keppel to join or participate in a conspiracy to defraud. (Opp'n 8.) Instead, Plaintiffs argue that Keppel's agreement to join a conspiracy to defraud Sete investors can be "inferred from circumstantial evidence". (Opp'n 8.) But the only alleged "circumstantial evidence" Plaintiffs identify is Keppel's payment of kickbacks and that EIG representatives toured Keppel's shipyard. (Opp'n 8-9.) Plaintiffs put these two things together and call the result a RICO violation, something they simply cannot do: "All the Plaintiffs have done is taken a series of events involving various individuals and entities, and various communications among them, and attempted to connect the dots, hoping that when they finish, a RICO claim will emerge." In re Trilegiant Corp., Inc., 11 F. Supp. 3d 82, 109 (D. Conn. 2014) (internal quotation marks omitted).

In their Opposition, Plaintiffs try to gloss over the lack of any connection between Keppel and alleged efforts to defraud Sete investors by recasting the purported conspiracy as one where the "overall objective . . . was to carry out the bribery and kickback scheme" and "a necessary part of that scheme" was fraudulently raising capital through misstatements and omissions to induce equity investors, such as Plaintiffs, to invest in Sete. (Opp'n 8.) This argument highlights Plaintiffs' "connect the dots" problem because it requires a conclusory leap that Keppel somehow knew that defrauding investors with allegedly misleading offering materials was a "necessary" part of the kickback scheme. In fact, the FAC nowhere alleges that Plaintiffs' money was needed or used to fund the contracts that Keppel (or any other shipyard) entered to build drillships. To the contrary, the FAC asserts that much of the funding for Sete came from debt financing, which reportedly was "readily available to Sete because of Sete's preferential relationship with the Brazilian government and financial institutions under the effective

3

control of the Brazilian government". (FAC ¶ 50.) This undermines any claim now by Plaintiffs that Keppel "must have known" raising capital from equity investors through securities fraud was a critical part of the purported conspiracy to commit large-scale bribery. It also makes clear that Plaintiffs cannot plead an agreement under RICO. See United States v. Applins, 637 F.3d 59, 75 (2d Cir. 2011) (an alleged conspirator "must be shown to have possessed knowledge of . . . the general contours of the conspiracy"); see also Morin v. Trupin, 747 F. Supp. 1051, 1067 (S.D.N.Y. 1990) ("[A] plaintiff 'must show that the defendants understood the scope of the enterprise . . . .'").[4]

Of course, even if Plaintiffs could somehow show Keppel was aware of the scheme to defraud EIG (which they cannot), Plaintiffs must still adequately plead that Keppel facilitated the alleged scheme: "Even if [Plaintiffs'] allegations gave rise to the inference that the defendants knew about the scheme, 'mere knowledge of the scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy.'" Abbott Labs v. Adelphia Supply USA, No. 15-CV-5826, 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017); see also In re Trilegiant Corp., 11 F. Supp. 3d at 109 ("Knowledge alone cannot be enough to subject a person to criminal and civil liability for conspiracy."). Here, Plaintiffs claim Keppel "facilitated" the effort to defraud because EIG and its vendor (at EIG's request) toured Keppel's shipyard. (FAC ¶¶ 71-73, 79.)

---

[4] The FAC similarly fails to "establish that [the defendant] agreed . . . to form the RICO enterprise". See Applins, 637 F.3d at 74. "When a plaintiff sufficiently alleges an enterprise, they allege by definition an explicit or implicit agreement among the defendants." In re Trilegiant Corp., 11 F. Supp. 3d at 109. Here, the FAC lacks factual allegations of an agreement among the alleged members of the purported RICO enterprise (see FAC ¶ 116) to violate the substantive provisions of RICO. (See MTD 14-16.) Nothing in De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 311 (S.D.N.Y. 2013) (Gardephe, J.) ("Assuming that a RICO enterprise exists . . . ."), cited by Plaintiffs (Opp'n 14), is to the contrary.

