UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————x
EIG ENERGY FUND XIV, L.P.,                    :
EIG ENERGY FUND XIV-A, L.P.,                  :
EIG ENERGY FUND XIV-B, L.P.,                  :
EIG ENERGY FUND XIV (CAYMAN), L.P., :
EIG ENERGY FUND XV, L.P.,                     :
EIG ENERGY FUND XV-A, L.P.,                   :
EIG ENERGY FUND XV-B, L.P., and         :    Case No. 18-cv-01047-PGG
EIG ENERGY FUND XV (CAYMAN), L.P.,   :
                                              :
                  Plaintiffs,                 :
                                              :
            - against -                       :
                                              :
KEPPEL OFFSHORE & MARINE LTD.,                :
                                              :
                  Defendant.                  :
                                              :
——————————————————————x


# PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## Table of Contents

Preliminary Statement ................................................................................................... 1

Statement of Facts ........................................................................................................ 2

Argument ...................................................................................................................... 7

    I.    The FAC Adequately Pleads a Civil Rico Conspiracy Claim ................................. 7

        A.    The Funds Adequately Plead an Agreement to Join the Conspiracy ............ 8

        B.    The Funds Have Standing to Assert a RICO Conspiracy Claim .................. 9

            1.    The Funds plead proximate causation ................................................. 9

            2.    The Funds' RICO claim is ripe ......................................................... 11

        C.    The Funds Sufficiently Allege Underlying RICO Violations ..................... 12

            1.    The Funds' RICO claim should not be dismissed for failure to plead an enterprise ........................................................................... 12

            2.    The Funds properly allege racketeering activity .............................. 14

            3.    The Funds plead a pattern of racketeering activity .......................... 17

        D.    The Funds' Claims are Not Barred by a Presumption Against Extraterritoriality .................................................................................... 18

    II.    The FAC Adequately Pleads Aiding and Abetting Fraud ...................................... 19

        A.    The FAC Adequately Alleges Keppel's Knowledge of the Fraud .............. 20

        B.    The FAC Adequately Alleges Substantial Assistance ................................ 21

        C.    Neither *Res Judicata* nor Issue Preclusion Bar the Claims ........................ 24

Conclusion .................................................................................................................. 25

## <u>Table of Authorities</u>

<u>Cases</u>                                                                                              <u>Page(s)</u>

*Allstate Ins. Co. v. Lyons*,
    843 F. Supp. 2d 358 (E.D.N.Y. 2012)................................................................12

*Angermeir v. Cohen*,
    14 F. Supp. 3d 134 (S.D.N.Y. 2014)..................................................................8

*Anza v. Ideal Steel Supply Corp*,
    547 U.S. 451 (2006)............................................................................10 n.2

*Arnold Graphics Indus., Inc. v. Indep. Agent Ctr. Inc.*,
    775 F.2d 38 (2d Cir. 1985)..............................................................................24

*Baisch v. Gallina*,
    346 F.3d 366 (2d Cir. 2003)...............................................................................8

*Barrett v. Tema Dev. (1988), Inc.*,
    463 F. Supp. 2d 423 (S.D.N.Y. 2006)..............................................................24

*In re BC Funding, LLC*,
    519 B.R. 394 (Bankr. E.D.N.Y. 2014)..............................................................16

*Beck v. Prupis*,
    529 U.S. 494 (2000)...........................................................................................9

*Berrios v. N.Y.C. Housing Auth.*,
    564 F.3d 130 (2d Cir. 2009).....................................................................25 n.12

*Boyle v. U.S.*,
    556 U.S. 938 (2009).........................................................................................13

*Bunker Ramo Corp. v. United Business Forms, Inc.*,
    713 F.2d 1272 (7th Cir. 1983)..........................................................................25

*Carlin v. Davidson Fink LLP*,
    852 F.3d 207 (2d Cir. 2017)................................................................................7

*Cedar Swamp Holdings, Inc. v. Zaman*,
    487 F. Supp. 2d 444 (S.D.N.Y. 2007)........................................................13 n.5

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014)..............................................................17

*City of N.Y. v. Bello*,
    579 F. App'x 15 (2d Cir. 2014)..................................................................12, 13

*City of N.Y. v. Fedex Ground Package Sys., Inc.*,
  175 F. Supp. 3d 351 (S.D.N.Y. 2016) ...............................................................................11, 12

*City of N.Y. v. Venkataram*,
  396 F. App'x 722 (2d Cir. 2010) .............................................................................................10

*CMG Holdings Grp. v. Wagner*,
  No. 15-CV-5814, 2016 WL 4688865 (S.D.N.Y. Sept. 7, 2016) ...................................17

*Comp. Assocs. Int'l., Inc. v. Altai, Inc.*,
  126 F.3d 365 (2d Cir. 1997) ....................................................................................................24

*Crabhouse of Douglaston Inc. v. Newsday Inc.*,
  801 F. Supp. 2d 64 (E.D.N.Y. 2011) .....................................................................................15

*Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co. of N.Y.*,
  808 F. Supp. 213 (S.D.N.Y. 1992) .........................................................................................10

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
  No. 13 Civ. 41, 2014 WL 982859 (S.D.N.Y. March 11, 2014) .............................13 n.4

*De Sole v. Knoedler Gallery, LLC*,
  974 F. Supp. 2d 274 (S.D.N.Y. 2013) ...................................................14, 14 n.6, 17

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  726 F. Supp. 2d 225 (E.D.N.Y. 2010) ...................................................................................11

*Dreieck Finanz AG v. Sun*,
  No. 89 Civ. 4347, 1990 WL 11537 (S.D.N.Y. Feb. 9, 1990) .......................................22

*Eastman Kodak Co. v. Camarata*,
  No. 05-CV-6384L, 2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006)....................10, 11, 22

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A. et. al.*,
  246 F. Supp. 3d 52 (D.D.C. 2017) ............................................................................ *passim*

*Elsevier, Inc. v. Grossman*,
  199 F. Supp. 3d 768 (S.D.N.Y. 2016) ....................................................................................19

*Elsevier Inc. v. W.H.P.R., Inc.*,
  692 F. Supp. 2d 297 (S.D.N.Y. 2010)....................................................13 n.5, 14 n.6

*European Cmty. v. RJR Nabisco, Inc.*,
  764 F.3d 129 (2d Cir. 2014) ....................................................................................................19

*Fei Hang Chen v. Jing Fong Restaurant, Inc.*,
  582 F. Supp. 2d 602 (S.D.N.Y. 2008)..............................................................................19 n.9

*Fertitta v. Knoedler Gallery, LLC*,
  No. 14-CV-2259, 2015 WL 374968 (S.D.N.Y. Jan. 29, 2015)....................................19

*Four Star Capital Corp. v. Nynex Corp.*,
   No. 93 Civ. 3706, 1993 WL 350016 (S.D.N.Y. Sept. 9, 1993) ..............................................24, 25

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
   479 F. Supp. 2d 349 (S.D.N.Y. 2007)..................................................................................20 n.10

*Giaccio v. City of N.Y.*,
   No. 04 Civ. 3653, 2005 WL 95733 (S.D.N.Y. Jan. 19, 2005) ........................................................7

*Grosso v. Radice*,
   No. 07-CV-3620, 2009 WL 749906 (E.D.N.Y. Mar. 16, 2009) ..................................................25

*Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*,
   No. 15-cv-3784, 2016 WL 6110565 (S.D.N.Y Aug. 4, 2016)..............................................13 n.5

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ..............................................................................................................18

*Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*,
   347 F. App'x 711 (2d Cir. 2009)..........................................................................................11 n.3

*Harte v. Iberia Airlines*,
   Case No. 02 Civ. 3624, 2002 WL 1870251 (S.D.N.Y. Aug. 13, 2002).......................................24

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010) ..................................................................................................................10 n.2

*JP Morgan Chase Bank v. Winnick*,
   406 F. Supp. 2d 247 (S.D.N.Y. 2005)..................................................................................21, 23

*Kriss v. Bayrock Grp. LLC*,
   No. 10 Civ. 3959, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016)..............................................8, 9

