UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EIG ENERGY FUND XIV, L.P., EIG
ENERGY FUND XIV-A, L.P., EIG
ENERGY FUND XIV-B, L.P., EIG
ENERGY FUND XIV (CAYMAN), L.P.,
EIG ENERGY FUND XV, L.P., EIG
ENERGY FUND XV-A, L.P., EIG
ENERGY FUND XV-B, L.P., and EIG
ENERGY FUND XV (CAYMAN), L.P.

                        Plaintiffs,

      - against -

KEPPEL OFFSHORE & MARINE LTD.,

                        Defendant.

**ORDER**

18 Civ. 1047 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        This action arises from a bribery and kickback scheme involving Defendant Keppel Offshore & Marine Ltd. and entities in the Brazilian government and oil industry. The Amended Complaint alleges that Plaintiffs – unaware of the scheme – invested $221 million in Sete Brasil Participações, S.A. ("Sete"), a Brazilian company that used Plaintiffs' investment to fund the bribes and kickbacks. After the scheme was uncovered by Brazilian law enforcement authorities, Sete went bankrupt and Plaintiffs lost their investment.

        Defendant has moved for reconsideration of this Court's May 9, 2020 Order (the "Order"), which grants in part and denies in part Defendant's motion to dismiss.[1] (Dkt. No. 45) For the reasons stated below, Defendant's motion for reconsideration will be denied.

---

[1] Familiarity with the Order (Dkt. No. 45) is assumed.

## BACKGROUND

In the May 9, 2020 Order, this Court granted Defendant's motion to dismiss Plaintiffs' RICO conspiracy claim, but denied Defendant's motion to dismiss Plaintiffs' aiding and abetting fraud claim brought under New York state law. (Id. at 18, 21)[2]

On May 26, 2020, Defendant moved for reconsideration of the Order, arguing that this Court "erred by not analyzing whether to retain supplemental jurisdiction over Plaintiffs' state law claim after it dismissed Plaintiffs' only federal claim." (Def. Br. (Dkt. No. 49) at 6) Defendant further argues that, "[h]ad the Court conducted the required analysis – and weighed the values of judicial economy, convenience, fairness, and comity – . . . [this Court] would have dismissed Plaintiffs' state law claim for lack of jurisdiction." (Id.)

In opposing Defendant's reconsideration motion, Plaintiffs argue that "[n]one of the[] factors [of economy, convenience, fairness, and comity] militates in favor of declining to exercise supplemental jurisdiction. . . ." (Pltf. Opp. Br. (Dkt. No. 52) at 17)

## DISCUSSION

### I.   LEGAL STANDARD

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)). "A motion for reconsideration may

---

[2] All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).

"The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'" Id. (second alteration in original) (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." Id.

## II.   ANALYSIS

### A.   Whether the Court Was Required to Analyze an Issue Not Briefed by Defense Counsel

Defendant argues that it is entitled to reconsideration because "th[is] Court committed a clear error by failing to analyze whether to exercise supplemental jurisdiction over Plaintiffs' state law claim. . . ." (Def. Br. (Dkt. No. 49) at 8)  The issue cited by Defendant was not briefed by defense counsel, however.  Indeed, defense counsel's entire presentation concerning this issue is the following sentence – unsupported by argument or legal citation – and set forth in a footnote in its moving brief:

> Not only should Plaintiffs' state law claim be dismissed on the merits, if the Court dismisses the civil RICO conspiracy claim, it should also decline to exercise supplemental jurisdiction over this claim.

(Def. MTD Br. (Dkt. No. 24) at 28 n.11)

Although Plaintiffs argued in their opposition brief that "[i]f the court dismisses [Plaintiffs'] RICO claim, it may retain supplemental jurisdiction over the state law aiding and abetting claim" (Pltf. MTD Opp. Br. (Dkt. No. 26) at 26 n.9 (citing Mauro v. S. New England Telecomms., Inc., 208 F.3d 384, 388 (2d Cir. 2000))), Defendant did not address this issue in its reply brief.

