UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EIG Energy Fund XIV, L.P.,<br>EIG Energy Fund XIV-A, L.P.,<br>EIG Energy Fund XIV-B, L.P.,<br>EIG Energy Fund XIV (Cayman), L.P.,<br>EIG Energy Fund XV, L.P.,<br>EIG Energy Fund XV-A, L.P.,<br>EIG Energy Fund XV-B, L.P., and<br>EIG Energy Fund XV (Cayman), L.P.<br><br>Plaintiffs,<br><br>-against-<br><br>Keppel Offshore & Marine Ltd.,<br><br>Defendant. | No. 18-CV-01047 (PGG)<br><br>ORAL ARGUMENT<br>REQUESTED<br><br>UNREDACTED VERSION |

**LOCAL RULE 56.1 STATEMENT OF DEFENDANT KEPPEL OFFSHORE &
MARINE LTD. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Keppel Offshore &
Marine Ltd.*

September 20, 2021

CONTAINS CONFIDENTIAL INFORMATION

## TABLE OF CONTENTS

**Page**

CITATION AND ABBREVIATION CONVENTIONS ................................................................ ii

STATEMENT OF FACTS ....................................................................................................... 1

    A.     EIG and Keppel ................................................................................................... 1

    B.     Creation of Sete .................................................................................................. 1

    C.     EIG's Experience in Brazil. ................................................................................ 2

    D.     EIG's Pursuit of the Sete Investment Opportunity. ........................................... 3

    E.     Alleged Misrepresentations in the Complaint ................................................... 3

          i.      September 2010 Drilling Presentation. ................................................. 3

          ii.     October 2010 Pre-Salt Oil Rigs Project Document ............................. 5

          iii.    September 2011 Private Placement Memo .......................................... 6

          iv.    Oct. 2011 Email .................................................................................. 6

          v.      December 2011 Email ......................................................................... 6

          vi.    August 2012 Email ............................................................................. 7

          vii.   2013 Meetings .................................................................................... 7

    F.     EIG's Decision to Invest in Sete in June 2011. ................................................. 7

    G.     EIG's First Visit to the BrasFELS Shipyard in August 2011. ........................... 9

          i.      August 2011 Yard Visit. ..................................................................... 9

          ii.     August 2011 Video Shoot. ................................................................ 11

    H.     EIG's Decision to Increase Its Equity Commitment in September 2011. ............ 12

    I.      Keppel's First Contract from Sete in December 2011 ...................................... 13

    J.      EIG's Second Visit to the BrasFELS Shipyard in March 2012 .......................... 14

    K.     Keppel's Five Additional Contracts from Sete in August 2012. ......................... 15

    L.      EIG's Disbursement of Funds in August 2012. ................................................ 16

    M.    Financial and Operational Documents Concerning Sete. ................................. 17

    N.     News Reports Concerning Sete. ....................................................................... 18

    O.     EIG's Third Visit to the BrasFELS Shipyard in June 2013 .............................. 19

    P.      Operation Car Wash ......................................................................................... 20

    Q.     Keppel's Deferred Prosecution Agreement. ..................................................... 20

CONTAINS CONFIDENTIAL INFORMATION

## CITATION AND ABBREVIATION CONVENTIONS

**Exhibits Submitted in Support of Defendant Keppel's Motion for Summary Judgment**

- "Ex.":  Exhibits to the September 20, 2021 Declaration of David Kumagai, served and filed concurrently herewith.

**Parties**

- "EIG":  EIG Energy Fund XIV, L.P., EIG Energy Fund XIV-A, L.P., EIG Energy Fund XIV-B, L.P., EIG Energy Fund XIV (Cayman), L.P., EIG Energy Fund XV, L.P., EIG Energy Fund XV-A, L.P., EIG Energy Fund XV-B, L.P., and EIG Energy Fund XV (Cayman), L.P., the plaintiffs in this action, together with EIG Management Company, LLC and EIG Global Energy Partners.

- "Keppel":  Keppel Offshore & Marine Ltd., the defendant in this action.

**Other Relevant Entities**

- "ADICO":  Abu Dhabi Investment Council.

- "Barrington":  Barrington Media, Inc.

- "BrasFELS Shipyard":  Estaleiro BrasFELS Ltda.

- "CIC":  China Investment Corporation.

- "EAS Shipyard":  Estaleiro Atlantico Sul.

- "Fernvale":  Fernvale Pte. Ltd.

- "FIP Sondas":  Fundo de Investimento em Participações Sondas.

- "João Ferraz":  João Carlos de Medeiros Ferraz.

- "Lakeshore":  Lakeshore Financial Partners Participações Ltda.

- "Keppel Corp.":  Keppel Corporation Limited.

- "Santander":  Banco Santander S.A.

- "Sete":  Sete Brasil Participações, S.A.

CONTAINS CONFIDENTIAL INFORMATION

**Pleadings**

- "Complaint":  EIG's First Amended Complaint against Defendant, filed April 30, 2018 (Dkt. 17.)  (Ex. 1.)

**Deferred Prosecution Agreement**

- "DPA":  Deferred Prosecution Agreement dated December 22, 2017, <u>United States of America v. Keppel Offshore & Marine Ltd.</u>, Case No. 17-cr-697 in the United States District Court for the Eastern District of New York (Dkt. 24-1).  (Ex. 3.)

**Discovery Responses Served in This Action**

- "EIG Response to RFA":  Plaintiffs' Responses and Objections to Defendant's First Set of Requests for Admission, dated June 4, 2021.  (Ex. 4.)

- "Keppel Response to RFA":  Responses and Objections of Defendant Keppel Offshore & Marine Ltd. to Plaintiff's First Set of Requests for Admission, dated June 4, 2021.  (Ex. 5.)

**Deposition Exhibits**

- "DX":  Deposition exhibits introduced by Keppel in this action, numbered continuously across all depositions conducted by Keppel.

- "PX":  Deposition exhibits introduced by EIG in this action, numbered continuously across all depositions conducted by EIG.

**Litigations**

- "Action":  The present matter captioned <u>EIG Energy Fund XIV, L.P. et al v. Keppel Offshore & Marine Ltd.</u>, Case No. 1:18-cv-01047 (PGG) in the United States District Court for the Southern District of New York.

