# EXHIBIT 40

| Human Resources Policies & Procedures | | Keppel Corporation | |
|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | Policy No. : | 1200 |
| Title : | **Code of Conduct** | Page : | 1 of 12 |
| Date Issued : | 1 December 2004 | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | |

**1  PURPOSE**

1.1  Keppel considers it important that employees understand the rules of conduct by which the Group operates and for which each of them are accountable, and the consequences of non-adherence to these rules.

1.2  This Code of Conduct therefore spells out the rules of conduct by which all employees should adhere to. These rules of conduct fall into the generic categories of:

- Employee Conduct – addresses standards of acceptable and unacceptable behaviour and personal decorum, as well as Keppel's workplace harassment policies.

- Business Conduct – addresses standards of ethical business behaviour including anti-corruption, the offering and receiving of gifts, hospitality and promotional expenditures, dealings with Keppel Associates as well as conflict of interests.

1.3  **Related Policies**: Under separate cover are the related policies for:

- Keppel Whistle-Blower Protection Policy (Effected 1 Sep 2004)
- Group Policy – Donations and Sponsorships (Effected Jun 2009)
- Insider Trading Policy (Effected Jun 2004)
- Safeguarding Information – Code of Practice (Effected Dec 2003)
- End User Computing Policy (Effected Apr 2006)

1.4  Any violation of the rules of conduct as described below constitutes misconduct, and may result in disciplinary action taken against an employee. Employees are encouraged to report violations of this Code in accordance with the procedure set out in the Keppel Whistle-Blower Protection Policy.

**2  SCOPE**

2.1  The rules of conduct set out herein apply to all employees (whether full or part time and permanent or temporary) of Keppel Corporation Limited and its subsidiary companies (collectively, "Group companies" / "Group", and each a "Group company").

2.2  Employees should make known Keppel's rules of business conduct set out under paragraph 3.2 below to individuals or entities (not owned or controlled by Keppel) that provides services, or engages in business activities, on behalf of a Group company (collectively, "Keppel Associates").

2.3  Paragraph 1.4 applies to all violations under this Code.

| Human Resources Policies & Procedures | | **Keppel Corporation** | |
|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | Policy No. : | 1200 |
| Title : | **Code of Conduct** | Page : | 2 of 12 |
| Date Issued : | 1 December 2004 | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | |

3 **POLICY**

3.1 **Employee Conduct**

3.1.1 The long-standing policy of Keppel is one of strict observance of all laws and regulations in all the countries in which the Group operates. Keppel employees must always choose the course of highest integrity, guided by the Keppel Core Values. Employees must understand that we care how results are obtained, not just that they are obtained.

(i) Employees must observe and comply with all Singapore laws and regulations as well as the local laws and regulations of other countries where the Group carries on business.

(ii) Employees must always act in the best interests of the company.

(iii) Employees must at all times act honestly and use reasonable care, skill and diligence in the discharge of their duties and responsibilities.

(iv) An employee should not place himself/herself in a position where his/her duty to the relevant Group company and his/her personal interests may conflict.

(v) Employees must employ the powers and assets that they are entrusted with for the purposes authorised by the relevant Group company.

(vi) An employee must not make improper use of any information acquired by virtue of his position to gain advantage for himself or for any other person or to cause detriment to a Group company.

(vii) An employee should co-operate with colleagues in a manner that promotes the efficient conduct of Group business, and understand and act on the basis that all employees share the responsibility for supporting and adhering to the Group's goals and objectives.

(viii) An employee should not possess or use alcohol in any situation in which behaviour or performance at work may be affected.

(ix) Employees must not possess or use recreational drugs in any situation, even in situations where use of recreational drug is permitted under local laws.

(x) Employees should channel all press queries to the Group Corporate Communications (GCC) department. Press briefings, interviews or conferences should not be initiated without prior consultation with GCC.

| Human Resources Policies & Procedures | | **Keppel** Corporation | |
|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | Policy No. : | 1200 |
| Title : | **Code of Conduct** | Page : | 3 of 12 |
| Date Issued : | 1 December 2004 | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | |

3.1.2 **Safety**

It is our policy to conduct our business in a manner that protects the safety of our employees, others involved in our operations, customers and the public. Keppel will strive to prevent all accidents, injuries and occupational illnesses through the active participation of every employee.

