# EXHIBIT 41

| | |
|---|---|
| **Message** | |
| **From:** | TAN Wah Nam [KCL-CDP] [/O=KEPPEL GROUP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=WAHNAM.TAN] |
| **Sent:** | 29/11/2011 7:26:10 AM |
| **To:** | CHOO Chiau Beng [Keppel CEO] [chiaubeng.choo@keppelom.com]; TEO Soon Hoe [Keppel GFD] [soonhoe.teo@kepcorp.com]; TONG Chong Heong [KOM-CEO] [chongheong.tong@keppelom.com]; Kevin Wong [kwong@kepland.com.sg] |
| **CC:** | LAI Ching Chuan [KCL-CDP] [chingchuan.lai@kepcorp.com]; Paul TAN [KCL-GC] [paul.tan@kepcorp.com]; Tina CHIN [KCL-GRM] [tina.chin@kepcorp.com]; WANG Look Fung [KCL-GCC] [lf.wang@kepcorp.com]; Lynn KOH [KCL-GTR] [lynnk@kepcorp.com]; Nelson YEO [KSL-MD] [nelson.yeo@keppelshipyard.com]; Loh Chin Hua [chinhua.loh@alphaipartners.com]; CHOW Yew Yuen [KOM] [yewyuen.chow@keppelom.com]; SIT Peng Sang [KOM-ED] [pengsang.sit@keppelom.com]; WONG Ngiam Jih [KOM-CFO] [ngiamjih.wong@keppelom.com]; Daniel Khor Wei Meng [KOM-CDD] [daniel.khor@keppelshipyard.com]; ANG Ting Yang [KOM-CDD] [tingyang.ang@keppelom.com] |
| **Subject:** | For IMPAC approval : KOM - Proposed JV with Sete Brasil for Newbuild DSS38E Semisubmersible Rig |
| **Attachments:** | 2011-11-29 Updates to KCL IMPAC - Collaboration with Sete Brasil for Newbuild DSS38E-DP3 [FINAL].pdf; Appendix A - 5July2011 EWP.pdf; Appendix B - Final draft of LOI.pdf; Appendix C - Draft term sheet on SPC.pdf |
| | |
| **Importance:** | High |

Dear IMPAC members,

Attached <u>KOM</u> paper for <u>urgent approval</u> re: <u>proposed JV with Sete Brasil for newbuild DSS38E semi rig</u>.

Paper updates the early warning paper to KCL Board in July 2011. Sete & KOM proposed JV (Dutch SPV) to enter construction contract with KFELS/BrasFELS to build DSS38E semi rig in connection with Petrobras tenders.

Status
- Sete ordering rig now due to EAS delays (no work started on Petrobras' 7 drillship order)
- Sete proceeding without QGOG participation (QGOG is existing EAS shareholder)
- Sete to gain time by committing to KOM ahead of new offer submission to Petrobras in Dec
- KOM & Sete have finalized main details on newbuild contract / JV agreement -- LOI to be issued by late Nov 2011

Main project aspects
- Sete-KOM JV : 80% / 20%
  - Sete may transfer up to 15% of its equity to appointed rig operator
  - JV co to enter newbuild contract for KFELS/BrasFELS to construct DSS38E semi rig
- Newbuild contract to be executed by early-mid Dec 2011; construction to commence in mid-Dec 2011
- Semi rig contract price : US$798m (with separate cost escalation formula)
- Total project capex ~ US$1bn (80% debt & 20% equity financing -- Sete to secure the 80% debt financing)
- KOM max equity contribution : US$40m
- Exit options
  - Sete obligation to acquire KOM shares on : (i) early termination of newbuild contract or (ii) no agreement reached to execute charter agreement
  - KOM put option to Sete on : (i) rig delivery or (ii) if KOM does not agree with Sete's transfer to chosen rig operator
  - Exercise price = KOM investment cost + premium (ie. Brazil long term interest rate (TJLP) + 4%)

<u>For IMPAC approval pl re: KOM 20% equity investment in JV with Sete.</u>

Rgds,
Wah Nam

Confidential   KEPPEL00427320

**From:** Daniel Khor Wei Meng [KOM-CDD]
**Sent:** Tuesday, November 29, 2011 1:53 PM
**To:** TAN Wah Nam [KCL-CDP]
**Cc:** LAI Ching Chuan [KCL-CDP]; ANG Ting Yang [KOM-CDD]
**Subject:** Updates to KCL IMPAC - Proposed JV with Sete Brasil for Newbuild DSS38E Semisubmersible Rig
**Importance:** High

Dear Wah Nam

Hi. Please see attached for an update Paper to KCL IMPAC on the proposed JV with Sete Brasil.

This is an update to the earlier EWP, which was presented to KCL Board on 21 July 2011 and received in-principle approval from the Board for KOM to proceed with further discussions with Sete Brasil, subject to satisfactory due diligence, definitive legal agreements and final approval to be sought from KCL IMPAC. The JV Co would enter into a construction contract with BrasFELS / Keppel FELS to build Keppel FELS' DSS38E-DP3 design semi-submersible rig as part of pursuing Petrobras tenders.

KOM and Sete have finalised the main details of the newbuild contract and JV agreement, with an LOI from Sete to be issued to KOM in the next one or two days.
The parties are also targeting to sign the newbuild contract by early Dec 2011, if possible, with the intention to commence the rig construction period by middle Dec.

For your underlined urgent submission to KCL IMPAC please. Do note that CEO KOM will be travelling this evening, and so we would need his approval before he leaves.

