# EXHIBIT 43

**To:**        Jeff CHOW [KOM-LEGAL][jeff.chow@KEPPELOM.COM]
**Cc:**        Nora MARSUKI [KOM-LEGAL][nora.marsuki@keppelom.com]
**From:**    Nicholas CHOO [KOM-LEGAL][/O=KEPPEL GROUP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=NICHOLAS.CHOO]
**Sent:**    Thur 15/12/2011 6:35:33 AM (UTC)
**Subject:**  RE: Petrobras Bid - Option Rigs
<u>Marketing Consulting and Services Agreement.doc</u>

Dear Jeff,

Please find attached draft agreement for Eagle. Kindly note the highlighted clauses – not sure if you want them in or amended?

Best Regards
Nicholas

---

**From:** Jeff CHOW [KOM-LEGAL]
**Sent:** Thursday, December 15, 2011 8:50 AM
**To:** Nicholas CHOO [KOM-LEGAL]
**Cc:** Nora MARSUKI [KOM-LEGAL]
**Subject:** Re: Petrobras Bid - Option Rigs

Ferndale.

---

**From:** Nicholas CHOO [KOM-LEGAL]
**Sent:** Thursday, December 15, 2011 08:49 AM
**To:** Jeff CHOW [KOM-LEGAL]
**Cc:** Nora MARSUKI [KOM-LEGAL]
**Subject:** RE: Petrobras Bid - Option Rigs

Jeff. Working on the Marketing Consulting and Services Agreement for Zwi (Eagle). Is this to be signed by Keppel FELS Brasil or SETE? 2% based on receipt by Keppel FELS Brasil?

---

**From:** Jeff CHOW [KOM-LEGAL]
**Sent:** Wednesday, December 14, 2011 5:43 AM
**To:** Nicholas CHOO [KOM-LEGAL]
**Cc:** Nora MARSUKI [KOM-LEGAL]
**Subject:** FW: Petrobras Bid - Option Rigs

Can you prepare agency agreement for zwi on the Sete Project.  Follow earlier formats, or check with nora on the format for the one he did with ENSCO (I got copies from him and passed them to file)

2%.

Thanks,
Jeff/

---

**From:** Zwi [mailto:zwi@eaglebr.com.br]
**Sent:** Tuesday, December 13, 2011 10:31 PM
**To:** Jeff CHOW [KOM-LEGAL]
**Subject:** Re: Petrobras Bid - Option Rigs

Jeff,

I am receiving pressure from my people about my agreement with Keppel. Please could you take care if possible ASAP. Please help me in this issue.
Rgds

Confidential                                              KEPPEL00435116

**From:** "Jeff CHOW [KOM-LEGAL]" <jeff.chow@KEPPELOM.COM>
**Date:** Tue, 13 Dec 2011 13:17:13 +0000
**To:** Kenneth CHONG [KOM-LEGAL]<Kenneth.CHONG@keppelom.com>; TAN Leong Peng [KFE-ENGRG]<leongpeng.tan@keppelfels.com>
**Cc:** Tommy SAM<tommy.sam@keppelfels.com>; 'zwi@eaglebr.com.br'<zwi@eaglebr.com.br>; 'karina.stoff@kfelsbrasil.com.br'<karina.stoff@kfelsbrasil.com.br>; Nora MARSUKI [KOM-LEGAL]<nora.marsuki@keppelom.com>
**Subject:** RE: Petrobras Bid - Option Rigs

Okay.  Thanks,

---

**From:** Kenneth CHONG [KOM-LEGAL]
**Sent:** Tuesday, December 13, 2011 6:50 PM
**To:** Jeff CHOW [KOM-LEGAL]; TAN Leong Peng [KFE-ENGRG]
**Cc:** Tommy SAM; 'zwi@eaglebr.com.br'; 'karina.stoff@kfelsbrasil.com.br'; Nora MARSUKI [KOM-LEGAL]
**Subject:** RE: Petrobras Bid - Option Rigs

Jeff, we will maintain the wording that it is the same size, description and specifications as what is being signed for the 1st unit. Pricing will be what is in the proposal letter PLUS the 11m+ adjustment that is being agreed with them on top of the 798m price for the 1st unit. The reference to 6 months validity is changed to refer to the validity of the proposal letter so that they do not use it against us to argue that we have extended our offer of Sep 26 to beyond 6 months after (which I suspect is really what they are after).

Hi LP & Tommy,

Further to our discussions this morning, please find attached a revised draft of the clause for your review and comments, if any.

Best Regards,
Kenneth

---

**From:** Jeff CHOW [KOM-LEGAL]
**Sent:** 13 December 2011 08:14
**To:** Kenneth CHONG [KOM-LEGAL]; TAN Leong Peng [KFE-ENGRG]
**Cc:** Tommy SAM; 'zwi@eaglebr.com.br'; 'karina.stoff@kfelsbrasil.com.br'; Nora MARSUKI [KOM-LEGAL]
**Subject:** Re: Petrobras Bid - Option Rigs

The proposal letter controls that. Otherwise they mess up their chance at saving to have to make changes for ABS purposes, if it falls under the "sister unit" plan.

If they are difficult, we just don't let them have that benefit. No point we give them a benefit while increasing our risk.

---

**From:** Kenneth CHONG [KOM-LEGAL]
**Sent:** Tuesday, December 13, 2011 08:09 AM
**To:** Jeff CHOW [KOM-LEGAL]; TAN Leong Peng [KFE-ENGRG]
**Cc:** Tommy SAM; 'zwi@eaglebr.com.br' <zwi@eaglebr.com.br>; 'karina.stoff@kfelsbrasil.com.br' <karina.stoff@kfelsbrasil.com.br>; Nora MARSUKI [KOM-LEGAL]
**Subject:** RE: Petrobras Bid - Option Rigs

I think they are trying to link it to the offer so that pricing etc have a basis...

---

**From:** Jeff CHOW [KOM-LEGAL]
**Sent:** 13 December 2011 07:49
**To:** Kenneth CHONG [KOM-LEGAL]; TAN Leong Peng [KFE-ENGRG]

**Cc:** Tommy SAM; 'zwi@eaglebr.com.br'; 'karina.stoff@kfelsbrasil.com.br'; Nora MARSUKI [KOM-LEGAL]
**Subject:** Re: Petrobras Bid - Option Rigs

Case 1:18-cv-01047-PGG-RWL    Document 151-46    Filed 09/12/23    Page 4 of 29

The Units should be referred to as Sister Units. They should be the same.

