# EXHIBIT 61



STATE OF NEW YORK

                    )
                    )
                    )

COUNTY OF NEW YORK     )     ss

### CERTIFICATION

This is to certify that the attached translation is to the best of my knowledge and belief a true and accurate

translation from Portuguese into English of the attached document with Bates number range EIG_KEP_00110494 to

EIG_KEP_00110535.

<br>

_____

Edward J. Jacob
Divergent Language Solutions, LLC

<br>

State of New York

County of New York

Subscribed to and sworn before me this 7ᵗʰ day of July, 2021,

by Edward J. Jacob.

_____

Notary Public

> MATTHEW C. ZELAK
> NOTARY PUBLIC, STATE OF NEW YORK
> Registration No. 01ZE6350239
> Qualified in Kings County
> Commission Expires   November 7, 2024



183 Madison Avenue, Suite 416 | New York, NY 10016 | p 917.979.4513 | f 415.525.4313
600 California Street, 11ᵗʰ Floor | San Francisco, CA 94108 | p 415.400.4538 | f 415.525.4313
divergent@divergentls.com | www.divergentls.com

# RIGS PROJECT

## SECOND AMENDMENT TO THE INVESTMENT AGREEMENT

### between

### BANCO BTG PACTUAL S.A.

### SANTANDER PARTICIPAÇÕES S.A.

### CAIXA DE PREVIDÊNCIA DOS FUNCIONÁRIOS DO BANCO DO BRASIL – PREVI

### FUNDAÇÃO DOS ECONOMIÁRIOS FEDERAIS – FUNCEF

### FUNDAÇÃO PETROBRAS DE SEGURIDADE SOCIAL – PETROS

### FUNDAÇÃO VALE DO RIO DOCE DE SEGURIDADE SOCIAL – VALIA

### FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES SONDAS

### LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA.

### PETRÓLEO BRASILEIRO S.A. – PETROBRAS,

### STRONG FUNDO DE INVESTIMENTO EM COTAS DE FUNDOS DE INVESTIMENTO MULTIMERCADO,

### LUCE VENTURE CAPITAL – DRILLING SERIES,

### EIG SETE HOLDINGS SARL, and

### as consenting participants,

### SETE BRASIL PARTICIPAÇÕES S.A. and

### CAIXA ECONÔMICA FEDERAL

**Dated**
July 31, 2012

NJ 1647/12
[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[initials]

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal

[initials]

[stamp:]
DIPEC/GECOR/COCIN
[Oversight and Planning
Office/Collections/
Investment Oversight
Coordination [initials]
FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

Confidential

EIG00243707
EIG_KEP_00110494

# INVESTMENT AGREEMENT

The parties have entered this private instrument on July 31, 2012 2012 [sic], as follows:

I.      BANCO BTG PACTUAL S.A., a financial institution domiciled in the City of Rio de Janeiro, Rio de Janeiro, at Praia de Botafogo, 501, Torre Corcovado, 5° andar, CEP 22250-040, registered under Brazilian Ministry of Finance Corporate Tax Roll [CNPJ/MF] No. 30.306.294/0001-45, represented herein in conformity with its bylaws ("BTG Pactual");

II.     SANTANDER PARTICIPAÇÕES S.A. (subrogated to the rights of Banco Santander (Brasil) S.A.), a corporation with registered office in the City and State of São Paulo, at Avenida Presidente Juscelino Kubitschek, n° 2041 e 2235 – Bloco A (parte), 16° andar, CEP: 04543-011, registered under CNPJ/MF No. 04.270.778/0001-71, represented herein in conformity with its bylaws ("Santander");

III.    CAIXA DE PREVIDÊNCIA DOS FUNCIONÁRIOS DO BANCO DO BRASIL – PREVI, a pension fund domiciled in the City of Rio de Janeiro, State of Rio de Janeiro, at Praia de Botafogo, n° 501, 3° e 4° andares, Botafogo, CEP: 22.250-040, registered under CNPJ/MF No. 33.754.482/0001-24, represented herein in conformity with its bylaws ("Previ");

IV.     FUNDAÇÃO DOS ECONOMIÁRIOS FEDERAIS – FUNCEF, a privately held pension fund and legal entity domiciled in the City of Brasilia, Federal District, in Setor Comercial Norte Quadra 02, Bloco "A," Ed. Corporate Financial Center, 12° e 13° andares, CEP 70712-900, registered under CNPJ/MF No. 00.436.923/0001-90, represented herein in conformity with its bylaws ("Funcef");

V.      FUNDAÇÃO PETROBRAS DE SEGURIDADE SOCIAL – PETROS, a privately held pension fund domiciled in the City and State of Rio de Janeiro, at Rua do Ouvidor, n° 98, Centro, CEP 20040-030, registered under CNPJ/MF No. 34.053.942/0001-50, represented herein in conformity with its bylaws ("Petros");

VI.     FUNDAÇÃO VALE DO RIO DOCE DE SEGURIDADE SOCIAL – VALIA, a privately held pension fund domiciled in the City of Rio de Janeiro, State of Rio de Janeiro, at Av. das Américas, n° 4430, 3° andar, Barra da Tijuca, CEP: 22640-102, registered under CNPJ/MF No. 42.271.429/0001-63, represented herein in conformity with its bylaws ("Valia");

[stamp:] DIPEC/GECOR/COCIN [Oversight and Planning Office/Collections/Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

EIG00243708
EIG_KEP_00110495

VII.     LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA., a limited company domiciled in the City and State of São Paulo, at Rua São Tomé, 86, 19° andar, Cj. 191, Sala B, Vila Olímpia, CEP: 04.551-080, registered under CNPJ/MF No. 13.040.317/0001-01, represented herein in conformity with its bylaws ("Lakeshore");

VIII.    STRONG FUNDO DE INVESTIMENTO EM COTAS DE FUNDOS DE INVESTIMENTO MULTIMERCADO, a fund for investment in quotas of investment funds, registered under CNPJ/MF No. 12.287.654/0001-27, through its manager BANCO BRADESCO BBI S.A., domiciled in the City of Osasco, State of São Paulo, in Cidade de Deus, Prédio Prata, 4° andar, Vila Yara, Osasco, SP ("Fundo Strong");

IX.      PETRÓLEO BRASILEIRO S.A. – PETROBRAS, semi-public company, with registered office at Av. República do Chile, 65, City of Rio de Janeiro, State of Rio de Janeiro, Federative Republic of Brazil, registered under CNPJ/MF No. 33.000.167/0001-01, represented herein in conformity with its bylaws ("Petrobras");

X.       LUCE VENTURE CAPITAL – DRILLING SERIES, company with registered office at 500 Stanton Christina Road, Newark, Delaware, 19713-2107, United States of America, represented herein in conformity with its articles of association ("LuceDrilling");

XI.      EIG SETE HOLDINGS SÀRL, a company with registered office at 2, boulevard Konrad Adenauer, L-1115, Luxembourg, represented herein in conformity with its bylaws ("EIG" or "Quotaholder" and, jointly with BTG Pactual, Santander, Previ, Funcef, Petros, Valia, Lakeshore, Fundo Strong, Petrobras and LuceDrilling, hereinafter referred to jointly as "Quotaholders");

XII.     FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES SONDAS, registered under CNPJ/MF No. 12.396.426/0001-95, and registered with the Brazilian Securities Commission ("CVM") under No. 431-6, represented herein by its administrator, CAIXA ECONÔMICA FEDERAL, described below ("FIP Sondas" or "Shareholder" and, together with Petrobras, "Shareholders," which Shareholders and Quotaholders shall hereinafter be referred to jointly as the "Parties" and individually as "Party");

and as consenting participants,

XIII.    SETE BRASIL PARTICIPAÇÕES S.A., a joint-stock corporation [sociedade por ações], with registered office in the City of Rio de Janeiro, State of Rio de Janeiro, at Rua Humaitá, n° 275, sala 1302, Humaitá, CEP 22261-005, registered under CNPJ/MF No. 13.127.015/0001-67, represented herein in conformity with its bylaws ("Sete Brasil" or "Company");

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials] [initials]

EIG00243709
EIG_KEP_00110496

XIV.   CAIXA ECONÔMICA FEDERAL, a financial institution in the form of a public company, governed by bylaws approved by Decree No. 6473, dated June 5, 2008, authorized by the CVM to administer investment funds and securities portfolios, with registered office in Brasília, Federal District, through the office of its Vice President of Third-Party Asset Management, domiciled in the City of São Paulo, State of São Paulo, at Avenida Paulista, n° 2300, 11° andar, registered under CNPJ No. 00.360.305/0001-04 ("Administrator");

**WHEREAS:**

(A)    The Parties, by directly or indirectly investing in the Company's share capital, and indirectly in the share capital of the Investee Companies (as defined below), seek to facilitate access to up to twenty-eight (28) drill rigs ("Rigs") with full operating capacity, primarily in the area of the Brazilian Pre-Salt Basin ("Project"), as well as, in addition to the Project, to facilitate the Company's performance of the activities of buying, selling, building, operating/or chartering (i) other drill rigs with technical characteristics that are similar to those provided for the Project, (ii) other assets and vessels for producing oil and gas, (iii) maritime support vessels and other equipment used to support oil and gas exploration and production activities, and (iv) shipyards and other industrial units and assets that are related to the shipbuilding industry ("New Investment(s)");

(B)    With the goal of implementing the Project and the New Investments, the Parties must comply with the Business Plan, as periodically amended;

(C)    The corporate structure adopted to implement the Project consists of a holding company known as Sete International GmbH., located in Vienna, Austria, at Schwarzenbergstrasse, 1-3/14a, 1010, registered in the Commercial Registry of the Commercial Court of Vienna under No. FN 348664 t ("Sete International"), a fully owned subsidiary of Sete Brasil, and the majority shareholder of special purpose entities ("SPEs") located in the Netherlands, which were exclusively formed to enter construction contracts, become owners, and charter the Rigs, initially to Petrobras, or its affiliates;

(D)    The SPEs have their share capital represented by Class "A" and Class "B" type shares;

(E)    All Class "A" shares of each SPE are held by Sete International;

(F)    The Parties, directly or through FIP Sondas, made and intend to make capital contributions in Sete Brasil, in order to facilitate the Project and any New

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecília Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[initials]

[initials]

EIG00243710
EIG_KEP_00110497

Investments, as they become approved;

(G)     The Project's capital structure was designed with portfolio financing, so as to dilute the risks of building and operating the Rigs, and of renewing the Charter Contracts;

(H)     The flows of dividends from all rigs of the system shall be consolidated within Sete International and shall only be distributed to Sete Brasil upon a guarantee that meets a list of priorities ("cash flow waterfall") which shall be determined jointly with future creditors;

(I)     As concerns the EFPCs, the Project was designed in accordance with Supplementary Laws 108/01 and 109/01, and National Monetary Board [CMN] Resolution 3792/09, and their subsequent amendments;

(J)     It has already become feasible for Sete Brasil to contract for the first seven (7) Rigs which constitute the first system ("First System") and another twenty-one (21) Rigs which constitute the second system ("Second System"), together comprising the Project;

(K)     The Original Quotaholders, the Original Shareholders, Sete Brasil, and the Administrator executed an Investment Agreement on May 13, 2011, which was subsequently amended on March 29, 2012, regulating (i) the terms and conditions of the investment and contribution of funds to the Project, (ii) their respective investment commitments in FIP Sondas and Sete Brasil, for the purposes of implementing the First System, and (iii) the terms and conditions for raising capital to implement the Second System;

(L)     In order to address the Company's need for capital, the Parties approved an increase in the capital limit authorized by Sete Brasil and the second issue of quotas of FIP Sondas, as well as the addition of new investors as FIP Sondas Quotaholders, and

(M)     The Parties intend to amend and consolidate the Investment Agreement, so that it (i) reflects the new investors' entry, (ii) implements necessary changes to adapt the Investment Agreement to the current stage of the Project, and (iii) regulates the terms and conditions for investment and contribution of funds to Sete Brasil, for the purposes of implementing New Investments.

**THE PARTIES RESOLVE,** by mutual and joint agreement, to enter this Second Amendment to the Investment Agreement ("Investment Agreement"), opting to amend and consolidate the Investment Agreement, which shall be governed by the following clauses and conditions:

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[initials]

[initials]

Confidential

EIG00243711
EIG_KEP_00110498

## Clause I.
### Definitions

1.1    Definitions. All capitalized terms that have not been defined in this instrument shall have the meanings ascribed to them in Appendix 1.1 to this Investment Agreement.

## Clause II.
### Purpose

2.1    Purpose. The standard purpose of this Investment Agreement and its appendices is for Quotaholders to invest in the Project and in the New Investments, as quotaholders of FIP Sondas, and together with Petrobras, as Shareholders of Sete Brasil.

## Clause III.
### Investment in the Private Equity Fund

3.1    FIP Sondas. The Quotaholders shall indirectly invest in Sete Brasil, through FIP Sondas, which is formed as a closed-end fund, pursuant to CVM Instruction No. 391 dated July 16, 2003, registered under CNPJ/MF No. 12.396.426/0001-95, with its bylaws duly filed with the 2nd Registry Office of the City of Brasilia under No. 0001041792, on April 15, 2011, which is administered and managed by the Administrator, described above; the corresponding funds shall be exclusively for the purchase of securities issued by Sete Brasil.

3.2    Investments. The Quotaholders promise to make their investments, in conformity with the respective Investment Commitments, through full payment of the Quotas, which funds FIP Sondas shall use to comply with the terms and conditions prescribed in this Investment Agreement and in the Shareholders' Agreement, in accordance with the terms and conditions provided under the Appendix – Approved Investments of the Business Plan.

3.3    Quotaholders' Agreement. Relations between Quotaholders when conducting FIP Sondas' business shall be governed by the terms and conditions provided under the Quotaholders' Agreement, as periodically amended, which are attached hereto as Appendix 3.3 and in the Bylaws, in accordance with the terms of this Investment Agreement.

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[initials]

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

3.4   <u>Investment Commitments.</u> On May 13, 2011, the Original Quotaholders executed their respective Investment Commitments, which amount was subsequently increased, in conformity with the amendment dated July 19, 2011. On that date, the Quotaholders were to have executed additional Investment Commitments which together with the Entry Fee where applicable, totaled the amounts noted below:

| Quotaholder | No. of Quotas | Total Amount of the Investment Commitments plus Entry Fee | Investment in FIP Sondas |
|---|---|---|---|
| BTG Pactual | 656,207,552 | R$662,305,443 | 14.4853% |
| Santander | 498,015,873 | R$500,000,000 | 10.9933% |
| Previ | 180,000,000 | R$180,000,000 | 3.9734% |
| Funcef | 870,179,318 | R$874,340,753 | 19.2085% |
| Petros | 870,179,318 | R$874,340,753 | 19.2085% |
| Valia | 200,000,000 | R$200,800,000 | 4.4148% |
| Lakeshore | 4,000,000 | R$4,025,066 | 0.0883% |
| Fundo Strong | 250,000,000 | R$250,000,000 | 5.5186% |
| Petrobras | 226,508,683 | R$227,591,910 | 5% |
| Luce Drilling | 278,048,780 | R$285,000,000 | 6.1377% |
| EIG | 497,034,137 | R$509,459,990 | 10.9716% |
| Total | 4,530,173,661 | R$4,567,863,915 | 100% |

3.4.1.   The total amount of the additional Investment Commitments, along with the respective Entry Fees, as well as the equity interest of each of the Quotaholders in the Net Assets of FIP Sondas, shall be adjusted, following the second subscription for quotas and the close of the Second Additional Issuance of Quotas of FIP Sondas, as provided in the minutes of the 19th General Meeting of Quotaholders of FIP Sondas, which was held on July 31, 2012, with the Parties promising to amend this Agreement to reflect the aforementioned adjustments.

3.5.   <u>Payment.</u> The Quotaholders promise to pay for the respective Quotas through capital calls to be made by the Administrator, pursuant to and up to the limit established in the table above; the Administrator shall make capital calls as necessary so that Sete Brasil complies with its Business Plan, meeting the terms of the Investment Agreement, the Quotaholders' Agreement, and the Shareholders' Agreement, whenever there is a Capital Call from Sete Brasil, as well as to pay FIP Sondas' costs, as prescribed in the Bylaws.

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]   [initials]

[initials]

EIG00243713
EIG_KEP_00110500

3.5.1.    If the Charter Contracts and the Service Contracts referring to the Second System are not entered within three (3) months of the date of this Investment Agreement, any Capital Call must be made, exceptionally, by approval at the Company's General Meeting, by a vote of Shareholders representing at least 65% of the total shares issued by Sete Brasil.

3.5.2.    If a period of six (6) months has elapsed from the date of this Investment Agreement without the Charter and Service Contracts having been executed for the Second System, the Quotaholders shall meet to deliberate on approving the additional term for entering the aforementioned contracts, requiring a favorable vote representing 85% of the quotas issued by FIP Sondas.

3.5.3.    If (i) a period of six (6) months from the date of this Investment Agreement has elapsed, and the Charter and Service Agreements for the Second System have not been entered, and the term for entering them as noted in Clause 3.5.2 above has not been extended; or (ii) if they have been entered without complying with the minimum terms prescribed in the Appendix – Approved Investments of the Business Plan, such that they materially impact the implementation of the Project, the Quotaholders shall meet at the General Meeting of Quotaholders within two (2) Business Days, counted from the end of the term noted in item (i) of this Clause or the signing of any Charter or Service Contract that has not complied with the minimum conditions of the Appendix – Approved Investments of the Business Plan, in order to deliberate on the cancellation of their respective Investment Commitments, and consequently of the respective subscription forms; such cancellation shall only not be implemented if Quotaholders representing 94% of the quotas issued by FIP Sondas oppose it.

3.5.3.1.    The cancellation of the Investment Commitments and respective subscription forms must only consider the amount referring to the proportion of capital needed to build the Rigs for which Charter and Service Contracts have not been entered up to the date of holding the aforementioned meeting, or that have been entered without complying with the minimum conditions of the Appendix – Approved Investments of the Business Plan.

3.5.3.2.    Under no circumstance may the Quotaholders cancel their Investment Commitments in relation to the amounts needed to pay the proportion of capital relating to (i) any Rig of the First System, (ii) Rigs of the Second System that already have Charter and Service Agreements executed with

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

EIG00243714
EIG_KEP_00110501

Petrobras under the terms and conditions provided for herein, and (ii) drilling rigs already contracted by the SPEs Urca Drilling B.V. and Guarapari Drilling B.V.

3.6   Default. A Quotaholder that fails to pay for the Quotas pursuant to Clause 3.5 above shall automatically be considered to be in default ("Defaulting Quotaholder"), being subject to the penalties noted in Article 45 of the Bylaws.

3.7   New Investors. Up to the date of an Initial Public Offering of Shares ("IPO"), any new investor shall make their investments on a priority basis through the subscription of Quotas, in accordance with the terms and conditions of the Quotaholders' Agreement and the Bylaws. If a new investor enters by subscribing for Shares representing Sete Brasil's share capital, there must be a deliberation, and approval shall only be given pursuant to the Shareholders' Agreement and Quotaholders' Agreement.

Clause IV.
Investment in the Company

4.1   Sete Brasil. Sete Brasil is a joint-stock corporation formed to invest in other domestic or foreign companies as a shareholder, unitholder or quotaholder, in joint ventures, partnerships and/or consortia, which shall have the purpose of building, operating, buying, selling, leasing, or chartering (i) Rigs and other assets and vessels for oil and gas exploration and production; (ii) maritime support vessels and other equipment used to support oil and gas exploration and production activities, and (iii) shipyards and other assets and industrial units related to the shipbuilding industry.

4.2   Shareholders' Agreement. The relationship between Shareholders when conducting Sete Brasil's business shall be governed by the Shareholders' Agreement, as periodically amended.

4.3   Investment in Sete Brasil. Throughout the effective term of this Investment Agreement, FIP Sondas and Petrobras promise to maintain their investment in the total share capital of Sete Brasil in the proportions of 95% (ninety-five percent) and 5% (five percent), respectively.

    4.3.1.   Petrobras may choose to make its contributions in relation to any capital increase of Sete Brasil through FIP Sondas or directly in Sete Brasil, provided, however, that Petrobras' total equity interest in the Company's share capital cannot directly or indirectly (through FIP Sondas) exceed ten percent (10%).

4.4   Capitalization of the Company. Having complied with the proportion noted in Clause 4.3

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

EIG00243715
EIG_KEP_00110502

above, FIP Sondas and Petrobras shall contribute the amount of R$7,631,578,947.37 (seven billion, six hundred and thirty-one million, five hundred and seventy-eight thousand, nine hundred and forty-seven reais and thirty-seven centavos) to Sete Brasil, through the subscription and payment of additional capital to Sete Brasil and the issue of new ordinary shares ("New Shares"), in accordance with the terms and conditions below and those of the Shareholders' Agreement. The Shareholders' Committed Capital shall be contributed through increases in share capital and Capital Calls, pursuant to Article 6 of the Company's Bylaws, in accordance with the schedule of consolidated contributions ("Schedule of Contributions") provided in the Appendix – Approved Investments of the Business Plan, pursuant to Clause 5.1 below, and in accordance with the proportion of the equity interest each Shareholder holds in the Company's share capital ("Shareholders' Committed Capital").

4.5     Additional Subscriptions. For the purposes of the Company's capitalization noted in Clause 4.4 above, the Shareholders promise to carry out any and all acts needed to exercise their preferential rights, and to subscribe and pay for any capital increases of the Company, up to the limit of the Shareholders' Committed Capital. Therefore, in accordance with the Schedule of Contributions, within up to ten (10) Business Days counted from the Meeting of the Board of Directors that deliberates on the respective capital increase and the completion of a Capital Call, the Shareholders shall carry out the following acts:

(i)     sign the respective Subscription Forms, committing to pay for the Shares subscribed, in the proportion of the capital increase;

(ii)    shall arrange for Sete Brasil to register the issue and subscription of the New Shares in the name of the Shareholders in the Company's Registry Ledger of Registered Shares; and

(iii)   pay the amount corresponding to the capital subscribed for in the Company.

4.6     Default. In the event that any Shareholder fails to pay for Capital Calls in accordance with the terms established herein, the Shareholder shall automatically be considered to be in default ("Defaulting Shareholder"), and shall be subject to the penalties noted in Clause 3.2.3 of the Shareholders' Agreement.

4.7     Right of First Refusal. Except in the case of a Permitted Transfer, the Shareholders promise not to assign or transfer, in any form or for any purpose, their right of first refusal to subscribe for Shares of Sete Brasil up to the limit of the Committed Capital.

4.8     Capitalization of FIP Sondas. The Capitalization of FIP Sondas to be made by the Quotaholders shall be limited to the aggregate amount they have assumed, according to the respective Investment Commitment, plus the Entry Fee, where applicable ("Quotaholders' Committed Capital").

