# EXHIBIT 66

# AGENCY AGREEMENT

This Agency Agreement ("**Agreement**") is effective as of the November 30, 2011, by and between:

**FERNVALE PTE. LTD.**, a company organized and existing under the laws of the Republic of Singapore, having its mailing address at 50 Gul Road, Singapore 629351 (hereinafter collectively referred to as "**Principal**") of the one part; and

**EAGLE DO BRASIL LTDA.**, a company organised and existing under the laws of the Federative Republic of Brazil and having its principal office at Rua da Assembleia 10/2008, CEP 20011-000, Rio de Janeiro, RJ, Brazil (hereinafter referred to as "**Agent**") of the other part

(each party shall be referred to as a "**Party**" and both parties shall be referred to as the "**Parties**").

I.      WHEREAS the Agent has been assisting and supporting the Principal in discussions and negotiations with representatives of Sete Brasil Participações S.A. ("**Sete Brasil**") for contracts for the engineering, procurement and construction by the Principal of up to six (6) drilling rig units ("**DRUs**", each a "**DRU**") for affiliate(s) of Sete Brasil.

II.     WHEREAS, the Principal wishes to formalize the appointment of the Agent as its agent for and in respect of the EPC Contracts for the DRUs and the Agent wishes to accept such appointment based upon terms and conditions as set forth in this Agreement.

NOW, THEREFORE, for and in consideration of the premises and the mutual benefits, covenants and obligations recited hereinafter, the sufficiency of which is hereby acknowledged, the Principal and the Agent hereby agree as follows:

## 1. BUSINESS

The Agent will continue to use its best endeavors to obtain for the Principal contracts for the engineering, procurement and construction of up to six (6) DRUs for the Principal ("**EPC Contracts**", each an "**EPC Contract**") for affiliate(s) of Sete Brasil ("**Customers**", each a "**Customer**"), and to promote the interest and goodwill of the Principal with the Customers/Sete Brasil and the settlement of invoices submitted by the Principal to the Customers for the work done.

## 2. PERIOD OF AGENCY

This Agreement shall come into force from the date hereof until the completion or termination of all rights and obligations under the respective EPC Contracts.

1

KEPPEL00045252

## 3.  COMMISSION

In the event (and only in the event) that the EPC Contract is entered into between the Principal and a Customer for the engineering, procurement and construction of one (1) DRU by the Principal for the Customer, then subject to the terms appearing hereafter, the Agent shall be entitled to a commission ("**Commission**") of 0.5% of the contract price paid to the Contractor under the EPC Contract ("**Contract Price**"). Upon the execution of each EPC Contract, the Principal and Agent shall execute a confirmation of the eligibility of the Agent to Commission under such EPC Contract in the form attached as Exhibit 1.

The Commission shall be payable in Reais (R$) only and for purposes of calculating the Commission, that portion of the Contract Price that is payable to the Principal in United States Dollars (US$) under the EPC Contract shall be converted into Reais (R$) based on the Brazilian Central Bank exchange rate for US$ prevailing as of the 3rd day preceding payment of such Commission.

The Commission shall be payable in proportion to the progress payments of the Contract Price received by the Principal under the EPC Contract.

*Illustration*

---

Assume:

- Contractor received from the Customer the following amounts (including escalations) in respect of an instalment of the EPC Contract:

  - US$10,000,000 in US$
  - US$10,000,000 in R$ at the rate of R$1.56: US$1 i.e. R$15,600,000

- Brazilian Central Bank Exchange Rate for US$ as at the 3rd day preceding payment of the Commission is R$1.95 to US$1.

Commission payable to Agent will accordingly be:

(0.5% x 10,000,000 x R$1.95) + (0.5% x R$15,600,000)

= R$175,500

---

Except for payment actually falling due under this Agreement, no fee, compensation remuneration, costs, expenses and payments whatsoever and howsoever called, including any claim based on a *quantum meruit*, shall be payable to the Agent and no claims for such payments shall be made against the Principal, its parent, affiliates and related companies at all tiers, including Keppel FELS Brasil S.A. and Estaleiro BrasFELS Ltda (collectively, "**Principal Group**"). For the avoidance of doubt, all payments made to the Agent under this Agreement shall be deemed to include any taxes payable in respect of payment of such nature. Any taxes that may be imposed

2

KEPPEL00045253

for payment due to the Agent under this Agreement may be withheld or deducted from the payment.

