# EXHIBIT 96



STATE OF NEW YORK        )
                         )
                         )
                         )
COUNTY OF NEW YORK       )    ss

## CERTIFICATION

This is to certify that the attached translation is to the best of my knowledge and belief a true and accurate translation from Portuguese into English of the attached document with Bates number range EIG_KEP_00237889 to EIG_KEP_00237893.

Edward J. Jacob
Divergent Language Solutions, LLC

State of New York
County of New York
Subscribed to and sworn before me this 10th day of September, 2021
by Edward J. Jacob.

Notary Public

MATTHEW C. ZELAK
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01ZE6350239
Qualified in Kings County
Commission Expires November 7, 2024



183 Madison Avenue, Suite 416 | New York, NY 10016 | p 917.979.4513 | f 415.525.4313
600 California Street, 11th Floor | San Francisco, CA 94108 | p 415.400.4538 | f 415.525.4313
divergent@divergentls.com | www.divergentls.com



Office of the President – 0005/2015                                    Rio de Janeiro, April 13, 2015

To the Shareholders

To
Petróleo Brasileiro S.A. – Petrobras
Avenida República do Chile, 65, sala 1004
20031-912 - Rio de Janeiro - RJ
Attn.: Maria Roma de Freitas

To
Fundo de Investimentos em Participações – FIP Sondas
Avenida Paulista, 2300, 11º andar
01310-300 - São Paulo - SP
Attn.: Fernando Henrique Augusto

CC: Quotaholders

PETROS
FUNCEF
PREVI
VALIA
SANTANDER
FUNDO STRONG
BTG PACTUAL
LAKESHORE
LUCE DRILLING
EIG
FI-FGTS

CC: Board of Directors

**Subject**: Protection Mechanism with Liquidity for Management

Dear Shareholders,

Over the last eleven months, under my responsibility as the Chief Executive Officer, the current management team of Sete Brasil has devoted itself entirely to making this enormous project of the company viable, overcoming not only difficulties that can be anticipated, of which there were many, but also all the new adversities that arose recently in completing our long-term financing, which were hindered with the

1

Confidential                                                                                          EIG00110626
                                                                                                    EIG_KEP_00237889



allegations in the framework of Operation Car Wash involving various stakeholders and former members of the previous Management Board.

Recalling that in November 2014, all corporate procedures had already been carried out in order to sign the BNDES financing contracts for the rigs of the *Odfjell* and *Seadrill* operators, which were in parallel with the release of another short-term line of credit with Banco do Brasil, when the entire process was halted by news appearing in the media about Operation Car Wash involving various stakeholders in the company and even the former board member, Pedro Barusco, who signed the plea bargain agreement offered at that time. The banks had to resubmit the credit lines for internal approval again, resulting not only in less favorable costs and leveraging conditions, but also in greater documentation requirements, including anticorruption statements to be provided by shipyards and Petrobras.

Despite all of the increasing difficulties, the Sete Brasil team continued to work hard and without interruption, including practically every weekend and year-end holidays, in order to fulfill all requirements as quickly as possible.

Unfortunately, despite all of the efforts made, the disclosure of the contents of the plea agreement entered by former director Pedro Barusco made it impossible to sign the long-term contracts scheduled for February 6, 2015, and the company is currently uncertain about its ability to continue as a going concern.

In this context, we point out, among other issues:

(i) In default since November 2014 with payments to the shipyards, in the current approximate amount of US$900 million;
(ii) US$3.6 billion in short-term debt expiring with six commercial banks (BB, Itaú, Santander, Bradesco, CEF, Standard Chartered), and the latter already gave notice of calling the guarantees with FGCN to cover its US$250 million debt;
(iii) Debentures in the current amount of R$2.5 billion subscribed to by FI-FGTS with various covenants, which permits the loans to be accelerated;
(iv) Notification by the Atlântico Sul shipyard concerning cancellation of the seven rigs under its construction responsibility; and
(v) Various requirements issued by the CPI (Parliamentary Inquiry Committee) for current officers to appear [before the Committee] in order to provide information about the company.

In keeping with our way of doing business, the Executive Board and the entire team at Sete Brasil remains extremely involved during this time of crisis, in an attempt to change this scenario and obtain a solution that makes it possible to continue our business and minimize losses to shareholders and lenders.

