# EXHIBIT 98

**As filed with the Securities and Exchange Commission on May 15, 2015**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**
**FORM 20-F**
**ANNUAL REPORT**
**PURSUANT TO SECTION 13 OR 15(D)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**
**for the fiscal year ended December 31, 2014**
**Commission File Number 001-15106**
**Petróleo Brasileiro S.A.—Petrobras**
**(Exact name of registrant as specified in its charter)**

**Brazilian Petroleum Corporation—Petrobras**
**(Translation of registrant's name into English)**

**The Federative Republic of Brazil**
**(Jurisdiction of incorporation or organization)**

**Avenida República do Chile, 65**
**20031-912 – Rio de Janeiro – RJ – Brazil**
**(Address of principal executive offices)**

**Ivan de Souza Monteiro**
**Chief Financial Officer and Chief Investor Relations Officer**
**(55 21) 3224-2040 – ivanmonteiro@petrobras.com.br**
**Avenida República do Chile, 65 – 23rd Floor**
**20031-912 – Rio de Janeiro – RJ – Brazil**
**(Name, telephone, e-mail and/or facsimile number and address of company contact person)**

**Securities registered or to be registered pursuant to Section 12(b) of the Act:**

| Title of each class: | Name of each exchange on which registered: |
|---|---|
| Petrobras Common Shares, without par value* | New York Stock Exchange* |
| Petrobras American Depositary Shares, or ADSs (evidenced by American Depositary Receipts, or ADRs), each representing two Common Shares | New York Stock Exchange |
| Petrobras Preferred Shares, without par value* | New York Stock Exchange* |
| Petrobras American Depositary Shares (as evidenced by American Depositary Receipts), each representing two Preferred Shares | New York Stock Exchange |
| 6.125% Global Notes due 2016, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 3.875% Global Notes due 2016, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 3.500% Global Notes due 2017, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 5.875% Global Notes due 2018, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 7.875% Global Notes due 2019, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 5.750% Global Notes due 2020, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 5.375% Global Notes due 2021, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 6.875% Global Notes due 2040, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 6.750% Global Notes due 2041, issued by PGF (successor to PifCo) | New York Stock Exchange |
| 2.000% Global Notes due 2016, issued by PGF | New York Stock Exchange |
| 3.000% Global Notes due 2019, issued by PGF | New York Stock Exchange |
| 4.375% Global Notes due 2023, issued by PGF | New York Stock Exchange |
| 5.625% Global Notes due 2043, issued by PGF | New York Stock Exchange |
| Floating Rate Global Notes due 2016, issued by PGF | New York Stock Exchange |
| Floating Rate Global Notes due 2019, issued by PGF | New York Stock Exchange |
| 3.250% Global Notes due 2017, issued by PGF | New York Stock Exchange |
| 4.875% Global Notes due 2020, issued by PGF | New York Stock Exchange |
| 6.250% Global Notes due 2024, issued by PGF | New York Stock Exchange |
| 7.250% Global Notes due 2044, issued by PGF | New York Stock Exchange |
| Floating Rate Global Notes due 2017, issued by PGF | New York Stock Exchange |
| Floating Rate Global Notes due 2020, issued by PGF | New York Stock Exchange |

* Not for trading, but only in connection with the registration of American Depositary Shares pursuant to the requirements of the New York Stock Exchange.

**Securities registered or to be registered pursuant to Section 12(g) of the Act: None**
**Securities for which there is a reporting obligation pursuant to Section 15(d) of the Act: None**

**The number of outstanding shares of each class of stock as of December 31, 2014 was:**
7,442,454,142 Petrobras Common Shares, without par value
5,602,042,788 Petrobras Preferred Shares, without par value

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined by Rule 405 of the Securities Act.
Yes ☑ No ☐

If this report is an annual or transitional report, indicate by check mark if the registrant is not required to file reports pursuant to section 13 or 15(d) of the Securities Exchange Act of 1934.
Yes ☐ No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.
Yes ☑ No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).
Yes ☑ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑   Accelerated filer ☐   Non-accelerated filer ☐

Indicate by check mark which basis of accounting the registrant has used to prepare the financial statements included in this filing:

U.S. GAAP ☐   International Financial Reporting Standards as issued by the International Accounting Standards Board ☑   Other ☐

**Petróleo Brasileiro S.A. – Petrobras**
Notes to the financial statements
*(Expressed in millions of US Dollars, unless otherwise indicated)*

According to testimony from Brazilian criminal investigations that became available beginning October 2014, senior Petrobras personnel conspired with contractors, suppliers and others from 2004 through April 2012 to establish and implement an illegal cartel that systematically overcharged the Company in connection with the acquisition of property, plant and equipment. Two Petrobras executive officers (*diretores*) and one executive manager were involved in this payment scheme, none of whom has been affiliated with the Company since April 2012; they are referred to below as the "former Petrobras personnel." The overpayments were used to fund improper payments to political parties, elected officials or other public officials, individual contractor personnel, the former Petrobras personnel and other individuals involved in the payment scheme. The Company itself did not make the improper payments, which were made by the contractors and suppliers and by intermediaries acting on behalf of the contractors and suppliers.

Petrobras believes that under IAS 16, the amounts it overpaid pursuant to this payment scheme should not have been included in historical costs of its property, plant and equipment. However, Petrobras cannot specifically identify either the individual contractual payments that include overcharges or the reporting periods in which overpayments occurred. As a result, Petrobras developed a methodology to estimate the aggregate amount that it overpaid under the payment scheme, in order to determine the amount of the write-off representing the overstatement of its assets resulting from overpayments used to fund improper payments. The circumstances and the methodology are described below.

