# EXHIBIT 104

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,    : 17-cr-466-KAM-CLP
                                :
    - versus -           : U.S. Courthouse
                                : Brooklyn, New York
                                :
JOHN DOE,                : August 29, 2017
              Defendant    :
------------------------------X
**S E A L E D   P R O C E E D I N G**
TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**


<u>**For the Government**</u>:      **Bridge M. Rohde, Esq.**
                                Acting U.S. Attorney

                        BY: **Patrick Hein, Esq.**
                                Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, New York  11201


<u>**For the Defendant**</u>:       **John K. Carroll, Esq.**
                                Skadden, Arps
                                Four Times Square
                                New York, NY 10036


<u>**Transcription Service**</u>:    <u>**Transcriptions Plus II, Inc.**</u>
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  This is the matter of United States

2    v. John Doe, case number 17-cr-466, Criminal Cause for

3    Pleading.

4          Counsel, please state your appearances for the

5    record.

6          MR. HEIN:  Good afternoon, your Honor.

7          Patrick Hein, Derek Ettinger and David Fohr

8    (ph.) on behalf of the United States.

9          Good afternoon, your Honor.

10          THE COURT:  Good afternoon.

11          MR. CARROLL:  Good afternoon, your Honor.

12          John Carroll and Brittany Lipson from Skadden

13    on behalf of the defendant.

14          THE COURT:  Good afternoon.  Good afternoon,

15    sir.  I take it that you understand English.

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.  If at any point something is

18    said that you don't understand, please tell me, all

19    right?

20          THE DEFENDANT:  Okay.

21          THE COURT:  All right.  You may be seated.

22          Now before I begin, should I be addressing the

23    defendant as John Doe or in his name?

24          MR. CARROLL:  Your Honor, we're comfortable

25    that there are no problematic witnesses in the courtroom

3

                              Proceedings

 1  and comfortable that the record is going to be sealed.

 2  So I think it will be best for all if you address him in

 3  his name and we will talk about proper nouns and with

 4  their names, rather than John Doe entities.

 5           THE COURT:  Okay.  I mean I have done it both

 6  ways.  I just wanted to see what your preference was.

 7  All right.

 8           So Mr. Chow, the first issue that I want to

 9  deal with is your consent to have me hear your plea.  You

10  understand that this is Judge Matsumoto's case and she is

11  the United States district judge who will sentence you

12  and who will make the ultimate decision as to whether or

13  not to accept your plea of guilty.

14           If you wish, you have the absolute right to

15  have Judge Matsumoto hear your plea and if you choose to

16  do that, there will be no prejudice to you.

17           On the other hand, if you wish, I will hear

18  your plea this afternoon and a transcript of these

19  proceedings will be made from the tape recording devices

20  here in the courtroom and that transcript will be given

21  to Judge Matsumoto to review at the time of your sentence

22  and when she makes her decision as to whether or not to

23  accept your plea of guilty.

24           Do you wish to have Judge Matsumoto hear your

25  plea or are you willing to give up that right and agree

4

Proceedings

1    to have me hear your plea this afternoon?

2                THE DEFENDANT:  I am willing to waive that

3    right and have you.

4                THE COURT:  All right.  Do you make this

5    decision voluntarily and of your own free will?

6                THE DEFENDANT:  Yes, I do.

7                THE COURT:  Has anyone made any threats or

8    promises to get you to agree to have me hear your plea?

9                THE DEFENDANT:  No.

10                THE COURT:  All right.

11   (Pause)

12                THE COURT:  My law clerk is showing you the

13   order of referral that was sent down from Judge Matsumoto

14   and we also have the consent form.

15   (Pause)

16                THE COURT:  And my law clerk has just handed

17   you the consent form that I believe you may have signed

18   earlier.

19                Is that your signature there, sir, at the

20   bottom of the page?

21                THE DEFENDANT:  Yes, it is.

22                THE COURT:  All right.  And I will note for the

23   record that it's also been signed by counsel for the

24   defendant, by the assistant United States attorney and I

25   will be endorsing it, as well.

5

Proceedings

1  (Pause)

2          THE COURT:  All right.  Now before I can hear

3  your plea, there are a number of questions that I must

4  ask you to ensure that it is a valid plea.  Again, if you

5  don't understand any of my questions, just tell me and

6  I'll rephrase them; all right?  All right.

7          THE COURT:  I'm going to ask you to raise your

8  right hand, please.

9  J E F F R E Y   C H O W ,

10      called as a witness, having been first duly sworn,

11      was examined  and testified as follows:

12          THE COURT:  Do you understand that having been

13  sworn -- yes, you're right, if you wouldn't mind just

14  pulling that a little bit closer.

15          So having been sworn, your answers to my

16  questions will be subject to the penalties of perjury or

17  of making a false statement if you don't answer them

18  truthfully.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  What is your full name?

