# EXHIBIT 110

```
1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ---------------------------------x
                                          19-CR-277(KAM)
3    UNITED STATES OF AMERICA,
                                          United States Courthouse
4            Plaintiff,                   Brooklyn, New York

5            -against-                    June 25, 2019
                                          10:00 a.m.
6    ZWI SKORNIKI,

7            Defendant.
     ---------------------------------x
8
                 TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
9              BEFORE THE HONORABLE KIYO A. MATSUMOTO
                     UNITED STATES DISTRICT JUDGE
10

11   APPEARANCES

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  ALIXANDRA E. SMITH, AUSA
                                         -and-
15                              U.S. Department of Justice
                                950 Constitution Ave., NW
16                              Washington, DC 20530-0001
                                BY:  DEREK ETTINGER, ESQ.
17                                   DENNIS KIHM, ESQ.

18   For the Defendant:         CARLTON FIELDS
                                405 Lexington Avenue 36th Floor
19                              New York, New York 10174
                                BY:  MICHAEL L. YAEGER, ESQ.
20                                   ADAM SCHWARTZ, ESQ.
                                     ROBERT MCCAULEY, ESQ.
21
     Court Reporter:            Georgette K. Betts, RPR, FCRR, CCR
22                              Phone:  (718)804-2777
                                Fax:    (718)804-2795
23                              Email:  Georgetteb25@gmail.com

24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

1       THE COURTROOM DEPUTY:  This is criminal cause for

2  pleading.  19-CR-277 U.S.A. versus Zwi Skorniki.

3       Will the government attorney please state your

4  appearance.

5       MS. SMITH:  Good morning, Your Honor, Alixandra

6  Smith for the United States.  With me are DOJ trial attorneys

7  Derek Ettinger and Dennis Kihm.

8       THE COURT:  Good morning.

9       THE COURTROOM DEPUTY:  And on behalf of

10  Mr. Skorniki.

11       MR. YAEGER:  Yes, good morning, Your Honor.  Michael

12  Yaeger for Mr. Skorniki.  With me is Mr. Adam Schwartz,

13  Mr. Bob McCauley from our firm Carlton Fields and two lawyers

14  from Brazil.

15       THE COURT:  Good morning.  Which one is Mr.

16  Skorniki.  Hello.

17       THE DEFENDANT:  Good morning.

18       THE COURT:  Sir, do you speak and understand English

19  without any difficulty?

20       THE DEFENDANT:  Yes, I understand.

21       THE COURT:  Please raise your right hand and take an

22  oath to tell the truth.

23       (Defendant sworn/affirmed.)

24       THE DEFENDANT:  Yes.

25       THE COURT:  Please have a seat everybody.

1    Mr. Skorniki, before I decide whether to accept your

2   guilty plea -- have a seat, please -- there are a number of

3   questions I must ask you in order to assure myself that your

4   plea is valid.

5    THE DEFENDANT:  Yes.

6    THE COURT:  So if you do not understand my question,

7   or if you need clarification, or if you wish to speak to your

8   attorney, please let me know.  All right, sir?

9    THE DEFENDANT:  Yes.

10    THE COURT:  Mr. Yaeger, I just want to confirm have

11   you entered a notice of appearance on this docket?

12    MR. YAEGER:  I have not.

13    THE COURT:  I can't allow you to represent him.  I

14   thought it was Mr. Padula.

15    MR. YAEGER:  Mr. Padula, unfortunately, was not able

16   to be here today.  I am a partner in the firm in New York and

17   so I am filling in.  I will --

18    THE COURT:  I would hate to have a lawyer who is not

19   counsel of record represent any defendant in a guilty plea.

20    MR. YAEGER:  I understand, Your Honor.  I will enter

21   the appearance.

22    THE COURT:  You can do that downstairs in the

23   clerk's office.

24    MR. YAEGER:  Would Your Honor like me to do that

25   right now and we will take a five minute recess?

1        THE COURT:  I think that should be fine.  I just

2   don't feel comfortable having you appear here --

3        MR. YAEGER:  Understood, Your Honor.

4        THE COURT:  -- without having noted your appearance

5   on the docket.

6        MR. YAEGER:  Yes, Your Honor.

7        THE COURT:  All right.  Thank you.  We'll take five

8   minutes.

9        (Recess.)

10       THE COURT:  All taken care of?

11       MR. YAEGER:  Yes, Your Honor.

12       THE COURT:  We'll start over.

13       This is a guilty plea in the case of U.S. versus Zwi

14   Skorniki, 19-CR-277.

15       Mr. Skorniki, you've been sworn to tell the truth.

16       Do you understand?

17       THE DEFENDANT:  Yes.

18       THE COURT:  All right.  Now I will be asking you

19   questions under oath in order to assure myself that your

20   guilty plea is valid.  If you don't understand my question, or

21   wish to confer with Mr. Yaeger, or would like me to repeat or

22   clarify my question, please let me know.  All right, sir?

23       THE DEFENDANT:  Okay.

24       THE COURT:  Now do you speak and understand English

25   without any difficulty?

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes, ma'am. |
| 2 | THE COURT:  How long have you spoken English? |
| 3 | THE DEFENDANT:  Since the '70s. |
| 4 | THE COURT:  Since the '70s? |
| 5 | THE DEFENDANT:  Yes. |
| 6 | THE COURT:  Did you study English formally? |
| 7 | THE DEFENDANT:  Yes, in the university, in the high |
| 8 | school, yes. |
| 9 | THE COURT:  All right.  Thank you.  You may sit down |
| 10 | if you wish, sir. |
| 11 | THE DEFENDANT:  Okay. |
| 12 | THE COURT:  Do you understand that having been sworn |
