# EXHIBIT 128



Deposition of:
# Kevin Lowder

*December 10, 2020*

In the Matter of:

# EIG v. Petrobras

Veritext Legal Solutions
800-734-5292 | calendar-dmv@veritext.com |

Page 1

1              IN THE UNITED STATES DISTRICT COURT
2                 FOR THE DISTRICT OF COLUMBIA
3     - - - - - - - - - - - - - - x
4        EIG ENERGY FUND XIV,      :
5        L.P., et al.,             :
6             Plaintiffs,          :   Case number
7           v.                     :   1:16-cv-333-APM
8        PETROLEO                  :
9        BRASILEIRO S.A.,          :
10             Defendant.          :
11    - - - - - - - - - - - - - - x
12
13
14                       - - - - -
15              Thursday, December 10, 2020
16                       - - - - -
17
18
19    CONFIDENTIAL REMOTE ZOOM AUDIO/VIDEO deposition of
20    KEVIN LOWDER, beginning at 8:05 a.m. CST before
21    Christina S. Hotsko, RPR, CRR, when were present
22    on behalf of the respective parties:

Page 36

1  names of Petrobras -- other than Joao Ferraz.
2      Q.  Are the advisors that you're referring to
3  Lakeshore Partners?
4          MS. LAW:  Objection to form.
5          You can answer.                              09:38:36
6          THE WITNESS:  When I originally -- if I
7  could -- if I originally remember correctly,
8  something there was an advisor to Petrobras.  And
9  my original interactions with advisors of
10 Petrobras were Santander.  I believe there was     09:38:58
11 also a transition of individuals from Santander to
12 Lakeshore, and I remember also continuing those
13 conversations with those individuals.
14         So from my perspective, I always, I would
15 say, viewed Santander and Lakeshore as the          09:39:16
16 advisors, so I could call them
17 Santander/Lakeshore, for that period of time.  And
18 they were advising Petrobras.
19 BY MR. WOLINSKY:
20     Q.  Is it your understanding that Lakeshore    09:39:35
21 was advising Petrobras?
22     A.  I guess I didn't make the distinction

Page 37

1   between, you know, Petrobras and Sete and

2   Lakeshore and Santander, to be quite frank,

3   because of these transitions that I mentioned.

4       Q.  Do you remember anyone specific at

5   Santander that you communicated with about a        09:39:55

6   potential investment in Sete Brasil?

7       A.  At Santander?  Yes.  My -- would you like

8   to know the names?

9       Q.  Yes.

10      A.  It would be Luiz Reis and Ivan -- Hong, I   09:40:13

11  believe was his last name -- were the original, I

12  would say, points of contact and interface, I

13  believe, over the course of, you know -- person

14  responsibility for the financial modeling.  There

15  were several more, and I don't remember all of      09:40:28

16  their names and whether they were, in fact,

17  Santander or Lakeshore people at any given moment

18  in time.

19      Q.  Did you -- do you remember any specific

20  names of any persons with Lakeshore that you        09:40:39

21  communicated with about a potential investment in

22  Sete Brasil?

Page 38

1    A.   Yeah.  As I mentioned, I don't believe

2    Lakeshore existed on my first visit and

3    interaction related to evaluating Sete Brasil.  I

4    believe, from recollection, it was formed kind of

5    over the course during the same general time                09:41:00

6    period as the investment.  And when it was formed,

7    I guess, and I believe -- I recall those members

8    of Lakeshore were the same individuals or had come

9    from Santander.

10   Q.   Other than Mr. Ferraz, can you identify            09:41:16

11   anyone else who worked for Petrobras that you

12   communicated with about Sete Brasil?

13   A.   I don't think I could identify anyone.

14   As a general matter, I do recall him being the

15   leader of the group and then being, as is typical       09:41:39

16   for some of these meetings and general

17   introductions, there being other members of the

18   team.  But I cannot identify or recall their

19   names.

20   Q.   Did you -- did you ever meet with the             09:41:53

21   Petrobras CEO -- CFO with respect to the Sete

22   Brasil investment?

Page 76

1   built this chart?

2       A.  I believe I would have.  Yes.

3       Q.  Okay.  And where would you have gotten

4   the information that you used in this chart?

5       A.  I would have sourced the underlying data          10:23:59

6   likely from a financial model that was furnished

7   by the target investment company and/or its

8   advisors.  I would likely work with that

9   underlying data and maybe evaluate various

10  assumptions, try to ratify those and produce this         10:24:18

11  type of analysis.

12      Q.  And I appreciate this is almost ten years

13  ago, but do you remember what -- where the

14  underlying data came from specifically for this

15  chart?                                                    10:24:35

16      A.  For this specific memo, I do not.  I'm

17  sorry.

