# EXHIBIT 150

| | |
|---|---|
| **From:** | Kevin Corrigan <Kevin.Corrigan@eigpartners.com> |
| **To:** | Blair Thomas; Kurt Talbot |
| **CC:** | Niranjan Ravindran; Randall Wade; Clay Taylor; Kevin Lowder; Patrick Songsanand; William Sikora |
| **Sent:** | 3/3/2011 2:20:37 PM |
| **Subject:** | Sete Brasil |
| **Attachments:** | Sete Brasil Opportunity Risks & Mitigants.docx |

Blair and Kurt,

As a follow on to my earlier memo and last week's conversation, please find attached an updated memo on my understanding of the opportunity and next steps/timing. I have calls into both Santander (as investor) and Machado Meyer (Jose Virgilio Lopes) to get some additional clarifications.

Any questions or comments, please let me know.

Thanks, Kevin

**From:** Kevin Corrigan
**Sent:** Monday, February 07, 2011 2:19 PM
**To:** Blair Thomas; Kurt Talbot
**Cc:** Niranjan Ravindran; Randall Wade; Clay Taylor; Kevin Lowder; Patrick Songsanand; William Sikora
**Subject:** Sete Brasil

Blair,

As discussed, please find attached a brief memo discussing the investment opportunity in Sete Brasil, the holding company being set-up by Petrobrás to initially capitalize seven SPV's to build, own and operate ultra deep water drill ships under long term charter contracts with Petrobrás. Also attached is a presentation titled "Pre-Salt Oil Rigs Project" prepared by Banco Santander, Petrobrás' financial advisor, dated October, 2010.

I have not yet gone back to Santander on how an investment on the order of $50 million would be received by Petrobrás, or whether we would obtain a board seat and get comfortable with some of the governance issues under the structure currently being proposed. However, I will await further guidance before continuing our dialogue with Santander. Please don't hesitate to contact me if you need additional information, as I realize I've only scratched the surface. Please also not we are subject to a strict confidentiality agreement with both Petrobrás and Santander on these materials.

Best regards, Kevin



Kevin Corrigan  >  Senior Vice President  >  kevin.corrigan@eigpartners.com
1700 Pennsylvania Ave. NW  >  Suite 800  >  Washington, DC 20006  >  (o) 202.600.3306  >  (f) 202.600.3406

Confidential

EIG00013796
EIG_KEP_00075067

# MEMORANDUM

To: R. Blair Thomas, Kurt Talbot
From: Kevin Corrigan
Subject: Sete Brasil/Sete International
Date: March 2, 2011



### Introduction

This is a follow-up to my memorandum of Feb. 7, 2011, to specifically address the risks and potential mitigants to an investment of up to $100 MM (in a combination of a parallel equity vehicle and Fund XIV) in Sete International, and to address the main governance issues raised in the following shareholder/quotaholder contracts:

1) Sete Brasil Participações S.A. Shareholders' Agreement;
2) FIP Sondas Quota-Holders' Agreement and Sete Brasil Participações S.A.;
3) The Investment Agreement between FIPSondas and Petrobras in Sete Brasil Participações S.A., and
4) The Strategic Plan

### Risks and Mitigants

1) **Construction Risk**: design or engineering flaws. This risk is mitigated by the fact that Petrobras has chosen what it believes is an experienced shipbuilder in EAS, which in addition to being comprised by two of the largest and most respected construction groups in Brazil, counts with a joint venture partner in Samsung which has vast experience in drill-ship construction for ultra-deep waters. Furthermore, Petrobras will closely follow the construction through a "Construction Management and Oversight Contract," thus minimizing to a great extent the possibility that errors are being committed in the construction, and thereby reducing the possibility of non-acceptance of the ship by Petrobras. Approximately 40% of the drilling system and equipment will be imported from suppliers which already supply many international drillers. The previously-discussed FGCN, to keep the senior debt holders whole, will be in the form of grants and should not, therefore, impact the equity in Sete Brasil.

