# EXHIBIT 156

10-K 1 esv-20171231x10k.htm 10-K

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
<u>Washington, D.C. 20549</u>

**FORM 10-K**

(Mark One)

☒     ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
**For the fiscal year ended December 31, 2017**

OR

☐     TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
For the transition period from _____ to _____

Commission File Number 1-8097

# Ensco plc

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **England and Wales** | **98-0635229** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **6 Chesterfield Gardens** | |
| **London, England** | **W1J5BQ** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: **+44 (0) 20 7659 4660**

Securities registered pursuant to Section 12(b) of the Act:

| <u>Title of each class</u> | <u>Name of each exchange on which registered</u> |
|---|---|
| Class A Ordinary Shares, U.S. $0.10 par value | New York Stock Exchange |
| 4.50% Senior Notes due 2024 | |
| 8.00% Senior Notes due 2024 | |
| 7.75% Senior Notes due 2026 | |
| 5.75% Senior Notes due 2044 | |
| 5.20% Senior Notes due 2025 | |
| 4.70% Senior Notes due 2021 | |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the registrant is a well-known seasoned issuer as defined in Rule 405 of the Securities Act.    Yes ☒    No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.    Yes ☐    No ☒

Semisubmersibles are mobile offshore drilling units with pontoons and columns that are partially submerged at the drilling location to provide added stability during drilling operations. Semisubmersibles are held in a fixed location over the ocean floor either by being anchored to the sea bottom with mooring chains (moored semisubmersible rig) or dynamically positioned by computer-controlled propellers or "thrusters" (dynamically positioned semisubmersible rig) similar to that used by our drillships. Moored semisubmersibles are most commonly used for drilling in water depths of 4,499 feet or less. However, ENSCO 5006 and ENSCO MS-1, which are moored semisubmersibles, are capable of deepwater drilling in water depths greater than 5,000 feet. Dynamically positioned semisubmersibles generally are outfitted for drilling in deeper water depths and are well-suited for deepwater development and exploratory well drilling. Further, we have three hybrid semisubmersibles, ENSCO 8503, ENSCO 8504 and ENSCO 8505, which leverage both moored and dynamically positioned configurations. This hybrid design provides multi-faceted drilling solutions to customers with both shallow water and deepwater requirements.

Jackup rigs stand on the ocean floor with their hull and drilling equipment elevated above the water on connected leg supports. Jackups are generally preferred over other rig types in shallow water depths of 400 feet or less, primarily because jackups provide a more stable drilling platform with above water well-control equipment. Our jackups are of the independent leg design where each leg can be fixed into the ocean floor at varying depths and equipped with a cantilever that allows the drilling equipment to extend outward from the hull over fixed platforms enabling safer drilling of both exploratory and development wells. The jackup hull supports the drilling equipment, jacking system, crew quarters, storage and loading facilities, helicopter landing pad and related equipment and supplies.

Over the life of a typical rig, many of the major systems are replaced due to normal wear and tear or technological advancements in drilling equipment. We believe all our rigs are in good condition. As of February 27, 2018, we owned all rigs in our fleet. We also manage the drilling operations for two rigs owned by third-parties.

We lease our executive offices in London, England in addition to office space in Houston, Aberdeen, Abu Dhabi, Australia, Dubai, Egypt, Holland, Indonesia, Malaysia, Malta, Mexico, Nigeria, Saudi Arabia, Singapore, Thailand and Qatar. We own offices and other facilities in Louisiana, Angola, Australia and Brazil.

**Item 3.** *Legal Proceedings*

*Brazil Internal Investigation*

Pride International LLC, formerly Pride International, Inc. ("Pride"), a company we acquired in 2011, commenced drilling operations in Brazil in 2001. In 2008, Pride entered into a drilling services agreement with Petrobras (the "DSA") for ENSCO DS-5, a drillship ordered from Samsung Heavy Industries, a shipyard in South Korea ("SHI"). Beginning in 2006, Pride conducted periodic compliance reviews of its business with Petrobras, and, after the acquisition of Pride, Ensco conducted similar compliance reviews.

