**EXHIBIT 36**

Message

| | |
|---|---|
| **From**: | Nora MARSUKI [KOM-LEGAL] [/O=KEPPEL GROUP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=NORA.MARSUKI] |
| **Sent**: | 7/8/2012 7:29:06 AM |
| **To**: | Jeff CHOW [KOM-LEGAL] [/O=KEPPEL GROUP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Jeff.chow] |
| **Subject**: | Agency Agreements with Eagle Do Brasil and Deep Sea Oil Corp |
| **Attachments**: | Agency Agr btw Fernvalve & Eagle Do Brasil 30Nov2011.pdf; Certificate to Mktg Consulting & Services Agr 1Dec2011 btw Fernvale PL and Deep Sea Oil Corp.pdf; FCPA certification and Keppel Code of Business conduct Policy.pdf; Marketing consulting and services agr btw Fernvale PL and Deep Sea Oil Corp 1Dec2011.pdf; Form of Confirmation of Eligible EPC Contract.pdf |

**Nora Marsuki**| Legal Department

Keppel **Offshore & Marine** | Tel : (65) 6863 7738 | Fax :(65) 6863 1682

**Exhibit PL 25**

Confidential

# AGENCY AGREEMENT

This Agency Agreement ("**Agreement**") is effective as of the November 30, 2011, by and between:

**FERNVALE. PTE. LTD.**, a company organized and existing under the laws of the Republic of Singapore, having its mailing address at 50 Gul Road, Singapore 629351 (hereinafter collectively referred to as "**Principal**") of the one part; and

**EAGLE DO BRASIL LTDA.**, a company organised and existing under the laws of the Federative Republic of Brazil and having its principal office at Rua da Assembleia 10/2008, CEP 20011-000, Rio de Janeiro, RJ, Brazil (hereinafter referred to as "**Agent**") of the other part

(each party shall be referred to as a "**Party**" and both parties shall be referred to as the "**Parties**").

I.    WHEREAS the Agent has been assisting and supporting the Principal in discussions and negotiations with representatives of Sete Brasil Participações S.A. ("**Sete Brasil**") for contracts for the engineering, procurement and construction by the Principal of up to six (6) drilling rig units ("**DRUs**", each a "**DRU**") for affiliate(s) of Sete Brasil.

II.   WHEREAS, the Principal wishes to formalize the appointment of the Agent as its agent for and in respect of the EPC Contracts for the DRUs and the Agent wishes to accept such appointment based upon terms and conditions as set forth in this Agreement.

NOW, THEREFORE, for and in consideration of the premises and the mutual benefits, covenants and obligations recited hereinafter, the sufficiency of which is hereby acknowledged, the Principal and the Agent hereby agree as follows:

## 1. BUSINESS

The Agent will continue to use its best endeavors to obtain for the Principal contracts for the engineering, procurement and construction of up to six (6) DRUs for the Principal ("**EPC Contracts**", each an "**EPC Contract**") for affiliate(s) of Sete Brasil ("**Customers**", each a "**Customer**"), and to promote the interest and goodwill of the Principal with the Customers/Sete Brasil and the settlement of invoices submitted by the Principal to the Customers for the work done.

## 2. PERIOD OF AGENCY

This Agreement shall come into force from the date hereof until the completion or termination of all rights and obligations under the respective EPC Contracts.

1

KEPPEL00045252

### 3. COMMISSION

In the event (and only in the event) that the EPC Contract is entered into between the Principal and a Customer for the engineering, procurement and construction of one (1) DRU by the Principal for the Customer, then subject to the terms appearing hereafter, the Agent shall be entitled to a commission ("**Commission**") of 0.5% of the contract price paid to the Contractor under the EPC Contract ("**Contract Price**"). Upon the execution of each EPC Contract, the Principal and Agent shall execute a confirmation of the eligibility of the Agent to Commission under such EPC Contract in the form attached as Exhibit 1.

The Commission shall be payable in Reais (R$) only and for purposes of calculating the Commission, that portion of the Contract Price that is payable to the Principal in United States Dollars (US$) under the EPC Contract shall be converted into Reais (R$) based on the Brazilian Central Bank exchange rate for US$ prevailing as of the 3rd day preceding payment of such Commission.

The Commission shall be payable in proportion to the progress payments of the Contract Price received by the Principal under the EPC Contract.

*Illustration*

---

Assume:

- Contractor received from the Customer the following amounts (including escalations) in respect of an instalment of the EPC Contract:

    - US$10,000,000 in US$
    - US$10,000,000 in R$ at the rate of R$1.56: US$1 i.e. R$15,600,000

- Brazilian Central Bank Exchange Rate for US$ as at the 3rd day preceding payment of the Commission is R$1.95 to US$1.

Commission payable to Agent will accordingly be:

(0.5% x 10,000,000 x R$1.95) + (0.5% x R$15,600,000)

= R$175,500

---

Except for payment actually falling due under this Agreement, no fee, compensation remuneration, costs, expenses and payments whatsoever and howsoever called, including any claim based on a *quantum meruit*, shall be payable to the Agent and no claims for such payments shall be made against the Principal, its parent, affiliates and related companies at all tiers, including Keppel FELS Brasil S.A. and Estaleiro BrasFELS Ltda (collectively, "**Principal Group**"). For the avoidance of doubt, all payments made to the Agent under this Agreement shall be deemed to include any taxes payable in respect of payment of such nature. Any taxes that may be imposed

2

KEPPEL00045253

for payment due to the Agent under this Agreement may be withheld or deducted from the payment.

## 4.  REIMBURSEMENT OF EXPENSES

The Agent will be responsible at all the times for all office expenses incurred for salaries, wages, traveling, entertaining, cables, telexes, postage, telephone and similar items. Any specific out of pocket expense that the Agent may incur that the Agent feels should be reimbursed by the Principals, e.g. project overseas trips, special project expenses and others, shall first be approved by the Principal before such expense are incurred by the Agent.

## 5.  OTHER ASSISTANCE

As part and parcel of this Agreement, the Agent undertakes to continue to provide to Principal, when requested by Principal, all necessary assistance in connection with any issue arising from IVESA/ Polipar, BNDES and any other agencies and entities to ensure the smooth running of the BrasFELS shipyard and the execution/performance of the EPC Contract. It is understood that such assistance shall be provided to the Principal at no additional cost.

## 6.  TERMINATION

Should either of the Parties be or become insolvent or should violate any of the material terms, provision or conditions of this Agreement (the Party in default), this Agreement may  be terminated forthwith by the other Party by notice in writing to the party in the default. In such event of termination, each Party shall pursue its remedy for such termination as allowed by law.

Further, should the Agent not be able to perform the obligations as provide for this Agreement, then this Agreement shall terminate.

Further, should Zwi Skornicki not be able to perform the obligations of the Agent, this Agreement may be terminated by the Principal by notice in writing.

## 7.  CONFIDENTIALITY

The Agent recognizes that the Principal Group are owners of certain trade and service marks and names which apply to and/or used in connection with their products, services and business, and this Agreement in no way assigns, transfers or conveys unto the Agent any right in or to said marks and names, or any right to any use thereof, except to the extent that the Agent may be permitted to use said trade/service marks or names in connection with this Agreement, or as directed in writing by the Principal.

The Agent further recognizes that it may come into the possession of information, know-how or data of various kinds pertaining to members of the Principal Group, their products, service and business, which may be of a confidential and/or proprietary nature. The Agent and its principal, Zwi Skornicki, agrees not to disclose such confidential/and or proprietary information during the life of this

3

KEPPEL00045254

Agreement and for five (5) years following the termination hereof.  In the event that the Agent is in doubt as to whether particular information is deemed to be confidential and/or proprietary, it shall make specific inquiry of the Principal before making any disclosure to any third party.

