## ARTICLE 8             MILESTONES PAYMENTS.

8.1 <u>Milestones Payments</u>. Subject to the compliance with <u>Exhibit XVII, Appendix 1</u> (Milestones Payment Schedule), the Contract Price shall be paid by the Owner to the Contractor in accordance with the Milestones Payment Events and the provisions of this Article.

8.2 <u>Milestone Payment Event</u>. A Milestone Payment Event when accomplished entitles the Contractor to invoice and receive payment for the portion of the Contract Price corresponding to such Milestone Payment in accordance with <u>Exhibit XVII</u>.

8.2.1 Upon 15 days of availability of the detailed Project Schedule (<u>Exhibit XVIII</u>), the <u>Exhibit XVII</u> - Appendix I-Milestone Payment Schedule shall be revised and agreed by the parties in order to reflect the detailed construction progress achieved on each Milestone Payment Event accordingly.

8.3 <u>Milestone Payment Documents</u>. The Contractor shall submit to the Owner on the Milestone date a statement showing: (i) the Milestone Payment Event achieved prior to the date of the statement to the extent not previously invoiced for, (ii) the portion of the Contract Price corresponding to the Milestone Payment Event included in the relevant statement, (iii) any other amounts due and payable to the Contractor pursuant to this Contract and (iv) documentation supporting the foregoing.

8.3.1 No later than seven (7) days from the date of issuance of a statement by the Contractor pursuant to this Section, the Owner shall review such statement and, by notice to the Contractor substantiated in reasonable details, inform whether in its reasonable opinion the Milestones Payment reflected therein have been completed and/or the amounts included in the statement conform to the Milestones Payment Schedule or otherwise reject the statement. The Owner's failure to issue the notice contemplated in this sub-clause within the required seven (7) day period shall constitute a deemed acceptance of the relevant statement.

8.3.2 From and after the date which is the earlier of (i) the date on which the Contractor received the notice contemplated in <u>Section 8.3.1</u> above and (ii) seven (7) days after the issuance of the relevant statement, the Contractor shall be entitled to issue and deliver to the Owner the appropriate invoicing documentation.

8.3.3 In the Milestone Payment Event – Down payment is an exception for <u>Section 8.3.1</u> and invoice shall be issued together with the receipt of the Performance Security, provided in accordance with <u>Exhibit XXIII</u> and issued by a Bank or an Insurance Company prior approved by the Owner.

## ARTICLE 9             CONTRACT PRICE

9.1. <u>Contract Price</u>. The Contract Price is determined on a lump sum, fixed price basis and is equal to the sum of the component prices for the Works amounting to US$ 809,288,000.00 as set forth in <u>Exhibit XVI</u>. The Contract Price is inclusive of all the necessary overhead, personnel (supervision, direction, administration, labor), Equipment, taxes due to labor and social security obligations, costs, supplies, tools, expenses, taxes, the IN241/513 and the REPETRO regime, licenses, insurance and other legal obligations, including profit, required for the performance of Contractor's entire contractual obligations until termination of this Agreement-including, but not limited to, its provisions relating to Contractor's performance (Article 3); Local Content (Article 4);

Confidential

KEPPEL00490730

Taxes (Article 7), Good Industry Practices, and all Applicable Laws. Each Change Order authorizing the payment of money to Contractor or credit of amounts from Contractor to Owner shall be deemed to increase or decrease the Contract Price accordingly for all purposes hereof.

9.2. Price. The Contract Price comprises:

9.2.1 The lump sum price of US$ 809,288,000.00 including the amount of US$ 364,179,600.00 and the amount of R$ 694,369,104.00, converted into United States Dollars at an exchange rate of US$1.00/ R$1.56 for the purpose of calculating the lump sum price, as set forth in Price Schedule A of Exhibit XVI, corresponding to all services and work required to deliver the DRU, as described herein, fully functional, operable and delivered definitively to Owner at the final location, comprising, among others, engineering design, procurement, construction, erection and assembly, Pre-Commissioning, Tests, Trials, Certification and assisted operation of the DRU, and excluding the items to be specifically provided by Owner, as indicated in Exhibits I, II and X.

9.3. Payment Limit. Notwithstanding the provisions under Section 9.1, when the sums of payments made by Owner reaches the total amount specified in Section 9.1, Owner's payment responsibilities shall cease except as otherwise provided in this Agreement. Notwithstanding the foregoing, Contractor shall be responsible to carry out the Works and its obligations and responsibilities under this Agreement to Final Completion.

9.4 Incentive Amount. The Contractor shall be entitled to receive an incentive amount under this Agreement (i) if the Owner is awarded early operation bonus on start of operation for using the DRU regarding the operations of TBN-SSUB Nr. 16 awarded to Owner under International Invitation No.0966646118 or (ii) if the Handover occurs earlier than the Handover Date and the DRU is not used for the event mentioned in Section 9.4(i) above ("Incentive Amount").

