**KEPPEL OPP'N EXH. 48**

CONFIDENTIAL

Page 1

1  UNITED STATES DISTRICT COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  --------------------------------x
4  EIG ENERGY FUND XIV, L.P.,
5  EIG ENERGY FUND XIV-A, L.P.,
6  EIG ENERGY FUND XIV-B, L.P.,
7  EIG ENERGY FUND XIV (CAYMAN),
8  L.P., EIG ENERGY FUND XV, L.P.,
9  EIG ENERGY FUND XV-A, L.P.,
10 EIG ENERGY FUND XV-B, L.P.,
11 and EIG ENERGY FUND XV
12 (CAYMAN), L.P.,
13          Plaintiffs,
14      vs.
15 KEPPEL OFFSHORE & MARINE LTD.,
16          Defendant.
17 --------------------------------x
18          "CONFIDENTIAL"
19      VIDEOTAPE DEPOSITION OF
20         KEVIN LEE LOWDER
21    VIA ZOOM VIDEOCONFERENCE
22          June 4, 2021
23           8:36 a.m.
24 Reported by:
25 Maureen Ratto, RPR, CCR

Page 115

1         LOWDER - CONFIDENTIAL
2    recommendation was discussed?
3         A.    I recall the deal team
4    presenting the recommendation and a
5    dialogue and committee participants,
6    sometimes non-committee members but other
7    members of the firm having a question and
8    answer session and a general discussion
9    and debate about the merits of the
10   investment opportunity.
11        Q.    Do you recall any specific
12   questions that were asked at that
13   meeting?
14        A.    I don't.
15        Q.    Do you recall the general
16   subject matter of the discussion at the
17   June 2011 meeting?
18        A.    I think the general subject
19   matter was discussing this investment
20   recommendation and possibly other
21   investment recommendations. Oftentimes we
22   had multiple, multiple deals go through
23   the committee process during the same
24   meeting.
25        Q.    And do you recall if anyone

1                LOWDER - CONFIDENTIAL
2       raised any specific concerns or
3       objections to the recommendation to
4       investment in Sete Brasil?
5             A.    I don't recall.
6             Q.    Do you recall how long,
7       approximately, the discussion of Sete
8       Brasil lasted during that June 2011
9       meeting?
10            A.    I don't recall.
11            Q.    Do you recall whether any
12      specific entities or individuals involved
13      in Sete were discussed at that meeting in
14      June 2011?
15            A.    I don't recall specific
16      conversations but we would have talked
17      about Petrobras certainly and very likely
18      any entity that is mentioned in the
19      investment recommendation but I don't
20      recall specific conversations. It's
21      usually quite a comprehensive discussion.
22            Q.    Do you recall whether anyone
23      said that they didn't think EIG should
24      make the investment in Sete?
25            A.    I don't recall anyone saying

Page 117

1        LOWDER - CONFIDENTIAL
2   that.
3        Q.    Do you recall discussing
4   corruption risks or concerns about
5   unlawful conduct related to Sete at that
6   June 2011 meeting?
7        A.    I don't recall that topic
8   being discussed.
9        Q.    Would you turn to Exhibit 39,
10  the recommendation. And you testified
11  about this quite a bit in your Petrobras
12  deposition but can you describe for me
13  which sections of this document you were
14  responsible for?
15       A.    I was primarily responsible
16  for the financial analysis section in
17  terms of the content, which starts on
18  page 21. However, being the most junior
19  member of the team oftentimes drafting
20  and formatting and doing kind of the
21  early framework of the agreement, the
22  outline of the recommendation, excuse me,
23  you know that type of thing, would have
24  been my responsibility.
25            So I think I could say I

1           LOWDER - CONFIDENTIAL
2      probably had a hand in drafting the
3      entire document but primarily responsible
4      for the content of the financial
5      analysis.
6           Q.    And what sources did you rely
7      on to draft the sections described in the
8      financial analysis?
9           A.    It's a combination of
10     financial models of which we typically
11     receive multiple versions and multiple
12     updates. We typically would, you know,
13     audit that financial model against the,
14     you know, the contracts and make sure the
15     mechanisms, you know, the model
16     functioned in accordance with the
17     contracts. Sometimes we'll rebuild parts
18     or all of the models depending on the
19     quality of the information.
20               I think in this case the, as I
21     recall, the quality of the financial
22     model was sound and we recreated portions
23     of it, we used our own assumptions,
24     consulted with team members' market data
25     to come up with recommendations for

Page 119

1        LOWDER - CONFIDENTIAL
2    assumptions or relied on team members to
3    dictate the assumptions that they wanted
4    to see, my superiors in the firm, in
5    terms of running the analysis and
6    sensitivities, but we typically come up
7    with our best case and we would elaborate
8    and run sensitivities for upside and
9    downside cases or other types of, you
10   know, scenarios.  And all that typically
11   would, you know, be backed up by a
12   contract or a draft of a contract or, you
13   know, some assumption that we were making
14   sometimes to be more conservative than
15   the provider of the information. So it's
16   a combination of those things in terms of
17   the input to the financial analysis.
18        Q.    Do you recall any specific
19   contracts that you relied on to draft the
20   investment recommendation?
21        A.    I think the main contracts
22   were, again, I can give you either drafts
23   and/or executed versions of -- of
24   chartered contracts with Petrobras, the
25   EPC contracts or drafts related to the

1          C E R T I F I C A T E
2              I, MAUREEN M. RATTO, a
3     Registered Professional Reporter, do
4     hereby certify that prior to the
5     commencement of the examination, KEVIN
6     LEE LOWDER was sworn by me to testify
7     the truth, the whole truth and nothing
8     but the truth.
9              I DO FURTHER CERTIFY that the
10    foregoing is a true and accurate
11    transcript of the proceedings as taken
12    stenographically by and before me at
13    the time, place and on the date
14    hereinbefore set forth.
15             I DO FURTHER CERTIFY that I am
16    neither a relative nor employee nor
17    attorney nor counsel of any of the
18    parties to this action, and that I am
19    neither a relative nor employee of such
20    attorney or counsel, and that I am not
21    financially interested in this action.
22
23
24    *Maureen Ratto*
      MAUREEN M. RATTO, RPR
25    License No. 817125