That is plainly insufficient. Among other things, there is no allegation that Keppel made any Sete-related investment statements to EIG representatives during those tours or at any other time, let alone any false statements.[5]

  B.  <u>Plaintiffs lack standing.</u>

Plaintiffs' Opposition makes clear that Keppel was not the cause of Plaintiffs' injury: "Petrobras and Sete fraudulently induced the Funds to invest in Sete . . . which directly caused injury to the Funds." (Opp'n 10); see <u>Hemi Grp. LLC v. City of New York</u>, 559 U.S. 1, 9 (2010) (requiring "some direct relation between the injury asserted and the injurious conduct alleged"). In addition, as discussed further below (see <u>infra</u> I.C), the PSLRA's RICO Amendment, 18 U.S.C. § 1964(c), bars "litigants from using artful pleading to boot-strap securities fraud cases into RICO cases", <u>MLSMK Inv. Co. v. JP Morgan Chase & Co.</u>, 651 F.3d 268, 274 (2d Cir. 2011). This means the alleged fraudulent solicitation by Petrobras and Sete, which purportedly induced Plaintiffs to invest in Sete, cannot serve as a basis for Plaintiffs' RICO claim. See <u>Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC</u>, 286 F. Supp. 3d 634, 643-51 (S.D.N.Y. 2017).

Removing the fraudulent solicitation by Petrobras and Sete, the FAC fails to allege any racketeering conduct directed at Plaintiffs that directly caused their alleged injury. See <u>Tymoshenko v. Firtash</u>, 57 F. Supp. 3d 311, 322 (S.D.N.Y. 2014) ("To establish proximate causation, Plaintiffs must plead that they were 'the targets . . . [or] intended victims' of the . . . scheme."). Plaintiffs have not identified (in the FAC or their

---

[5] <u>Kriss v. Bayrock Grp. LLC</u>, No. 10 Civ. 3959, 2016 WL 7046816, at *18 (S.D.N.Y. Dec. 2, 2016), does not support Plaintiffs' argument. (Opp'n 9.) Unlike the allegations made against defendants Arif, Satter, Schwartz and the Solomon defendants in <u>Kriss</u>, the FAC contains no allegation that Keppel prepared, approved, sent or was even aware of the allegedly misleading investment materials.

Opposition) any misrepresentation by Keppel to Plaintiffs that directly caused Plaintiffs' injury; the only alleged email exchange between Keppel and EIG involved "coordinating the schedule and details of [a] video shoot", and Plaintiffs do not allege any statement in the email, during the shipyard tour or in the video was fraudulent.  (FAC ¶¶ 72-74; Opp'n 10.)  Similarly, Keppel's alleged money laundering and payment of kickbacks are far too remote to have proximately caused Plaintiffs' injury.  Picard v. Kohn, 907 F. Supp. 2d 392, 397 (S.D.N.Y. 2012) ("Acts that merely 'furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act' do not directly cause that injury, and thus do not proximately cause it.").

Plaintiffs' RICO claim also is not ripe.  Plaintiffs admit their interests in Sete have not been finally determined in Sete's Brazilian bankruptcy proceedings, stating only that they "do not expect" to recover anything.  (Opp'n 11 n.3.)  The D.C. Action also bears on the ripeness of Plaintiffs' claim because, unlike the cases Plaintiffs cite (Opp'n 12), the D.C. Action is a "pending litigation in a different judicial forum" by Plaintiffs, seeking the same damages Plaintiffs seek to recover here, "that could reduce or eliminate [Plaintiffs'] alleged RICO injury".  Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 234 (E.D.N.Y. 2014).

C.   Plaintiffs fail to plead an underlying RICO violation.

The law is clear that in order to plead a RICO conspiracy, Plaintiffs must sufficiently plead an underlying substantive RICO claim.  Salinas v. United States, 522 U.S. 52, 65 (1997) (holding a RICO "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense").  In addition to the FAC's deficient enterprise allegations (see supra I.A n.3), it also fails adequately to allege two predicate acts or a pattern of racketeering activity.

6

As set forth in the Opening Brief, Plaintiffs must adequately plead at least two acts of "racketeering activity", and their wire fraud allegations do not qualify as a matter of law. (See MTD 16-18.) Despite Plaintiffs' claims to the contrary (Opp'n 15-16), sending misleading solicitation materials to equity investors may not serve as a predicate act under the PSLRA's RICO amendment. MLSMK Inv. Co., 651 F.3d at 277.