*Kuczynski v. Ragen Corp.*,
   732 F. Supp. 378 (S.D.N.Y. 1989)......................................................................................17, 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs. LLC*,
   No. 12-cv-3723, 2016 WL 5719749 (S.D.N.Y. Sept. 29, 2016)................................................20

*Marini v. Adamo*,
   812 F. Supp. 2d 243 (E.D.N.Y. 2011)..................................................................................16

*Mauro v. S. New England Telecomms., Inc.*,
   208 F.3d 384 (2d Cir. 2000).................................................................................................19 n.9

*Menzies v. Seyfarth Shaw LLP*,
   197 F. Supp. 3d 1076 (N.D. Ill. 2016) ................................................................................15

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998).....................................................................................................11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
No. 91 CIV. 2923, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994)....................................16

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
651 F.3d 268 (2d Cir. 2011).............................................................................15 n.7

*Moore v. Mara*,
No. 3:08CV1946, 2010 WL 3270223 (D. Conn. Aug. 17, 2010) .................................25

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017)..............................................................13 n.5

*Nat'l Union Fire Ins. v. Turtur*,
892 F. 2d 199 (2d Cir. 1989).......................................................................................23

*Nathel v. Siegel*,
592 F. Supp. 2d 452 (S.D.N.Y. 2008)...............................................................20, 21, 23

*Ouwinga v. Benistar 419 Plan Servs., Inc.*,
694 F.3d 783 (6th Cir. 2012)........................................................................................15

*Petroleos Mexicanos v. SK Eng'g & Constr. Co. Ltd.*,
572 F. App'x 60 (2d Cir. 2014).....................................................................................19

*Phifer v. Home Savers Consulting Corp.*,
No. 06 CV 3841, 2007 WL 295605 (E.D.N.Y. Jan. 30, 2007) ....................................22

*Powers v. British Vita, P.L.C.*,
57 F.3d 176 (2d Cir. 1995)...........................................................................................15

*Rezner v. Bayerische Hypo–Und Vereinsbank AG*,
630 F.3d 866 (9th Cir. 2010)........................................................................................15

*RJR Nabisco, Inc. v. European Cmty.*,
136 S. Ct. 2090 (2016) ...........................................................................................18, 19

*Salinas v. U.S.*,
522 U.S. 52 (1997) .........................................................................................8, 9, 10, 14

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
17 F. Supp. 3d 207 (E.D.N.Y. 2014).......................................................................11, 12

*Slay's Restoration LLC v. Wright Nat'l Flood Ins. Co.*,
884 F.3d 489 (4th Cir. 2018)...................................................................................10 n.2

*Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*,
882 F.3d 52 (2d Cir. 2018)......................................................................................25 n.12

*U.S. v. Applins*,
637 F.3d 59 (2d Cir. 2011)...............................................................................8, 12, 13 n.4

*U.S. v. Daidone*,
  471 F.3d 371 (2d Cir. 2006) .........................................................................18

*U.S. v. Lee*,
  660 F. App'x 8 (2d Cir. 2016) ......................................................................13

*U.S. v. Reifler*,
  446 F.3d 65 (2d Cir. 2006) ...........................................................................15

*Wight v. BankAmerica Corp.*,
  219 F.3d 79 (2d Cir. 2000) ...........................................................................20

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
  286 F. Supp. 3d 634 (S.D.N.Y. 2017) ..........................................................16

**Statutes**

18 U.S.C. § 1961(4) ............................................................................................13

18 U.S.C. § 1964(c) ......................................................................................15 n.7

Brazilian Law No. 11.101 ..............................................................................11 n.3

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(c) ........................15

Plaintiffs EIG Energy Fund XIV, L.P., EIG Energy Fund XIV-A, L.P., EIG Energy Fund XIV-B, L.P., EIG Energy Fund XIV (Cayman), L.P., EIG Energy Fund XV, L.P., EIG Energy Fund XV-A, L.P., EIG Energy Fund XV-B, L.P. and EIG Energy Fund XV (Cayman), L.P. ("Plaintiffs" or "the Funds") respectfully submit this memorandum of law in opposition to the motion by defendant Keppel Offshore & Marine Ltd. ("Keppel" or "Defendant") to dismiss the First Amended Complaint ("FAC," ECF No. 17).

## Preliminary Statement

From at least 2001 through 2014, Keppel was a partner in crime with Petróleo Brasileiro, S.A. ("Petrobras").  As Keppel admitted in December of 2017 in its deferred prosecution agreement with the Department of Justice and the United States Attorney's Office for the Eastern District of New York (the "DPA"), "together with others, [Keppel] did knowingly and willfully conspire to commit offenses against the United States" in violation of the Foreign Corrupt Practices Act (the "FCPA").  Under the DPA, Keppel and its U.S. affiliate paid over $422 million in criminal penalties.

But it was not just the United States against whom Keppel "knowingly and willfully" conspired.  Keppel, Petrobras and others conspired against the Plaintiffs.  As set forth in the DPA, they conspired to conduct and, in fact, conducted a massive bribery and kickback scheme relating to an off-balance sheet company formed in 2010 by Petrobras, Sete Brasil Participações, S.A. ("Sete").  Petrobras formed Sete to raise billions of dollars of outside debt and equity capital to build twenty-eight offshore oil drilling ships at a cost of $700 million a ship. A necessary component of that conspiracy was that Petrobras would fraudulently raise billions of dollars of capital – including over US $221 million from Plaintiffs – without disclosing the bribery and kickback scheme to potential investors.

Despite its arguments to the contrary, Keppel knew that. It obviously knew that Petrobras could not possibly reveal to investors, which included Brazilian banks, the four largest Brazilian pension funds and Plaintiffs, that Petrobras (and Sete) would utilize Sete to perpetuate a bribery and kickback scheme. If Petrobras had done so, as Keppel knew, no investor, including Plaintiffs, would have given Petrobras a penny, and Petrobras, Keppel and others would have been criminally prosecuted then and there by Brazilian authorities.

But, it is not just Keppel's knowledge of this fraudulent fundraising scheme that results in Keppel's liability. Keppel provided substantial assistance to Petrobras in its fundraising efforts by hosting due diligence meetings with Plaintiffs' representatives and providing them shipyard tours, despite the fact that when it did so, Keppel had already agreed with Petrobras to pay bribes to secure Sete drillship contracts. These due diligence meetings were not benign, as Keppel would have it. Instead, they aided Petrobras in legitimizing an otherwise fraudulent investment. Keppel did not, however, stop there. Keppel actively hid the bribery/kickback scheme from Plaintiffs and the public when it secretly and illegally laundered hundreds of thousands of dollars of bribe payments through accounts in New York held by various shell companies.

As such, the FAC's allegations that Keppel should be held liable as a RICO conspirator and that it aided and abetted in Petrobras and Sete's fraud are more than sufficient. The motion should be denied.

**Statement of Facts**

**Keppel's Long-Running Involvement in The Petrobras Corruption Scheme**

Keppel, a Singapore-based corporation that builds offshore drillships and operates a shipyard in Brazil through wholly-owned intermediate entities, participated in a long-running corruption scheme in which it paid kickbacks and bribes to Petrobras, an entity controlled by

Brazil's governing political party, the Workers' Party.  FAC ¶¶ 3-4.  From 2001 to 2011, Keppel systematically paid bribes and kickbacks to Petrobras and Workers' Party officials to obtain contracts for Keppel and its subsidiaries.  Keppel and its subsidiaries entered into at least seven contracts with Petrobras, worth approximately $4 billion, and in exchange paid $40 million in bribes.  *Id.* ¶¶ 31-45.  By 2011, Keppel was a long-standing and important player in the scheme. *Id.*

**Keppel and its Co-conspirators Perpetuate the Scheme through the Creation of Sete**

In 2006, Petrobras announced the discovery of new oil reserves (the "Pre-Salt Reserves"), believed to contain up to 50 billion barrels of oil.  *Id.* ¶ 46.  To finance a massive capital expenditure program to build drillships and extract the oil, Petrobras created Sete, an off-balance sheet vehicle expressly formed to raise billions of dollars of debt and equity capital from third-party financiers in the United States and elsewhere.  *Id.* ¶¶ 5, 47.  Once constructed, the drillships would then be subjected to long-term, exclusive leases to Petrobras, whose drillship lease payments would be used as the sole source to pay a return to Sete's debt and equity investors.  *See id.* ¶ 4.  The initiative to create Sete was led by João Carlos de Medeiros Ferraz ("Ferraz") and Pedro José Barusco Filho ("Barusco"), then Executive Manager of Engineering and General Manager of Finance Treasury at Petrobras, respectively.  *Id.* ¶¶ 5, 10, 47.