An argument made in this fleeting manner is not properly preserved for reconsideration.  See Associated Press v. U.S. Dep't of Def., 410 F. Supp. 2d 147, 153 (S.D.N.Y. 2006) ("Even indulging [this argument] – in which case one wonders why it is reduced to a single sentence in a footnote deep within [Defendant's] 25-page moving memorandum and never mentioned at all in [Defendant's] reply memorandum – an argument made only in a footnote is not preserved for purposes of reconsideration. . . . To put it colloquially, a motion for

4

reconsideration is not a game of 'gotcha.'") (citing United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993)). Reconsideration is properly denied on this basis alone.

### B. Whether Supplemental Jurisdiction Should Be Exercised

As to the merits of Defendant's supplemental jurisdiction argument, the legal standard is clear: "[a] district court[] may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c). In determining whether supplemental jurisdiction should be exercised, courts consider the factors set forth in Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988): "judicial economy, convenience, fairness, and comity." "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n.7. A district court's decision regarding the exercise of supplemental jurisdiction is reviewed for abuse of discretion. Kolari v. New York Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006)

Given Defendant's failure to brief the issue of whether supplemental jurisdiction should be exercised, this Court did not conduct an analysis of the Cohill factors in the Order.[3] As discussed below, when that analysis is conducted, it becomes apparent that this is not the

---

[3] Defendant's argument that this Court committed "clear error by failing to analyze whether to exercise supplemental jurisdiction over Plaintiffs' state law claim. . . ." (Def. Br. (Dkt. No. 49) at 8) is – in light of the parties' utter failure to brief this issue – flatly wrong. The Second Circuit has found reversible error where a district court sua sponte declines to exercise supplemental jurisdiction. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 79 (2d Cir. 2018) (reversing decision in which district court sua sponte declined to exercise supplemental jurisdiction over plaintiffs' state law claims, where the court had not "afford[ed] the parties notice or an opportunity to be heard"). Given the inadequate briefing, had this Court conducted a Cohill analysis, it in effect would have been acting sua sponte.

5

"usual case," and that the exercise of supplemental jurisdiction is appropriate under the peculiar circumstances of this case.

The primary Cohill factor of significance here is judicial economy and efficiency. This case has a long and tortured history that will only be unreasonably prolonged by a refusal to exercise supplemental jurisdiction.

This case began in early 2016 – four and a half years ago – when Plaintiffs filed their complaint – alleging fraud, aiding and abetting fraud, and conspiracy to defraud against Keppel and other defendants – in United States District Court for the District of Columbia. See EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A., 246 F. Supp. 3d 52, 61 (D.D.C. 2017), aff'd, 894 F.3d 339 (D.C. Cir. 2018), cert. denied sub nom. Petróleo Brasileiro S.A. v. EIG Energy Fund XIV, L.P., 139 S. Ct. 1324 (2019).  On March 30, 2017, the D.C. district court granted Keppel's motion to dismiss for lack of personal jurisdiction. Id. at 91.  In 2018, the D.C. Circuit affirmed the dismissal, and the Supreme Court denied certiorari in 2019.

The Complaint in the instant action was filed on February 6, 2018 (Dkt. No. 1), and the Amended Complaint was filed on April 30, 2018.  (Dkt. No. 17)  On August 24, 2018, Defendant moved to dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).  (Dkt. No. 23)  After careful study of the motion papers, this Court concluded that the briefing did not address potentially critical issues.  Accordingly, on March 31, 2019, this Court denied the motion without prejudice and directed the parties to provide supplemental briefing as to whether (1) the wire fraud predicate acts for Plaintiffs' RICO conspiracy claim amount to securities fraud claims, such that the wire fraud allegations cannot be used as predicate acts for purposes of Plaintiffs' RICO conspiracy claim; and (2) the alleged Travel Act predicate acts entail an extraterritorial application of the Travel Act.  (March 31, 2019 Order (Dkt. No. 34))  Defendant renewed its

motion to dismiss on April 12, 2019 (Dkt. No. 35), and both sides filed supplemental briefing as directed by the Court. (Dkt. Nos. 36, 40, 44)