- "Petrobras Action":  The matter captioned <u>EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.</u>, Case No. 1:16-cv-333 (APM) in the United States District Court for the District of Columbia.

**Depositions Taken in this Action**

- "Chow Tr.":  Transcript of June 24, 2021 Deposition of Jeffrey Chow.  (Ex. 9.)

- "Corrigan Tr.":  Transcript of July 20, 2021 Deposition of Kevin Corrigan and Rule 30(b)(6) Deposition of EIG.  (Ex. 10.)

- "Hayden Tr.":  Transcript of May 27, 2021 Deposition of Simon Hayden.  (Ex. 11.)

CONTAINS CONFIDENTIAL INFORMATION

- "Patel Tr.":  Transcript of May 14, 2021 Deposition of Hoshrav Patel.  (Ex. 12.)

- "Tan I. Tr.":  Transcript of July 15, 2021 Deposition of Leong Peng Tan and Rule 30(b)(6) Deposition of Keppel.  (Ex. 13.)

- "Tan II. Tr.":  Transcript of July 16, 2021 Deposition of Leong Peng Tan and Rule 30(b)(6) Deposition of Keppel.  (Ex. 14.)

- "Thomas Tr.":  Transcript of July 30, 2021 Deposition of Blair Thomas and Rule 30(b)(6) Deposition of EIG.  (Ex. 15.)

**Depositions Taken in the Petrobras Action**

- "Corrigan D.C. Tr.":  Transcript of October 16, 2020 Deposition of Kevin Corrigan and Rule 30(b)(6) Deposition of EIG.  (Ex. 16.)

- "Hayden D.C. Tr.":  Transcript of October 29, 2020 Deposition of Simon Hayden.  (Ex. 17.)

- "Thomas D.C. Tr.":  Transcript of December 16, 2020 Deposition of Blair Thomas and Rule 30(b)(6) Deposition of EIG.  (Ex. 18.)

**Documents Produced in the Action**

- "Drilling Presentation":  A document entitled, "The Drilling Rigs Project: Petrobras' Strategy for its successful implementation", dated September 2011.  (Ex. 53.)

- "EPC Contract":  Agreements entitled, "Engineering, Procurement and Construction Contract".  (Exs. 37, 38, 39, 40, 41, 43.)

- "June 2011 Investment Recommendation":  A document entitled "Energy Fund XIV Investment Recommendation Sete Brasil Participações S.A. R$250,000 Common Equity", dated June 27, 2011.  (Ex. 19.)

- "Private Placement Memo":  A document entitled "Private Placement Confidential Information Memorandum", dated September 2011.  (Ex. 21).

- "September 2011 Investment Recommendation":  A document entitled "Energy Fund XV Investment Recommendation Sete Brasil Participações S.A. R$250,000 Common Equity", dated September 16, 2011.  (Ex. 23.)

- "White Paper":  A document entitled "Brazil's Energy and Infrastructure Landscape – A White Paper", dated April 2014.  (Ex. 25.)

CONTAINS CONFIDENTIAL INFORMATION

## STATEMENT OF FACTS

Pursuant to Local Civil Rule 56.1, Defendant Keppel hereby submits this statement of facts as to which there is no genuine dispute in support of its motion for summary judgment.

**A.    EIG and Keppel.**

1.      EIG is a "global alternative asset manager investing in the energy sector", based in Washington, D.C.  (Ex. 62, EIG_KEP_00289876 at 882.)

2.      Keppel is a company based in Singapore that specializes in offshore rig design, construction and shipbuilding.   (Ex. 3, DPA at A-1, ¶ 2.)

3.      The BrasFELS Shipyard is a subsidiary of Keppel located in the Angra dos Reis region of Brazil.  (Ex. 75, KEPPEL00444138-140 at 139.)

4.      There is no evidence EIG and Keppel discussed corruption or bribery in connection with Sete.

5.      There is no evidence Keppel provided inaccurate information to EIG in connection with Sete.

**B.    Creation of Sete.**

6.      Petrobras is an oil company controlled by the Brazilian government.  (Ex. 3, DPA at A-1 to A-2, ¶ 4.)

7.      Sete was a "partnership established by Petrobras, private investors and public pension funds to build ultra-deepwater drillships and charter them under long term contract to Petrobras."   (Ex. 19, DX039 at 792.)

8.      Sete was created to finance the construction of 28 drillships for charter to Petrobras to extract oil from the pre-salt reserves off Brazil's coast.  (Ex. 21, DX062 at 012.)

9.      Sete "was incorporated in December 2010."  (Ex. 21, DX062 at 030.)

CONTAINS CONFIDENTIAL INFORMATION

10.     Prior to Sete's incorporation in December 2010, the project was described by Petrobras as "The Drilling Rigs Project".  (Ex. 53, EIG_KEP_00075177-213 at 178.)

11.     Petrobras installed former Petrobras employees as "Sete's most senior executives", including João Ferraz as Sete's CEO.  (Ex. 1, Compl. ¶ 10.)

12.     There is no evidence Keppel was involved in the creation of Sete.

**C.     EIG's Experience in Brazil.**

13.     EIG "was a sophisticated institutional investor when it made its investments in Sete".  (Ex. 4, EIG Response to RFA 55.)

14.     EIG began investing in Brazil on or around 2000.  (Ex. 25, DX083 at 523.)

15.     Kevin Corrigan was a Senior Vice President at EIG and "the lead member of EIG's team in connection with the Sete investment".  (Ex. 10, Corrigan Tr. 57:02-05.)

16.     Kevin Corrigan opened EIG's office in Rio de Janeiro in 2012.  (Ex. 16, Corrigan D.C. Tr. 17:08-13.)

17.     EIG's 2014 White Paper describes "recurrent concerns about transparency and corruption" in Brazil.  (Ex. 25, DX083 at 524.)

18.     EIG's CEO Blair Thomas testified that "to be precise, if the question is did I know that Brazilian construction firms had a checkered history on corruption, the answer is yes." (Ex. 15, Thomas Tr. 73:14-17.)