3.1.3 **Workplace Harassment**

(i) Keppel's policy prohibits discrimination on any basis inclusive of any bias on the basis of ethnicity, sex, religious beliefs, nationality, age or any physical disability. Our aim is to provide a work environment that fosters mutual employee respect and promote harmonious working relationships. To us, harassment creates an intimidating or hostile work environment, interferes with an individual's work performance and adversely affects an individual's employment and/or career progression opportunity.

(ii) Forms of harassment include (but are not limited to) epithets, slurs, negative stereotyping, intimidating acts and the circulation, posting (inside or outside your work area) or e-mailing of written or graphic materials that show hostility towards individuals because of their ethnicity, sex, religious beliefs, nationality, age or physical disability.

(iii) Sexual harassment constitutes a form of workplace harassment and is also not tolerated at Keppel. Sexual harassment includes (but are not limited to):

- Offensive, sexually-oriented verbal kidding, teasing or jokes

- Repeated unwanted sexual advances, flirtations or propositions

- Graphic or degrading comments about an individual's appearance or sexual activity

- Offensive physical contact such as patting, grabbing, pinching or brushing against another's body.

3.2 **Business Conduct**

The rules of business conduct set out below extend to all Group companies' business dealings and transactions in all countries in which they operate.

3.2.1 **Ethical Conduct and Compliance with Laws**: Keppel's policy is to conduct business with integrity, fairly, impartially, in an ethical and proper manner, and in compliance with all applicable laws and regulations. In conducting our business, integrity must underlie all relationships, including those with customers, suppliers, communities and employees. In this connection, employees are required to have the strength to do what they believe to be right in difficult situations.

| Human Resources Policies & Procedures | | **Keppel Corporation** | |
|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | Policy No. : | 1200 |
| Title : | **Code of Conduct** | Page : | 4 of 12 |
| Date Issued : | 1 December 2004 | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | |

    3.2.2  **Anti-Corruption**: The anti-corruption policies and measures set out below are necessary to protect the business, resources and reputation of the Keppel Group.

        (i)  Employees must under no circumstances offer, promise, give or authorise the giving, directly or through third parties, of any bribe, kickback, illicit payment, benefit in kind or any other advantage to a public official, private sector customer, supplier, contractor, or any other person or entity, as an inducement or reward for an improper performance or non-performance of a function or activity. Facilitation payments (also referred to as grease payments; that is, payments or gifts made to a government or public official to speed up, or secure the performance of, a routine, governmental action which the official is already obliged to perform such as issuing permits, immigration controls, providing services or releasing goods held in customs) are also bribes. Accordingly, employees should not make any facilitation payments on any Group company's behalf.

        (ii)  Similarly, employees must not under any circumstances solicit or accept, directly or indirectly, any bribe, kickback, illicit payment, benefit in kind or any other advantage from any customer, supplier, contractor, or any other person or entity that is intended to induce or reward an improper performance or non-performance of a function or activity.

    3.2.3  **Gifts and Hospitality Payments**: While it is recognized that the giving or receiving of gifts and hospitality payments may help in the building of business relationships, good judgement must be exercised at all times. The offer and receipt of gifts, hospitality or expense must be avoided whenever they could affect or be perceived to affect the outcome of business transactions or dealings, or are not reasonable and bona fide. Employees should avoid giving or receiving of gifts or hospitality (including entertainment, meals, tickets to social, entertainment or sports events etc) which is excessive in value, given too often, or leaves the employee or (as the case may be) the other person in a position of obligation. Gifts in the form of cash or cash equivalent should be avoided.

        Further details of the Group's policy in respect of gifts and hospitality are set out in the **Appendix** hereto.

    3.2.4  **Donations and Contributions**: Donations, sponsorships and other contributions made on behalf of a Group Company must not be used as a subterfuge for bribery. They should only be made without expectation of tangible business returns. Please refer to **Group Policy – Donations and Sponsorships** for authorised levels of approval for donations and contributions.