As this will be a concurrent submission to KOM EXCO, kindly include Mr. Sit, Mr. Wong Ngiam Jih and Mr. YY Chow in your email circulation.


Thank you and best regards,

*Daniel Khor*
Corporate Development
Keppel Offshore & Marine
4th Floor
50 Gul Road
Singapore 629351
Tel: (65) 6863 7392
Fax: (65) 6861 6540

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

KEPPEL00427321

**Keppel Offshore & Marine**

29th November 2011

<u>Updates to KCL IMPAC</u>

## Proposed JV with Sete Brasil for Newbuild DSS38E Semisubmersible Rig

Prepared by:      Daniel Khor (KOM CDD)
Submitted by:     Keith Teo
Supported by:     Chow Yew Yuen

### 1.  Updates

This is an update to the EWP on the above-mentioned proposal, which was presented to KCL Board on 21 July 2011 and received in-principle approval from the Board for KOM to proceed with further discussions with Sete Brasil and QGOG on the proposed JV, subject to satisfactory due diligence, definitive legal agreements and final approval to be sought from KCL IMPAC. The JV Co would enter into a construction contract with BrasFELS / Keppel FELS to build Keppel FELS' DSS38E-DP3 design semi-submersible rig as part of pursuing Petrobras tenders.

The 5 July 2011 EWP is hereby attached in **_Appendix A_** for reference.

### 2.  Status of Negotiations with Sete Brasil

- Sete wants to order a drilling unit now as a result of serious delays at Estaleiro Atlântico Sul (EAS), where no work has started on the seven-drillship order from Petrobras.
- In view of the challenges facing EAS, including the possibility of cancellation of the seven drillships contract, QGOG is dragging its feet on participation of the speculative rig. QGOG is an existing shareholder of EAS.
- In order not to delay the construction of the speculative rig, Sete Brasil has decided to go ahead without QGOG's participation. It is Sete's corporate requirement to have at least one JV partner in order for Sete to place an order for a new rig.
- Sete has to submit a new offer to Petrobras in December, but is willing to commit to KOM now to gain lead time. It expects the contracting of the 21 rigs by Petrobras to be firmed up by end of 1Q 2012.
- KOM and Sete have finalised on the main technical, contractual and commercial details pertaining to the newbuild contract and JV agreement. The Letter of Intent (LOI) from Sete is targeted to be issued to KOM by late Nov 2011.

A copy of the final draft of the LOI is attached in **_Appendix B_** for reference.

Confidential                                                                                          KEPPEL00427322

Keppel **Offshore & Marine**

## 3. Project Details – Key Terms Agreed

- A Dutch Special Purpose Company (SPC) would be incorporated as the JV Co, which would enter into a newbuild contract with a KOM subsidiary company to construct the DSS38E-DP3 design semi-submersible rig.
- Sete will have an 80% equity stake in the SPC, while KOM will own the remaining 20% stake. There will no longer be any equity participation from QGOG at this point in time.
  - o Sete may transfer, at its sole discretion, up to 15% of its equity participation to an entity to be appointed as operator of the drilling unit ("Permitted Participation").
- The agreed contract price for the DSS38E semi is US$798m (excluding cost escalations covered under a proposed price escalation formula), with the newbuild contract targeted to be executed by early to mid Dec 2011.
- Subject to fulfilment of certain conditions, both Sete and KOM have established that commencement of the construction period shall be 15 Dec 2011. KOM will then have 48 months to deliver the rig.
  - o KOM will be awarded a bonus for early delivery, equivalent to US$25,000 for each day of early handover. However, if the rig is deployed for the 21-charter bid tender, then KOM will be awarded a bonus of 50% of the bonus earned by the SPC from Petrobras under the charter agreement.
  - o Liquidated damages is capped at 10% of the contract price.
- Total project capex, including financing costs, project management and contingency, is estimated to be US$1 billion. This will be financed by 20% equity, 80% debt.
- KOM's maximum equity contribution obligation is capped at US$40m, i.e. 20% of 20% (4%) of the estimated total project capex of US$1 billion.
- Sete shall be responsible for securing the 80% debt financing. If debt financing is not in place and there is funding requirement in excess of the equity funding, Sete is responsible for seeking other sources of funding in the interim at market rate.

Options
- Sete has the obligation to acquire all shares of KOM in the SPC: -
  - i. upon the early termination of the newbuild contract, or
  - ii. in case the parties do not reach an agreement with respect to the execution of a charter agreement
- KOM has also negotiated for the option to sell its entire stake in the SPC to Sete: -
  - i. upon delivery of the rig (within 120 days after handover)
  - ii. in case KOM does not agree with the transfer of the Permitted Participation by Sete to its chosen operator
- The exercise price of the above Options shall be cost of KOM's investment, plus a monetary adjustment based on the agreed formulae of Brazilian TJLP plus 4% per annum. TJLP is the long-term interest rate published by the Central Bank of Brazil, and is currently 6% p.a.

A draft of the term sheet on the incorporation of the SPC is attached in **Appendix C** for reference.

2

KEPPEL00427323

**Keppel** Offshore & Marine

## 4. Recommendations

KCL IMPAC's approval is respectfully sought for KOM to invest a 20% equity stake in a Dutch SPC, with Sete Brasil investing in the remaining 80% stake. This entity will enter into a newbuild contract for BrasFELS / Keppel FELS to construct the DSS38E-DP3 design semi-submersible rig.