My first draft left the price, delivery, etc. To still be determined, so they cannot force us to take cheaper or shorter schedule, etc.

Jeff

---

**From**: Kenneth CHONG [KOM-LEGAL]
**Sent**: Tuesday, December 13, 2011 07:42 AM
**To**: TAN Leong Peng [KFE-ENGRG]; Jeff CHOW [KOM-LEGAL]
**Cc**: Tommy SAM; zwi@eaglebr.com.br <zwi@eaglebr.com.br>; KARINA STOFF <KARINA.STOFF@kfelsbrasil.com.br>; Nora MARSUKI [KOM-LEGAL]
**Subject**: RE: Petrobras Bid - Option Rigs

Hi LP/Jeff,

For my proposed revisions, please see attached.

I am not sure about the reference to "...**Owner has an option to purchase five (5) additional DSS 38E drilling units (hereinafter the "Option Vessels") of the** same size, description and specifications as the DRU ..." – is it exactly the same size, description and specs as the specs for the EPC Contract for the 1st Unit? The concern is that they may use this to argue that the price of $812.16m is for specs based on DRU No.1 specs which I believe is not the case.....

Kenneth/

---

**From:** TAN Leong Peng [KFE-ENGRG]
**Sent:** 13 December 2011 01:37
**To:** Kenneth CHONG [KOM-LEGAL]; Jeff CHOW [KOM-LEGAL]
**Cc:** Tommy SAM; zwi@eaglebr.com.br; KARINA STOFF
**Subject:** RE: Petrobras Bid - Option Rigs

Kenneth

I had did some amendments per our discussion with track changes. See whether it is alright with you.

Jeff – Pls review and advise also.

Thanks

Best Regards

Tan Leong Peng
Deputy Engineering Manager
Keppel FELS LTD

DID: +65 68637808
Fax: +65 68631739
Email: leongpeng.tan@keppelfels.com

---

**From:** Isabela Faria [mailto:isabela.faria@setebr.com]
**Sent:** Monday, December 12, 2011 8:06 PM
**To:** Fabio Cunha; TAN Leong Peng [KFE-ENGRG]
**Cc:** Kenneth CHONG [KOM-LEGAL]; Jeff CHOW [KOM-LEGAL]; Tommy SAM; zwi@eaglebr.com.br; Ivano Santos; KARINA STOFF; Miriam Signor; Fernanda.Ribeiro@scbf.com.br; MC
**Subject:** RES: Petrobras Bid - Option Rigs
**Importance:** High

Dear Keppel team:

Confidential

Further to the exchange emails below, please find attached hereto our comments to the wording proposed by Jeff Chow about the Option Rigs.

If we agree with our proposed language, we will include in the EPC Contract.

Best regards,
Isabela Faria



Isabela Faria
Gerente Jurídica

Tel./Fax: +55 21 2528-0080
isabela.faria@setebr.com
www.setebr.com

---

**De:** Fabio Cunha [mailto:fabio.cunha@setebr.com]
**Enviada em:** sexta-feira, 9 de dezembro de 2011 11:54
**Para:** TAN Leong Peng [KFE-ENGRG]
**Cc:** Isabela Faria; Kenneth CHONG [KOM-LEGAL]; Jeff CHOW [KOM-LEGAL]; Tommy SAM; zwi@eaglebr.com.br; Ivano Santos
**Assunto:** RES: Petrobras Bid - Option Rigs

Leong Peng,

Thanks of your reminder.

We have already agreed on that and Isabela will include the Jeff´s wording in the contract under item 25.17.

Regards



Fábio Rezende Cunha
Gerente de Engenharia e Implantação de Projetos

Tel./Fax: +55 21 2528-0080
fabio.cunha@setebr.com
www.setebr.com

---

**De:** TAN Leong Peng [KFE-ENGRG] [mailto:leongpeng.tan@keppelfels.com]
**Enviada em:** quarta-feira, 7 de dezembro de 2011 01:02
**Para:** Fabio Cunha; Ivano Santos
**Cc:** isabela.faria@setebr.com; Kenneth CHONG [KOM-LEGAL]; Jeff CHOW [KOM-LEGAL]; Tommy SAM; zwi@eaglebr.com.br
**Assunto:** Petrobras Bid - Option Rigs

Fabio

Previously, Jeff had highlighted about having a clause in the contract for option rigs so that the other rigs can be classified as sister rigs to the first rig. Per my understanding, this clause had not been included in the contract. Pls note without this clause in the contract, the remaining rigs will not be able to have this sister rigs advantage and shall need to comply with whatever ABS rules at the point of signing the contracts.

Wish to highlight that on 1st Jan 2012, the new ABS rules will be enforced, and the immediate impact for this change of rule shall be on the anchor winch system. It is likely that with the new rule, the anchor winch system onboard DSS38E will need to upgraded. Our engineers are currently in discussion with ABS to better understand, the other impacts for this new rule and shall advise accordingly when the time comes.

Best Regards

Tan Leong Peng
Deputy Engineering Manager
Confidential

DID: +65 68637808
Fax: +65 68631739
Email: leongpeng.tan@keppelfels.com

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

CONFIDENTIALITY: This e-mail (including any attachments) is confidential and may contain proprietary information. If you are not the intended recipient, be advised that you have received this e-mail in error. Any use, disclosure, dissemination, printing or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately contact the sender by return e-mail and then irretrievably delete it from your system.