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[initials]

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

EIG00243716
EIG_KEP_00110503

Quotaholders' Committed [sic]")

Clause V.
Capital Calls of Sete Brasil and FIP Sondas

5.1     Conditions for Capital Calls of Sete Brasil. In accordance with the terms of Clauses 3.1.1 and 3.2 of the Shareholders' Agreement, and Clause 5.3 below, the Parties agree that Sete Brasil's Board of Directors is hereby authorized to make Capital Calls in an amount that is higher or lower by up to ten percent (10%) than the amount provided for each Capital Call in the Schedule of Contributions of the Appendix – Approved Investments of the Business Plan, noting however that no Shareholder shall be obligated to contribute any amount above their respective proportion to the Committed Capital of the Shareholders.

5.2     Contributions of the Quotaholders. Quotaholders must pay for their Quotas in conformity with the capital calls made by the Administrator, complying with the Capital Calls made by Sete Brasil's Board of Directors, pursuant to Clause 5.1 above, limited to their respective proportions in the Quotaholders' Committed Capital.

5.3     Revision of Schedule of Contributions. The Schedule of Contributions shall be revised by the Parties, in accordance with the terms and conditions of the Shareholders' Agreement and the Quotaholders' Agreement whenever necessary to adjust the Appendix – Approved Investments of the Business Plan. If new shareholders invest in Sete Brasil's share capital, the Parties must consider the capital contributions made by these new shareholders on a priority basis when revising the Schedule of Contributions, until the ratio between committed capital and subscribed capital paid up by the Original Shareholders and by the new shareholders is equivalent and reflects each one's proportional interest in Sete Brasil's subscribed capital.

Clause VI.
New Investments of Sete Brasil

6.1     Approval of New Investments of Sete Brasil. Any New Investments to be made by Sete Brasil must comply with the following rules:

6.1.1.     Activities Provided for under the Company's Corporate Purpose. If the New Investment includes activities that have been provided for under the Company's corporate purpose, such investment shall only be approved by the Investment Committee with a favorable vote of the members representing at least seventy-five percent (75%) of the Quotas issued by FIP Sondas.

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

Confidential

EIG00243717
EIG_KEP_00110504

6.1.2. <u>Activities Not Provided for under the Company's Corporate Purpose.</u> If the New Investment includes activities that have not been provided for under the Company's corporate purpose, such investment shall only be approved by the Investment Committee by a favorable vote of members representing at least ninety-four percent (94%) of the Quotas issued by FIP Sondas, amending the Company's corporate purpose to include the new activity.

6.1.3. <u>Fundraising.</u> If the Company needs additional funds, the Executive Board must submit the new fundraising plan for the approval of the Shareholders' Meeting, specifying the amounts sought and the intended use. Sete's Executive Board shall make every effort to obtain the highest entry premium possible to be paid in relation to the investments needed to implement any capital increase. The aforementioned premium shall be reflected in the Entry Fee to be approved at the General Meeting of Quotaholders.

6.2 <u>Approval of FIP Sondas' Issuance of New Quotas.</u> The approval of the issue of New Quotas shall comply with the terms of the FIP Sondas Quotaholders' Agreement.

6.2.1. Whenever there is an Additional Issuance of Fund Quotas, an Entry Fee shall be charged, in accordance with the terms and conditions provided for under the Bylaws and in the Quotaholders' Agreement.

6.2.2. The Entry Fee shall be charged at the time of purchase of the New Quotas of FIP Sondas, except in the case where an investor joins as a direct shareholder of Sete Brasil. Notwithstanding the terms above, the effective amount of the Entry Fee charged on the acquisition of New Quotas of FIP Sondas shall be calculated pursuant to the Bylaws and the Quotaholders' Agreement.

6.3. <u>Payment of premium by Petrobras.</u> Petrobras shall not be subject to the payment of any premium in relation to the contributions it directly makes to Sete Brasil's share capital to comply with the obligation to maintain a five percent (5%) equity interest in Sete Brasil's total share capital. Any contribution of capital that Petrobras directly makes in Sete Brasil which exceeds the prescribed five percent (5%) limit noted above shall be subject to the payment of a premium whenever required from Sete Brasil's other shareholders.

<u>Clause VII.</u><br>
<u>Investments in Sete International and in the SPEs</u>

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[initials]

Confidential

EIG00243718
EIG_KEP_00110505

7.1     <u>Acquisition of Sete International and Formation of the SPEs.</u> In order to manage and implement the Project, on April 1, 2011, Sete Brasil bought all shares of Sete International and, on May 5, 2011, the seven (7) SPEs that will hold the First System Rigs were formed. On March 19, 2012, the twenty-one (21) SPEs that will hold the Second System Rigs were formed. Sete Brasil shall at all times hold one hundred percent (100%) of Sete International and, in turn, shall hold Class "A" type shares issued by each of the SPEs, representing at least seventy percent (70%) of its share capital (Sete International and the SPEs shall hereinafter be jointly referred to as "<u>Investee Companies</u>"). The Class "B" shares of the SPEs of the First System shall be held until the occurrence of the event noted in Clause 7.3 below by Petrobras Netherlands B.V. ("<u>PNBV</u>"). The Class "B" shares of the SPEs of the Second System shall be held by the Specialized Operators who will enter into the Service Contracts of the SPEs of the Second System, or Affiliates of these Specialized Operators, as selected at the discretion of Sete Brasil's Executive Board, in accordance with the List of Preselected Companies.

7.2     <u>Contribution of Funds in Investee Companies.</u> In accordance with the terms of the Business Plan, the Shareholders shall arrange for Sete Brasil to contribute the funds provided under the Schedule of Contributions of Sete International within up to ten (10) Business Days of receiving the amounts related to the Capital Calls. Sete Brasil in turn, having complied with the Schedule of Equity Contributions of the Class A Shareholder, shall arrange for Sete International to make the capital contributions to the SPEs within up to five (5) Business Days counted from Sete International's receipt of the amounts arising from a capital contribution made by Sete Brasil.

7.3     <u>Sale of Class "B" Shares.</u> In accordance with the terms and conditions provided for in Clause 7.3.1 below, PNBV, as Class "B" shareholder of the First System SPEs shall sell Class "B" shares of five (5) SPEs to strategic shareholders, who shall be Affiliates of the operators entering into the Service Contracts of the First System SPEs with Petrobras. PNBV shall remain a Class "B" shareholder in two (2) SPEs of the First System. The Parties hereby agree to transfer the Class "B" shares of the First System SPEs to the operators noted in the List of Preselected Companies (or to Affiliates of these operators) and shall arrange for Sete International to waive its right of first refusal to buy the aforementioned Class "B" shares, provided that the terms of Clause 7.3.1 below are respected.

7.3.1.   The transfer of Class B shares by PNBV to the new shareholder shall only occur after the following conditions precedent have been met, which are required to be

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[initials]

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

EIG00243719
EIG_KEP_00110506

stated in the SPE's Share Purchase and Sale Agreement, to be entered with the Specialized Operators:

(i) satisfactory completion of the Rig acceptance tests by Petrobras, by the Specialized Operator, and other required specialists (Independent Engineer, Classification Company, governmental agents, etc.),

(ii) satisfactory compliance with all obligations assumed by the Specialized Operator in the SPE share purchase and sale promise agreement, which obligations shall be agreed to between Petrobras and the Operator, and

(iii) non-existence of any Material Adverse Change in relation to the future Specialized Operator, or its parents or subsidiaries.

7.4     Asset Maintenance Contract. The Parties shall arrange for each Project SPE to enter into an Asset Maintenance Contract with the respective Rig Operator, through which the Operator shall promise to maintain, preserve, and repair the Rig, as well as be liable for all damage caused to the SPE as a result of a failure to comply with the Rig maintenance, preservation, and repair obligations. The Parties shall respect and make every effort so that the Asset Maintenance Contract that each SPE enters with the Specialized Operator and/or PNBV (as Specialized Operator) mandatorily contains the clauses noted in Appendix 7.4 of this Investment Agreement, unless even after its best efforts, these clauses are not ultimately accepted by the Specialized Operators and/or PNBV (as Specialized Operator).

7.5     Compensation for Low Achievement of Expectations. If at any time during the effective term of the Charter Contract for the First System Rigs, the Specialized Operator's performance is not sufficient to ensure uptime above 85% in a given quarter, after the first year the rig enters into commercial operation in conformity with the terms and conditions of the Shareholders' Agreements of the First System SPEs, such that the SPE does not receive a minimum charter fee, the Shareholders shall ensure that Sete International has sufficient funds in relation to the SPE to cover the lack of cash caused by the event, using the funds deposited in the Performance Fund ("Compensation for Low Performance"). In this case, the Class B shareholder shall be required to compensate Sete International for the amounts advanced to the SPE. Sete International shall be entitled to a guarantee comprised of a number of Class B shares whose value is equivalent to the amount of Compensation for Low Performance and, if the Class B shareholder does not return the amounts to Sete International, the latter shall be compensated through the effective transfer of the Class B shares, reducing the Class B shareholder's equity interest in the SPE's share capital. Nevertheless, this rule shall not apply to SPEs whose operator is PNBV, or any other company of Petrobras' Economic Group, which shall be governed by Clause 7.7 below.

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[initials]

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

EIG00243720
EIG_KEP_00110507

7.6     Option to Purchase Class B Shares. The Shareholders shall arrange for Sete International to exercise the option to purchase Class "B" shares of the First System SPEs in the following cases: (i) the class B shareholder has its equity interest diluted to 10% or less, (ii) there is a Low Performance event for four (4) consecutive quarters or for eight (8) non-consecutive quarters, even though the Class "B" Shareholder compensates Sete International for the occurrence of the event; and (iii) if the Service Contract caused by the Specialized Operator ends, regardless of the cause.

7.7     Compensation from PNBV for Low Performance. For the two SPEs of the First System whose operator shall be PNBV, or any other company of Petrobras' Economic Group, Compensation for Low Performance shall be in the form of a compensatory fine, which is due to Sete International.

Clause VIII.
Funds and Reserve Accounts to Mitigate the Risks of the Project

8.1     Funds and Reserve Accounts. The Parties hereby promise to approve the creation and maintenance of the Performance Fund, Renewal Fund, and Reserve Account for Contingencies, as required by the Project's lenders, under the terms and conditions noted below.

8.2     Performance Fund. The performance fund, held by Sete International, shall be established with the goal of mitigating the operating risk and risk of low performance of the Rigs if any of them has performance below the amount estimated, to the point that it hinders any of the SPEs' capacity to meet their obligations, especially to pay debts, and its funds may be used by any of the SPEs ("Performance Fund"). The Performance Fund assets may not be used or transferred to another fund or reserve account provided for herein.

    8.2.1.   Definitions. For the purposes of interpreting this Investment Agreement, "Payment of Debt" means the payments of principal, interest, fees, taxes, commissions, or other charges that are periodically owed by the SPEs or by Sete International in relation to the debt incurred with the Brazilian Development Bank – BNDES, export credit agencies ("ECAs"), and financial institutions ("Senior Debt").

    8.2.2.   Amount. The Performance Fund must be established and maintained to implement any Project, noting that the amount to implement the First

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[initials]

[initials]

EIG00243721
EIG_KEP_00110508

System shall be approximately US$56,000,000.00 (fifty-six million U.S. dollars).

8.2.3.   Establishment. The Performance Fund shall be established during the first year of operation of each Rig through the payment of extraordinary dividends by the SPEs exclusively to Sete International. The extraordinary dividends shall come from initial revenues which are primarily made available as a result of the Mobilization, Commissioning, and Pre-operating Fee. The Performance Fund shall be managed by a leading independent financial institution, whose engagement Sete Brasil's Board of Directors must approve.

8.2.4   Permitted Applications. When the amount established in the Business Plan in relation to the Performance Fund has been attained ("Performance Fund Balance"), the payment of extraordinary dividends by the SPEs to Sete International may be stopped. The Performance Fund Balance must remain invested at all times in applications that are low-risk, short-term, high-liquidity, and in the same currency as the financing, for example debts from the United States Government or debts for which payments of principal and interest are fully guaranteed by the United States, or cash deposits, term deposits, or bank deposit certificates, with a maximum term of six months having the classification of risk "AA+" or higher from S&P or "Aa1" or higher from Moody's ("Permitted Applications").

8.2.5.   Recomposition. The Performance Fund Balance must be restored by Sete International if the funds deposited therein are used by any SPE. In exchange for restoring the Performance Fund, Sete International may activate gradual fee and dilution mechanisms for the shares of Class "B" shareholders, as prescribed in the SPEs' Shareholders' Agreement.

8.2.6.   Termination. Sete International may utilize the Performance Fund's unused assets to distribute dividends to its shareholders after full payment of the senior debts of all SPEs.

8.3   Renewal Fund. The renewal fund, held by Sete International, shall be established to mitigate the risk of Non-Payment of the Senior Debt of each SPE, after the end of the first term of the ten (10)-year Rig Charter Contracts ("Renewal Fund").

8.3.1.   Amount. The Renewal Fund must be established and maintained to implement any Project, noting that to implement the First

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal

[initials]

[initials]

EIG00243722
EIG_KEP_00110509

System the amount thereof shall be approximately US$117,000,000.00 (one hundred seventeen million U.S. dollars).

8.3.2.    <u>Establishment.</u> The Renewal Fund shall be established using part of the dividends that are paid by all of the SPEs to Sete International, between the eighth (8th) and tenth (10th) year of operation of each Rig, through the payment of US$5,600,000.00 (five million six hundred thousand U.S. dollars) per SPE, per year. The Renewal Fund shall be governed by a leading independent financial institution, whose contract must be approved by Sete Brasil's Board of Directors.

8.3.3.    <u>Permitted Applications.</u> When the amount established in the Business Plan is attained (in relation to the Renewal Fund ("<u>Renewal Fund Balance</u>"), the deposit of funds into the aforementioned Renewal Fund must cease. The Renewal Fund Balance shall not be restored if the funds deposited therein are used. The Renewal Fund Balance must remain invested in Permitted Applications.

8.3.4.    <u>Use.</u> The funds deposited in the Renewal Fund may only be used by Sete International for lending to those SPEs whose Charter Contract has an initial term of ten (10) years, and if such contract is not renewed or a new Charter Contract is not entered, hindering the SPE's ability to honor its commitments arising from the Senior Debt or, furthermore, of meeting its operating costs.

8.3.5.    <u>Limits.</u> The use of the Renewal Funds assets shall be limited to an amount that is equivalent to six (6) months of SPE's servicing of the Senior Debt, up to the total use of the Renewal Fund Balance.

8.3.6.    <u>Term.</u> The amounts deposited in the Renewal Fund may only be taken out and used by Sete International after the end of the Charter Contract for all SPEs whose contract entailed an initial ten (10)-year term, respecting the term of six (6) months for use of the Renewal Fund by the last SPE.

8.4.    <u>Reserve Account for Contingencies.</u> The reserve account for contingencies ("<u>CRE</u>"), held by Sete International, shall have the purpose of providing financial assistance, from one SPE to another, with the goal of mitigating the risk of the SPEs having insufficient cash to meet their obligations arising from material extraordinary costs and/or expenses incurred by the SPEs in the pre-operating phase of each Rig.

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[initials]

[initials]

Confidential

EIG00243723
EIG_KEP_00110510

8.4.1. <u>Amount.</u> The CRE must be established and maintained to implement any Project, noting that to implement the First System the amount shall be approximately US$154,000,000.00 (one hundred fifty-four million U.S. dollars).

8.4.2. <u>Establishment</u>. The CRE shall be established using the cash and cash equivalents of the SPEs when they begin operations, including the initial amounts to be paid by Petrobras at the start of the operating phase of each Rig's Service Charter Contract (Mobilization Fee, Commissioning, and Pre-operation), having been duly deducted from the payment of their respective expenses and obligations, including the capitalization of the Performance Fund, until the CRE has reached its predetermined amount, when the contributions shall cease. The funds needed to establish the CRE shall be remitted by each SPE within the first year of operation of the Rig. The CRE shall be managed and administered by a leading independent financial institution, whose engagement must be approved by Sete Brasil's Board of Directors.

8.4.3. <u>Use.</u> The funds deposited in the CRE may only be used by Sete International if there is insufficient cash in the SPEs, in order to cover the obligations arising from material extraordinary costs and/or expenses incurred by the SPEs during the pre-operating phase of each Rig, limited to the amount deposited in the CRE.

8.4.4. <u>Recomposition.</u> There is no obligation to restore the amount deposited in the CRE. The CRE Balance must remain invested in Permitted Applications.

8.4.5. <u>Termination.</u> After final acceptance of the last Rig, the funds of the CRE may be withdrawn and distributed by Sete International to Sete Brasil.

8.5. Notwithstanding the terms of the clauses above, the Parties, Sete Brasil, and their administrators, in relation to the engagement of the financial institutions provided for under this Investment Agreement, must comply with the terms of the Financial Transaction Agreement.

Clause IX.<br>Petrobras' Commitment

9.1 <u>Non-Compete.</u> Petrobras promises for the period of two (2) years counted from May 13, 2011 not to directly or indirectly, in Brazil or abroad,

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[initials]

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

Confidential

EIG00243724<br>EIG_KEP_00110511

invest in a similar structure which has the business objective of building and chartering rigs for exploration of the Pre-Salt Basin. Petrobras' commitment under the terms of this Clause is limited to the charter of up to twenty-eight (28) Rigs of the Project, provided that Sete Brasil directly or indirectly, through its subsidiaries, facilitates the charter of new rigs under commercial terms that are similar to those proposed for the First System. Should, even if having market conditions and opportunities, Sete Brasil chooses not to offer new rigs under the same original conditions, or if it unjustifiably seeks to present terms that have been expanded in relation to the parameters used for the First System, or if it chooses not to enter into contracts for new batches of rigs to be chartered to Petrobras, the commitment described above shall cease to exist.


Clause X.<br>Quotaholder Commitment

10.1     <u>FIP Sondas</u>. The Quotaholders promise to ensure that FIP Sondas complies with all terms and conditions of this Investment Agreement and with the Shareholders' Agreement of Sete Brasil. This obligation does not imply that the Quotaholders are jointly and severally liable with FIP Sondas for the latter's obligations under this Investment Agreement and the Shareholders' Agreement of Sete Brasil, nor that the Quotaholders are jointly and severally liable under the terms of this Investment Agreement or the Shareholders' Agreement of Sete Brasil.


Clause XI.<br>Parties' Commitments

11.1     <u>Consents and Reasonable Efforts.</u> The Parties shall individually (i) make all reasonable efforts to obtain or arrange for all authorizations and consents that prove to be necessary to meet the terms and conditions provided under this Investment Agreement; and (ii) shall cooperate and make all reasonable efforts to provide all information and take all other measures needed to formalize the records and requests which, under the terms of the law, are needed to invest in Sete Brasil pursuant to this Investment Agreement.

11.2     <u>Notice to the Brazilian Antitrust Authority /Sistema Brasileiro de Defesa da Concorrência</u>]. The Company, together with any Quotaholder whose investment in the Project is subject to the rules of mandatory notice to the Administrative Council for Economic Defense ("<u>CADE</u>"), promise to make every effort to obtain, where so required and within the term prescribed under the applicable legislation, approval from the CADE in relation to the investment made in Sete Brasil. All costs referring to the fees relating to services retained from consultants and attorneys, as well as expenses incurred in relation to any approval of an investment in Sete Brasil shall be borne

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]     [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

Confidential

EIG00243725
EIG_KEP_00110512

proportionately by the Quotaholders who have subscribed for notification with CADE and by Sete Brasil, to the extent applicable. For such purpose, Sete Brasil, together with the Quotaholders noted above, must prepare all documents needed for CADE to obtain authorization, pursuant to the terms of the applicable law, and the Parties must cooperate in all matters regarding the implementation of these investments, including by providing all information need to faithfully comply with this Clause.

11.3    Best Efforts. Each Party shall make their best efforts to carry out, and have others carry out, all acts, as well as to complete or arrange for others to complete all other operations that are necessary, appropriate, or useful to provide full efficacy to this Investment Agreement. Each Party shall negotiate, enter, and deliver all documents that are reasonably necessary, and shall carry out all other acts that are reasonably requested by the other Party to this Investment Agreement to implement and carry out the terms and conditions of this Investment Agreement. Each Party shall make reasonable commercial efforts not to carry out any act, or to stop carrying out any act, whose practice or omission, as applicable, has the effect of hindering the scope and purpose of this Investment Agreement, which effect could be reasonably anticipated.

11.4    Confidential Information. Each of the Parties shall maintain the confidential nature of any information that is received by the Company or from another Party, including, without limit, all information and data that is obtained by the other Party in conformity with this Investment Agreement, and any of the operations prescribed herein, information relating to the Company's business that is not public knowledge, such as operations, strategies, products, services, costs, revenues, profitability, prices, internal processes, and client lists, with the exception of contracts entered with Related Parties, agreements and option programs for stocks or other securities or instruments issued by the Company ("Confidential Information").

11.4.1.    Effective Term of the Confidentiality Obligation. The obligation to maintain the secrecy of Confidential Information shall be binding throughout the full effective term of this Agreement. A Shareholder and/or Quotaholder that withdraws from the corporate structure of the Company and/or FIP Sondas must maintain the secrecy of the Confidential Information for a period of five (5) years counted (i) from the date of their exit from the Company and/or from FIP Sondas, or (ii) from the date of the IPO, whichever occurs first, noting that in relation to the Company's operating contracts, the privacy of the Confidential Information must be maintained for a period of ten (10) years, counted using the same method indicated in this Clause, or for the term established in the aforementioned contracts, whichever is greater.

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal   [initials]

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[initials]

[initials]

Confidential

EIG00243726
EIG_KEP_00110513

11.4.2.  Information that (a) is developed independently by the Parties or that is not subject to confidentiality and is legally received from another source that has the right to provide it; (b) becomes available to the public without the Parties violating this Investment Agreement; (c) on the date of disclosure to one Party, was known by the aforementioned Party as not being subject to confidentiality, as proven by documentation in its possession; (d) the Company agrees, in writing, is free of such restrictions; or (e) must, currently or in the future, be disclosed as prescribed by applicable law, regulations, or governmental standards (about which the informed Party shall immediately provide notice to the informant Party, giving them the opportunity to try and restrict disclosure), or that by virtue of a judicial or administrative decision, shall not be considered confidential information for the purposes of this Investment Agreement.

11.4.3.  No Party shall provide access, without the Company's prior consent, and the Company shall not be obligated to provide access, to confidential information to any Individual or Legal Entity that does not promise in writing, before obtaining such access, to maintain its confidential nature, including and without limitation, board members, directors, employees, representatives, and agents of the Party in question.

Clause XII.<br>Representations and Warranties

12.1    The Parties, individually and up to the limit of their respective Committed Capital, without being jointly and severally liable with one another, represent that they are aware of the following:

(i)    <u>Power and Authorization.</u> Each of the Parties has all of the powers and authority needed to enter into this Investment Agreement, comply with their respective obligations, and carry out the operations provided for herein. Execution and submission of this instrument by each of the Parties and the performance of their respective obligations in conformity with the terms herein have been duly authorized by all of the necessary corporate instruments. No other instrument is needed to authorize the execution, submission, and performance of this Investment Agreement by each of the Parties.