## 4.   REIMBURSEMENT OF EXPENSES

The Agent will be responsible at all the times for all office expenses incurred for salaries, wages, traveling, entertaining, cables, telexes, postage, telephone and similar items. Any specific out of pocket expense that the Agent may incur that the Agent feels should be reimbursed by the Principals, e.g. project overseas trips, special project expenses and others, shall first be approved by the Principal before such expense are incurred by the Agent.

## 5.   OTHER ASSISTANCE

As part and parcel of this Agreement, the Agent undertakes to continue to provide to Principal, when requested by Principal, all necessary assistance in connection with any issue arising from IVESA/ Polipar, BNDES and any other agencies and entities to ensure the smooth running of the BrasFELS shipyard and the execution/performance of the EPC Contract. It is understood that such assistance shall be provided to the Principal at no additional cost.

## 6.   TERMINATION

Should either of the Parties be or become insolvent or should violate any of the material terms, provision or conditions of this Agreement (the Party in default), this Agreement may  be terminated forthwith by the other Party by notice in writing to the party in the default. In such event of termination, each Party shall pursue its remedy for such termination as allowed by law.

Further, should the Agent not be able to perform the obligations as provide for this Agreement, then this Agreement shall terminate.

Further, should Zwi Skornicki not be able to perform the obligations of the Agent, this Agreement may be terminated by the Principal by notice in writing.

## 7.   CONFIDENTIALITY

The Agent recognizes that the Principal Group are owners of certain trade and service marks and names which apply to and/or used in connection with their products, services and business, and this Agreement in no way assigns, transfers or conveys unto the Agent any right in or to said marks and names, or any right to any use thereof, except to the extent that the Agent may be permitted to use said trade/service marks or names in connection with this Agreement, or as directed in writing by the Principal.

The Agent further recognizes that it may come into the possession of information, know-how or data of various kinds pertaining to members of the Principal Group, their products, service and business, which may be of a confidential and/or proprietary nature. The Agent and its principal, Zwi Skornicki, agrees not to disclose such confidential/and or proprietary information during the life of this

3

KEPPEL00045254

Agreement and for five (5) years following the termination hereof. In the event that the Agent is in doubt as to whether particular information is deemed to be confidential and/or proprietary, it shall make specific inquiry of the Principal before making any disclosure to any third party.

## 8.  ANTI-BRIBERY & CORRUPTION

The Agent represents warrants and agrees that it has not made and shall not make, either directly or indirectly, any improper payment of money or anything of value to an Official in connection with the EPC Contract, whether before or after the signing of the EPC Contract.

For purposes of this clause, "**Official**" means:

(a)  any officer or employee of any government or any department, agency or instrumentality thereof, or any person acting in an official capacity on behalf of any such government, department, agency or instrumentality;

(b)  any political party;

(c)  any official of a political party;

(d)  any candidate for political office; or

(e)  any officer or employee of a public international organization such as the United Nations.

Without limiting the generality of the aforegoing, and in recognition of the principles of the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions which entered into force on February 15, 1999, the United States Foreign Corrupt Practices Act, the United Kingdom Bribery Act 2010, the Singapore Prevention of Corruption Act 2010, each as may be amended from time to time, and any other applicable laws, regulations, codes and sanctions relating to anti-bribery or anti-corruption, similar international conventions and national laws, the Agent warrants that it will not, directly or indirectly, in connection with the EPC Contract and the matters resulting therefrom, offer, pay, promise to pay or authorize the giving of money or anything of value to an Official, or to any other person, while knowing or being aware that all or a portion of such money or thing of value will be offered, given or promised, directly or indirectly, to an Official, for the purpose of improperly influencing the act, decision or omission of such Official to obtain or retain business related to this Agreement, to direct business related to the EPC Contract to any person, or to obtain any improper advantage or benefit.