Confidential

EIG00110627
EIG_KEP_00237890



In this context, in a sign of support toward finding a solution, the creditors agreed to enter into a *Standstill Agreement*, signed on March 31, 2015, which granted to Sete Brasil a period of ninety days during which the creditors may not take any steps or exercise any rights arising from the current debts against the company.

In this way, the company obtained a pause to redesign its financial structure without the risk of collection proceedings by creditors, and with the requirement to present a restructuring plan by May 15, 2015.

Despite that, the vast scale and diversity of the Sete Brasil project permanently exposes its officers to various risks as individuals in the ordinary performance of their duties. It must be recalled that the chain of companies of the Sete Brasil group consists of 40 companies in the jurisdictions of Brazil, Luxembourg, Austria and the Netherlands, in addition to the enormously complex relationships with stakeholders (operators, shipyards, Federal Revenue Service, Ministry of Finance, FGCN, among others).

In a crisis situation such as the one we are currently experiencing, these risks to the Directors and Officers of the company are increased exponentially.

In one specific situation already, in a recent popular action brought in the 4th Federal Court of Porto Alegre, which requested the immediate suspension of loans that BNDES had agreed to make to Sete Brasil, both the company and its managers appear as defendants in the action.

The company has already taken out D&O insurance for its managers and its current charter document provides for payment of any costs and legal defense fees in administrative and judicial proceedings against managers and board members for regular acts in the exercise of their duties, which are in addition to those covered by the insurance policy.

However, it must be considered that such protective mechanisms would be weak in a situation of insolvency like the current one the company is experiencing. Despite the legal interpretations that may be made for any coverage of losses, the fact is that this type of dispute requires time, and financial expenditures will have to be made by managers who are sued before these disputes are concluded.

To illustrate, some risks to which the current managers of Sete are exposed include:

**Tax**

Managers are exposed to the risk of inclusion in the Certificate of Active Debt of the company, and they must demonstrate that none of the liability scenarios occurred (shifting of the burden of proof with presumption of guilt). In the manager's defense, a guarantee of discretion in execution may be necessary, which may compromise the personal assets of the manager.

Confidential

EIG00110628
EIG_KEP_00237891



**Labor**

Because Sete Brasil is the principal (or only) company in the chain of services, the layoffs that are taking place in the shipyards may affect our managers. Due to the fact that there is no labor procedure, the court may seek seizure of the property of the officers of the "end consumer" of the chain of services in parallel with the seizure of property of the direct employer (shipyard) and/or its partners. The risk to the officers of related companies is greater in the case of an action of the MPT (Workers' Party Movement) or labor class action proceeding arising from the mass layoffs in the shipyards.

**Risk to Image ("Reputation")**

Considering the context of Operation Car Wash, there is a significant risk of a possible investigation of the managers and need for them to participate in the proceedings, depositions or CPI, among other indirect impact, even though the actions were not carried out by the current management. Such a situation can cause financial and professional harm to the managers.

**Exposure of Managers (Austria)**

From the point of view of Austrian law, managers must act diligently to benefit of the company. Managers are liable (including criminally) for losses of the company resulting from illegal or negligent acts. It is also possible for managers to be liable if there is a delay in the start of bankruptcy proceedings or for other acts that can increase harm to creditors. In the case of unpaid taxes, or even payment of other creditors to the detriment of the revenue authority, managers may be made liable, with shifting of the burden of proof (presumption of guilt of the managers, who must prove their innocence).

**Exposure of Managers (The Netherlands)**

Possibility of managers being held liable if it is proven that they deceived creditors about the company's solvency, or if they acted (or made omissions) in a manner to impede the company from complying with its obligations to creditors. Officers may be criminally prosecuted for criminal acts of the company (environmental, fraud in the payment of creditors, etc.). Criminal liability is not tied to the position occupied in the company, but to the person's involvement in the criminal act of the SPE (managers and others having authority to act for the company have exposure).

In light of such exposure, it is certain that the current officers of Sete Brasil and members of its board of directors, the majority of whom were already part of the company's management even before the current Executive Board took office, are fully liable in their individual capacities, and given the figures involved in the Sete project, their respective personal assets may only be sufficient to cover the initial legal defense fees.

Confidential

EIG00110629
EIG_KEP_00237892



Keeping in mind that the management bodies of the company — the Executive Board and Board of Directors — and its shareholders are completely aligned in terms of finding a successful outcome for the Sete Brasil project, it is urgent that the current managers have security in the exercise of their duties.