**Background**

In 2009, the Brazilian federal police began an investigation called "Lava Jato" (Car Wash) aimed at criminal organizations engaged in money laundering in several Brazilian states. The Lava Jato Operation is extremely broad and involves numerous investigations into several criminal practices focusing on crimes committed by individuals in different parts of the country and sectors of the Brazilian economy.

Over the course of 2014, the Brazilian Federal Prosecutor's Office focused part of its investigation on irregularities involving Petrobras's contractors and suppliers and uncovered a broad payment scheme that involved a wide range of participants, including the former Petrobras personnel. Based on the information available to Petrobras, the payment scheme involved a group of 27 companies that, between 2004 and April 2012, colluded to obtain contracts with Petrobras, overcharge the Company under those contracts and use the overpayment received under the contracts to fund improper payments to political parties, elected officials or other public officials, individual contractor personnel, the former Petrobras personnel and other individuals involved in the scheme. Petrobras refers to this scheme as the "payment scheme" and to the companies involved in the scheme as "cartel members."

In addition to the payment scheme, the investigations identified several specific instances of other contractors and suppliers that allegedly overcharged Petrobras and used the overpayment received from their contracts with the Company to fund improper payments, unrelated to the payment scheme, to certain Petrobras employees, including the former Petrobras personnel and a former Chief International Officer. Those contractors and suppliers are not cartel members and acted individually. Petrobras refers to these specific cases as the "unrelated payments."

In connection with the investigation of the payment scheme, Paulo Roberto Costa, a former Chief Downstream Officer of Petrobras, was arrested in March 2014 and subsequently charged for money-laundering and passive corruption. Other former executives of Petrobras, including Renato de Souza Duque (a former Chief Services Officer), Nestor Cerveró (a former Chief International Officer) and Pedro José Barusco Filho (a former executive manager of the Services area), as well as former executives of Petrobras contractors and suppliers, have been or are expected to be charged as a result of the investigation.

**Petróleo Brasileiro S.A. – Petrobras**
Notes to the financial statements
*(Expressed in millions of US Dollars, unless otherwise indicated)*

When the Company issued its 2013 audited financial statements on February 27, 2014, when it filed its 2013 Form 20-F on April 30, 2014, and when it issued its interim financial statements for the six months ended June 30, 2014 on August 8, 2014, there was no evidence available to Petrobras related to the Lava Jato investigation that would have affected the conclusions of the Company regarding the fact that its financial statements fairly presented its financial position, and the extent of the payment scheme had not been made public.

**Information and sources available to Petrobras**

On October 8, 2014, Costa and Alberto Youssef testified in the 13th Criminal District Court of Curitiba (Vara Federal Criminal de Curitiba) ("Paraná Court"), publicly describing the payment scheme. Since then, extensive testimony of participants in the payment scheme who have entered into plea agreements has been made public. The Company's understanding of the payment scheme, and its methodology for measuring its impact on the Company, are based on this testimony, which includes the complete testimony of two of the former Petrobras personnel (Costa and Barusco), the complete testimony of two individuals who acted as intermediaries in the payment scheme (Youssef and Julio Gerin de Almeida Camargo), partial testimony of another individual who acted as an intermediary in the payment scheme (Shinko Nakandakari), and the complete testimony of one representative of a construction company (Augusto Ribeiro de Mendonça Neto).

The Brazilian Federal Prosecutor's Office, which is in possession of the full record of the investigation to date, filed administrative misconduct complaints (ações de improbidade administrativa) on February 20, 2015 against five cartel members based on the payment scheme and relied on the same approach used by the Company to measure the actual damages attributable to the payment scheme, as set out below.

A significant portion of the information mentioned above was made public after January 28, 2015, when the Company issued its interim financial statements as of and for the nine months ended September 30, 2014 not reviewed by independent auditors, amplifying and corroborating the information that was previously available, namely the testimony of Barusco, Costa, Youssef and Nakandakari.

The information available to the Company is generally consistent with respect to the existence of the payment scheme, the companies involved in the payment scheme, the former Petrobras personnel involved in the payment scheme, the period during which the payment scheme was in effect, and the maximum amounts involved in the payment scheme relative to the contract values of affected contracts.

Petrobras will monitor the results of the investigations and the availability of other information concerning the payment scheme. If information becomes available that indicates with sufficient precision that the estimate described above should be adjusted, Petrobras will evaluate whether the adjustment is material and, if so, recognize it. However, the Company has no expectation that additional information bearing on these matters is or will be available from internal sources.

Other information obtained in the course of the Lava Jato investigation, including portions of Nakandakari's testimony, has not been made public. However, the Company believes that, at this point, the risk that new information emerges causing material changes to the known facts and materially affecting the adjustment described below is low. This belief is largely based on the fact that a significant amount of information has become public, it is unlikely that the Brazilian authorities (in possession of the full record of the investigation to date) would withhold information that is inconsistent with what they have publicly released (they have relied on the same approach to measure the actual damages attributable to the payment scheme in the civil and criminal proceedings they have already filed) and the public information is consistent even though it comes from a range of individuals with different positions and motivations, including two of the former Petrobras personnel, alleged intermediaries in the payment scheme and representatives of contractors and suppliers.