22          THE DEFENDANT:  Jeffrey Shiu Chow.

23          THE COURT:  And how old are you, sir?

24          THE DEFENDANT:  I was born in 1958.  59, this

25  November.

6

Proceedings

1          THE COURT:  I guess that's good enough.  What
2    education have you had, sir?
3          THE DEFENDANT:  A bachelor or science in civil
4    engineering and a J.D.
5          THE COURT:  And have you had any problems
6    communicating with your attorneys?
7          THE DEFENDANT:  None whatsoever.
8          THE COURT:  Counsel, have you had any problems
9    communicating with your client?
10          MR. CARROLL:  None at all, your Honor.
11          THE COURT:  Mr. Chow, are you presently or have
12    you recently been under the care of either a physician or
13    a psychiatrist?
14          THE DEFENDANT:  Just physician for my asthma.
15          THE COURT:  Okay.  And have you been prescribed
16    medication for that condition?
17          THE DEFENDANT:  Yes.
18          THE COURT:  Okay.  Have you taken that
19    medication in the last 24 hours?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Okay.  When did you last take it?
22          THE DEFENDANT:  A few minutes ago, just a
23    ventilate inhaler.
24          THE COURT:  Okay.  Does that medication have
25    any affect on your ability to think clearly?

7

Proceedings

1          THE DEFENDANT:  None whatsoever.

2          THE COURT:  All right.  Other than that

3  medication that you just described, have you taken any

4  other drugs, pills or medicine of any kind in the last 24

5  hours?

6          THE DEFENDANT:  I took one antihistamine about

7  20 hours ago.

8          THE COURT:  Okay.  And does that have any

9  affect on your ability to think clearly?

10          THE DEFENDANT:  No.

11          THE COURT:  Okay.  No narcotic drugs in the

12  last 24 hours?

13          THE DEFENDANT:  No.

14          THE COURT:  Okay.  Have you had any alcohol to

15  drink in the last 24 hours?

16          THE DEFENDANT:  No.

17          THE COURT:  Have you ever been hospitalized or

18  treated for a narcotics addiction?

19          THE DEFENDANT:  No.

20          THE COURT:  Have you ever been treated for any

21  mental or emotional problems?

22          THE DEFENDANT:  No.

23          THE COURT:  As you sit here before me today, is

24  your mind clear?

25          THE DEFENDANT:  Yes.

8

                              Proceedings

1                 THE COURT:  Do you understand what we're doing

2       here today?

3                 THE DEFENDANT:  Yes, I do.

4                 THE COURT:  Now I don't know if you can see

5       that, sir, but this is the information that the

6       government has filed against you.

7                 Have you received a copy of it?

8                 THE DEFENDANT:  Yes, I have.

9                 THE COURT:  Okay.  And have you had an

10      opportunity to review it with counsel?

11                THE DEFENDANT:  Yes, I did.

12                THE COURT:  And do you understand what you're

13      charged with?

14                THE DEFENDANT:  Yes, I do.

15                THE COURT:  Okay.  Essentially, the information

16      charges that in or about and between 2000 and 2016, both

17      dates being approximate and inclusive within the Eastern

18      District of New York and elsewhere, you together with

19      others, did knowingly and willfully conspire to commit

20      one or more offenses against the United States.

21                Specifically, (a) to make use of the mails and

22      means and instrumentalities of interstate commerce,

23      corruptly and in furtherance of an offer, payment,

24      promise to pay, and authorization of the payment of any

25      money, offer, gift, promise to give and authorization of

9

Proceedings

1   the giving of anything of value to a foreign official, to

2   a foreign political party and official thereof and to a

3   person well knowing that all or a portion of such money

4   and thing of value would be offered, given and promised

5   to a foreign official and to a foreign political party,

6   an official thereof, for the purposes of:

7           (1) influencing acts and decisions of such

8   foreign official, foreign political party and official

9   thereof, in his or her or its official capacity;

10          (2) inducing such foreign official, foreign

11  political party and official thereof, to do and admit to

12  do acts in violation of the lawful duty of such official

13  and party;

14          (3) securing any improper advantage;

15          And (4) inducing such foreign official, foreign

16  political party and official thereof, to use his, her or

17  its influence with a foreign government and agencies and

18  instrumentalities thereof to affect and influence acts

19  and decisions of such government and agencies and

20  instrumentalities in order to assist you in obtaining and

21  retaining business for and with and directing business to

22  RIG Construction Company and others in violation of

23  United States law.

24          The charge also charges you with conspiring in

25  paragraph (b), while in the territory of the United

10

Proceedings

 1   States to willfully make use of the mails and means and

 2   instrumentalities of interstate commerce, corruptly and

 3   in furtherance of an offer, payment, promise to pay, and

 4   authorization of the payment of any money, offer gift,

 5   promise to give and authorization of the giving of

 6   anything of value to a foreign official, foreign

 7   political party and official thereof, and to a person

 8   well knowing that all or a portion of such money and

 9   thing of value would be offered, given and promised to a

10   foreign official, foreign political party and official

11   thereof, for the purpose of:

12           (1) influencing acts and decisions of such

13   foreign official, foreign political party and official

14   thereof, in his, her or its official capacity;

15           (2) inducing such foreign official, foreign

16   political party and official thereof, to do and admit to

17   do acts in violation of the lawful duty of such official

18   and party;

19           (3) securing any improper advantage;

20           And (4) inducing such foreign official, foreign

21   political party and official thereof, to use his, her or

22   its influence with a foreign government and agencies and

23   instrumentalities thereof to affect and influence acts

24   and decisions of such government and agencies and

25   instrumentalities in order to assist, RIG Construction

11

Proceedings

1   company and others, in obtaining and retaining business

2   for and with and directing business to RIG Construction

3   Company and others in violation of United States law.

4              In furtherance of ths conspiracy and to achieve

5   the objects thereof, you together with others, committed

6   and caused to be committed the following overt acts:

7              (A) in or about November 2009, you coordinated

8   the signing in Houston, Texas of a marketing and sales

9   representation agreement between RIG Construction Company

10  and a consulting company controlled by RIG Construction

11  Company agent.

12             (B) in or about August 2012, on behalf of RIG

13  Construction Company, you executed an agreement dated

14  November 30th, 2011, with a consulting company controlled

15  by RIG Construction Company agent.

16             (C) in or about August 2012, on behalf of RIG

17  Construction Company, you executed a marketing,

18  consulting and services agreement dated December 1st,

19  2011, with a consulting company controlled by RIG

20  Construction Company agent.

21             And (D) on or about April 12th, 2012, you sent

22  an e-mail to an executive of RIG Construction Company

23  discussing how to structure commission payments that RIG

24  Construction Company would make to a consulting company

25  controlled by RIG Construction Company agent in violation

12

Proceedings

1    of United States law.

2          Now my first question is do you understand what

3    a conspiracy is?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  Basically, a conspiracy is simply

6    an agreement between two or more people to do something

7    unlawful.  In this case, you are charged with agreeing

8    with others to violate the Foreign Corrupt Practices Act

9    in the manner that I have just read to you from the

10   indictment.

11         Do you understand the charge?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  All right.  Now this is a felony

14   charge and because it is a felony charge, you have a

15   constitutional right to be charged by way of an

16   indictment brought by the grand jury.  The grand jury is

17   a group of at least 16 and not more than 23 people, who

18   listen to the evidence presented by the government and at

19   least 12 of them must find that there is probable cause

20   to believe that you committed the crime that the

21   government is charging you with.

22         Now the government could present the case to

23   the grand jury, and the grand jury could vote to indict

24   you or it could vote not to indict you.  But the only way

25   that the government can proceed on this felony charge as

13

Proceedings

 1  it is here today, is if you agree to give up your right

 2  to have the case presented to the grand jury.

 3          If you waive your right to have the case

 4  presented to the grand jury, then the government can

 5  proceed against you on this charge just as if the grand

 6  jury heard the evidence and voted to indict you.

 7          Do you follow me so far?

 8          THE DEFENDANT:  Yes, I do.

 9          THE COURT:  All right.  Have you discussed

10  waiving your right to be indicted by the grand jury with

11  your attorneys?

12          THE DEFENDANT:  Yes, I have.

13          THE COURT:  And do you understand your right to

14  be indicted by the grand jury?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  Has anyone made any threat or

17  promise to get you to waive indictment?

18          THE DEFENDANT:  No.

19          THE COURT:  Do you wish at this time to waive

20  your right to be indicted by the grand jury?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  Counsel, do you know of any reason

23  why the defendant should not waive indictment?

24          MR. CARROLL:  No, your Honor.  I know of no

25  such reason.

14
Proceedings

1          THE COURT:  All right.  Ariela, would you show

2    that to the defendant?  This is the waiver of indictment

3    form that I believe you may have signed earlier.

4          Have you seen this before, sir?

5          THE DEFENDANT:  Yes, I have.

6          THE COURT:  Okay.  And is that your signature

7    there at the bottom of the page?

8          THE DEFENDANT:  Yes, it is.

9          THE COURT:  All right.  And I note that it's

10   also been signed by counsel for the defendant, as well.

11         MR. CARROLL:  That's correct, your Honor.

12         THE COURT:  All right.  I will take it back

13   now.  And I am endorsing it, as well, finding that the

14   defendant has been apprised of the nature of the charges,

15   the proposed information and his rights and he has hereby

16   waived prosecution by indictment in open court today.

17         What year is this?

18         THE DEFENDANT:  2017.

19         MR. CARROLL:  I wrote '18 on all of them.

20   (Laughter)

21         THE COURT:  I'm like did I lose a year?

22         MR. CARROLL:  How about that?

23         THE COURT:  Did I lose a year somewhere along

24   the way?  Okay, I'll fix it.