| 13 | to tell the truth, your answers to my questions will be |
| 14 | subject to penalties of perjury or making false statements if |
| 15 | you do not answer truthfully? |
| 16 | THE DEFENDANT:  I understand. |
| 17 | THE COURT:  I note that Mr. Yaeger has entered his |
| 18 | appearance on our docket in this case and he is by your side |
| 19 | representing you.  If you wish to confer with him at any time |
| 20 | you may do so. |
| 21 | Would you tell me your full legal name, please. |
| 22 | THE DEFENDANT:  Again, please. |
| 23 | THE COURT:  What is your full legal name? |
| 24 | THE DEFENDANT:  Zwi Skorniki. |
| 25 | THE COURT:  Mr. Skorniki, how old are you? |

1              THE DEFENDANT:  Sixty-nine.

2              THE COURT:  What schooling or education have you

3     had?

4              THE DEFENDANT:  I'm a civil petroleum engineer.

5              THE COURT:  Do you have what's equivalent to a

6     bachelor's degree or a master's degree.

7              THE DEFENDANT:  It is a bachelor.

8              THE COURT:  Thank you.

9              And do you have any difficulty reading or writing

10    English?

11             THE DEFENDANT:  No.

12             THE COURT:  And you can understand and speak

13    English, correct?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Mr. Yaeger, have you detected any

16    difficulty on behalf of your client with the English language?

17             MR. YAEGER:  I have not, Your Honor.

18             THE COURT:  Thank you.

19             Mr. Skorniki, are you presently or have you recently

20    been under the care of any physician or psychiatrist?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  In the past 24 hours, have you consumed

23    any narcotic drugs, alcoholic beverages, or any medicine or

24    pills?

25             THE DEFENDANT:  No, Your Honor.

1        THE COURT:  Have you recently been hospitalized or

2   treated for any mental or emotional condition or narcotic or

3   drug --

4        THE DEFENDANT:  No.

5        THE COURT:  -- or alcohol addiction?

6        THE DEFENDANT:  No, Your Honor.

7        THE COURT:  Do you feel that your mind is clear now?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  Do you understand why you are here and

10  what is going on in this proceed?

11        THE DEFENDANT:  Yes, Your Honor.

12        THE COURT:  Mr. Yaeger, have you discussed the

13  matter of pleading guilty with your client?

14        MR. YAEGER:  I have, as has my colleague Mr. Padula.

15        THE COURT:  All right, sir.  And in your view,

16  Mr. Yaeger, does your client understand the rights he would be

17  waiving if he were to plead guilty?

18        MR. YAEGER:  Yes, Your Honor.

19        THE COURT:  Is he capable of understanding the

20  nature of the proceedings we are holding right now?

21        MR. YAEGER:  He is.

22        THE COURT:  Do you have any doubt as to whether or

23  not Mr. Skorniki is competent to plead?

24        MR. YAEGER:  I do not.

25        THE COURT:  Have you advised Mr. Skorniki of the

1   minimum and maximum sentence and fine that could be imposed as

2   a result of this guilty plea?

3           MR. YAEGER:  Yes.

4           THE COURT:  Have you also discussed with him the

5   advisory nature of the sentencing guidelines and the statutory

6   sentencing factors that I would consider in determining his

7   sentence?

8           MR. YAEGER:  Yes.  My colleague did so in more

9   detail than I did, but yes.

10          THE COURT:  Mr. Skorniki, do you understand the

11  penalties and fines that you could face if you do proceed with

12  your guilty plea?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Have you received a copy of the

15  information pending against you, that is, the charges?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Have you had a chance to discuss those

18  charges with either Mr. Yaeger or Mr. Padula or both?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Are you satisfied with your attorneys,

21  sir?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And did you have any difficulty

24  understanding the charges?

25          THE DEFENDANT:  No, Your Honor.

1      THE COURT:  Would you like me to read the charges to

2  you or do you feel that you understand?

3      THE DEFENDANT:  I understand.

4      THE COURT:  All right, sir.

5      Now, you do have a constitutional right to be

6  charged by an indictment of a grand jury but you can waive

7  that right to an indictment and agree to being charged by an

8  information of the United States Attorney.  Instead of an

9  indictment, the felony charges against you have been brought

10  by the United States Attorney by the filing of an information.

11  Unless you waive your right to an indictment, you may not be

12  charged with a felony under federal law unless a Grand Jury

13  finds, by return of an indictment, that there is probable

14  cause to believe that an offense under federal law has been

15  committed and that you committed that offense.

16      Do you understand?

17      THE DEFENDANT:  Yes.

18      THE COURT:  If you do not waive indictment, the

19  government may present the case to the Grand Jury and request

20  that the Grand Jury indict you.  A Grand Jury is an

21  independent body of citizens of the Eastern District of New

22  York.  They are not employees of the Court or of the

23  prosecutor's office.  A Grand Jury is comprised of at least 16

24  citizens and not more than 23 citizens.  At least 12 Grand

25  Jurors must find that there is probable cause to believe that

1   you committed the crime with which you are charged before you

2   may be indicted.

3             Do you understand?

4             THE DEFENDANT:  Yes, I understand.

5             THE COURT:  A Grand Jury might or might not vote to