18      Q.  Okay.  That's fine.

19          If you look at the chart, there's a row

20  labeled, USD inflation adjustment.                        10:24:42

21          Do you see that?

22      A.  I see that.

Page 92

1      would be the documents, the Excel spreadsheet

2      where that was --

3           Q.   Would you --

4           A.   -- performed and then any outputs --

5           Q.   Go ahead.                                   10:44:05

6           A.   The outputs of that financial model would

7      then ultimately be incorporated into memos or

8      investments recs.

9           Q.   That's what I'm going for.

10               So first of all, with respect to the       10:44:17

11     model, each time you changed the assumptions, did

12     you save a different copy of the model so that you

13     could record the results of the sensitivity

14     analysis?

15          A.   I wouldn't say each time.  We spent a lot   10:44:25

16     of time in these models.  I would say when there

17     are certain milestones or when the model was used

18     for a particular purpose or wanted a share for a

19     particular purpose, we had many versions, you

20     know, of the model.                                   10:44:38

21               So there might be a model that -- again,

22     using an example -- that corresponds to creating

Page 93

| | | |
|---|---|---|
| 1 | an investment recommendation where we have outputs | |
| 2 | that would then go into, let's say, a more | |
| 3 | traditional paper document or, like, a Microsoft | |
| 4 | Word document or PDF, since you're kind of | |
| 5 | freezing or capturing those. We would typically, | 10:44:56 |
| 6 | you know, try to save a model that corresponded, | |
| 7 | you know, with -- with that document so that we | |
| 8 | could always refer to that version of the model. | |
| 9 | Q. I want to go back to your description of | |
| 10 | the sensitivity analysis you did where you | 10:45:12 |
| 11 | described changing the currency assumptions and | |
| 12 | seeing how that impacted the overall investment | |
| 13 | returns. | |
| 14 | I'm trying to understand how the results | |
| 15 | of that sensitivity analysis were recorded, if | 10:45:26 |
| 16 | they were. | |
| 17 | Can you tell me the answer to that | |
| 18 | question? | |
| 19 | MS. LAW: Objection to form. | |
| 20 | You can answer. | 10:45:38 |
| 21 | THE WITNESS: I believe they would be | |
| 22 | memorialized from time to time, again, because, as | |

Page 94

| | | |
|---|---|---|
| 1 | time goes on, we update the assumptions.  But the | |
| 2 | most notable, you know, recollection would be the | |
| 3 | investment recommendation document.  I believe in | |
| 4 | this case, there was a foreign exchange | |
| 5 | sensitivity analysis done for that document | 10:45:57 |
| 6 | or that -- yeah, that document.  And that's an | |
| 7 | example.  We might have, again, from time to time, | |
| 8 | memorialized that analysis or updated it. | |
| 9 |      MS. LAW:  Robert, I don't want to break | |
| 10 | your flow, but if there's a good time for a break | 10:46:16 |
| 11 | in the near future, that would be great. | |
| 12 |      MR. WOLINSKY:  Okay.  Why don't we take | |
| 13 | that break now, and then we'll come back and we'll | |
| 14 | look at the investment recommendation. | |
| 15 |      MS. LAW:  Okay.  What about ten minutes? | 10:46:27 |
| 16 |      MR. WOLINSKY:  Sure. | |
| 17 |      MS. LAW:  It's 10:46.  10:55 New York | |
| 18 | time? | |
| 19 |      MR. WOLINSKY:  Sure.  See you in ten. | |
| 20 |      VIDEO TECHNICIAN:  The time is 9:46 a.m. | 10:46:36 |
| 21 | We are going off the record. | |
| 22 |      (A recess was taken.) | |

Page 121

1   other details of receiving the document.

2   BY MR. WOLINSKY:

3       Q.  Do you know whether you received this

4   document directly?

5       A.  I don't recall whether it was direct or          11:27:54

6   indirect.

7       Q.  Okay.  So sitting here today, do you have

8   any specific information on how EIG received this

9   document?

10      A.  Not in addition to my previous                   11:28:03

11  statements, no.

12      Q.  Do you know when EIG received this

13  document?

14      A.  I don't recall the exact date.

15      Q.  Okay.  Do you have any information about        11:28:31

16  when EIG received this document?

17      A.  Broad question, but I believe it was

18  prior to us making the investment and in the

19  general time frame of us evaluating the

20  investment, from my recollection.                       11:28:48

21      Q.  Okay.  Do you have any specific

22  recollection of reviewing this document as of

Page 122

1    June 2011?

2         A.  This is a long time ago.  But yes, it

3    looks familiar, and I believe I recall reviewing

4    and, you know, incorporating some of this

5    information into early memorandums and the like.      11:29:23

6         Q.  What information from this document did

7    you incorporate into a memorandum?