2) **Cost Overruns**: traditionally, this is covered through a turnkey, fixed-price, date-certain contract, which is the case here. Additionally, the design is already existing, EAS will maintain Builders All Risk and Delay Start-up insurance, as well as a performance bond equivalent to 3% of the cost of each drill ship, as well as the close monitoring of construction by Petrobras. Finally, the contracts to be signed with the operators contemplate the use of "economic equilibrium" clauses, such that any change orders or cost overruns will cause a re-equilibrium of the day rate. The drill ships will be exempt from local taxes as well as import taxes on the machinery and components being imported, and there are certain pass-through mechanisms in the Construction Contract for inflation.

3) **Delays in Start-up of Operations:** Delays in delivery of the drill ships will cause delays in the start date of the Petrobras charter contracts. If the delay reaches two years, Petrobras has the right to cancel the contracts. Aside from the traditional mitigants, Petrobras has built an additional margin in day rates to compensate for delays of up to twelve months for the first drill ship, and for delays of up to six months

Confidential

EIG00013797
EIG_KEP_00075068



for the second drill ship (both of which enjoy twenty-year charter contracts with Petrobras). Should the delays go beyond the margin already established, Petrobras will use its best efforts to readjust the term of the charter beyond twenty years to compensate for the delay and maintain the revenues established in the base case.

4) **Performance Risk**: Petrobras will initially operate the first two drill ships, but has pre-selected 21 potential operators with adequate experience to manage and operate the remaining ships, which are expected to have a 15% equity stake in each SPV. In addition, a "Performance Fund" of up to $56 MM will be established from the cash flows generated by each drill ship to cover this risk (which could negatively affect Sete Brasil to the extent that free cash flow is diverted for this purpose). The quota-holders will have the ability to substitute operators if the original operator is performing below specs.

5) **Financing Risk:** The successful construction of the drill ships implies raising debt on an 80:20 Debt/Equity basis. BNDES support and current market comps (Odebrecht Oil & Gas) suggest a strong demand for financing secured by drill ships backed by Petrobras charter contracts.

6) **Re-financing Risk** due to the mismatch between the financing terms and the original lease terms. A "Renewal Fund" will be established to provide liquidity to the senior lenders, which will again impact Sete Brazil negatively since these funds will be drawn from potential dividend streams. Nevertheless, it is unlikely Petrobras will not renew the charter contracts at maturity, given the high demand brought on by the pre-salt oil discoveries. In a worst case scenario, the drill ships can be re-deployed, and are designed for use in the Gulf of Mexico or off the African coast.

7) **End of bilateral tax treaty between Austria and Brazil** (which ensures that dividend flows from Sete International to Sete Brasil are exempt from a 19% withholding tax). While this risk should not affect EIG's investment, given that our potential investment will be at the Austria level, the tax treaty has been in place since 1976, has no expiration date, and has not been challenged.

8) **Environmental Risk:** as an exploration vehicle, the Project has a lower risk profile than production units. Nevertheless, the drill ships are being designed with the highest environmental safeguards and will conform to Brazilian state and federal environmental guidelines. The senior lenders will also insist the Project follow Equator Principles. In the event of a spill, each SPV will be responsible for clean-up costs up to a limit of $1 million.

9) **Exit Strategy:** while the base case calls for an IPO between 2011 and 2017, there is no assurance that the company will thrive and reach a point where an IPO is feasible. Nevertheless, Petrobras is signing on for day rates of $448,000 (with inflation adjustments until the contracts become effective) under the charter contracts, with a high likelihood of contract renewals upon expiration. Assuming adequate performance by the operators, the base case financial model indicates gross returns of 17.5% (in Reais) or a downside case of 9.6% if the contracts are not renewed and the drill ships are sold for their projected market value. This residual is expected to be approximately $300 million, or one-half their original cost.