We commenced a compliance review in early 2015 after the release of media reports regarding ongoing investigations of various kickback and bribery schemes in Brazil involving Petrobras. While conducting our compliance review, we became aware of an internal audit report by Petrobras alleging irregularities in relation to the DSA. Upon learning of the Petrobras internal audit report, our Audit Committee appointed independent counsel to lead an investigation into the alleged irregularities. Further, in June and July 2015, we voluntarily contacted the SEC and the DOJ, respectively, to advise them of this matter and of our Audit Committee's investigation. Independent counsel, under the direction of our Audit Committee, has substantially completed its investigation by reviewing and analyzing available documents and correspondence and interviewing current and former employees involved in the DSA negotiations and the negotiation of the ENSCO DS-5 construction contract with SHI (the "DS-5 Construction Contract").

To date, our Audit Committee has found no credible evidence that Pride or Ensco or any of their current or former employees were aware of or involved in any wrongdoing, and our Audit Committee has found no credible evidence linking Ensco or Pride to any illegal acts committed by our former marketing consultant who provided services to Pride and Ensco in connection with the DSA. We, through independent counsel, have continued to cooperate with

the SEC and DOJ, including providing detailed briefings regarding our investigation and findings and responding to inquiries as they arise. We entered into a one-year tolling agreement with the DOJ that expired in December 2016. We extended our tolling agreement with the SEC for 12 months until March 2018.

Subsequent to initiating our Audit Committee investigation, Brazilian court documents connected to the prosecution of former Petrobras directors and employees as well as certain other third parties, including our former marketing consultant, referenced the alleged irregularities cited in the Petrobras internal audit report. Our former marketing consultant has entered into a plea agreement with the Brazilian authorities. On January 10, 2016, Brazilian authorities filed an indictment against a former Petrobras director. This indictment states that the former Petrobras director received bribes paid out of proceeds from a brokerage agreement entered into for purposes of intermediating a drillship construction contract between SHI and Pride, which we believe to be the DS-5 Construction Contract. The parties to the brokerage agreement were a company affiliated with a person acting on behalf of the former Petrobras director, a company affiliated with our former marketing consultant, and SHI. The indictment alleges that amounts paid by SHI under the brokerage agreement ultimately were used to pay bribes to the former Petrobras director. The indictment does not state that Pride or Ensco or any of their current or former employees were involved in the bribery scheme or had any knowledge of the bribery scheme.

On January 4, 2016, we received a notice from Petrobras declaring the DSA void effective immediately. Petrobras' notice alleges that our former marketing consultant both received and procured improper payments from SHI for employees of Petrobras and that Pride had knowledge of this activity and assisted in the procurement of and/or facilitated these improper payments. We disagree with Petrobras' allegations. See "DSA Dispute" below for additional information.

In August 2017, one of our Brazilian subsidiaries was contacted by the Office of the Attorney General for the Brazilian state of Paraná in connection with a criminal investigation procedure initiated against agents of both SHI and Pride in relation to the DSA.  The Brazilian authorities requested information regarding our compliance program and the findings of our internal investigations. We are cooperating with the Office of the Attorney General and have provided documents in response to their request.  We cannot predict the scope or ultimate outcome of this procedure or whether any other governmental authority will open an investigation into Pride's involvement in this matter, or if a proceeding were opened, the scope or ultimate outcome of any such investigation. If the SEC or DOJ determines that violations of the FCPA have occurred, or if any governmental authority determines that we have violated applicable anti-bribery laws, they could seek civil and criminal sanctions, including monetary penalties, against us, as well as changes to our business practices and compliance programs, any of which could have a material adverse effect on our business and financial condition. Our customers, business partners and other stakeholders could seek to take actions adverse to our interests. Further, investigating and resolving such allegations is expensive and could consume significant management time and attention. Although our internal investigation is substantially complete, we cannot predict whether any additional allegations will be made or whether any additional facts relevant to the investigation will be uncovered during the course of the investigation and what impact those allegations and additional facts will have on the timing or conclusions of the investigation. Our Audit Committee will examine any such additional allegations and additional facts and the circumstances surrounding them.