## 8.  ANTI-BRIBERY & CORRUPTION

The Agent represents warrants and agrees that it has not made and shall not make, either directly or indirectly, any improper payment of money or anything of value to an Official in connection with the EPC Contract, whether before or after the signing of the EPC Contract.

For purposes of this clause, "**Official**" means:

(a)  any officer or employee of any government or any department, agency or instrumentality thereof, or any person acting in an official capacity on behalf of any such government, department, agency or instrumentality;
(b)  any political party;
(c)  any official of a political party;
(d)  any candidate for political office; or
(e)  any officer or employee of a public international organization such as the United Nations.

Without limiting the generality of the aforegoing, and in recognition of the principles of the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions which entered into force on February 15, 1999, the United States Foreign Corrupt Practices Act, the United Kingdom Bribery Act 2010, the Singapore Prevention of Corruption Act 2010, each as may be amended from time to time, and any other applicable laws, regulations, codes and sanctions relating to anti-bribery or anti-corruption, similar international conventions and national laws, the Agent warrants that it will not, directly or indirectly, in connection with the EPC Contract and the matters resulting therefrom, offer, pay, promise to pay or authorize the giving of money or anything of value to an Official, or to any other person, while knowing or being aware that all or a portion of such money or thing of value will be offered, given or promised, directly or indirectly, to an Official, for the purpose of improperly influencing the act, decision or omission of such Official to obtain or retain business related to this Agreement, to direct business related to the EPC Contract to any person, or to obtain any improper advantage or benefit.

Notwithstanding any other provision of this Agreement, the Principal shall have the right to terminate this Agreement immediately in the event of Agent's failure to comply with any of the foregoing provisions. In the event of termination: (a) the Principal shall have a right of action against the Agent for the amount of any monetary payment or thing of value made or given by the Agent in breach of any of the provisions of this clause; (b) all obligations by the Principal to pay the Agent's Commission shall cease forthwith; and (c) Contractor shall immediately return to the Principal all Commission payments arising from any transaction in which there was a violation of this clause.

4

KEPPEL00045255

No director, employee or agent of the Agent shall give to or receive from any director, employee, representative or agent of the Principal Group any commission, fee, rebate, or any gift or entertainment of significant cost or value in connection with this Agreement or the EPC Contract, or enter into any business arrangement with any director, employee, representative or agent of: (a) any member of the Principal Group, without prior written consent of the Principal or (b) the Customer or any affiliate of Customer, without prior written consent of Customer. The Agent shall promptly notify the Principal of any violation of this clause and any consideration received as a result of such violation shall be paid over or credited to the Principal or the Customer, as applicable. Additionally, if any violation of this clause occurring prior to the date of this Agreement resulted directly or indirectly in the Principal's consent to enter into this Agreement with the Agent, the Principal may, at its sole option, terminate this Agreement at any time, and notwithstanding any other provision of this Agreement, pay no compensation or reimbursement to the Agent whatsoever for any work done after the date of termination. If applicable, the Agent shall reimburse the Principal for payments already made under this Agreement.

The Agent shall defend and indemnify the Principal against all claims, damages and costs (including any legal and other fees and expenses incurred in defense thereof) resulting from the Agent's failure to comply with this clause.

## 9.  INDEPENDENT CONTRACTOR

The Agent shall at all times act as and hold itself out as an independent entity.  The Agent and the Principal hereby agree that neither this Agreement nor any activity undertaken in accordance with it shall create any other relationship between the parties. Both parties are acting as principals under this Agreement, and the Agent is not granted any right or authority to assume or create, in any manner whatsoever, any obligation or responsibility for or on behalf of the Principal, or otherwise to bind the Principal or to use the Principal's name other than as may expressly be authorized in writing by the Principal.

## 10. ENTIRE AGREEMENT

The aforegoing terms and conditions represent the entire agreement between the Principal and the Agent with respect to the subject matter. All other prior agreements, proposals and/or understandings with respect to the subject matter of this Agreement between the Principal and the Agent are superseded by this Agreement. There are no other promises, terms, conditions or obligations with respect hereto other than those contained herein.

## 11. ASSIGNMENT

Neither Party may assign this Agreement without the prior written consent of the other Party.

5

KEPPEL00045256

## 12. GOVERNING LAW & DISPUTE RESOLUTION

This Agreement shall be construed, interpreted and enforced in accordance with the substantive laws of the Republic of Singapore.

Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, which rules are deemed to be incorporated by reference in this clause. The Tribunal shall consist of a single arbitrator. The language of the arbitration shall be English. The arbitration proceedings shall be kept fully confidential unless otherwise required to be disclosed by relevant laws, regulations and rules (including the rules of any applicable stock exchange).

IN WITNESS WHEREOF this Agreement is executed by the parties on the day and year first written above.

For and on behalf of **FERNVALE PTE LTD**

..........................................

Name: Jeffery S. Chow
Title:   Attorney-In-Fact

For and on behalf of **EAGLE DO BRASIL LTDA.**

..........................................

Name:  Zwi Skornicki
Title:   Director

6

Confidential

## EXHIBIT 1

### FORM OF CONFIRMATION OF ELIGIBLE EPC CONTRACT

FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. hereby confirm that the following EPC Contract dated the date stated below has been executed between FERNVALE and the Customer mentioned below: -

| | |
|---|---|
| Date of EPC Contract: | |
| Name of Customer: | |
| DRU #: | |

and the parties confirm that the above-mentioned EPC Contract is eligible for Commission payable under the terms and conditions of the Agency Agreement between FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. dated November 30, 2011.

For and on behalf of **FERNVALE PTE LTD**

For and on behalf of **EAGLE DO BRASIL LTDA.**

…………………………………..
Name:  Jeffery S. Chow
Title:   Attorney-In-Fact

…………………………………..
Name:  Zwi Skornicki
Title:   Director

7

Confidential

KEPPEL00045258

## <u>Certificate</u>

Further to the Marketing Consulting and Services Agreement dated 1st December 2011 between Fernvale Pte. Ltd. and Deep Sea Oil Corp. ("Agreement"), it is hereby certified that the following is an EPC Contract to which Clause 3.3 of the Agreement refers to, namely: -

Date of EPC Contract:                          16 December 2011

Name of Owner under EPC Contract:             Urca Drilling BV

Name of Contractor under EPC Contract:        Fernvale Pte. Ltd.

for a Drilling Rig Unit (DRU).                 DRU #1

Dated the 6th day of August, 2012.

Certified for and on behalf of the respective parties as follows: -

**Fernvale Pte. Ltd.**                  **Deep Sea Oil Corp.**

.................................................          ...................................................

Name:  Jeffery S. Chow          Name:  Zwi Skornicki

Title:    Attorney-In-Fact        Title:    Director

## Certificate

Further to the Marketing Consulting and Services Agreement dated 1st December 2011 between Fernvale Pte. Ltd. and Deep Sea Oil Corp. ("Agreement"), it is hereby certified that the following is an EPC Contract to which Clause 3.3 of the Agreement refers to, namely: -

Date of EPC Contract:                      2nd August  2012

Name of Owner under EPC Contract:         Frade Drilling BV

Name of Contractor under EPC Contract:    Fernvale Pte. Ltd.

for a Drilling Rig Unit (DRU).            DRU #2

Dated the 6th day of August, 2012.

Certified for and on behalf of the respective parties as follows: -

**Fernvale Pte. Ltd.**                    **Deep Sea Oil Corp.**

.............................................        .............................................