9.4.1 The Incentive Amount shall be paid by the Owner to the Contractor, at the end of the relevant period, in the case of Section 9.4(i), to the extent that Owner has been paid early operation bonus under the relevant charter agreement executed in connection hereto ("Charter Agreement"), in accordance with the conditions set forth in Section 9.4 (i).

9.4.1.1. Upon the occurrence of the events set out in Section 9.4(i) above, the Owner shall pay the Contractor an amount equal to 50% of the daily early operation bonus under the Charter Agreement.

9.4.1.2. Upon the occurrence of the events set out in Section 9.4(ii) above, the Owner shall pay the Contractor an amount equal to US$25,000.00 (twenty five thousand United State dollars) for each day of early Handover, subject to a limit of 365 days.

9.4.2 It is agreed by the Parties that notwithstanding the provisions of Section 20.2.1, the liquidated damages under the provisions of Section 20.2.1 shall apply only if no Incentive Amount is payable under Section 9.4(i) from the day following the date that no bonus or incentive payment is payable by Petrobras under the Charter Agreement.

### ARTICLE 10 — PAYMENTS TO CONTRACTOR

10.1. Payments. Payments shall be made by Owner to Contractor in accordance with Article 9, Exhibit XVI and Exhibit XVII, and shall comply with all other terms of this Agreement. Payments shall be made to one or more accounts designated by Contractor and shall be made in Brazilian Reais and United States Dollars in which the corresponding portion of the Contract Price is denominated in Exhibit XVI.

Confidential

KEPPEL00490731

10.1.1 The percentage of each currency to be paid in each Milestone Payment Event is set under Exhibit XVII.

10.2. **Invoicing.** Contractor shall submit to Owner, with a copy to Owner Project Manager, its Invoice according with Section 8.3.2 for such Milestone Payment Event accompanied by any necessary supporting documents described in Sections 10.3 through 10.5, in a form reasonably acceptable to Owner and previously approved by the Contractor Project Manager.

10.2.1 In the event invoicing occurs on a later date than that set forth in Section 10.2, the due date for payment of the invoice shall be postponed by as many days as the number of days of delay in the delivery of the invoice and/or of any required supporting documents in accordance with Sections 10.3 and 10.5.

10.3. **Invoicing Documents.** Each Invoice issued by Contractor to Owner must contain at a minimum the following information:

(i) Owner's address;

(ii) Reference to this Agreement with effective dates and any amendment or addendum pursuant to which such Invoice is issued;

(iii) Reference to the Milestone Payment Event to which the Invoice pertains and to the period of time covered by such Milestone Payment Event, and any numbering system used to identify such Milestone Payment Event(s);

(iv) Contractor's bank account information;

(v) Evidence of compliance by Contractor of its FGTS and INSS obligations required by the Applicable Law;

(vi) Any other data necessary for Owner to make payment thereof; and

(vii) The currency(ies) in which such Invoice shall be paid according to Section 10.1.1.

10.4. **Representation.** Each Invoice shall constitute a representation by Contractor that:

(i) The quality of all Works described in the Invoice is in accordance with the terms of this Agreement;

(ii) Contractor is entitled to payment of the amount invoiced;

(iii) The Works described in the Milestone Payment Documents accompanying the Invoice and all previous Invoices are free and clear of all Liens, security interests and encumbrances; and

(iv) All Subcontractors have been paid the monies due and payable to them for their work and supplies in connection with the Works (except for such amounts as may be disputed in good faith by Contractor).

The amount of the Invoice and the Works described therein shall correspond to the relevant Milestone Payment Event for the payment period covered by such Invoice. A delay in the submission of the Invoice by Contractor to Owner (and any and all supporting documentation requested by Owner pursuant to Section 10.5 below) will result in the postponement of the payment date for a period equal to such delay. Owner may, at its sole discretion, request that any Invoice be accompanied by a Lien waiver corresponding to all Works performed during the month to which such Invoice pertains.

10.5. **Review and Approval.** Each Invoice shall be reviewed and approved by Owner. Upon

Confidential                                                                                                           KEPPEL00490732

Owner's request, Contractor shall furnish additional supporting documentation, including certificates, and provide any further information as may be reasonably requested by Owner to verify such Invoice. Unless disputed pursuant to Article 24, the amount of each Invoice shall be due and payable within thirty (30) Days immediately following the receipt of the Milestone Payment Documents as per Section 8.3 (such payment due date to be adjusted pursuant to Section 10.2 above to reflect any delays in Contractor's Invoice issuance and delivery of requested documentation). If any amount described in any Invoice is disputed by Owner, payment shall be made only with respect to its undisputed portion. Payment of disputed amounts shall be made as soon as the dispute is resolved.