This is sufficient grounds for dismissal of Plaintiffs' entire RICO claim. Plaintiffs' Opposition explicitly argues that the "solicitation of investment funds through fraudulent means" was "a necessary part of [the] scheme". (Opp'n 8.) Where "Plaintiffs contend [that] wrongful acts were committed as part of a single fraudulent scheme", the alleged predicate acts are considered together, and "if any predicate act is barred by the PSLRA"—as the fraudulent solicitation of funds is—"it is fatal to the entire RICO claim". Ling v. Deutsche Bank AG, No. 04 CV 4566, 2005 WL 1244689, at * 4 (S.D.N.Y. May 26, 2005).

Plaintiffs contend that Keppel "has not demonstrated that the alleged conduct here is 'actionable'". (Opp'n 16.) That is both wrong and disingenuous. The alleged fraudulent solicitation is without question "actionable": the purported conduct involves the making and sending of intentionally misleading statements to induce funds to invest in Sete. (See, e.g., FAC ¶¶ 54, 57, 68, 76); Zohar, 286 F. Supp. 3d at 645 (holding conduct "actionable" when fraud "'coincid[es]' with a securities transaction").[6]

---

[6] Plaintiffs' remaining wire fraud allegations unrelated to the fraudulent solicitation (such as an email exchange regarding "the schedule" for a film shoot (FAC ¶ 72)) fail to identify a material misrepresentation, fail to animate a scheme to defraud and do not meet the heightened pleading standards. See Williams v. Affinion Grp., LLC, 889 F.3d 116, 124-26 (2d Cir. 2018); (see also MTD 16-17).

7

With respect to the remaining alleged predicate acts—money laundering and Travel Act violations—the FAC again fails to "allege facts sufficient to support each of the statutory elements". Republic of Panama v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 949 (11th Cir. 1997). Although Plaintiffs' Opposition claims the FAC "details how and when Keppel" allegedly engaged in money laundering, it nowhere alleges that the funds Keppel transferred constituted "proceeds" of an "unlawful activity" at the time of the transfer, which is a required element for an 18 U.S.C. § 1956(a) violation, as the case Plaintiffs cite in the Opposition makes clear. (Opp'n 16); see also Arnold v. Alphatec Spine, Inc., No. 1:13-cv-714, 2014 WL 2896838, at *13 (S.D. Ohio June 26, 2014). In addition, because the Travel Act does not apply extraterritorially (see infra I.D), Plaintiffs have not adequately alleged a Travel Act predicate violation.

Plaintiffs also fail to allege "continuity" and "relatedness", which are required to show a "pattern" of racketeering activity. See Reich v. Lopez, 858 F.3d 55, 59 (2d Cir. 2017). Plaintiffs contend Keppel agreed in August 2011 to pay kickbacks on six contracts—but do not allege any additional contracts between Keppel and Sete—and paid kickbacks on the contracts between September 2013 and the end of 2014, a period of less than two years. (Opp'n 5, 17.) A "bare assertion that predicate acts were committed by the defendant[] on one or more occasions during an approximately three-year period does not provide the court with any basis to conclude that the defendant['s] activities were not isolated or sporadic" and fails to plead a pattern of racketeering activity. Leung v. Law, 387 F. Supp. 2d 105, 125 (E.D.N.Y. 2005). Plaintiffs' relatedness argument fails because the payment of kickbacks does not share the same purpose, method or victims as fraudulently soliciting funds to invest in Sete. (See MTD 19.)

8

D.     Plaintiffs fail to overcome the presumption against extraterritoriality.

Plaintiffs admit that wire fraud and the Travel Act do not apply extraterritorially but argue they have pleaded "domestic" applications of those statutes. (Opp'n 18-19.) However, Plaintiffs fail to identify "a substantial amount" of domestic conduct "integral to" their wire fraud and Travel Act claims, which is the standard they must meet. Elsevier, Inc. v. Grossman, 199 F. Supp. 3d 768, 784 (S.D.N.Y. 2016); see also Petroleos Mexicanos v. SK Eng'g & Constr. Co., 572 F. App'x 60, 61 (2d Cir. 2014) ("[S]imply alleging that some domestic conduct occurred cannot support a claim of domestic application."). Again, basing a RICO claim on the transmission of investment materials to investors in the U.S. is barred by the PSLRA. (See supra I.C.) Plaintiffs also do not identify where Keppel allegedly violated the Travel Act. They simply refer to the DPA, which does not include charges under the Travel Act. (Opp'n 17.)