According to an information memorandum that Petrobras and Sete prepared and provided to potential investors, the plan was for Sete – through contracts with shipyard companies like Keppel – to build and own up to twenty-eight drillships and charter them to Petrobras.  *Id.* ¶ 49.  Contrary to misrepresentations in Sete's marketing materials, Sete was actually created to perpetuate Petrobras' corruption scheme.  As Barusco has testified, the "idea of kickbacks" and Sete were "born together."  *Id.* ¶¶ 47-48.  Ferraz became Sete's Chief Executive Officer and Barusco its Chief Operating Officer.  *Id.* ¶ 52.  Petrobras effectively ran

Sete, and Petrobras' suppliers, including Keppel, migrated to Sete.  *Id.*  From its formation, Sete was part of the longstanding kickback scheme with Keppel as a key participant.  *Id.* ¶¶ 47-52.

By April 2011, Ferraz, Barusco, and Zwi Skornicki ("Skornicki"), Keppel's agent, had agreed that Petrobras would favor a Sete bid in the bidding process for drillships and that Keppel would be included as one of the shipyards.  *Id.* ¶¶ 10, 52.  In October 2011, representatives of Sete and Petrobras opened accounts at Banque Cramer, a Switzerland-based bank, in the name of phantom offshore companies to launder Sete-related bribes.  The accounts were used to receive Sete-related bribes from conspirators, including Keppel.  *Id.* ¶ 53.

**The Conspiracy Targets U.S. Investors**

To target United States investors, Petrobras and Sete fraudulently prepared documents that they knew contained material omissions and purposely misleading information. They knowingly used wires to transmit the fraudulent information to Plaintiffs' investment manager, EIG Management Company LLC ("EIG").  *Id.* ¶¶ 55-67.  As a result of this fraud, Plaintiffs utilized wires from the United States to transmit investment funds to Sete.  *Id.* ¶ 76.

Keppel knew that Sete needed to raise capital from potential investors to fund the construction of the drillships and to fund Keppel's bribes and kickbacks.  *Id.* ¶¶ 5, 70, 77-78. Keppel substantially assisted with Petrobras and Sete's fraudulent fundraising activities.  *Id.* at ¶¶ 70-75.  No later than August of 2011, Keppel knew that EIG was a potential Sete investor.  *Id.* at ¶ 71.  In August 2011, Kevin Corrigan, a senior EIG executive, met with Keppel Brazil's senior executives at its Brazilian shipyard.  Keppel Brazil's executives made a power point presentation about its shipbuilding business, and gave Corrigan and others a tour of the shipyard.  *Id.* ¶ 71.  A few weeks later, Barusco sought permission from Keppel Brazil for EIG's vendor, Barrington Media, to film a shipyard video for EIG's investors.  On August 19, 2011, an email confirmation went to Barrington Media, copying Corrigan and Keppel Brazil's CEO, Kai Choong Kwok, who

was fully aware of Keppel's participation in the bribery and kickback conspiracy.  *Id.* ¶72.
Keppel also hosted EIG at its shipyard in August of 2013.  *Id*. ¶ 79.  At no time did Keppel
disclose the bribery and kickback scheme to EIG or its agents.  *Id.* ¶¶ 74-75.

    Based on the wrongful conduct of the conspirators, including Keppel, the Funds
began to invest in Sete in August 2012 through a series of wires originating in California and
New York, and continued to make payments into early 2015.  *Id*. ¶ 76.  Plaintiffs invested over
$221 million in Sete.  *Id.* ¶ 8.  Had Plaintiffs or EIG known the truth about the scheme, they
would have never invested in Sete.  *Id*. ¶ 76.

    On August 7, 2012, four days after Plaintiffs funded their first investment into
Sete, Keppel issued a press release acknowledging that Sete was "established" in December 2010
by Petrobras, banks, Brazilian pension funds and "international finance investors."  *Id*. ¶ 78.
Keppel's reference to "international finance investors" was a reference to Plaintiffs.  *Id*. ¶¶ 77-
78.  Keppel further stated that it had contracted with Sete for the design and construction of five
drillships for "approximately US $4.1 billion" that were scheduled for delivery through 2019.
*Id.* ¶ 78.

    Keppel paid approximately $14.4 million in bribes to Petrobras, Sete, and the
Workers' Party for the Sete contracts and used multiple instrumentalities of interstate commerce
to negotiate, authorize, and coordinate the concealment of and the execution of these bribes.  *Id*.
¶ 80.  Starting no later than September, 2013 and continuing through at least the end of 2014,
Skornicki, acting on Keppel's authority, laundered hundreds of thousands of dollars' worth of
Sete-related kickback payments from an account maintained at Delta National Bank in New
York in the name of Deep Sea Oil Company to an account at Citibank North America in New
York and from there to an account in Switzerland in the name of Shellbill Finance S/A.  *Id*.
¶¶ 86-88.  While Plaintiffs invested over $221 million in Sete, after Keppel began laundering

bribes in September of 2013, Plaintiffs invested in Sete on a rolling basis over $129 million of its total investment.  *Id.* ¶¶ 8, 76, 86-87.

**Sete Leadership and Keppel Admit to the Scheme**

In 2015, police and prosecutors in Brazil publicly disclosed Operação Lava Jato ("Operation Car Wash"), a massive corruption investigation that revealed the corruption and kickback scheme.  *Id.* ¶ 10.  As part of the investigation, Barusco, Ferraz, and Keppel's agent, Skornicki, were arrested and entered into plea arrangements.  *Id.* ¶¶ 91-92.  In his plea statements, Barusco admitted that when he and Ferraz came up with the idea to form Sete, they were well aware and intended that it would perpetuate and expand the existing bribery and kickback scheme involving the same participants.  *Id.* ¶ 93.

Barusco specifically testified to Keppel's involvement, including that Keppel entities authorized the payment of bribes and kickbacks in connection with at least seven contracts it received from Petrobras that were worth approximately $4 billion between 2001 and 2011.  *Id.* ¶ 96.  He also testified that Keppel entities received six Sete contracts in exchange for its continued participation in the bribery and kickback scheme.  *Id*.

Skornicki similarly testified that he "made it clear to Keppel" that he was paying "a bribe . . . to Petrobras officials" and that when Barusco requested a bribe, Skornicki "reported that to Singapore directly."  *Id.* ¶ 97.  Skornicki identified various Keppel executives who were aware of the scheme, including Keppel Brazil CEOs Tay Kim Hock and Kai Choong Kwok, CEO of Keppel Offshore and Marine, Yew Yuen Chow, and Senior Executive Director of Keppel Corporation Ltd., Tong Chong Heong.  *Id.*  The Brazilian Court concluded that it was "proven beyond any reasonable doubt . . . that Zwi Skornicki, representing the interests of Keppel Fels Group, paid improper benefits in contracts entered into by the Group, specifically by the subsidiary Brasfels Shipyard, to Sete Brasil for the supply of six drilling rigs with Petrobras .

. . ." *Id.* ¶ 99.  Skornicki was convicted of five counts of offering bribes, eleven counts of money laundering, and the charge of belonging to a criminal organization.  *Id.* ¶ 100.