The multiple rounds of briefing led to extensive submissions totaling hundreds of pages. On May 9, 2020, this Court issued its decision granting in part and denying in part Defendant's motion to dismiss. (Dkt. No. 45) Another sixty pages of briefing was submitted in connection with the instant motion for reconsideration. That motion – which raises an issue that should have been addressed in the multiple rounds of briefing concerning the motion to dismiss – has further delayed the proceedings. In sum, over the past two years, this Court has expended a significant amount of time and effort analyzing Plaintiffs' claims and the complicated factual background of this case. That effort has been prolonged and made more difficult by multiple instances of inadequate briefing.

Were this Court to accept Defendant's invitation not to exercise supplemental jurisdiction over Plaintiffs' state law fraud claim, considerable further delay in this already long-delayed action would ensue. Plaintiffs would be required to re-file their action before a third court – presumably, Supreme Court of the State of New York, New York County.

We are now in the midst of the COVID-19 pandemic. While in-court proceedings have been largely suspended since March 2020, this District's operations have otherwise continued unabated. This Court alone has issued hundreds of orders and decisions over the past several months, and the District's Electronic Case Filing system has suffered no interruption in service. New cases have continued to be filed in this District throughout the pandemic and assigned out to judges in the normal course. Similarly, motions have been filed and addressed in the normal course. That has not been true in the state court system.

According to press reports, "[p]rogress in all cases categorized as 'non-essential' was frozen by state court leaders on March 16[, 2020,] in an attempt to slow the spread of COVID-19 across New York." New cases were not accepted for filing during the period from March 16, 2020 to May 25, 2020, and filings were not accepted in pending cases between March 16, 2020, and May 4, 2020. As a result, the state courts must contend with a huge backlog of filings that ordinarily would have been made between March and May 2020, as well as a flood of litigation arising from the COVID-19 pandemic itself. See Jane Wester, Relaxing Restrictions, Courts Say Electronic Motion Filing Is Set To Resume for Pending Cases, New York Law Journal (May 4, 2020) (reporting that New York Chief Administrative Judge Lawrence Marks "emphasized that eliminating the 'current backlog of undecided matters' will be important in helping the court system absorb the expected surge of new litigation when normal operations resume"); Jane Wester, Surge of New Lawsuits Filed in New York City as E-Filing Reopens to All Cases, New York Law Journal (May 26, 2020) (reporting that "[h]undreds of lawsuits were filed in state court in New York City on Monday and Tuesday as e-filing became available for all kinds of cases for the first time since March," and that "the return of e-filing went smoothly overall, though index numbers were assigned slowly compared to a typical day before March 22"); Jeff Kinkle et al., Updates on COVID-19's Impact on Commercial Appeals, New York Law Journal (May 29, 2020) (reporting that commercial appeals "are starting to move forward again, albeit with the naturally attendant backlogs that the COVID-19 crisis has engendered").

Given the backlog resulting from the months-long suspension of filings in what was already a heavily burdened state court system, it is reasonable to conclude that – were this Court to decline to exercise supplemental jurisdiction – a refiling in state court would entail further substantial delay in the resolution of this action. Inordinate delay of this sort is relevant