19.     In June 2011, during its due diligence of Sete, EIG discovered bribery and corruption charges against the part-owner of the EAS Shipyard.  (Ex. 61, EIG_KEP_00258104 at 105; Ex. 16, Corrigan D.C. Tr. 204:19-217:16; Ex. 10, Corrigan Tr. 51:07-23.)

CONTAINS CONFIDENTIAL INFORMATION

**D.      EIG's Pursuit of the Sete Investment Opportunity.**

20.      EIG first learned about the Sete investment opportunity in September of 2010 when Kevin Corrigan attended a meeting at Banco Santander with his former colleague.  (Ex. 10, Corrigan Tr. 57:13-58:16.)

21.      After Kevin Corrigan's meeting at Banco Santander in September 2010, Mr. Corrigan "spoke to a friend" at the French Bank, Société Générale, about the Sete investment opportunity.  (Ex. 10, Corrigan Tr. 58:17-59:08.)

22.      On September 30, 2010, Kevin Corrigan sent João Ferraz at Petrobras an email introducing himself and requesting a meeting during his trip to Rio de Janeiro, Brazil.  (Ex. 59, EIG_KEP_00257850-852 at 852.)

23.      Kevin Corrigan traveled to Brazil to meet with João Ferraz on or around October 19, 2010 "to learn more about Sondas and see if EIG could participate."  (Ex. 16, Corrigan D.C. Tr. 80:10-81:15.)

24.      "Sondas" refers to FIP Sondas, the Brazilian investment fund through which EIG and other equity investors made their investments in Sete.  (Ex. 21,  DX062 at 056-57.)

25.      There is no evidence anyone at Keppel was involved in or aware of any of EIG's discussions in 2010 concerning the Drilling Rigs Project, Sete or FIP Sondas.

**E.      Alleged Misrepresentations in the Complaint.**

   i.      <u>September 2010 Drilling Presentation.</u>

26.      The Drilling Presentation described in paragraph 55 of the Complaint is Exhibit 53.  (Ex. 53, EIG_KEP_00075177-213; Ex. 1, Compl. ¶ 55.)

27.      The Drilling Presentation described the Drilling Rigs Project that would later become Sete.  (Ex. 1, Compl. ¶ 56.)

3

CONTAINS CONFIDENTIAL INFORMATION

28.     On September 27, 2010, Kevin Corrigan received the Drilling Presentation from a "friend" of his at Société Générale.  (Ex. 53, EIG_KEP_00075177-213; Ex. 10, Corrigan Tr. 58:17-24.)

29.     There is no evidence that Kevin Corrigan's "friend" at Société Générale was acting as an agent of Petrobras when he sent the Drilling Presentation to EIG on September 27, 2010.  (Ex. 10, Corrigan Tr. 58:17-25.)

30.     There is no evidence that anyone at Keppel was involved in preparing or disseminating the Drilling Presentation to any potential or actual investor.

31.     On September 27, 2011, an independent member of Keppel Corp.'s Board of Directors emailed the Drilling Presentation and another presentation unrelated to Sete to four executives of Keppel entities.  (Ex. 71, KEPPEL00040804-862 at 804.)

32.     The Board member told the executives that he had obtained "some of the presentations given at" an offshore oil and gas industry forum in Rio de Janeiro, and asked whether anyone at Keppel had seen the presentations.  (Ex. 71, KEPPEL00040804-862 at 805.)

33.     Keppel Corp.'s CEO responded that he had not seen the presentation and the Board member sent two presentations.  (Ex. 71, KEPPEL00040804-862 at 805.)

34.     There is no evidence anyone responded to the Board member's September 27, 2011 email attaching the Drilling Presentation.

35.     The Drilling Presentation does not mention EIG.  (Ex. 71, KEPPEL00040804-862 at 827-862 ].)

36.     There is no evidence anyone at Keppel opened or read the Drilling Presentation.

37.     There is no evidence anyone at Keppel commented on or discussed the Drilling Presentation.

CONTAINS CONFIDENTIAL INFORMATION

38.    Slide 20 of the Drilling Presentation contains the alleged misrepresentation described in paragraph 58 of the Complaint.  (Ex. 71, KEPPEL00040804-862 at 847; Ex. 1, Compl. ¶ 58.)

39.    Slide 25 of the Drilling Presentation contains the alleged misrepresentation described in paragraph 59 of the Complaint.  (Ex. 71, KEPPEL00040804-862 at 852; Ex. 1, Compl. ¶ 59.)

40.    Slide 27 of the Drilling Presentation contains the alleged misrepresentation described in paragraph 60 of the Complaint.  (Ex. 71, KEPPEL00040804-862 at 854; Ex. 1, Compl. ¶ 60.)

41.    There is no evidence anyone at Keppel detected the alleged misrepresentations on slides 20, 25 or 27 of the Drilling Presentation.  (Ex. 71, KEPPEL00040804-862 at 847, 852 and 854.)

42.    There is no evidence anyone at Keppel knew the Drilling Presentation was shared with EIG.

ii.    <u>October 2010 Pre-Salt Oil Rigs Project Document</u>

43.    The "Pre-Salt Oil Rigs Project" document described in paragraph 61 of the Complaint is DX061.  (Ex. 20, DX061; Ex. 1, Compl. ¶ 61.)

44.    There is no evidence that anyone at Keppel was involved in preparing or disseminating the Pre-Salt Oil Rigs Project document to any potential or actual investor.

45.    There is no evidence anyone at Keppel received the Pre-Salt Oil Rigs Project document.

46.    There is no evidence anyone at Keppel knew about the Pre-Salt Oil Rigs Project document.

CONTAINS CONFIDENTIAL INFORMATION

47.     There is no evidence anyone at Keppel knew the Pre-Salt Oil Rigs Project document was shared with EIG.

iii.     September 2011 Private Placement Memo

48.     The September 2011 Private Placement Memo described in paragraph 62 of the Complaint is DX062.  (Ex. 21, DX062; Ex. 1, Compl. ¶ 62.)

49.     There is no evidence that anyone at Keppel was involved in preparing or disseminating the Private Placement Memo to any potential or actual investor.