    3.2.5  **Dealing with Keppel Associates**:

        (i)  "Keppel Associates" are individuals or entities (not owned or controlled by a Group company) that provides services, or engages in business activities, on behalf of a Group company. Such persons or entities include without limitation commercial agents, sales representatives, consultants, advisors,

| Human Resources Policies & Procedures | | Keppel Corporation | |
|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | Policy No. : | 1200 |
| Title : | **Code of Conduct** | Page : | 5 of 12 |
| Date Issued : | 1 December 2004 | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | |

        suppliers of services, contractors or sub-contractors, and any other service providers **who act on behalf of a Group company** in any way in connection with its business.

   (ii)    The assistance and local knowledge of Keppel Associates may be essential. However, to minimise the risk of fraud or corruption on their part, Keppel Associates should be made aware of and, where relevant, adhere to Keppel's rules of business conduct.

   (iii)   Please refer to the **Appendix** hereto on the requirements for evaluating, selecting and retaining Keppel Associates.

3.2.6  **Record keeping:**

   (i)    For purposes of financial audits and so as to prevent improper payments being made, it is important that the books and records of each Group company contain full and accurate information about all transactions and expenditures incurred by the Group company. The information documented should be such that it is possible to see exactly what was paid, to whom, the reason why it was paid, where it was paid (for example, from or to which accounts) and when. Attempts to create false or misleading records are prohibited.

   (ii)   Employees seeking approval for a payment must provide adequate supporting documentation in order for the payment to be authorised.

3.3  **Conflict of Interest**

3.3.1  All employees and officers of the Group must avoid any conflict between their own interests and the interests of the Group. This includes transaction in securities of the Group, any affiliate, or any non-affiliated organization, in dealing with suppliers, customers and other third parties.

3.3.2  Employees are required to declare to Group Human Resources immediately under any of the following circumstances:

- Any immediate relationship with a KCL's Director or the CEO. This applies only to employee whose remuneration exceeds S$150,000 for the financial year ended 31 December. In this regard, immediate relationships refer to a spouse, child, adopted child, step-child, brother, sister or parent.

- Any direct reporting relationships within the Group between the employee and his or her spouse or immediate family members, in instances where his or her spouse or immediate family members is also an employee of the Group.

- Any ownership interest (either direct or indirect) in any supplier, customer, or competitor of the Group, unless it is in a listed company for investment purposes only.

| Human Resources Policies & Procedures | | **Keppel Corporation** | |
|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | Policy No. : | 1200 |
| Title : | **Code of Conduct** | Page : | 6 of 12 |
| Date Issued : | 1 December 2004 | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | |

- Any representation as an officer, director, partner, consultant, representative, agent or advisor of a supplier, customer, or competitor of the Group, including if acting as a Group company's nominee Director on the Board of supplier, customer or other business associate.

- Any other activity that could potentially create conflict of interest. Examples include:

    (i) Having any personal financial dealings with a representative from a supplier, customer, or competitor of the Group.
    (ii) Dealing directly, in the course of normal Group responsibilities, with a spouse or immediate family member who is employed by a supplier, customer, or competitor of the Group.

3.3.3   Notwithstanding the above, it is compulsory for all Senior Management staff to submit their declaration annually, including "NIL" declaration.  For the purpose of this declaration, "Senior Management staff" refers to employees at job grades E9 & above of KCL and its subsidiaries (both Singapore and Overseas).  GHR will initiate this annual declaration exercise in November of the year.

3.3.4   Declaration must be made using **Form A**.

4   REPORTING

Except to the extent prohibited by applicable law, employees are encouraged to report violations of this Code or applicable laws (including the U.S FCPA, U.K. Bribery Act 2010 and other applicable anti-bribery laws) in accordance with the procedures set out in the Keppel Whistle-Blower Protection Policy.

Appropriate disciplinary action, including suspension or termination of employment, will be taken in the event that an employee is found to have violated the rules of conduct set out in this Code.

5.   QUERIES

Employees should contact Director, Group Human Resources or General Manager, Group Human Resources should they have any query about any of the rules of conduct or any other matter relating to this Code.

6.   EFFECTIVE DATE

This revised Code will take effect on 18 November 2011.

| Human Resources Policies & Procedures | | | Keppel Corporation | |
|---|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | | Policy No. : | 1200 |
| Title : | **Code of Conduct** | | Page : | 7 of 12 |
| Date Issued : | 1 December 2004 | | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | | |

7. REVIEW

   Group Human Resources will regularly review and audit this Code in consultation with Group Control & Accounts, Group Legal, Group Risk Management and Group Internal Audit to ensure that Group's businesses are carried out with integrity and in an ethical and proper manner, the interests of the Group is safeguarded, and a harmonious and ethical work environment is maintained for all employees.