Such an investment will serve as an enabler for the intended newbuild project. Furthermore, KOM's investment will also have available exit options as described in this Paper, to be exercised at cost of investment (capped at US$40m) plus a reasonable premium of Brazilian TJLP plus 4% per annum.

For KCL IMPAC's consideration and approval, please.

3

KEPPEL00427324



20th July 2011

<u>Early Warning Paper to KCL Board</u>

## Proposed JV with Sete Brasil for Newbuild DSS38E Semisubmersible Rig

Submitted by:    Chow Yew Yuen, Keith Teo
Supported by:    Tong Chong Heong

### 1. Background

**Petrobras' new 21-rig tender**
Petrobras announced a new tender for 21 rigs in early June 2011. The first batch of seven drillships had earlier been awarded to a Brazilian consortium led by Estaleiro Atlantico Sul (EAS) in Feb 2011, under the original 28-rig tender.

The new tender allows interested parties to bid for *'one or more lots, containing one or more units, up to a maximum of 21 rigs'*. This differs from the earlier tender calling for packages of fixed number of rigs. At the same time, Petrobras will not be the owner of the 21 rigs. Instead, drilling contractors will be in charge of building, owning and operating the rigs. This structure would be a similar to the first 7 drillships awarded, where ownership is to be transferred to special purpose companies in which Sete Brasil will hold 85% equity and chartered back to Petrobras.

The tenders for the 21 rigs have been issued, with <u>bids expected to be submitted by Sept 2011</u>. Petrobras's management has indicated <u>possible contract awards by end 2011 / early 2012</u>.

**Sete Brasil**
Sete Brasil is an initiative of the Brazilian govt, created with the purpose of helping to meet Brazil's goal of building drilling rigs domestically while taking some of financial burden of their construction off Petrobras. Structured as a holding company, Sete will oversee the construction of 28 drilling rigs, with a total investment of approximately US$20bn. The rigs would be contracted to Petrobras and are expected to have a high local content index, to comply with Brazilian Petroleum Agency (ANP) rules.

Sete Brasil has attracted investment from a raft of Brazilian pension funds and banks, with US$1.6 billion in the kitty so far (as of 3 June 2011). For Petrobras, Sete Brasil is an off-balance-sheet entity, in which it would <u>retain a minority (15%) stake</u> while the finance shareholders (Brazilian pension funds, equity investment funds and other institutional funds) hold the remaining 85% stake. The plan is to eventually float Sete Brasil in the equity markets and seek established drillers to join the entity.

Petrobras' rig acquisition concept through Sete Brasil gives the oil giant a degree of representation among the competitors in its own tenders, i.e. Sete Brasil will effectively compete to supply some of the 28 ultra-deepwater rigs that Petrobras wants to see built in Brazil. Under this system, Sete Brasil will try to attract rig operators as 15% - 30% equity partners in rigs, earning service fees on top, but limiting each operator to a maximum of four units each.

1

KEPPEL00427325



Sete Brasil will also be bringing in shipyard groups as partners in these tenders. It has so far short-listed three 'serious' yard partners: -

- BrasFELS / Keppel FELS
- Jurong (Aracruz yard under construction)
- Odebrecht (does not have existing yard)

## 2.  Project Details

As part of recent discussions between KOM and Sete Brasil on the latest round of Petrobras tenders, it is proposed that a joint venture be formed between KOM, Sete Brasil and Queiroz Galvão Óleo e Gás S.A. (QGOG) to build a semisubmersible drilling rig, based on Keppel FELS' DSS38E-DP3 design in BrasFELS / Keppel FELS, as part of pursing the Petrobras tenders.

KOM has provided Sete Brasil with a proposal in which the contract price for the DSS38E semi is about US$800m (excluding cost escalations covered under a proposed price escalation formula), with a 48-month delivery schedule. The proposed JV and financing structures are as follows: -

| | | |
|---|---|---|
| **Equity (20%)** | Sete Brasil (60%) | US$96m |
| | QGOG (20%) | US$32m |
| | Keppel (20%) | US$32m |
| | | **US$160m** |
| **Debt (80%)** | Financing to be secured by Sete Brasil | **US$640m** |

Negotiations with Sete Brasil are ongoing, and Sete Brasil has indicated that it plans to issue a Letter of Intent to KOM by Aug 2011.

## 3.  Investment Rationale

The above proposed JV to build the first drilling unit on speculation, in anticipation of Petrobras' award in end 2011 / early 2012, provides the JV consortium with about five months' lead-time, so as to provide a bid with a competitive schedule. This also increases the chance of an early delivery, for which KOM is currently negotiating with Sete Brasil for any associated bonus from Petrobras to be split 50% to KOM.

It is KOM's intention to bid for a package of seven drilling rigs. Indications from Petrobras point to an expected delivery schedule as follows: -

2

KEPPEL00427326

**Keppel** Offshore & Marine

- Expected time-line for delivery of first of seven drilling units → Month 48 (from time of contract signing)
- Delivery of 2nd unit → Month 58 (i.e. 10 months after first delivery)
- Delivery of 3rd unit → Month 66 (i.e. Subsequent 8-month interval for 3rd to 7th units)
- Delivery of 4th unit → Month 74
- Delivery of 5th unit → Month 82
- Delivery of 6th unit → Month 90
- Delivery of 7th unit → Month 98

Going ahead with the above JV to build the first rig therefore provides a positive, cumulative effect on the delivery schedule for the remaining series of rigs, putting KOM in a good buffer for subsequent early deliveries.