MARKETING CONSULTING AND SERVICES AGREEMENT

Dated as of December [   ], 2011

by and between

Fernvale Pte Ltd

and

Eagle do Brasil

Confidential

## Table of Contents

| | | |
|---|---|---|
| 1.0 | DEFINITIONS ............................................................. | 1 |
| 2.0 | ENGAGEMENT OF CONSULTANT ............................................. | 2 |
| 3.0 | OBLIGATIONS OF THE CONSULTANT ....................................... | 2 |
| 4.0 | REMUNERATION ......................................................... | 4 |
| 5.0 | TAXES ................................................................ | 6 |
| 6.0 | TERM OF AGREEMENT .................................................... | 6 |
| 7.0 | COMPANY'S ASSETS ..................................................... | 8 |
| 8.0 | AUTHORITY OF CONSULTANT .............................................. | 8 |
| 9.0 | BUSINESS ETHICS ...................................................... | 9 |
| 10.0 | INDEMNITY ............................................................ | 13 |
| 11.0 | CONFIDENTIALITY ...................................................... | 13 |
| 12.0 | INSURANCE ............................................................ | 14 |
| 13.0 | NOTICES .............................................................. | 14 |
| 14.0 | GOVERNING LAW AND DISPUTE RESOLUTION ................................. | 16 |
| 15.0 | MISCELLANEOUS ........................................................ | 17 |

KEPPEL00435123

## MARKETING CONSULTING AND SERVICES AGREEMENT

This MARKETING CONSULTING AND SERVICES AGREEMENT ("Agreement") is made and entered into this _____ day of December, 2011 by and between:

Fernvale Pte Ltd, a Singapore Private Limited Company having its registered address as 50 Gul Road, Singapore 629351 (hereinafter referred to as "COMPANY"); and

Eagle do Brasil a Brazilian entity, as an independent contractor, having its fiscal domicile at Rua do Assemblia 10/2008, Cep: 20011-000 Rio de Janeiro RJ, Brasil, Brazil, (hereinafter "CONSULTANT")

## RETICALS

WHEREAS the Company has an interest in pursuing certain business opportunities with SETE Brasil (hereinafter "SETE") for Engineering, Procurement and Construction Contracts (EPC Contracts) for Drilling Rig Units

WHEREAS, CONSULTANT has expressed a desire to act as CONSULTANT for the benefit of the Company in Brazil; and

WHEREAS, Company and CONSULTANT have concluded that it is in their respective best interests to enter into this Agreement.

**NOW, THEREFORE,** for and in consideration of the mutual covenants and promises recited herein, the parties hereto agree as follows:

1.0   **DEFINITIONS**

For purposes of this Agreement, this following terms shall have the meanings ascribed thereto:

1.1   "Affiliates" shall mean, with respect to any company, any other company directly or indirectly controlling, controlled by, or under direct or indirect common control with such company.  A company shall be deemed to control another company if such company possesses, directly or indirectly, the power to (1) vote fifty percent (50%) or more of the stock having ordinary voting power for the election of directors of such company, or (2) direct or cause the direction of the management and policies of such company, whether through the ownership of stock, common members of board of directors, by contract or otherwise.

KEPPEL00435124

1.2    Where the context of this Agreement so requires, words importing the singular shall include the plural, and vice versa, references to COMPANY shall include Affiliates of the COMPANY, and references to CONSULTANT shall include Eagle do Brasil and Zwi Skornicki collectively and individually.


2.0    **ENGAGEMENT OF CONSULTANT**

2.1    COMPANY hereby exclusively engages CONSULTANT to assist the Company in promoting and marketing business with SETE Brasil as described herein.

2.2    CONSULTANT agrees to act exclusively for the Company as described herein for the marketing and procurement of EPC Contracts for Drilling Rig Units to SETE Brasil and/or its Affiliates and shall not directly or indirectly act on behalf or the benefit of any others in respect of such matters.


3.0    **DUTIES OF THE CONSULTANT**

3.1    CONSULTANT shall perform the following activities on the benefit of COMPANY or its Affiliates and shall at all reasonable times be available and accessible to assist COMPANY in relation thereto:

   3.1.1    Make the COMPANY aware of any EPC Contract opportunities for SETE Brasil and/or its Affiliates on a timely basis and exert due diligence in identifying such opportunities; advise the COMPANY of projects, tenders and other business opportunities which may arise and provide information that may be useful to the COMPANY for the purpose of promoting its business.   In this regard, CONSULTANT shall provide such periodic reports as may reasonably be requested by COMPANY.

   3.1.2    Advise and assist the COMPANY in all matters pertaining to the marketing of the COMPANY's ability to perform EPC Contracts to SETE Brasil and/or its Affiliates.

   3.1.3    Upon prior and written request of the COMPANY, advise and assist the COMPANY in connection with negotiations relating to any activities of the COMPANY in relation to the EPC Contracts as aforesaid.

   3.1.4    Render best efforts, with the limitations imposed by this Agreement, to promote good relations between COMPANY and SETE Brasil and/or its Affiliates.

KEPPEL00435125

3.1.5   Upon prior and written request of the COMPANY, assist the COMPANY in communications and offer advice to the resolution of issues between the COMPANY and SETE Brasil and/or its Affiliates.

3.1.6   Consult with and offer advice to the COMPANY on problems or issues which may arise from time to time in connection with the activities of the COMPANY in the EPC Contracts as aforesaid.

3.1.7   Upon prior and written request of the COMPANY, assist COMPANY in preparing and collecting invoices to SETE Brasil and/or its Affiliates for work performed pursuant to EPC Contracts. In respect thereof, CONSULTANT shall not sign invoices or any other collecting documents on behalf of COMPANY.

3.1.8   Upon prior and written request of the COMPANY, advise and assist the COMPANY in dealing with all ministries, municipalities and other governmental departments, offices and agencies to secure licenses, permits or certificates necessary for doing business in Brazil.

3.1.9   Advise COMPANY on matters of government relations, rulings and requirements, taxation, legal matters, accounting practices and associated matters that may be reasonably related to the EPC Contracts performed for SETE Brasil and/or its Affiliates in Brazil.

3.1.10  Upon prior and written request of the COMPANY, assist COMPANY in obtaining at its cost any expense employment and visitation visas, labor, permits, driving licenses, health cards and all other governmental licenses, permits and consents relating to the chartering activities of COMPANY in Brazil and assist COMPANY in so obtaining all necessary documentation and satisfying all requisite formalities necessary for the COMPANY to operate in Brazil in accordance with the laws of Brazil.

3.1.11  Upon prior and written request of the COMPANY, advise and assist COMPANY regarding the importation and exportation of equipment and materials used by the COMPANY in connection with the relevant EPC Contract activities performed in Brazil.