(ii)    <u>Lack of Violation, Consents.</u> Neither the Parties executing and submitting this Investment Agreement, nor the Parties' performance of all of their obligations provided herein:

(a)  Shall violate or conflict with any provision of their charter documents;

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[initials]

[initials]

EIG00243727
EIG_KEP_00110514

(b) shall violate, cause default, or in any other way constitute or give rise to default in relation to any contract, commitment, or other significant obligation of which the Parties are part, or by which they are bound;

(c) shall violate or conflict with any regulation, order, law, instruction, legislation, administrative or judicial decision of any court or other governmental or regulatory authority to which the Parties are subject; or

(d) shall require any consent, approval or authorization, notification, filing or record before any person, entity, court, or governmental or regulatory authority, except as provided under this Investment Agreement.

(iii) <u>Nonexistence of Flaws</u>. The Parties recognize that the services assumed are clearly proportional. They are aware of all of the circumstances and rules which guide this legal transaction, and are experienced in the obligations for which they are responsible by virtue of this instrument.

(iv) <u>Third Party Demands.</u> There is not, to their knowledge, any claim filed by a third party, in or out of court, which if admitted could result in the invalidity of any obligation of this Party that has been created pursuant to this instrument, or that would make this Party's performance impossible or very onerous.

(v) <u>Binding Effect</u>. This Investment Agreement has been irrevocably and irreversibly executed. Its obligations are legal, valid, and binding, and shall prevail to the benefit of the Parties and their respective permitted successors and assigns.

Clause XIII.<br>General Provisions.

13.1 <u>Comprehensive Agreement</u>. This Investment Agreement replaces the Investment Agreement entered on May 13, 2011, as amended on April 29, 2012. This Investment Agreement, including all of its appendices, as well as the Sete Brasil Shareholders' Agreement and the FIP Sondas Quotaholders' Agreement, as periodically amended, contain the comprehensive agreement and understanding of the Parties in relation to the

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

EIG00243728
EIG_KEP_00110515

matters addressed herein. The titles of the chapters and clauses have been included exclusively to facilitate their understanding and reference, and should not impact the meaning or interpretation of this instrument, or be used to interpret, define, or limit the scope, extent, intention, or any provision contained herein.

13.2   <u>Notifications.</u> All notifications, consents, requests, and other communications provided for under this Investment Agreement shall be made in writing and shall be delivered in person, sent by registered mail (with acknowledgment of receipt), or by fax or recognized courier service, to the following addresses and directors:

For BTG PACTUAL:
BANCO BTG PACTUAL S.A.
Praia de Botafogo, 501, Torre Corcovado, 5° andar
Rio de Janeiro, RJ
CEP 22250-040
Legal Department
Tel.: +55 (11) 3383-2000
Fax: +55 (11) 3383-2001
Email: bruno.duque@btgpactual.com;
oderval.duarte@btgpactual.com;
lucas.martinelli@btgpactual.com

For Santander:
SANTANDER PARTICIPAÇÕES S.A.
City and State of São Paulo, Avenida Presidente Juscelino Kubitschek, n° 2041 e 2235 –
Bloco A (parte), 16° andar, CEP: 04543-011
Fax: +55 (11) 3553-2999
Email: mhalbuquerque@santander.com.br

For Previ:
CAIXA DE PREVIDÊNCIA DOS FUNCIONÁRIOS DO BANCO DO BRASIL – PREVI
Praia de Botafogo, n° 501, 3° e 4° andares, Botafogo
City and State of Rio de Janeiro
CEP 22.250-040
Fax: +55 (21) 3870-1652
Email: dirin@previ.com.br and gerin@previ.com.br

For Funcef:
FUNDAÇÃO DOS ECONOMIÁRIOS FEDERAIS – FUNCEF
Setor Comercial Norte Quadra 02, Bloco "A", Ed. Corporate Financial Center, 12° e 13°

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal

[initials]

[initials]

[initials]

andares
Brasilia, FD
CEP: 70712-900
Att.: Holdings Division
Tel.: +55 (61) 3532-1772
Fax: +55 (61) 3532-1767
Email: dipar@funcef.com.br; humberto@funcef.com.br; leonardosansivieri@funcef.com.br,
emerson@funcef.com.br

For Petros:
FUNDAÇÃO PETROBRAS DE SEGURIDADE SOCIAL – PETROS
Rua do Ouvidor, n° 98, Centro
City and State of Rio de Janeiro
CEP 20040-030
Telephone: +55 (21) 2506-0514
Email: manuelam@petros.com.br

For Valia:
FUNDAÇÃO VALE DO RIO DOCE DE SEGURIDADE SOCIAL – VALIA
Av. das Américas, n° 4430, 3° andar, Barra da Tijuca
City and State of Rio de Janeiro
CEP: 22640-102
Fax: +55 (21) 3385-2227
Email: eustaquio.lott@vale.com

For Lakeshore:
LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA
Rua São Tomé, 86, 19° andar, Cj. 191, Sala B, Vila Olímpia, São Paulo, SP
CEP: 04551-080
Tel.: (21) 8151-6309
Director: Luiz Fontoura de Oliveira Reis Filho
Email: luiz.reis@lakeshorepartners.com.br

For Fundo Strong
STRONG FUNDO DE INVESTIMENTO EM COTAS DE FUNDOS DE INVESTIMENTO
MULTIMERCADO
Avenida Paulista, 1450, 12° andar
São Paulo, SP, 01310-100
Att.: Mr. Fernando Jorge Buso Gomes
Telephone: +55 (11) 2178-5593/+55(11) 2178-4510

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal [initials]

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[initials]

[initials]

Confidential

EIG00243730
EIG_KEP_00110517

Fax: +55 (11) 2178-5793
Email: fernando@bradescobbi.com.br

For Petrobras:
PETRÓLEO BRASILEIRO S.A. - PETROBRAS
Av. República do Chile, 65/1004
City and State of Rio de Janeiro
CEP 20031-912
Att.: Fábio Barreto Lourenço
Telephone: +55 (21) 3224-3067
Fax: +55 (21) 3224-0860
Email: fabiolourenco@petrobras.com.br

For Luce Drilling:
LUCE VENTURE CAPITAL – DRILLING SERIES
Praia de Botafogo, 228, Ala A – sala 601, Botafogo
Rio de Janeiro, 22250-040
Fax + 55 21 25541071
Tel.: +55 21 2553-4303
Att.: Mr. Aldo Floris
aldofloris@flbinv.com.br

For EIG:
EIG SETE HOLDINGS SÀRL
1700 Pennsylvania Ave, NW
Washington, DC 20006 USA
Tel: (202) 600-3306
Fax: (202) 600-3406
Email: kevin.corrigan@eigpartners.com;
        blair.thomas@eigpartners.com

For Sete Brasil:
SETE BRASIL PARTICIPAÇÕES S.A.
Rua Humaitá 275, sala 1302, Humaitá
Rio de Janeiro, RJ
CEP 22261-005
Att.: João Carlos de Medeiros Ferraz
Tel.: 21 2528 0080
Fax: (21) 2528 0080
Email: joao.ferraz@setebr.com

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

Confidential

EIG00243731
EIG_KEP_00110518

For FIP Sondas, or for the Administrator:
CAIXA ECONÔMICA FEDERAL
Av. Paulista, 2300 - 11° andar
City and State of São Paulo
CEP: 01310-300
Tel: +55 (11) 3555-6405
Fax: +55 (11) 3555-6378
National Management Office for Development of Structured Funds
Email: gedef@caixa.gov.br

13.2.1.  The notifications submitted in accordance with Clause 13.2 shall be considered to have been given: (i) when they are delivered, if they are delivered in person; (ii) when they are received, if they are sent by mail or by a courier service; and (iii) if by fax, on the date stated in the confirmation of receipt issued by the respective receiving fax machine.

13.2.2.  Any Party to the contract may change the address where notices are sent to them by providing written notice to the other Parties to the contract in accordance with Clause 13.2; as concerns this provision, notice shall only be considered to have been received upon acknowledgment of such receipt by each of the other Parties.

13.3    Assignment. With the exception of Permitted Transfers, the Parties may not assign this Investment Agreement in part or in full, in any form, whether directly or indirectly, to any third party that is not a party to this instrument.

13.4    Specific Enforcement. The Parties agree that the allocation of damages, even if due and determined in accordance with the law, shall not constitute appropriate and sufficient compensation for having failed to perform the obligations established in this Investment Agreement. After obtaining acknowledgment of default and of the right to specific enforcement through an arbitration procedure, any of the Parties may claim through judicial means the specific enforcement of an obligation that was not performed by judicial order, in accordance with Articles 461, 466-A, 466-B, 466-C, and 632 et seq. of the Code of Civil Procedure.

13.5    Waiver. Failure of the Parties in any specific case to exercise any rights they have been assured under this Investment Agreement, or that have been granted to them by law, or a failure to apply any of the prescribed penalties, shall not constitute a waiver of exercising such rights in the future, under any circumstances, or

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

[initials]

EIG00243732
EIG_KEP_00110519

a waiver of the future application of such penalties, nor shall it constitute a precedent for future claims relating to the performance of the terms of this Investment Agreement.

13.6    <u>Independence of Clauses.</u> If any provision of this Investment Agreement is considered null, cancellable, invalid, or inoperative, no other provision of this instrument shall be impacted as a result thereof, and must remain fully in effect and current as if such null, cancellable, invalid, or inoperative provision had not been included herein. If any provision of this Investment Agreement is considered null, cancellable, invalid, or inoperative, the Parties agree that this provision must be replaced with an equivalent provision that is not null, cancellable, invalid, or inoperative, so as to preserve, to the extent possible, the intention and objectives sought by the Parties with the provision that is considered null, cancellable, invalid, or inoperative.

13.7    <u>Validity of the Investment Agreement.</u> This Agreement shall take effect on this date and shall continue to be in effect until the occurrence of one of the following events: (i) twenty-year anniversary of the start-date of this Agreement, which may be renewed for an equal period of time, unless otherwise declared by any of the Shareholders one hundred eighty (180) days in advance of the end-date of the effective term; or (ii) if there is an IPO, whichever occurs first. The obligations noted in Clause 9.1 shall survive the term of this Investment Agreement for the period prescribed therein.

13.8    <u>Amendment.</u> This Investment Agreement may not be amended or altered, except by written instrument executed by all Parties.

13.9    <u>Applicable Law.</u> This Investment Agreement shall be governed and shall be interpreted in accordance with the laws of the Federative Republic of Brasil.

13.10   <u>Expenses.</u> Each Party individually must pay its own taxes and fees (including taxes and fees pertaining to attorneys, accountants, financial advisors, and other professionals) that have been incurred in relation to this Investment Agreement and all operations related thereto.

13.11   <u>Amicable Resolution</u>. If there is any Conflict (as defined below), the Parties must make every effort to resolve the Conflict amicably and based on the principle of good faith. To that end, any of the Parties may notify another Party of their intention to commence the procedure described in this Clause, whereby the Parties must meet to try and resolve such Conflict through amicable, good faith discussions.

13.11.1.        If the Parties do not reach a consensus in conformity with

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[initials]

[stamp:] REVIEWED [initials] LEGAL

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] Sete Brasil [initials] Legal [initials]

[initials]

Confidential

EIG00243733
EIG_KEP_00110520

the main section of Clause 13.11 above within thirty (30) days, counted from receipt of notification from any Party, then the Conflict shall be resolved by Arbitration, as described in Clause 13.12.

13.12.   <u>Arbitration</u> – Any disagreements, disputes, questions, arguments, conflicts, issues, or discrepancies of any nature arising from or related to, or regulated by this Agreement ("Conflict"), involving any of the Parties ("Involved Parties"), shall be resolved through arbitration, to be conducted before and administered by the Center for Arbitration and Mediation of the Brazil-Canada Chamber of Commerce ("<u>Chamber</u>").

13.12.1.   The arbitration shall be conducted in accordance with the procedural rules of the Chamber in effect at the time of arbitration ("<u>Chamber Regulations</u>").

13.12.2.   The arbitration shall consist of an arbitral tribunal comprised of three arbitrators, preferably registered with the Brazilian Bar Association ("<u>Arbitral Tribunal</u>").

13.12.3.   Each Involved Party shall select an arbitrator. If there is more than one claimant, they shall mutually agree on the selection of a single arbitrator. The third arbitrator, who shall preside over the Arbitral Tribunal, shall be selected by mutual agreement of the arbitrators chosen by the Involved Parties.

(a)   Any omissions, refusals, disputes, questions, or disagreements as to the selection of the arbitrators by the Involved Parties or the selection of the third arbitrator shall be settled by the Chamber.

(b)   The procedures provided for in this clause shall also apply to cases where the arbitrator is substituted.

13.12.4.   The arbitration shall be conducted in the Municipality of Rio de Janeiro, State of Rio de Janeiro, and the Arbitral Tribunal may designate with due grounds that specific acts be carried out in other locations.

13.12.5.   The arbitration shall be conducted in Portuguese.

13.12.6.   The arbitration shall comply with the law, applying the rules and principles of the legal system of the Federative Republic of Brazil.

13.12.7.   The arbitration shall be concluded within a period of six (6) months, counted from the date it is established, which may be extended on due grounds by the

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezini

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

Confidential

EIG00243734
EIG_KEP_00110521

Arbitral Tribunal.

13.12.8.    The arbitration shall be confidential.

13.12.9.    The Arbitral Tribunal shall allot between the parties, in conformity with the criteria on the losing party, reasonability and proportionality, the payment and reimbursement (i) of the taxes and other amounts due, paid or reimbursed to the Chamber, (ii) the fees and other amounts due, paid or reimbursed to the arbitrators, (iii) fees and other amounts due, paid or reimbursed to experts, translators, interpreters, stenographers, or any other consultants designated by the Arbitral Tribunal, (iv) attorney's fees for the losing party determined by the Arbitral Tribunal, and (v) any indemnification for bad faith litigation. The Arbitral Tribunal shall not issue a judgment against any of the Involved Parties to pay or reimburse (i) contractual fees or any other amounts due, paid or reimbursed by the opposing party to their attorneys, technical assistants, translators, interpreters, or other consultants, and (ii) any other amount due, paid, or reimbursed by the opposing party in relation to the arbitration, for example photocopying, certification, consular certification, and travel costs.

13.12.10.    Arbitration decisions shall be final and definitive, shall not require judicial approval, and may not be appealed, except for requests for correction and clarifications to the Arbitral Tribunal as provided under Art. 30 of Law No. 9307/96 and any action for nullification based on Art. 32 of Law No. 9307/96.

13.12.11.    Before the Arbitral Tribunal is convened, any of the Involved Parties may ask the Judiciary for urgent measures, although any request for urgent measure to the Judiciary shall not affect the existence, validity, and effectiveness of the arbitration agreement, nor shall it constitute a dispensation from the need to submit the Conflict to arbitration. After the Arbitral Tribunal is convened, requests for urgent measures must be sent to said Tribunal. Urgent measures granted by the Judiciary may be reviewed by the Arbitral Tribunal once it has been established.

13.12.12.    For (i) urgent measures and accelerated protection prior to the establishment of the Arbitral Tribunal, (ii) the execution of decisions of the Arbitral Tribunal, including a final decision or any partial decision, (iii) any nullifying action based on Art. 32 of Law No. 9307/96, and (iv) Conflicts which by virtue of the Brazilian legislation could not be submitted to arbitration, the courts of the legal district of Rio de Janeiro, State of Rio de Janeiro are elected as the sole competent venue, waiving all others, however special or privileged they may be.

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal [initials]

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[initials]

[initials]

Confidential

EIG00243735
EIG_KEP_00110522

Having duly agreed, the Parties execute this instrument in fourteen (14) copies of identical content, having a single effect, before two (2) witnesses.

Rio de Janeiro, July 31, 2012

*[REMAINDER OF THE PAGE LEFT INTENTIONALLY BLANK]*

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[initials]

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal

[initials]

[initials]

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

Confidential

EIG00243736
EIG_KEP_00110523

*Signature page of the Investment Agreement entered between Banco BTG Pactual S.A., Santander Participações S.A., Caixa de Previdência dos Funcionários do Banco do Brasil – PREVI, Fundação dos Economiários Federais – FUNCEF, Fundação Petrobras de Seguridade Social – PETROS, Fundação Vale do Rio Doce de Seguridade Social – VALIA, Lakeshore Financial Partners Participações Ltda., Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Petróleo Brasileiro S.A. – Petrobras, Luce Venture Capital – Drilling Series, EIG Sete Holdings SàRL, with consenting participants Sete Brasil Participações S.A. and Caixa Econômica Federal, entered on July 31, 2012.*

BANCO BTG PACTUAL S.A.

[signature] _____       [signature] _____
By: [stamp:] CAMILLA BARROS DONATI       By: [stamp:] FERNANDA GAMA MOREIRA JORGE
Position:            ATTORNEY            Position:              ATTORNEY

SANTANDER PARTICIPAÇÕES S.A.

[signature] _____       [signature] _____
By:                                       By:
Position:                                 Position:

CAIXA DE PREVIDÊNCIA DOS FUNCIONÁRIOS DO BANCO DO BRASIL – PREVI

[signature] _____       _____
By: [stamp:]   Rene Sanda                 By:
Position: Director of Investments         Position:

FUNDAÇÃO DOS ECONOMIÁRIOS FEDERAIS – FUNCEF

[signature] _____       _____
By: [stamp:] Carlos Alberto Caser         By:
Position:    Chief Executive Officer      Position:
             FUNCEF

FUNDAÇÃO PETROBRAS DE SEGURIDADE SOCIAL – PETROS

[signature] _____       _____
By:                                       By:
Position:                                 Position:

FUNDAÇÃO VALE DO RIO DOCE DE SEGURIDADE SOCIAL – VALIA

[signature] _____       [signature] _____
By:                                       By:
Position:                                 Position:

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[initials]

[initials]

EIG00243737
EIG_KEP_00110524

*Signature page of the Investment Agreement entered between Banco BTG Pactual S.A., Santander Participações S.A., Caixa de Previdência dos Funcionários do Banco do Brasil – PREVI, Fundação dos Economiários Federais – FUNCEF, Fundação Petrobras de Seguridade Social – PETROS, Fundação Vale do Rio Doce de Seguridade Social – VALIA, Lakeshore Financial Partners Participações Ltda., Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Petróleo Brasileiro S.A. – Petrobras, Luce Venture Capital – Drilling Series, EIG Sete Holdings SàRL, with consenting participants Sete Brasil Participações S.A. and Caixa Econômica Federal, entered on July 31, 2012.*

## LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA.

[signature]
By:
Position:

## STRONG FUNDO DE INVESTIMENTO EM COTAS DE FUNDOS DE INVESTIMENTO MULTIMERCADO

[signature]
By:
Position:

[signature]
By:
Position:

## PETRÓLEO BRASILEIRO S.A. – PETROBRAS

[signature]
By:
Position:

By:
Position:

## LUCE VENTURE CAPITAL – DRILLING SERIES

[signature]
By:
Position:

By:
Position:

## EIG SETE HOLDINGS SÀRL

[signature]
By: *Maria Virginia* [illegible] *A. Mesquita*
Position: *Attorney*

[signature]
By:
Position:

## FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES SONDAS
On behalf of CAIXA ECONÔMICA FEDERAL

[signature]
By:
Position:

[stamp:] REBECA CORREA BALIAN
EXECUTIVE MANAGER
Reg. 067.287-0
GEDEF.MZ.SP
CAIXA ECONÔMICA FEDERAL

[signature]
By:
Position:

[stamp:] YOSHIO MARCOS HASHIMOTO
National Manager
Reg. 028.253-0
National Manager for Development of
Structured Funds
CAIXA ECONÔMICA FEDERAL

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:]
[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal

[initials]

[initials]

[initials]

EIG00243738
EIG_KEP_00110525

*Signature page of the Investment Agreement entered between Banco BTG Pactual S.A., Santander Participações S.A., Caixa de Previdência dos Funcionários do Banco do Brasil – PREVI, Fundação dos Economiários Federais – FUNCEF, Fundação Petrobras de Seguridade Social – PETROS, Fundação Vale do Rio Doce de Seguridade Social – VALIA, Lakeshore Financial Partners Participações Ltda., Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado Petróleo Brasileiro S.A. – Petrobras, Luce Venture Capital – Drilling Series, EIG Sete Holdings SàRL, with consenting participants Sete Brasil Participações S.A. and Caixa Econômica Federal, entered on July 31, 2012.*

Consenting Participants:

### SETE BRASIL PARTICIPAÇÕES S.A.

[signature]_____          [signature]_____
By:                                          By:
Position:                                    Position:


### CAIXA ECONÔMICO FEDERAL

[signature]_____          [signature]_____
By:      [stamp:] REBECA CORREA BALIAN       By:      [stamp:] YOSHIO MARCOS HASHIMOTO
Position:      EXECUTIVE MANAGER             Position:  National Manager
              Reg. 067.287-0                          Reg. 028.253-0
              GEDEF.MZ.SP                             National Manager for Development of
              CAIXA ECONÔMICA FEDERAL                 Structured Funds
                                                      CAIXA ECONÔMICA FEDERAL

Witnesses:
1.[signature]_____        2.[signature]_____
Name:                                        Name:
Gen Reg.:      [stamp:] Maria Celma Missias   Gen. Reg:      [stamp:] Andréa Ribeiro
Taxpayer Reg. [CPF]:      da Cruz             CPF:      Gen. Reg.: 23.126.628-1 SSP/SP
              Gen. Reg.: 18.373.229-7                   CPF: 1[illegible].219.078-50
              CPF: 053.709.608-60

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal      [initials]

[initials]

[initials]

Confidential

EIG00243739
EIG_KEP_00110526

APPENDIX B

BUSINESS PLAN

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[initials]

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal

[initials]

[initials]