Notwithstanding any other provision of this Agreement, the Principal shall have the right to terminate this Agreement immediately in the event of Agent's failure to comply with any of the foregoing provisions. In the event of termination: (a) the Principal shall have a right of action against the Agent for the amount of any monetary payment or thing of value made or given by the Agent in breach of any of the provisions of this clause; (b) all obligations by the Principal to pay the Agent's Commission shall cease forthwith; and (c) Contractor shall immediately return to the Principal all Commission payments arising from any transaction in which there was a violation of this clause.

4

KEPPEL00045255

No director, employee or agent of the Agent shall give to or receive from any director, employee, representative or agent of the Principal Group any commission, fee, rebate, or any gift or entertainment of significant cost or value in connection with this Agreement or the EPC Contract, or enter into any business arrangement with any director, employee, representative or agent of: (a) any member of the Principal Group, without prior written consent of the Principal or (b) the Customer or any affiliate of Customer, without prior written consent of Customer. The Agent shall promptly notify the Principal of any violation of this clause and any consideration received as a result of such violation shall be paid over or credited to the Principal or the Customer, as applicable. Additionally, if any violation of this clause occurring prior to the date of this Agreement resulted directly or indirectly in the Principal's consent to enter into this Agreement with the Agent, the Principal may, at its sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to the Agent whatsoever for any work done after the date of termination. If applicable, the Agent shall reimburse the Principal for payments already made under this Agreement.

The Agent shall defend and indemnify the Principal against all claims, damages and costs (including any legal and other fees and expenses incurred in defense thereof) resulting from the Agent's failure to comply with this clause.

## 9.  INDEPENDENT CONTRACTOR

The Agent shall at all times act as and hold itself out as an independent entity.  The Agent and the Principal hereby agree that neither this Agreement nor any activity undertaken in accordance with it shall create any other relationship between the parties. Both parties are acting as principals under this Agreement, and the Agent is not granted any right or authority to assume or create, in any manner whatsoever, any obligation or responsibility for or on behalf of the Principal, or otherwise to bind the Principal or to use the Principal's name other than as may expressly be authorized in writing by the Principal.

## 10. ENTIRE AGREEMENT

The aforegoing terms and conditions represent the entire agreement between the Principal and the Agent with respect to the subject matter. All other prior agreements, proposals and/or understandings with respect to the subject matter of this Agreement between the Principal and the Agent are superseded by this Agreement. There are no other promises, terms, conditions or obligations with respect hereto other than those contained herein.

## 11. ASSIGNMENT

Neither Party may assign this Agreement without the prior written consent of the other Party.

5

KEPPEL00045256

## 12. GOVERNING LAW & DISPUTE RESOLUTION

This Agreement shall be construed, interpreted and enforced in accordance with the substantive laws of the Republic of Singapore.

Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, which rules are deemed to be incorporated by reference in this clause. The Tribunal shall consist of a single arbitrator. The language of the arbitration shall be English. The arbitration proceedings shall be kept fully confidential unless otherwise required to be disclosed by relevant laws, regulations and rules (including the rules of any applicable stock exchange).

IN WITNESS WHEREOF this Agreement is executed by the parties on the day and year first written above.

For and on behalf of **FERNVALE PTE LTD**

..........................................
Name:  Jeffery S. Chow
Title:   Attorney-In-Fact

For and on behalf of **EAGLE DO BRASIL LTDA.**

..........................................
Name:  Zwi Skornicki
Title:   Director

6

KEPPEL00045257

## EXHIBIT 1

## FORM OF CONFIRMATION OF ELIGIBLE EPC CONTRACT

FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. hereby confirm that the following EPC Contract dated the date stated below has been executed between FERNVALE and the Customer mentioned below: -

| Date of EPC Contract: | |
|---|---|
| Name of Customer: | |
| DRU #: | |

and the parties confirm that the above-mentioned EPC Contract is eligible for Commission payable under the terms and conditions of the Agency Agreement between FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. dated November 30, 2011.

For and on behalf of **FERNVALE PTE LTD**

For and on behalf of **EAGLE DO BRASIL LTDA.**

…………………………………..

Name:  Jeffery S. Chow
Title:   Attorney-In-Fact

…………………………………..

Name:  Zwi Skornicki
Title:   Director

7

Confidential