Therefore, as already discussed with the Finance Committee and Board of Directors, we request that shareholders immediately provide an additional protective mechanism to the current officers of the company in order to provide liquidity to them in the event of any claim.

It is important to stress that this mechanism shall not, under any circumstance, invalidate the beginning in parallel of coverage by the insurer (the D&O policy), which being accepted and paid, shall be returned automatically to rebuild the mechanism created by the shareholders.

This mechanism could be done by means of establishing a <u>reserve account</u>, by executing a <u>letter of guarantee</u> with a financial institution or any other instrument that provides protection to the officers, with immediate access.

It is important to stress once more the urgency of determining the best direction in which to proceed in this matter, since the lack of a short-term solution has already created a situation in which the current officers are completely uncomfortable performing their daily activities for the company.

Trusting in the understanding and involvement of the shareholders in finding a solution, we request that you contact us with a position on the issue <u>by April 24, 2015</u>.


Sincerely,


[signature]
Luiz Eduardo Guimarães Carneiro
Sete Brasil Participacões S.A.
Chief Executive Officer and Investor Relationships

5



Presidência – 0005/2015                    Rio de Janeiro, 13 de abril de 2015

Aos Acionistas

À
Petróleo Brasileiro S.A. – Petrobras
Avenida República do Chile, 65, sala 1004
20031-912 - Rio de Janeiro - RJ
A/C: Sra. Maria Roma de Freitas

Ao
Fundo de Investimentos em Participações – FIP Sondas
Avenida Paulista, 2300, 11º andar
01310-300 - São Paulo - SP
A/C: Sr. Fernando Henrique Augusto

c/c aos Quotistas

PETROS
FUNCEF
PREVI
VALIA
SANTANDER
FUNDO STRONG
BTG PACTUAL
LAKESHORE
LUCE DRILLING
EIG
FI-FGTS

c/c aos Conselheiros de Administração

<u>**Assunto:**</u> **Mecanismo de Proteção com Liquidez aos Administradores**

Prezados Acionistas,

Ao longo dos últimos 11 meses, sob minha responsabilidade enquanto Diretor Presidente, a atual equipe de gestão da Sete Brasil vem se dedicando integralmente na busca de viabilizar esse enorme projeto da Companhia, superando não somente as dificuldades previsíveis, que já eram muitas, mas também todas as novas adversidades surgidas recentemente para a conclusão de nossos financiamentos de longo prazo,

Confidential                                                                                        EIG00110626
                                                                                                    EIG_KEP_00237889



agravadas com as denúncias no âmbito da operação Lava-Jato envolvendo diversos *stakeholders* e ex-membros da Diretoria anterior.

Apenas relembrando, em novembro/14 todos os trâmites societários já haviam sido cumpridos para assinatura dos contratos de financiamento do BNDES para as sondas dos operadores *Odfjell* e *Seadrill*, estando em paralelo alinhada a liberação de mais uma linha de crédito de curto prazo com o Banco do Brasil, quando notícias veiculadas na imprensa sobre a operação Lava-Jato, envolvendo diversos *stakeholders* da Companhia e até o ex-membro da Administração Sr. Pedro Barusco, que firmou acordo de delação premiada naquele momento, frearam todo o processo. Os bancos tiveram que submeter novamente em suas instâncias internas a aprovação das linhas de financiamento, resultando não somente em condições menos vantajosas de custo e alavancagem, como também em maiores exigências documentais, incluindo declarações anticorrupção a serem fornecidas por estaleiros e Petrobras.

Apesar de todo esse agravamento de dificuldades, a equipe da Sete Brasil prosseguiu em um árduo e ininterrupto trabalho, que englobou praticamente todos os finais de semana, incluindo feriados de final de ano, a fim de todas as exigências fossem cumpridas no menor espaço de tempo possível.

Infelizmente, apesar de todos os esforços despendidos, com a divulgação do conteúdo da delação premiada do ex-diretor Pedro Barusco, inviabilizou-se a assinatura dos contratos de longo prazo prevista para 06.02.2015, encontrando-se atualmente a Companhia em um momento de incerteza sobre a sua continuidade.