25         MR. CARROLL:  I was just into writing 8s

15

Proceedings

1   because of August.

2   (Pause)

3          THE COURT:  Now counsel, have you discussed the

4   matter of pleading guilty with your client?

5          MR. CARROLL:  At great length, your Honor.

6          THE COURT:  Does he understand the rights that

7   he will be waiving by pleading guilty?

8          MR. CARROLL:  He does, your Honor.

9          THE COURT:  In your view, is he capable of

10  understanding the nature of these proceedings?

11         MR. CARROLL:  Absolutely, your Honor.

12         THE COURT:  Do you have any doubt as to his

13  competence to plead at this time?

14         MR. CARROLL:  No, doubt whatsoever.

15         THE COURT:  Have you advised him of the maximum

16  sentence and the fine that can be imposed as a result of

17  his plea here?

18         MR. CARROLL:  I have, your Honor.

19         THE COURT:  And have you discussed with him the

20  operation of the sentencing guidelines in this case?

21         MR. CARROLL:  I have, your Honor.

22         THE COURT:  All right  Mr. Chow, do you

23  understand that you have the right to be represented by

24  an attorney from this point forward in connection with

25  these charges.

16

Proceedings

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  And I take it, counsel, you are

4    retained in this matter, is that correct?

5          MR. CARROLL:  That's correct, your Honor.

6          THE COURT:  If Mr. Chow, you could not afford

7    to pay for counsel, the Court would appoint an attorney

8    to represent you.  That's how important your right to

9    counsel is.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Do you believe that you have had

13   enough time to discuss your case with your attorneys?

14          THE DEFENDANT:  Yes, I have.

15          THE COURT:  And are you satisfied to have them

16   represent you?

17          THE DEFENDANT:  Very much so.

18          THE COURT:  All right.  I want to make sure

19   that you understand the rights that you will be giving up

20   if you decide to plead guilty to this charge.

21          Under the Constitution and the laws of the

22   United States, you would be entitled to a speedy and

23   public trial by jury with the assistance of counsel on

24   the charge contained in the information.

25          Do you understand that?

17

Proceedings

1    THE DEFENDANT:  Yes, I do.

2    THE COURT:  At the trial, you would be presumed

3    innocent and the government would have to overcome that

4    presumption and prove you guilty by competent evidence

5    and beyond a reasonable doubt.

6    You would not have to prove that you were

7    innocent.  If the government were to fail, the jury would

8    have the duty to find you not guilty.

9    Do you understand that?

10    THE DEFENDANT:  Yes, I do.

11    THE COURT:  In the course of a trial, the

12    witnesses for the government would have to come to court.

13    They would have to testify in your presence.  Your

14    attorney would have the right to cross-examine those

15    witnesses for the government, to object to any evidence

16    offered by the government and to subpoena witnesses and

17    offer testimony on your behalf.

18    Do you understand that?

19    THE DEFENDANT:  Yes, I do.

20    THE COURT:  At the trial, while you would have

21    the right to testify if you chose to do so, you could not

22    be forced to testify.  Under the Constitution of the

23    United States, a defendant in a criminal case cannot be

24    forced to take the witness stand and say anything that

25    could be used to show that he is guilty of the crime with

18

Proceedings

1   which they've been charged.

2           If you were to decide not to testify, the Court

3   would instruct the jury that they could not hold that

4   decision against you.

5           Do you understand that?

6           THE DEFENDANT:  Yes, I do.

7           THE COURT:  If you plead guilty on the other

8   hand, I'm going to have to ask you certain questions

9   about what it is that you did in order to satisfy myself

10  that you are, in fact, guilty of the charge to which you

11  seek to plead guilty.  And you're going to have to answer

12  my questions and acknowledge your guilt.

13          Thus, you will be giving up that right that I

14  just described.  That is the right not to say anything

15  that could be used to show that you are guilty of the

16  crime with which you've been charged.

17          Do you understand that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  If you plead guilty and I recommend

20  to Judge Matsumoto that she accept your plea, you will be

21  giving up your constitutional right to a trial and all of

22  the other rights that I have just described.  There will

23  be no further trial of any kind.  Judge Matsumoto will

24  simply enter a judgment of guilty based upon your guilty

25  plea.

19

Proceedings

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Are you willing to give up your

4  right to a trial and the other rights that I have just

5  described?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Now I understand that there is a

8  plea agreement in this case.  I have an older version, so

9  I want to make sure -- I am marking it as Court Exhibit 1

10  for purposes of these proceedings.  Ariela, would you

11  show that to the defendant please.

12          Have you seen this agreement before, sir?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  And have you have a chance to read

15  it?

16          THE DEFENDANT:  Yes, I have.

17          THE COURT:  And have you discussed it with

18  counsel?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And do you understand what it says?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  And if you would flip to the last

23  page for me, please, is that your signature there?