6   indict you.

7             Do you understand?

8             THE DEFENDANT:  Yes.

9             THE COURT:  If you do waive indictment by the Grand

10  Jury, the case will proceed against you on the United States

11  Attorney's information just as though you had been indicted.

12            Do you understand?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  Have you discussed the matter of waiving

15  indictment with your attorney?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Do you understand that you do have a

18  right to be indicted by a Grand Jury?

19            THE DEFENDANT:  Yes, I understand.

20            THE COURT:  Do you wish to waive your right to an

21  indictment?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Did any anyone threaten you or promise

24  anything to you to induce you to waive your right to an

25  indictment?

1              THE DEFENDANT:  No.

2              THE COURT:  Now I have before me, sir, a document

3       entitled Waiver of Indictment.  Did you sign this document

4       along with your attorney?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Did you do so today?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And before you signed this, did you

9       discuss any questions you might have about your right to be

10      indicted versus proceeding against you by way of an

11      information, did you discuss this with your lawyer?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Do you have any questions about this,

14      sir?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  All right.

17             Well, I find, sir -- then let me just ask

18      Mr. Yaeger, is there any reason why your client should not

19      waive indictment?

20             MR. YAEGER:  There is not, Your Honor.

21             THE COURT:  I find that Mr. Skorniki's waiver of

22      indictment and his signature on the waiver is knowing and

23      voluntary and I accept his waiver of indictment.

24             Now, sir, the information, as you know, charges you

25      with conspiracy to violate Foreign Corrupt Practices Act.

1          Do you understand?

2          THE DEFENDANT:  Me?

3          THE COURT:  Yes.

4          THE DEFENDANT:  Yes, I understand.

5          THE COURT:  Now I understand you wish to waive

6   reading of the information; is that correct?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  I will review the elements of the

9   offense charged in just a moment, but first let me remind you

10  that you have the right to counsel.  Mr. Yaeger is appearing

11  here on your behalf and I want to make sure that you have

12  discussed with your counsel, Mr. Yaeger and Mr. Padula, your

13  right to have a trial, your right to be indicted and the

14  possible offenses that you face if you do plead guilty to the

15  information.

16         Have you done that, sir?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Are you satisfied to have Mr. Padula and

19  Mr. Yaeger represent you here today?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  You do have the right to persist in your

22  plea of not guilty or to enter a plea of not guilty to the

23  information.

24         Do you understand?

25         THE DEFENDANT:  Yes.

1          THE COURT:  If you do plead not guilty to the

2    information, under the United States Constitution and laws you

3    would be been entitled to a speedy and public trial by a jury

4    with the assistance of your attorney on the charges contained

5    in the indictment 19-CR-277.

6          Do you understand?

7          THE DEFENDANT:  Yes. Your Honor.

8          THE COURT:  At the trial you would be presumed to be

9    innocent and the government would have to overcome that

10   presumption and prove you guilty by competent evidence and

11   beyond a reasonable doubt as to each and every element of the

12   offense charged in the information.  You would not have to

13   prove that you were innocent.  If the government failed to

14   prove you guilty beyond a reasonable doubt, the jury would

15   have the duty to find you not guilty.

16          Do you understand?

17          THE DEFENDANT:  Yes. Your Honor.

18          THE COURT:  And that's why sometimes in a criminal

19   case juries will return a verdict of not guilty even if the

20   jurors may believe that it is probable that the defendant did

21   commit the offense.  When a jury returns a not guilty verdict,

22   the jurors are not necessarily finding that the defendant is

23   innocent, but rather the jury may not have been convinced

24   beyond a reasonable doubt that the defendant is guilty.

25          Do you understand the difference?

1          THE DEFENDANT:  Yes. Your Honor.

2          THE COURT:  In the course of the trial the witnesses

3    for the government would have to come to Court and testify in

4    your presence and your attorney would have the right to object

5    to all of the evidence offered against you by the government

6    and to cross examine those witnesses.  And although you would

7    have no burden to do so, your attorney would have the right to

8    present evidence and to compel witnesses to come to Court and

9    testify in your defense.

10          Do you understand?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  At the trial, although you would have

13    the right to testify if you chose to do so, you could not be

14    required to testify.  The United States Constitution protects

15    your right not to incriminate yourself.  So if you decided to

16    go to trial and decided not to testify, I would instruct the

17    jury that they could not hold that against you or even discuss

18    that during their deliberations.