8              MS. LAW:  And Kevin, if you hover your

9    mouse at the bottom of the page, there is a menu

10   that will come up.  It starts with page 1.  And      11:29:37

11   then there is a rotate button.  If it's sideways

12   and you want to rotate it.

13             THE WITNESS:  Thank you.  I think you

14   might be noticing me tilting sideways --

15             MS. LAW:  Tilting your head.               11:29:50

16             THE WITNESS:  That button is -- okay.

17             MS. LAW:  So if you hover towards the

18   bottom of the screen, you should get a bar that

19   comes up.

20             THE WITNESS:  Thank you.                   11:29:56

21             MS. LAW:  There's two magnifying glasses

22   and then it will be rotate pages two over, next to

Page 154

1      A.    Okay.

2      Q.    Are there -- is there anywhere where you

3   show your work -- how about that? -- for

4   figure 12?

5      A.    It's where we perform the calculations          12:08:23

6   within the model.  I don't know if there's, like,

7   a bridge of showing the work, so to speak.  But

8   yeah, the calculation that would be performed in

9   the financial model would produce some results in

10  a sensitivity format.  I would convert those to a    12:08:35

11  chart format to make it more visually, you know,

12  understandable and place that in the investment

13  recommendation.

14     Q.    And so there's some sort of underlying

15  data behind figure 12 that's in an Excel sheet?      12:08:47

16     A.    There should be.  Yeah.

17     Q.    Okay.  And would you have saved that

18  Excel sheet at the time?

19     A.    Again, typically, we would probably save

20  a version of the model that corresponds with an      12:09:00

21  investment recommendation.  Sometimes investment

22  recommendations are updated and we go back to

# ERRATA SHEET

*EIG v. Petrobras*

## Kevin Lowder Transcript (#4364543)

| Page | Line(s) | Change | Reason |
|---|---|---|---|
| 2 | 3, 4 | Daniel B. Goldman and Danielle Moody should not be listed as having appeared on behalf of Plaintiffs | Clarification |
| 30 | 9 | "relate" should be "related" | Transcription error |
| 36 | 8 | "something there" should be "Santander" | Clarification |
| 37 | 13-14 | "person responsibility" should be "persons responsible" | Clarification |
| 50 | 9 | "you" should be "your" | Transcription error |
| 50 | 22 | "and the most" should be "and as the most" | Clarification |
| 51 | 16 | "had things" should be "it had things" | Clarification |
| 52 | 1 | "responsibilities, would" should be "responsibilities, it would" | Clarification |
| 58 | 14 | "analyst, that" should be "analyst, was that" | Clarification |
| 58 | 16-17 | "investment being" should be "investment as being" | Clarification |
| 60 | 8 | "team, would" should be "team, it would" | Clarification |
| 70 | 18-19 | "to be primarily be" should be "to primarily be" | Transcription error |
| 82 | 22 | "that was maybe was" should be "that maybe was" | Transcription error |
| 94 | 2 | "recollection" should be "recordation" | Clarification |
| 128 | 11, 19 | "Brasfels" should be "BrasFELS" | Transcription error |
| 129 | 2 | "afore-mentioned" should be "aforementioned" | Transcription error |
| 130 | 9 | "Brasfels" should be "BrasFELS" | Transcription error |

1

| Page | Line(s) | Change | Reason |
|---|---|---|---|
| 136 | 14 | "used for a" should be "used as a" | Clarification |
| 185 | 7 | "way, you" should be "way you" | Clarification |
| 185 | 10 | "process.  I think" should be "process, I think" | Clarification |
| 185 | 11 | "IRs" should be "IR's" | Clarification |
| 187 | 17 | "QRs, please" should be "QRs please" | Clarification |
| 187 | 18 | "the T yet" should be "the T: yet" | Clarification |
| 187 | 19 | "Thanks.  KL." Should be "Thanks, KL." | Clarification |
| 224 | 7 | "-- actually, zero" should be "-- actually, zero --" | Clarification |
| 248 | 14 | "to investment" should be "to an investment" | Transcription error |
| 254 | 7 | "says" should be "say" | Transcription error |
| 255 | 9-10, 11 | "ultradeep water" should be "ultra deepwater" | Transcription error |
| 256 | 16 | "therefore, might" should be "therefore, it might" | Transcription error |
| 258 | 17 | "July 5th" should be "July 5th [sic]" | Clarification |
| 265 | 19 | "energy funds" should be "Energy Funds" | Transcription error |

_____  
Kevin Lowder

1/6/21  
Date

2

## ACKNOWLEDGEMENT OF DEPONENT

   I, Kevin Lowder, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

_____                  1/6/21
Kevin Lowder                         Date