**Main Governance Contracts**

a) **Shareholders Agreement (between the FIP -90%, and Petrobrás – 10% as shareholders of Sete Brasil)**
   a. The main provisions deal with governance: the Board of Directors will be comprised of nine individuals, elected to two-year terms (re-election permitted), as follows:

Confidential

EIG00013798

EIG_KEP_00075069



i. The President, who is chosen by the FIP holders from a list of three names provided by Petrobrás
ii. One Director appointed by Petrobrás, and
iii. Seven directors appointed by FIP holders (one of whom likely to be from Caixa Economica Federal, the Administrator ).
iv. 80% of shareholder vote required for:
   1. Changes in by-laws of company
   2. Change in strategy of company
   3. Changes in rights and authorities of Board members
   4. Increase or decrease in capital
   5. Merger or other reorganization of company
v. Ordinary Board meetings on quarterly basis. Among other issues, majority vote required to:
   1. Approve creation of joint ventures;
   2. Changes in annual strategy and business plan;
   3. Approve financial statements;
   4. Distribution of annual profits;
   5. Changes in accounting terms (but cannot go against GAAP)
   6. Review the Company's books;
   7. Increase capital up to authorized amount;
   8. Elect or re-elect directors;
   9. Approve external auditors;
   10. Approve granting of guarantees not foreseen in business plan;
   11. Approve incurrence of debt not foreseen in business plan;
   12. Approve deals with Related Parties;
   13. Approve purchase and sale of shares held in Treasury;
   14. Deliberate on capital calls;
   15. Approve acquisition of "A" shares in SPV's;
   16. Deliberate on voting position of company representatives in the SPV's;
   17. Approve construction contracts of new drill ships
   18. Approve financial institutions to act as trustee of Performance Fund, Renewal Fund, and other reserve accounts;
   19. Approve any changes in charter contracts or maintenance contracts outside normal course of business, and which impact income or expenses;
   20. Approve changes in change orders which impact construction costs of drill ships;
   21. Approve annual budget;
   22. Establish remuneration criteria of administrators and employees of Sete Brasil.
vi. While Petrobras submits names for President, shareholders submit names and approve Finance and Operations directors.
vii. Roles and responsibilities of management are spelled out;
viii. Lock-up and tag-along rights of shareholders;
ix. Distribution of Profits:
   1. 5% to legal reserve;
   2. Contingency reserves proposed by management;

Washington, DC › Houston › New York › London › Sydney

Confidential                                                              EIG00013799

EIG_KEP_00075070



3. Capital budget proposed by management;
4. The balance, with a minimum of 25% to be distributed to shareholders, according to Brazilian corporate law;
 x. Applicable law: Brazil
 xi. Dispute Resolution: Arbitration through CCBC (Brazil-Canada chamber of commerce center for arbitration and mediation).

b) **Quota holders' Agreement among FIP holders**
   a. Objective is to implement "Strategic Plan of Sete Brasil Participações S.A." as 85% shareholder in each SPV created to construct drill ships for used primarily in the pre-salt region of Brazil.
   b. Seven directors, Caixa Economica Federal plus six investor representatives.
   c. There is a seven-year lock-up in the FIP from the first capital call, except among existing quota-holders. Otherwise, only with the approval of Petrobrás. Petrobrás itself has a ten-year lock-up in Sete Brasil, and a two-year non-compete with the existing structure.
   d. 5 days prior to Sete Brasil shareholders' meeting, FIP quotaholders will meet to determine position on matters to be deliberated at Sete Brasil shareholders' meeting.