*DSA Dispute*

As described above, on January 4, 2016, Petrobras sent a notice to us declaring the DSA void effective immediately, reserving its rights and stating its intention to seek any restitution to which it may be entitled. We disagree with Petrobras' declaration that the DSA is void. We believe that Petrobras repudiated the DSA and have therefore accepted the DSA as terminated on April 8, 2016 (the "Termination Date"). At this time, we cannot reasonably determine the validity of Petrobras' claim or the range of our potential exposure, if any. As a result, there can be no assurance as to how this dispute will ultimately be resolved.

We did not recognize revenue for amounts owed to us under the DSA from the beginning of the fourth quarter of 2015 through the Termination Date as we concluded that collectability of these amounts was not reasonably assured. Additionally, our receivables from Petrobras related to the DSA from prior to the fourth quarter of 2015 are fully

43

reserved in our consolidated balance sheet as of December 31, 2017 and 2016. In August 2016, we initiated arbitration proceedings in the U.K. against Petrobras seeking payment of all amounts owed to us under the DSA, in addition to any other amounts to which we are entitled, and intend to vigorously pursue our claims. Petrobras subsequently filed a counterclaim seeking restitution of certain sums paid under the DSA less value received by Petrobras under the DSA. There can be no assurance as to how this arbitration proceeding will ultimately be resolved.

In November 2016, we initiated separate arbitration proceedings in the U.K. against SHI for any losses we incur in connection with the foregoing Petrobras arbitration. SHI subsequently filed a statement of defense disputing our claim. In January 2018, the arbitration tribunal for the SHI matter issued an award on liability fully in Ensco's favor. SHI is liable to us for $10 million or damages that we can prove. As the losses suffered by us will depend in part on the outcome of the Petrobras arbitration described above, the amount of damages to be paid by SHI will be determined after the conclusion of the Petrobras arbitration. We are unable to estimate the ultimate outcome of recovery for damages at this time.

*Pride FCPA Investigation*

During 2010, Pride and its subsidiaries resolved their previously disclosed investigations into potential violations of the U.S. Foreign Corrupt Practices Act of 1977 (the "FCPA") with the DOJ and SEC. The settlement with the DOJ included a deferred prosecution agreement (the "DPA") between Pride and the DOJ and a guilty plea by Pride Forasol S.A.S., one of Pride's subsidiaries, to FCPA-related charges. During 2012, the DOJ moved to (i) dismiss the charges against Pride and end the DPA one year prior to its scheduled expiration; and (ii) terminate the unsupervised probation of Pride Forasol S.A.S. The Court granted the motions.

Pride has received preliminary inquiries from governmental authorities of certain countries referenced in its settlements with the DOJ and SEC. We could face additional fines, sanctions and other penalties from authorities in these and other relevant jurisdictions, including prohibition of our participating in or curtailment of business operations in certain jurisdictions and the seizure of rigs or other assets. At this stage of such inquiries, we are unable to determine what, if any, legal liability may result. Our customers in certain jurisdictions could seek to impose penalties or take other actions adverse to our business. We could also face other third-party claims by directors, officers, employees, affiliates, advisors, attorneys, agents, stockholders, debt holders or other stakeholders. In addition, disclosure of the subject matter of the investigations and settlements could adversely affect our reputation and our ability to obtain new business or retain existing business, to attract and retain employees and to access the capital markets.

We cannot currently predict what, if any, actions may be taken by any other applicable government or other authorities or our customers or other third parties or the effect any such actions may have on our financial position, operating results and cash flows.

*Environmental Matters*

We are currently subject to pending notices of assessment relating to spills of drilling fluids, oil, brine, chemicals, grease or fuel from drilling rigs operating offshore Brazil from 2008 to 2017, pursuant to which the governmental authorities have assessed, or are anticipated to assess, fines. We have contested these notices and appealed certain adverse decisions and are awaiting decisions in these cases. Although we do not expect final disposition of these assessments to have a material adverse effect on our financial position, operating results and cash flows, there can be no assurance as to the ultimate outcome of these assessments. A $190,000 liability related to these matters was included in accrued liabilities and other on our consolidated balance sheet as of December 31, 2017.