Name:  Jeffery S. Chow                    Name:  Zwi Skornicki

Title:    Attorney-In-Fact                Title:    Director

## Certificate

Further to the Marketing Consulting and Services Agreement dated 1st December 2011 between Fernvale Pte. Ltd. and Deep Sea Oil Corp. ("Agreement"), it is hereby certified that the following is an EPC Contract to which Clause 3.3 of the Agreement refers to, namely: -

Date of EPC Contract:                        2nd August  2012

Name of Owner under EPC Contract:      Bracuhy Drilling BV

Name of Contractor under EPC Contract:   Fernvale Pte. Ltd.

for a Drilling Rig Unit (DRU).                DRU #3

Dated the 6th day of August, 2012.

Certified for and on behalf of the respective parties as follows: -

**Fernvale Pte. Ltd.**                    **Deep Sea Oil Corp.**

.......................................          .......................................

Name:  Jeffery S. Chow                  Name:  Zwi Skornicki

Title:    Attorney-In-Fact                Title:    Director

## Certificate

Further to the Marketing Consulting and Services Agreement dated 1st December 2011 between Fernvale Pte. Ltd. and Deep Sea Oil Corp. ("Agreement"), it is hereby certified that the following is an EPC Contract to which Clause 3.3 of the Agreement refers to, namely: -

Date of EPC Contract:                              2nd August  2012

Name of Owner under EPC Contract:            Portogalo Drilling BV

Name of Contractor under EPC Contract:       Fernvale Pte. Ltd.

for a Drilling Rig Unit (DRU).                     DRU #4

Dated the 6th  day of August, 2012.

Certified for and on behalf of the respective parties as follows: -

**Fernvale Pte. Ltd.**                    **Deep Sea Oil Corp.**

Name:  Jeffery S. Chow                 Name:  Zwi Skornicki

Title:    Attorney-In-Fact               Title:    Director

KEPPEL00045262

## Certificate

Further to the Marketing Consulting and Services Agreement dated 1st December 2011 between Fernvale Pte. Ltd. and Deep Sea Oil Corp. ("Agreement"), it is hereby certified that the following is an EPC Contract to which Clause 3.3 of the Agreement refers to, namely: -

Date of EPC Contract:                                    2nd August  2012

Name of Owner under EPC Contract:            Mangaratiba Drilling BV

Name of Contractor under EPC Contract:      Fernvale Pte. Ltd.

for a Drilling Rig Unit (DRU).                          DRU #5

Dated the 6th  day of August, 2012.

Certified for and on behalf of the respective parties as follows: -

**Fernvale Pte. Ltd.**                        **Deep Sea Oil Corp.**


.........................................                ...........................................

Name:  Jeffery S. Chow                  Name:  Zwi Skornicki

Title:     Attorney-In-Fact              Title:     Director

## Certificate

Further to the Marketing Consulting and Services Agreement dated 1st December 2011 between Fernvale Pte. Ltd. and Deep Sea Oil Corp. ("Agreement"), it is hereby certified that the following is an EPC Contract to which Clause 3.3 of the Agreement refers to, namely: -

| | |
|---|---|
| Date of EPC Contract: | 2nd August 2012 |
| Name of Owner under EPC Contract: | Botinas Drilling BV |
| Name of Contractor under EPC Contract: | Fernvale Pte. Ltd. |
| for a Drilling Rig Unit (DRU). | DRU #6 |

Dated the 6th day of August, 2012.

Certified for and on behalf of the respective parties as follows: -

**Fernvale Pte. Ltd.**                    **Deep Sea Oil Corp.**

..............................................          ..............................................
Name:  Jeffery S. Chow                 Name:  Zwi Skornicki
Title:    Attorney-In-Fact                 Title:    Director

Certification

It is the intention of the parties to that Marketing Consulting and Services Agreement dated December 14, 2011 shall comply with the Foreign Corrupt Practices Act of the United States of America, the United Kingdom Bribery Act 2010, the Singapore Prevention of Corruption Act 2010 and the anti-corruption and bribery laws of Brasil, and all applicable anti-corruption laws (hereinafter "Anti-Corruption Laws"). Accordingly, and without prejudice to the generality of the foregoing, herewith CONSULTAT undertakes and agrees that it has not and shall not directly or indirectly to offer, pay, promise to pay or authorize the payment or giving of any money, or anything of value to any official of any government or any instrumentality thereof (for purposes hereof, an employee of PETROBRAS is deemed to be an official of a government or instrumentality thereof), to any political party or candidate for political office, or to any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any official of any government or any instrumentality thereof, for the purposes of:

    a. Influencing any act or decision of such in his official capacity, including a decision to fail to perform his official functions; or

    b. Inducing such official to use his influence with any governmental or any instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to obtain or retain business for or with, or direct business to, any person.

For invoices, further, the undersigned certifies all invoices submitted under this agreement are for expenses and services which comply with the foregoing.

CONSULTANT
DEEP SEA OIL CORP.

By:_____
Name : Zwi Skornicki, Director
Date:   1 December 2011

KEPPEL00045265

ACKNOWLEDGEMENT FORM

TO:          FERNVALE PTE. LTD.

RE:          Keppel Code of Business Conduct Policy


I hereby acknowledge on behalf of Deep Sea Oil Corp. and myself receipt of the Keppel Code of Business Conduct Policy as it currently exists. We understand that compliance with this policy, as it may be amended from time to time, is a condition of the provision of services as CONSULTANT for Fernvale Pte. Ltd.


CONSULTANT
DEEP SEA OIL CORP.


By:_____
Name : Zwi Skornicki, Director
Date:   1 December 2011


and


_____
Name : Zwi Skornicki
Date:   1 December 2011


                                    KEPPEL00045266

# MARKETING CONSULTING AND SERVICES AGREEMENT

Dated as of December 1, 2011

by and between

**Fernvale Pte. Ltd.**

and

**Deep Sea Oil Corp.**

## Table of Contents

1.0    DEFINITIONS ................................................................    1

2.0    ENGAGEMENT OF CONSULTANT  ...........................................    2

3.0    DUTIES OF THE CONSULTANT ................................................    2

4.0    REMUNERATION  ..........................................................    3

5.0    TAXES  .....................................................................    5

6.0    TERM OF AGREEMENT  .........................................................    5

7.0    COMPANY'S ASSETS  ...........................................................    6

8.0    AUTHORITY OF CONSULTANT  ..................................................    7

9.0    BUSINESS ETHICS  ..........................................................    7

10.0   INDEMNITY ................................................................    12

11.0   CONFIDENTIALITY  ...........................................................    13

12.0   INSURANCE  ..............................................................    13

13.0   NOTICES ..................................................................    13

14.0   GOVERNING LAW AND DISPUTE RESOLUTION ...........................    14

15.0   MISCELLANEOUS  ...........................................................    15



KEPPEL00045268

## MARKETING CONSULTING AND SERVICES AGREEMENT

This MARKETING CONSULTING AND SERVICES AGREEMENT ("Agreement") is made and entered into this 1st day of December, 2011 by and between:

Fernvale Pte. Ltd., a Singapore Private Limited Company having its registered address as 50 Gul Road, Singapore 629351 (hereinafter referred to as "COMPANY"); and

Deep Sea Oil Corp, a Company limited by shares in the Territory of the British Virgin Islands, as an independent contractor, having its registered office at Palm Chambers,197 Main Street, P.O. Box 4493, British Virgin Islands VG 1110, (hereinafter "CONSULTANT").

### RECITALS

WHEREAS the Company has an interest in pursuing certain business opportunities with Sete Brasil Participações S.A. (hereinafter "SETE BRASIL") and its Affiliates for Engineering, Procurement and Construction Contracts (EPC Contracts) for up to six (6) Drilling Rig Units of the DSS38E design;

WHEREAS, CONSULTANT has expressed a desire to act as a consultant for the benefit of the Company in relation to SETE BRASIL and its Affiliates; and

WHEREAS, Company and CONSULTANT have concluded that it is in their respective best interests to enter into this Agreement.