10.6. Payments.The payment amount due to Contractor based on the Milestone Payment Event shall be effected by Owner by means of a bank receipt document issued by a banking institution in the name of Contractor, payable on the thirtieth (30th) day counting from the receipt of the Milestone Payment Documents as per Section 8.3 with due regard for the provisions of Section 10.2, or by wire transfer in favor of Contractor. Contractor hereby notifies Owner that payment shall be made to the following bank and account:

For payments in United States Dollars:

BANK: Citibank N.A, Singapore
SWIFT: CITISGSG
For Account of Keppel FELS Limited
for credit of Fernvale Pte. Ltd.
ACCOUNT no. ███████████

For payments in Reais:

BANK:
BANCO ITAU
BRANCH NUMBER: 0301
ACCOUNT NUMBER: ███████
SWIFT CODE: ITAUBRSP
BANK: BANCO ITAU S/A
BENEFICIARY : BRASFELS S.A.
for credit of Fernvale Pte. Ltd.

BANK: HSBC Bank Brasil S.A.
BRANCH NUMBER : 1508
ACCOUNT NUMBER : ███████
SWIFT CODE : BCBBBRPR
BANK: HSBC Bank Brasil S.A.
BENEFICIARY : BRASFELS S.A.
for credit of Fernvale Pte. Ltd.

10.6.1 At Contractor's discretion it can elect to instruct Owner to make payments hereunder to more than one bank account.

10.6.2 If Contractor desires to receive payment at a bank account other than the account described above, it shall notify Owner in accordance with Section 25.5 indicating the new bank reference concurrent with an Invoice to Owner.

Confidential

KEPPEL00490733

10.6.3   If any amount hereunder is due on a day which is not a Business Day, such amount shall not be due and payable until the next following Business Day, and no interest shall accrue in respect of such delay.

10.6.4   For the first Milestone Payment Event – Down payment. The amount due as Down Payment shall be paid by Owner in accordance with the date set forth in the applicable invoice after receipt of the Performance Security, provided in accordance with Exhibit XXIII and issued by a Bank or an Insurance Company prior approved by the Owner.

10.7. Payments Not Acceptance of Work. No payment made hereunder shall be considered as an approval or acceptance of the Works or portions of the Works by Owner, or a waiver of any claim or right that Owner may have hereunder. All payments shall be subject to correction and adjustment to be effected in subsequent payments.

10.8. Payments Withheld and Deducted. In addition to disputed amounts set forth in an Invoice, Owner may withhold or deduct payment of any amount described in an Invoice or portions thereof in an amount and to such extent as may be reasonably necessary to protect Owner due to:

(a)   Defective Works that have not been remedied as required under this Agreement and which Owner has incurred expenses for the correction of Defective Works, after Contractor having been duly notified and given a reasonable term for remedying any such faulty or Defective Works, and to the extent (i) any defective Works are due to the Contractor's or Subcontractors' sole fault; and (ii) such Defective Works have been or are being corrected by Owner or by any third parties appointed by Owner;

(b)   Amounts paid by Owner to Contractor, in the month immediately preceding, incorrectly, or for which there was insufficient or inaccurate supporting information;

(c)   Liquidated damages such as Delay Damages which Contractor owes;

(d)   Any undisputed expenses, costs or liabilities, which Owner has incurred and for which Contractor is legally or contractually responsible, such as undisputed payment under any Subcontracts;

(e)   Amounts corresponding to the satisfaction of any judicial or administrative decision, encumbrances, liabilities to third parties for which Contractor is solely responsible, (whether directly or under any provision of this Agreement, including any provisions relating to Contractor's duty to indemnify any member of Owner Group), and brought against any member of Owner Group or, in the case of an encumbrance or lien, created on any property of any member of Owner Group; provided that the withholding of payments under this item (f) shall be limited to the value of the corresponding final judgment, or encumbrances;

(f)   Any undisputed amounts due and payable by Contractor to Owner; or

(g)   Contractor is in Default pursuant to Section 21.1 and such Default has not been cured within the time set forth in Section 21.1, and any amount withheld pursuant to this Section 10.8 shall not be due and payable hereunder for any purpose under this Agreement until the event or occurrence giving rise to Owner's withholding of payment ceases to exist.

10.9. Interest on Late Payments. Any amounts due, but not paid hereunder, from one Party to the other, shall bear interest at a per annum rate equal to the 6-month London Interbank Offered Rate (LIBOR), as published by the Financial Times, London edition, on the relevant due date plus 2%

Confidential                                                                                                                                              KEPPEL00490734

(two percent) per annum. Any amounts withheld, as per Sections 10.8 and 10.12 of this Agreement shall not be considered due and payable and are not subject to the foregoing interest.