## II.    Plaintiffs Fail To State a Claim for Aiding and Abetting Fraud.

Plaintiffs' state law claim for aiding and abetting fraud fails for all the same reasons as its claim under RICO. While Plaintiffs argue that knowledge can be inferred "from the surrounding circumstances" (Opp'n 20), like in the RICO context, they do not identify any factual content pleaded in the FAC that supports an inference that Keppel had actual knowledge of the securities fraud on Plaintiffs.[7]

Keppel's Opening Brief also showed that the FAC does not plead the required elements of "substantial assistance" (MTD 22-23); in response, Plaintiffs repeat the argument that Keppel did not disclose the bribery scheme to EIG. (Opp'n 23-24.) This contention was rejected in EIG I and should be rejected here. Keppel did not have

---

[7] Plaintiffs again point to visits to the Keppel shipyard by EIG representatives but do not claim any misleading investment-related statements were made. (Opp'n 20-21.)

9

any disclosure duty to Plaintiffs, and Keppel's silence in this context can be understood, not as advancing securities fraud on Plaintiffs, but "most obviously" as Keppel "not want[ing] to implicate [itself] in criminal wrongdoing". EIG I, 246 F. Supp. 3d at 91.[8]

### III. Plaintiffs' Claims Are Barred by Res Judicata and Issue Preclusion.

Plaintiffs attempt to circumvent the D.C. court's clear holding in EIG I by arguing that dismissal was only for lack of personal jurisdiction and was not a "final judgment on the merits". (Opp'n at 24.) Plaintiffs are wrong. Unlike all the cases they cite, in the D.C. Action, personal jurisdiction overlapped completely with the substantive claim because Plaintiffs based personal jurisdiction on conspiracy jurisdiction, which "cannot exist unless the Amended Complaint actually states a plausible claim of civil conspiracy". EIG I, 246 F. Supp. 3d at 90. Accordingly, the ruling on personal jurisdiction was also a ruling on the sufficiency of the conspiracy claim itself. Indeed, the D.C. court dismissed the conspiracy claim for failure to state a claim against all defendants, including Petrobras, a party that remains in the D.C. Action currently and was not dismissed on personal jurisdiction grounds. See Id. at 91. Plaintiffs ignore that aspect of the court's decision, and they also ignore Keppel's argument that Plaintiffs could have, and therefore should have, alleged the claims they bring here in the D.C. Action (see MTD 23-24).

### Conclusion

For the foregoing reasons, as well as the reasons Keppel set forth in its Opening Brief, this Court should dismiss the claims against Keppel with prejudice.

---

[8] Eastman Kodak Co. v. Camarata and Nathel v. Siegal are not "on point". (Opp'n 20-23.) Keppel did not know of or approve any misrepresentation, unlike defendants in Nathel, 592 F. Supp. 2d 452, 469-70 (S.D.N.Y. 2008). And Keppel did not receive and then launder kickbacks in an effort to conceal the kickbacks as the defendant did in Eastman Kodak, No. 05-CV-6384L, 2006 WL 3538944, at *8 (W.D.N.Y. Dec. 6, 2006).

10

August 24, 2018

                                    Respectfully submitted,

                                    CRAVATH, SWAINE & MOORE LLP,

        by

                                      /s/ Rachel G. Skaistis
                                          Peter T. Barbur
                                        Rachel G. Skaistis
                                        Members of the Firm

                          Worldwide Plaza
                              825 Eighth Avenue
                              New York, NY 10019
                                (212) 474-1000
                                    pbarbur@cravath.com
                                    rskaistis@cravath.com

                        *Attorneys for Defendant Keppel Offshore & Marine Ltd.*