On December 22, 2017, Keppel admitted in the DPA that it "did knowingly and willfully conspire" to violate the FCPA through its participation in the kickback and bribery scheme.  *Id.* ¶ 104.  Keppel and its wholly-owned U.S. subsidiary admitted to paying bribes for Sete and Petrobras-related contracts, and that it executed agreements that were intended to facilitate bribe payments and conceal their purpose.  *Id.* ¶ 108.  Keppel's admission in the DPA that it committed violations of the FCPA constitutes an admission that it conspired to commit and did commit the RICO predicate acts of Travel Act violations and money laundering.  *Id.* ¶¶ 2, 104-08.

As a result of the public revelation of the scandal, Sete lost support from its financial agents and filed a Brazilian insolvency proceeding in April 2016.  Plaintiffs' US $221 million investment in Sete is now worthless.  *Id.* ¶¶ 101-03.

**Argument**

To survive a motion to dismiss, a plaintiff need only plead enough facts "to state a claim to relief that is plausible on its face" where the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor.  *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) (quotations and citation omitted).  Dismissal is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."  *Giaccio v. City of N.Y.*, No. 04 Civ. 3653, 2005 WL 95733, at *5 (S.D.N.Y. Jan. 19, 2005) (quotations and citation omitted).

**I.      The FAC Adequately Pleads a Civil Rico Conspiracy Claim**

None of Keppel's attacks on the Funds' RICO conspiracy claim has merit.

A.     **The Funds Adequately Plead an Agreement to Join the Conspiracy**

Keppel first argues that the FAC fails to plead a RICO agreement.  But as Keppel acknowledges, the Funds need not allege an express agreement – "whether in a meeting, conversation, document or otherwise."  Keppel MTD at 11.  A plaintiff must only allege that the defendant "knew about and agreed to facilitate the scheme."  *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (quotations and citation omitted).  Facts that "suggest" the entities "operated in a way that would create a pattern of racketeering activity," "coordination" among entities, and the commission of multiple predicate acts by entities are sufficient to state an agreement.  *Kriss v. Bayrock Grp. LLC*, No. 10 Civ. 3959, 2016 WL 7046816, at *18 (S.D.N.Y. Dec. 2, 2016).  Moreover, "a defendant's agreement to join a conspiracy can be inferred from circumstantial evidence of the defendant's . . . knowledge of wrongdoing."  *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 154 (S.D.N.Y. 2014) (quotations and citation omitted).

Keppel claims that the FAC fails to allege that Keppel knew about or agreed to facilitate a scheme to defraud investors.  That argument wrongfully assumes the only conspiracy objective was to defraud investors.  The FAC is clear that the overall objective of the conspiracy was to carry out the bribery and kickback scheme, and a necessary *part* of that scheme was the solicitation of investment funds through fraudulent means.  FAC ¶¶ 5, 70, 117-18.  A plaintiff need not allege that a defendant "agree[d] to commit or facilitate each and every part of the substantive offense" to state a RICO conspiracy claim.  *See Salinas v. U.S.*, 522 U.S. 52, 63 (1997).  "[A] defendant may agree to join a RICO conspiracy . . . without 'full knowledge of the details of the conspiracy'" so long as the defendant knows of and agrees to the "general criminal objective" of the scheme.  *U.S. v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011).

Here, not only does the FAC allege Keppel's agreement to the "general criminal objective" of the bribery and kickback scheme (a fact undisputed in the DPA), but the FAC

alleges that Keppel participated in the fraud against the Funds.  Keppel claims that the "sole

particularized allegation" with respect to Keppel is that it authorized kickback payments to

receive Sete contracts.  *See* Keppel MTD at 11.  But that ignores an entire section of the FAC

that identifies specific acts that Keppel took to entice the Funds to invest in Sete, including

hosting several due diligence meetings with Plaintiff's representative and vendors at Keppel

Brazil that were clearly designed to entice the Plaintiffs to invest in Sete, so that Sete would, in

turn, hire Keppel to build several of the required drillships, and thus feed the bribery and

kickback mill that Petrobras and Keppel were operating.  FAC ¶¶ 6, 70-79.  *See Kriss*, 2016 WL

7046816, at \*18 (extensive participation in the scheme supports an inference that the defendant

adopted the goal of furthering or facilitating the criminal endeavor).[1]  These facts plainly allege

RICO agreement.

**B.**       **The Funds Have Standing to Assert a RICO Conspiracy Claim**

1.       The Funds plead proximate causation

Keppel next argues that the Funds lack standing because their injury was not

caused by Keppel's predicate acts, but by acts committed by other members of the conspiracy.

This argument ignores the basic principle that "conspirators are liable for the acts of their co-

conspirators."  *Salinas*, 522 U.S. at 64; *see Beck v. Prupis*, 529 U.S. 494, 505-07 (2000) (noting

that in a RICO conspiracy case, the injury occurs "by reason of a conspiracy").  Here, the FAC

---

[1] Keppel's reliance on the purported finding in *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A. et al.*, 246 F. Supp. 3d 52 (D.D.C. 2017) (the "D.C. Action") that there were no facts to establish an agreement to participate in a conspiracy to defraud is misleading.  Putting aside that the D.C. Action was dismissed against Keppel for lack of jurisdiction and hence there were no findings on the merits (*see infra* at p. 24), the fact allegations in the FAC concerning Keppel are more specific than those alleged in the D.C. Action's complaint.  Specifically, the allegations concerning Keppel's interactions with EIG and EIG's vendors as alleged in paragraphs 70-79 of the FAC were not in the D.C. Action's complaint.  *Compare* FAC, Dkt. No. 17 with First Amended Complaint in the D.C. Action, 246 F. Supp. 3d 52 (D.D.C. 2017), ECF No. 11.

alleges that Petrobras and Sete fraudulently induced the Funds to invest in Sete by committing multiple acts of wire fraud, which directly caused injury to the Funds.  FAC ¶¶ 54-67, 76, 121-23.  Keppel is equally liable as a fellow conspirator.  *See Salinas*, 522 U.S. at 64.[2]

In addition, Keppel's own acts proximately caused the Funds' injury.  First, Keppel's wire fraud (exchanging emails with the Funds' investment advisor) "contribute[d] directly to the deception of the plaintiffs" and was "at least incidental" to the scheme to fraudulently induce the Funds' investment.  *See Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co. of N.Y.*, 808 F. Supp. 213, 228 (S.D.N.Y. 1992); FAC ¶¶ 70-74.  Second, Keppel's money laundering directly harmed the Funds because it concealed the bribery and kickback scheme, which induced Plaintiffs to make over $129 million in continued investments in Sete.  FAC ¶¶ 76, 86-88 121-23.  Had Plaintiffs learned of the illicit scheme, they would have ceased their investment in Sete. *Id*. ¶ 76.  *See City of N.Y. v. Venkataram*, 396 F. App'x 722, 724–25 (2d Cir. 2010) (Summary Order) (finding proximate causation where the defendant designed money laundering to conceal fraudulent activities and, absent these activities, the City would have grown suspicious of the scheme); *Eastman Kodak Co. v. Camarata*, No. 05-CV-6384L, 2006 WL 3538944, at *11 (W.D.N.Y. Dec. 6, 2006) (plaintiff's allegations that money laundering concealed crime and

---

[2] The causation cases that Keppel relies upon are readily distinguishable as they involve far more remote losses to plaintiffs, passing through third or fourth parties, who were not alleged conspirators.  *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 11 (2010) (rejecting causation argument that would require the court to "extend RICO liability to situations where the defendant's fraud on the third party (the State) has made it easier for a *fourth* party (the taxpayer) to cause harm to the plaintiff (the City)"); *Anza v. Ideal Steel Supply Corp*, 547 U.S. 451, 457-58 (2006) (defendant steel company's fraudulent failure to pay taxes caused injury to a third party (the State), while competitor plaintiff's injuries from defendant's resulting artificially low prices were merely incidental); *Slay's Restoration LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494-95 (4th Cir. 2018) (no proximate causation where non-conspirator was injured, declined to pay contractor, who declined to pay plaintiff subcontractor).

allowed it "to continue longer than it otherwise would have" sufficient to allege that money
laundering proximately caused plaintiff's injury.)