8

to the Cohill analysis, and implicates issues of fundamental fairness. Catzin, 899 F.3d at 83 ("we have upheld the exercise of supplemental jurisdiction even when all federal-law claims were eliminated prior to trial, for example, in long-pending cases presenting no novel issues of state law. . . ."); id. at 86 (vacating order declining to exercise supplemental jurisdiction and noting that "the record [does not] lend itself to an understanding as to how convenience or fairness was served by setting backwards the course of a case the parties had vigorously litigated for nearly two years and causing them to expend who knows how much time, legal fees, and distractions starting over in state court"); Dellefave v. Access Temporaries, Inc., 37 Fed. App'x 23, 26 (2d Cir. 2002) (upholding exercise of supplemental jurisdiction over state law claims; "It is clear that [plaintiff's] state law claims 'form[ed] part of the same case or controversy' as his federal claims, as all of the claims arose out of the same facts. The claims did not involve any novel or unsettled questions of state law, and judicial economy favored the exercise of supplemental jurisdiction, as [the district judge] had presided over the case for more than a year and resolved several motions. . . . The District Court did not abuse its discretion in exercising supplemental jurisdiction over [plaintiff's] state law claims."); Alfandary v. Nikko Asset Management, Co., Ltd., No. 17 CV 5137 (LAP), 2019 WL 4747994, at *7 (S.D.N.Y. Sept. 30, 2019) (exercising supplemental jurisdiction over state law claims after dismissing all federal claims because "the claims arise out of the same operative facts," "declining jurisdiction over the state-law claims in this case would further neither fairness nor judicial efficiency," "[t]here would likely be hardship to all parties should plaintiffs be forced to re-file in state court," and "[d]ismissing these claims would require that defendants be re-served and would require the re-submission of motions by both sides" (internal quotation marks, alterations, and citations omitted); Bilinski v. Keith Haring Foundation, Inc., 96 F. Supp. 3d 35, 48 (S.D.N.Y. 2015) ("the federal claims have been

9

dismissed and this motion [to dismiss] is brought at an early stage in the litigation, [but] the state law claims may be resolved without considering any novel or complex questions of state law. Convenience and judicial economy weigh heavily in favor of resolving these straightforward tort claims as part of this motion."); New York Transp., Inc. v. Naples Transp., Inc., 116 F. Supp. 2d 382, 390 (E.D.N.Y. 2000) (exercising supplemental jurisdiction over state law claims after dismissing all federal claims "[g]iven the time and effort already invested in this matter by the parties and the Court, the burden that serving multiple defendants in a state court action would impose on plaintiffs and the serious nature of plaintiffs' allegations. . . .").

As to comity, Plaintiff's state law claim of aiding and abetting fraud is not one that raises unsettled issues of state law. Defendant feebly argues that "[d]epending on the facts of the case, aiding and abetting fraud can involve a complex theory of liability; [] therefore, it is best left to state courts to resolve." (Def. Br. (Dkt. No. 49) at 13) But courts in this District consider state law fraud claims every day. While Defendant argues that frequently there are fact issues inherent in "find[ing] an inference of fraud" and determining a "'defendant's actual state of mind,'" (id. at 13-14 (first citing Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 560-61 (2009), then citing Kaufman v. Cohen, 307 A.D.2d 113, 125 (1st Dep't 2003))), that point is both true and irrelevant. For purposes of Cohill's comity factor, the issue is whether Plaintiffs' fraud claim raises a "novel legal question" under New York law – not whether it presents difficult factual issues regarding fraudulent intent. See Raucci v. Town of Rotterdam, 902 F.2d 1050, 1055 (2d Cir. 1990) (finding exercise of supplemental jurisdiction appropriate where the case "merely applies recently settled [state law] and does not involve novel legal questions"); Drake v. Lab. Corp. of Am. Holdings, 290 F. Supp. 2d 352, 375 (E.D.N.Y. 2003), aff'd, 458 F.3d 48 (2d Cir. 2006) (exercising supplemental jurisdiction where "issues of comity

would not be offended in exercising jurisdiction over the plaintiff's basic, non-novel state law claims").

In sum, this case (1) has been pending for nearly four and a half years in the federal system and – given the circumstances presented by the COVID-19 pandemic – would suffer further significant and unnecessary delay if this Court refused to exercise supplemental jurisdiction; (2) has involved a significant investment of this Court's resources over the past two and a half years; and (3) presents no novel issues of state law. Having weighed all of the Cohill factors, this Court concludes that the circumstances here are not typical or "usual," and that accordingly the exercise of supplemental jurisdiction is appropriate.

## CONCLUSION

Defendant's motion for reconsideration is denied. The stay of discovery is lifted. Defendant's answer is due by **July 10, 2020**.

The Clerk of Court is directed to terminate the motion (Dkt. No. 48).

Dated: New York, New York
       June 26, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

11