50.     There is no evidence anyone at Keppel received the Private Placement Memo.

51.     There is no evidence anyone at Keppel knew about the Private Placement Memo.

52.     There is no evidence anyone at Keppel knew the Private Placement Memo was shared with EIG.

iv.     October 2011 Email

53.     The October 5, 2011 email described in paragraph 65 of the Complaint is DX063. (Ex 49, DX063; Ex. 1, Compl. ¶ 65.)

54.     There is no evidence anyone at Keppel was involved in preparing or disseminating the October 5, 2011 email.

55.     There is no evidence anyone at Keppel received the October 5, 2011 email.

56.     There is no evidence anyone at Keppel knew about the October 5, 2011 email.

57.     There is no evidence anyone at Keppel knew the October 5, 2011 email was shared with EIG.

v.     December 2011 Email

58.     The December 23, 2011 email described in paragraph 66 of the Complaint is DX064.  (Ex. 50, DX064; Ex. 1, Compl. ¶ 66.)

59.     There is no evidence anyone at Keppel was involved in preparing or disseminating the December 23, 2011 email.

60.     There is no evidence anyone at Keppel received the December 23, 2011 email.

61.     There is no evidence anyone at Keppel knew about the December 23, 2011 email.

62.     There is no evidence anyone at Keppel knew the December 23, 2011 email was shared with EIG.

vi.     <u>August 2012 Email</u>

63.     The August 8, 2012 email described in paragraph 67 of the Complaint is Exhibit 51.  (Ex. 51, EIG_KEP_00000128; Ex. 1, Compl. ¶ 67.)

64.     There is no evidence anyone at Keppel was involved in preparing or disseminating the August 8, 2012 email.

65.     There is no evidence anyone at Keppel received the August 8, 2012 email.

66.     There is no evidence anyone at Keppel knew about the August 8, 2012 email.

67.     There is no evidence anyone at Keppel knew the August 8, 2012 email was shared with EIG.

vii.    <u>2013 Meetings</u>

68.     There is no evidence that anyone at Keppel was involved in or aware of the meeting described in paragraph 68 of the Complaint.

69.     There is no evidence that anyone at Keppel was involved in or aware of the conference described in paragraph 69 of the Complaint.

**F.     EIG's Decision to Invest in Sete in June 2011.**

70.     On June 3, 2011, Kevin Corrigan sent Luiz Reis, a Lakeshore representative, an email stating that "the decision to invest in Sete Brasil has been made internally".  (Ex. 60, EIG_KEP_00257969-971 at 969.)

CONTAINS CONFIDENTIAL INFORMATION

71.     EIG's due diligence of Sete "culminated" in the preparation of the 43-page June 2011 Investment Recommendation.  (Ex. 22, DX074; Ex. 10, Corrigan Tr. 69:25-70:05; Ex. 16, Corrigan D.C. Tr. 156:08-14; Ex. 18, Thomas D.C. Tr. 115:09-116:13.)

72.     On June 27, 2011, EIG's Kevin Corrigan and Simon Hayden presented the June 2011 Investment Recommendation to EIG's investment committee.  (Ex. 22, DX074 at 322.)

73.     The June 2011 Investment Recommendation included a total of five bullet points concerning any Keppel entity in its Appendix describing "potential" shipyards.  (Ex. 19, DX039 at 831.)

74.     Kevin Corrigan testified that the five bullets on BrasFELS were the "sum total of information that was presented to the investment committee regarding Brasfels".  (Ex. 10, Corrigan Tr. 77:09-25.)

75.     On June 27, 2011, EIG's investment committee approved an investment in Sete of up to 250 million Brazilian Reals ("BRL").  (Ex. 22, DX074 at 322.)

76.     The decision to invest in Sete was made by EIG's investment committee. (Thomas D.C. Tr. 117:11-14.)

77.     As of June 27, 2011, the EAS Shipyard was the only shipyard that had signed a shipbuilding contract with Sete.  (Ex. 19, DX039 at 802.)

78.     It was publicly reported by February 2011 that the EAS Shipyard had obtained the first seven drillship contracts from Sete.  (Ex. 42, PX062 at 007.)

79.     Blair Thomas, EIG's CEO, testified that at the time of the June 27, 2011 investment committee meeting, he did not know whether Keppel would ever get a shipbuilding contract from Sete.  (Ex. 15, Thomas Tr. 96:22-25.)

CONTAINS CONFIDENTIAL INFORMATION

80.     Kevin Corrigan testified that at the time of the June 27, 2011 investment committee meeting, he did not know exactly which shipbuilders would ultimately end up building ships for Sete.  (Ex. 10, Corrigan Tr. 74:11-75:09.)

81.     On June 29, 2011, Kevin Corrigan sent an email to other EIG employees stating that "[t]his week we are signing a binding agreement to make the investment when they fulfill two requirements:  get the boat contract from Petrobras, and existing investors fail to exercise all their pre-emptive rights."  (Ex. 26, DX086 at 755.)

82.     On June 30, 2011, Sete, Lakeshore and EIG executed an investment agreement, under which EIG "irrevocably and irreversibly agree[d] to invest up to of R$250,000,000 (two hundred and fifty million Brazilian reais) ('Equity Commitment')".  (Ex. 27, DX087 at 153, 160; Ex. 26, DX086 at 755.)

**G.     EIG's First Visit to the BrasFELS Shipyard in August 2011.[1]**

    i.   <u>August 2011 Yard Visit.</u>

83.     EIG initiated and planned the August 2011 visit to the BrasFELS Shipyard. (Ex. 10, Corrigan Tr. 131:13-24, 132:22-133:03, 135:09-21.)

84.     Kevin Corrigan asked Sete to arrange the August 2011 visit to the BrasFELS Shipyard.  (Ex. 10, Corrigan Tr. 135:12-18.)

85.     Kevin Corrigan set up the August 2011 visit "to help CIC in their due diligence" because "CIC was . . . beginning to kick the tires, as we had the previous year".  (Ex. 10, Corrigan Tr. 131:23-24, 132:22-24, 135:09-21; Ex. 52, EIG_KEP_00049095-096.)