Confidential
KEPPEL00267964

| Human Resources Policies & Procedures | | **Keppel Corporation** | |
|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | Policy No. : | 1200 |
| Title : | **Code of Conduct** | Page : | 8 of 12 |
| Date Issued : | 1 December 2004 | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | |

APPENDIX

(I) GIFTS AND HOSPITALITY

**Giving or receiving gifts or hospitality generally**

Gifts and hospitality includes the offer or receipt of gifts, business meals, tokens of appreciation and gratitude, or invitations to or sponsorship of events, functions or other social or entertainment gatherings, in connection with matters related to any Group company's business.

Group employees and Keppel Associates should only give or accept gifts or hospitality where it is reasonable, proportionate and appropriate in the circumstances, and should never do so in order to secure any improper advantage, or to influence a business decision. Hospitality is only permitted to be given where its purpose is to provide an opportunity to develop or enhance business relationships, by creating an opportunity to engage in discussions with a customer or business partner.

In addition, if the Group company in which an employee works has additional authority thresholds or requirements in respect of the giving or receipt of gifts and/or hospitality, the employee must also observe such thresholds or requirements at all times. If an employee is in doubt as to whether such thresholds or requirements exist, the employee should contact the relevant Group company's Human Resource department.

Gifts, hospitality and other advantages offered, or received by, closely related individuals of any Group employee must also comply with this policy.

Practical Guidance:

Some guidance in determining whether gifts or hospitality payments comply with this policy is set out below:

- Made for the right reason: If a gift or hospitality, it should be given clearly as an act of appreciation; if it involves travel expenses, there should be a bona fide business purpose;

- No obligation: The gift or payment does not place the recipient under any obligation;

- No expectation: The gift or payment does not leave the employee or (as the case may be) the other person in a position of obligation;

- Made openly: If made secretly and undocumented then the purpose may be open to question;

- Accords with stakeholder perception: The gift or payment would not be viewed unfavourably by stakeholders if it were to be made known to them;

| Human Resources Policies & Procedures | | | **Keppel Corporation** | |
|---|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | | Policy No. : | 1200 |
| Title : | **Code of Conduct** | | Page : | 9 of 12 |
| Date Issued : | 1 December 2004 | | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | | |

- Reasonable value: The size of the gift is small and the value of the hospitality or payment accords with general business practice;

- Appropriate: The nature of the gift or payment is appropriate to the relationship and accords with general business practice and local customs;

- Legality: It is compliant with relevant laws;

- Infrequent: The giving or receiving of gifts and hospitality is not frequent between the giver and recipient;

- Documented: The expense is fully documented including purpose and approvals given (if required) and properly recorded in the books and records of the relevant Group company.

Some key questions to ask when considering gifts and hospitality are:

- Could the gift or hospitality been seen as lavish or excessive? - if the recipient is not in a position to reciprocate to the same standard, this could indicate that the gift or hospitality is excessive.

- Is the gift or hospitality out of the ordinary in the context of industry or local norms?

- Does the gift or hospitality invitation extend to family members (other than spouses or partners) or other parties outside the normal business relationship?

- Is the gift or hospitality intended to be an inducement or reward for past or future business (or are you aware of any new business being pitched to or tendered for by the recipient at the time the gift or hospitality is offered)?

- Is the recipient a Government or Public Official?

- If details of the gift or hospitality were to become publicly known, would it seem difficult to justify or otherwise risk being harmful to Keppel's reputation?

If the answer to any of the above questions is 'yes' or 'possibly', this indicates an increased risk profile for bribery. An employee should consider carefully whether the gift or hospitality is permissible within the terms of this policy and seek guidance from the Human Resources department of the relevant Group company if he/she is unsure.