Furthermore, the proposed JV is expected to face minimal financing risk, given the fact that project financing will be secured by Sete Brasil (with BNDES backing).

## 4. Recommendations

KCL Board's in-principle approval is respectfully sought for KOM to proceed with further discussions with the involved parties on the proposed JV with Sete Brasil and QGOG, where Keppel FELS' DSS38E-DP3 design semisubmersible rig will be constructed in BrasFELS / Keppel FELS as part of pursing the Petrobras tenders.

KOM's investment will eventually be subject to satisfactory due diligence, definitive newbuild contract and JV Agreement as well as other legal agreements, and final approval from KCL IMPAC.

*Written by: Daniel Khor (KOM Corporate Development)*

3



**STRICTLY PRIVATE AND CONFIDENTIAL**

November 28, 2011

To:
KeppelFELS Brasil S.A
Rua da Assembleia, 10 – 2013,
Zip Code 22261-005, Rio de Janeiro, RJ, Brazil

BrasFELS Ltda.
Rua da Assembleia, 10 – 2013,
Zip Code 22261-005, Rio de Janeiro, RJ, Brazil

Attention:     Kwok Kai Choong, Chief Executive Officer/President

Dear Sirs:

1.      Reference is made to the recent negotiations by and among the subscriber hereof – Sete Brasil Participações S.A. ("Sete Brasil"), BrasFELS Ltda. ("Contractor"), and KeppelFELS Brasil S.A ("KeppelFELS" and together with Contractor and Sete Brasil, the "Parties"), regarding the construction of 1 (one) semi-submersible drilling rig ("Unit") by Contractor, for purposes of utilization in the exploration of oil in ultra-deep waters ("Project").

2.      In connection with the implementation of the Project, Sete Brasil and KeppelFELS hereby express their firm intent to hire the construction of 1 (one) Unit, under an Engineering, Procurement and Construction Contract, to be entered into through a special purpose company to be incorporated by the affiliates of KeppelFELS and Sete Brasil ("SPC"), in the capacity of owner and the Contractor, substantially in the form set forth in Schedule 1 hereto, which was duly reviewed and initialled by the Parties ("EPC Contract"). Subject to the Parties and their respective affiliates obtaining the necessary corporate approval, the EPC Contract shall be executed.

3.      Up to ten (10) days from the execution of the EPC Contract with the fulfillment of certain conditions set forth therein, notably in Section 10.6.4, including the issuance of a

KEPPEL00427328

Notice to Proceed and the receipt of the Performance Security to be provided and issued in accordance with the conditions set out in the EPC Contract to Sete Brasil's satisfaction, the Owner shall perform a down payment equivalent to 10% of the Contract Price in favour of Contractor in order to pay for the initial works under the EPC Contract.

4.      The Parties further agree that the Notice to Proceed shall be issued under the EPC Contract no later than December 15, 2011 and shall establish that the commencement of the Work will be December 15, 2011.

5.      The Parties further agree that the Contract Price, as defined under the EPC Contract, shall be equivalent to the sum of (i) the price for the first drilling rig unit to be constructed in accordance with the proposal presented by Contractor and submitted to Sete Brasil on July 9, 2011 in the amount of US$798,000,000.00, and (ii) the amount to be agreed among the Parties before the execution of the EPC Contract with respect to change in the proposed technical specification.

6.      Subject to both KeppelFELS and Sete Brasil and their respective affiliates obtaining the necessary corporate approval, KeppelFELS and Sete Brasil shall incorporate the SPC for the purpose of owning, maintaining and chartering the Unit and further implement the Project. Sete Brasil and KeppelFELS hereby agree that the SPC shall be incorporated under Dutch law, in accordance with the terms and conditions provided in the term sheet attached hereto as Schedule 2, and that the equity share of the SPC is to be owned indirectly 80% by Sete Brasil and 20% indirectly by KeppelFELS.

7.      The down payment shall be contributed to the SPC by each of the SPC's shareholders in accordance with its equity participation provided hereunder.

8.      To the extent that *Fundo de Garantia de Construção Naval* - FGCN expressly agrees to approve (i) another contractor party from Contractor' group and/or (ii) the assignment of the EPC Contract to another entity(ies) from Contractor' group, Sete Brasil agrees to adjust the EPC Contract accordingly.

9.      This letter agreement constitutes the entire agreement between the Parties and supersedes all prior letters, agreements, representations, warranties, statements, promises, information, arrangements and understandings, whether oral or in written, express or implied, with respect to the subject matter hereof. Until the execution and delivery of the EPC Contract, this letter agreement shall remain binding and in full force and effect, unless otherwise agreed in written by the parties hereof.

10.     This letter agreement shall be governed exclusively by and construed and enforced in accordance with the laws of the Federative Republic of Brazil.

11.     The capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the EPC Contract.

KEPPEL00427329

12.     If the terms outlined above are acceptable to you, please execute this letter agreement and return an executed counterpart to us as evidence of your acceptance and agreement with its terms.

Yours truly,

SETE BRASIL PARTICIPAÇÕES S.A.