3.1.12  Advise COMPANY as requested regarding the purchase of equipment, supplies, services, drydocking, repairs, office and yard space, housing, etc., in Brazil that may be required in connection with the work to be performed by COMPANY for SETE Brasil and/ or its Affiliates.

3.1.13  Upon prior and written request of COMPANY, assist COMPANY or its Affiliates in connection with general corporate matters, including, but not limited to, the liquidation or incorporation of companies.

KEPPEL00435126

3.1.14   Immediately bring to the attention of the CONMPANY any improper or wrongful use of COMPANY's name, trademarks, emblems, designs, models or other similar industrial or commercial proprietary rights which may come to the attention of the CONSULTANT.

3.1.15   Perform such other acts or services as may be necessary and proper to assist the COMPANY in its business endeavors with SETE Brasil for EPC Contracts.

3.2   Notwithstanding any of the services of CONSULTANT designated in Clause 3.1, the COMPANY and its Affiliates reserve the right to independently take such steps, with or without advice or assistance of the CONSULTANT, as they may deem necessary or which may be expedient for purposes of carrying out its activities in Brazil.

3.3   It is specifically understood and agreed by the parties hereto that, absent an amendment to this Agreement, this services of CONSULTANT and the obligation of COMPANY to compensate CONSULTANT in respect thereof are expressly limited to the EPC Contracts directly under contract with SETE Brasil and/or its Affiliates and, unless otherwise agreed in writing, specifically excludes (i) any work or contracts obtained by COMPANY with parties other than SETE Brasil and/or its Affiliates, (ii) EPC contracts for any other vessel or platforms or offshore units other than Drilling Rig Units.

## 4.0   **REMUNERATION**

4.1   For services rendered hereunder when COMPANY has an EPC contract or contracts entered into with SETE Brasil and/or its Affiliates during the term of this Agreement, COMPANY shall pay CONSULTANT a commission based upon a percentage of the Contract Price actually received by COMPANY pursuant to the relevant EPC Contract(s) between COMPANY and SETE Brasil and/or its Affiliates as provided in Clause 4.5. The commission payable to CONSULTANT for EPC Contracts for Drilling Rig Units with SETE Brasil and/or its Affiliates shall be, in the aggregate, 2% (two percent) of the Contract Price actually paid to and received by COMPANY.

4.2   In addition to the payments referred to in Clause 4.1 above, COMPANY also will, subject to the provisions of Clause 4.6, reimburse CONSULTANT for any and all thirty-party costs and expenses reasonably incurred by CONSULTANT on behalf of COMPANY in connection with services performed pursuant to this Agreement. Any such costs or expenses that, individually or jointly, exceeds U.S. $1,000 per month, shall be subject to prior written approval of COMPANY. The reimbursement of such expenses incurred by CONSULTANT shall be invoiced separately and shall require sufficient

KEPPEL00435127

supporting data or receipts in compliance with the requirements of Clause 4.6.[Is this agreeable or is 2% inclusive of all expenses?]

4.3     Except as otherwise provided in Clause 4.1 and 4.2, no other payments shall be due CONSULTANT hereunder.

4.4     CONSULTANT shall provide COMPANY written instructions concerning the payment or reimbursement of (a) any compensation due in respect to Clause 4.1, and (b) any expenses incurred pursuant to the provisions of Clause 4.2. Payment instructions shall remain firm and fixed until receipt by COMPANY of superceding instructions to the contrary.

4.5     All compensation due to CONSULTANT pursuant to Clause 4.1 shall be paid in U.S. Dollars.  Payment of all compensation shall be made pursuant to the instructions received by COMPANY in accordance with Clause 4.4 and shall be tendered by COMPANY within fifteen (15) days after COMPANY's receipt of payment from SETE Brasil and/or its Affiliates.  The remittance of any compensation due as a result of EPC Contracts priced in Brazilian currency shall be determined based on the average rate for sale of U.S. Dollars published by the Brazilian Central Bank at the end of each day by means of the PTAX800 option 5, of the day immediately prior to the date of the remittance.

4.6     All thirty-party expenses incurred by CONSULTANT for the benefit of the COMPANY which are in accordance with COMPANY's business expense and business ethics policies as they now exist or as amended, supplemented or replaced from time to time shall, upon prior approval of COMPANY, be reimbursed by the COMPANY within thirty (30) days following receipt of CONSULTANT's invoice(s) including copies of all supporting documentation and the certification required under Clause 9; provided, however, COMPANY shall have the right to withhold payment of any invoice (or part thereof) where there is a bona fide question or dispute as to the propriety or amount claimed, or where CONSULTANT fails to provide adequate supporting documentation in accordance with this Agreement and COMPANY's business expense and business ethics policies.  Furthermore, payment of any invoice by COMPANY shall not prejudice the right of COMPANY to later question the propriety of any charges thereon.

4.7     If for any reason should a contract be awarded to COMPANY by SETE Brasil and/or its Affiliates be subsequently cancelled prior to the performance of any services by COMPANY, CONSULTANT shall not be entitled to any commissions pursuant to Clause 4.1, but shall in the case of a contract awarded to COMPANY by SETE Brasil and/or its Affiliates as aforesaid be entitled to reimbursement of any thirty-party costs and expenses reasonably incurred as provided in Clause 4.2.

KEPPEL00435128

4.8     Notwithstanding anything to the contrary contained herein, all compensation shall cease as of the date of Zwi Skornicki's death or incapacity or restriction or inability of CONSULTANT (for any reason whatsoever as shall reasonably be determined by COMPANY) such that he or it is no longer able to perform the duties set forth herein; provided, however, that COMPANY shall remain responsible for any compensation previously earned but unpaid as of such date, which amounts shall be paid to CONSULTANT or its successors or assigns.

## 5.0     TAXES

5.1     Unless otherwise provided by law, CONSULTANT shall pay all taxes now or hereafter imposed on or with respect to the services performed by or compensation paid to CONSULTANT in connection with this Agreement, including, without limitation, any corporate or personal income taxes, gross receipts or gross profit taxes, excise taxes, value added taxes, service taxes, gross billings taxes, exchange transactions tax or other like charges and taxes. Furthermore, CONSULTANT agrees to defend, indemnify and hold harmless Company and its Affiliates, and their respective officers, directors, employees, agents and representatives, from all claims, losses, damages, costs (including legal costs), expenses and liabilities of every kind and nature resulting from or related to the levy or imposition of any tax, fine, penalty or interest on COMPANY as a result of services by or the payment of compensation to CONSULTANT.