Confidential

EIG00243740
EIG_KEP_00110527

APPENDIX 1.1
DEFINITIONS

| | |
|---|---|
| Shareholder | means the shareholders of Sete Brasil. |
| Original Shareholders | means Petrobras and FIP Sondas, as established by the Original Quotaholders. |
| Shares | means the ordinary shares issued by Sete Brasil, as defined by Clause 2.1 of the Shareholders' Agreement. |
| Shareholders' Agreement | means Sete Brasil's Shareholders' Agreement entered between FIP Sondas and Petrobras. |
| Investment Agreement | means the Investment Agreement, entered between the Original Quotaholders, Petrobras, and FIP Sondas on May 13, 2011, with Sete Brasil and the Administrator as consenting participants, as periodically amended. |
| Quotaholders' Agreement | means the Quotaholders' Agreement entered between the Original Quotaholders, on May 13, 2011, with Caixa Econômica Federal as consenting participant, as periodically amended. |
| Financial Transaction Agreement | means the Financial Transaction Agreement of Sete Brasil Participações S.A. and other Covenants, entered on May 13, 2011, as amended, between Banco Santander (Brasil) S.A., Banco Bradesco BBI S.A., Banco BTG Pactual S.A., Sete Brasil Participações S.A., Fundo de Investimento em Participações Sondas, Caixa de Previdência dos Funcionários do Banco do Brasil – PREVI, Fundação dos Economiários Federais – FUNCEF, Fundação Petrobras de Seguridade Social – PETROS, Fundação Vale do Rio Doce de Seguridade Social – VALIA, Lakeshore Financial Partners Participações Ltda., Petróleo Brasileiro S.A. – PETROBRAS, LuceVenture Capital – Drilling Series, EIG Sete Holdings SàRL. |
| Administrator | means Caixa Econômica Federal, a financial institution having the form of a public company, governed by the bylaws approved by Decree No. 6473, dated June 5, 2008, with registered office in Brasília, Federal District, through the Office of its Vice President of Third-Party Asset Management, domiciled in the City of São Paulo, State of São Paulo, at Avenida Paulista, n° 2.300, 11° andar, registered under CNPJ/MF No. 00.360.305/0001-04. |
| Affiliate | in relation to any Party, means any other Party that is a direct or indirect Subsidiary, under joint Control with, or the parent of the former. The terms "Control," "Subsidiary," and "Parent" have the meanings ascribed to them by Article 115 of the Corporations Act. |
| Appendix – Approved Investments of the Business Plan | means the appendix to the Company's Business Plan, which contains the respective subject matters listed in Clause 9.1 of the Company Shareholders' Agreement. |

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[initials]

[initials]

Confidential

EIG00243741
EIG_KEP_00110528

| | |
|---|---|
| Arbitration | means the mechanism for resolving conflicts, to be conducted and administered by the Center for Arbitration and Mediation of the Brazil-Canada Chamber of Commerce ("CCBC"), in accordance with the Arbitration Rules of the Brazil-Canada Chamber of Commerce in effect at the time of the arbitration proceeding, as well as in accordance with the terms of Law No. 9307, dated September 23, 1996. |
| Arbitrators | means each of the members of the Arbitral Tribunal. |
| Brazil-Canada Chamber of Commerce or CCBC | means the Arbitration and Mediation Center of the Brazil-Canada Chamber of Commerce. |
| Equity Capital | means the equity capital to implement the Project, pursuant to Clause 6.1 of the Investment Agreement. |
| Total Capital | means the total share capital of Sete Brasil, pursuant to Clause 3.1 of the Shareholders' Agreement |
| Capital Call(s) | means each of the capital calls to be made by Sete Brasil's Board of Directors to its Shareholders, pursuant to Clause 3.2 of the Shareholders' Agreement. |
| Arbitration Board | means the board of members in charge of Arbitration. |
| Investment Committee | means the Investment Committee of FIP Sondas. |
| Company | means Sete Brasil Participações S.A. |
| Investee Companies | means Sete International and each of the Project SPEs, in accordance with Clause 7.1 of this Investment Agreement. |
| Compensation for Low Performance | means the compensation of amounts to the SPE, pursuant to Clause 7.5 of this Investment Agreement. |
| Conflict | means any dispute, conflict, matter, or discrepancy of any nature that is related to (i) the existence and/or exercise of any right arising from the Investment Agreement, the Shareholders' Agreement, or the Quotaholders' Agreement, as applicable; and/or (ii) existence and/or occurrence of any damage arising from a failure to perform any obligation provided for under the Investment Agreement, the Shareholders' Agreement, or the Quotaholders' Agreement, as applicable; and/or (iii) the interpretation of the terms and conditions of the Investment Agreement, the Shareholders' Agreement, or the Quotaholders' Agreement, where applicable. |
| Reserve Account for Contingencies or "CRE" | means the account held by Sete International which must be established pursuant to Clause 8.4 of this Investment Agreement. |
| Charter Contracts | means each of the contracts to be entered between each of the SPEs and Petrobras, and/or any third party for the charter of the Rigs. |
| Construction Contracts or EPC Contracts | means the contracts to be entered between each of the SPEs and the Atlântico Sul Shipyard for the construction of the First System Rigs, as well as any others that come to be entered by the SPEs for the construction of the Project Rigs. |

[stamp:]
CAIXA/GEAJU [Legal Consulting Management Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials]
LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials]
PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[initials]

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[initials]

[stamp:]
DIPEC/GECOR/ COCIN
[Oversight and Planning Office/Collections/ Investment Oversight Coordination]
[initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

EIG00243742
EIG_KEP_00110529

| | |
|---|---|
| Asset Maintenance Contracts | means any contracts for the maintenance of Rigs, their equipment, and accessories, to be entered between each of the SPEs and the respective Specialized Operator of each Rig. |
| Service Contracts | means the Rig operating service contracts to be entered between Petrobras and each of the Specialized Operators. |
| Subsidiary(ies) | means any company, joint venture, consortium, or other form of corporation organization in which the Company holds Control, whether individually or shared with third parties, including, without limitation, Sete International and any special purpose entities located in the Netherlands, which are exclusively established to contract for construction, own, and charter drilling rigs for Petrobras or its Affiliates (the "SPEs"), with the term "Control" having the meaning that was ascribed to it by Article 116 of the Corporations Act. |
| Control | has the meaning ascribed to it by Article 116 of the Corporations Act. |
| Contributions Schedule | means the contributions schedule noted in the Business Plan. |
| Payment Schedule | means the schedule approved by the Board of Directors of Sete Brasil to pay for the subscribed capital. |
| Business Day | means any day that is not Saturday or Sunday, or another day when the banks are authorized to close in the City of Rio de Janeiro, State of Rio de Janeiro, and in the City of São Paulo, State of São Paulo. |
| Right of First Refusal | means preferential rights Quotaholders have to acquire Quotas of FIP Sondas, as well as the preferential right Shareholders have to acquire shares of Sete Brasil. |
| Senior Debt | means any senior debt to be assumed by the SPEs to finance construction of the Rigs. |
| Privately Held Pension Fund ("EFPC") | means any privately held pension fund, that has the purpose of establishing and performing employee benefits plans, pursuant to Supplementary Law No. 109/01. |
| Shipbuilding Guarantee Fund ("FGCN") | means the Shipbuilding Guarantee Fund. |
| Financing | means the short and long-term financing needed to implement the Project. |
| FIP Sondas | means the rig investment fund established as a privately held equity fund, pursuant to Instruction No. 391 of the Brazilian Securities Commission with CNPJ/MF No. 12.396.426/0001-95, exclusively targeted at the acquisition of shares issued by Sete Brasil. |
| Performance Fund | means the fund established pursuant to Clause 8.2 of this Investment Agreement. |
| Renewal Fund | means the fund established pursuant to Clause 8.3 of this Investment Agreement. |

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

EIG00243743
EIG_KEP_00110530

| | |
|---|---|
| Economic Group | means the group of companies that are directly or indirectly under the same shareholding control, including parents (or members of the control group), subsidiaries, and affiliates. Furthermore, a given Shareholder/Quotaholder's economic group shall be considered to include the investment funds that are managed in a discretionary manner by that Shareholder/Quotaholder, or by any Affiliate of the aforementioned Shareholder/Quotaholder. The EFPCs and their respective sponsors shall not be considered to belong to the same economic group. |
| IPCA | means the Extended National Consumer Price Index. |
| IPO | means an Initial Public Offering of Shares. |
| Arbitration Law | means Federal Law No. 9307 dated September 23, 1996. |
| Investment Limit | has the meaning ascribed to it in Clause 7.3 of the Quotaholders' Agreement. |
| List of Preselected Companies | means the list of companies with the potential to become Specialized Operators, which includes the following companies: 1. Atwood Oceanics, Inc.; 2. Odebrecht Óleo & Gas Ltda.; 3. Brasdril Sociedade de Perfurações Ltda.; 4. Dolphin Drilling Ltd.; 5. Ensco International Inc.; 6. Etesco Construções e Comércio Ltda.; 7. Frontier Drilling do Brasil Ltda.; 8. Maersk Brasil Brasmar Ltda.; 9. Noble do Brasil S/C Ltda.; 10. Ocean Rig ASA; 11. Odfjell Drilling AS; 12. Pacific Drilling; 13. Petroserv S.A; 14. Pride do Brasil Serviços de Petróleo Ltda; 15. Queiroz Galvão Óleo e Gás S.A.; 16. Saipem do Brasil Ltda.; 17. Seadrill Ltd.; 18. Sevan Marine do Brasil Ltda.; 19. Transocean Brasil Ltda.; and 20. Vantage Drilling Co. |
| Adverse Material Change | means any event or condition of any nature which directly or indirectly has a significant adverse effect on the Project or on the capacity of the Specialized Operator, its parents, or subsidiaries to comply with their obligations assumed under the SPE's share purchase and sale agreement, to be executed between Petrobras (directly or indirectly) and the Specialized Operator ("SPE Share Purchase and Sale Agreement"), the Service Agreement, Asset Maintenance Agreement, shareholders' agreements of the SPEs, or any other document of the Project, or that, furthermore, is directly or indirectly involved in litigation or has defaulted in relation to any Quotaholder of FIP Sondas. |
| Notice of Conflict | means the notification issued by one Party to another demonstrating their intention to commence an Arbitration procedure. |
| New Shares | means any new shares issued by the Company. |
| New Quotas | means any new quotas issued by FIP Sondas. |
| New Investment(s) | has the meaning set forth in item (A) of the Whereas clauses of this Investment Agreement. |
| New Market | means the special new market listing segment of |

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

Confidential

EIG00243744
EIG_KEP_00110531

|  | BM&FBOVESPA S.A. – Stock, Commodities and Futures Exchange. |
| New Systems | jointly refers to the new systems of Rigs to be built by Sete Brasil's subsidiaries to implement the project. |
| Secondary Offer | means the public offer of secondary shares of Sete Brasil. |
| Burden (and variations) | means any and all encumbrances, burdens, rights of retention, collateral, charges, pledges, options, usufruct, restrictive clauses, preferential rights, and any other similar rights or claims of any nature that are related to these rights. |
| Specialized Operators | means each of the companies and their Affiliates that will operate the Rigs. |
| Related Party(ies) | means (i) in relation to a Party (that is not an individual), any of its Affiliates or its respective shareholders/quotaholders, employees, agents, representatives, officers, partners, and/or directors, and (ii) in relation to an individual, (a) their direct ascendants or descendants, spouse, and/or relatives from the first to the fourth degrees, or (b) any of the Affiliates of the parties indicated in letter "(a)" above and the respective shareholders/quotaholders, employees, agents, representatives, officers, partners, and/or directors of all these Affiliates. |
| Individual/Legal Entity | means any individual or legal entity including, but not limited to companies of any type, whether de facto or by law, consortium, partnership, association, joint venture, investment funds and entities which constitute a universal right. |
| Petrobras Business Plan | means Sete Brasil's Business Plan, as periodically amended. |
| Business Plan | means the Business Plan of Sete Brasil, as periodically amended. |
| PNBV | means Petrobras Netherlands B.V. |
| Potential Buyer | means any party interested in acquiring the Quotas of FIP Sondas or the Shares of Sete Brasil, as applicable. |
| First Payment of Shares | means the payment of shares made by the Shareholders in conformity with the increase in share capital resolved at the Company's General Meeting of Shareholders held on April 1, 2011 at 10 A.M., at the issue price of R$1.00 (one real) per share. |
| First Payment of Quotas | means the payment made by the Quotaholders, at the issue price of R$1.00 (one real) per quota. |
| First System | means the first stage of implementing the Project, which envisages the construction of seven (7) Rigs. |
| Project | means the project to provide up to twenty-eight (28) Drilling Rigs with full operating capacity, primarily in the Brazilian Pre-Salt Basin, to be chartered by Petrobras. |

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal [initials]

[stamp:] DIPEC/GECOR/ COCIN [Oversight and Planning Office/Collections/ Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

Confidential

EIG00243745
EIG_KEP_00110532

| | |
|---|---|
| Quotas | means each of the quotas of FIP Sondas. |
| Defaulting Quotaholder | means a Quotaholder that does not pay for the Quotas pursuant to Clause 3.6 of this Investment Agreement. |
| Quotaholders | means the Original Quotaholders and any party that becomes a quotaholder of FIP Sondas. |
| Original Quotaholders | means Banco BTG Pactual S.A., Santander Participações S.A., Caixa de Previdência dos Funcionários do Banco do Brasil – Previ, Fundação dos Economiários Federais – Funcef, Fundação Petrobras de Seguridade Social – Petros, Fundação Vale do Rio Doce de Seguridade Social – Valia, Lakeshore Financial Partners Participações Ltda., Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, and Petróleo Brasileiro S.A. – Petrobras, referred to jointly. |
| Bylaws | means the bylaws of FIP Sondas. |
| Performance Fund Balance | means the amount noted in Clause 8.2.4 of this Investment Agreement |
| Renewal Fund Balance | means the amount noted in Clause 8.3.3 of this Investment Agreement. |
| Sete Brasil | means Sete Brasil Participações S.A. |
| Sete International | means Sete International GMBH, located in Vienna, Austria, at Gierstergasse 6, 1120, registered with the Commercial Register of the Commercial Court of Vienna under FN 348664 t. |
| Rigs | means the drilling rigs specialized in exploring and producing oil and gas to be built for implementing the Project. |
| SPEs | means the Special Purpose Entities, located in the Netherlands, and exclusively established to contract for construction, own, and charter the Rigs. |
| Transfer (and variations) | means the sale, commitment to sell, disposal, encumbrance, assignment, right of possession, granting of option to buy or sell, trade, contribute to the share capital of another company, transfer, or in any form directly or indirectly forfeit ownership, including but not limited to, through corporate restructurings, of any one of the shares directly or indirectly held, at any time by the Shareholders, as well as the rights attributed to these shares. |
| Permitted Transfers | means (i) transfers between Shareholders and (ii) transfers made between companies or investment vehicles belonging to the same Economic Group of the transferring Shareholder. |
| Arbitral Tribunal | means the arbitral tribunal pursuant to Clause 13.12.2 of this Investment Agreement. |

[stamp:] DIPEC/GECOR/COCIN [Oversight and Planning Office/Collections/Investment Oversight Coordination [initials] FUNCEF

[stamp:] PETROS [initials] JUR/CS Maria Cortezzi

[stamp:] BANCO SANTANDER (BRASIL) S/A Cecilia Pizzutti [initials] LEGAL DIVISION

[stamp:] CAIXA/GEAJU [Legal Consulting Management Office] OAP/SP [initials] 156519 Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS [initials] LEGAL INVESTMENT CONSULTING

[stamp:] Felipe de Abreu Cáceres [initials] PREVI/ASJUR [Legal Consulting] Attorney

[stamp:] VIEIRA REZENDE [illegible] E. GUERREIRO Advogados [initials]

[stamp:] GEJUR [Legal Department] [initials] FUNCEF

[stamp:] REVIEWED [initials] LEGAL

[stamp:] Sete Brasil [initials] Legal

[initials]

APPENDIX 3.3

QUOTAHOLDERS' AGREEMENT

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:]
OAP/SP [initials]
Lucia Elena A.F. Bastos

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[initials]

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal

[initials]

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

Confidential

EIG00243747
EIG_KEP_00110534

APPENDIX 7.4
CLAUSES OF THE ASSET MAINTENANCE CONTRACT

"THE OPERATOR shall be liable to the SPE for paying the amount for which it is responsible as a result of any Default of the Operator or failure to perform the obligations prescribed in this CONTRACT, pursuant to the PETROBRAS CONTRACTS.

SPE and SETE INTERNATIONAL shall be guaranteed right of recourse against the OPERATOR if (i) the SPE or SETE INTERNATIONAL becomes obligated to remedy any damage to third parties or to PETROBRAS in relation to the importation, operation, or maintenance of the UNIT, including but not limited to damage related to withdrawal caused by the OPERATOR or due to a spill of petroleum or other oils or residues into the sea, within the limit of US$1,000,000.00 (one million U.S. dollars) imposed on the SPE pursuant to the CHARTER CONTRACT; and (ii) any reduction, disregard, or elimination of the tax benefit for the importation of the UNIT. Such recourse shall be whatever the third party or Petrobras effectively ends up obtaining in or out of court, plus all expenditures involved, such as court costs, attorney's fees, out-of-court costs, etc."

<u>Where:</u>

UNIT: means the drilling Rig owned by the SPE and chartered to Petrobras, its affiliates, or to any company active in the oil sector.

PETROBRAS CONTRACTS: jointly refers to the Charter Contract of the UNIT and to the Operating Service Contract of the UNIT.

OPERATOR: means the SPECIALIZED OPERATOR and/or PNBV, as SPECIALIZED OPERATOR.

[stamp:]
DIPEC/GECOR/
COCIN
[Oversight and
Planning
Office/Collections/
Investment Oversight
Coordination
[initials] FUNCEF

[stamp:] PETROS
[initials] JUR/CS
Maria Cortezzi

[stamp:] BANCO
SANTANDER (BRASIL) S/A
Cecilia Pizzutti [initials]
LEGAL DIVISION

[stamp:]
CAIXA/GEAJU [Legal
Consulting Management
Office]
OAP/SP [initials]
156519
Lucia Elena A.F. Bastos

[stamp:] VALIA-ASLIS
[initials]
LEGAL INVESTMENT
CONSULTING

[stamp:] Felipe de Abreu
Cáceres [initials]
PREVI/ASJUR [Legal
Consulting]
Attorney

[stamp:] VIEIRA REZENDE [illegible] E.
GUERREIRO Advogados
[initials]

[stamp:] GEJUR
[Legal Department]
[initials]
FUNCEF

[stamp:] REVIEWED
[initials]
LEGAL

[stamp:] Sete Brasil
[initials]
Legal

[initials]

[initials]

[initials]

Confidential

EIG00243748
EIG_KEP_00110535

**PROJETO SONDAS**

**SEGUNDO ADITAMENTO AO ACORDO DE INVESTIMENTO**

entre

**BANCO BTG PACTUAL S.A.**

**SANTANDER PARTICIPAÇÕES S.A.**

**CAIXA DE PREVIDÊNCIA DOS FUNCIONÁRIOS DO BANCO DO BRASIL – PREVI**

**FUNDAÇÃO DOS ECONOMIÁRIOS FEDERAIS - FUNCEF**

**FUNDAÇÃO PETROBRAS DE SEGURIDADE SOCIAL - PETROS**

**FUNDAÇÃO VALE DO RIO DOCE DE SEGURIDADE SOCIAL – VALIA**

**FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES SONDAS**

**LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA.**

**PETRÓLEO BRASILEIRO S.A - PETROBRAS,**

**STRONG FUNDO DE INVESTIMENTO EM COTAS DE FUNDOS DE INVESTIMENTO MULTIMERCADO,**

**LUCE VENTURE CAPITAL – DRILLING SERIES,**

**EIG SETE HOLDINGS SARL, e**

como intervenientes-anuentes,

**SETE BRASIL PARTICIPAÇÕES S.A. e**

**CAIXA ECONÔMICA FEDERAL**

**Datado de**
31 de julho de 2012













Confidential

**ACORDO DE INVESTIMENTO**

Este instrumento particular é celebrado em 31 de julho de 2012 de 2012 entre as partes, a saber:

I.     BANCO BTG PACTUAL S.A., instituição financeira domiciliada na Cidade do Rio de Janeiro, Rio de Janeiro, na Praia de Botafogo, 501, Torre Corcovado, 5º andar, CEP 22250-040, inscrita no CNPJ/MF sob o nº 30.306.294/0001-45, neste ato representada em conformidade com seu estatuto social ("BTG Pactual");

II.    SANTANDER PARTICIPAÇÕES S.A. (sub-rogado nos direitos do Banco Santander (Brasil) S.A.) sociedade anônima com sede na Cidade e Estado de São Paulo, na Avenida Presidente Juscelino Kubitschek, nº 2041 e 2235 – Bloco A (parte), 16º andar, CEP: 04543-011, inscrita no CNPJ/MF sob o nº 04.270.778/0001-71,neste ato representada em conformidade com seu estatuto ("Santander");

III.   CAIXA DE PREVIDÊNCIA DOS FUNCIONÁRIOS DO BANCO DO BRASIL – PREVI, entidade de previdência complementar domiciliada na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, na Praia de Botafogo, nº 501, 3º e 4º andares, Botafogo, CEP: 22.250-040, inscrita no CNPJ/MF sob o nº 33.754.482/0001-24, neste ato representada em conformidade com seu estatuto ("Previ");

IV.   FUNDAÇÃO DOS ECONOMIÁRIOS FEDERAIS - FUNCEF, entidade fechada de previdência complementar com personalidade jurídica de direito privado domiciliada na Cidade de Brasília, Distrito Federal, no Setor Comercial Norte Quadra 02, Bloco "A", Ed. Corporate Financial Center, 12º e 13º andares, CEP 70712-900, inscrita no CNPJ/MF sob o nº 00.436.923/0001-90, neste ato representada em conformidade com seu estatuto ("Funcef");



V.    FUNDAÇÃO PETROBRAS DE SEGURIDADE SOCIAL - PETROS, entidade fechada de previdência complementar domiciliada na Cidade e Estado do Rio de Janeiro, na Rua do Ouvidor, nº 98, Centro, CEP 20040-030, inscrita no CNPJ/MF sob o nº 34.053.942/0001-50, neste ato representada em conformidade com seu estatuto ("Petros");

VI.   FUNDAÇÃO VALE DO RIO DOCE DE SEGURIDADE SOCIAL – VALIA, entidade fechada de previdência complementar domiciliada na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, na Av. das Américas, nº 4430, 3º andar, Barra da Tijuca, CEP: 22640-102, inscrita no CNPJ/MF sob o nº 42.271.429/0001-63, neste ato representada em conformidade com seu estatuto ("Valia");






EIG00243708

**EIG_KEP_00110495**

VII.   LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA., sociedade limitada domiciliada na Cidade e Estado de São Paulo, na Rua São Tomé, 86, 19º andar, Cj. 191, Sala B, Vila Olímpia, CEP: 04.551-080, inscrita no CNPJ/MF sob o nº 13.040.317/0001-01, neste ato representada em conformidade com seu contrato social ("Lakeshore");

VIII.  STRONG FUNDO DE INVESTIMENTO EM COTAS DE FUNDOS DE INVESTIMENTO MULTIMERCADO, fundo de investimento em cotas de fundos de investimento, inscrito no CNPJ/MF sob o nº 12.287.654/0001-27, por meio de sua gestora BANCO BRADESCO BBI S.A., domiciliada na Cidade de Osasco, Estado de São Paulo, na Cidade de Deus, Prédio Prata, 4º andar, Vila Yara, Osasco, SP ("Fundo Strong");

IX.    PETRÓLEO BRASILEIRO S.A. – PETROBRAS, sociedade de economia mista, com sede na Av. República do Chile, 65, Cidade do Rio de Janeiro, Estado do Rio de Janeiro, República Federativa do Brasil, inscrita no CNPJ/MF sob o nº 33.000.167/0001-01, neste ato representada em conformidade com seu estatuto ("Petrobras");