Nesse cenário, entre outros aspectos, destacamos:

(i) inadimplência desde nov/14 junto aos estaleiros, em valor atual aproximado de US$ 900 milhões;
(ii) dívidas de curto-prazo de US$ 3,6 bilhões vencidas junto a 6 bancos comerciais (BB, Itaú, Santander, Bradesco, CEF, *Standard Chartered*), sendo que este último já notificou a execução das garantias junto ao FGCN para fazer frente a sua dívida de US$ 250 milhões;
(iii) debêntures no valor atual de R$ 2,5 bilhões subscritas pelo FI-FGTS com diversos *covenants* a descoberto, o que permite vencimento antecipado;
(iv) notificação pelo Estaleiro Atlântico Sul acerca do cancelamento das 7 sondas sob sua responsabilidade de construção; e
(v) diversos requerimentos expedidos pela CPI para comparecimento de atuais executivos a fim de prestar informações sobre a empresa.

Em linha com nossa forma de atuação, a Diretoria Executiva e toda a equipe da Sete Brasil permanece extremamente engajada durante o atual momento de crise, na tentativa de reverter esse cenário e obter uma solução que permita a continuidade dos negócios e a minimização das perdas dos recursos já investidos pelos acionistas e financiadores.

Confidential

EIG00110627

EIG_KEP_00237890



Nesse contexto, em uma sinalização de apoio à busca de uma solução, os credores concordaram com a celebração do acordo denominado Instrumento de *Standstill*, assinado em 31.03.2015, que concedeu à Sete Brasil um prazo de 90 dias, durante o qual os credores não poderão tomar qualquer medida ou exercer qualquer direito decorrente das dívidas atualmente existentes contra a Companhia.

Dessa forma, a Companhia adquiriu um fôlego para o redesenho de sua estrutura financeira sem o risco de processos de cobrança por parte dos credores signatários, devendo apresentar um plano de reestruturação até o dia 15.05.2015.

Ainda assim, todo o gigantismo e diversidade do projeto da Sete Brasil expõe permanentemente seus executivos, no desempenho ordinário de suas funções, a diversos riscos na pessoa física. Vale relembrar que a cadeia societária do Grupo Sete Brasil consiste de 40 empresas em jurisdições no Brasil, Luxemburgo, Áustria e Holanda, além das características de enorme complexidade de relacionamento com diversos *stakeholders* (operadores, estaleiros, Receita Federal, Ministério da Fazenda, FGCN, entre outros).

Em uma situação de crise, como a atualmente vivenciada, esses riscos aos Administradores e Executivos da Companhia ficam exponencialmente elevados.'

Já em uma situação concreta, recentemente, em uma ação popular proposta na 4ª Vara Federal de Porto Alegre em que foi solicitada a suspensão imediata de empréstimos que o BNDES tenha se comprometido a fazer para a Sete Brasil, tanto a Companhia quanto seus administradores figuram como réus na ação.

É fato que a Companhia já contrata seguros de D&O para seus administradores e que o atual Estatuto Social prevê cobertura de pagamento a eventuais gastos com custas e defesa em processos administrativos e judiciais contra administradores e conselheiros, por atos regulares no exercício de suas funções, que sejam adicionais àqueles cobertos pela apólice de seguro.

Entretanto, há que se considerar que tais mecanismos de proteção tornam-se frágeis diante de uma situação de insolvência como a atualmente vivenciada pela Companhia. A despeito de interpretações jurídicas que possam ser atribuídas a eventuais coberturas de sinistros, é fato que esse tipo de discussão requer tempo e que gastos financeiros terão que ser efetuados pelos administradores acionados, previamente ao desfecho desses entendimentos.

Apenas para ilustrar, alguns riscos a que os administradores atuais da Sete estão expostos:

<u>Fiscal</u>

O administrador está exposto ao risco de inclusão na Certidão de Divida Ativa da Companhia, cabendo a ele demonstrar que nenhuma das hipóteses de responsabilização ocorreu (presunção de culpa com inversão do ônus da prova). Em sua defesa, pode ser necessária garantia do juízo da execução, o que poderá gerar comprometimento do patrimônio pessoal do administrador.