24          THE DEFENDANT:  Yes, it is.

25          THE COURT:  All right.  Does this agreement

20

Proceedings

1  fully and accurately reflect your understanding of the

2  agreement that you have with the government?

3          THE DEFENDANT:  Yes, it does.

4          THE COURT:  Other than the promises that are in

5  the agreement, has anyone made any other promise that has

6  caused you to plead guilty here?

7          THE DEFENDANT:  No.

8          THE COURT:  Has anyone made any promise to you

9  as to what your sentence will be?

10          THE DEFENDANT:  No.

11          THE COURT:  I want to briefly review with you

12  the sentencing scheme that applies here.  The statute

13  that you are accused of violating carries a minimum term

14  of imprisonment of zero years but a maximum of up to

15  possibly five years in prison.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.  Now there are in effect what

19  are called sentencing guidelines and those guidelines are

20  merely that; a guide to help the Court determine where

21  within that zero to five year range your sentence should

22  fall.

23          The guidelines are not mandatory but the Court

24  is required to consider the guidelines along with all

25  other relevant factors in determining what an appropriate

21

Proceedings

1   sentence for you should be.

2           Do you understand that?

3           THE DEFENDANT:  Yes, I do.

4           THE COURT:  The important thing that you must

5   understand is that until the time of sentencing when

6   Judge Matsumoto is going to get what is called a

7   presentence report which will be prepared by the

8   probation department following your plea here and the

9   judge has an opportunity to hear from you, and to hear

10  from your attorneys, and to hear from the government,

11  until that time, no one can promise you exactly what your

12  sentence will be; not your attorneys, not the government,

13  not me, not even Judge Matsumoto until that then.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  Nevertheless, I am going to ask the

17  government just to put on the record what your estimate

18  of the guideline range would be based upon what we know

19  today.

20          MR. HEIN:  Yes, your Honor.  The government's

21  estimate is an adjusted offense level of 36 and that's

22  calculated by a base offense level of 12 with a two level

23  enhancement for more than one bribe and another 22 level

24  enhancement for more than $25 million.

25          The adjusted offense level has a sentencing

22

Proceedings

1  range of 188 to 235 months with a three level reduction

2  for acceptance of responsibility, the government

3  estimates a total offense level of 33 with a sentencing

4  range of 135 months to 168 months and the government is,

5  of course, aware of the statutory maximum of 60 months.

6           THE COURT: Okay. Counsel, do you have any

7  quarrel with the government's calculation that you want

8  to put on the record at this time?

9           MR. CARROLL: While we don't consent to it, we

10  have no quarrel at this time.

11           THE COURT: Okay.

12           So you understand the government's estimate

13  brings your guideline level way above the maximum of the

14  statute but that is the maximum that can be imposed.

15           Do you understand that?

16           THE DEFENDANT: Yes, I do.

17           MR. CARROLL: I take it that, Mr. Chow, is a

18  citizen of the United States?

19           THE DEFENDANT: Yes, I am.

20           THE COURT: Okay. Because if you were not a

21  citizen of the United States, I would have to inform you

22  that you might be subject to deportation based upon your

23  guilty plea here but since you're a citizen, that

24  shouldn't be a concern.

25           Do you understand that?

23

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  You do understand though that you

3  face a term of supervised release.

4          Do you know what supervised release is?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Basically, once you have completed

7  any sentence of imprisonment that you may be directed to

8  serve, you will be released from jail but there may be

9  certain restrictions placed on your freedom.  For

10 example, you might have to report to a probation officer

11 on a periodic basis and there may be other restrictions,

12 as well.

13         Do you understand that?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  The important thing here is that

16 you face a maximum term of supervised release of three

17 years.

18         And if you violate any of the conditions of

19 supervised release, you may be sentenced up to two years

20 in prison without getting any credit for the time that

21 you previously served in prison and without getting any

22 credit for the time that you served successfully on

23 supervised release up until the date that you committed

24 the violation.

25         Do you understand that?

Transcriptions Plus II, Inc.

24

Proceedings

1          THE DEFENDANT:  Yes.

2          THE COURT:  You also face a potential fine.

3   The maximum fine that can be imposed is the greater of

4   $250,000 or twice the gross gain or gross loss.

5          Does the government have an estimate of what

6   that might be in this case?

7          MR. HEIN:  One second, your Honor.

8   (Counsel confer)

9          MR. HEIN:  Not at this point, your Honor.

10         THE COURT:  Okay.  But it could be higher than

11  the $250,000?

12         MR. HEIN:  It could be, your Honor, yes.

13         THE COURT:  Based on the numbers that you were

14  stating before?

15         MR. HEIN:  Yes.

16         THE COURT:  Do you understand that, Mr. Chow?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  And you must pay a $100 special

19  assessment.

20         Do you understand that, as well?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Now you can appeal your conviction

23  if you believe that your guilty plea here was somehow

24  unlawful or involuntary or there was some other

25  fundamental defect in these proceedings that was not

25

Proceedings

 1  waived by your plea.