19          Do you understand?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  If you do plead guilty and I accept your

22    guilty plea, you will be giving up your constitutional right

23    to a jury trial and all the other rights I just described.

24    There will be no further trial of any kind and no right to

25    appeal from the judgment of guilty entered against you.  You

1  will essentially be convicted based upon your plea of guilty

2  during this proceeding that we are holding right now and the

3  government will be free of any responsibility to prove

4  anything about what you did in connection with the charges in

5  the information.

6         Do you understand?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  Now, let me just advise you of what the

9  government would have to prove in order to prevail at trial on

10  the conspiracy to violate the Foreign Corrupt Practices Act.

11         First, that two or more persons entered an illegal

12  or unlawful agreement charged in the information starting in

13  about 2001.

14         Second, that you knowingly and willfully became a

15  member of that conspiracy or unlawful agreement.

16         Third, that one of the members of the conspiracy

17  knowingly committed at least one overt act charged in the

18  information and that the overt -- and, fourth, that the overt

19  act was committed to further some objective of the conspiracy.

20         Do you understand?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Now the information also charges that

23  you are an employee or agent of the domestic concern here in

24  the United States subsidiary of KOM, that you made use of the

25  mails or any means or instrumentality of interstate commerce,

1    that in furtherance of an offer, payment, promise to pay or

2    authorization of payment of anything of value to a foreign

3    official or any person with knowledge knowing that all or a

4    portion of such money or thing of value would be offered,

5    given or promised directly or indirectly to any foreign

6    official, corruptly and for the purpose of either influencing

7    acts and decisions of such foreign official, foreign political

8    party, an official thereof in his or her official capacity, or

9    inducing such foreign official, foreign political party or

10   official thereof to do and omit acts in violation of a lawful

11   duty of such official and party, or a third, securing any

12   improper advantage, or inducing such foreign official, foreign

13   political party and official thereof to use his or her

14   influence with a foreign government and agencies and

15   instrumentalities in order to assist the domestic concern in

16   obtaining and retaining business for or with or directing

17   business to any person, and that you acted willfully.

18            And that's part of the Foreign Corrupt Practices Act

19   anti-bribery provision.

20            Do you understand?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Now, if you do proceed to trial and were

23   convicted by the verdict of the jury, you would have the right

24   to ask the Court of Appeals to review the legality of all of

25   the proceedings leading up to your conviction, but when you

1   enter a plea of guilty you are substituting your own words for

2   the jury's verdict and when you do that you give up your right

3   to bring an appeal or any other challenge to your conviction

4   or the judgment of guilty entered against you.

5           Do you understand?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  If you do plead guilty, I will have to

8   ask you questions about what you did regarding these charges

9   in order to satisfy myself that you are, in fact, guilty of

10  the charge to which you seek to plead guilty.  You will have

11  to answer my questions truthfully and completely and

12  acknowledge your guilt and in that process you will be giving

13  up your right not to incriminate yourself.

14          Do you understand?

15          THE DEFENDANT:  Yes, I understand.

16          THE COURT:  Are you willing to give up your right to

17  a jury trial and all the other rights I've just discussed?  Do

18  you want to give up your right to a trial and the other rights

19  we've just discussed?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right, sir.  I've marked as Court

22  Exhibit 1 a document that appears to be an agreement between

23  you and the United States Government.  If you could look at

24  the last page of that document and tell me whether or not that

25  is your signature above the line with your name.

1          THE DEFENDANT:  Yes, it is mine.

2          THE COURT:  Before you signed this document, did you

3    have a chance to review it and discuss the terms with your

4    attorney?

5          THE DEFENDANT:  Many times, yes.

6          THE COURT:  Do you understand what this document

7    provides?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And by signing this document do you

10   intend to indicate that you both understand the terms of this

11   agreement and that you agree to those terms?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  I think what we should do is advise you

14   that in your agreement you are agreeing with regard to

15   paragraph 11, that if you do plead guilty there will be

16   immigration consequences.

17         THE DEFENDANT:  Yes.

18         THE COURT:  And with regard to your immigration

19   status, because you're not a United States citizen.

20         THE DEFENDANT:  Yes, I understand.

21         THE COURT:  And that you can be removed and in all

22   likelihood would be removed from the United States.

23         Do you understand?

24         THE DEFENDANT:  I understand.

25         THE COURT:  Did you discuss this provision with your