c) **Quota holders' Agreement between Caixa Economica Federal and each investor**
   a. Investment Period: 10 years (10 years to divest)- Note: need to verify if EIG can invest over shorter period
   b. Petrobrás has right of veto over all Quota holders, determined by:
      i. Petrobrás believes you are not capable of investing in FIP Sondas
      ii. You are in litigation with Petrobrás,
      iii. You compete directly with Petrobrás, or
      iv. You are a drillship operator

d) **Regulation of FIP**
   a. Administered by Caixa Economica Federal
   b. Investment Limit – 33% of quotas in Fund (i.e. no controlling interest)
      i. Minimum investment: R$1 million
   c. Total Capitalization: R$2 billion
      i. Minimum First Closing: R$300 million

e) **Investment Agreement between FIP Sondas and Petrobrás in Sete Brasil**
   a. SPV's will be 85% owned by Sete International (Austria)
      i. 15% by Petrobrás Netherlands V.V. for first two SPV's
         1. Remaining 5 SPV's can be underwritten by Petrobrás, or sold, now or later, to "strategic partners," i.e. Operators. Twenty-one Operators have been pre-qualified, and include Odebrecht and Queiroz Galvão.
   b. Part of subscription can be through subordinated debt, which would be used by Sete Brasil to increase the capital of Sete International or by Sete International to increase the capital of the SPV's. Sub-debt would take the form of simple non-convertible debentures.
   c. During the first year of operations, a "Performance Fund" of $56 million will be established and funded from SPV dividends to complement any shortfalls in senior debt service resulting from operator performance risk.
   d. During years 8-10 of operations a "Renewal Fund" of $117 million will be established and funded from SPV dividends to ensure repayment of the Sr. Debt balloon.

f) **Strategic Plan of Sete Brasil Participações S.A.**

Page | 4

Confidential                                                                                                                       EIG00013800

EIG_KEP_00075071



    a. Part and parcel of Shareholders' Agreement of Sete Brasil and Investment Agreement (see "a" and "e" above)
    b. Established to own 100% of Sete International (Austria), which in turn will own 85% or more of each SPV created to build and operate ultra deep water drill ships to explore Brazil's pre-salt oil reserves.  The first ship is expected to begin operations in 2015 and the seventh ship in 2019.
    c. Future growth will occur from the acquisition/build-out of additional drill-ship packages ordered by Petrobras and other clients.  Petrobras has provided a right of first refusal of 12 months for Sete Brasil to bid on new systems, up to a limit of 21 drill ships.
    d. Capital Structure: 20-25% equity/80-75% debt, with a portion of the equity being provided through subordinated debt.
    e. Staffing: Petrobras may not second employees to Sete Brasil, which shall comprise up to 24 analysts and 6 managers.
    f. The Company's headquarters shall be in Rio de Janeiro, Praia de Botafogo 228, 11th Floor.
    g. In the event no IPO has occurred within 8 years, Sete Brasil may open up its capital, in which case the FIP quotaholders may become direct shareholders in Sete Brasil (or Sete International in our case)

g) **Timing and next steps**
    a. As of now, Previ (Banco do Brasil's pension plan) has approved an R$150 million investment (approximately $93.7 million), and Banco Santander is close to approving R150 million to R$200 million (up to $125 million).  I have no reason to believe the other approvals aren't progressing smoothly.
    b. Banco Santander, in their capacity as Petrobras' financial advisor has obtained Petrobras' approval for an EIG vehicle to invest up to $100 million in the offshore vehicle (Sete International in Austria).  We are receiving some pressure to obtain an approval as soon as possible, as they expect to close in the April/May time frame.  A Board seat for that size investment involves a "negotiation" with Petrobras.
    c. If we are to proceed I would urge us to hire Jose Virgilio Lopes of the Machado Meyer Law office in São Paulo to begin reviewing the shareholder/quota holder agreements referenced above, along with the subscription agreement and the regulations of the Guarantee Fund for Naval Construction ("FGCN").  We should also undertake our own analysis of the charter contracts on the basis of the base case provided, and move to obtaining an approval within the next month.
    d. Santander (as investor) is in the process of teaming up with Bradesco in order to obtain certain additional voting rights on the board.  We should explore teaming up with them, as they are both privately owned banks, and should have an alignment of interests with EIG.

**Confidential**

**EIG00013801**

**EIG_KEP_00075072**