We currently are subject to a pending administrative proceeding initiated during 2009 by a Spanish government authority seeking payment in an aggregate amount of approximately $3.0 million, for an alleged environmental spill originating from ENSCO 5006 while it was operating offshore Spain. Our customer has posted guarantees with the Spanish government to cover potential penalties. Additionally, we expect to be indemnified for any payments resulting from this incident by our customer under the terms of the drilling contract. A criminal investigation of the incident was initiated during 2010 by a prosecutor in Tarragona, Spain, and the administrative proceedings have been suspended

(2) Total commitments are based on fixed-price shipyard construction contracts, exclusive of costs associated with commissioning, systems integration testing, project management, holding costs and interest.

(3) In January 2018, we paid $207.4 million of the $218.3 million unpaid balance. The remaining $10.9 million is due upon delivery. The $207.4 million milestone payment was invoiced and included in accounts payable - trade as of December 31, 2017 on our consolidated balance sheet.

(4) The remaining milestone payments for ENSCO DS-13 and ENSCO DS-14 bear interest at a rate of 4.5% per annum, which accrues during the holding period until delivery. Delivery is scheduled for September 2019 and June 2020 for ENSCO DS-13 and ENSCO DS-14, respectively. Upon delivery, the remaining milestone payments and accrued interest thereon may be financed through a promissory note with the shipyard for each rig. The promissory notes will bear interest at a rate of 5% per annum with a maturity date of December 31, 2022 and will be secured by a mortgage on each respective rig. The remaining milestone payments for ENSCO DS-13 and ENSCO DS-14 are included in the table above in the period in which we expect to take delivery of the rig. However, we may elect to execute the promissory notes and defer payment until December 2022.

The actual timing of these expenditures may vary based on the completion of various construction milestones, which are, to a large extent, beyond our control.

*Brazil Internal Investigation*

Pride International LLC, formerly Pride International, Inc. ("Pride"), a company we acquired in 2011, commenced drilling operations in Brazil in 2001. In 2008, Pride entered into a drilling services agreement with Petrobras (the "DSA") for ENSCO DS-5, a drillship ordered from Samsung Heavy Industries, a shipyard in South Korea ("SHI"). Beginning in 2006, Pride conducted periodic compliance reviews of its business with Petrobras, and, after the acquisition of Pride, Ensco conducted similar compliance reviews.

We commenced a compliance review in early 2015 after the release of media reports regarding ongoing investigations of various kickback and bribery schemes in Brazil involving Petrobras. While conducting our compliance review, we became aware of an internal audit report by Petrobras alleging irregularities in relation to the DSA. Upon learning of the Petrobras internal audit report, our Audit Committee appointed independent counsel to lead an investigation into the alleged irregularities. Further, in June and July 2015, we voluntarily contacted the SEC and the DOJ, respectively, to advise them of this matter and of our Audit Committee's investigation. Independent counsel, under the direction of our Audit Committee, has substantially completed its investigation by reviewing and analyzing available documents and correspondence and interviewing current and former employees involved in the DSA negotiations and the negotiation of the ENSCO DS-5 construction contract with SHI (the "DS-5 Construction Contract").

To date, our Audit Committee has found no credible evidence that Pride or Ensco or any of their current or former employees were aware of or involved in any wrongdoing, and our Audit Committee has found no credible evidence linking Ensco or Pride to any illegal acts committed by our former marketing consultant who provided services to Pride and Ensco in connection with the DSA. We, through independent counsel, have continued to cooperate with the SEC and DOJ, including providing detailed briefings regarding our investigation and findings and responding to inquiries as they arise. We entered into a one-year tolling agreement with the DOJ that expired in December 2016. We extended our tolling agreement with the SEC for 12 months until March 2018.