**NOW, THEREFORE,** for and in consideration of the mutual covenants and promises recited herein, the parties hereto agree as follows:

### 1.0 DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings ascribed thereto:

1.1 "Affiliates" shall mean, with respect to any company, any other company directly or indirectly controlling, controlled by, or under direct or indirect common control with such company. A company shall be deemed to control another company if such company possesses, directly or indirectly, the power to (1) vote fifty percent (50%) or more of the stock having ordinary voting power for the election of directors of such company, or (2) direct or cause the direction of the management and policies of such company, whether through the ownership of stock, common members of board of directors, by contract or otherwise.

1

KEPPEL00045269

1.2    Where the context of this Agreement so requires, words importing the singular shall include the plural, and vice versa, references to COMPANY, and references to CONSULTANT shall include Deep Sea Oil Corp. and Zwi Skornicki, collectively and individually.

## 2.0    ENGAGEMENT OF CONSULTANT

2.1    COMPANY hereby engages CONSULTANT to assist the Company in promoting and marketing business with SETE BRASIL and its Affiliates as described herein.

2.2    CONSULTANT agrees to act exclusively for the Company as described herein for the marketing and procurement of EPC Contracts for up to six (6) Drilling Rig Units of the DSS38E design to SETE BRASIL and/or its Affiliate(s) and shall not directly or indirectly act on behalf or the benefit of any others in respect of such matters.

## 3.0    DUTIES OF THE CONSULTANT

3.1    CONSULTANT shall perform the following activities for the benefit of COMPANY and/or its Affiliates and shall at all reasonable times be available and accessible to assist COMPANY in relation thereto:

   3.1.1    Advise the COMPANY and provide information that may be useful to the COMPANY for the purpose of securing EPC Contracts for up to six (6) Drilling Rig Units of the DSS38E design with SETE BRASIL and/or its Affiliate(s).   In this regard, CONSULTANT shall provide such periodic reports as may reasonably be requested by COMPANY.

   3.1.2    Advise and assist the COMPANY in all matters pertaining to the marketing of the COMPANY's ability to perform an EPC Contract to SETE BRASIL or its Affiliate (hereinafter SETE BRASIL or its Affiliate shall be referred to as "Owner").

   3.1.3    Upon prior and written request of the COMPANY, advise and assist the COMPANY in connection with negotiations relating to any activities of the COMPANY in relation to the EPC Contract as aforesaid.

   3.1.4    Render best efforts, with the limitations imposed by this Agreement, to promote good relations between COMPANY and Owner.

   3.1.5    Upon prior and written request of the COMPANY, assist the COMPANY in communications and offer advice to the resolution of issues between the COMPANY and Owner.

2

KEPPEL00045270

shall be deemed a waiver of a similar or dissimilar provision or condition at the same time or at any prior or subsequent time.

15.8   This Agreement and subsequent modifications may be transmitted by telecopy facsimile machine and such facsimile copy shall be deemed an original if the Agreement or modifications are signed by the duly authorized representative of a Party.   Such facsimile shall constitute valid, binding documents and shall be regarded as such upon receipt.   The original of the documents sent by telefax shall be promptly sent by overnight courier or first class mail to the receiving Party so that accurate files may be maintained.

15.9   This Agreement and the rights and obligations contained therein may be assigned by COMPANY to an Affiliate of COMPANY or purchasers or substantially all of the assets of COMPANY (or succession by acquisition/operation of law) upon written notice without obtaining the consent of CONSULTANT.   CONSULTANT may not assign this Agreement absent COMPANY's prior written consent.

IN WITNESS WHEREOF, this Agreement has been executed by the parties named herein as of the day and year first written above.

Witness

By: _____

Name : _____

**"COMPANY"**
FERNVALE PTE LTD

By: _____

Name : ____Jeffery S. Chow____

Title : ____Attorney-In-Fact____

Witness

By: _____

Name : _____

**"CONSULTANT"**
DEEP SEA OIL CORP.

By: _____

Name : ____Zwi Skornicki____

Title : ____Director____

16

Confidential

# EXHIBIT 1

## **Certificate**

Further to the Marketing Consulting and Services Agreement dated 1st December 2011 between Fernvale Pte. Ltd. and Deep Sea Oil Corp. ("Agreement"), it is hereby certified that the following is an EPC Contract to which Clause 3.3 of the Agreement refers to, namely: -

Date of EPC Contract:

Name of Owner under EPC Contract:

Name of Contractor under EPC Contract:        :        Fernvale Pte. Ltd.

for a Drilling Rig Unit (DRU).

Dated the _____ day of _____, 20__.

Certified for and on behalf of the respective parties as follows: -

**Fernvale Pte. Ltd.**                    **Eagle Do Brasil Ltda.**

…………………………………….. ……………………………………..

Name:                         Name:

Title:                         Title:

17

# EXHIBIT 2

## Example of Remuneration Calculation

Payment to be made in US$:

If invoice which an Owner has paid is:   R$100,000    and    US$100,000

Then amount to be paid to Consultant shall equal:

US$100,000  +  R$100,000 (which already includes escalation formula in contract applied to amount to be received in R$, wherein such amount is then divided by the then prevailing exchange rate 3 days preceding when the funds are to be paid by, which rate is taken as US$1= R$1.9655, which yields US$50,877.63)  = US$150,877.63 x 1.5%

Yields:   US$2,263.16

(amount to be paid pursuant to what the Owner has paid of  R$100,000 and US$100,000 applying rate of 1.5%)

18

Confidential

KEPPEL00045273

Schedule 1
Certification

It is the intention of the parties to that Marketing Consulting and Services Agreement dated December 14, 2011 shall comply with the Foreign Corrupt Practices Act of the United States of America, the United Kingdom Bribery Act 2010, the Singapore Prevention of Corruption Act 2010 and the anti-corruption and bribery laws of Brasil, and all applicable anti-corruption laws (hereinafter "Anti-Corruption Laws"). Accordingly, and without prejudice to the generality of the foregoing, herewith CONSULTAT undertakes and agrees that it has not and shall not directly or indirectly to offer, pay, promise to pay or authorize the payment or giving of any money, or anything of value to any official of any government or any instrumentality thereof (for purposes hereof, an employee of PETROBRAS is deemed to be an official of a government or instrumentality thereof), to any political party or candidate for political office, or to any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any official of any government or any instrumentality thereof, for the purposes of:

a. Influencing any act or decision of such in his official capacity, including a decision to fail to perform his official functions; or

b. Inducing such official to use his influence with any governmental or any instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to obtain or retain business for or with, or direct business to, any person.

For invoices, further, the undersigned certifies all invoices submitted under this agreement are for expenses and services which comply with the foregoing.

CONSULTANT
DEEP SEA OIL CORP.

By:_____
Name : Zwi Skornicki, Director
Date:   1 December 2011

19

KEPPEL00045274

# ACKNOWLEDGEMENT FORM

TO:        FERNVALE PTE. LTD.

RE:        Keppel Code of Business Conduct Policy

I hereby acknowledge on behalf of Deep Sea Oil Corp. and myself receipt of the Keppel Code of Business Conduct Policy as it currently exists. We understand that compliance with this policy, as it may be amended from time to time, is a condition of the provision of services as CONSULTANT for Fernvale Pte. Ltd.

CONSULTANT
DEEP SEA OIL CORP.

By:_____
Name : Zwi Skornicki, Director
Date:   1 December 2011

and

_____

Name : Zwi Skornicki
Date:   1 December 2011

20

KEPPEL00045275

3.1.6   Consult with and offer advice to the COMPANY on problems or issues which may arise from time to time in connection with the activities of the COMPANY in any EPC Contract.