10.10. Payments During Default. Owner shall not be obligated to make any payments hereunder at any time in which a Default shall have occurred and be continuing, (except for all undisputed payments that are due and in respect of which the related Invoice(s) has been accepted by Owner) and Contractor shall have no right to exercise any remedy hereunder in respect of such payments if and for so long as such Default is continuing.

10.11. Offset. Owner may offset any amount due and payable from Contractor to Owner against any amount due and payable to Contractor hereunder, without prejudice to Owner's other rights and remedies under this Agreement.

10.12. Payment Error. Payments made in error shall be immediately returned by the Party receiving the payment in error. Notwithstanding the generality of the foregoing, in the event Owner discovers that a milestone associated with a payment was not in fact achieved, Owner may set off the amount paid by it in respect of the achievement of such milestone against other payment obligations of Owner until such milestone is achieved, at which time the amount recovered by Owner through exercise of such rights of set off shall be due and payable by Owner to Contractor.

10.13. Adjustments. The Parties expressly understand and acknowledge that (i) the formulas set out below include the effects of price fluctuations that affect the Contract Price and (ii) Contractor has taken the effects of exchange rate fluctuations into account in proposing and agreeing to the Contract Price. Owner shall not be obligated to adjust the Contract Price or to pay any additional amounts in respect of the Contract Price for any reason related to fluctuations of exchange rates or price fluctuations not assessed by the price indexes defined in Sections 10.13.1 and 10.13.3 below.

10.13.1  The Parties agree that the amount to be paid in respect of any component of the Contract Price that is denominated in Brazilian Reais, shall be subject to yearly adjustments determined by the following parametric formula, calculated once every twelve months, and counted from the Proposal Submission Date, to reflect the escalation of costs related to the drilling rig industry in the Brazilian market:

$$PM = \left( PO \times \left( \alpha 1 \times \left( \frac{ICSPn}{ICSPo} \right) + \alpha 2 \times \left( \frac{IGP-DIn}{IGP-DIo} \right) \right) \right)$$

Where:

**PM**: Monthly Amount in Brazilian currency Reais (R$).

**PO**: Portion of Contract Price subject to payments in Brazilian Reais (R$) and included in the Milestone Payment Event.

**α1**: coefficient calculated by *Fundação Getulio Vargas – FGV*, representing the weight of production costs in the typical sales Price for the drilling rig industry in the Brazilian market (**α1=0,8**).

**α2**: coefficient calculated by *Fundação Getulio Vargas – FGV*, representing the weight of non production costs, including overhead, in the typical sales Price for the drilling rig industry in Brazilian market (**α2= 0,2**).

Confidential

KEPPEL00490735

**ICSPn**: Definitive value of the Price Index corresponding to the Brazilian Drilling Rig Building for the month immediately preceding the month to which the adjustment is due, calculated by *Fundação Getulio Vargas - FGV*

**ICSPo**: Definite value of the Price Index corresponding to the Brazilian drilling rig industry for the month immediately preceding the month of the Proposal Submission Date, calculated by *Fundação Getulio Vargas - FGV*

**IGP-DIn**: Definitive value of the *General Price Index on Internal Availability* ("Índice Geral de Preços – Disponibilidade Interna") for the month immediately preceding the month to which the adjustment is due, calculated by *Fundação Getulio Vargas - FGV*

**IGP-DIo**: *General Price Index on Internal Availability* (Índice Geral de Preços – Disponibilidade Interna") for the month immediately preceding the month of the Proposal Submission Date, calculated by *Fundação Getulio Vargas - FGV*

10.13.2  The amount to be paid in respect of any component of the Contract Price that is denominated in United States Dollars (US$) or Euros (€) shall be subject to yearly adjustments, calculated once every twelve (12) months, according to the following formulas:

10.13.3.1 <u>Prices in US Dollars</u>. Except for the provisions of section 10.13.3.1.1, the following formula shall apply to portions of Contract Price in United States Dollars:

$$PM = PO \times Fy$$

Where:

**PM**: Adjusted Foreign Content Amount in U.S. Dollars.

**PO**: Portion of Contract Price corresponding to the Foreign Content in US Dollars included in the Milestone Payment Event.

**Fy**: Yearly adjustment factor determined by the following parametric formula, calculated every twelve months, and counted from the Proposal Submission Date:

$$Fy = 0{,}95 \times \frac{OFGME}{OFGMEo} + 0{,}05 \times \frac{ECI}{ECIo}$$

Where:

**OFGME**: Definitive value of the Price Index corresponding to *"Oil and Gas Field Machinery and Equipment (code PCU333132333/32)"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the month immediately preceding the month to which the adjustment is due.

Confidential

KEPPEL00490736