> 2.      The Funds' RICO claim is ripe

Nor can Keppel prevail on its ripeness argument.  The FAC alleges a "clear and
definite injury" and the *validity* or *fact* of that injury is not contingent on the outcome of the Sete
bankruptcy[3] or the D.C. Action.  *See City of N.Y. v. Fedex Ground Package Sys., Inc.*, 175 F.
Supp. 3d 351, 369-70 (S.D.N.Y. 2016).  When an investor is fraudulently induced to invest in a
venture, its injury occurs, and hence is ripe, at the time of investment.  *See In re Merrill Lynch
Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) (holding investor's injury was ripe at the time
of investment).  Keppel's argument relies exclusively on ripeness cases where RICO plaintiffs
were owed money on loans or other obligations, and their injuries were thus speculative because
they had not exhausted their remedies to recover.  *See DLJ Mortg. Capital, Inc. v. Kontogiannis*,
726 F. Supp. 2d 225, 237 (E.D.N.Y. 2010) (plaintiff lenders could still mitigate their injury in
foreclosure proceedings); *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp.
3d 207, 214, 231-33 (E.D.N.Y. 2014) (plaintiffs' injury contingent on the outcome of arbitration
over insurance claim reimbursement).

Here, Plaintiffs are not lenders or claimants with a right to be reimbursed for their
out-of-pocket spending; they are equity investors who have already lost their money and are

---

[3] The "Sete bankruptcy" is a judicial recovery proceeding (Brazilian Law No. 11.101), which
bears little resemblance to U.S. bankruptcy cases.  While Keppel relies on *Harbinger Capital
Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*, 347 F. App'x 711 (2d Cir.
2009), Keppel does not even attempt to explain how the reasoning in that case is applicable to a
Brazilian proceeding.  In any event, even assuming the Brazilian proceeding can be equated to a
U.S. bankruptcy case, *Harbinger* is inapplicable here. Plaintiffs are minority equity owners with
no involvement in the Brazilian proceeding and do not expect to recover any value through that
process.  In *Harbinger*, appellants were first in line in potential recovery and they
"acknowledge[d] the possibility of some recovery through the bankruptcy proceedings." *Id.* at
713.

suing for damages based on a fraud.  *See* FAC ¶¶ 1, 6-9; *Allstate Ins. Co. v. Lyons*, 843 F. Supp.

2d 358, 374 (E.D.N.Y. 2012) (declining to dismiss RICO claims where plaintiff "is not seeking

redress for an uncollectible debt; rather, it seeks damages for paying millions of dollars to

defendants based upon their allegedly fraudulent claims").  As equity investors, the Funds have

no contractual or other right to payment.

   The ongoing D.C. Action also has no bearing on Plaintiffs' injury.  *See Fedex*

*Ground Package Sys.,* 175 F. Supp. 3d at 369-70 (possibility that eventual recovery under

separate claim might reduce or negate RICO damages does not affect ripeness).  Keppel's

reliance on *Sky Med* is misplaced.  In finding a RICO claim not ripe due to ongoing actions for

claim reimbursement, that court specifically contrasted *Lyons*, where RICO claims *were* ripe

once the reimbursement actions were concluded even though plaintiffs could still recover

through other lawsuits for fraud.  *Sky Med. Supply Inc.*, 17 F. Supp. at 231-34 (*citing Lyons*, 843

F. Supp. 2d at 374).  The mere "possibility that eventual recovery of damages under [a separate

statute] may reduce or negate RICO damages" does not render a claim unripe where, as here, the

injury is clear and definite.  *Fedex Ground Package Sys.*, 175 F. Supp. 3d at 369.

### C. The Funds Sufficiently Allege Underlying RICO Violations

   1. The Funds' RICO claim should not be
     dismissed for failure to plead an enterprise

   Contrary to Keppel's claim, Plaintiffs do not need to plead a RICO enterprise to

establish a RICO conspiracy.  The Second Circuit recognizes "that the establishment of an

enterprise is not an element of the RICO conspiracy offense."  *Applins*, 637 F.3d at 75; *see City*

*of N.Y. v. Bello*, 579 F. App'x 15, 17 (2d Cir. 2014) (summary order) (existence of RICO

enterprise not required for RICO conspiracy claims).[4]

Even if pleading an enterprise were required, the FAC does so. "Congress deliberately defined the term ['enterprise'] as broadly as possible." *U.S. v. Lee*, 660 F. App'x 8, 15 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1599, 197 L. Ed. 2d 725 (2017) (quotations and citation omitted). An association-in-fact enterprise under 18 USC § 1961(4), as alleged in the FAC ¶ 116, only requires "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

Keppel does not appear to dispute, nor can it, that Plaintiffs adequately alleged a purpose and longevity. *See* FAC ¶¶ 3-8, 11-13, 48, 52, 54-89, 96-98, 115-18 (alleging purpose); FAC ¶¶ 45-90 (alleging longevity). The FAC also alleges the required relationships. The FAC describes the longstanding bribery scheme (FAC ¶¶ 45-90; 95-97; 99; 104-111), the relationship between Keppel, Petrobras, the Workers' Party, and Sete (*Id.* ¶¶ 35-45, 80-89, 96-97, 107-111, 116), and the actions that Keppel took at the request of Sete and Petrobras to solicit an investment from Plaintiffs and conceal the fraud (FAC ¶¶ 70-79, 86-89). *See Lee*, 660 F. App'x at 15 (evidence that enterprise consisted of members centralized around an avenue, "that its purpose was to enrich its members through narcotics trafficking and armed robberies, and that the members worked together for over a decade to effectuate this purpose," was sufficient).[5]

---

[4] *D. Penguin Bros. Ltd. v. City Nat'l Bank*, No. 13 Civ. 41, 2014 WL 982859 (S.D.N.Y. March 11, 2014) – the only case Keppel cites for its claim that an enterprise is required (Keppel MTD at 14) – devotes a mere three sentences to analyzing RICO conspiracy and any suggestion that an enterprise must be pled contradicts *Applins*, 637 F.3d at 59.

[5] Keppel's cited case law is distinguishable. *See* Keppel MTD at 15. *Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, No. 15-cv-3784, 2016 WL 6110565 at *7-8 (S.D.N.Y Aug. 4, 2016), *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 302 (E.D.N.Y. 2017), *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010), and *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007) all involved "hub-and-spokes" enterprises and/or

Nor do the Funds need to allege that Keppel controlled the enterprise.  *See* Keppel

MTD at 15.  When pleading conspiracy, a plaintiff "must prove only that the defendants . . .

know the general nature of the conspiracy and that the conspiracy extends beyond [their]

individual roles." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 311 (S.D.N.Y. 2013)

(Gardephe, J.) (quotations and citation omitted).[6]  Keppel sufficiently alleges these factors.

2.     The Funds properly allege racketeering activity

The FAC plainly alleges racketeering activity though wire fraud, money

laundering and Travel Act violations.  *See* FAC ¶¶ 54-89.  As for wire fraud, Keppel complains

that the FAC fails to contain sufficient detail to satisfy the heightened pleading requirement

under Rule 9.  Specifically, Keppel argues that there are no facts to support either Keppel's

"intent" or that Keppel used or caused the use of wires to further the conspiracy.  Keppel MTD at

16-17.  But, under conspiracy law, Keppel may be charged with the intent and use of wires by its

fellow conspirators, which Keppel does not – because it cannot – contend the Funds failed to

plead.  *See Salinas*, 522 U.S. at 64; FAC ¶¶ 54-67 (detailing co-conspirators Sete and Petrobras'

intent and use of wires).  In any event, the FAC does plead Keppel's intent through facts

establishing its motive and opportunity to defraud the Sete investors and conscious behavior.