---

[1] Keppel's motion for summary judgment does not rely on the legal distinctions between Keppel and its affiliates; therefore, the motion and this statement of facts do not distinguish between employees of Keppel and employees of Keppel's affiliated entities.

CONTAINS CONFIDENTIAL INFORMATION

86.     CIC was an "important investor in EIG" funds.  (Ex. 10, Corrigan Tr. 134:10-15, 131:06-12.)

87.     Kevin Corrigan testified that the "sole purpose" of the August 2011 visit was "gauging [CIC's] interest in investing in Sete Brasil".  (Ex. 16, Corrigan D.C. Tr. 101:02-10.)

88.     On or around August 2, 2011, Keppel received a request from Sete to host the August 2011 yard visit.  (Ex. 68, KEPPEL00010460-0462 at 460.)

89.     There is no evidence of any communications between EIG and Keppel concerning the planning of the August 2011 yard visit.

90.     On or around August 4, 2011, Kevin Corrigan visited the BrasFELS Shipyard with representatives of CIC, which is the visit described in paragraph 71 of the Complaint. (Ex. 4, EIG Response to RFA 32; Ex. 1, Compl. ¶ 71.)

91.     There is no evidence of any contact between EIG and Keppel concerning Sete prior to the August 4, 2011 yard visit.

92.     The "focus" of EIG's August 2011 yard visit "was on the shipbuilding capacity of Brasfels".  (Ex. 10, Corrigan Tr. 143:07-09.)

93.     Nobody who attended the August 2011 visit raised questions relating to bribery or corruption.  (Ex. 10, Corrigan Tr. 136:14-17, 143:03-06.)

94.     Kevin Corrigan testified that during the August 2011 yard visit "everything they said was truthful", although "you know, they didn't bring up the corruption scheme that already existed".  (Ex. 10, Corrigan Tr. 136:03-13.)

95.     On August 8, 2011, Sete emailed Keppel about the August 2011 visit to the BrasFELS Shipyard, stating that "[t]he visit was very productive and our investors and associates

CONTAINS CONFIDENTIAL INFORMATION

learned a lot about the construction of the semi-subs.  The overall impression was great and achieved the intended result- a lower perceived risk of the project."  (Ex. 45, PX095 at -1126.)

96.     EIG's August 2011 yard visit occurred after EIG made its initial decision to invest in Sete.  (Ex. 10, Corrigan Tr. 130:09-131:17.)

97.     Yard tours at the BrasFELS Shipyard were common and routine occurrences. (Ex. 14, Tan II Tr. 287:12-22, 276:24-279:19; see, e.g., Ex. 67, KEPPEL00009411; Ex. 70, KEPPEL00330052; Ex. 64, KEPPEL00006070; Ex. 66, KEPPEL00009237; Ex. 65, KEPPEL00076345.)

   ii.     August 2011 Video Shoot.

98.     EIG initiated the August 2011 video shoot of the BrasFELS Shipyard.  (Ex. 29, DX092 at 596; Ex. 30, DX093 at 447.)

99.     Barrington planned the August 2011 video shoot of the BrasFELS Shipyard. (Ex. 29, DX092 at 596; Ex. 30, DX093 at 446-47; Ex. 47, BARRINGTON_ET_00000486-0495 at 494.)

100.    Barrington, on EIG's behalf, reached out to Sete to arrange the August 2011 video shoot as part of a presentation for EIG's annual investors conference.  (Ex. 47, DX093 at -0447.)

101.    Barrington originally planned to record video at the EAS Shipyard, not the BrasFELS Shipyard.  (Ex. 29, DX092 at 596; Ex. 30, DX093 at 447; Ex. 47, BARRINGTON_ET_00000486-495 at 491.)

102.    Kevin Corrigan testified that Barrington recorded video at the BrasFELS Shipyard instead of the EAS Shipyard because "from a logistical standpoint it was obviously easier to go to BrasFELS".  (Ex. 10, Corrigan Tr. 148:12-149:07.)

103.    There is no evidence of any direct communications between EIG and Keppel about the planning of the Barrington video shoot.

104.    On or around August 24, 2011, Barrington's Barbara Olsen visited the BrasFELS shipyard to record video of "general shipyard activity", which is the video shoot described in paragraph 72 to 75 of the Complaint.  (Ex. 1, Compl. ¶¶ 72-75; Ex. 30, DX093 at 447; Ex. 48, BARRINGTON_ET_00000651 at 653; Ex. 10, Corrigan Tr. 154:25-155:10.)

105.    The Barrington video shoot was independent of EIG's due diligence for its Sete investment.  (Ex. 10, Corrigan Tr. 157:02-08.)

106.    Kevin Corrigan testified that the Barrington video shoot was "not an extension of [EIG's] due diligence" of the Sete investment.  (Ex. 10, Corrigan Tr. 157:02-08.)

107.    The August 2011 video shoot did not include footage of construction for Sete drillships because Keppel did not obtain its first contract until December 2011.  (Ex. 43, KEPPEL00490690-768.)

108.    There is no evidence that bribery or corruption risks were discussed during the planning or shooting of the Barrington video.

109.    There is no evidence that Keppel provided inaccurate information to Barrington or EIG in connection with the Barrington video.

110.    The approximately five-minute-long Barrington video was shown at EIG's daylong annual investors' conference.  (Ex. 10, Corrigan Tr. 157:23-158:24.)

111.    There is no evidence that the Barrington video mentioned Keppel.

**H.    EIG's Decision to Increase Its Equity Commitment in September 2011.**

112.    On September 8, 2011, Sete, Lakeshore and EIG executed the "First Amendment and Restatement Agreement".  (Ex. 28, DX089.)

113.    The First Amendment and Restatement Agreement provided that the "[p]arties agree to increase the Original Equity Commitment from the current R$250,000,000 (two hundred and fifty million Brazilian reais) to the amount of R$500,000,000 (five hundred million Brazilian

reais), an increase, therefore, of R$250,000,000 (two hundred and fifty million Brazilian reais)".
(Ex. 28, DX089 at 626, 635.)