**Declaration of gifts**: Employees must comply with such procedures on declaration of gifts as may be issued by his/her Group company from time to time.

| Human Resources Policies & Procedures | | | Keppel Corporation |
|---|---|---|---|
| Category : | Employee Relations & Professional Conduct | Policy No. : | 1200 |
| Title : | **Code of Conduct** | Page : | 10 of 12 |
| Date Issued : | 1 December 2004 | Approved By : | Board of Directors |
| Date Revised : | 11 November 2011 | | |

(II)   DEALING WITH KEPPEL ASSOCIATES

**Retention or authorisation of Keppel Associates**

No Keppel Associate should be retained or authorised to do any act on behalf of any Group company except in the manner and following the requirements for evaluating, selecting and retaining Keppel Associates as set out below, and such other requirements as the relevant Group company may prescribe from time to time.

Payments to Keppel Associates must be commercially reasonable and commensurate with the tasks they undertake. They may be paid by cheque or electronic transfer only, but never in cash.

All payments should be made pursuant to invoices, receipts or other documentation documenting services rendered in detail.

Keppel Associates may be hired or authorised to act on behalf of a Group Company only after the completion and recording of an appropriate level of due diligence. Any authority levels in place in a Group company must also be complied with. The level of due diligence conducted should be proportionate with the perceived likelihood that the Keppel Associate will be in a position to be involved in any corrupt practices, particularly if there is any requirement for them to interact with government or public officials. Due diligence could include, among other things, background checks, reviews of letters of recommendation, reviews of credentials, reviews of financial statements, and contacts with local Chambers of Commerce. The results of all due diligence should be filed with [the Head of the relevant division of the Group company].

In addition to the commercial terms of any arrangement with a Keppel Associate, the contract with a Keppel Associate should also contain representations and warranties from the Keppel Associate (on terms substantially similar to the following) that the Keppel Associate:

- will not engage in conduct on behalf of, or in relation to, the Keppel Group that would violate any applicable laws, including without limitation anti-corruption laws;

- has read, understood and agrees to comply with the Keppel Code of Conduct in so far as they relate to Keppel Associates;

- will allow the Keppel Group reasonable access to the Keppel Associate's books and records (which the Keppel Associate should maintain in accurate form); and

- will not sub-contract or assign its obligations or responsibilities under the contract without prior written approval from the Group company which is entering into the contract with the Keppel Associate, and will ensure that any permitted sub-contractor or assignee undertakes to observe the above provisions.

**********************************

**FORM A**

# Keppel Corporation

## DECLARATION OF CONFLICT OF INTEREST

Name: _____   NRIC No. / Passport No: _____

Designation: _____   Company: _____

Department: _____

Tick (✓) and complete where applicable:

☐ Yes, I declare that I am an immediate family member* of a KCL's Director or the CEO and that my remuneration exceeds S$150,000 as at the financial year ended 31 December.
*Immediate family member means a spouse, child, adopted child, step-child, brother, sister or parent.
Name of KCL's Director/ CEO: _____
Relationship to the KCL's
Director/ CEO: _____

☐ Yes, I declare that I have a direct reporting relationship within the Group with:
Name of spouse or immediate family member: _____
Designation/ Department & Company: _____
Relationship to employee: _____
Details of reporting relationship: _____

☐ Yes, I declare that I have an ownership interest (direct or indirect) in one or more of the following to the Group (exclude interest in listed companies if held/owned for investment purposes only):
a) Supplier: _____
b) Customer: _____
c) Competitor: _____

☐ Yes, I declare that I am an officer, director, partner, consultant, representative, agent or advisor of a supplier, customer, or competitor of the Group (please also indicate if acting as a Group company's nominee Director on the Board of supplier, customer or other business associate):
Indicate details: _____
_____

☐ Declaration of any other activities that could potentially create conflict of interest (including if immediate family member is working at, or has ownership interest in, a supplier or subcontractor):
Indicate details: _____
_____

☐ I <u>DO NOT</u> have any declaration of interests or activities that could potentially create conflict of interest.

FORM A

**Keppel Corporation**

**DECLARATION OF CONFLICT OF INTEREST**

I hereby declare that the information contained in this form is true and complete.

Signature: _____    Date: _____

Note:
1. Employee has to complete "Declaration of Conflict of Interest" form and return to GHR if he/she has any declaration that could potentially create conflict of interest.
2. If employee is a Senior Management staff (E9 & above) of KCL and its subsidiaries (both in Singapore and overseas), <u>and</u> does <u>not</u> have any declaration that could potentially create conflict of interest, he/she is still required to submit a "NIL" declaration to GHR.
3. The declaration does not negate the requirement that employees should act in the best interests of the Company.