_____          _____

Name: João Carlos de Medeiros Ferraz          Name: Pedro José Barusco Filho

Title: Chief Executive Officer          Title: Chief Operations Officer

Acknowledged and agreed on _____ by:

**KEPPELFELS BRASIL S.A**

_____          _____

Name: Kwok Kai Choong          Name: Sam Yuin Sing

Title: Chief Executive Officer/ President          Title: Vice President

**BrasFELS LTDA.**

_____          _____

Name: Kwok Kai Choong          Name: Sam Yuin Sing

Title: Chief Executive Officer/ President          Title: Vice President

Confidential

# SCHEDULE 1

## EPC CONTRACT

Confidential

KEPPEL00427331

## SCHEDULE 2

## SPC TERM SHEET

KEPPEL00427332

*Draft Term Sheet for Dutch SPC of 28 November 2011.*
*For discussion purposes only. Subject to change.*

<table>
<tr>
<td colspan="3">

**Draft Term Sheet regarding the**
**Dutch special purpose company (SPC)**
**which will build a Unit and procure to charter such Unit to Petrobras or any other oil company.**

*The purpose of this term sheet is to set forth a summary of the main terms and conditions with respect to the incorporation of the Dutch SPC and the corporate agreements that shall regulate the relationship between the shareholders of the Dutch SPC and the officers appointed by the Parties to manage the Dutch SPC.*

</td>
</tr>
<tr>
<td>1</td>
<td>Dutch SPC</td>
<td>

A Dutch private company with limited liability (*besloten vennootschap met beperkte aansprakelijkheid*). Initial share capital amounts to € 90,000 divided into 90,000 Shares, being 72,000 Shares owned by A Shareholder (representing 80% of the total capital stock); 18,000 Shares owned by C Shareholder (representing 20% of the total capital stock).

The A Shareholder may transfer, at its sole discretion, up to 15% of A Shareholder's equity participation in the Dutch SPC share capital ("Permitted Participation") to an entity to be appointed as the operator of the Unit pursuant to a services agreement related to the Unit ("Operator"). The Operator, as B Shareholder, shall adhere to the terms and conditions set forth in the Dutch SPC Shareholder's Agreement.

</td>
</tr>
<tr>
<td>2</td>
<td>Main Contracts to be entered into by the Dutch SPC</td>
<td>

Dutch SPC to enter into EPC Contract, Construction Management Agreement, Asset Maintenance Agreement, Bank financing and security package.

In case the Dutch SPC succeeds to procure and is granted a contract of the Unit with Petrobras or any other major Oil company it shall also enter into one or more charter agreements and, the Operator, on its turn, shall enter into one or more service agreements related with the Unit (the "Operating Agreements"). The financing shall be contracted in US dollars. Envisaged guarantees for the financing include mortgage of the Unit, pledge over Dutch SPC and Sete International's shares, assignment of receivables of charter agreements entered into by the Dutch SPC, pledge over bank accounts, assignment of the EPC Contract and guarantees  given in favour of the Dutch SPC pursuant to the terms of the EPC Contract. Covenants for the financing may include maintenance of a certain

</td>
</tr>
</table>

1

KEPPEL00427333

*Draft Term Sheet for Dutch SPC of 28 November 2011.*
*For discussion purposes only. Subject to change.*

| | | |
|---|---|---|
| | | service cover ratio, maintenance of a debt service reserve account, indebtedness restrictions commonly applied to project finance transactions, restrictions on distribution of dividends, sale of assets, and intercompany loans, and compliance with environmental laws.<br><br>The C Shareholder shall have the right to receive all reasonable information requested to Sete regarding the structuring of the financings. |
| 3 | Main Corporate Agreements to be entered into by the Shareholders | (i)    Deed of incorporation of the Dutch SPC; and<br><br>(ii)    Shareholders Agreement of the Dutch SPC. |
| 4 | Shareholders | (a) A Shareholder: Sete International GmbH, a private limited liability company (*Gesellschaft mit beschränkter Haftung*), incorporated and existing under Austrian law, having its official seat in Vienna, Austria, and its office address at Schwarzenbergstraße 1-3/14a, 1010 Vienna, Austria. Sete Brasil Participações S.A participates in the share capital of the Dutch SPC through its wholly-owned subsidiary in Austria, Sete international GmbH.<br><br>The A Shareholder shall contribute to the Project with its ability on raising competitive project financing and its robust capital structure, all reducing Project's technical and financial risks with a competitive cost for the Dutch SPC and, consequently, its shareholders.<br><br>(b) C Shareholder: Constructor under the EPC Contract or an affiliate of the Constructor. Preferably an EU resident entity.<br><br>The C Shareholder shall contribute with its expertise, skilled workforce and knowledge in the construction of the drilling rig units.<br><br>All the Shareholders shall contribute in cash to the share capital of the Dutch SPC. |
| 5 | Shares | All Shares have the same voting rights and are entitled to receive payment of dividends in the same conditions. |

2

KEPPEL00427334

*Draft Term Sheet for Dutch SPC of 28 November 2011.*
*For discussion purposes only. Subject to change.*

|  |  | Upon the issuance of any additional shares by the Dutch SPC, the Shareholders shall have the right to purchase a *pro rata* portion of such shares to be issued, according to the number of shares held by Shareholder in the SPC. |
| --- | --- | --- |
| 6 | Board of Officers | The Board of Officers will consist of two (2) or more officers, who shall comply with and act in accordance with the Shareholders Agreement (and decisions of the Shareholders made pursuant to the Shareholders Agreement) and the Business Plan of the SPC, as follows: <br><br> (a) the Chief Executive Officer (CEO) shall be appointed and removed by the A Shareholder and will be a Dutch resident individual. <br><br> (b) The Chief Operating Officer (COO) shall be appointed and removed by the C Shareholder. Preferably a Dutch tax resident. To the extent that share participation in the share capital of the SPC is transfer to an Operator, the COO shall be jointly appointed by both the C Shareholder and the Operator. Preferably a Dutch tax resident. <br><br> Each officer shall have one vote in the Board meetings. All resolutions of the Board shall be adopted by more than half of the votes cast. <br><br> Each Shareholder shall vote all of its shares to approve the appointment/removal of a member of the Board of Officers upon the request of the Shareholder that is entitled to appoint/remove such member, as described above. |
| 7 | Representation | The Dutch SPC is represented by at least two (2) officers acting jointly, being one of them necessarily the CEO and another necessarily an officer appointed by the C Shareholder. Material decisions of the Board of Officers (as specified in the Articles of Association and the Shareholders Agreement) shall be subject to prior approval of the Shareholders General Meeting. |