## 6.0     TERM OF AGREEMENT

6.1     Subject to the provisions of this Agreement, this Agreement shall remain in full force and effect from the date first written above and shall continue in force and effect unless and until terminated by either party upon ninety (90) days prior written notice.

6.2     Notwithstanding the provisions of Clause 6.1, this Agreement shall terminate immediately:

6.2.1   CONSULTANT or Zwi Skornicki ceases to be eligible to act on benefit of COMPANY.

6.2.2   In the event of any material breach, default or non-compliance by CONSULTANT of any of the provisions contained in this Agreement.

6.2.3   In the event CONSULTANT breaches any of the provisions contained in Clause 9 hereof.

6.2.4   In the event that either COMPANY or CONSULTANT becomes bankrupt or insolvent or has a receiver appointed on the whole of its assets or any substantial part thereof, or an order from any court of law is rendered for the attachment of its assets or any substantial part thereof.

6.2.5   In the event of Zwi Skornicki's death or incapacity or CONSULTANT's inability (for any reason whatsoever as shall reasonably be determined by COMPANY), subject to payment as provided in Clause 4.8 or Clause 6.4, as applicable.

6.3   Notwithstanding the provisions of Clause 6.2, this Agreement shall terminate forthwith if:

6.3.1   COMPANY decides to discontinue for whatever reason, voluntarily or otherwise, pursuit or conduct of business with SETE Brasil and/or its Affiliates, provided that termination shall not be effective until thirty (30) days following COMPANY's submission of notice to that effect to CONSULTANT.

6.3.2   In the event of a change in control of, or acquisition by, COMPANY or any Affiliate, COMPANY shall have the right to terminate this Agreement forthwith upon submission of notice to CONSULTANT.

6.3.3    In the event of corporate modification including but not limited to the transfer of shares/quotas or the indirect or direct change in control of, or acquisition by, CONSULTANT or any Affiliate, COMPANY shall have the right to terminate this Agreement forthwith upon submission of notice to CONSULTANT.

6.4   Should this Agreement terminate or be terminated pursuant to Clause 6.1 (if terminated by Company) or Sub-clauses 6.2.4 (in the event of bankruptcy or insolvency of COMPANY), 6.3.1 or 6.3.2, CONSULTANT shall be entitled to continued payment of compensation pursuant to Clause 4.1 for the then remaining fixed (non-optional) term of any existing EPC Contracts with SETE Brasil and/or its Affiliates for Drilling Rig Units.  In the event of any other termination pursuant to the terms of this Agreement, CONSULTANT shall not be entitled to any further compensation following the effective date of said termination except as respects sums previously earned but unpaid upon the termination date.

KEPPEL00435130

**7.0    COMPANY'S ASSETS**

7.1    At all times COMPANY shall remain the sole proprietor of its property and assets, and CONSULTANT, whose interests shall be limited to the entitlements provided in Clause 4 above, shall have no other interests therein or claim thereto.

7.2    Furthermore, unless the parties otherwise agree, CONSULTANT undertakes to market the services of COMPANY exclusively under the trade or service mark belonging to ENSCO on ENSCO's behalf and in accordance with this Agreement.  It is understood that CONSULTANT shall not otherwise use the name of "ENSCO" or "Ensco" or the logo or service marks of "ENSCO" or "Ensco" and, further, CONSULTANT understands and agrees it does not and shall not acquire any rights in the name "ENSCO" or "Ensco" or the logo or service marks or service marks of "ENSCO" or "Ensco" and use of such name and marks is restricted for the purposes set out in this Agreement.do we need this? Propose to delete?

**8.0    AUTHORITY OF CONSULTANT**

8.1    CONSULTANT shall be an independent contractor in the performance of all matters within the scope of this Agreement.  It is acknowledged and understood that CONSULTANT does not have authority to conclude, sign or execute any contracts on behalf of COMPANY or on COMPANY'S name.

8.2    Neither CONSULTANT nor its employees, representatives or agents have any authority or power (or represent that they have any authority or power) to enter into or create any obligations on behalf of COMPANY, except pursuant to the express written authority that may be given by COMPANY by power of attorney.  Without limiting the generality of the foregoing, it is specifically agreed that CONSULTANT shall not sign any invoices or other collecting documents on behalf of COMPANY.  Furthermore, CONSULTANT shall represent itself as an independent contractor in the performance of all matters with the scope of this Agreement.

8.3    Nothing herein contained shall be deemed to constitute or create an employment or agency relationship between COMPANY and CONSULTANT. Neither COMPANY nor CONSULTANT shall be considered, for any purposes whatsoever, partners or joint venturers and CONSULTANT shall not be considered to be COMPANY'S commercial agent or representative.

8.4    Upon entry into this Agreement and at all times during its continuance, CONSULTANT or Zwi Skornicki shall not indirectly or indirectly sponsor, represent or assist any other person, firm or company conducting business or

    KEPPEL00435131

performing services which competes with the business activities of COMPANY.

## 9.0   BUSINESS ETHICS

9.1   CONSULTANT acknowledges receipt of the Keppel Code of Business Conduct Policy ("COBCP") and hereby agrees to strictly adhere to their requirements (as amended, supplemented or replaced from time to time) in connection with the services performed for COMPANY pursuant to this Agreement or otherwise.   CONSULTANT represents and warrants to COMPANY and covenants with COMPANY that, in performing services under this Agreement, it will not cause or aid COMPANY or any its officers or employees to be in violation of said Policies.  CONSULTANT also agrees that its representatives as designated by COMPANY, shall participate in training sessions involving COMPANY's policies and the anti-corruption laws, which training shall include sessions to be held at a mutually agreed time in the Singapore offices of the Company's parent company.