X.     LUCE VENTURE CAPITAL – DRILLING SERIES, empresa com sede em 500 Stanton Christina Road, Newark, Delaware, 19713-2107, Estados Unidos da América, neste ato representada em conformidade com seu contrato social ("LuceDrilling");

XI.    EIG SETE HOLDINGS SÀRL, sociedade com sede em 2, boulevard Konrad Adenauer, L-1115, Luxemburgo, neste ato representada em conformidade com seu contrato social ("EIG" ou "Quotista" e, em conjunto com BTG Pactual, Santander, Previ, Funcef, Petros, Valia, Lakeshore, Fundo Strong, Petrobras e LuceDrilling, doravante denominados em conjunto "Quotistas");

XII.   FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES SONDAS, inscrito no CNPJ/MF sob o nº 12.396.426/0001-95 e com registro na Comissão de Valores Mobiliários ("CVM") sob o nº 431-6, neste ato representado por sua administradora, a CAIXA ECONÔMICA FEDERAL, abaixo qualificada ("FIP Sondas" ou "Acionista" e, em conjunto com a Petrobras, "Acionistas" sendo os Acionistas e os Quotistas doravante denominados, em conjunto, como "Partes" e, individualmente, como "Parte"),

e ainda, como intervenientes-anuentes,

XIII.  SETE BRASIL PARTICIPAÇÕES S.A., sociedade por ações, com sede na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, na Rua Humaitá, nº 275, sala 1302, Humaitá, CEP 22261-005, inscrita no CNPJ/MF sob o nº 13.127.015/0001-67, neste ato representada em conformidade com seu estatuto social ("Sete Brasil" ou "Companhia



EIG00243709
EIG_KEP_00110496

XIV.   CAIXA ECONÔMICA FEDERAL, instituição financeira sob a forma de empresa pública, regendo-se pelo estatuto aprovado pelo Decreto nº 6.473, de 5 de junho de 2008, autorizada pela CVM a administrar fundos de investimento e carteiras de valores mobiliários, com sede em Brasília, Distrito Federal, por meio de sua Vice-Presidência de Gestão de Ativos de Terceiros, domiciliada na Cidade de São Paulo, Estado de São Paulo, na Avenida Paulista, nº 2300, 11º andar, inscrita no CNPJ/MF sob o nº 00.360.305/0001-04 ("Administradora");

## CONSIDERANDO QUE:

(A)   as Partes pretendem, por meio da participação direta ou indireta no capital social da Companhia e indireta no capital social das Companhias Investidas (conforme abaixo definido), viabilizar a disponibilização de até 28 (vinte e oito) sondas de perfuração ("Sondas") com capacidade plena de operação principalmente na área do pré-sal brasileiro ("Projeto"), bem como, adicionalmente ao Projeto, viabilizar a execução, pela Companhia, de atividades de aquisição, alienação, construção, operação e/ou fretamento de (i) outras sondas de perfuração com características técnicas semelhantes às previstas para o Projeto, (ii) outros ativos e embarcações de produção de petróleo e gás, (iii) embarcações de apoio marítimo e outros equipamentos utilizados no apoio das atividades de exploração e produção de petróleo e gás, e (iv) estaleiros e outros ativos e unidades industriais relacionados à indústria naval ("Novo(s) Investimento(s)");

(B)   com o objetivo de implementar o Projeto e os Novos Investimentos, as Partes deverão observar o Plano de Negócios, conforme aditado de tempos em tempos;

(C)   a estrutura societária adotada para implementação do Projeto contempla uma sociedade de participação denominada Sete International GmbH., localizada em Viena, na Áustria, com endereço em Schwarzenbergstraße, 1-3/14a, 1010, registrada no Registro Comercial da Corte Comercial de Viena sob o no. FN 348664 t ("Sete International"), subsidiária integral da Sete Brasil, e sócia majoritária de sociedades de propósito específico ("SPEs"), localizadas na Holanda, organizadas exclusivamente para contratarem a construção, serem proprietárias e fretarem as Sondas, inicialmente para a Petrobras ou suas afiliadas;





(D)   as SPEs têm seus capitais sociais representados por ações do tipo Classe "A" e Classe "B";

(E)   todas as ações Classe "A" de cada SPE são detidas pela Sete International;

(F)   as Partes, diretamente ou por meio do FIP Sondas, realizaram e pretendem realizar aportes de capital na Sete Brasil, de forma a viabilizar o Projeto e eventuais Novos











Investimentos, conforme estes venham a ser aprovados;

(G)     a estrutura de capital do Projeto foi concebida sob a modalidade de financiamento de portfólio, de forma a diluir os riscos de construção e operação das Sondas e renovação dos Contratos de Afretamento;

(H)     os fluxos de dividendos de todas as sondas do sistema serão consolidados na Sete International e somente serão distribuídos para a Sete Brasil após a garantia de satisfação de uma lista de prioridades ("*cash flow waterfall*") que será definida em conjunto com os futuros credores;

(I)     no que concerne às EFPC, o Projeto foi concebido com observância as Leis Complementares 108/01 e 109/01 e Resolução CMN 3792/09 e suas alterações posteriores;

(J)     já foi viabilizada, para a Sete Brasil, a contratação das 7 (sete) primeiras Sondas que constituem o primeiro sistema ("Primeiro Sistema") e de outras 21 (vinte e uma) Sondas que constituem o segundo sistema ("Segundo Sistema"), os quais, conjuntamente, compõem o Projeto;

(K)     os Quotistas Originais, os Acionistas Originais, a Sete Brasil e a Administradora celebraram, em 13 de maio de 2011, um Acordo de Investimento, posteriormente aditado em 29 de março de 2012, regulando (i) os termos e condições do investimento e aporte de recursos no Projeto, (ii) os seus respectivos compromissos de investimento no FIP Sondas e na Sete Brasil, para fins de implementação do Primeiro Sistema, e (iii) os termos e condições para captação de recursos próprios com vistas à implementação do Segundo Sistema;

(L)     para fazer frente às necessidades de capital próprio da Companhia, as Partes aprovaram o aumento do limite do capital autorizado da Sete Brasil e a segunda emissão de quotas do FIP Sondas, bem como o ingresso de novos investidores como Quotistas do FIP Sondas; e

(M)     as Partes pretendem aditar e consolidar o Acordo de Investimento, de modo a (i) refletir a adesão dos novos investidores, (ii) implementar alterações necessárias para adaptar o Acordo de Investimento ao atual estágio do Projeto, e (iii) regular os termos e condições para investimento e aporte de recursos na Sete Brasil, para fins de implementação dos Novos Investimentos.

**RESOLVEM AS PARTES**, de mútuo e comum acordo, celebrar o presente Segundo Aditamento ao Acordo de Investimento ("Acordo de Investimento"), optando por aditar e consolidar o Acordo de Investimento, o qual se regerá pelas seguintes cláusulas e condições:






5

Confidential

Cláusula I.

Termos Definidos

1.1.    Definições. Todos os termos iniciados em letras maiúsculas, mas não definidos neste instrumento, terão os significados a eles atribuídos no Anexo 1.1 a este Acordo de Investimento.

Cláusula II.

Objeto

2.1    Objeto. Este Acordo de Investimento e seus anexos têm por objeto regular o investimento no Projeto e nos Novos Investimentos, pelos Quotistas, na qualidade de quotistas do FIP Sondas e deste, juntamente com a Petrobras, na qualidade de Acionistas da Sete Brasil.

Cláusula III.

Investimento no Fundo de Investimento em Participações

3.1    FIP Sondas. Os Quotistas realizarão os investimentos na Sete Brasil de forma indireta, por meio do FIP Sondas, constituído sob a forma de condomínio fechado, nos termos da Instrução nº 391, da Comissão de Valores Mobiliários, datada de 16 de julho de 2003, inscrito no CNPJ/MF sob o nº 12.396.426/0001-95, com seu regulamento devidamente arquivado no 2º Ofício de Registro de Títulos e Documentos da cidade de Brasília, sob o nº 0001041792, em 15 de abril de 2011, administrado e gerido pela Administradora, acima qualificada, cujos recursos serão destinados exclusivamente à aquisição de títulos e valores mobiliários de emissão da Sete Brasil.




3.2    Investimentos. Os Quotistas obrigam-se a realizar seus investimentos, conforme respectivos Compromissos de Investimento, por meio de integralização das quotas do FIP Sondas, cujos recursos serão utilizados pelo FIP Sondas para o cumprimento dos termos e condições previstos neste Acordo de Investimento e no Acordo de Acionistas, observados os termos e condições previstos no Anexo – Investimentos Aprovados do Plano de Negócios.

3.3    Acordo de Quotistas. As relações entre os Quotistas na condução das atividades do FIP Sondas serão regidas pelos termos e condições previstos no Acordo de Quotistas, conforme aditado de tempos em tempos, anexo ao presente como Anexo 3.3e ao Regulamento, observados os termos deste Acordo de Investimento.






6

Confidential

3.4    Compromissos de Investimento. Em 13 de maio de 2011 os Quotistas Originais assinaram os seus respectivos Compromissos de Investimento, cujo valor foi posteriormente aumentado, conforme aditamento datado de 19 de julho de 2011. Nesta data, os Quotistas deverão ter assinado Compromissos de Investimento adicionais, totalizando, juntamente com a Taxa de Ingresso, quando aplicável, os valores descritos abaixo:

| Quotista | Nº de Quotas | Valor Total dos Compromissos de Investimento e Taxa de Ingresso | Participação no FIP Sondas |
|---|---|---|---|
| BTG Pactual | 656.207.552 | R$ 662.305.443 | 14,4853% |
| Santander | 498.015.873 | R$ 500.000.000 | 10,9933% |
| Previ | 180.000.000 | R$ 180.000.000 | 3.9734% |
| Funcef | 870.179.318 | R$ 874.340.753 | 19,2085% |
| Petros | 870.179.318 | R$ 874.340.753 | 19,2085% |
| Valia | 200.000.000 | R$ 200.800.000 | 4,4148% |
| Lakeshore | 4.000.000 | R$ 4.025.066 | 0,0883% |
| Fundo Strong | 250.000.000 | R$ 250.000.000 | 5,5186% |
| Petrobras | 226.508.683 | R$ 227.591.910 | 5% |
| Luce Drilling | 278.048.780 | R$ 285.000.000 | 6,1377% |
| EIG | 497.034.137 | R$ 509.459.990 | 10,9716% |
| Total | 4.530.173.661 | R$ 4.567.863.915 | 100% |



3.4.1. O valor total dos Compromissos de Investimento adicionais, juntamente com as respectivas Taxas de Ingresso, bem como a participação de cada um dos Quotistas no Patrimônio Líquido do FIP Sondas será ajustada, após a 2ª subscrição de quotas e o encerramento da 2ª Emissão Adicional de Quotas do FIP Sondas, conforme previsto na ata da 19ª Assembleia Geral de Quotistas do FIP Sondas, realizada no dia 31de julho de 2012, comprometendo-se as Partes a celebrar aditamento ao presente Acordo, para refletir referidos ajustes.



3.5    Integralização. Os Quotistas obrigam-se a integralizar as respectivas quotas mediante chamadas de capital a serem realizadas pela Administradora, nos termos e até o limite estabelecido na tabela acima; a Administradora solicitará chamadas de capital na medida do necessário para fazer com que a Sete Brasil dê cumprimento ao seu Plano de Negócios, observado o disposto neste Acordo de Investimento, no Acordo de Quotistas e no Acordo de Acionistas, sempre que houver uma Chamada de Capital da Sete Brasil, bem como para pagamento das despesas do FIP Sondas, conforme previsto no Regulamento.











7

Confidential

3.5.1   Caso os Contratos de Afretamento e Contratos de Prestação de Serviços referentes ao Segundo Sistema não sejam celebrados em até 3 (três) meses da data deste Acordo de Investimento, qualquer Chamada de Capital deverá ser realizada, excepcionalmente,mediante aprovação em Assembleia Geral da Companhia com manifestação de votos de Acionistas que representem ao menos 65% do total das ações de emissão da Sete Brasil.

3.5.2   Decorrido o prazo de 6 (seis) meses da data deste Acordo de Investimento, sem que tenham sido celebrados os Contratos de Afretamento e Contratos de Prestação de Serviços para o Segundo Sistema, os Quotistas se reunirão em assembleia para deliberar, mediante voto favorável de 85% das quotas emitidas pelo FIP Sondas, a aprovação de prazo adicional para celebração de referidos contratos.

3.5.3   Caso (i) decorrido o prazo de 6 (seis) meses da data deste Acordo de Investimento os Contratos de Afretamento e Contratos de Prestação de Serviços para o Segundo Sistema não tenham sido celebrados e não ocorra a prorrogação do prazo para celebração dos mesmos mencionado na Cláusula 3.5.2 acima; ou (ii) caso tenham sido celebrados sem observância das condições mínimas previstas no Anexo – Investimentos Aprovados do Plano de Negócios de tal forma que impacte de forma material a implementação do Projeto, os Quotistas se reunirão em Assembleia Geral de Quotistas, no prazo de 2 (dois) Dias Úteis contados do término do prazo mencionado no item (i) desta Cláusula ou da assinatura de qualquer Contrato de Afretamento ou Contrato de Prestação de Serviços sem que tenham sido observadas as condições mínimas do Anexo – Investimentos Aprovados do Plano de Negócios, para deliberar sobre o cancelamento de seus respectivos Compromissos de Investimento e, consequentemente, dos respectivos boletins de subscrição, cujo cancelamento somente não será implementado caso Quotistas representando 94% das quotas emitidas pelo FIP Sondasse oponham.




3.5.3.1.   O cancelamento dos Compromissos de Investimento e respectivos boletins de subscrição deverá contemplar tão somente o valor referente à proporção de capital próprio necessário para a construção das Sondas cujos Contratos de Afretamento e Contratos de Prestação de Serviços não tenham sido celebrados até a data da realização da assembleia mencionada acima ou tenham sido celebrados sem que fossem observadas as condições mínimas do Anexo – Investimentos Aprovados do Plano de Negócios.



3.5.3.2.   Em nenhuma hipótese os Quotistas poderão cancelar seus Compromissos de Investimento em relação aos montantes necessários para o pagamento da proporção de capital próprio relativo a(i) qualquer Sonda do Primeiro Sistema, (ii) Sondas do Segundo Sistema que já possuam Contratos de Afretamento e Contratos de Prestação de Serviço assinados com







EIG00243714

EIG_KEP_00110501

a Petrobras nos prazos e condições aqui previstos,e (iii) sondas de perfuração já contratadas pelas SPEs Urca Drilling B.V e Guarapari Drilling B.V.

3.6     Inadimplemento. O Quotista que não integralizar as quotas nos termos da Cláusula 3.5 acima ficará de pleno direito constituído em mora ("Quotista Inadimplente"), sujeitando-se às penalidades mencionadas no Artigo 45 do Regulamento.

3.7     Novos Investidores. Até a data de realização de uma Oferta Pública Inicial de Ações ("IPO"), qualquer novo investidor realizará seus investimentos prioritariamente por meio da subscrição de quotas do FIP Sondas, observados os termos e condições do Acordo de Quotistas e do Regulamento. Caso o ingresso de novo investidor ocorra mediante subscrição de Ações representativas do capital social da Sete Brasil, deverá ser deliberado e somente será aprovado nos termos do Acordo de Acionistas e do Acordo de Quotistas.

Cláusula IV.
Investimento na Companhia

4.1     Sete Brasil. A Sete Brasil é uma sociedade por ações constituída para deter participação em outras sociedades nacionais ou estrangeiras, na qualidade de acionista, sócia ou quotista, *joint ventures*, parcerias e/ou consórcios, as quais terão como atribuição construir, operar, adquirir, alienar, alugar ou fretar (i) as Sondas e outros ativos e embarcações de exploração e produção de petróleo e gás; (ii) embarcações de apoio marítimo e outros equipamentos utilizados no apoio das atividades de exploração e produção de petróleo e gás, e (iii) estaleiros e outros ativos e unidades industriais relacionados à indústria naval.

4.2     Acordo de Acionistas. As relações entre os Acionistas na condução das atividades da Sete Brasil serão regidas pelo Acordo de Acionistas, conforme aditado de tempos em tempos.

4.3     Investimento na Sete Brasil. Durante a vigência deste Acordo de Investimento, o FIP Sondas e a Petrobras obrigam-se a manter a participação no capital social total da Sete Brasil na proporção de 95% (noventa e cinco por cento) e 5% (cinco por cento), respectivamente.

4.3.1     A Petrobras poderá optar por realizar seus aportes em relação a qualquer aumento de capital da Sete Brasil por meio do FIP Sondas ou diretamente na Sete Brasil, observado, contudo, que a participação total da Petrobras no capital social da Companhia, de forma direta ou indireta (por meio do FIP Sondas), nunca poderá ser superior a 10% (dez por cento).

4.4     Capitalização da Companhia. Observada a proporção mencionada na Cláusula 4.3







EIG00243715
EIG_KEP_00110502

acima, o FIP Sondas e a Petrobras aportarão na Sete Brasil o montante de R$ 7.631.578.947,37 (sete bilhões, seiscentos e trinta e um milhões, quinhentos e setenta e oito mil, novecentas e quarenta e sete reais e trinta e sete centavos) mediante subscrição e integralização de capital adicional na Sete Brasil e emissão de novas ações ordinárias ("Novas Ações"), de acordo com os termos e condições abaixo e do Acordo de Acionistas. O Capital Comprometido dos Acionistas será aportado mediante aumentos do capital social e Chamadas de Capital, na forma do Artigo 6º do Estatuto Social da Companhia, respeitado o cronograma de aportes consolidado ("Cronograma de Aportes") previsto no Anexo - Investimentos Aprovados do Plano de Negócios, nos termos da Cláusula 5.1 abaixo, e observada a proporção de participação detida por cada Acionista no capital social da Companhia ("Capital Comprometido dos Acionistas").

4.5    Subscrições Adicionais. Para fins da capitalização da Companhia mencionada na Cláusula 4.4 acima, os Acionistas comprometem-se a praticar todos e quaisquer atos necessários para exercer seus direitos de preferência, subscrever e integralizar quaisquer aumentos de capital da Companhia, até o limite do Capital Comprometido dos Acionistas. Para tanto, observado o Cronograma de Aportes, no prazo de até 10 (dez) Dias Úteis contados da Reunião do Conselho de Administração que deliberar sobre o respectivo aumento de capital e realização de uma Chamada de Capital, os Acionistas praticarão os seguintes atos:

(i)     assinarão os respectivos Boletins de Subscrição, comprometendo-se, na proporção do aumento de capital, a integralizar as Ações subscritas;

(ii)    farão com que a Sete Brasil registre a emissão e subscrição das Novas Ações em nome dos Acionistas no Livro de Registro de Ações Nominativas da Companhia; e

(iii)   integralizarão o valor correspondente ao capital subscrito na Companhia.



4.6    Inadimplemento. Na hipótese de qualquer Acionista deixar de integralizar Chamadas de Capital de acordo com os termos nelas estabelecidos o Acionista ficará de pleno direito constituído em mora ("Acionista Inadimplente"), sujeitando-se às penalidades mencionadas na Cláusula 3.2.3 do Acordo de Acionistas.



4.7    Direito de Preferência. Exceto em caso de uma Transferência Permitida, os Acionistas se obrigam a não ceder ou transferir, sob qualquer forma ou a qualquer título o direito de preferência para subscrição de Ações da Sete Brasil até o limite do Capital Comprometido.



4.8    Capitalização do FIP Sondas. A Capitalização do FIP Sondas a ser realizada pelos Quotistas estará limitada ao montante assumido por estes, em agregado, conforme respectivos Compromissos de Investimento, adicionado da Taxa de Ingresso, quando aplicável ("Capital Comprometido dos Quotistas").







10

Comprometido dos Quotistas").

## Cláusula V.
### Chamadas de Capital da Sete Brasil e do FIP Sondas

5.1     Condições para Chamadas de Capital da Sete Brasil. Observado o disposto nas Clausulas3.1.1 e 3.2 do Acordo de Acionistas e na Cláusula 5.3 abaixo, as Partes concordam que o Conselho de Administração da Sete Brasil fica desde já autorizado a realizar as Chamadas de Capital em montante superior ou inferior em até 10% (dez por cento) ao previsto para cada Chamada de Capital nos Cronogramas de Aportes do Anexo - Investimentos Aprovados do Plano de Negócios, observado, contudo, que nenhum Acionista será obrigado a aportar qualquer valor acima de sua respectiva proporção no Capital Comprometido dos Acionistas.

5.2     Aportes dos Quotistas. Os Quotistas deverão realizar a integralização de suas Quotas, conforme chamadas de capital realizadas pela Administradora, a qual observará as Chamadas de Capital realizadas pelo Conselho de Administração da Sete Brasil, nos termos da Cláusula 5.1 acima, limitado a suas respectivas proporções no Capital Comprometido dos Quotistas.

5.3     Revisão do Cronograma de Aportes. O Cronograma de Aportes será revisto pelas Partes, observados os termos e condições do Acordo de Acionistas e do Acordo de Quotistas, sempre que necessário para ajustar o Anexo -Investimentos Aprovados do Plano de Negócios. Caso haja ingresso de novos acionistas no capital social da Sete Brasil, as Partes deverão considerar na revisão do Cronograma de Aportes a realização de aportes de capital prioritariamente por tais novos acionistas, até que a relação entre capital comprometido e capital subscrito e integralizado pelos Acionistas Originais e pelos novos acionistas seja equivalente e reflita a participação proporcional de cada um deles no capital subscrito da Sete Brasil.

## Cláusula VI.
### Novos Investimentos da Sete Brasil

6.1     Aprovação de Novos Investimentos da Sete Brasil. Quaisquer Novos Investimentos a serem realizados pela Sete Brasil, deverão obedecer às seguintes regras:




6.1.1. Atividades Previstas no Objeto Social da Companhia. Caso o Novo Investimento compreenda atividades previstas no objeto social da Companhia, tal investimento somente será aprovado pelo Comitê de Investimento mediante voto favorável de membros que representem, no mínimo, 75% (setenta e cinco por cento) das Quotas emitidas pelo FIP Sondas.





EIG00243717
EIG_KEP_00110504

6.1.2. <u>Atividades não Previstas no Objeto Social da Companhia</u>. Caso o Novo Investimento compreenda atividades não previstas no objeto social da Companhia, tal investimento somente será aprovado pelo Comitê de Investimento mediante voto favorável de membros que representem, no mínimo, 94% (noventa e quatro por cento) das Quotas emitidas pelo FIP Sondas, alterando-se o objeto social da Companhia para inclusão da nova atividade.

6.1.3. <u>Captação de Recursos</u>. Caso a Companhia necessite de novos recursos, a Diretoria deverá submeter o novo plano de captação de recursos à aprovação da Assembleia de Acionistas, especificando os valores pretendidos e o uso objetivado. A Diretoria da Sete envidará seus melhores esforços para obter o maior prêmio de entrada possível a ser pago em relação aos investimentos necessários para a implementação de qualquer aumento de capital. Referido prêmio refletirá na Taxa de Ingresso a ser aprovada em Assembleia Geral de Quotistas.