3

Confidential

EIG00110628

EIG_KEP_00237891



### Trabalhista

Por ser a Sete Brasil a principal (ou única) empresa na cadeia de serviços, as demissões que estão acontecendo nos estaleiros poderiam alcançar os nossos administradores. Pela não existência de um rito processual trabalhista, pode o juiz buscar a penhora de bens dos administradores do "consumidor final" da cadeia de serviços concomitantemente ao bloqueio de bens do empregador direto (estaleiro) e/ou de seus sócios. O risco dos administradores das empresas relacionadas torna-se maior em caso de atuação do MPT ou ação coletiva trabalhista decorrente das demissões em massa nos estaleiros.

### Risco de Imagem ("Reputacional")

Considerando o contexto da operação Lava-Jato, é relevante o risco de eventual investigação dos administradores e necessidade de participação nos processos, depoimentos ou CPI, dentre outros impactos indiretos, ainda que os atos não tenham sido praticados pela administração atual. Tal situação pode gerar prejuízo financeiro e profissional aos administradores.

### Exposição dos Administradores (Áustria)

Sob a ótica da legislação austríaca, o administrador deve agir com diligência e em benefício da Companhia. O administrador é responsável (inclusive criminalmente) pelas perdas da Companhia que resultam de atos delituosos ou negligentes. Há, também, possibilidade de responsabilização dos administradores caso haja postergação do início do processo de insolvência ou por outros atos que possam vir a aumentar o prejuízo dos credores. No caso de não pagamento de tributos ou, ainda, pagamento de outros credores em detrimento do Fisco, há possibilidade de responsabilização dos administradores, com a inversão do ônus da prova (presunção de culpa por parte dos administradores, que devem provar sua inocência).

### Exposição dos Administradores (Holanda)

Possibilidade de responsabilização dos administradores caso reste provado terem estes induzido a erro os credores com relação à solvência da Companhia, ou caso tenham agido (ou se omitido) de forma a impedir a Companhia de cumprir com suas obrigações perante os credores. Criminalmente, o diretor pode ser processado pelos atos criminosos da Companhia (ambientais, fraude no pagamento de credores, etc.). A responsabilidade criminal não está ligada à posição ocupada na Companhia, mas sim com o envolvimento da pessoa com o ato criminoso da SPE (gerentes e procuradores expostos).

Diante do exposto, resta consolidada a certeza de que os atuais executivos da Sete Brasil e os conselheiros de administração, cuja maioria já compunha a Administração da Companhia antes mesmo da atual Diretoria tomar posse, encontram-se totalmente vulneráveis em suas pessoas físicas e respectivos patrimônios pessoais que, inclusive, diante das cifras envolvidas no projeto da Sete, podem sequer serem suficientes para fazer frente ao pagamento de simples honorários jurídicos iniciais de defesa.

Confidential

EIG00110629

EIG_KEP_00237892



Cientes de que existe total alinhamento entre os órgãos de Administração da Companhia – Diretoria Executiva e Conselho de Administração – e seus acionistas no sentido de se buscar um desfecho exitoso para o projeto da Sete Brasil, torna-se condição premente que os atuais gestores tenham segurança para o exercício de suas funções.

Assim, conforme já discutido junto ao Comitê de Finanças e ao Conselho de Administração, vimos solicitar aos senhores acionistas que viabilizem, de imediato, um mecanismo de proteção adicional aos atuais executivos da Companhia, que proporcione liquidez aos mesmos quando do aviso de qualquer sinistro.

Importante ressaltar que esse mecanismo não invalidará, em hipótese alguma, o acionamento paralelo da cobertura pela Seguradora (apólice D&O) que, em sendo aceita e paga, será automaticamente revertida para recomposição do mecanismo criado pelos acionistas.

Esse mecanismo poderia ser por meio da constituição de uma conta reserva, pela contratação de uma carta-fiança junto a uma instituição financeira e ou qualquer outro instrumento que proporcione proteção aos administradores, com acesso imediato.

Importante ressaltar, mais uma vez, a urgência na definição da melhor forma de darmos encaminhamento ao presente tema, uma vez que a não obtenção de uma solução no curto prazo já acarreta uma situação de total desconforto aos atuais administradores na condução de suas atividades diárias na Companhia.

Ciente da compreensão e engajamento dos senhores acionistas na busca de uma solução, solicitamos que nos retornem com algum posicionamento sobre a questão até o dia 24.04.2015.


Atenciosamente,

*[assinatura]*

Luiz Eduardo Guimarães Carneiro
Sete Brasil Participações S.A.
Diretor-Presidente e Relacionamento com Investidores

Confidential

EIG00110630
EIG_KEP_00237893