 2          You also have a statutory right to appeal your

 3  sentence under certain circumstances if you believe that

 4  your sentence is contrary to law.  However, in the plea

 5  agreement, you have agreed that you will not file an

 6  appeal or otherwise challenge your conviction or your

 7  sentence, so long as the Court imposes a term of

 8  imprisonment at or below five years.

 9          Do you understand that you've agreed to that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Anything else in the plea agreement

12  that I  need to review with the defendant?

13          MR. HEIN:  Not from the government, your Honor.

14          THE COURT:  Counsel?

15          MR. CARROLL:  Nothing else, your Honor.

16          THE COURT:  All right.  Mr. Chow, do you have

17  any questions that you would like to ask me about the

18  charge or your rights or the plea agreement or anything

19  else before we proceed?

20          THE DEFENDANT:  No, I don't.

21          THE COURT:  Are you ready to plead at this

22  time?

23          THE DEFENDANT:  Yes, I am.

24          THE COURT:  Counsel, do you know of any reason

25  why the defendant should not plead guilty?

26
Proceedings

1              MR. CARROLL:  I know of no reason, your Honor.

2              THE COURT:  Are you aware of any viable legal

3    defense to the charge?

4              MR. CARROLL:  No, your Honor.

5              THE COURT:  Jeffrey Chow, what is your plea to

6    the charge contained in information 17-cr-466, guilty or

7    not guilty?

8              THE DEFENDANT:  Guilty, your Honor.

9              THE COURT:  Are you making this plea of guilty

10   voluntarily and of your own free will?

11             THE DEFENDANT:  Yes, I am.

12             THE COURT:  Has anyone threatened or forced you

13   to plead guilty?

14             THE DEFENDANT:  No one.

15             THE COURT:  Has anyone made any promise to you

16   what your sentence will be?

17             THE DEFENDANT:  No.

18             THE COURT:  All right.

19             I read the charge to you a few minutes ago.  I

20   want you to tell me in your own words what exactly you

21   did in connection with the conspiracy that's charged in

22   the information.

23             THE DEFENDANT: I worked in the Legal Department

24   at Keppel Offshore Marine for over 25 years and among my

25   duties and responsibilities were to draft and prepare

27

Proceedings

1    contracts with the company's agents and one of those was

2    an agent in Brazil.

3            By no later than 2008, I realized that Keppel

4    was overpaying the agent, sometimes by millions of

5    dollars, so that the agent could pay bribes to

6    individuals who could help Keppel Offshore Marine doing

7    business with Petrobras.  The Petrobras was a Brazilian-

8    state -- state-owned and controlled oil company.

9    Although no one ever named the bribe recipients for me, I

10   knew that they were government officials and ruling

11   political party.

12           I should have refused to draft the contract

13   that we used for paying bribes and I should have resigned

14   from Keppel.  Instead, I discussed the economic terms of

15   the contracts with my seniors at Keppel and acting in

16   agreement with my seniors, and others at Keppel, I

17   drafted the contracts and made sure that they were

18   executed.

19           And at least one case, it was in the U.S., that

20   I sent the executed copy of the contract from Houston,

21   Texas to the agent to confirm that my seniors at Keppel

22   had signed the contract.

23           While I didn't negotiate the contracts or make

24   the decisions to pay the bribes, I knew that the

25   contracts existed to make the payments legitimate and

28

Proceedings

1    that they were an important part of the bribery scheme.

2           I am deeply sorry for my conduct.

3           THE COURT:  So in terms of the overt act, is he

4    pleading to the first one, in or about November 2009?

5           MR. HEIN:  Yes, your Honor, that's the

6    government's understanding.

7           THE COURT:  Okay.  And what role does Rigg

8    Construction Company play in this?  Is that the name of

9    the company for whom you were --

10          THE DEFENDANT:  Yes, the Rigg Construction

11   Company is Keppel Offshore Marine or --

12          THE COURT:  The same name?

13          THE DEFENDANT:  -- one of the subsidiaries that

14   handled the contract execution.

15          THE COURT:  Okay.  That was the one thing that

16   was missing.

17          Is there anything else I should inquire of him?

18          MR. HEIN:  Not from the government, your Honor.

19          THE COURT:  Okay.  Anything else, counsel?

20          MR. CARROLL:  Nothing else, your Honor.

21          THE COURT:  All right.

22          Based on the information given to me, I find

23   that the defendant is acting voluntarily, fully

24   understands his rights and the consequences of his plea

25   and that there is a factual basis for the plea.

29
                              Proceedings

1          I will, therefore, recommend to Judge Matsumoto

2    that she accept your plea of guilty to the charge

3    contained in the information.

4          What happens now, Mr. Chow, is that you are

5    going to be meeting with someone from the probation

6    department to prepare the presentence report that we

7    talked about a little bit earlier.  I urge you to

8    cooperate with them, obviously with counsel's advice.