1   attorney?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Now I'm going to also review the other

4   penalties that you face.  Those are set forth on the

5   government's plea penalty sheet, which we've marked as court

6   Exhibit 1A.  Court Exhibit 1 was your agreement, Court

7   Exhibit 1A are the penalties that you face.

8           For conspiracy to violate the Foreign Corrupt

9   Practices Act you face a maximum term of imprisonment of five

10  years.  There is no minimum term of imprisonment.

11          The maximum supervised release term is three years

12  which follows any term of imprisonment.  During the time of

13  your supervised release you would be under the supervision of

14  a probation officer who will have authority to supervise your

15  activities and to require that you report to him or her about

16  your activities.  If you fail to comply with the terms of your

17  supervised release, you could be returned to prison for up to

18  two years without any credit for time that you've already

19  served in prison and without any credit for time that you've

20  already served on supervised release.

21          Do you understand?

22          THE DEFENDANT:  Yes, I understand.

23          THE COURT:  You also face a maximum fine of $250,000

24  and restitution, which means that you would have to compensate

25  your victims.  That amount will be an issue that you and the

1    government will be welcome to submit papers on regarding the

2    restitution amount.

3            In addition, you must pay a 100-dollar mandatory

4    special assessment which is required by law at the time you

5    are sentenced.  And you must also again recognize that you

6    face removal from the United States.

7            Do you understand?

8            THE DEFENDANT:  Yes, I understand, Your Honor.

9            THE COURT:  Now, sir, under the Sentencing Reform

10   Act of 1984, the United States Sentencing Commission issued

11   guidelines for judges to consult in determining a sentence in

12   a criminal case.  The United States Supreme Court has decided

13   that those guidelines are not mandatory but rather advisory.

14   The guidelines provide a range of sentence within the

15   statutory minimum of zero and a maximum of five years.  I'm

16   required to consult those guidelines as well as factors set

17   forth in the criminal code at 18 U.S. Code Section 3553 in

18   determining your sentence.

19           Now, as I said, the penalty sheet estimates that

20   your guideline sentence will be 33 after you receive a

21   three-point reduction for acceptance of responsibility.  That

22   means because you've decided to plead guilty before June 30th

23   and spare the government the need to prepare for trial, the

24   government will ask me and I will award a three-point

25   reduction from your guidelines level.

1      Do you understand?

2          THE DEFENDANT:  Yes, I understand.

3          THE COURT:  Now, the guideline estimate that's set

4  forth in your penalty sheet does not refer to the Criminal

5  History Category.

6          MS. SMITH:  Your Honor, the government believes the

7  Criminal History Category would be I; however, given the

8  offense level regardless of the Criminal History Category and

9  that the maximum is five years, the defendant's guidelines we

10  predict would be 60 months.

11          THE COURT:  All right.  So the government is

12  recognizing that the law provides for a maximum of a five year

13  sentence.  And you may have a criminal history point which

14  means there may have been prior convictions that result in

15  placing you in a Criminal History Category I.  I won't know

16  all of this until I see your presentence report.

17          Now, have you spoken to your attorney about the

18  guidelines calculation in your agreement --

19          THE DEFENDANT:  Yes.

20          THE COURT:  -- or on the penalty sheet, I should

21  say?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Mr. Yaeger, do you have any difference

24  of opinion regarding the government's estimated guidelines

25  exposure for Mr. Skorniki?

22

1              MR. YAEGER:  No, Your Honor.

2              THE COURT:  All right.

3              Sir, even though Mr. Yaeger agrees generally with

4     the government's estimates of your guideline exposure, those

5     estimates could be incorrect.  I have an independent duty to

6     calculate your guidelines and in any event I may impose a

7     sentence that is more severe or less severe than that called

8     for by the guidelines.

9              Do you understand?

10             THE DEFENDANT:  Yes, I understand.

11             THE COURT:  Have you discussed the advisory

12    guidelines with your lawyers, sir?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Now, sir, you will not be sentenced

15    until after the Probation Department prepares what's called a

16    presentence report, which is a report about your role in the

17    offense, your work history, your educational background, your

18    family history, your criminal history, your financial

19    condition and all factors that I may consider that may be

20    relevant to sentencing.  You will have an opportunity to read

21    and correct or object to any facts reported in the presentence

22    report and the government will have an opportunity to reply.

23             Do you understand?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Once I receive the presentence report

1    and all of the comments or objections or corrections, again I

2    must independently consider all of that and make my own

3    independent guidelines calculation and decide whether or not

4    I'm going to impose a guidelines sentence or provide a