Subsequent to initiating our Audit Committee investigation, Brazilian court documents connected to the prosecution of former Petrobras directors and employees as well as certain other third parties, including our former marketing consultant, referenced the alleged irregularities cited in the Petrobras internal audit report. Our former marketing consultant has entered into a plea agreement with the Brazilian authorities. On January 10, 2016, Brazilian authorities filed an indictment against a former Petrobras director. This indictment states that the former Petrobras director received bribes paid out of proceeds from a brokerage agreement entered into for purposes of intermediating a drillship construction contract between SHI and Pride, which we believe to be the DS-5 Construction Contract. The

parties to the brokerage agreement were a company affiliated with a person acting on behalf of the former Petrobras director, a company affiliated with our former marketing consultant, and SHI. The indictment alleges that amounts paid by SHI under the brokerage agreement ultimately were used to pay bribes to the former Petrobras director. The indictment does not state that Pride or Ensco or any of their current or former employees were involved in the bribery scheme or had any knowledge of the bribery scheme.

On January 4, 2016, we received a notice from Petrobras declaring the DSA void effective immediately. Petrobras' notice alleges that our former marketing consultant both received and procured improper payments from SHI for employees of Petrobras and that Pride had knowledge of this activity and assisted in the procurement of and/or facilitated these improper payments. We disagree with Petrobras' allegations. See "DSA Dispute" below for additional information.

In August 2017, one of our Brazilian subsidiaries was contacted by the Office of the Attorney General for the Brazilian state of Paraná in connection with a criminal investigation procedure initiated against agents of both SHI and Pride in relation to the DSA.  The Brazilian authorities requested information regarding our compliance program and the findings of our internal investigations. We are cooperating with the Office of the Attorney General and have provided documents in response to their request.  We cannot predict the scope or ultimate outcome of this procedure or whether any other governmental authority will open an investigation into Pride's involvement in this matter, or if a proceeding were opened, the scope or ultimate outcome of any such investigation. If the SEC or DOJ determines that violations of the FCPA have occurred, or if any governmental authority determines that we have violated applicable anti-bribery laws, they could seek civil and criminal sanctions, including monetary penalties, against us, as well as changes to our business practices and compliance programs, any of which could have a material adverse effect on our business and financial condition. Although our internal investigation is substantially complete, we cannot predict whether any additional allegations will be made or whether any additional facts relevant to the investigation will be uncovered during the course of the investigation and what impact those allegations and additional facts will have on the timing or conclusions of the investigation. Our Audit Committee will examine any such additional allegations and additional facts and the circumstances surrounding them.

*DSA Dispute*

As described above, on January 4, 2016, Petrobras sent a notice to us declaring the DSA void effective immediately, reserving its rights and stating its intention to seek any restitution to which it may be entitled. We disagree with Petrobras' declaration that the DSA is void. We believe that Petrobras repudiated the DSA and have therefore accepted the DSA as terminated on April 8, 2016 (the "Termination Date"). At this time, we cannot reasonably determine the validity of Petrobras' claim or the range of our potential exposure, if any. As a result, there can be no assurance as to how this dispute will ultimately be resolved.

We did not recognize revenue for amounts owed to us under the DSA from the beginning of the fourth quarter of 2015 through the Termination Date, as we concluded that collectability of these amounts was not reasonably assured. Additionally, our receivables from Petrobras related to the DSA from prior to the fourth quarter of 2015 are fully reserved in our consolidated balance sheet as of December 31, 2017 and 2016 . In August 2016, we initiated arbitration proceedings in the U.K. against Petrobras seeking payment of all amounts owed to us under the DSA, in addition to any other amounts to which we are entitled, and intend to vigorously pursue our claims. Petrobras subsequently filed a counterclaim seeking restitution of certain sums paid under the DSA less value received by Petrobras under the DSA. There can be no assurance as to how this arbitration proceeding will ultimately be resolved.

In November 2016, we initiated separate arbitration proceedings in the U.K. against SHI for any losses we incur in connection with the foregoing Petrobras arbitration. SHI subsequently filed a statement of defense disputing our claim. In January 2018, the arbitration tribunal for the SHI matter issued an award on liability fully in Ensco's favor.  SHI is liable to us for $10 million or damages that we can prove.  As the losses suffered by us will depend in part on the outcome of the Petrobras arbitration described above, the amount of damages to be paid by SHI will be determined after the conclusion of the Petrobras arbitration.  We are unable to estimate the ultimate outcome of recovery for damages at this time.