3.1.7   Upon prior and written request of the COMPANY, assist COMPANY in preparing and collecting invoices to Owner for work performed pursuant to each EPC Contract executed between the COMPANY and an Owner. In respect thereof, CONSULTANT shall not sign invoices or any other collecting documents on behalf of COMPANY.

3.1.8   Upon prior and written request of the COMPANY, advise and assist COMPANY regarding the importation and exportation of equipment and materials used by the COMPANY in connection with the relevant EPC Contract activities performed in Brazil.

3.1.9   Immediately bring to the attention of the COMPANY any improper or wrongful use of COMPANY's name, trademarks, emblems, designs, models or other similar industrial or commercial proprietary rights which may come to the attention of the CONSULTANT.

3.1.10  Perform such other acts or services as may be necessary and proper to assist the COMPANY in its business endeavors with the Owner for each EPC Contract.

3.2   Notwithstanding any of the services of CONSULTANT designated in Clause 3.1, the COMPANY and its Affiliates reserve the right to independently take such steps, with or without advice or assistance of the CONSULTANT, as they may deem necessary or which may be expedient for purposes of carrying out its activities under the EPC Contract with Owner.

3.3   It is specifically understood and agreed by the parties hereto that, absent an amendment to this Agreement, the services of CONSULTANT and the obligation of COMPANY to compensate CONSULTANT in respect thereof are expressly limited to the EPC Contracts directly under contract with Owner for up to six (6) Drilling Rig Units of the DSS38E design. For the avoidance of doubt, such EPC Contracts shall be the ones referred to in writing by the parties hereto in the form of Exhibit 1 hereto.

## 4.0   **REMUNERATION**

4.1   For services rendered hereunder when COMPANY has entered into an EPC contract with Owner during the term of this Agreement, COMPANY shall pay CONSULTANT a commission based upon a percentage of the Contract Price (all in US$, R$ converted at the prevailing rate at the Brazil Central Bank when funds are received) actually received by COMPANY pursuant to the EPC Contract and original scope of work between COMPANY and Owner as

3

KEPPEL00045276

provided in Clause 4.5.  The commission payable to CONSULTANT an the EPC Contract for a Drilling Rig Unit of the DSS38E design with each Owner shall be, in the aggregate, 1.5% (one and one half a percent) of the Contract Price (in US$) actually paid to and received by COMPANY.  How the R$ shall be converted to US$ for payment of remuneration shall be as set forth in the attached Exhibit 2, Example of Payment Calculation.

4.2    In addition to the payments referred to in Clause 4.1 above, COMPANY also will, subject to the provisions of Clause 4.6, reimburse CONSULTANT for any and all third party costs and expenses reasonably incurred by CONSULTANT on behalf of COMPANY in connection with services performed pursuant to this Agreement.  Any such third party costs or expenses shall be subject to prior written approval of COMPANY before they are incurred.    The reimbursement of such expenses incurred by CONSULTANT shall be invoiced separately and shall require sufficient supporting data or receipts in compliance with the requirements of Clause 4.6.

4.3    Except as otherwise provided in Clause 4.1 and 4.2, no other payments shall be due CONSULTANT hereunder.

4.4    CONSULTANT shall provide COMPANY written instructions concerning the payment or reimbursement of (a) any compensation due in respect to Clause 4.1, and (b) any expenses incurred pursuant to the provisions of Clause 4.2. Payment instructions shall remain firm and fixed until receipt by COMPANY of superceding instructions to the contrary.

4.5    All compensation due to CONSULTANT pursuant to Clause 4.1 shall be paid in U.S. Dollars.  Payment of all compensation shall be made pursuant to the instructions received by COMPANY in accordance with Clause 4.4 and shall be tendered by COMPANY within fifteen (15) days after COMPANY's receipt of payment from Owner.  The remittance of any compensation due as a result of EPC Contract priced in Brazilian currency shall be determined based on the exchange rate established for the project, under which the project was awarded.

4.6    All third party expenses incurred by CONSULTANT for the benefit of the COMPANY which are in accordance with COMPANY's business expense and business ethics policies as they now exist or as amended, supplemented or replaced from time to time shall, upon prior approval of COMPANY, be reimbursed by the COMPANY within thirty (30) days following receipt of CONSULTANT's invoice(s) including copies of all supporting documentation and the certification required under Clause 9; provided, however, COMPANY shall have the right to withhold payment of any invoice (or part thereof) where there is a bona fide question or dispute as to the propriety or amount claimed, or where CONSULTANT fails to provide adequate supporting documentation

4

in accordance with this Agreement and COMPANY's business expense and business ethics policies. Furthermore, payment of any invoice by COMPANY shall not prejudice the right of COMPANY to later question the propriety of any charges thereon.

4.7     Notwithstanding anything to the contrary contained herein, all compensation shall cease as of the date of Zwi Skornicki's death or incapacity or restriction or inability of CONSULTANT (for any reason whatsoever as shall reasonably be determined by COMPANY) such that he or it is no longer able to perform the duties set forth herein; provided, however, that COMPANY shall remain responsible for any compensation previously earned but unpaid as of such date, which amounts shall be paid to CONSULTANT or its successors or assigns.

## 5.0     TAXES

5.1     Unless otherwise provided by law, CONSULTANT shall pay all taxes now or hereafter imposed on or with respect to the services performed by or compensation paid to CONSULTANT in connection with this Agreement, including, without limitation, any corporate or personal income taxes, gross receipts or gross profit taxes, excise taxes, value added taxes, service taxes, gross billings taxes, exchange transactions tax or other like charges and taxes. Furthermore, CONSULTANT agrees to defend, indemnify and hold harmless Company and its Affiliates, and their respective officers, directors, employees, agents and representatives, from all claims, losses, damages, costs (including legal costs), expenses and liabilities of every kind and nature resulting from or related to the levy or imposition of any tax, fine, penalty or interest on COMPANY as a result of services by or the payment of compensation to CONSULTANT.

## 6.0     TERM OF AGREEMENT

6.1     Subject to the provisions of this Agreement, this Agreement shall remain in full force and effect from the date first written above and shall continue in force and effect unless and until terminated by either party upon ninety (90) days prior written notice.

6.2     Notwithstanding the provisions of Clause 6.1, this Agreement shall terminate immediately:

6.2.1     CONSULTANT or Zwi Skornicki ceases to be eligible to act on benefit of COMPANY.

6.2.2     In the event of any material breach, default or non-compliance by CONSULTANT of any of the provisions contained in this Agreement.

5

6.2.3   In the event CONSULTANT breaches any of the provisions contained in Clause 9 hereof.

6.2.4   In the event that either COMPANY or CONSULTANT becomes bankrupt or insolvent or has a receiver appointed on the whole of its assets or any substantial part thereof, or an order from any court of law is rendered for the attachment of its assets or any substantial part thereof.

6.2.5   In the event of Zwi Skornicki's death or incapacity or CONSULTANT's inability (for any reason whatsoever as shall reasonably be determined by COMPANY), subject to payment as provided in Clause 4.8 or Clause 6.4, as applicable.

6.3   Notwithstanding the provisions of Clause 6.2, this Agreement shall terminate forthwith if:

6.3.1   COMPANY decides to discontinue for whatever reason, voluntarily or otherwise, pursuit or conduct of the EPC Contract with Owner or that the EPC Contract with Owner has been completed, provided that termination shall not be effective until thirty (30) days following COMPANY's submission of notice to that effect to CONSULTANT.

6.3.2   In the event of a change in control of, or acquisition by, COMPANY or any Affiliate, COMPANY shall have the right to terminate this Agreement forthwith upon submission of notice to CONSULTANT.

6.3.3   In the event of corporate modification including but not limited to the transfer of shares/quotas or the indirect or direct change in control of, or acquisition by, CONSULTANT or any Affiliate, COMPANY shall have the right to terminate this Agreement forthwith upon submission of notice to CONSULTANT.