FAC ¶¶ 5-6, 45, 48, 70-76, 117-18 (detailing, among other things, how the expansion of the

scheme to Sete created a "new opportunity [] for greed, fraud, corruption, and self-enrichment"

by Keppel and Keppel's awareness of the intricacies of the scheme and its expansion).  *See*

---

enterprises where there were virtually no allegations of relationships between defendants.  Here,
the FAC contains numerous allegations concerning coordination between the members of the
enterprise.  *See, e.g.*, FAC ¶¶ 80-89; 94-100; 104-111 (detailing Keppel's authorization of bribes
that it knew and directed would be split between Petrobras and the Workers' Party).

[6] Keppel's reliance on *Elsevier*, 692 F. Supp. 2d at 307-08 is misplaced.  That case relies on
cases concerning an "operation or management" test that does not apply to RICO conspiracy
claims.  *See De Sole*, 974 F. Supp. 2d at 311 (Gardephe, J.).

*Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) (intent may be alleged either

through motive for committing fraud and a clear opportunity to do so or conscious behavior).

Likewise, the FAC alleges Keppel's use of wires in furtherance of the conspiracy, including its

money laundering wires and its knowledge that the use of wires would follow in the ordinary

course of business.  FAC ¶¶ 5-6, 70-76, 86-88, 118.  *See U.S. v. Reifler,* 446 F.3d 65, 95 (2d Cir.

2006) (The use of wires need not be "an essential element of the scheme," so long as it was

"*incident* to an essential part of the scheme" or "a step in the plot") (quotations and citation

omitted) (emphasis in original); *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d

64, 88-89 (E.D.N.Y. 2011) (defendants "caused" fraudulent mailings to occur where they acted

with knowledge that mailings would likely follow in the ordinary course of business).

       Nor are the Funds' wire fraud allegations barred by the PSLRA.  "[T]he

assessment of the preclusive effect of the [PSLRA] RICO exception must be determined based

upon whether the underlying conduct alleged by the person could constitute an actionable

securities fraud claim under the 1933 and/or 1934 Acts."  *Menzies v. Seyfarth Shaw LLP*, 197 F.

Supp. 3d 1076, 1115 (N.D. Ill. 2016).[7]  Thus, the PSLRA bar does not apply to RICO predicates

that involve securities but are not actionable as securities fraud.  *See Ouwinga v. Benistar 419*

*Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (PSLRA bar did not apply to fraud predicate

that related to securities); *Rezner v. Bayerische Hypo–Und Vereinsbank AG*, 630 F.3d 866, 871–

72 (9th Cir. 2010) (tax-shelter RICO claim not barred by the PSLRA); *Zohar CDO 2003-1, Ltd.*

---

[7] *MLSMK Inv. Co. v. JP Morgan Chase & Co*., 651 F.3d 268 (2d Cir. 2011) is not inapposite.  In
*MLSMK*, the Court held that "section 107 of the PSLRA bars civil RICO claims alleging
predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud
action against the defendant."  *Id.* at 277.  But there still must be an actionable securities fraud
claim for the bar to apply.  *See* 18 U.S.C. § 1964(c) (PSLRA bar applies to RICO claims "that
would have been actionable as fraud in the purchase or sale of securities"); *MLSMK*, 651 F.3d at
277-278 (same).

*v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 644 (S.D.N.Y. 2017) (refusing to apply bar to certain allegations and stating that "the Court must focus its analysis on whether the conduct pled as the predicate offenses is 'actionable' as securities fraud") (quotations and citation omitted). Because Keppel has not demonstrated that the alleged conduct here is "actionable," the PSLRA bar cannot be applied at this stage of the litigation.  *See Marini v. Adamo*, 812 F. Supp. 2d 243, 261 n.15 (E.D.N.Y. 2011) (rejecting application of PSLRA bar on summary judgment where it was not clear conduct was "actionable").[8]

The FAC also alleges sufficient facts to support the predicate act of money laundering, which, like Travel Act violations, is assessed under the less stringent notice pleading requirements of Rule 8(a).  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 CIV. 2923, 1994 WL 88129, at *14 (S.D.N.Y. Mar. 15, 1994); *see In re BC Funding, LLC*, 519 B.R. 394, 424 (Bankr. E.D.N.Y. 2014) ("Section 1956(a)(1)(A) makes it an offense to knowingly conduct or attempt to conduct a financial transaction that involves the proceeds of an unlawful activity 'with the intent to promote the carrying on of specified unlawful activity[;]' [] section 1956(a)(1)(B)(i) makes it an offense to engage in a financial transaction 'to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.'").  The FAC details how and when Keppel committed the crime (FAC ¶¶ 2, 96-97, 99, 107-08) and alleges that Keppel routed bribes through shell company accounts held in New York and Swiss banks with the intent to promote and conceal its unlawful activity.  *Id.* ¶¶ 86-88.

As to the Travel Act violations, all that Keppel can muster is that the allegations are "conclusory."  Keppel MTD at 17-18.  Not only are the Travel Action violations precise but

---

[8] Keppel does not contend that the PSLRA bar applies to the money laundering or Travel Act violations alleged in the FAC.

they are based on Keppel's admissions that it violated the FCPA.  *See, e.g.*, FAC ¶¶ 2, 80-88,

104-08.  A violation of the Travel Act based on conduct violating the FCPA adequately states a

RICO predicate act.  *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 595 (S.D.N.Y. 2014),

*aff'd*, 833 F.3d 74 (2d Cir. 2016) (defendant violated the Travel Act by furthering a violation of

the FCPA).

### 3.   The Funds plead a pattern of racketeering activity

Keppel also cannot prevail on its claim that the FAC fails to plead a pattern of

racketeering activity because it fails to satisfy the continuity and relatedness requirements.  The

Second Circuit typically requires a period of at least two years of activity during which predicate

acts were committed to satisfy the closed-ended continuity requirement.  *See De Sole*, 974 F.

Supp. at 306 (Gardephe, J.).  Plaintiffs allege facts relating to predicate acts of wire fraud, money

laundering and Travel Act violations that span from 2010 to 2015, including the wire fraud in

September 2010, Keppel Brazil's emails to EIG in August 2011, and Keppel's agreement to pay

bribes on Sete contracts by August 2011.  FAC ¶¶ 55-89, 117-18.  *See CMG Holdings Grp. v.*

*Wagner*, No. 15-CV-5814, 2016 WL 4688865, at *6 (S.D.N.Y. Sept. 7, 2016) (rejecting

argument against continuity where, like here, "[d]efendants' argument against continuity starts

from the premise that their earlier acts were not RICO predicate acts, and then assumes that their

later acts were of insufficient duration.").  The FAC also alleges that the scheme would have

continued until 2019 had the Brazilian prosecutors not discovered it.  FAC ¶ 90.  Keppel's

attempt to limit the relevant time period to when it transferred bribe payments in connection with

Sete is improper and wholly unsupported.

The FAC also sufficiently pleads relatedness.  To survive a motion to dismiss, a

RICO complaint "need only plead a basis from which it could be inferred that the acts of

racketeering activity were neither isolated nor sporadic."  *Kuczynski v. Ragen Corp.*, 732 F.

Supp. 378, 386 (S.D.N.Y. 1989) (quotation and citation omitted).  Predicate acts are related

where they "have the same or similar purposes, results, participants, victims, or methods of

commission, or otherwise are interrelated by distinguishing characteristics and not isolated

events."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  This list, however, is "merely

a guidepost, a starting point for the relatedness inquiry as a whole, not a list of elements, each of

which must be proven in order to establish a pattern of racketeering activity."  *U.S. v. Daidone*,

471 F.3d 371, 375 (2d Cir. 2006) (per curiam).  The FAC adequately alleges that the acts shared

the same purpose – to "carr[y] out and facilitate[] the concealment and execution of the bribery

and kickback scheme in furtherance of the RICO conspiracy" (FAC ¶ 118); results and methods

of commission – "fraudulently rais[ing] billions of dollars of capital, from among others,

[P]laintiffs" (*Id.* ¶¶ 54-58, 117-18); and participants – Sete, Petrobras, Keppel, and the Workers'

Party.  *Id.* ¶¶ 4-8, 11-14, 45-53, 70-89.  Petrobras, Sete, and Keppel all solicited investment and

concealed their fraud from Plaintiffs to fund their scheme, and conspired on a regular and

ongoing basis with the Workers' Party to divvy up, on multiple occasions over the years, the

spoils of their ill-gotten gains.  *Id.* ¶¶ 51-89.  These acts are far from "isolated" or "sporadic."