114.    On September 16, 2011, Blair Thomas presented the September 2011 Investment
Recommendation to EIG's investment committee.  (Ex. 24, DX076 at 323.)

115.     The September 2011 Investment Recommendation included the same five bullets
on the BrasFELS Shipyard as the June 2011 Investment Recommendation.  (Ex. 23, DX075 at
431.)

116.    Kevin Corrigan testified that what was said in the June 2011 Investment
Recommendation relating to BrasFELS is exactly what was said in the September 2011
Investment Recommendation relating to BrasFELS.  (Ex. 10, Corrigan Tr. 110:03-07.)

117.    On September 16, 2011, EIG's investment committee approved the increase of
EIG's equity commitment from 250 million BRL to 500 million BRL.  (Ex. 10, Corrigan Tr.
109:06-09; Ex. 15, Thomas Tr. 99:15-21.)

118.    As of September 16, 2011, the EAS Shipyard was the only shipyard that had been
obtained an EPC Contract from Sete.  (Ex. 23, DX075 at 215; Ex. 10, Corrigan Tr. 124:19-
125:02.)

**I.      Keppel's First Contract from Sete in December 2011.**

119.    On December 16, 2011, Sete and Keppel executed an EPC Contract to build one
drillship for Sete via their subsidiaries, Fernvale and Urca Drilling B.V.[2]  (Ex. 43], PX070.)

120.    The December 16, 2011 EPC Contract was Keppel's first shipbuilding contract in
connection with Sete.  (Ex. 43, KEPPEL000490690-768.)

---

[2] Keppel built semi-submersible drilling units for Sete.  For purposes of this motion,
however, Keppel adopts the "drillship" terminology used in the Complaint.

CONTAINS CONFIDENTIAL INFORMATION

121.    EIG was not a party to the December 16, 2011 EPC Contract.  (Ex. 43, KEPPEL00490690-768 at 690.)

**J.    EIG's Second Visit to the BrasFELS Shipyard in March 2012.**

122.    EIG did not mention any 2012 visit to the BrasFELS Shipyard in the Complaint. (Ex. 1, Compl.)

123.    EIG initiated and planned the March 2012 visit to the BrasFELS Shipyard. (Ex. 31, DX095 at 469; Ex. 58, EIG_KEP_00251523-529 at 528.)

124.    There is no evidence of any communications between EIG and Keppel concerning the planning of the March 2012 yard visit.

125.    On or around March 28, 2012, Kevin Corrigan, Simon Hayden and Hoshrav Patel of EIG visited the BrasFELS Shipyard with representatives of ADICO.  (Ex. 4, EIG Response to RFA 33; Ex. 10, Corrigan Tr. 162:11-19; Ex. 12 Patel Tr. 88:15-19.)

126.    The March 2012 visit to the BrasFELS Shipyard was part of ADICO's due diligence of Sete.  (Ex. 10, Corrigan Tr. 160:17-22; Ex. 17, Hayden D.C. Tr. 304:21-305:01; Ex. 57, EIG_KEP_00251502-508 at 505)

127.    ADICO was an investor of EIG.  (Ex. 10, Corrigan Tr. 160:23-161:05.)

128.    Kevin Corrigan testified that the March 2012 visit "was a mirror of the CIC's visit a few months earlier", and that the purpose was to present to ADICO the possibility of investing in Sete.  (Ex. 10, Corrigan Tr. 160:12-22.)

129.    The focus of the March 2012 visit to the BrasFELS Shipyard was the shipbuilding capacity at BrasFELS.  (Ex. 10, Corrigan Tr. 166:14-18; Ex. 11, Hayden Tr. 84:21-25.)

130.    There is no evidence that bribery or corruption were discussed during the March 2012 yard visit.

CONTAINS CONFIDENTIAL INFORMATION

131.    Kevin Corrigan testified that he could not recall any discussions concerning corruption during the March 2012 visit to the BrasFELS Shipyard.  (Ex. 10, Corrigan Tr. 167:08-16.)

132.    Simon Hayden testified that he could not recall any specific questions during the March 2012 visit to the BrasFELS Shipyard.  (Ex. 17, Hayden D.C. Tr. 305:07-09; Ex. 11, Hayden Tr. 86:04-08.)

133.    Hoshrav Patel testified that he had no recollection of the March 2012 visit to the BrasFELS Shipyard.  (Ex. 12, Patel Tr. 84:14-88:14; Ex. 57, EIG_KEP_00251502-508 at 505.)

134.    There is no evidence Keppel provided any inaccurate information in connection with the March 2012 visit to the BrasFELS Shipyard.

135.    Kevin Corrigan testified that there was no misleading information provided concerning the shipbuilding capacity of BrasFELS during the March 2012 visit to the BrasFELS Shipyard.  (Ex. 10, Corrigan Tr. 168:15-20.)

**K.      Keppel's Five Additional Contracts from Sete in August 2012.**

136.    On April 12, 2012, Keppel announced that it had entered a letter of intent with Sete to build an additional five drillships.  (Ex. 63, KEPPEL00005616-617.)

137.    On August 2, 2012, EPC Contracts for five drillships were executed between Keppel and Sete.  (Ex. 37, PX051; Ex. 38, PX052; Ex. 39, PX053; Ex. 40, PX054; Ex. 41, PX055.)

138.    EIG was not a party to the August 2, 2012 EPC Contracts.  (Ex. 37, PX051; Ex. 38, PX052; Ex. 39, PX053; Ex. 40, PX054; Ex. 41, PX055.)

139.    On August 7, 2012, Eva Ho of Keppel circulated the final draft of the press release and explained: "Sete Brasil has approved our press release.  The approved version is

below.  They have made only three minor changes as highlighted in yellow below."  (Ex. 74, KEPPEL00429725-729 at 725-27.)

140.    One of the three changes Sete made to Keppel's draft of the August 7, 2012 press release was the addition of the words "and International" to the sentence "Sete Brasil is a Brazilian company established in December 2010 and formed by Brazilian and International finance investors, including banks and the four biggest Brazilian pension funds, besides Petrobras".  (Ex. 74, KEPPEL00429725-729 at 725-27.)