3

KEPPEL00427335

*Draft Term Sheet for Dutch SPC of 28 November 2011.*
*For discussion purposes only. Subject to change.*

| 8 | Shareholders General Meeting | Each Share shall confer the right to cast one vote. Decisions under the Reserved Matters are taken by simple majority, other than decisions which are required to be taken by a special majority according to mandatory Dutch law or Reserved Matters requiring a supermajority or unanimous vote as set out in item 9 below. Reserved Matters, as set forth in item 9 below and to be listed in the Articles of Association and in the Shareholders Agreement, are required to be taken by the required majority or unanimity in a meeting with at least more than a half of the entire issued share capital of the Dutch SPC present or represented. The amendment to the list of the Reserved Matters and Matters subject to majority, supermajority or unanimous vote of the Shareholders, the change in the political and economic rights of the Shares, as well as other matters described in item 9 below, shall require the unanimous vote of the Shareholders. |
| | | Shareholders' meetings shall be called in writing (by letter against receipt, e-mail or other means that allow for confirmation of date of receipt), at least, fifteen (15) days in advance. |
| 9 | Reserved Matters | The Shareholders Agreement and the Articles of Association shall list the material decisions of the Dutch SPC which require simple majority shareholders' approval as follows: |
| | | • Establishing reasonable remuneration of the officers, in accordance with the Business Plan; |
| | | • Any issuance of securities by the Dutch SPC, for private or public subscription, in accordance with the Business Plan; |
| | | • Acquisition, sale, encumbrance and any other form of disposal of assets in the ordinary course of business in amounts totalling below US$5,000,000.00 in aggregate per year and/or within the scope of the financing agreements entered into by the Dutch SPC to finance its activities provided that it is in accordance with the Business Plan; |
| | | • Approval of any banking financing agreement and respective security packages or other agreements, in accordance with the Business |

4

KEPPEL00427336

*Draft Term Sheet for Dutch SPC of 28 November 2011.*
*For discussion purposes only. Subject to change.*

|  | Plan; |
|---|---|
|  | • Acquisition and disposal, either directly or indirectly, of a participation, in any company or consortium, execution of partnerships or joint ventures, in accordance with the Business Plan; |
|  | • The lending or borrowing of monies from or to any Shareholder or any affiliate of a Shareholder or any other third parties at arm's length conditions, in accordance with the Business Plan; |
|  | • Appointment of Auditor (independent auditor of international reputation); |
|  | • Approval of yearly financial statements; |
|  | • Execution of any agreement, contract or settlement, of any nature whatsoever, with any Shareholder or any affiliate of a Shareholder at arm's length conditions not exceeding US$3,000,000.00 in aggregate per year, provided that such agreement, contract or settlement is proven to be for the exclusive benefit of the Dutch SPC; |
|  | • The approval of or engagement in the incurrence of any expense with any third party in a total amount not exceeding US$3,000,000.00 in aggregate per year provided that such engagement in the incurrence of expense is proven to be in the exclusive benefit of the Dutch SPC; |
|  | • The endorsement or the offering of any bond or guarantee for third persons, any Shareholder or any affiliate of any of the Shareholders in accordance with the Business Plan |
|  | • The performance of any act that waives, releases, renounces, gives up or refuses any right before third parties, except with respect to the agreements which amendments and termination that are subject to supermajority or unanimous approval (as the case may be); and |
|  | • The granting of any power-of-attorney in the ordinary course of business. |

5

KEPPEL00427337

*Draft Term Sheet for Dutch SPC of 28 November 2011.*
*For discussion purposes only. Subject to change.*

The following matters shall be subject to approval of Shareholders representing at least eighty (80) % ("supermajority") of the share capital of the SPC:

- termination of the EPC Contract;

The following matters shall be subject to unanimous approval of the Shareholders:

- Amendments to the Articles of Association;

- Approval and amendment to the Business Plan of the Dutch SPC;

- Approval of the annual budget of the Dutch SPC;

- Approval of or amendments to policies related to dividends policy, distribution and allocation of profits;

- Any increase or reduction of the share capital, different to those set out in the Business Plan;

- Approval of any banking financing agreement and respective security packages outside the Business Plan;

- Acquisition and disposal, either directly or indirectly, of a participation, in any company or consortium, execution of partnerships or joint ventures outside the Business Plan;

- Creation or issuance of new Shares;

- Any sort of liquidation, dissolution and extinction or lifting of the liquidation of the Dutch SPC, or, judicial or extrajudicial rebound or filing for bankruptcy;

- Granting of surety or any collateral outside the Dutch SPC's ordinary course of business;

- Transformation, merger or any other form of corporate reorganization;

- Pledge of the totality of the Shares  of the Dutch SPC in favour of one or more financial institution outside the Business Plan; ;

- The lending or borrowing of monies from or to any Shareholder or any affiliate of a Shareholder or any other third parties at arm's