9.2   In connection with the services to be performed by CONSULTANT pursuant to this Agreement, CONSULTANT expressly agrees as follows:

a.   Government Official:   For the purpose of this Clause 9, the terms "Government Official" shall be as defined in the COBCP and includes any appointed, elected, or honorary official, or officer or any employee of any government, government ministry or department, agency or instrumentality thereof, or any company or corporation that is owned or controlled by a government or any public international organization or any person acting in a official capacity for or on behalf of any such government, ministry or department, agency, company or corporation, instrumentality or public international organization, including without limitation PETROBRAS.

b.   CONSULTANT agrees, represents and warrants that he has read and understands the United States Foreign Corrupt Practices Act ("FCPA") and the anti-corruption and bribery laws of Brasil, the jurisdiction(s) where COMPANY and its Affiliates for whom CONSULTANT provides the services hereunder, are organized, the jurisdiction(s) where CONSULTANT and its applicable affiliates are organized, and the country(ies) where the services will be performed (collectively, the "Anti-Corruption Laws").

c.   CONSULTANT further agrees, represents and warrants that neither it nor its Related Parties (defined below) have taken and that it shall not take, and shall prohibit its affiliates from taking, any action that could create liability for the COMPANY or any of its Affiliates under the Anti Corruption Laws, and to

KEPPEL00435132

abide by the prohibitions of the Anti-Corruption Laws, including, but not limited to:

i. with respect to the matters covered by this Agreement, that the CONSULTANT, its affiliates (including without limitation those listed on Schedule 2, attached hereto and incorporated herein by reference), and its and their respective directors, officers, employees, agents, or representatives (a "Related Party" or the "Related Parties") have not and shall not pay, give, offer, promise to pay, or authorize the payment or giving of any money or anything of value to any Government Official's acts or decisions or induce such Government Official to use his or her influence to affect the official decision or actions of others in order to obtain, retain or direct business or to obtain any other improper advantage for the CONSULTANT, its Related Parties or the COMPANY or its Affiliates, or any person with whom the COMPANY has business dealings in the country where the Work is performed or in furtherance of any prohibited act covered by the Anti-Corruption Laws;

ii. CONSULTANT further represents and warrants that with respect to the matters covered by this Agreement, the CONSULTANT and it Related Parties have not and the CONSULTANT shall not, and shall procure that its Related Parties shall not pay, offer, give, promise to pay, or authorize the paying or giving of money or anything of value to any other person or Third Party if they know or believe that there is a high probability that such person or Third Party will make a payment or offer or give money or anything of value to any Government Official or Political Official (defined below) for the purpose stated in Clauses 9.2 c. i. or 9.2 c. ii.;

iii. with respect to the contribution to political parties, officials of political parties, or candidates for political office ("Political Officials"), CONSULTANT represents and warrants that it and its Related Parties have and that CONSULTANT will, and will require its Related Parties to, make contributions only to the extent that such contributions are permitted under the relevant provisions of local law and are not offers, payments, promises to pay, or authorizations for the payment of any money, or gift, promise to give, or authorization  for the giving of anything of value to a Political Official in furtherance or any prohibited act covered by the Anti-Corruption Laws;

KEPPEL00435133

    iv.    Reasonable promotional expenses and reasonable entertainment of Government Officials or Political Official that are permissible under local law and comply with COMPANY's COBCP are not prohibited by this Clause 9.2;

    v.    CONSULTANT shall defend, indemnify and hold harmless COMPANY, its Affiliates and its and their respective shareholders, directors, officers, employees, agents (other than CONSULTANT and its Related Parties) and representatives from and against all direct or indirect losses and expenses arising out of or in connection with any violation of the provisions of this Clause 9.2.

d.    <u>No Governmental Ownership of CONSULTANT</u>.    CONSULTANT hereby represents and warrants to COMPANY that no ownership interest, direct or indirect, in CONSULTANT or any Related Party or in the contractual relationship established by the Agreement, is held or controlled by any Government Official or Political Official.

e.    <u>Payments.</u>    CONSULTANT acknowledges that all payments to CONSULTANT or any Related Party under this Agreement shall be made by check or wire transfer, and that none shall be made by cash or other negotiable instrument.

f.    <u>Books and Records</u>.    CONSULTANT agrees that its books and records and shall require that those of its Related Parties, relating to transactions pursuant to this Agreement shall be subject to audit at reasonable times compliance with the Anti-Corruption Laws. CONSULTANT shall, and shall cause its Related Parties to, maintain books and records, of all transactions pursuant or related to this Agreement in such form and accurately reflect such transactions. Further, CONSULTANT will provide to COMPANY or its Affiliates such documents or other evidence (whether written, oral or otherwise) as COMPANY or its Affiliates may request from time to time so that COMPANY or its Affiliates may determine and establish compliance with the provisions of this Clause 9, including individual certifications of such of CONSULTANT's and its Related Parties, principals, shareholders, directors, employees, agents or other representatives as may have worked on CONSULTANT's behalf in connection with performance under this Agreement, attesting to compliance with the foregoing. At the request of COMPANY or its Affiliates, accompanying any invoice for payment, and at least annually, CONSULTANT shall provide COMPANY or the applicable Affiliates with a certification in a form substantially similar to Schedule 1, attached to and incorporated herein by reference.

KEPPEL00435134

g.  <u>Right of Investigation and Audit</u>.  CONSULTANT agrees that the COMPANY shall have the right (but not the obligation), upon written notice to CONSULTANT, to conduct an investigation and audit of CONSULTANT to determine to the COMPANY's reasonable satisfaction whether any actions or failures to act on behalf of CONSULTANT or its Related Parties may subject the COMPANY to such liability.  As a part of the written notice to CONSULTANT, COMPANY agrees to disclose to CONSULTANT the basis for the COMPANY's belief that CONSULTANT or its Related Parties has taken or failed to take any action that may subject the COMPANY or its Affiliates to liability under the Anti-Corruption Laws.  CONSULTANT agrees to, and to cause its Related Parties to, cooperate fully with such investigation, the scope, method, nature and duration of which shall be at the sole reasonable discretion of the COMPANY.  CONSULTANT agrees that COMPANY or its Affiliates may disclose the terms of this Agreement to applicable government agencies and other persons with a legitimate need for such information.