6.2. <u>Aprovação da Emissão de Novas Quotas pelo FIP Sondas</u>. A aprovação de emissão de Novas Quotas observará o disposto no Acordo de Quotistas do FIP Sondas.

6.2.1. Sempre que houver Emissão Adicional de Quotas do Fundo, será cobrada uma Taxa de Ingresso, observados os termos e condições previstos no Regulamento e no Acordo de Quotistas.

6.2.2. A Taxa de Ingresso será cobrada na aquisição de Novas Quotas do FIP Sondas, salvo na hipótese de ingresso de um investidor como acionista direto da Sete Brasil. Não obstante o disposto acima, o valor efetivo da Taxa de Ingresso incidente na aquisição de Novas Quotas do FIP Sondas será apurada nos termos do Regulamento e do Acordo de Quotistas.




6.3. <u>Pagamento de prêmio pela Petrobras</u>. A Petrobras não estará sujeita ao pagamento de qualquer prêmio em relação aos aportes que realizar diretamente no capital social da Sete Brasil para cumprimento da obrigação de manutenção de participação no capital social total da Sete Brasil em 5% (cinco por cento). Qualquer aporte de capital realizado pela Petrobras diretamente na Sete Brasil que exceda o limite previsto de participação de 5% (cinco por cento) acima mencionado estará sujeito ao pagamento de prêmio sempre que esse for exigido dos demais acionistas da Sete Brasil.

Cláusula VII.
<u>Investimentos na Sete International e nas SPEs</u>

EIG00243718

**EIG_KEP_00110505**

7.1    Aquisição da Sete International e Constituição das SPEs. Para a condução e implementação do Projeto, em 1 de abril de 2011, a Sete Brasil comprou a totalidade das ações da Sete International e, em 5 de Maio de 2011 foram constituídas as 7 (sete) SPEs que serão detentoras das Sondas do Primeiro Sistema. Em 19 de março de 2012, foi concluída a constituição das 21 (vinte e uma) SPEs que serão detentoras das Sondas do Segundo Sistema. A Sete Brasil será a todo tempo detentora de 100% (cem por cento) de participação acionária na Sete International, que, por sua vez, deterá ações do tipo Classe "A" emitidas por cada uma das SPEs, representativas de, no mínimo, 70% (setenta por cento) de seu capital social (sendo a Sete International e as SPEs doravante denominadas, em conjunto, como "Companhias Investidas"). As ações Classe "B" das SPEs do Primeiro Sistema serão detidas até a ocorrência do evento mencionado na Cláusula 7.3 abaixo pela Petrobras Netherlands B.V. ("PNBV"). As ações Classe "B" das SPEs do Segundo Sistema serão detidas pelos Operadores Especializados que irão celebrar os Contratos de Prestação de Serviços das SPEs do Segundo Sistema, ou sociedades Afiliadas a tais Operadores Especializados, conforme selecionados a critério da diretoria da Sete Brasil, observada a Lista de Empresas Pré-Selecionadas.

7.2    Aporte de Recursos nas Companhias Investidas. Observado o disposto no Plano de Negócios, os Acionistas farão com que a Sete Brasil aporte os recursos previstos no Cronograma de Aportes da Sete International no prazo de até 10 (dez) Dias Úteis do recebimento dos montantes relacionados às Chamadas de Capital. A Sete Brasil, por sua vez, observado o Cronograma de Aportes de Capital Próprio do Acionista Classe A, fará com que a Sete International efetue os aportes de capital nas SPEs no prazo de até 5 (cinco) Dias Úteis contados do recebimento, pela Sete International, dos montantes decorrentes de um aporte de capital feito pela Sete Brasil.



7.3    Venda das Ações Classe "B". Mediante observância dos termos e condições previstos na Cláusula 7.3.1 abaixo, a PNBV, na qualidade de acionista Classe "B" das SPEs do Primeiro Sistema alienará ações Classe "B" de 5 (cinco) SPEs para acionistas estratégicos, os quais serão Afiliadas dos operadores que celebrarão os Contratos de Prestação de Serviços das SPEs do Primeiro Sistema com a Petrobras. A PNBV permanecerá como acionista Classe "B" em 2 (duas) SPEs do Primeiro Sistema. As Partes desde já concordam com a transferência das ações Classe "B" das SPEs do Primeiro Sistema para os operadores mencionados na Lista de Empresas Pré-Selecionadas (ou para Afiliadas de tais operadores)e farão com que a Sete International renuncie ao seu direito de preferência na aquisição de referidas ações Classe "B", desde que observado o disposto na Clausula 7.3.1 abaixo.



7.3.1    A transferência das ações Classe B pela PNBV para o novo acionista somente ocorrerá após a ocorrência das seguintes condições precedentes, as quais deverão







EIG00243719

EIG_KEP_00110506

obrigatoriamente constar do Contrato de Compra e Venda de Ações da SPE, a ser celebrado com os Operadores Especializados:

(i) o cumprimento satisfatório dos testes de aceitação da Sonda pela Petrobras, pelo Operador Especializado e demais especialistas requeridos (Independent Engineer, Sociedade Classificadora, agentes governamentais, dentre outros),

(ii) o cumprimento satisfatório de todas as obrigações assumidas pelo Operador Especializado no contrato de promessa de compra e venda de ações da SPE, obrigações essas a serem acordadas entre a Petrobras e a Operador, e

(iii) a inexistência de qualquer Mudança Material Adversa em relação ao futuro Operador Especializado, suas controladoras ou controladas.

7.4    Contrato de Manutenção de Ativo. As Partes farão com que cada SPE do Projeto celebre com o respectivo Operador da Sonda um Contrato de Manutenção de Ativo, por meio do qual tal Operador se obrigará à manutenção, conservação e reparo da Sonda, bem como se responsabilizará por todos os danos e prejuízos causados à SPE em decorrência de uma falha no cumprimento das obrigações de manutenção, conservação e reparo da Sonda. As Partes observarão e envidarão os melhores esforços para que o Contrato de Manutenção de Ativos a ser celebrado por cada SPE com o Operador Especializado e/ou PNBV (na qualidade de Operador Especializado) contenha obrigatoriamente as cláusulas mencionadas no Anexo 7.4 deste Acordo de Investimento, exceto se após envidar seus melhores esforços, tais cláusulas não venham a ser aceitas pelos Operadores Especializados e/ou a PNBV (na qualidade de Operador Especializado).

7.5    Compensação por Desempenho Abaixo do Esperado. Caso a qualquer tempo durante a vigência do Contrato de Afretamento das Sondas do Primeiro Sistema, o desempenho do Operador Especializado não seja suficiente para garantir um *uptime* acima de 85% em determinado trimestre, após o primeiro ano da entrada em operação comercial da sonda, conforme termos e condições dos Acordos de Acionistas das SPEs do Primeiro Sistema, de forma que a SPE não receba um valor mínimo de taxa de afretamento, os Acionistas farão com que a Sete International adiante à SPE recursos em montante suficiente para cobrir a falta de caixa ocasionada pelo evento, mediante utilização dos recursos depositados no Fundo de Performance ("Compensação por Baixo Desempenho"). Neste caso, o acionista Classe B ficará obrigado a ressarcir a Sete International pelos valores adiantados à SPE. A Sete International terá direito a uma garantia constituída por um número de ações Classe B cujo valor seja equivalente ao valor de Compensação por Baixo Desempenho e, caso o acionista Classe B não devolva os valores à Sete International, essa irá se compensar mediante a efetiva transferência das ações Classe B, reduzindo a participação do acionista Classe B no capital social da SPE. Não obstante, a presente regra não se aplicará às SPEs cujo operador seja a PNBV ou qualquer outra empresa do Grupo Econômico da Petrobras, que serão regidas pela Cláusula 7.7. abaixo.










EIG00243720

EIG_KEP_00110507

7.6     Opção de Compra das Ações Classe B. Os Acionistas farão com que a Sete International exerça a opção de compra das ações Classe "B" das SPEs do Primeiro Sistema nas seguintes hipóteses: (i) o acionista classe B tenha sua participação diluída para 10% ou menos, (ii) ocorra um evento de Baixo Desempenho por 4 (quatro) trimestres consecutivos ou por 8 (oito) trimestres, não consecutivos, ainda que o Acionista Classe "B" compense a Sete International pela ocorrência do evento; e (iii) em caso de término do Contrato de Prestação de Serviços causado pelo Operador Especializado, qualquer que seja a causa.

7.7     Compensação da PNBV por Baixo Desempenho. Para as duas SPEs do Primeiro Sistema cujo operador será a PNBV, ou qualquer outra empresa do Grupo Econômico da Petrobras, a Compensação por Baixo Desempenho será na forma de multa compensatória, devida à Sete International.

Cláusula VIII.
Fundos e Contas Reservas para Mitigação dos Riscos do Projeto

8.1     Fundos e Contas Reservas. As Partes desde já se comprometem a aprovar a criação e manutenção do Fundo de Performance, Fundo de Renovação e da Conta Reserva de Eventualidades, conforme estas venham a ser exigidas pelos financiadores do Projeto, nos termos e condições mencionados abaixo.

8.2     Fundo de Performance. O fundo de performance, de titularidade da Sete International, será constituído com a finalidade de mitigar o risco operacional e de baixa performance das Sondas caso alguma delas tenha desempenho abaixo do estimado a tal ponto que prejudique a capacidade de qualquer das SPEs de arcar com suas obrigações, especialmente a de Pagamento das Dívidas, sendo permitida a utilização de seus recursos por qualquer das SPEs ("Fundo de Performance"). Os recursos do Fundo de Performance não poderão ser utilizados ou transferidos para outro fundo ou conta de reserva aqui prevista.




8.2.1.  Definições. Para fins de interpretação deste Acordo de Investimento, "Pagamento da Dívida" significa os pagamentos de principal, juros, taxas, impostos, comissões e outros encargos que sejam devidos de tempos em tempos pelas SPEs ou pela Sete International com relação à dívida contratada com o Banco Nacional de Desenvolvimento Econômico e Social – BNDES, entidades de crédito a exportação ("ECAs") e instituições financeiras ("Dívida Sênior").



8.2.2.  Valor. O Fundo de Performance deverá ser criado e mantido para a implementação de todo o Projeto, observado que para a implementação do Primeiro







EIG00243721
EIG_KEP_00110508

Sistema o valor do mesmo será de aproximadamente US$56.000.000,00 (cinquenta e seis milhões de dólares dos Estados Unidos da América).

8.2.3. Constituição. O Fundo de Performance será constituído durante o primeiro ano de operação de cada Sonda através do pagamento de dividendos extraordinários pelas SPEs exclusivamente para a Sete International. Os dividendos extraordinários advirão de receitas iniciais disponíveis principalmente aquelas decorrentes da Taxa de Mobilização, Comissionamento e Pré-operação. O Fundo de Performance será gerido por uma instituição financeira independente de primeira linha, cuja contratação deverá ser aprovada pelo Conselho de Administração da Sete Brasil.

8.2.4. Aplicações Permitidas. Quando o valor estabelecido no Plano de Negócios for alcançado com relação ao Fundo de Performance ("Saldo do Fundo de Performance"), o pagamento de dividendos extraordinários pelas SPEs para a Sete International poderá ser interrompido. O Saldo do Fundo de Performance deverá permanecer a todo tempo investido em aplicações de baixo risco, de curto prazo, alta liquidez e na mesma moeda que o financiamento, por exemplo, dívidas do Governo dos Estados Unidos da América ou dívidas cujos pagamentos de principal e juros são garantidos integralmente pelos Estados Unidos, ou depósitos à vista, depósitos a prazo, certificados de depósito bancário, com vencimento no prazo máximo de seis com classificação de risco "AA+" ou superior pela S&P's ou "Aa1" ou superior pela Moody's ("Aplicações Permitidas").

8.2.5. Recomposição. O Saldo do Fundo de Performance deverá ser recomposto pela Sete International, caso sejam utilizados os recursos ali depositados por qualquer SPE. Em contrapartida à recomposição do Fundo de Performance, a Sete International poderá acionar mecanismos de multa e diluição gradual das ações do acionista Classe "B", conforme previsto nos Acordo de Acionistas das SPEs.



8.2.6. Término. Os recursos do Fundo de Performance não utilizados poderão ser utilizados pela Sete International para distribuição de dividendos aos seus acionistas após o pagamento integral das dívidas sênior de todas as SPEs .



8.3 Fundo de Renovação. O fundo de renovação, de titularidade da Sete International, será constituído para mitigar o risco de não Pagamento da Dívida Sênior de cada SPE, após o término do primeiro termo dos Contratos de Afretamento das Sondas de 10 (dez) anos ("Fundo de Renovação").



8.3.1. Valor. O Fundo de Renovação deverá ser criado e mantido para a implementação de todo o Projeto, observado que para a implementação do Prime





EIG00243722
EIG_KEP_00110509

Sistema o valor do mesmo será de aproximadamente US$117.000.000,00 (cento e dezessete milhões de dólares dos Estados Unidos da América).

8.3.2. <u>Constituição</u>. O Fundo de Renovação será constituído mediante a utilização de parte dos dividendos pagos por todas as SPEs à Sete International, entre o 8º (oitavo) e o 10º (décimo) ano de operação de cada Sonda, mediante o pagamento de US$5.600.000,00 (cinco milhões e seiscentos mil dólares dos Estados Unidos da América) por SPE, por ano. O Fundo de Renovação será gerido por uma instituição financeira independente de primeira linha, cuja contratação deverá ser aprovada pelo Conselho de Administração da Sete Brasil.

8.3.3. <u>Aplicações Permitidas</u>. Quando o valor estabelecido no Plano de Negócios for alcançado (com relação ao Fundo de Renovação ("<u>Saldo do Fundo de Renovação</u>"), o depósito de recursos em referido Fundo de Renovação deverá ser interrompido. Não haverá recomposição do Saldo do Fundo de Renovação, caso sejam utilizados os recursos ali depositados. O Saldo do Fundo de Renovação deverá permanecer investido em Aplicações Permitidas.

8.3.4. <u>Utilização</u>. Os recursos depositados no Fundo de Renovação somente poderão ser utilizados pela Sete International para empréstimo àquelas SPEs cujo Contrato de Afretamento tenha termo inicial de 10 (dez) anos e, caso não haja a renovação de referido contrato ou a celebração de novo Contrato de Afretamento, prejudicando a capacidade da SPE em honrar seus compromissos decorrentes da Dívida Sênior ou, ainda, de arcar com seus custos operacionais.

8.3.5. <u>Limites</u>. A utilização dos recursos do Fundo de Renovação será limitada ao montante equivalente a 6 (seis) meses do serviço da Dívida Sênior por SPE até a utilização total do Saldo do Fundo de Renovação.

8.3.6 <u>Término</u>. Os recursos depositados no Fundo de Renovação somente poderão ser sacados e utilizados pela Sete International após o término do Contrato de Afretamento de todas SPEs cujo contrato contemplava o termo inicial de 10 (dez) anos, respeitando-se o prazo de 6 (seis) meses de utilização do Fundo de Renovação pela última SPE.

8.4    <u>Conta Reserva de Eventualidades</u>. A conta reserva de eventualidades ("<u>CRE</u>"), de titularidade da Sete International, terá por finalidade a prestação de auxílio financeiro, de uma SPE à outra, com o objetivo de mitigar o risco de insuficiência de caixa das SPEs para o cumprimento de suas obrigações decorrentes de despesas e/ou custos extraordinários materiais incorridos pelas SPEs na fase pré-operacional de cada Sonda.










EIG00243723
EIG_KEP_00110510

8.4.1. <u>Valor</u>. A CRE deverá ser criada e mantida para a implementação de todo o Projeto, observado que para a implementação do Primeiro Sistema o valor da mesma será de aproximadamente US$154.000.000,00 (cento e cinquenta e quatro milhões de dólares dos Estados Unidos da América).

8.4.2. <u>Constituição</u>. A CRE será constituída mediante a utilização das disponibilidades das SPEs no momento do seu início de operação, incluindo os valores iniciais a serem pagos pela Petrobras no início da fase operacional do Contrato de Afretamento e Serviço de cada Sonda (Taxa de Mobilização, Comissionamento e Pré-operação), devidamente deduzidos dos pagamentos de suas respectivas despesas e obrigações, incluindo a capitalização do Fundo de Performance, até que a CRE atinja o seu montante pré-determinado, quando as contribuições cessarão. Os recursos necessários para a constituição da CRE serão remetidos por cada SPE no primeiro ano de operação da Sonda. A CRE será gerida e administrada por instituição financeira independente de primeira linha, cuja contratação deverá ser aprovada pelo Conselho de Administração da Sete Brasil.

8.4.3. <u>Utilização</u>. Os recursos depositados no Fundo de Renovação somente poderão ser utilizados pela Sete International em caso de insuficiência de caixa das SPEs, para cobertura das obrigações oriundas de despesas e/ou custos extraordinários materiais incorridos pelas SPEs na fase pré-operacional de cada Sonda, limitado ao valor depositado na CRE.

8.4.4. <u>Recomposição</u>. Não há obrigação de reposição dos valores depositados na CRE. O Saldo da CRE deverá permanecer investido em Aplicações Permitidas.

8.4.5. <u>Término</u>. Após a aceitação final da última Sonda, os recursos da CRE poderão ser sacados e distribuídos pela Sete International para a Sete Brasil.

8.5    Não obstante o previsto nas cláusulas acima, as Partes, a Sete Brasil e seus administradores deverão observar em relação à contratação das instituições financeiras previstas neste Acordo de Investimento, o disposto no Acordo para Realização de Negócios Financeiros.

<u>Cláusula IX.</u>
<u>Compromisso da Petrobras</u>

9.1    <u>Não Competição</u>. A Petrobras se compromete pelo período de 2 (dois) anos contados de 13 de maio de 2011 a não participar, de forma direta ou indireta, no Brasil e no exterior, de









EIG00243724

EIG_KEP_00110511

estrutura semelhante que tenha por objetivo a construção e afretamento de sondas para exploração do pré-sal. O compromisso da Petrobras nos termos desta Cláusula está limitado ao afretamento de até 28 (vinte e oito) Sondas do Projeto, desde que a Sete Brasil diretamente ou indiretamente, através de suas subsidiárias, viabilize para a Petrobras, ou suas subsidiárias, o afretamento de novas sondas por condições comerciais semelhantes às propostas para o Primeiro Sistema. Caso, mesmo havendo oportunidades e condições de mercado, a Sete Brasil opte por não oferecer novas sondas pelas mesmas condições originais, ou ainda, de maneira injustificada, queira apresentar condições majoradas em relação aos parâmetros utilizados para o Primeiro Sistema, ou ainda opte por não contratar novos lotes de sondas para afretamento à Petrobras, o compromisso descrito acima deixará de existir.

Cláusula X.

Compromisso dos Quotistas

10.1   FIP Sondas. Os Quotistas obrigam-se a fazer com que o FIP Sondas cumpra com todos os termos e condições deste Acordo de Investimento e do Acordo de Acionistas da Sete Brasil. Essa obrigação não implica solidariedade dos Quotistas com o FIP Sondas pelas obrigações deste último nos termos deste Acordo de Investimento e do Acordo de Acionistas da Sete Brasil, nem solidariedade entre os Quotistas por suas obrigações individuais nos termos deste Acordo de Investimento ou do Acordo de Acionistas da Sete Brasil.

Cláusula XI.

Compromissos das Partes

11.1   Consentimentos e Esforços Razoáveis. As Partes, individualmente, (i) envidarão seus esforços razoáveis no sentido de obter ou providenciar todas as autorizações e consentimentos que se façam necessários para a consumação dos termos e condições previstos neste Acordo de Investimento; e (ii) cooperarão e envidarão seus esforços razoáveis no sentido de fornecer todas as informações e tomar todas as demais providências necessárias para formalizar todos os registros e solicitações que, nos termos da lei, sejam necessárias ao investimento na Sete Brasil, nos termos deste Acordo de Investimento.

11.2   Notificação ao Sistema Brasileiro de Defesa da Concorrência. A Companhia, em conjunto com qualquer Quotista cujo investimento no Projeto esteja sujeita às regras de notificação obrigatória ao Conselho Administrativo de Defesa Econômica ("CADE"), se comprometem a empregar seus melhores esforços para a obtenção, se assim exigida e no prazo previsto na legislação aplicável, da aprovação do CADE em relação à realização do investimento na Sete Brasil. Todos os custos referentes aos honorários relativos a serviços contratados junto a consultores e advogados, bem como despesas incorridas com relação à eventual aprovação da realização do investimento na Sete Brasil serão suportados









19

EIG00243725

EIG_KEP_00110512

proporcionalmente pelos Quotistas que tenham subscrito a notificação ao CADE e pela Sete Brasil, na medida aplicável. Para este fim, a Sete Brasil, em conjunto com os Quotistas acima mencionados, deverá elaborar todos os documentos necessários para a obtenção da autorização pelo CADE, nos termos da lei aplicável, devendo as Partes colaborar em tudo quanto seja referente à implementação de tais investimentos, incluindo a disponibilização de todas as informações necessárias ao fiel cumprimento desta Cláusula.

11.3    Melhores Esforços. Cada Parte praticará, e envidará seus melhores esforços para praticar ou fazer com que sejam praticados todos os atos, bem como para realizar ou fazer com que sejam realizadas todas as demais operações necessárias, apropriadas ou convenientes para conferir plena eficácia ao presente Acordo de Investimento. Cada Parte negociará, celebrará e entregará todos os documentos razoavelmente necessários e praticará todos os demais atos que venham a ser razoavelmente solicitados pela outra Parte do presente Acordo de Investimento para implementar e levar a efeito os termos e condições do presente Acordo de Investimento. Cada Parte envidará esforços comerciais razoáveis para não praticar qualquer ato, ou deixar de praticar qualquer ato, cuja prática ou omissão, conforme o caso, tenha efeito de frustrar o escopo e a finalidade do presente Acordo de Investimento, efeito este que poderia ser razoavelmente antecipado.

11.4    Informações Confidenciais. Cada uma das Partes manterá o caráter confidencial de quaisquer informações recebidas da Companhia e da outra Parte, inclusive, sem limitação, todos os dados e informações obtidos pela outra Parte em conformidade com o presente Acordo de Investimento e qualquer das operações aqui previstas, informações relativas aos negócios da Companhia que não sejam de conhecimento público, tais como operações, estratégias, produtos, serviços, despesas, receitas, lucratividade, preços, processos internos e listas de clientes, com exceção de contratos celebrados com Partes Relacionadas, acordos e programas de opções de aquisição de ações ou de outros títulos ou valores mobiliários de emissão da Companhia ("Informações Confidenciais").