9          And I believe that once that report is

10   prepared, either the probation department or the Court

11   will schedule a sentencing date.  I don't believe we have

12   one right now.

13         MR. HEIN:  We do not have one yet, your Honor.

14         THE COURT:  Okay.  Now it's also my

15   understanding that this is Mr. Chow's first appearance in

16   the Court.  So I need to hear you on bail.

17         MR. HEIN:  Yes, your Honor.  The government and

18   defense counsel have spoken regarding bail and are in

19   agreement to the following terms if the Court is

20   amenable.  A $250,000 bond and that would be secured by

21   two suretors who are brothers of the defendant.  My

22   understanding is one lives in New Orleans and one in

23   Houston and my understanding is that they are financial

24   responsible suretors who have agreed to be liable for the

25   bond and within approximately two weeks, will make

30

Proceedings

1  arrangements to go to the federal courthouse in their

2  respective cities and sign the bond.

3          Given the natural disaster in the Houston and

4  Texas area, defense counsel and I have spoken about

5  seeing if the two weeks is a reasonable deadline for

6  them.

7          THE COURT:  It may not be realistic at this

8  point but --

9          MR. HEIN:  But it may not be, yeah.  The other

10  important part of the bail package is that the government

11  has agreed that the defendant may return to his residence

12  in Singapore during the pendency of the case.

13          THE COURT:  Okay.  Are you agreeing to allow

14  him to leave before the bond is fully signed off on?

15          MR. HEIN:  That has been the agreement.  Yes,

16  your Honor.

17          THE COURT:  Okay.  All right.

18  (Pause)

19          THE COURT:  While she is actually looking for

20  the second page of the bond, Mr. Chow, I want to make

21  sure you understand what your responsibilities are under

22  the bond.

23          The bond, as counsel has indicated, is in the

24  amount of $250,000.  If you should final to come back to

25  court at any time in the future when you are required to

31

Proceedings

1   be here, the bond will be revoked and the government will

2   come to me for an arrest warrant.  You will be rearrested

3   and at that point, you will be held without bond until

4   the case is resolved.

5           Do you understand that?

6           THE DEFENDANT:  Yes, I do.

7           THE COURT:  Okay.  Do you also understand that

8   if you fail to appear, the government can bring

9   additional charges against you for the separate crime of

10  bail jumping.  That's a separate felony offense.  It

11  carries its own separate term of imprisonment.

12          And what that means is that you could actually

13  be given a very short period of time under these charges

14  and yet end up facing a significant period of time simply

15  because you didn't come back to court.

16          Do you understand that?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  Okay.  Do you also understand that

19  if you don't come back to court, your brothers who are

20  signing as suretors on the bond, will lose $250,000 which

21  is the amount of the bond.  That means that if they have

22  a home, car, bank account, assets of any kind, the

23  government will seize their assets up to that $250,000

24  limit.  And if they don't have assets, the government can

25  garnish their wages, meaning every time they get a

                                                                    32
                            Proceedings

1   paycheck, a certain amount is going to be taken out until

2   the bond amount is satisfied.

3              Do you understand that?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  Okay.  You also understand that you

6   are not to commit any crimes while on bond?  If you

7   commit a crime while on bond, that's grounds for revoking

8   your bond, increasing your punishment under these charges

9   and bringing new charges against you for whatever new

10  crime you are alleged to have committed.

11             Do you understand that?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Finally, you are not to threaten or

14  attempt to influence anyone who you think might be a

15  witness against you in this case.  If you do that, that

16  is considered witness tampering and the government cannot

17  only have you rearrested for that but will bring

18  additional charges against you for that crime.

19             Do you understand that?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  All right.

22  (Pause)

23             THE COURT:  While he is doing that, do we have

24  the address of the courthouses where the brothers are

25  supposed to go?  Just because we're going to have to fax

33

Proceedings

1  the bond once the defendant signs it down there.

2          MR. HEIN:  I will get the addresses, your

3  Honor.

4          THE COURT:  Thank you.

5  (Pause)

6          THE COURT:  Are there any travel restrictions?

7  In other words, is he restricted to traveling back and

8  forth from Singapore or is there any -- no restrictions.

9          MR. HEIN:  One second, your Honor.

10 (Counsel confer)

11         MR. CARROLL:  Your Honor, with regard to the

12 travel, as far as I know (indiscernible) -- prior to Mr.

13 Chow traveling anywhere from Singapore, we would give the

14 government prior notice and an opportunity to object.  We

15 don't foresee problematic travel but Mr. Chow isn't going

16 to leave Singapore until the government knows that and

17 agrees.

18         THE COURT:  Okay.

19 (Pause)

20         THE COURT:  I assume there's no one that he

21 should avoid contact with?

22         MR. HEIN:  The government would propose that

23 the defendant avoid contact with individuals from Keppel.