5    sentence that is more or less severe than that called for by

6    the guidelines.  The limitation on me is that I may not exceed

7    the statutory maximum of five years.

8         Do you understand?

9         THE DEFENDANT:  Yes. Your Honor.

10        THE COURT:  Now, sir, I want to point to another

11   important provision of your agreement, which is paragraph 3.

12   You are agreeing not to file an appeal or challenge your

13   conviction if I impose a term of imprisonment of 60 months or

14   less.  Do you understand that you are waiving your right to

15   challenge a sentence of 60 months or less?

16        THE DEFENDANT:  Yes, Your Honor.

17        THE COURT:  Have you discussed this provision with

18   your attorneys?

19        THE DEFENDANT:  Yes, I discussed.

20        THE COURT:  In addition, sir, parol has been

21   abolished, and if you are sentenced to prison you will not be

22   released on parole.

23        Do you understand?

24        THE DEFENDANT:  Yes, your Honor.

25        THE COURT:  One other thing, Mr. Skorniki, is that

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*

1    if you receive a sentence that is not what you would expect or

2    hope for, that that will not be a basis for you to withdraw

3    your guilty plea.

4              Do you understand?

5              THE DEFENDANT:  Yes, I understand.

6              THE COURT:  Are you ready to plead?

7              THE DEFENDANT:  Yes, Your Honor.

8              MS. SMITH:  Your Honor, before we do that I want to

9    note one other provision of the agreement.

10             THE COURT:  Of course.

11             MS. SMITH:  Pursuant to paragraph 5c of the

12   agreement, under Federal Rule of Criminal Procedure

13   11(c)(1)(B), at sentencing the government has agreed to

14   recommend to the Court, though it is not binding on the Court,

15   that the defendant's completion of a prior criminal sentence

16   in Brazil which resulted from a plea of guilty to an offense

17   under Brazilian law that is relevant conduct to this plea,

18   should be considered by this Court as a sentencing factor and

19   the government has also agreed not to oppose the defendant's

20   request for a sentence of probation.

21             THE COURT:  The government is not going to oppose --

22             MS. SMITH:  Not going to oppose.

23             THE COURT:  -- a request for probation?

24             MS. SMITH:  Yes.

25             THE COURT:  All right, sir, well the government has

1    agreed to make certain recommendations, but they are not

2    binding on me.

3              Do you understand?

4              THE DEFENDANT:  It's clear.

5              THE COURT:  I may decide that I don't want to accept

6    the recommendation.  I don't know enough about you at this

7    time and I will certainly carefully review your request and

8    all the papers that you submit in favor of a probation

9    sentence, but I do want you to know that I'm not obligated to

10   impose a sentence of probation.

11             Do you understand?

12             THE DEFENDANT:  I understand clearly.

13             THE COURT:  All right, sir.  You said you were ready

14   to plead at this time, correct?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Mr. Yaeger, do you know of any reason

17   why Mr. Skorniki should not plead guilty to the information?

18             MR. YAEGER:  I do not.

19             THE COURT:  Are you aware of any viable legal

20   defenses that are causing you to counsel Mr. Skorniki not to

21   plead guilty to the information?

22             MR. YAEGER:  No.

23             THE COURT:  Mr. Skorniki, what is your plea, guilty

24   or not guilty?

25             THE DEFENDANT:  Yes, guilty.

1          THE COURT:  Guilty.

2          Do you plead guilty to the information, sir?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Are you making the plea of guilty

5  voluntarily and of your own free will?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Did anyone make any threats or promises?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Did anyone force you to plead guilty?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Other than the agreement that you made

12  with the government, has anyone made any promise that has

13  caused you to plead guilty today?

14          THE DEFENDANT:  No.

15          THE COURT:  All right, sir.  Did anyone make any

16  promise to you about what your sentence will be?  Did anyone

17  say, that -- did anyone promise you that you will receive a

18  certain sentence?

19          THE DEFENDANT:  No, no promise.

20          THE COURT:  All right, sir.  Then let me ask you to

21  tell me in your own words what you did in connection with the

22  acts charged in the information, specifically conspiracy to

23  violate the Foreign Corrupt Practices Act.

24          THE DEFENDANT:  May I read?

25          THE COURT:  Yes, please.  If you're going to read a

1    statement I want to make sure, did you prepare this statement?

2            THE DEFENDANT:  Yes, together with my lawyers.

3            THE COURT:  And do you accept the statement as your

4    own statement?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  All right.  I would ask that you please

7    read slowly and clearly.

8            THE DEFENDANT:  May I sit?

9            THE COURT:  Of course.

10           THE DEFENDANT:  Between 2001 and 2014, I agree with

11   others, including employees of Keppel Offshore and Marine,

12   which is sometimes called KOM, and Technip an engineering and

13   construction company that was headquartered in France, to pay

14   bribes to help win business for those companies with

15   Petrobras, an oil company majority owned and controlled by the

16   Brazilian government.