6.4   Should this Agreement terminate or be terminated pursuant to Clause 6.1 (if terminated by Company) or Sub-clauses 6.2.4 (in the event of bankruptcy or insolvency of COMPANY), 6.3.1 or 6.3.2, CONSULTANT shall be entitled to continued payment of compensation pursuant to Clause 4.1 for the then remaining fixed (non-optional) term of any existing EPC Contract with Owner for .   In the event of any other termination pursuant to the terms of this Agreement, CONSULTANT shall not be entitled to any further compensation following the effective date of said termination except as respects sums previously earned but unpaid upon the termination date.

6

KEPPEL00045279

## 7.0   COMPANY'S ASSETS

7.1   At all times COMPANY shall remain the sole proprietor of its property and assets, and CONSULTANT, whose interests shall be limited to the entitlements provided in Clause 4 above, shall have no other interests therein or claim thereto.

## 8.0   AUTHORITY OF CONSULTANT

8.1   CONSULTANT shall be an independent contractor in the performance of all matters within the scope of this Agreement.   It is acknowledged and understood that CONSULTANT does not have authority to conclude, sign or execute any contracts on behalf of COMPANY or on COMPANY'S name.

8.2   Neither CONSULTANT nor its employees, representatives or agents have any authority or power (or represent that they have any authority or power) to enter into or create any obligations on behalf of COMPANY, except pursuant to the express written authority that may be given by COMPANY by power of attorney.   Without limiting the generality of the foregoing, it is specifically agreed that CONSULTANT shall not sign any invoices or other collecting documents on behalf of COMPANY.   Furthermore, CONSULTANT shall represent itself as an independent contractor in the performance of all matters with the scope of this Agreement.

8.3   Nothing herein contained shall be deemed to constitute or create an employment or agency relationship between COMPANY and CONSULTANT. Neither COMPANY nor CONSULTANT shall be considered, for any purposes whatsoever, partners or joint venturers and CONSULTANT shall not be considered to be COMPANY'S commercial agent or representative.

8.4   Upon entry into this Agreement and at all times during its continuance, CONSULTANT or Zwi Skornicki shall not indirectly or indirectly sponsor, represent or assist any other person, firm or company conducting business or performing services which competes with the business activities of COMPANY.

## 9.0   BUSINESS ETHICS

9.1   CONSULTANT acknowledges receipt of the Keppel Code of Business Conduct Policy ("COBCP") and hereby agrees to strictly adhere to their requirements (as amended, supplemented or replaced from time to time) in connection with the services performed for COMPANY pursuant to this Agreement or otherwise.   CONSULTANT represents and warrants to COMPANY and covenants with COMPANY that, in performing services under this Agreement, it will not cause or aid COMPANY or any its officers or employees to be in violation of said Policies.

7

KEPPEL00045280

9.2    In connection with the services to be performed by CONSULTANT pursuant to this Agreement, CONSULTANT expressly agrees as follows:

    a.    <u>Government Official</u>:  For the purpose of this Clause 9, the terms "Government Official" shall be as defined in the COBCP and includes any appointed, elected, or honorary official, or officer or any employee of any government, government ministry or department, agency or instrumentality thereof, or any company or corporation that is owned or controlled by a government or any public international organization or any person acting in a official capacity for or on behalf of any such government, ministry or department, agency, company or corporation, instrumentality or public international organization, including without limitation PETROBRAS.

    b.    CONSULTANT agrees, represents and warrants that he has read, understands and will abide by the United States Foreign Corrupt Practices Act ("FCPA"), the United Kingdom Bribery Act 2010, the Singapore Prevention of Corruption Act 2010 and the anti-corruption and bribery laws of Brasil, the jurisdiction(s) where COMPANY and its Affiliates for whom CONSULTANT provides the services hereunder, are organized, the jurisdiction(s) where CONSULTANT and its applicable affiliates are organized, and the country(ies) where the services will be performed (collectively, the "Anti-Corruption Laws").

    c.    CONSULTANT further agrees, represents and warrants that neither it nor its Related Parties (defined below) have taken and that it shall not take, and shall prohibit its affiliates from taking, any action that could create liability for the COMPANY or any of its Affiliates under the Anti Corruption Laws, and to abide by the prohibitions of the Anti-Corruption Laws, including, but not limited to:

        i.    with respect to the matters covered by this Agreement, that the CONSULTANT, its affiliates (including without limitation those listed on Schedule 2, attached hereto and incorporated herein by reference), and its and their respective directors, officers, employees, agents, or representatives (a "Related Party" or the "Related Parties") have not and shall not pay, give, offer, promise to pay, or authorize the payment or giving of any money or anything of value to any Government Official's acts or decisions or induce such Government Official to use his or her influence to affect the official decision or actions of others in order to obtain, retain or direct business or to obtain any other improper advantage for the CONSULTANT, its Related Parties or the COMPANY or its Affiliates, or any person with whom the



8

                                                                 KEPPEL00045281

COMPANY has business dealings in the country where the Work is performed or in furtherance of any prohibited act covered by the Anti-Corruption Laws;

ii.     CONSULTANT further represents and warrants that with respect to the matters covered by this Agreement, the CONSULTANT and it Related Parties have not and the CONSULTANT shall not, and shall procure that its Related Parties shall not pay, offer, give, promise to pay, or authorize the paying or giving of money or anything of value to any other person or Third Party if they know or believe that there is a high probability that such person or Third Party will make a payment or offer or give money or anything of value to any Government Official or Political Official (defined below) for the purpose stated in Clauses 9.2 c. i. or 9.2 c. ii.;

iii.    with respect to the contribution to political parties, officials of political parties, or candidates for political office ("Political Officials"), CONSULTANT represents and warrants that it and its Related Parties have and that CONSULTANT will, and will require its Related Parties to, make contributions only to the extent that such contributions are permitted under the relevant provisions of local law and are not offers, payments, promises to pay, or authorizations for the payment of any money, or gift, promise to give, or authorization  for the giving of anything of value to a Political Official in furtherance or any prohibited act covered by the Anti-Corruption Laws;

iv.     Reasonable promotional expenses and reasonable entertainment of Government Officials or Political Official that are permissible under local law and comply with COMPANY's COBCP are not prohibited by this Clause 9.2;

v.      CONSULTANT shall defend, indemnify and hold harmless COMPANY, its Affiliates and its and their respective shareholders, directors, officers, employees, agents (other than CONSULTANT and its Related Parties) and representatives from and against all direct or indirect losses and expenses arising out of or in connection with any violation of the provisions of this Clause 9.2.

d.   <u>No Governmental Ownership of CONSULTANT</u>.     CONSULTANT hereby represents and warrants to COMPANY that no ownership interest, direct or indirect, in CONSULTANT or any Related Party or in

9

the contractual relationship established by the Agreement, is held or controlled by any Government Official or Political Official.

e.    <u>Payments.</u>  CONSULTANT acknowledges that all payments to CONSULTANT or any Related Party under this Agreement shall be made by check or wire transfer, and that none shall be made by cash or other negotiable instrument.

f.    <u>Books and Records</u>.    CONSULTANT agrees that its books and records and shall require that those of its Related Parties, relating to transactions pursuant to this Agreement shall be subject to audit at reasonable times compliance with the Anti-Corruption Laws. CONSULTANT shall, and shall cause its Related Parties to, maintain books and records, of all transactions pursuant or related to this Agreement in such form and accurately reflect such transactions. Further, CONSULTANT will provide to COMPANY or its Affiliates such documents or other evidence (whether written, oral or otherwise) as COMPANY or its Affiliates may request from time to time so that COMPANY or its Affiliates may determine and establish compliance with the provisions of this Clause 9, including individual certifications of such of CONSULTANT's and its Related Parties, principals, shareholders, directors, employees, agents or other representatives as may have worked on CONSULTANT's behalf in connection with performance under this Agreement, attesting to compliance with the foregoing.  At the request of COMPANY or its Affiliates, accompanying any invoice for payment, and at least annually, CONSULTANT shall provide COMPANY or the applicable Affiliates with a certification in a form substantially similar to Schedule 1, attached to and incorporated herein by reference.