### D.     The Funds' Claims are Not Barred by a Presumption Against Extraterritoriality

That the wire fraud and the Travel Act do not apply extraterritorially is not

grounds for dismissal.  *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016) ("If

the [predicate act] statute is not extraterritorial," then the court must determine whether the case

involves domestic application of the statute).  Contrary to Keppel's claim, the FAC supports

domestic application of the wire fraud and Travel Act claims because "conduct relevant to the

[predicate act] statute's focus occurred in the United States."  *Id.*  The FAC alleges U.S.

activities integral to these predicate acts, including the repeated use of wires to transmit

fraudulent materials to the U.S., the repeated use of wires originating from and entering the U.S. in furtherance of the scheme, the fundraising activities occurring in the U.S. and targeting of U.S. investors, the involvement of Keppel's U.S. subsidiary and employee in carrying out the scheme, and the repeated use by Keppel of U.S. bank accounts to transmit and conceal bribes.  FAC ¶¶ 54-76, 86-89, 104-111.  *See Elsevier, Inc. v. Grossman*, 199 F. Supp. 3d 768, 784 (S.D.N.Y. 2016).  *Cf. Petroleos Mexicanos v. SK Eng'g & Constr. Co. Ltd.*, 572 F. App'x 60, 61 (2d Cir. 2014) (insufficient domestic conduct for wire fraud where, unlike here, there were only "three minimal contacts with the [U.S.]" and no allegations that the scheme was directed to the U.S.). Moreover, even assuming that Plaintiffs have failed to state a domestic application of wire fraud and the Travel Act, the predicate act of money laundering does apply extraterritorially.  *See European Cmty. v. RJR Nabisco, Inc.,* 764 F.3d 129, 139-40 (2d Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 2090.  Keppel does not argue otherwise.

## II.   The FAC Adequately Pleads Aiding and Abetting Fraud[9]

The FAC adequately pleads every element of its aiding and abetting fraud claim: "(1) that an independent wrong exist[ed], (2) that the aider or abettor knows of that wrong's existence; and (3) that substantial assistance be given in effecting that wrong."  *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-2259, 2015 WL 374968, at *7 (S.D.N.Y. Jan. 29, 2015) (quotations and citation omitted).[10]

---

[9] If the court dismisses the Funds' RICO claim, it may retain supplemental jurisdiction over the state law aiding and abetting claim.  *See Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000) (court did not err in exercising discretion to hear state law claims after dismissal of all federal claims).  If the court declines to exercise such jurisdiction, the aiding and abetting claim should be dismissed without prejudice.  *Fei Hang Chen v. Jing Fong Restaurant, Inc.*, 582 F. Supp. 2d 602, 603 (S.D.N.Y. 2008) (the court may "retain supplemental jurisdiction over the state claims or dismiss them without prejudice to be[] re-filed in state court.").

[10] Keppel's footnote argument that Plaintiffs fail to adequately plead an underlying fraud is meritless.  *See* Keppel MTD at 20 n.9.  The Plaintiffs' fraud allegations are supported by specific

A.      **The FAC Adequately Alleges Keppel's Knowledge of the Fraud**

At the motion to dismiss stage, the Rule 9(b) fraud pleading standard does not

extend to the second element of knowledge, which may be pled generally.  *Wight v.*

*BankAmerica Corp.*, 219 F.3d 79, 91-92 (2d Cir. 2000).  Pleading knowledge generally is

adequate "so long as fraudulent intent may be inferred from the surrounding circumstances."

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs. LLC*, No. 12-cv-3723, 2016 WL 5719749,

at *5 (S.D.N.Y. Sept. 29, 2016) (quotations and citation omitted); *see also Nathel v. Siegel*, 592

F. Supp. 2d 452, 468-69 (S.D.N.Y. 2008) ("The allegation of actual knowledge does not have to

be based on defendant's explicit acknowledgment of the fraud.").

Here, the FAC alleges ample facts to infer fraudulent intent from the "surrounding

circumstances."  *See Loreley Fin. (Jersey)*, 2016 WL 5719749, at *5.  Plaintiffs allege, *inter alia*,

that (i) in exchange for six lucrative Sete contracts (motive), Keppel agreed to kickbacks and

bribes (FAC ¶¶ 96, 117); (ii) Keppel knew that Sete was a start-up company that needed to, and,

in fact, raised billions of dollars in capital from Brazilian banks, the four largest Brazilian

pension funds and Plaintiffs to fund the scheme, that the capital would be used to perpetuate

kickbacks and bribes, and that Petrobras could not possibly disclose to these investors that Sete

would be utilized as a bribery and kickback vehicle (*id.* ¶¶ 5, 60, 77-78, 117, 128); and (iii) after

Keppel had agreed to pay bribes for Sete drillship contracts, Keppel assisted with investor due

---

facts, circumstances, dates, and identities in the FAC.  *See, e.g.*, FAC ¶¶ 54-69.  Indeed, the court
in the D.C. Action described the fraud claims against Petrobras (whose motion to dismiss in the
D.C. Action was denied), which arise from substantially similar factual allegations as those pled
in the FAC, as "quintessential fraud" that is "as straightforward as fraud gets" and to which high-
ranking Sete and Petrobras officials have admitted.  *EIG*, 246 F.Supp.3d at 84; *see Fraternity
Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 361 (S.D.N.Y. 2007) (primary
violation satisfied by allegations of fraud that were "the same in all material respects" as
allegations sufficient to allege fraud in prior case).

diligence by meeting with EIG, Plaintiffs' representative, at least twice, provided shipyard tours, and facilitated the filming of fundraising videos shown to EIG investors.  (*Id.* ¶¶ 70-75, 79).

Keppel knew for a certainty that Petrobras had not disclosed the Sete bribery and kickback scheme to investors, as Brazilian prosecutors waited until 2015, after the Car Wash scandal broke to come knocking on Keppel's door.  If Petrobras had taken the altogether incredible step of disclosing to investors back in 2010 and 2011 that Sete would be a bribe/kickback vehicle, Sete would have been shut down by prosecutors at that time.

**B.    The FAC Adequately Alleges Substantial Assistance**

A defendant provides substantial assistance if it "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005) (quotations and citation omitted).  "Substantial assistance can take many forms . . . executing transactions, even ordinary course transactions can constitute substantial assistance . . . ." *Id.* at 257.

Keppel's contention that the Funds "must be alleged to have given substantial assistance to the making and dissemination" of documents involved in perpetuating the fraud should be rejected.  *See* Keppel MTD at 22.  When the primary fraud involves, as here, a "highly interdependent scheme in which both parties benefited . . . allegations that a defendant actively assisted and facilitated the fraudulent scheme itself, as opposed to assisting in the preparation of the documents [containing misrepresentations], are sufficient." *Nathel*, 592 F.Supp.2d at 470 (quotations and citation omitted) (allegations that managing partners permitted name to be used to deceive plaintiffs concerning partnership oversight were sufficient even though complaint did not allege "any direct dealings" between the defendants and plaintiffs).