141.    The August 7, 2012 press release entitled "Keppel signs contracts with Sete Brasil for five DSS 38E semis for US$4.1 billion" described in paragraph 78 of the Complaint is Ex. 75.  (Ex. 75, KEPPEL00444138-140; Ex. 1, Compl. ¶ 78.)

142.    Sete added the word "International" to the description of Sete's investors in Keppel's August 7, 2012 press release.  (Ex. 74, KEPPEL00429725-729 at 725.)

143.    There is no evidence Keppel discussed with Sete or anyone else the phrase "International finance investors" in the August 7, 2012 press release.

**L.    EIG's Disbursement of Funds in August 2012.**

144.    On or around July 31, 2012, upon the satisfaction of the conditions in EIG's June 30, 2011 investment agreement (as amended and restated in September 8, 2011), EIG executed shareholder agreements with Sete and its other equity investors.  (Ex. 55, EIG_KEP_00110494-535; Ex. 56, EIG_KEP_00116690.)

145.    On or around August 3, 2012, EIG answered its first capital call by disbursing approximately $50 million to Sete.  (Ex. 1, Compl. ¶ 76.)

146.    No further action or approval from EIG's investment committee was needed in July and August 2012 because the investment committee had already approved the investment in

CONTAINS CONFIDENTIAL INFORMATION

June and September 2011.  (Ex. 15, Thomas Tr. 104:04-07; Ex. 18, Thomas D.C. Tr. 188:05-14, 195:08-196:04.)

**M.      Financial and Operational Documents Concerning Sete.**

147.    On January 14, 2011, Zwi Skornicki forwarded Yew Yuen Chow a document entitled, "Drilling Rigs In Brazil Project".  (Ex. 44], PX086 at 887.)

148.    The cover of the Drilling Rigs in Brazil Project document states that it is a "Presentation to Drilling Operators".  (Ex. 44, PX087 at 888.)

149.    The Drilling Rigs in Brazil Project document does not mention EIG.  (Ex. 44, PX087.)

150.    There is no evidence anyone at Keppel opened or read the Drilling Rigs in Brazil Project document.

151.    There is no evidence anyone at Keppel ever commented on or discussed the Drilling Rigs in Brazil Project document.

152.    There is no evidence anyone at Keppel knew which other entities, if any, received the Drilling Rigs in Brazil Project document.

153.    On October 30, 2011, Keppel employees were sent a document entitled, "Sete Brasil Participações S/A Management Presentation" and a financial model entitled "Modelo Financeiro Sete Brasil".  (Ex. 33, PX014 at 554, 560; Ex. 34, PX038.)

154.    There is no mention of EIG in the "Sete Brasil Participações S/A Management Presentation". (Ex. 33, PX014.)

155.    There is no mention of EIG in the financial model entitled "Modelo Financeiro Sete Brasil".  (Ex. 34, PX038.)

156.    There is no evidence anyone at Keppel knew which other entities, if any, received the "Sete Brasil Participações S/A Management Presentation".

CONTAINS CONFIDENTIAL INFORMATION

157.     There is no evidence anyone at Keppel knew which other entities, if any, received the financial model entitled "Modelo Financeiro Sete Brasil".

158.     Keppel's Rule 30(b)(6) deposition witness, Tan Leong Peng, testified that all projects require financing and Sete was no different.  (Tan I Tr. 130:09-131:07.)

**N.     News Reports Concerning Sete.**

159.     On August 16, 2011, an email from Guia Oil & Gas Brasil was sent to Tommy Sam with links to 10 articles, including an article headlined "Sete Brasil receives funds from the EIG fund" (translated to English).  (Ex. 69, KEPPEL00020438-440 at 438.)

160.     There is no evidence anyone at Keppel read the August 2011 news report.

161.     There is no evidence anyone at Keppel commented on or discussed the August 2011 news report.

162.     On February 13, 2012, Keppel employees were sent a press clipping that included an article with the headline "Oil-Rig Co Sete Brasil May Seek New Investors – Source".  (Ex. 35, PX018 at 871, 881.)

163.     On February 13, 2012, Keppel employees were sent an email that included an article with the headline "Sete Brasil Charts Growth Path On Back Of Latest Rig Order".  (Ex. 73, KEPPEL00049993 at 993.)

164.     There is no evidence anyone at Keppel read the February 2012 news reports.

165.     There is no evidence anyone at Keppel commented on or discussed the February 2012 news reports.

166.     On March 9, 2012, Keppel employees were sent an email that included an article with the headline "Sete Brasil will increase capital to R$7 billions (Portos e Navios)". (Ex. , 46, PX098 at 825.)

167.     There is no evidence anyone at Keppel read the March 2012 news report.

168.    There is no evidence anyone at Keppel commented on or discussed the March 2012 news report.

**O.    EIG's Third Visit to the BrasFELS Shipyard in June 2013.**

169.    According to an email dated May 28, 2013, Sete shareholders planned to visit the BrasFELS shipyard on June 6, 2013.  (Ex. 54, EIG_KEP_00095123-129 at 124.)

170.    The June 2013 visit to the BrasFELS Shipyard was initiated by Sete shareholders. (Ex. 54, EIG_KEP_00095123-129 at 124, 128.)

171.    Sete arranged the June 2013 visit to the BrasFELS Shipyard.  (Ex. 54, EIG_KEP_00095123-128 at -128.)

172.    There is no evidence of any communications between EIG and Keppel concerning the planning of the June 2013 visit to the BrasFELS Shipyard.

173.    On or around June 6, 2013, Kevin Corrigan visited the BrasFELS Shipyard along with other representatives of Sete's shareholders.  (Ex. 10, Corrigan Tr. 173:02-06; Ex. 4, EIG Response to RFA 34.)

174.    Kevin Corrigan testified that the purpose of the June 2013 visit to the BrasFELS Shipyard was "to see the progress of the shipyards" and that the focus of the visit was the shipbuilding capacity of BrasFELS.  (Ex. 10, Corrigan Tr. 169:08-22, Corrigan Tr. 174:13-21.)

175.    Kevin Corrigan testified that he could not recall anyone raising the subject of corruption risks during the June 2013 visit to the BrasFELS Shipyard.  (Ex. 10, Corrigan Tr. 175:07-13.)