6

KEPPEL00427338

| | |
|---|---|
| | length conditions outside the Business Plan; |

length conditions outside the Business Plan;

- Acquisition, sale, encumbrance and any other form of disposal of assets in the ordinary course of business in excess of the US$5,000,000.00 cap mentioned in the simple majority list above

- Execution of any agreement, contract or settlement, of any nature whatsoever, with any Shareholder or any affiliate of a Shareholder at arm's length conditions in excess of the US$3,000,000.00 cap mentioned in the simple majority list above or if such agreement, contract or settlement is not proven to be for the exclusive benefit of the Dutch SPC;

- Amendment to the list of Reserved Matters and Matters subject to unanimity;

- Change in the political and economic rights of the Shares;

- The approval of or engagement in the incurrence of any expense with any third party in excess of the US$3,000,000.00 cap mentioned in the simple majority list above or if the incurrence of such expense is not proven to be for the exclusive benefit of the Dutch SPC;

- Any transaction out of the ordinary course of business or outside the Business Plan not otherwise provided for in the Reserved List;

- The endorsement or the offering of any bond or guarantee for third persons, any Shareholder or any affiliate of any of the Shareholders outside the Business Plan; and

- Implementation of any kind of funding structure from equity or otherwise, including, but not limited to the issuance of securities by the Dutch SPC, outside the Business Plan;

- Execution, amendment or renewal of the EPC Contract, Operating Agreements, AMA, and CMA;

- Approval of [Annual Plan, the Transition Plan and the Maintenance Program, and the Management Plan]; and

7

KEPPEL00427339

|  |  |  |
|---|---|---|
|  |  | • Approval of any change order to the EPC Contract thereof with respect to the price, term or/and which would impact the conditions for acceptance of the Unit. |
|  |  | • Termination of the Operating Agreements, AMA and CMA. |
|  |  | [NOTE: THE MATTERS LISTED ABOVE SUBJECT TO UNANIMOUS APPROVAL WILL BE ADJUSTED IN CASE THE OPERATOR BECAMES THE B SHAREHOLDER OF THE DUTCH SPC] |
| 10 | Funding | Unit to be funded, as far as possible, with third party bank debt on arm's length terms. Remaining funding, from equity shall be provided on a *pro rata basis* and *pari passu* by the Shareholders subject to the C Shareholder not being expected to provide funding beyond construction phase. Accordingly, the C Shareholder can, but is not obligated to provide remaining funding in excess of US$ 40,000,000.00 ("C Shareholder Equity Limit Amount"), provided that such C Shareholder's equity participation shall be subject to dilution in case additional equity is required to fund construction of the Unit and C Shareholder decides not to contribute the required equity amounts [NOTE: TO BE CONFIRMED BY EXTERNAL COUNSEL (DUTCH LAW)]. Timing and amount of the Shareholders equity funding shall be set forth in a Schedule of Payment to the Shareholders Agreement. See also item 18 – Finance Enhancement Funds. If the debt financing referred to above is not in place and there is a funding requirement in excess of the equity funding for the Unit, then the A Shareholder shall seek other sources of funding in the interim at market rate.

*[NOTE: Equity contribution to be provided pari passu by the Shareholders during the construction of the rig in accordance with the schedule of payment.]* |
| 11 | Dutch Tax Position | Charter income to be received by the Dutch SPC shall qualify for a tax sparing credit under the existing Brazilian Dutch Tax Treaty. As such, no Dutch corporate income tax should be due on this income. Dutch SPC shall be considered a VAT entrepreneur, |

8

KEPPEL00427340

| | | |
|---|---|---|
| | | therefore refund on input-VAT shall be possible. No Dutch VAT shall be due on charter invoices to Brazil. |
| 12 | B Shareholder or B Shareholder's affiliate appointed as Operator | In case the A Shareholder decides to transfer the Permitted Participation to an Operator, such Operator shall be considered as the B Shareholder of the Dutch SPC and give the importance for the Dutch SPC of the Operator achieving the minimum performance levels under the services agreement as a general rule, the B Shareholder will endeavor its best efforts in procuring that the Operator achieves the minimum performance levels. <br><br> The Operator shall have the right of first refusal to operate the Unit after termination of any charter agreement and services agreement with any applicable oil company. |
| 13 | Minimum Expected Performance | Minimum Expected Performance means the minimum uptime expected from the Operator in the operation of the Unit under any services agreement in any given quarter which shall be not less than 85% to allow the Dutch SPC to receive the estimated charter rate (which amount, in turn, will be used to pay the debt service). This will not include any downtime caused by events which are (outside the control of the Operator such as planned shutdowns; drydock; major repairs/equipment replacement, force majeure, acts of god, Oil company standby/ moving rates (90% TO), major repairs/equipment replacement, as detailed in the exhibits to any charter agreement, will not be accounted for the appraisal of the Minimum Expected Performance. <br><br> The Minimum Expected Performance shall be achieved and complied with by the Operator after the first anniversary of the Unit. |
| 14 | Option | (A) The A Shareholder has the obligation to acquire all Shares of the C Shareholder, which in turn has the obligation to sell all such C Shares (i) upon the termination of the EPC Contract or (ii) in case the parties do not reach an agreement with respect to the execution of a charter agreement. <br><br> (B) The C Shareholder has the option to sell all its Shares to the A Shareholder (i) within a hundred and twenty (120) days after Handover; |