h.  <u>Rights upon on Anti-Corruption Laws Default</u>.  In the event that COMPANY believes, in its sole discretion, and whether or not it has conducted an investigation in accordance with Clause 9.2 g, that CONSULTANT or its Related Parties have acted in any way that may subject the COMPANY or its Affiliates to liability under the Anti-Corruption Laws, the COMPANY shall have the unilateral right, exercisable immediately upon written notice to CONSULTANT, to terminate this Agreement.  In the event of such termination: (i) this Agreement shall become void; (ii) COMPANY shall have a right to action against CONSULTANT for the amount of any monetary payment of thing of value made or given by CONSULTANT or its Related Parties in breach of any of the above-mentioned covenants; (iii) all obligations of COMPANY or its Affiliates to pay CONSULTANT's fees shall cease forthwith; and (iv) COMPANY may, at its sole discretion, rescind this Agreement and CONSULTANT shall immediately return to COMPANY all commissions arising from any transaction in which there was a violation of this Clause 9.

i.  <u>CONSULTANT's Continuing Obligation to Advise</u>.  CONSULTANT agrees that should it learn or have reason to know of: (i) any payment, Political Official in violation of this Clause 9, or (ii) any other development during the term of this Agreement that in any way makes inaccurate or incomplete the representations, warranties and certifications of CONSULTANT or its Related Parties hereunder given or made as of the date hereof or at any time during the term of this

KEPPEL00435135

Agreement, relating to the Anti-Corruption Laws, CONSULTANT will immediately advise COMPANY in writing of such knowledge or suspicion and the entire basis known to CONSULTANT therefore.

j.   <u>CONSULTANTs Continuing Duty to Disclose Governmental Ownership of CONSULTANT</u>.  In the event that during the term of this Agreement a Government Official or Political Official acquires an interest of any sort or nature, direct or indirect, in CONSULTANT or a Related Party or in this Agreement, CONSULTANT covenants and agrees to make immediate, complete and accurate written disclosure to the COMPANY thereof and that following such disclosure, this Agreement shall immediately become terminable by the COMPANY upon written notice to CONSULTANT.

k.   <u>Materiality</u>. CONSULTANT and COMPANY agree that this Clause 9 is a material provision of this Agreement.

l.   <u>Forfeiture</u>. In the event that CONSULTANT breaches this Clause 9, then CONSULTANT forfeits, waives and agrees to forever forego any rights to compensation of any sort under this Agreement.

m.   <u>Survival</u>.  The provisions of this Clause 9 shall survive termination, expiration, or cancellation of this Agreement.

9.3   CONSULTANT agrees to comply with the provisions of all applicable federal, state, country, or municipal laws, regulations or ordinances and shall be responsible for obtaining any and all authorizations from any applicable governmental authority that may be required for CONSULTANT to perform the services hereunder.  COMPANY reserves the right, but not limited the obligation, to terminate this Agreement if COMPANY determines, in its sole an absolute discretion, that CONSULTANT or an partner, officer, director, employee, agent, representative or shareholder of CONSULTANT is involved in any activity that would constitute a violation of either the laws of policies of the jurisdiction(s) where COMPANY or its Affiliates are organized, including without limitation the FCPA and the other Anti Corruption Laws, or those of any other country in which any services are performed pursuant to this Agreement, regardless of whether such activity is ultimately determined to be a violation of such laws or policies.

KEPPEL00435136

## 10.0   INDEMNITY

10.1   CONSULTANT shall indemnify, defend and hold harmless COMPANY, its Affiliates, and their respective officers, directors and employees, from and against any loss, damage, claim, suit; liability, judgment and expense (including attorney's fees and other costs of litigation) arising from or in any way related to (a) any loss of or damage to CONSULTANT'S property, or (b) personal injury, disease or death of CONSULTANT, its employees, agents and representatives.

10.2   Subject to Clause 9, COMPANY shall indemnity, defend and hold harmless CONSULTANT, its Affiliates, and their respective officers, directors and employees, from and against any loss, damage, claim, suit, liability, judgment and expense (including attorney's fees and other costs of litigation) arising from or in any way related to (a) any loss of or damage to property, or (b) personal injury, disease or death, of COMPANY, its Affiliates and their respective officers, directors, employees, agents and representatives.

## 11.0   CONFIDENTIALITY

11.1   This Agreement and all information acquired from or furnished by the COMPANY to CONSULTANT, other than information which:

     (a)    is part of the public domain;

     (b)    becomes part of the public domain other than through the fault of the parties hereto; or

     (c)    is already known by the parties at the time of disclosure,

is to be treated as confidential and not to be used or disclosed for any other purpose than for the performance of services under this Agreement.

11.2   CONSULTANT covenants and agrees that the obligation of confidentiality recited in Clause 11.1 shall be strictly enforced and shall continue for a period of two (2) years from the expiration of this Agreement.   Following the termination of this Agreement, CONSULTANT shall, to the extent possible, return all confidential information to COMPANY.

## 12.0   INSURANCE

12.1   CONSULTANT shall be responsible for carrying such insurance in conjunction with its performance of services under this Agreement as may be required by

KEPPEL00435137

the laws of Brasil, and provide COMPANY with copies of such insurance policies and general terms of engagement.

## 13.0  <u>NOTICES</u>

13.1   Any notices or other communications by either COMPANY and/or the CONSULTANT to the other shall be in writing and sent by overnight courier, email or fax to the address(es) of the other parties as specified below, and shall be deemed to have been made: (a) if sent by overnight courier, upon documented receipt; or (b) if sent email or fax, at the time of receipt.

<u>COMPANY</u>:                              Fernvale Pte Ltd
                                        c/o Keppel Offshore & Marine Ltd
                                        50 Gul Road,
                                        Singapore 629351
                                        Telephone : +
                                        Facsimile :  +
                                        Attn :
                                        Email            :           [          HYPERLINK
"mailto:TEllenbroek@nl.equitytrust.com" ]


<u>CONSULTANT</u>                        Eagle do Brasil
                                        Rua da Assembleia 10/2008
                                        CEP: 20011-000, Rio de Janeiro, RJ Brasil
                                        Telephone : 55 21 2292 5251
                                        Facsimile : 55 21 2292 5677
                                        Email : [ HYPERLINK
"mailto:zwi@eaglebr.com.br" ]

                                            [ HYPERLINK
"mailto:Bruno@eaglebr.com.br" ]


## 14.0  <u>GOVERNING LAW AND DISPUTE RESOLUTION</u>

14.1   The Parties undertake to negotiate in good faith and endeavor their best efforts for an amicable settlement as definite resolution of any claim, controversy or dispute arising from or in connection with this Agreement.