11.4.1 Vigência da Obrigação de Confidencialidade. A obrigação de manter em sigilo as Informações Confidenciais será vinculante durante todo o prazo de vigência deste Acordo. O Acionista e/ou Quotista que se retirar do quadro societário da Companhia e/ou do FIP Sondas deverá manter em sigilo as Informações Confidenciais pelo período de 5 (cinco) anos contados (i) da data de sua saída da Companhia e/ou do FIP Sondas, ou (ii) da data em que acontecer o IPO, o que ocorrer primeiro, observado que em relação aos contratos operacionais da Companhia, o sigilo sobre as Informações Confidencias deverá ser mantido pelo prazo de 10 (dez) anos contados da mesma forma indicada nesta Cláusula ou pelo prazo estabelecido em referidos contratos, o que for maior.





20



11.4.2 As informações que (a) sejam desenvolvidas de forma independente pelas Partes ou não sujeitas à confidencialidade e recebidas legalmente de outra fonte que tenha o direito de fornecê-las; (b) se tornem disponíveis ao público sem violação do presente Acordo de Investimento pelas Partes; (c) na data de divulgação a uma Parte eram conhecidas pela referida Parte como não estando sujeitas à confidencialidade, conforme comprovado por documentação em seu poder; (d) a Companhia concorde, por escrito, estarem livres de tais restrições; ou (e) devam, atualmente ou no futuro, ser divulgadas conforme prescrito pela lei, regulamentos ou normas governamentais aplicáveis (fato acerca do qual a Parte informada fornecerá imediatamente à Parte informante aviso, concedendo a oportunidade para tentar restringir a divulgação) ou por força de decisão judicial ou administrativa não serão consideradas informações confidenciais para fins do presente Acordo de Investimento.

11.4.3 Nenhuma Parte dará acesso, sem o consentimento prévio da Companhia, e a Companhia não ficará obrigada a dar acesso, às informações confidenciais a qualquer Pessoa que não se obrigue por escrito, antes da obtenção de tal acesso, a manter o caráter confidencial destas, inclusive, sem limitação, conselheiros, diretores, empregados, representantes e agentes da Parte em questão.

Cláusula XII.<br>Declarações e Garantias

12.1   As Partes, individualmente e até o limite de seu respectivo Capital Comprometido, sem que haja solidariedade entre elas, declaram que têm conhecimento do que segue:

(i)   <u>Poder e Autorização</u>.   Cada uma das Partes tem todos os poderes e autoridade necessários para celebrar este Acordo de Investimento, cumprir suas respectivas obrigações e consumar as operações aqui previstas. A celebração e entrega deste instrumento por cada uma das Partes e o cumprimento de suas respectivas obrigações conforme aqui previsto foram devidamente autorizadas por todos os atos societários necessários. Nenhum outro ato é necessário para autorizar a celebração, entrega e cumprimento deste Acordo de Investimento por cada uma das Partes.

(ii)   <u>Ausência de Violação, Consentimentos</u>.Nem a celebração e entrega deste Acordo de Investimento pelas Partes, nem o cumprimento pelas Partes de todas as suas obrigações aqui previstas:

(a)   violarão ou conflitarão com qualquer disposição de seus documentos constitutivos;






21

Confidential

(b) violarão, causarão inadimplemento ou de outra forma constituirão ou darão origem a um inadimplemento com relação a qualquer contrato, compromisso ou outra obrigação relevante dos quais as Partes sejam parte ou pelos quais estejam vinculadas;

(c) violarão ou conflitarão com qualquer regulamento, ordem, lei, instrução, normativo, decisão administrativa ou judicial de qualquer tribunal ou outra autoridade governamental ou regulatória aos quais as Partes estejam sujeitas; ou

(d) requererão qualquer consentimento, aprovação ou autorização, notificação, arquivamento ou registro perante qualquer pessoa, entidade, tribunal ou autoridade governamental ou regulatória, exceto conforme previsto neste Acordo de Investimento.

(iii) Inexistência de Vícios. As prestações assumidas são reconhecidas pelas Partes como manifestamente proporcionais, estas estão cientes de todas as circunstâncias e regras que norteiam o presente negócio jurídico, e detêm experiência nas obrigações que lhe competem por força deste instrumento.

(iv) Demandas de Terceiros. Não existe, que seja de seu conhecimento, qualquer pleito apresentado por terceiro, em juízo ou fora dele, que se procedente possa acarretar a invalidade de qualquer obrigação de tal Parte criada nos termos deste instrumento ou tornar o seu cumprimento por tal Parte, impossível ou muito oneroso.



(v) Efeito Vinculante. Observado o disposto na cláusula 11.9, este Acordo de Investimento é firmado em caráter irrevogável e irretratável, constituindo obrigações legais, válidas e vinculantes, obrigando e vigorando em benefício das Partes e de seus respectivos sucessores e cessionários permitidos.



## Cláusula XIII.
### Disposições Gerais







13.1   Acordo Integral. O presente Acordo de Investimento substitui o Acordo de Investimento celebrado em 13 de maio de 2011, conforme aditado em 29 de abril de 2012. Este Acordo de Investimento, incluindo todos os seus anexos, bem como o Acordo de Acionistas da Sete Brasil e o Acordo de Quotistas do FIP Sondas, conforme aditados de tempos em tempos, contêm o acordo e entendimento integrais das Partes com relação aos





22

EIG00243728
EIG_KEP_00110515

assuntos aqui tratados. Os títulos dos capítulos e cláusulas foram incluídos exclusivamente para conveniência e referência e não devem afetar de forma alguma o significado ou a interpretação deste instrumento ou utilizados para interpretar, definir ou limitar o escopo, extensão, intenção ou qualquer disposição aqui contida.

13.2   Notificações. Todas as notificações, consentimentos, solicitações e outras comunicações previstas neste Acordo de Investimento serão realizadas por escrito e serão entregues em mãos, enviadas por meio de carta registrada (com aviso de recebimento), ou por fax ou serviço de *courier* reconhecido, no endereço e para os responsáveis abaixo indicados:

Para BTG PACTUAL:
BANCO BTG PACTUAL S.A.
Praia de Botafogo, 501, Torre Corcovado, 5º andar
Rio de Janeiro, RJ
CEP 22250-040
Departamento Jurídico
Tel.: +55 (11) 3383-2000
Fac-símile: +55 (11) 3383-2001
E-mail: bruno.duque@btgpactual.com;
oderval.duarte@btgpactual.com;
lucas.martinelli@btgpactual.com

Para Santander:
SANTANDER PARTICIPAÇÕES S.A.
Cidade e Estado de São Paulo, na Avenida Presidente Juscelino Kubitschek, nº 2041 e 2235 – Bloco A (parte), 16º andar, CEP: 04543-011
Fac-símile: +55 (11) 3553-2999
Email: mhalbuquerque@santander.com.br



Para Previ:
CAIXA DE PREVIDÊNCIA DOS FUNCIONÁRIOS DO BANCO DO BRASIL – PREVI
Praia de Botafogo, nº 501, 3º e 4º andares, Botafogo
Cidade e Estado do Rio de Janeiro
CEP 22.250-040
Fac-símile: +55 (21) 3870-1652
E-mail: dirin@previ.com.br e gerin@previ.com.br



Para Funcef:
FUNDAÇÃO DOS ECONOMIÁRIOS FEDERAIS - FUNCEF
Setor Comercial Norte Quadra 02, Bloco "A", Ed. Corporate Financial Center, 12º e 13º








**Confidential**



andares
Brasília, DF
CEP: 70712-900
A/C: Diretoria de Participações
Tel.: +55 (61) 3532-1772
Fac-símile: +55 (61) 3532-1767
E-mail:dipar@funcef.com.br;  humberto@funcef.com.br;  leonardosansivieri@funcef.com.br,
emerson@funcef.com.br

Para Petros:
FUNDAÇÃO PETROBRAS DE SEGURIDADE SOCIAL – PETROS
Rua do Ouvidor, nº 98, Centro
Cidade e Estado do Rio de Janeiro
CEP 20040-030
Telefone: +55 (21) 2506-0514
E-mail: manuelam@petros.com.br

Para Valia:
FUNDAÇÃO VALE DO RIO DOCE DE SEGURIDADE SOCIAL – VALIA
Av. das Américas, nº 4430, 3º andar, Barra da Tijuca
Cidade e Estado do Rio de Janeiro
CEP: 22640-102
Fac-símile: +55 (21) 3385-2227
E-mail: eustaquio.lott@vale.com

Para Lakeshore:
LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA
Rua São Tomé, 86, 19º andar, Cj. 191, Sala B, Vila Olímpia, São Paulo, SP
CEP: 04551-080
Tel.: (21) 8151-6309
Responsável: Luiz Fontoura de Oliveira Reis Filho
Email: luiz.reis@lakeshorepartners.com.br

Para Fundo Strong:
STRONG FUNDO DE INVESTIMENTO EM COTAS DE FUNDOS DE INVESTIMENTO
MULTIMERCADO
Avenida Paulista, 1450, 12º andar
São Paulo, SP, 01310-100
A/C: Sr. Fernando Jorge Buso Gomes
Telefone: +55 (11) 2178-5593/+55(11) 2178-4510





Fac-símile: +55 (11) 2178-5793
E-mail: fernando@bradescobbi.com.br

Para Petrobras:
PETRÓLEO BRASILEIRO S.A. – PETROBRAS
Av. República do Chile, 65/1004
Cidade e Estado do Rio de Janeiro
CEP 20031-912
A/c Fábio Barreto Lourenço
Telefone: +55 (21) 3224-3067
Fac-símile: +55 (21)3224-0860
Email: fabiolourenco@petrobras.com.br

Para a LuceDrilling:
LUCE VENTURE CAPITAL – DRILLING SERIES
Praia de Botafogo, 228, Ala A - sala 601, Botafogo
Rio de Janeiro, 22250-040
Facsimile + 55 21 25541071
Tel +55 21 2553-4303
At: Sr. Aldo Floris
aldofloris@flbinv.com.br

Para a EIG:
EIG SETE HOLDINGS SÀRL
1700 Pennsylvania Ave, NW
Washington, DC 20006 USA
Tel: (202) 600-3306
Fax: (202) 600-3406
E-mail: kevin.corrigan@eigpartners.com
        blair.thomas@eigpartners.com

Para a Sete Brasil
SETE BRASIL PARTICIPAÇÕES S.A.
Rua Humaitá 275, sala 1302, Humaitá
Rio de Janeiro, RJ
CEP 22261-005
A/C: João Carlos de Medeiros Ferraz
Tel.: 21 2528 0080
FAX: (21) 2528 0080
Email: joao.ferraz@setebr.com







25

**Confidential**

Para o FIP Sondas, ou para a Administradora:
CAIXA ECONÔMICA FEDERAL
Av. Paulista, 2300 – 11º andar
Cidade e Estado de São Paulo
CEP: 01310-300
Tel: +55 (11) 3555-6405
FAX.: +55 (11) 3555-6378
Gerencia Nacional de Desenvolvimento de Fundos Estruturados
Email: gedef@caixa.gov.br

13.2.1.   As notificações entregues de acordo com a Cláusula 13.2 serão consideradas dadas: (i) na ocasião em que forem entregues, se entregues pessoalmente; (ii) na ocasião em que forem recebidas, se enviadas por correio ou por serviço de *courier*; e (iii) se por fax, na data constante da confirmação de recebimento da transmissão emitida pelo respectivo aparelho de fax receptor.

13.2.2.   Qualquer Parte contratante poderá mudar o endereço para o qual a notificação deverá ser enviada por notificação escrita às demais Partes contratantes de acordo com esta Cláusula 13.2, sendo que com relação a esta disposição, a notificação será considerada recebida apenas mediante reconhecimento de tal recebimento por cada uma das demais Partes.

13.3   Cessão. Com exceção das Transferências Permitidas, as Partes não poderão ceder este Acordo de Investimento, no todo ou em parte, sob qualquer forma, direta ou indiretamente, a qualquer terceiro que não seja parte deste instrumento.

13.4   Execução Específica. As Partes concordam que a atribuição de perdas e danos, ainda que devidos e determinados de acordo com a lei, não constituirá uma compensação apropriada e suficiente pelo inadimplemento das obrigações estabelecidas neste Acordo de Investimento. Após obtido o reconhecimento do inadimplemento e do direito à execução específica mediante procedimento arbitral, qualquer uma das Partes poderá reivindicar judicialmente a execução específica da obrigação não cumprida mediante ordem judicial, de acordo com os Artigos 461, 466-A, 466-B, 466-C e 632 e seguintes do Código de Processo Civil.

13.5   Renúncia. O não exercício pelas Partes, em qualquer caso específico, de quaisquer direitos que lhes sejam assegurados nos termos do presente Acordo de Investimento, ou que lhes sejam conferidos por lei, ou a não aplicação de quaisquer penalidades previstas, não importará em renúncia ao exercício futuro de tais direitos em quaisquer circunstâncias, ou









Confidential

em renúncia à aplicação futura de tais penalidades, nem constituirá precedente no caso de reivindicações futuras relativas ao cumprimento dos termos deste Acordo de Investimento.

13.6   Independência das Cláusulas. Se qualquer disposição deste Acordo de Investimento for considerada nula, anulável, inválida ou inoperante, nenhuma outra disposição deste instrumento será afetada como consequência, devendo permanecer em total vigor e efeito como se tal disposição nula, anulável, inválida ou inoperante não tivesse sido aqui incluída. Se qualquer disposição deste Acordo de Investimento for considerada nula, anulável, inválida ou inoperante, as Partes concordam que tal disposição deverá ser substituída por uma disposição equivalente que não seja nula, anulável, inválida ou inoperante, de forma a preservar, na medida do possível, a intenção e objetivos pretendidos pelas Partes com tal disposição considerada nula, anulável, inválida ou inoperante.

13.7   Validade do Acordo de Investimento. O presente Acordo entrará em vigor nesta data e continuará em vigor até a ocorrência de um dos seguintes eventos: (i) aniversário de 20 anos da entrada em vigor do presente Acordo, podendo ser renovado por igual período, caso não haja manifestação em contrário de qualquer dos Acionistas com 180 (cento e oitenta) dias de antecedência em relação ao término do prazo de vigência; ou (ii) realização do IPO, o que ocorrer primeiro.As obrigações mencionadas na Cláusula 9.1 sobreviverão ao término deste Acordo de Investimento pelo período ali previsto.

13.8   Alteração. Este Acordo de Investimento não poderá ser modificado ou alterado, exceto por instrumento escrito assinado por todas as Partes.

13.9   Lei Aplicável. Este Acordo de Investimento reger-se-á por e será interpretado de acordo com as leis da República Federativa do Brasil.

13.10   Despesas. Cada Parte individualmente deverá pagar seus próprios tributos e despesas (incluindo tributos e despesas com advogados, contadores, assessores financeiros e outros profissionais) incorridos em relação a este Acordo de Investimento e a todas as operações a ele relacionadas.

13.11   Resolução Amigável. Se houver qualquer Conflito (conforme abaixo definido), as Partes deverão enviar seus melhores esforços para solucionar o Conflito de forma amigável e com fundamento no princípio da boa-fé. Para tal fim, qualquer das Partes poderá notificar a outra de sua intenção de iniciar o procedimento descrito nesta Cláusula, pela qual as Partes deverão se reunir para tentar resolver tal Conflito por meio de discussões amigáveis e de boa fé.

13.11.1.   No caso das Partes não chegarem a um consenso em conformidade com o







EIG00243733
EIG_KEP_00110520

*caput* desta Cláusula 13.11 acima, no prazo de 30 (trinta) dias, contados a partir do recebimento da notificação de qualquer Parte, então o Conflito será solucionado por Arbitragem, conforme descrito na cláusula 13.12.

13.12. <u>Arbitragem</u> - Quaisquer controvérsias, litígios, dúvidas, disputas, conflitos, questões ou discrepâncias de qualquer natureza oriundas ou relacionadas ao, ou reguladas pelo presente Acordo ("<u>Conflito</u>"), envolvendo qualquer das Partes ("<u>Partes Envolvidas</u>"), será resolvido por meio de arbitragem, a ser conduzida perante e administrada pelo Centro de Arbitragem e Mediação da Câmara de Comércio Brasil-Canadá ("<u>Câmara</u>").

13.12.1.   A arbitragem será realizada de acordo com as normas procedimentais da Câmara em vigor no momento da arbitragem ("<u>Regulamento da Câmara</u>").

13.12.2.   A arbitragem caberá a um tribunal arbitral composto por três árbitros, preferencialmente inscritos na Ordem dos Advogados do Brasil ("<u>Tribunal Arbitral</u>").

13.12.3.   Cada Parte Envolvida indicará um árbitro. Havendo mais de um reclamante, todos eles indicarão de comum acordo um único árbitro; havendo mais de um reclamado, todos eles indicarão de comum acordo um único árbitro. O terceiro árbitro, que presidirá o Tribunal Arbitral, será escolhido de comum acordo pelos árbitros indicados pelas Partes Envolvidas.

(a)      Quaisquer omissões, recusas, litígios, dúvidas e faltas de acordo quanto à indicação dos árbitros pelas Partes Envolvidas on à escolha do terceiro árbitro serão dirimidos pela Câmara.

(b)      Os procedimentos previstos na presente cláusula também se aplicarão aos casos de substituição de árbitro.

13.12.4.   A arbitragem será realizada no Município do Rio de Janeiro, Estado do Rio de Janeiro, podendo o Tribunal Arbitral, motivadamente, designar a realização de atos específicos em outras localidades.

13.12.5.   A arbitragem será realizada em língua portuguesa.

13.12.6.   A arbitragem será de direito, aplicando-se as regras e princípios do ordenamento jurídico da República Federativa do Brasil.

13.12.7.   A arbitragem será concluída no prazo de 6 (seis) meses, contados a partir da data de sua instituição, o qual poderá ser prorrogado motivadamente pelo Tribunal





EIG00243734

EIG_KEP_00110521

Arbitral.

13.12. 8.   A arbitragem será sigilosa.

13.12.9.   O Tribunal Arbitral alocará entre as partes, conforme os critérios da sucumbência, razoabilidade e proporcionalidade, o pagamento e o reembolso (i) das taxas e demais valores devidos, pagos ou reembolsados à Câmara, (ii) dos honorários e demais valores devidos, pagos ou reembolsados aos árbitros, (iii) dos honorários e demais valores devidos, pagos ou reembolsados aos peritos, tradutores, intérpretes, estenotipistas e outros auxiliares eventualmente designados pelo Tribunal Arbitral, (iv) dos honorários advocatícios de sucumbência fixados pelo Tribunal Arbitral e (v) de eventual indenização por litigância de má-fé. O Tribunal Arbitral não condenará qualquer das Partes Envolvidas a pagar ou reembolsar (i) honorários contratuais ou qualquer outro valor devido, pago ou reembolsado pela parte contrária a seus advogados, assistentes técnicos, tradutores, intérpretes e outros auxiliares e (ii) qualquer outro valor devido, pago ou reembolsado pela parte contrária com relação à arbitragem, a exemplo de despesas com fotocópias, autenticações, consularizações e viagens.

13.12.10.   As decisões da arbitragem serão finais e definitivas, não se exigindo homologação judicial nem cabendo qualquer recurso contra as mesmas, ressalvados os pedidos de correção e esclarecimentos ao Tribunal Arbitral previstos no art. 30 da Lei nº 9.307/96 e eventual ação anulatória fundada no art. 32 da Lei nº 9.307/96.

13.12.11.   Antes da instalação do Tribunal Arbitral, qualquer das Partes Envolvidas poderá requerer ao Poder Judiciário medidas de urgência, sendo certo que o eventual requerimento de medida de urgência ao Poder Judiciário não afetará a existência, validade e eficácia da convenção de arbitragem, nem representará uma dispensa com relação à necessidade de submissão do Conflito à arbitragem. Após a instalação do Tribunal Arbitral, os requerimentos de medida de urgência deverão ser dirigidos ao Tribunal Arbitral. As medidas de urgência concedidas pelo Poder Judiciário poderão ser revistas pelo Tribunal Arbitral após a sua constituição.




13.12.12.   Para (i) as medidas de urgência e antecipações de tutela anteriores à constituição do Tribunal Arbitral, (ii) a execução das decisões do Tribunal Arbitral, inclusive da sentença final e eventual sentença parcial, (iii) eventual ação anulatória fundada no art. 32 da Lei nº 9.307/96 e (iv) os Conflitos que por força da legislação brasileira não puderem ser submetidas à arbitragem, fica eleito o Foro da Comarca do Rio de Janeiro, Estado do Rio de Janeiro como o único competente, renunciando-se a todos os outros, por mais especiais ou privilegiados que sejam.





EIG00243735
EIG_KEP_00110522

E, por estarem assim justas e contratadas, as Partes assinam o presente instrumento em 14 (quatorze) vias de igual teor e para um só efeito, na presença de 2 (duas) testemunhas.

Rio de Janeiro, 31 de julho de 2012

[*RESTANTE DA PÁGINA INTENCIONALMENTE DEIXADO EM BRANCO*]



30

EIG00243736

EIG_KEP_00110523

*Página de assinaturas do Acordo de Investimento celebrado entre Banco BTG Pactual S.A., Santander Participações S.A., Caixa de Previdência dos Funcionários do Banco do Brasil – PREVI, Fundação dos Economiários Federais – FUNCEF, Fundação Petrobras de Seguridade Social – PETROS, Fundação Vale do Rio Doce de Seguridade Social – VALIA, Lakeshore Financial Partners Participações Ltda., Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, Petróleo Brasileiro S.A. – Petrobras, Luce Venture Capital – Drilling Series, EIG Sete Holdings SàRl, e tendo como intervenientes anuentes Sete Brasil Participações S.A. e Caixa Econômica Federal, em 31 de julho de 2012.*

BANCO BTG PACTUAL S.A.

CAMILLA BARROS DONATI
PROCURADORA

Por:

Cargo:

Por: FERNANDA GAMA MOREIRA JORGE
PROCURADORA

Cargo:

SANTANDER PARTICIPAÇÕES S.A.

Por:

Cargo:

Por:

Cargo:

CAIXA DE PREVIDÊNCIA DOS FUNCIONÁRIOS DO BANCO DO BRASIL – PREVI

Por:

Cargo: Rene Sanda
Diretor de Investimentos

Por:

Cargo:

FUNDAÇÃO DOS ECONOMIÁRIOS FEDERAIS – FUNCEF

Por:

Cargo: Carlos Alberto Caser
Diretor-Presidente
FUNCEF

Por:

Cargo:

FUNDAÇÃO PETROBRAS DE SEGURIDADE SOCIAL – PETROS

Por:

Cargo:

Por:

Cargo:

FUNDAÇÃO VALE DO RIO DOCE DE SEGURIDADE SOCIAL – VALIA

Por:

Cargo:

Por:

Cargo:

31

Confidential

EIG00243737

EIG_KEP_00110524

*Página de assinaturas do Acordo de Investimento celebrado entre Banco BTG Pactual S.A., Santander Participações S.A., Caixa de Previdência dos Funcionários do Banco do Brasil – PREVI, Fundação dos Economiários Federais – FUNCEF, Fundação Petrobras de Seguridade Social – PETROS, Fundação Vale do Rio Doce de Seguridade Social – VALIA, Lakeshore Financial Partners Participações Ltda., Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, Petróleo Brasileiro S.A. – Petrobras, Luce Venture Capital – Drilling Series, EIG Sete Holdings SàRL, e tendo como intervenientes anuentes Sete Brasil Participações S.A. e Caixa Econômica Federal, em 31 de julho de 2012.*

LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA.