24         MR. CARROLL:  Your Honor, Mr. Chow's life in

25 Singapore has been working for Keppel.  If he didn't see

34

Proceedings

1  those individuals, he would be talking to his dog all

2  day.  You know, we've certainly counseled him to not have

3  substantive conversations with people from Keppel.  I

4  think that his circumstance is such that his contacts are

5  more limited than they were previously but I don't think

6  that that's realistic --

7          THE COURT:  Okay.

8          MR. CARROLL:  -- and I think upon reflection,

9  the government agrees.

10         THE COURT:  Of course I like talking to my dog

11 better than some people.

12         MR. CARROLL:  Yeah, my dog is the only one

13 welcoming me at home most days, Judge.

14         THE COURT:  Okay.  And the names of the

15 suretors, I'm sorry, are?

16         MR. CARROLL:  Jimmy and Joseph Chow.

17         THE COURT:  Okay.  So I've indicated under

18 other conditions that he may travel outside of the United

19 States and Singapore with prior notice to the government.

20         MR. HEIN:  That's fine with the government,

21 your Honor.

22         THE COURT:  Okay.  So really the only other

23 condition is the signatures of the suretors, am I right?

24         MR. HEIN:  I believe so, your Honor.

25         THE COURT:  Okay.  I mean, there's no pretrial

35

Proceedings

1  service involvement here because he's not in the United

2  States essentially.  We do have a pretrial service

3  officer here and I did want to make sure that there

4  wasn't anything that you needed to inform me of because I

5  know your computers went down.

6          PRETRIAL SERVICES OFFICER:  No, not at all.  We

7  all are kind of in agreement with the bond.

8          THE COURT:  Okay, excellent.  Has he been

9  processed by the marshals?

10         MR. CARROLL:  He has not, your Honor.  He's

11  been to the FBI.  He's been to pretrial services.  The

12  marshals were asked whether they wanted to see him and

13  they said no for now.

14         MR. HEIN:  It's also my understanding, your

15  Honor, speaking to the FBI who processed him at 26

16  Federal Plaza, was that they were going to pass him to

17  the marshals and the marshals declined.  The FBI brought

18  the defendant to pretrial services here for his initial

19  interview and then he came here for the guilty plea.  So

20  I can speak again to the marshals but that's where it's

21  been left.

22         THE COURT:  He's got to go to the marshals.  I

23  mean, in the twenty-some years I've been doing this, not

24  including the nine I was an assistant, I don't recall

25  ever --

Transcriptions Plus II, Inc.

36

Proceedings

1          MR. HEIN:  And I agree with you, your Honor.

2    It was -- we had several conversations with the FBI

3    agents today who were seeking to pass him to the marshals

4    and this was at 26 Federal Plaza, having him brought him

5    and then they declined to do so.

6          I would be happy before the defendant leaves to

7    contact them myself directly to ensure that that's their

8    understanding.

9          THE COURT:  Okay.  Well, let me do this.  This

10   is -- that's the defendant's copy.  That's the pretrial

11   officer's copy and this is a copy that normally goes to

12   the marshals.  So that's -- I don't know what I do with

13   that one.

14          If you wouldn't mind, let me call them.

15          MR. HEIN:  Okay.

16          THE COURT:  And I will see what the story is.

17          MR. HEIN:  And, your Honor, if I may and

18   defense counsel alluded to this earlier but the

19   government would move to have the information and the

20   transcript from today's plea sealed on the basis of an

21   ongoing investigation.

22          THE COURT:  Okay.  So ordered.

23   (Court confers with Marshal Service via Telephone)

24          THE COURT:  They want to process him.  I don't

25   know what you were told but --

37

Proceedings

1          MR. HEIN:  That's fine to me, your Honor.  We

2  thought the same.  That was our understanding and we were

3  told differently but --

4          THE COURT:  Okay.  So I am sorry about this but

5  you need to go back downstairs to the United States

6  Marshal's Service where they will do the fingerprinting

7  and processing and all of that.  But Mr. Hein, I am going

8  to ask you to take the bond down --

9          MR. HEIN:  Yes.

10          THE COURT:  -- and show the defendant where to

11  go.

12          MR. HEIN:  Will do.

13          THE COURT:  All right?

14          MR. HEIN:  Thank you, your Honor.

15          THE COURT:  All right.  Thank you.

16          MR. CARROLL:  Thank you, your Honor.

17          THE COURT:  Oh, and don't forget, Mr. Hein, to

18  get us the addresses of the two courthouses.

19          MR. HEIN:  I have those here and maybe perhaps

20  should I e-mail them to your clerk?

21          THE COURT:  Yeah, why don't you e-mail them to

22  Ariela and then we'll fax them out.

23          MR. HEIN:  Thank you.

24                (Matter concluded)

25                    -o0o-

Transcriptions Plus II, Inc.

38

#### C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **11th** day of **October**, 2017.

*Linda Ferrara*

Linda Ferrara

AAERT CET**D 656

Transcriptions Plus II, Inc.