17           THE COURT:  All right.  Would Mr. Yaeger mind

18   sharing the statement with our court reporter so that we can

19   understand what he said.

20           MR. YAEGER:  Absolutely, Your Honor.

21           THE COURT:  I understood that you said that you

22   agreed with others, including KOM and Technip, which is

23   headquartered in France, to pay bribes to win contracts with

24   Petrobras, an oil company?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  That is partly owned or --

2          MR. YAEGER:  Majority owned.

3          THE COURT:  Majority owned by --

4          THE DEFENDANT:  By the Brazilian government.

5          THE COURT:  -- by the Brazilian government.  And in

6  exchange for those bribes, you expected and indeed contracts

7  were awarded.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Correct?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.

12          MR. YAEGER:  I believe there was a little bit more

13  to the statement.

14          THE DEFENDANT:  May I continue?

15          THE COURT:  I'm sorry.

16          THE DEFENDANT:  It's okay.

17          THE COURT:  I'm happy to hear more.

18          THE DEFENDANT:  I acted on behalf of and as an agent

19  for several KOM and Technip entities, including KOM USA and

20  FSTP.  I acted together with employees at these companies.  In

21  order to keep the bribes a secret, employees at the companies

22  send money to my consulting companies I controlled.  They did

23  this under agreement that made it look like my companies were

24  being paid only for help in negotiation with potential

25  customers.  In reality, part of the payments were to be used

1   to pay bribes.

2            May I continue?

3            THE COURT:  Of course.

4            THE DEFENDANT:  Or you want some clarification?

5            THE COURT:  No.  I think we will ask you to

6   continue.

7            THE DEFENDANT:  Okay.  I knew that some of the money

8   paid will go to persons affiliated with the Workers Party of

9   Brazil, what we call PT.

10           THE COURT:  The money -- part of the money you knew

11  was going to the Workers Party in Brazil?

12           THE DEFENDANT:  Yes.  A political party that's

13  controlled by the federal government in Brazil at the time.  I

14  also knew some of the money will go to two officials at

15  Petrobras, an oil company majority-owned and controlled by the

16  Brazilian government.

17           The payments from KOM and Technip to the consulting

18  companies I controlled were made to bank accounts, some which

19  were located the United States.

20           Also in November 25th, 2008, I send an email to

21  executives at KOM to sought confirmation that I will be paid.

22  The email reference that I will be paid additional commission

23  for others including the party.

24           That's it, Your Honor.

25           THE COURT:  All right.  So you entered into this

1   unlawful agreement knowingly; is that correct?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  And the agreement involved these

4   payment -- the payments of frauds in order to secure --

5           THE DEFENDANT:  Part for me and part to pay bribes

6   for some other people.

7           THE COURT:  All right.  Now, sir, you noted that

8   some of the money that was paid went through bank accounts in

9   the United States.

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Are those venued in the Eastern District

12  of New York?

13          MS. SMITH:  Yes, Your Honor.  Some of them were

14  located in New York and the wires for those transfers

15  transited through the Eastern District of New York,

16  specifically the money that was paid to the consulting

17  companies.

18          THE COURT:  Do you agree with the government's

19  statement about the wire transfers for payments paid to

20  consulting companies went through what's called the Eastern

21  District of New York, which includes Brooklyn, Queens, Long

22  Island, and Staten Island.  Maybe Mr. Yaeger and Mr. Skorniki

23  can confirm whether or not they have knowledge that that is so

24  or would otherwise agree with the government's proffer on that

25  point.

1      MR. YAEGER:  That is my understanding and we agree

2  with the government's proffer on that point.

3      THE COURT:  All right.  Thank you.

4      Mr. Skorniki, you agree also?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  All right.  Is there anything else that

7  either the government or Mr. Yaeger would like to contribute

8  or have Mr. Skorniki allocute to regarding his allocution?

9      MS. SMITH:  No, Your Honor.

10     THE COURT:  Mr. Yaeger?

11     MR. YAEGER:  No, Your Honor.

12     THE COURT:  Mr. Skorniki, based upon the information

13  you provided, I find that you are acting voluntarily, that you

14  fully understand your rights and the consequences of your plea

15  and the waiver of indictment, and that there is a factual

16  basis for your plea of guilty to the information.  I accept

17  your plea of guilty to the information.

18     I urge you to cooperate with the probation officer

19  in the preparation of your presentence report and I would note

20  that we've scheduled your sentencing date for September 23rd,

21  2019 at 11 o'clock.

22     The parties, is that all right with you?

23     THE DEFENDANT:  Twenty-third of September?

24     THE COURT:  Yes, at 11 in the morning.

25     THE DEFENDANT:  In the same place?

1          THE COURT:  Right here.  Yes.

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Now, is he out on bail or has bail been

4     set?

5          MS. SMITH:  We have not yet set bail.

6          THE COURT:  So we'll have to deal with that.

7          MS. SMITH:  We have an agreed upon package.