g.    <u>Right of Investigation and Audit</u>. CONSULTANT agrees that the COMPANY shall have the right (but not the obligation), upon written notice to CONSULTANT, to conduct an investigation and audit of CONSULTANT to determine to the COMPANY's reasonable satisfaction whether any actions or failures to act on behalf of CONSULTANT or its Related Parties may subject the COMPANY to such liability.  As a part of the written notice to CONSULTANT, COMPANY agrees to disclose to CONSULTANT the basis for the COMPANY's belief that CONSULTANT or its Related Parties has taken or failed to take any action that may subject the COMPANY or its Affiliates to liability under the Anti-Corruption Laws.  CONSULTANT agrees to, and to cause its Related Parties to, cooperate fully with such investigation, the scope, method, nature and duration of which shall be

10

KEPPEL00045283

at the sole reasonable discretion of the COMPANY.   CONSULTANT agrees that COMPANY or its Affiliates may disclose the terms of this Agreement to applicable government agencies and other persons with a legitimate need for such information.

h.     Rights upon on Anti-Corruption Laws Default.   In   the   event   that COMPANY believes, in its sole discretion, and whether or not it has conducted an investigation in accordance with Clause 9.2 g, that CONSULTANT or its Related Parties have acted in any way that may subject the COMPANY or its Affiliates to liability under the Anti-Corruption Laws, the COMPANY shall have the unilateral right, exercisable immediately upon written notice to CONSULTANT, to terminate this Agreement.   In the event of such termination: (i) this Agreement shall become void; (ii) COMPANY shall have a right to action against CONSULTANT for the amount of any monetary payment of thing of value made or given by CONSULTANT or its Related Parties in breach of any of the above-mentioned covenants; (iii) all obligations of COMPANY or its Affiliates to pay CONSULTANT's fees shall cease forthwith; and (iv) COMPANY may, at its sole discretion, rescind this Agreement and CONSULTANT shall immediately return to COMPANY all commissions arising from any transaction in which there was a violation of this Clause 9.

i.     CONSULTANT's Continuing Obligation to Advise.     CONSULTANT agrees that should it learn or have reason to know of: (i) any payment, Political Official in violation of this Clause 9, or (ii) any other development during the term of this Agreement that in any way makes inaccurate   or   incomplete   the   representations,   warranties   and certifications of CONSULTANT or its Related Parties hereunder given or made as of the date hereof or at any time during the term of this Agreement, relating to the Anti-Corruption Laws, CONSULTANT will immediately advise COMPANY in writing of such knowledge or suspicion and the entire basis known to CONSULTANT therefore.

j.     CONSULTANT's Continuing Duty to Disclose Governmental Ownership of CONSULTANT.   In the event that during the term of this Agreement a Government Official or Political Official acquires an interest of any sort or nature, direct or indirect, in CONSULTANT or a Related Party or in this Agreement, CONSULTANT covenants and agrees to make immediate, complete and accurate written disclosure to the COMPANY thereof and that following such disclosure, this Agreement shall immediately become terminable by the COMPANY upon written notice to CONSULTANT.

11

                                                                       KEPPEL00045284

k.   Materiality. CONSULTANT and COMPANY agree that this Clause 9 is a material provision of this Agreement.

l.   Forfeiture. In the event that CONSULTANT breaches this Clause 9, then CONSULTANT forfeits, waives and agrees to forever forego any rights to compensation of any sort under this Agreement.

m.   Survival. The provisions of this Clause 9 shall survive termination, expiration, or cancellation of this Agreement.

9.3   CONSULTANT agrees to comply with the provisions of all applicable federal, state, country, or municipal laws, regulations or ordinances and shall be responsible for obtaining any and all authorizations from any applicable governmental authority that may be required for CONSULTANT to perform the services hereunder.  COMPANY reserves the right, but not limited the obligation, to terminate this Agreement if COMPANY determines, in its sole an absolute discretion, that CONSULTANT or an partner, officer, director, employee, agent, representative or shareholder of CONSULTANT is involved in any activity that would constitute a violation of either the laws of policies of the jurisdiction(s) where COMPANY or its Affiliates are organized, including without limitation the FCPA and the other Anti Corruption Laws, or those of any other country in which any services are performed pursuant to this Agreement, regardless of whether such activity is ultimately determined to be a violation of such laws or policies.

## 10.0   INDEMNITY

10.1   CONSULTANT shall indemnify, defend and hold harmless COMPANY, its Affiliates, and their respective officers, directors and employees, from and against any loss, damage, claim, suit; liability, judgment and expense (including attorney's fees and other costs of litigation) arising from or in any way related to (a) any loss of or damage to CONSULTANT'S property, or (b) personal injury, disease or death of CONSULTANT, its employees, agents and representatives.

10.2   Subject to Clause 9, COMPANY shall indemnity, defend and hold harmless CONSULTANT, its Affiliates, and their respective officers, directors and employees, from and against any loss, damage, claim, suit, liability, judgment and expense (including attorney's fees and other costs of litigation) arising from or in any way related to (a) any loss of or damage to property, or (b) personal injury, disease or death, of COMPANY, its Affiliates and their respective officers, directors, employees, agents and representatives.

12

KEPPEL00045285

## 11.0   CONFIDENTIALITY

11.1   This Agreement and all information acquired from or furnished by the COMPANY to CONSULTANT, other than information which:

      (a)     is part of the public domain;

      (b)     becomes part of the public domain other than through the fault of the parties hereto; or

      (c)     is already known by the parties at the time of disclosure,

is to be treated as confidential and not to be used or disclosed for any other purpose than for the performance of services under this Agreement.

11.2   CONSULTANT covenants and agrees that the obligation of confidentiality recited in Clause 11.1 shall be strictly enforced and shall continue for a period of two (2) years from the expiration of this Agreement.   Following the termination of this Agreement, CONSULTANT shall, to the extent possible, return all confidential information to COMPANY.

## 12.0   INSURANCE

12.1   CONSULTANT shall be responsible for carrying such insurance in conjunction with its performance of services under this Agreement as may be required by the laws of Brasil, and provide COMPANY with copies of such insurance policies and general terms of engagement.

## 13.0   NOTICES

13.1   Any notices or other communications by either COMPANY and/or the CONSULTANT to the other shall be in writing and sent by overnight courier, email or fax to the address(es) of the other parties as specified below, and shall be deemed to have been made: (a) if sent by overnight courier, upon documented receipt; or (b) if sent email or fax, at the time of receipt.

COMPANY:               Fernvale Pte Ltd
                        c/o Keppel Offshore & Marine Ltd
                        50 Gul Road,
                        Singapore 629351
                        Attn :  Company Secretary

                        Facsimile :   +65 6863-1862

13

KEPPEL00045286

CONSULTANT:                     Deep Sea Oil Corp.
                                c/o Zwi Skornicki
                                Rua da Assembleia 10, Suite 2008
                                CEP: 20011-000, Rio de Janeiro, RJ Brasil

                                Facsimile : +55 21 2292 5677

## 14.0   GOVERNING LAW AND DISPUTE RESOLUTION

14.1   The Parties undertake to negotiate in good faith and endeavor their best efforts for an amicable settlement as definite resolution of any claim, controversy or dispute arising from or in connection with this Agreement.