The Funds have pled with sufficient particularity that Keppel "actively assisted and facilitated the fraudulent scheme." *See Nathel*, 592 F.Supp.2d at 470.  As an initial matter,

where, as here, Keppel concealed the fraud through illegal money laundering, that concealment, in of itself, constitutes the necessary substantial assistance. *See* FAC ¶¶ 86-88, 130. *Eastman Kodak,* 2006 WL 3538944, is right on point. There, the defendant was allegedly involved in a kickback scheme to inflate Eastman Kodak's property valuations, which necessitated that Eastman Kodak hire an appraisal expert to fight the phony valuations. *Id.* at *1. Proceeds of the expert's fees were distributed to the scheme's participants. *Id.* Defendant was the wife of the appraisal expert, and allegedly made numerous wires in support of the scheme in violation of money laundering laws. *Id.* at *1, 5. In denying her motion to dismiss plaintiff's aiding and abetting fraud cause of action, the court held that, "it is certainly conceivable that [defendant's] alleged acts of money laundering had the effect not simply of concealing a completed crime, but allowed it to continue for longer than it otherwise would have." *Id*. at *11. According to the court, plaintiff had stated an aiding and abetting fraud claim as the allegations "sufficiently allege[d]" defendant's "efforts to further" the fraud. *Id*. at *13. *See also Dreieck Finanz AG v. Sun*, No. 89 Civ. 4347, 1990 WL 11537, at *4-5 (S.D.N.Y. Feb. 9, 1990) (court denied a motion to dismiss where the alleged substantial assistance – transferring proceeds of a fraudulent scheme between banks – constituted efforts to conceal the scheme); *Phifer v. Home Savers Consulting Corp.*, No. 06 CV 3841, 2007 WL 295605, at *4-5 (E.D.N.Y. Jan. 30, 2007) (finding that loan company could have offered substantial assistance to fraud by helping prepare statements that camouflaged sham transaction).

   Here, it is also "conceivable" that Keppel's money laundering through the use of shell companies had the effect of allowing the Sete bribery and kickback scheme to "continue longer than it otherwise would have." *See Eastman Kodak*, 2006 WL 3538944, at *11. Indeed, after Keppel commenced illegally laundering its bribe payments, Plaintiffs invested another $129 million in Sete. *See* FAC ¶¶ 76, 86-88. Had EIG or Plaintiffs known the truth, Plaintiffs would

not have made continued investments in Sete.  Keppel's money laundering constituted substantial assistance.

The assistance that Keppel provided Petrobras in Plaintiffs' due diligence preceding their Sete investment also constituted substantial assistance.  As detailed in the FAC, after Keppel had already agreed to pay Sete-related bribes, Keppel legitimized the Sete investment to Plaintiffs by hosting EIG and other potential investors on technical tours of its Brazilian shipyard on at least two occasions and by participating in the production of fundraising videos shown to EIG's investors.  *See* FAC ¶¶ 71-74, 79.  *See Winnick*, 406 F. Supp. 2d at 257 (concluding that defendant's acts, while not themselves necessarily fraudulent, were alleged to have been carried out for sole purpose of advancing fraud and thus, "could reasonably be understood as a proximate cause leading foreseeably to defrauding the Banks"); *Nathel*, 592 F. Supp. 2d at 470 (reasonably foreseeable that defendants' assistance in signing partnership agreements and concealment of lack of expertise would cause Plaintiffs to invest and to suffer investment loss).

That Keppel failed to disclose the bribery and kickback scheme to EIG and Plaintiffs also constitutes substantial assistance.  Contrary to Keppel's claim, "[e]ven in the absence of a duty to act or disclose information, inaction on the alleged aider and abettor's part can provide a basis for liability where the inaction was "designed intentionally to aid the primary fraud."  *Nat'l Union Fire Ins. v. Turtur*, 892 F.2d 199, 207 (2d Cir. 1989) (quotation marks and citation omitted).  The FAC pleads that Keppel's refusal to disclose to EIG or Plaintiffs that

Keppel was participating in the Sete bribery and kickback scheme was intended to aid the underlying fraud.  *See* FAC ¶ 129.[11]

Plaintiff's substantial assistance allegations are more than adequate.

**C.    Neither *Res Judicata* nor Issue Preclusion Bar the Claims**

Finally, Keppel falls short of satisfying its burden of invoking *res judicata* or issue preclusion.  *See Comp. Assocs. Int'l., Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (2d Cir. 1997) ("burden is on the party seeking to invoke *res judicata*").  The court in the D.C. Action dismissed Plaintiff's claims against Keppel on jurisdictional grounds.  246 F. Supp. 3d 52, 91 (D.D.C. 2017) ("[T]he court finds that it lacks personal jurisdiction over the Shipyard Defendants under the D.C. long-arm statute . . . .").  It is well established that "a dismissal for lack of personal jurisdiction is not a final judgment on the merits" for *res judicata* purposes. *Barrett v. Tema Dev. (1988), Inc.*, 463 F. Supp. 2d 423, 427 (S.D.N.Y. 2006); *see also Arnold Graphics Indus., Inc. v. Indep. Agent Ctr. Inc.*, 775 F.2d 38, 41 (2d Cir. 1985) (same); *Harte v. Iberia Airlines*, Case No. 02 Civ. 3624, 2002 WL 1870251, at *2 (S.D.N.Y. Aug. 13, 2002) ("[A]lthough defendant's motion also included an argument for dismissal on the merits, *res judicata* does not apply because jurisdiction over the parties was never established.").

Similarly, issue preclusion does not apply because the jurisdictional ruling did not constitute "a valid and final judgment on the merits."  *See Four Star Capital Corp. v. Nynex Corp.*, No. 93 Civ. 3706, 1993 WL 350016, at *2 (S.D.N.Y. Sept. 9, 1993) (holding that issue preclusion did not necessitate a dismissal of plaintiffs' claims because a determination in a previous action that "personal jurisdiction was lacking" did not constitute "a valid and final

---

[11] Relying on dicta from the D.C. Action, Keppel argues that the FAC does not plead that Keppel's inaction was intended to further the fraud.  But as explained above at n.1, there are important differences in the allegations in the FAC compared to the D.C. Action complaint.

judgment on the merits."); *Grosso v. Radice*, No. 07-CV-3620, 2009 WL 749906, at *4
(E.D.N.Y. Mar. 16, 2009) (citing *id.*) (same).

Contrary to Keppel's contention, that the court in the D.C. Action considered the
sufficiency of plaintiffs' conspiracy claim as a means to dismissing it on personal jurisdiction
grounds, does not give the decision preclusive effect.  "A dismissal that rests both on lack of
jurisdiction and alternative rulings on the merits is dominated by the jurisdictional ruling and
should not preclude a second action on a claim caught up with the jurisdiction ruling." *Moore v.
Mara*, No. 3:08CV1946, 2010 WL 3270223, at *4-5 (D. Conn. Aug. 17, 2010) (quotations and
citation omitted).  In *Four Star*, this court held that collateral estoppel did not bar the pending
breach of contract action notwithstanding a prior California action between the same parties.
1993 WL 350016, at *2-3.  This court held that the California court's dismissal on jurisdiction
grounds was not a final judgment on the merits, even though the California court necessarily had
to decide whether the defendant was a party to the contract – the same issue to be determined in
the New York action – in order to make its jurisdiction determination. *Id.* at *2-4.  *See also
Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1279 (7th Cir. 1983) ("Once
a court expresses the view that it lacks jurisdiction, the court thereafter does not have the power
to rule on any other matter.").[12]  The same result is warranted here.

<u>**Conclusion**</u>

For these reasons, the Court should deny Defendant's motion to dismiss.

---

[12]  Keppel does not cite any case that supports its claim that Judge Mehta's civil conspiracy
findings related to conspiracy jurisdiction precludes the claims here.  In *Soules v. Conn., Dep't of
Emergency Servs. & Pub. Prot.*, the court determined that *res judicata* precluded a second action
where the first action was decided on the merits, not on jurisdictional grounds.  882 F.3d 52, 55
(2d Cir. 2018).  *Berrios v. N.Y.C. Housing Auth.*, 564 F.3d 130, 135 (2d Cir. 2009) did not
concern *res judicata* or issue preclusion.

Dated:  New York, New York                Respectfully submitted,
        August 10, 2018

                                          KRAMER LEVIN NAFTALIS &
                                          FRANKEL LLP

                                          By:   /s/ Daniel B. Goldman
                                              Daniel B. Goldman
                                              Kerri Ann Law
                                              Sam M. Koch
                                              1177 Avenue of the Americas
                                              New York, New York 10036
                                              (212) 715-9100

                                              *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 10, 2018, the foregoing was served via e-mail on counsel of record, and that on August 24, 2018, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/  Daniel B. Goldman
Daniel B. Goldman