176.    There is no evidence Keppel provided any inaccurate information in connection with the June 2013 visit to the BrasFELS Shipyard.

177.    The Complaint refers to a visit by EIG to the BrasFELS Shipyard in August 2013, but there is no evidence of any such visit in August 2013.  (Ex. 1, Compl. ¶ 79.)

CONTAINS CONFIDENTIAL INFORMATION

**P.      Operation Car Wash.**

178.    Brazilian authorities began investigating corruption at Petrobras in a probe called "Operation Car Wash", which started as an investigation into "alleged money laundering" and grew into a larger corruption investigation involving bribery at Petrobras.  (Ex. 1, Compl. ¶ 91.)

179.    By the fall of 2014, there were news reports about Operation Car Wash and the bribery scheme at Petrobras.  (Ex. 6, Wall St. J., Oct. 9, 2014; Ex. 7, The Washington Post, Nov. 17, 2014; Ex. 8, Bloomberg, Dec. 3, 2014.)

180.    On November 18, 2014, EIG received an inquiry from one of its investors about the potential impact of the bribery scandal on Sete.  (Ex. 32, DX109 at 926; Ex. 15, Thomas Tr. 137:02-139:03.)

**Q.      Keppel's Deferred Prosecution Agreement.**

181.    On December 22, 2017, Keppel entered the DPA to resolve "one count of conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977 ('FCPA'), as amended, Title 15, United States Code, Sections 78dd-2 and 78dd-3." (Ex. 3, DPA at 1 ¶ 1.)

182.    The DPA states that "[f]or a number of years, executives and employees of Petrobras with responsibility over the bidding of certain large projects. . . administered a scheme to secure corrupt payments equal to a percentage of a contract's value from the companies awarded those projects."  (Ex. 3, DPA at A-4 ¶ 18.)

183.    The bribery scheme involving Petrobras was extended to projects awarded by Sete in or around 2011.  (Ex. 3, DPA at A-4 ¶ 18; Ex. 1, Compl. ¶ 45.)

184.    The DPA states that "[i]n or about and between 2001 and 2014, KOM, together with others, including executives of KOM USA, knowingly and willfully conspired to pay, and

CONTAINS CONFIDENTIAL INFORMATION

paid, bribes in connection with thirteen projects in Brazil tendered by Petrobras and Sete Brasil."
(Ex. 3, DPA at A-5 ¶ 19.)

185.    The DPA states that "[i]n or about and between 2001 and 2011, KOM and KOM USA executives created and executed agreements on behalf of KOM with consulting companies controlled by [Zwi Skornicki] that were intended to facilitate bribe payment to obtain business from Petrobras and Sete Brasil and to conceal their purpose".  (Ex. 3, DPA at A-5 ¶ 21.)

186.    Commissions of one to three percent of a contract's value were standard each time.  (Ex. 3, DPA at A-13 ¶ 63; DPA at A-15 ¶ 74; DPA at A-9 ¶ 42.)

187.    Jeffrey Chow, Keppel's former legal director, drafted and signed the commission agreements related to Sete with Zwi Skornicki.  (Ex. 9, Chow Tr. 26:25-27:03.)

188.    Jeffrey Chow testified that the "intention" of Zwi Skornicki's contracts "wasn't to conceal any bribe payments.  The intention was to capture in writing the agreement between the company and [Mr. Skornicki], that he would be paid a certain commission fee for his assistance under certain contracts."  (Ex. 9, Chow Tr. 107:25-108:07-12.)

189.    Jeffrey Chow testified that:

> "[P]ayment wouldn't be able to go through the company without a contract or agreement that supports it.  There needs to be some documentation. . . . In order to make payment out of the company, you need to have all the required documents there to – for the accounting people to sign off and say, okay, payment is being made.  The contract that supports it, the invoice, the bank details. You just can't move money out of the company without a contract to support why you are moving money."  (Ex. 9, Chow Tr. 90:14-91:05.)

190.    Jeffrey Chow testified that "the contracts themselves were the documents necessary to process the agreement between Keppel and Zwi [Skornicki]".  (Ex. 9, Chow Tr. 142:04-07.)

CONTAINS CONFIDENTIAL INFORMATION

191.    Keppel executed two contracts, effective as of November 30, 2011 and December 1, 2011, with Zwi Skornicki's companies that provided for commission payments of 0.5% and 1.5% of the price of each drillship.  (Ex. 3, DPA at A-15-16, ¶ 77; Ex. 36, PX025 at 253-54, 276-78.)

192.    Jeffrey Chow testified that payment method that was arranged with Zwi Skornicki in connection with Sete was "the normal process that [Chow] ha[d] been familiar dealing with Zwi in the past".  (Ex. 9, Chow Tr. 121:05-09.)

193.    Jeffrey Chow testified that "[t]he standard commission agreement uses the standard format that we would be using to sign with Eagle do Brasil or with any companies."  (Ex. 9, Chow Tr. 88:15-18.)

194.    Jeffrey Chow testified that he had no knowledge or awareness of EIG prior to this lawsuit.  (Ex. 9, Chow Tr. 117:21-25.)

195.    In accordance with the agreements, when Keppel received milestone payments from Sete for the construction of its drillships, Keppel made commission payments to Zwi Skornicki's companies.  (Ex. 72, KEPPEL00045267 at 276-77; Ex. 5, Keppel Response to RFAs 1-10.)

196.    The DPA does not charge Keppel with defrauding Sete's investors, or with conspiring to defraud EIG or any other investors.  (Ex. 3, DPA.)

197.    Keppel did not make any admissions in the DPA concerning Sete's investors. (Ex. 3, DPA.)

198.    The DPA does not mention EIG or any other of Sete's investors (apart from Petrobras).  (Ex. 3, DPA.)

CONTAINS CONFIDENTIAL INFORMATION

Dated:  September 20, 2021

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

By
_____/s/ Peter T. Barbur_____
Peter T. Barbur
Rachel G. Skaistis
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
pbarbur@cravath.com
rskaistis@cravath.com

*Attorneys for Defendant Keppel Offshore & Marine Ltd.*