9

Confidential

KEPPEL00427341

*Draft Term Sheet for Dutch SPC of 28 November 2011.*
*For discussion purposes only. Subject to change.*

| | | |
|---|---|---|
| | | and/or (ii) in case it does not agree at its reasonable discretion, with the transfer of the Permitted Participation to the B Shareholder.<br><br>The exercise price of Options shall be the amounts disbursed by the C Shareholder to pay for its equity participation adjusted by the Brazilian TJLP plus 4% per year. |
| 15 | Lock-up | Except for Intra-Group Transfers (as defined below) the Shares cannot be disposed of by any Shareholder without the prior written consent of the other Shareholder, which shall not be unreasonably withheld or delayed, until handover. |
| 16 | Transfer Restrictions | The Shareholders shall not be entitled to encumber its Shares without the consent of the other Shareholder, except for any encumbrance of the Shares pursuant to financings for the construction of the Unit to be contracted by the Dutch SPC.  Subject to the Lock-up, if either Shareholder wishes to, either directly or indirectly, transfer, assign or otherwise dispose of all or part of its Shares or of the rights attached to its Shares, it must first offer its Shares to the other Shareholders at the consideration and on the terms of a third party offer. The sale of the Shares owned by B Shareholder is subject to the purchaser or its affiliate being appointed as the Operator, and the transfer of the any then existing services agreement (subject to the prior approval of the respective contracting party of the services agreement) to such party and the purchaser having become party to the Shareholders Agreement.<br><br>The Right of First Refusal does not apply in the hypothesis of item 17 below.<br><br>Tag Along. If A Shareholder wants to sell its shares to a third party (the "Buyer"), C Shareholder shall have the right to tag-along, by selling its shares to the Buyer on the same economic terms and financial conditions as the A Shareholder. |
| 17 | Intra Group Transfers | Intra-group transfers, assignments or any other form of disposal, either directly or indirectly, of Shares or rights attached to the Shares by any Shareholder after closing shall be permitted provided that (i) the new |

10

KEPPEL00427342

|  |  |  | entity adheres to the Main Corporate Agreements and the Shareholders Agreement as a party thereto, (ii) the transferor/assignor remains jointly and severally liable for all obligations of the new entity, and (iii) adequate change of control provisions regarding the transferee (specially forbidden the control of the transferee/assignee/acquirer to be changed to another group other than the transferor/assignor group) being in place. |
|---|---|---|---|
| 18 | Financing | Enhancement Funds | [In order to enhance Project's leverage and access better financing conditions (cost and tenor), the finance of the Units' structure foresees the use of certain funds to be used exclusively as collateral for Senior Lenders for certain specific conditions perceived with higher risks by the financing market. Among other risk mitigation mechanisms, it is foreseen some reserve accounts that must be created and funded since day-one of the operation contract of each drilling rig. For that reason, and to generate better efficiency and less costs as well, all reserve accounts must be concentrated in the A Shareholder (Sete International GmbH) for all Dutch SPCs, serving each rig operation individually. Consequently, the Mobilization Fee amount to be paid by any Oil company under any charter agreement, to each Dutch SPC, upon rig acceptance, must serve exclusively to fund the aforementioned reserve accounts immediately after its payment by the applicable Oil company to each Dutch SPC, to be distributed as special dividend payment from each Dutch SPC to Sete International GmbH. Therefore, C Shareholder waives its right to receive payment of any related to the said special dividends distribution, and, on the other hand, A Shareholder guarantees that will make use of such special dividends payments exclusively to fund the reserve accounts which will serve the Senior Lenders and their collateral. Immediately after obtaining the release from the Senior Lenders, the A Shareholder shall repay to the Dutch SPC the amount contributed to the funds plus interest (the interest shall be defined among the Shareholders in the Shareholders' Agreement or any agreement to be entered in by the parties with respect to the opening and maintenance of the accounts/funds) if applicable; and the Dutch SPC's relevant dividends shall be promptly distributed among the Shareholders] |

11

KEPPEL00427343

*Draft Term Sheet for Dutch SPC of 28 November 2011.*
*For discussion purposes only. Subject to change.*

| 19 | Confidentiality | The Shareholders undertake that they will not, at any time during the term of the Agreement, use or divulge, nor publish or disclose or permit to be published or disclosed, any information contained in this Agreement or related thereto. |
|----|-----------------|---|
| 20 | Execution of AMA | SPC and the Operator or an Affiliate shall execute the AMA within [=] days of execution of the Shareholders Agreement. In case the AMA is not executed in the aforementioned period due to Operator's delay, the Operator shall be liable for the payment of a penalty in the total amount of US$[=]. |
| 21 | Expenses | Each party to pay its own costs (inclusive advisors and brokers costs). |
| 22 | Governing law | Dutch law. |
| 23 | Dispute resolution | Arbitration in accordance with ICC rules. |
| 24 | Term of Shareholders Agreement | [20] years unless terminated:  (a) by mutual agreement of the Parties; (b) on the date on which the Dutch SPC is liquidated; (c) if the vessel is lost or vanished; or (d) if the vessel is severely damage.  The agreement shall be automatically renewed in case the Dutch SPC has a valid charter agreement with Petrobras or any major Oil company. |
| 25 | Additional Provisions | The provisions of this Term Sheet shall be reflected in the Shareholders Agreement and other corporate documents, as applicable (with such adjustments and other changes or additions as may be agreed between the Parties), and such agreements will include other customary provisions in agreements of such nature, including but not limited to provisions relating to customary representations and warranties, minority shareholders rights and details of the provisions established herein. |

12

KEPPEL00427344