14.2   considering the specific circumstances of the case, any of the parties may cease to find an amicable settlement, or stop, at any time, the negotiations in course, so as to immediately request the commencement of the arbitration.

                                                          KEPPEL00435138

14.3   This Agreement and the arbitration proceeding shall exclusively be governed by the law of the State of Texas, U.S.A.; and the arbitration shall be held in Houston, TX. The parties elect arbitration by the International Court of Arbitration (the "Court") of the International Chamber of Commerce (the "ICC") and undertake to accept its rules, as shall be effective as of the date of the request for arbitration ("ICC Rules of Arbitration").

14.4   The panel shall be composed by one of three arbitrators.  The selection of the arbitrators shall be in accordance with the rules and terms set forth by the ICC Rules of Arbitration.

14.5   The arbitration shall be conducted in English.  The parties may, however, produce contemporaneous documents in Portuguese, without need of translation.

14.6   The final arbitral award shall be rendered in writing, within 180 days from the institution of the arbitration, but the arbitrators may extend the proceeding at their sole discretion.  The arbitral award shall be binding to all parties and shall be enforceable as per the applicable legislation.

14.7   The expenses incurred in respect of the arbitration proceeding shall be borne by the losing party.


**15.0   <u>MISCELLANEOUS</u>**

15.1   This Agreement is written in the English language and notwithstanding any translation hereof into any other language, the English language version shall control.

15.2   the delay, omission or failure of either party at any time and from time to time and any particular context or connection to enforce any of the terms, conditions or stipulations herein contained, shall not be construed as a waiver thereof nor of the right of any part hereto at any other time to enforce any term, condition or stipulated aforesaid.

15.3   No modification, change or alteration of this Agreement shall be binding on the parties named herein unless and until the same shall have been reduced to writing and signed by the parties.  Furthermore, when executed, this Agreement shall contain the entire agreement between the parties herein named and shall supercede all prior agreements or understandings, oral or written, between such parties, including but not limited to, any prior agreements or understandings between the CONSULTANT and COMPANY.

KEPPEL00435139

15.4    The headings contained in this Agreement are solely for convenience and should not affect the construction or interpretation hereof.  This Agreement may be executed in as many counterparts as may be deemed necessary or convenient, each of which shall be considered as an original.  In the event that any clause or sub clause of this Agreement is voided as being contrary to law, this Agreement shall continue and have effect as if such clause or sub clause had been omitted from this Agreement, provided that any ambiguities in the construction of this Agreement caused by the voided or omitted clause shall be resolved insofar as shall be lawfully possible by reference to the intent of such voided or omitted clause of sub clause.

15.5    Nothing contained in this Agreement shall limit the right of the COMPANY to directly promote its activities in Brasil.

15.6    Except as expressly provided herein, nothing in this Agreement is intended to confer on any person other than the parties and their respective successors any rights or remedies under or by reason of this Agreement.

15.7    No provision of this Agreement may be amended, modified or waived unless such amendment, modification or waiver is authorized by COMPANY and is agreed to in writing, signed by CONSULTANT and by an officer of the COMPANY.  No waiver by a Party of any breach by the other Party of any condition or provision of this Agreement to be performed by such other Party shall be deemed a waiver of a similar or dissimilar provision or condition at the same time or at any prior or subsequent time.

15.8    This Agreement and subsequent modifications may be transmitted by telecopy facsimile machine and such facsimile copy shall be deemed an original if the Agreement or modifications are signed by the duly authorized representative of a Party.  Such facsimile shall constitute valid, binding documents and shall be regarded as such upon receipt.  The original of the documents sent by telefax shall be promptly sent by overnight courier or first class mail to the receiving Party so that accurate files may be maintained.

15.9    This Agreement and the rights and obligations contained therein may be assigned by COMPANY to an Affiliate of COMPANY or purchasers or substantially all of the assets of COMPANY (or succession by acquisition/operation of law) upon written notice without obtaining the consent of CONSULTANT.  CONSULTANT may not assign this Agreement absent COMPANY's prior written consent.

KEPPEL00435140

IN WITNESS WHEREOF, this Agreement has been executed by the parties named herein as of the day and year first written above.

Witness

By: _____

Name : _____

**"COMPANY"**
FERNVALE PTE LTD

By: _____

Name : _____

Title : _____

Witness

By: _____

Name : _____

**"CONSULTANT"**
EAGLE DO BRAZIL

By: _____

Name : _____

Title : _____

KEPPEL00435141

Schedule 1
Certification


It is the intention of the parties to that Marketing Consulting and Services Agreement dated [      ] , 2011 shall comply with the Foreign Corrupt Practices Act of the United States of America and all applicable anti-corruption laws (hereinafter "Anti-Corruption Laws").   Accordingly, and without prejudice to the generality of the foregoing, herewith each party undertakes and agrees that it has not and shall not directly or indirectly to offer, pay, promise to pay or authorize the payment or giving of any money, or anything of value to any official of any government or any instrumentality thereof (for purposes hereof, an employee of PETROBRAS is deemed to be an official of a government or instrumentality thereof), to any political party or candidate for political office, or to any person , while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any official of any government or any instrumentality thereof, for the purposes of:

  a. Influencing any act or decision of such in his official capacity, including a decision to fail to perform his official functions; or
  b. Inducing such official to use his influence with any governmental or any instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to obtain or retain business for or with, or direct business to, any person.

(For invoices, further, the undersigned certifies all invoices attached hereto are for expenses which comply with the foregoing).]

Schedule 2
List of Affiliates of CONSULTANT

| COMPANY or Entity Name | Type of Entity | Nature of Affiliate's Business | Contact data (address, telephone and email) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

KEPPEL00435142

ACKNOWLEDGEMENT FORM

TO:        FERNVALE PTE LTD
RE:        Keppel code of business conduct policy

I hereby acknowledge on behalf of Eagle do Brasil and myself receipt of the Keppel
Code of Business Conduct Policy as it currently exists. We understand that
compliance with this policy, as it may be amended from time to time, is a condition of
the provision of services as CONSULTANT for Fernvale Pte Ltd.


_____

Name : Zwi Skornicki
Date