Por:

Cargo:

STRONG FUNDO DE INVESTIMENTO EM COTAS DE FUNDOS DE INVESTIMENTO MULTIMERCADO

Por:                                            Por:

Cargo:                                          Cargo:

PETRÓLEO BRASILEIRO S.A. – PETROBRAS

Por:                                            Por:

Cargo:                                          Cargo:

LUCE VENTURE CAPITAL – DRILLING SERIES

Por:                                            Por:

Cargo:                                          Cargo:

EIG SETE HOLDINGS SÀRL

Por: Maria Virginia M. A. Mesquita            Por:

Cargo: Procuradora                             Cargo:

FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES SONDAS

p.CAIXA ECONÔMICA FEDERAL

Por: REBECA CORREA BALIAN                      Por: YOSHIO MARCOS HASHIMOTO
     GERENTE EXECUTIVO                              Gerente Nacional
     MATR. 067 287-0                                Div.Deserv. Fundos Estruturados
Cargo: GEDEP/MZ/SP                             Cargo: RG. 028.253-0
     CAIXA ECONÔMICA FEDERAL                        CAIXA ECONÔMICA FEDERAL

32

Confidential

*Página de assinaturas do Acordo de Investimento celebrado entre Banco BTG Pactual S.A., Santander Participações S.A., Caixa de Previdência dos Funcionários do Banco do Brasil – PREVI, Fundação dos Economiários Federais – FUNCEF, Fundação Petrobras de Seguridade Social – PETROS, Fundação Vale do Rio Doce de Seguridade Social – VALIA, Lakeshore Financial Partners Participações Ltda., Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado, Petróleo Brasileiro S.A. – Petrobras, Luce Venture Capital – Drilling Series, EIG Sete Holdings SàRL, e tendo como intervenientes anuentes Sete Brasil Participações S.A. e Caixa Econômica Federal, em 31 de julho de 2012.*

Intervenientes-anuentes:

SETE BRASIL PARTICIPAÇÕES S.A.

Por:

Cargo:

Por:

Cargo:

CAIXA ECONÔMICA FEDERAL

Por:

Cargo:

REBECA CORREA BALIAN
GERENTE EXECUTIVO
MATR. 067 287-0
GEDEF/MZ/SP
CAIXA ECONÔMICA FEDERAL

Por:

Cargo:

TOSHIO MARCOS HASHIMOTO
Gerente Nacional
Matr. 028.253-0
GN Desenv. Fundos Estruturados
CAIXA ECONÔMICA FEDERAL

Testemunhas:

1.

Nome:

RG:

CPF:

Maria Celma Missias da Cruz
RG. 18.373.229-7
CPF: 053.709.608-60

2.

Nome:

RG:

CPF:

Andréa Ribeiro
RG. 23.128.828-1 SSP/SP
CPF. 168.218.078-50















33

ANEXO B

PLANO DE NEGÓCIOS






34

Confidential

EIG00243740

EIG_KEP_00110527

ANEXO 1.1

TERMOS DEFINIDOS

| | |
|---|---|
| Acionista | significa os acionistas da Sete Brasil. |
| Acionistas Originais | significa a Petrobras e o FIP Sondas, conforme constituído pelos Quotistas Originais. |
| Ações | significa as ações ordinárias de emissão da Sete Brasil, conforme definição da Cláusula 2.1 do Acordo de Acionistas. |
| Acordo de Acionistas | significa Acordo de Acionistas da Sete Brasil celebrado entre o FIP Sondas e a Petrobras. |
| Acordo de Investimento | significa o Acordo de Investimento, celebrado entre os Quotistas Originais, a Petrobras e o FIP Sondas em 13 de Maio de 2011, tendo como intervenientes anuentes a Sete Brasil e a Administradora, conforme aditado de tempos em tempos. |
| Acordo de Quotistas | significa o Acordo de Quotistas celebrado entre os Quotistas Originais, em 13 de Maio de 2011, tendo como interveniente anuente a Caixa Econômica Federal, conforme aditado de tempos em tempos. |
| Acordo para Realização de Negócios Financeiros | Significa o Acordo para Realização de Negócios Financeiros da Sete Brasil Participações S.A. e outras Avenças, celebrado em 13 de maio de 2011, conforme aditado, entre Banco Santander (Brasil) S.A., Banco Bradesco BBI S.A., Banco BTG Pactual S.A., Sete Brasil Participações S.A., Fundo de Investimento em Participações Sondas, Caixa de Previdência dos Funcionários do Banco do Brasil – PREVI, Fundação dos Economiários Federais – FUNCEF, Fundação Petrobras de Seguridade Social – PETROS, Fundação Vale do Rio Doce de Seguridade Social – VALIA, Lakeshore Financial Partners Participações Ltda., Petróleo Brasileiro S.A. – PETROBRAS, LuceVenture Capital –Drilling Series e EIG Sete Holdings SàRL. |
| Administradora | significa a Caixa Econômica Federal, instituição financeira sob a forma de empresa pública, regendo-se pelo estatuto aprovado pelo Decreto nº 6.473, de 5 de junho de 2008, com sede em Brasília, Distrito Federal, por meio de sua Vice-Presidência de Gestão de Ativos de Terceiros, domiciliada na Cidade de São Paulo, Estado de São Paulo, na Avenida Paulista, nº 2.300, 11º andar, inscrita no CNPJ/MF sob o nº 00.360.305/0001-04. |
| Afiliada | significa, com relação a qualquer Pessoa, qualquer outra Pessoa direta ou indiretamente Controlada por, sob Controle comum com ou controladora da primeira. Os termos "Controle", "Controlada" ou "Controladora" têm o significado que lhes é atribuído pelo artigo 115 da Lei das S.A... |
| Anexo – Investimentos Aprovados do Plano de Negócios | significa o anexo ao Plano de Negócios da Companhia, contendo as matérias arroladas na Cláusula 9.1 do Acordo de Acionistas da Companhia. |






35

Confidential

| | |
|---|---|
| Arbitragem | significa o mecanismo para resolução de conflitos, a ser conduzido e administrado pelo Centro de Arbitragem e Mediação da Câmara de Comércio Brasil-Canadá ("CCBC"), de acordo com o Regulamento de Arbitragem da Câmara de Comércio Brasil-Canadá em vigor à época do procedimento arbitral, bem como de acordo com os termos da Lei n°. 9.307, de 23 de setembro de 1996. |
| Árbitros | significa cada um dos membros do Tribunal Arbitral. |
| Câmara de Comércio Brasil-Canadá ou CCBC | significa o Centro de Arbitragem e Mediação da Câmara de Comércio Brasil-Canadá. |
| Capital Próprio | significa o capital próprio para implementação do Projeto, nos termos da Cláusula 6.1 do Acordo de Investimento. |
| Capital Total | significa o capital social total da Sete Brasil, nos termos da Cláusula 3.1 do Acordo de Acionistas. |
| Chamada(s) de Capital | significa cada uma das chamadas de capital a serem realizadas pelo Conselho de Administração da Sete Brasil aos seus Acionistas, nos termos da Cláusula 3.2 do Acordo de Acionistas. |
| Comissão de Arbitragem | significa o colegiado de membros responsáveis pela Arbitragem. |
| Comitê de Investimento | significa o Comitê de Investimento do FIP Sondas. |
| Companhia | Significa Sete Brasil Participações S.A. |
| Companhias Investidas | significa a Sete International e cada uma das SPEs do Projeto, de acordo com a Cláusula 7.1 deste Acordo de Investimento. |
| Compensação por Baixo Desempenho | significa o ressarcimento de valores à SPE, nos termos da Cláusula 7.5deste Acordo de Investimento. |
| Conflito | Significa qualquer disputa, conflito, assunto ou discrepância de qualquer natureza relacionados à (i) existência e/ou exercício de qualquer direito decorrente do Acordo de Investimento, do Acordo de Acionistas ou do Acordo de Quotistas, conforme o caso; e/ou (ii) existência e/ou ocorrência de quaisquer danos decorrentes da inobservância de qualquer obrigação prevista no Acordo de Investimento, no Acordo de Acionistas ou no Acordo de Quotistas, conforme o caso; e/ou (iii) interpretação dos termos e condições do Acordo de Investimento, do Acordo de Acionistas ou do Acordo de Quotistas, conforme o caso. |
| Conta Reserva de Eventualidades ou CRE | significa a conta de titularidade da Sete International que deverá ser estabelecida nos termos da Cláusula 8.4 deste Acordo de Investimento. |
| Contratos de Afretamento | significa cada um dos contratos a serem celebrados entre cada uma das SPEs e a Petrobras e/ou qualquer terceiro para o afretamento das Sondas. |
| Contratos de Construção ou Contratos de EPC | significa os contratos a serem celebrados entre cada uma das SPEs e Estaleiro Atlântico Sul para a construção das Sondas do Primeiro Sistema, bem como quaisquer outros que venham a ser celebrados pelas SPEs para a construção das Sondas do Projeto. |







36

EIG00243742

EIG_KEP_00110529

| | |
|---|---|
| Contratos de Manutenção de Ativo | significa quaisquer contratos de manutenção de Sondas, seus equipamentos e acessórios, a serem celebrados entre cada uma das SPEs e o respectivo Operador Especializado de cada Sonda. |
| Contratos de Prestação de Serviços | significa os contratos para prestação de serviços de operação das Sondas a serem celebrados entre a Petrobras e cada um dos Operadores Especializados. |
| Controlada(s) | significa qualquer sociedade, *joint venture*, consórcio ou outra forma de organização societária na qual a Companhia detenha o Controle, individual ou compartilhado com terceiros, incluindo, sem limitação, a Sete International e quaisquer sociedades de propósito específico, localizadas na Holanda, constituídas exclusivamente para contratarem a construção, serem proprietárias e afretarem sondas de perfuração para a Petrobras ou suas Afiliadas (as "SPEs"), tendo o termo "Controle" o significado que lhe é atribuído pelo artigo 116 da Lei das Sociedades por Ações. |
| Controle | tem o significado que lhe é atribuído pelo artigo 116 da Lei das Sociedades por Ações. |
| Cronograma de Aportes | significa o cronograma de aportes mencionado no Plano de Negócios. |
| Cronograma de Integralização | significa o cronograma aprovado pelo Conselho de Administração da Sete Brasil para a integralização do capital subscrito. |
| Dia Útil | significa qualquer dia que não seja sábado ou domingo ou outro dia em que os bancos estejam autorizados a fechar na cidade do Rio de Janeiro, Estado do Rio de Janeiro e na Cidade de São Paulo, Estado de São Paulo. |
| Direito de Preferência | significa o direito de preferência que assiste aos Quotistas na aquisição de Quotas do FIP Sondas, bem como o direito de preferência dos Acionistas na aquisição de ações da Sete Brasil. |
| Dívida Sênior | significa qualquer dívida sênior a ser contratada pelas SPEs para o financiamento da construção das Sondas. |
| EFPC | significa qualquer entidade fechada de previdência complementar, as quais têm por objetivo principal instituir e executar planos de benefícios de caráter previdenciário, na forma da lei Complementar nº 109/01. |
| FGCN | significa o Fundo Garantidor da Construção Naval. |
| Financiamentos | significa os financiamentos de curto e longo prazo necessários para a implementação do Projeto. |
| FIP Sondas | significa o Fundo de Investimento em Participações Sondas, constituído sob a forma de condomínio fechado, nos termos da instrução nº 391, da Comissão de Valores Mobiliários com o CNPJ/MF sob o nº 12.396.426/0001-95, destinado, exclusivamente, à aquisição de ações de emissão da Sete Brasil. |
| Fundo de Performance | significa o Fundo formado nos termos da Cláusula 8.2 deste Acordo de Investimento. |
| Fundo de Renovação | significa o fundo criado nos termos da Cláusula 8.3 deste Acordo de Investimento. |






EIG00243743
EIG_KEP_00110530

| | |
|---|---|
| Grupo Econômico | Significa o grupo de sociedades que se encontram direta ou indiretamente sob o mesmo controle acionário incluindo sociedades controladoras (ou integrantes de grupo de controle), controladas e coligadas. Ainda, serão considerados como pertencentes ao grupo econômico de um determinado Acionista/Quotista os fundos de investimento que sejam geridos de forma discricionária por tal Acionista/Quotista, ou por qualquer Afiliada do referido Acionista/Quotista. As EFPC e suas respectivas patrocinadoras não serão consideradas integrantes do mesmo grupo econômico. |
| IPCA | significa o Índice Nacional de Preços ao Consumidor Amplo. |
| IPO | significa uma Oferta Pública Inicial de Ações. |
| Lei de Arbitragem | significa a Lei Federal nº 9.307, de 23 de setembro de 1996. |
| Limite de Participação | tem o significado previsto na Cláusula 7.3 do Acordo de Quotistas. |
| Lista de Empresas Pré-Selecionadas | significa a lista de empresas com potencial para se tornarem Operadores Especializados, que inclui as seguintes empresas: 1. Atwood Oceanics, Inc.; 2. Odebrecht Óleo &Gas Ltda.; 3. Brasdril Sociedade de Perfurações Ltda.; 4. Dolphin Drilling Ltd.; 5. Ensco International Inc.; 6. Etesco Construções e Comércio Ltda.; 7. Frontier Drilling do Brasil Ltda.; 8. Maersk Brasil Brasmar Ltda.; 9. Noble do Brasil S/C Ltda.; 10. Ocean Rig ASA; 11. Odfjell Drilling AS; 12. Pacific Drilling; 13. Petroserv S.A; 14. Pride do Brasil Serviços de Petróleo Ltda; 15. Queiroz Galvão Óleo e Gás S.A.; 16. Saipem do Brasil Ltda.; 17. Seadrill Ltd.; 18. Sevan Marine do Brasil Ltda.; 19. Transocean Brasil Ltda.; e 20. Vantage Drilling Co. |
| Mudança Material Adversa | significa a ocorrência de qualquer evento ou condição de qualquer natureza, que tenha, direta ou indiretamente, um efeito adverso relevante no Projeto ou na capacidade do Operador Especializado, suas controladoras ou controladas de cumprir suas obrigações contraídas nos termos do contrato de compra e venda de ações da SPE a ser assinado entre a Petrobras (direta ou indiretamente) e o Operador Especializado ("Contrato de Compra e Venda de Ações da SPE"), do Contrato de Prestação de Serviços, Contrato de Manutenção de Ativo, acordos de acionistas das SPEs ou de qualquer outro documento do Projeto, ou que, ainda, direta ou indiretamente, esteja em litígio judicial ou apresente inadimplemento em relação à qualquer Quotista do FIP Sondas. |
| Notificação de Conflito | significa a notificação emitida por uma Parte à outra demonstrando a intenção de iniciar o procedimento de Arbitragem. |
| Novas Ações | significa quaisquer novas ações de emissão da Companhia. |
| Novas Quotas | significa quaisquer novas quotas de emissão do FIP Sondas. |
| Novo(s) Investimento(s) | tem o significado previsto no item (A) dos *Considerandos* deste Acordo de Investimento. |
| Novo Mercado | significa o segmento especial de listagem do novo mercado da |



38



**Confidential**

|  | BM&FBOVESPA S.A. - Bolsa de Valores, Mercadorias e Futuros. |
|---|---|
| Novos Sistemas | significa uma referência conjunta aos novos sistemas de Sondas a serem construídas pelas subsidiárias da Sete Brasil, para a implementação do Projeto. |
| Oferta Secundária | significa a oferta pública de ações secundária da Sete Brasil. |
| Ônus (e suas variações) | significa todos e quaisquer gravames, ônus, direitos de retenção, direitos reais de garantia, encargos, penhoras, opções, usufruto, cláusulas restritivas, direitos de preferência e quaisquer outros direitos ou reivindicações similares de qualquer natureza relacionados a tais direitos. |
| Operadores Especializados | significa cada uma das empresas e suas Afiliadas que assumirão a operação das Sondas. |
| Parte(s) Relacionada(s) | significa (i) em relação a uma Pessoa (que não uma pessoa física), qualquer de suas Afiliadas ou seus respectivos acionistas/quotistas, empregados, agentes, representantes, comissários, parceiros e/ou administradores, e (ii) em relação a uma pessoa física, (a) seus ascendentes e descendentes em linha direta, cônjuge e/ou parentes de 1º a 4º graus, ou (b) qualquer de suas Afiliadas ou Afiliadas das pessoas indicadas na letra "(a)" acima e os respectivos acionistas/quotistas, empregados, agentes, representantes, comissários, parceiros e/ou administradores de todas estas Afiliadas. |
| Pessoa(s) | significa qualquer pessoa física, jurídica ou entidade não personificada, incluindo, mas sem limitação, sociedades de qualquer tipo, de fato ou de direito, consórcio, parceria, associação, *joint venture*, fundos de investimento e universalidade de direitos. |
| Petrobras | significa Petróleo Brasileiro S.A.- Petrobras |
| Plano de Negócios | significa o Plano de Negócios da Sete Brasil, conforme alterado de tempos em tempos. |
| PNBV | significa a Petrobras Netherlands B.V. |
| Potencial Comprador | significa qualquer interessado em adquirir as Quotas do FIP Sondas ou as Ações da Sete Brasil, conforme o caso. |
| Primeira Integralização de Ações | Significa a integralização de ações realizada pelos Acionistas conforme aumento de capital social deliberado na Assembleia Geral de Acionistas da Companhia realizada em 1 de abril de 2011, às 10 horas, ao preço de emissão de R$1,00 (um real) por ação. |
| Primeira Integralização de Quotas | Significa a integralização de realizada pelos Quotistas, ao preço de emissão de R$1,00 (um real) por quota. |
| Primeiro Sistema | significa a primeira etapa de implementação do Projeto, que contempla construção de 7 (sete) Sondas. |
| Projeto | significa o projeto para a disponibilização de até 28 (vinte e oito) Sondas de perfuração com capacidade plena de operação, principalmente no pré-sal brasileiro a serem afretadas pela Petrobras. |









39

EIG00243745

EIG_KEP_00110532

| | |
|---|---|
| Quotas | significa cada uma das quotas do FIP Sondas. |
| Quotista Inadimplente | significa o Quotista que não integralizar as quotas nos termos da Cláusula 3.6 deste Acordo de Investimento. |
| Quotistas | significa os Quotistas Originais e qualquer parte que venha a se tornar quotista do FIP Sondas. |
| Quotistas Originais | significa o Banco BTG Pactual S.A, Santander Participações S.A., a Caixa de Previdência dos Funcionários do Banco do Brasil – Previ, a Fundação dos Economiários Federais – Funcef, a Fundação Petrobras de Seguridade Social – Petros, a Fundação Vale do Rio Doce de Seguridade Social – Valia, a Lakeshore Financial Partners Participações Ltda., o Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado e a Petróleo Brasileiro S.A. – Petrobras, referidos em conjunto. |
| Regulamento | significa o regulamento do FIP Sondas. |
| Saldo do Fundo de Performance | significa o valor mencionado na Cláusula 8.2.4 deste Acordo de Investimento. |
| Saldo do Fundo de Renovação | significa o valor mencionado na Cláusula 8.3.3 deste Acordo de Investimento. |
| Sete Brasil | significaa Sete Brasil Participações S.A. |
| Sete International | significa a Sete International GMBH, localizada em Viena, na Áustria, com endereço em Gierstergasse 6, 1120, registrada no Registro Comercial da Corte Comercial de Viena sob o no FN 348664 t. |
| Sondas | significa as sondas de perfuração especializadas para exploração e produção de petróleo e gás a serem construídas para a implementação do Projeto. |
| SPEs | significa as Sociedades de Propósito Específico, localizadas na Holanda e constituídas exclusivamente para contratarem a construção, serem proprietárias e afretarem as Sondas. |
| Transferência (e suas variações) | significa a venda, compromisso de venda, alienação, gravame, cessão, direito de posse, concessão de opção de compra ou venda, troca, aporte ao capital social de outra sociedade, transferência ou qualquer outra forma de perda da propriedade, direta ou indiretamente, incluindo, mas sem limitação, por meio de reorganizações societárias, de qualquer uma das ações detidas, direta ou indiretamente, em qualquer ocasião, pelos Acionistas, bem como dos direitos atribuídos a tais ações. |
| Transferências Permitidas | significa (i) transferências entre Acionistas e (ii) as transferências realizadas entre sociedades ou veículos de investimento pertencentes ao mesmo Grupo Econômico do Acionista alienante. |
| Tribunal Arbitral | significa o tribunal arbitral nos termos da Cláusula 13.12.2 desteAcordo de Investimento. |








40

EIG00243746

EIG_KEP_00110533

ANEXO 3.3

ACORDO DE QUOTISTAS



41

Confidential

ANEXO 7.4

CLÁUSULAS DO CONTRATO DE MANUTENÇÃO DE ATIVOS

"O OPERADOR será responsável perante a SPE pelo pagamento do valor que esta for responsabilizada em decorrência de qualquer Falha do Operador ou não observância das obrigações previstas neste CONTRATO, nos termos dos CONTRATOS PETROBRAS.

Será garantido à SPE e a SETE INTERNATIONAL o direito de regresso em face do OPERADOR no caso (i) da SPE ou da SETE INTERNATIONAL vier a ser obrigada a reparar eventual dano a terceiros ou à PETROBRAS relacionado à importação, operação ou manutenção da UNIDADE, incluindo, mas não se limitando a, danos relacionados a rescisão originada pelo OPERADOR ou ao vazamento de petróleo, óleos e outros resíduos no mar, inclusive dentro do limite de US$ 1.000.000,00 (um milhão de dólares norte-americanos) imposto à SPE nos termos do CONTRATO DE AFRETAMENTO; e (ii) de qualquer redução, desconsideração ou supressão do benefício fiscal existente na importação da UNIDADE. Será objeto de regresso o que efetivamente o terceiro ou a Petrobras vier a obter em juízo ou fora dele, acrescido de todos os dispêndios envolvidos, tais como, custas judiciais, honorários advocatícios, custos extrajudiciais, dentre outros."

Onde:

UNIDADE: significa a Sonda de propriedade da SPE e afretada à Petrobras, suas afiliadas ou a qualquer empresa que atue no setor de petróleo.

CONTRATOS PETROBRAS: significa uma referência conjunta ao Contrato de Afretamento da UNIDADE e ao Contrato de Prestação de Serviços de Operação da UNIDADE.

OPERADOR: significa o OPERADOR ESPECIALIZADO e/ou a PNBV, na qualidade de OPERADOR ESPECIALIZADO.





42

Confidential

EIG00243748
EIG_KEP_00110535