8          THE COURT:  Let me first, then, tell you that the

9     lawyers are expected to comply with Federal Rules of Criminal

10    Procedure 32 regarding any objections or corrections to the

11    presentence report.  Those need not be filed on ECF, but they

12    should be served on opposing counsel and probation and a

13    courtesy copy to the Court.

14          The defense objections are due within two weeks of

15    receipt of the PSR and the government should respond one week

16    thereafter.  Any sentencing motions, submissions or letters of

17    support from Mr. Skorniki should be submitted via ECF with

18    redactions of personally identifying information or minor

19    children or personal health information, but you should serve

20    unredacted copies on probation and the Court.

21          The defense sentencing submissions are due

22    September 5th.  The government will respond by -- I'm sorry,

23    September 12th and any reply by the defense is due

24    September 19th.

25          Now, did you want to discuss bail?

1          MS. SMITH:  Yes, Your Honor.

2          THE COURT:  What is the proposal?

3          MS. SMITH:  Your Honor, just to give you a little

4    bit of background.  The defendant is obviously a Brazilian

5    citizen and given the nature of coming into plead guilty in

6    connection with this crime, we have been working with the

7    immigration authorities and he's been paroled into the

8    country, but just for the plea and the sentencing.  And so we

9    have agreed that Mr. Skorniki will return to Brazil between

10   the plea and the sentencing and we've agreed to a bail package

11   of a hundred thousand dollars with Mr. Skorniki's signature.

12          THE COURT:  So the only requirement is that he

13   return --

14          MS. SMITH:  Return for the sentencing.

15          THE COURT:  -- for the sentencing?

16          MS. SMITH:  Yes.

17          THE COURT:  How do we intend to get the presentence

18   report done, by telephone?

19          MS. SMITH:  I think we can do it by telephone.

20   We've also been able to set up Skype or Webex if necessary.

21   We can set that up in our office for probation to interview

22   him in person via Webex.

23          THE COURT:  I trust the government or probation will

24   obtain a sworn financial statement before the date of

25   sentencing?

1          MS. SMITH:  Yes, Your Honor.

2          THE COURT:  You'll give us information and the

3   defense information regarding any restitution sought.

4          MS. SMITH:  Yes, Your Honor.  It's our

5   understanding, given the nature of the charges in here, there

6   will not be restitution.  Mr. Skorniki has already paid, I

7   believe approximately $25 million in fines in Brazil already,

8   and so all of that information will be provided in connection

9   with the presentence report as well as any financial

10  statement.

11         THE COURT:  All right.  Mr. Yaeger, is the

12  government's proposal acceptable to your client?

13         MR. YAEGER:  It is, Your Honor.

14         THE COURT:  And does he have bail money now?

15         MS. SMITH:  We're going to -- it's just it's not

16  actually posted just with his signature.

17         MR. YAEGER:  A personal recognizance.

18         MS. SMITH:  Personal recognizance.

19         THE COURT:  What assurance do you have that if he

20  doesn't comply you'll be able to secure a hundred thousand

21  dollars from Mr. Skorniki?

22         MS. SMITH:  So we have a full understanding of his

23  access, we've also been working with Brazilian law enforcement

24  who are aware of the plea and are working with us in

25  conjunction, so that -- sort of that cooperation is the

35

1  assurance that we have.  There have been all these assets

2  seized in Brazil and additional to be seized.

3          THE COURT:  All right.  Well, I suppose he should

4  sign a bond in any event.

5          MS. SMITH:  Yes, Your Honor.

6          THE COURT:  All right.

7          Are there any prohibitions about associating with

8  anybody?

9          MS. SMITH:  Just, Your Honor, the standard

10  prohibition on associating with co-conspirators.

11          THE COURT:  Is he aware of who they are?

12          MS. SMITH:  Yes, Your Honor.

13          THE COURT:  And no suretors?

14          MS. SMITH:  That's correct.

15          THE COURT:  Why don't you review the bond with

16  Mr. Yaeger and if it's acceptable to both parties, he can sign

17  it.

18          (Pause in proceedings.)

19          THE COURT:  All right.  It appears that Mr. Skorniki

20  has signed the bond and I will execute it and he's released

21  and I will see you in September, if not before.  All right,

22  sir?

23          THE DEFENDANT:  The 23rd.

24          THE COURT:  The 23rd, yes, sir.

25          THE DEFENDANT:  Yes, Your Honor.

```
1              THE COURT:  All right.  Is there anything else I

2     need to deal with right now?

3              MS. SMITH:  Your Honor.

4              THE COURT:  All right.  Nice to see you.

5              MR. YAEGER:  Yes, Your Honor, we're fine.

6              THE COURT:  Nice to see you, Mr. Yaeger.

7              MR. YAEGER:  Yes, Your Honor, thank you.

8              THE COURT:  I had to ask you.

9              MR. YAEGER:  You are fully in the right.  I couldn't

10    possibly disagree.

11             THE COURT:  Thank you.

12             (Matter concluded.)

13

14                      *     *     *     *     *

15

16    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
17

18    s/ Georgette K. Betts              July 1, 2019

19    GEORGETTE K. BETTS                 DATE

20

21

22

23

24

25
```

*GEORGETTE K. BETTS, RPR, FCRR, CCR*
*Official Court Reporter*