14.2   Considering the specific circumstances of the case, any of the parties may cease to find an amicable settlement, or stop, at any time, the negotiations in course, so as to immediately request the commencement of the arbitration.

14.3   This Agreement and the arbitration proceeding shall exclusively be governed by the laws of the Republic of Singapore; and the arbitration shall be held in Singapore. The parties elect arbitration in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, which rules are deemed to be incorporated by reference in this clause.

14.4   The tribunal shall be composed by one arbitrator.  The selection of the arbitrator shall be in accordance with the rules and terms set forth by the SIAC Rules.

14.5   The arbitration shall be conducted in English.

14.6   The final arbitral award shall be rendered in writing, within 180 days from the institution of the arbitration, but the arbitrator may extend the proceeding at its sole discretion.  The arbitral award shall be binding to all parties and shall be enforceable as per the applicable legislation.

14.7   The expenses incurred in respect of the arbitration proceeding shall be borne by the losing party.

14

KEPPEL00045287

## 15.0 **MISCELLANEOUS**

15.1 This Agreement is written in the English language and notwithstanding any translation hereof into any other language, the English language version shall control.

15.2 the delay, omission or failure of either party at any time and from time to time and any particular context or connection to enforce any of the terms, conditions or stipulations herein contained, shall not be construed as a waiver thereof nor of the right of any part hereto at any other time to enforce any term, condition or stipulated aforesaid.

15.3 No modification, change or alteration of this Agreement shall be binding on the parties named herein unless and until the same shall have been reduced to writing and signed by the parties.  Furthermore, when executed, this Agreement shall contain the entire agreement between the parties herein named and shall supersede all prior agreements or understandings, oral or written, between such parties, including but not limited to, any prior agreements or understandings between the CONSULTANT and COMPANY.

15.4 The headings contained in this Agreement are solely for convenience and should not affect the construction or interpretation hereof.  This Agreement may be executed in as many counterparts as may be deemed necessary or convenient, each of which shall be considered as an original.  In the event that any clause or sub clause of this Agreement is voided as being contrary to law, this Agreement shall continue and have effect as if such clause or sub clause had been omitted from this Agreement, provided that any ambiguities in the construction of this Agreement caused by the voided or omitted clause shall be resolved insofar as shall be lawfully possible by reference to the intent of such voided or omitted clause of sub clause.

15.5 Nothing contained in this Agreement shall limit the right of the COMPANY to directly promote its activities in Brasil.

15.6 Except as expressly provided herein, nothing in this Agreement is intended to confer on any person other than the parties and their respective successors any rights or remedies under or by reason of this Agreement.

15.7 No provision of this Agreement may be amended, modified or waived unless such amendment, modification or waiver is authorized by COMPANY and is agreed to in writing, signed by CONSULTANT and by an officer of the COMPANY.  No waiver by a Party of any breach by the other Party of any condition or provision of this Agreement to be performed by such other Party

15

KEPPEL00045288

**FORM OF CONFIRMATION OF ELIGIBLE EPC CONTRACT**

FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. hereby confirm that the following EPC Contract dated the date stated below has been executed between FERNVALE and the Customer mentioned below: -

| Date of EPC Contract: | 16th December 2011 |
|---|---|
| Name of Customer: | Urca Drilling BV |
| DRU #: | DRU #1 |

and the parties confirm that the above-mentioned EPC Contract is eligible for Commission payable under the terms and conditions of the Agency Agreement between FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. dated November 30, 2011.

For and on behalf of **FERNVALE PTE LTD**

Name:  Jeffery S. Chow
Title:   Attorney-In-Fact

For and on behalf of **EAGLE DO BRASIL LTDA.**

Name:  Zwi Skornicki
Title:   Director

**FORM OF CONFIRMATION OF ELIGIBLE EPC CONTRACT**

FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. hereby confirm that the following EPC Contract dated the date stated below has been executed between FERNVALE and the Customer mentioned below: -

| Date of EPC Contract: | 2nd August 2012 |
|---|---|
| Name of Customer: | Frade Drilling BV |
| DRU #: | DRU #2 |

and the parties confirm that the above-mentioned EPC Contract is eligible for Commission payable under the terms and conditions of the Agency Agreement between FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. dated November 30, 2011.

For and on behalf of **FERNVALE PTE LTD**

For and on behalf of **EAGLE DO BRASIL LTDA.**

Name:  Jeffery S. Chow

Title:    Attorney-In-Fact

Name:  Zwi Skornicki

Title:    Director

KEPPEL00045290

**FORM OF CONFIRMATION OF ELIGIBLE EPC CONTRACT**

FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. hereby confirm that the following EPC Contract dated the date stated below has been executed between FERNVALE and the Customer mentioned below: -

| Date of EPC Contract: | 2nd August 2012 |
|---|---|
| Name of Customer: | Bracuhy Drilling BV |
| DRU #: | DRU #3 |

and the parties confirm that the above-mentioned EPC Contract is eligible for Commission payable under the terms and conditions of the Agency Agreement between FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. dated November 30, 2011.

For and on behalf of **FERNVALE PTE LTD**

....................................
Name:  Jeffery S. Chow
Title:    Attorney-In-Fact

For and on behalf of **EAGLE DO BRASIL LTDA.**

....................................
Name:  Zwi Skornicki
Title:    Director

KEPPEL00045291

**FORM OF CONFIRMATION OF ELIGIBLE EPC CONTRACT**

FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. hereby confirm that the following EPC Contract dated the date stated below has been executed between FERNVALE and the Customer mentioned below: -

| Date of EPC Contract: | 2nd August 2012 |
| Name of Customer: | Portogalo Drilling BV |
| DRU #: | DRU #4 |

and the parties confirm that the above-mentioned EPC Contract is eligible for Commission payable under the terms and conditions of the Agency Agreement between
FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. dated November 30, 2011.

For and on behalf of **FERNVALE PTE LTD**

Name:  Jeffery S. Chow
Title:    Attorney-In-Fact

For and on behalf of **EAGLE DO BRASIL LTDA.**

Name:  Zwi Skornicki
Title:    Director

Confidential

**FORM OF CONFIRMATION OF ELIGIBLE EPC CONTRACT**

FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. hereby confirm that the following EPC Contract dated the date stated below has been executed between FERNVALE and the Customer mentioned below: -

| Date of EPC Contract: | 2nd August 2012 |
|---|---|
| Name of Customer: | Mangaratiba Drilling BV |
| DRU #: | DRU #5 |

and the parties confirm that the above-mentioned EPC Contract is eligible for Commission payable under the terms and conditions of the Agency Agreement between FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. dated November 30, 2011.

For and on behalf of **FERNVALE PTE LTD**

.......................................

Name:  Jeffery S. Chow
Title:    Attorney-In-Fact

For and on behalf of **EAGLE DO BRASIL LTDA.**

.......................................

Name:  Zwi Skornicki
Title:    Director

KEPPEL00045293

**FORM OF CONFIRMATION OF ELIGIBLE EPC CONTRACT**

FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. hereby confirm that the following EPC Contract dated the date stated below has been executed between FERNVALE and the Customer mentioned below: -

| Date of EPC Contract: | 2nd August 2012 |
|---|---|
| Name of Customer: | Botinas Drilling BV |
| DRU #: | DRU #6 |

and the parties confirm that the above-mentioned EPC Contract is eligible for Commission payable under the terms and conditions of the Agency Agreement between FERNVALE PTE. LTD. and EAGLE DO BRASIL LTDA. dated November 30, 2011.

For and on behalf of **FERNVALE PTE LTD**

For and on behalf of **EAGLE DO BRASIL LTDA.**

Name:  Jeffery S. Chow
Title:    Attorney-In-Fact

Name:  Zwi Skornicki
Title:    Director

KEPPEL00045294