**KEPPEL OPP'N EXH. 75**

## INVESTMENT AGREEMENT
### SECOND ROUND OF PRIVATE PLACEMENTS FOR THE SONDAS PROJECT

By this private agreement,

I.  SETE BRASIL PARTICIPAÇÕES S.A., a corporation with headquarters at Avenida Nilo Peçanha, No. 50, sala 409, Edifício Rodolpho De Paoli, Centro, ZIP Code 20020-906, in the City of Rio de Janeiro, State of Rio de Janeiro, Brazil, enrolled with the Brazilian National Corporate Taxpayers Registry ("CNPJ/MF") under number 13.127.015/0001-67 ("SETE BRASIL");

II. LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA., a limited liability company with headquarters at Rua Funchal, No. 418, 11º andar, Sala 18I, ZIP CODE 04551-060, in the City of São Paulo, State of São Paulo, Brazil, enrolled with the CNPJ/MF under number 13.040.317/0001-01 ("LAKESHORE"); and

III. EIG MANAGEMENT COMPANY, LLC, a limited liability company with headquarters at 1700 Pennsylvania Avenue, N.W., Suite 800, Washington D.C., 20006, United States of America, on behalf of one or more investment funds to be designated as investors in the Project ("POTENTIAL INVESTOR");

Also referred to, individually, as "Party", and jointly, as "Parties";

WHEREAS:

(i)  SETE BRASIL is developing a project for the construction, charter and operation, whether directly or through its subsidiaries, of up to twenty eight (28) drilling rigs for the exploration of oil fields in the pre salt area ("Project");

(ii) SETE BRASIL intends to participate in the bidding process being conducted by Petróleo Brasileiro S.A – Petrobras ("PETROBRAS") for the charter and operation, in Brazil, of up to twenty one (21) state-of-the-art drilling rigs, to be built as drillships or semi-submersible ("Rigs"),

**Exhibit DEF 87**

Confidential

EIG00119467
EIG_KEP_00049151

and chartered to PETROBRAS for the exploration of oil blocks in the pre salt area, in accordance with the terms and conditions of the International Tender Invitation n° 0966646118 ("Tender");

(iii)    SETE BRASIL has contracted LAKESHORE to act as its financial advisor for the Project;

(iv)    in order to present a feasible proposal in the Tender ("Proposal"), LAKESHORE has invited the POTENTIAL INVESTOR to participate in the equity portion of the Rigs' financing; and

(v)    the Parties wish to set out terms and conditions governing the Equity Commitment (as defined below) by the POTENTIAL INVESTOR.

NOW THEREFORE, in consideration of the premises and mutual promises contained herein, the Parties hereto agree to enter into this Investment Agreement for the Second Round of Private Placements for the Project (the "Agreement") which shall be governed by the following terms and conditions:

ARTICLE ONE – DEFINITIONS

1.1.    For the purposes of this Agreement, capitalized terms used but not defined herein shall have the meanings set forth below, and the words used in the singular and in the plural shall be considered as one including the other.

| | |
|---|---|
| "Transaction Documents" | means the following documents entered into within the scope of the Project: (i) the FIP Sondas Quotaholders Agreement, dated as of May 13, 2011; (ii) the FIP Sondas Bylaws, as registered with the Brazilian Securities Commission ("CVM"); (iii) the Investment Commitment Agreement, dated as of May 13, 2011; and (iv) the Investment Agreement, dated as of May 13, 2011; |
| "Original Investors" | means PETROBRAS, Banco BTG Pactual, Banco Santander Brasil, Caixa de Previdência dos Funcionários do Banco do Brasil – Previ; Funcef – Fundação dos Economiários Federais, Fundação Petrobras de Seguridade Social – Petros, Fundação Vale do Rio Doce de Seguridade Social – Valia, LAKESHORE, and Strong Fundo de Investimento em Cotas de Fundos de Investimento Multimercado; and |

2

Confidential

EIG00119468
EIG_KEP_00049152

"First System"   means the first system of drilling rigs, consisting of seven (7) of the twenty eight (28) Rigs within the scope of the Project, the equity portion of which has been contributed by the Original Investors, as set forth in the Transaction Documents.

ARTICLE TWO – SCOPE

2.1. By this Agreement, the POTENTIAL INVESTOR, irrevocably and irreversibly agrees to invest up to of R$250,000,000 (two hundred and fifty million Brazilian reais) ("Equity Commitment"), in accordance with the terms and conditions below provided that (i) the Proposal is entirely or partially awarded as the Tender's winning bid regarding one or more Rigs, and (ii) in connection with the aforementioned award SETE BRASIL requires additional equity investment in addition to the pre-emptive rights of the Original Investors in order to pay for the investments and expenses related to the implementation of the new rigs:

(i) No later than 2 (two) business days after the decision of the Original Investors to exercise their pre-emptive rights, the POTENTIAL INVESTOR shall:

(a) execute an Investment Commitment Agreement, pursuant to which it shall subscribe for and pay in a certain number of quotas to be issued by Fundo de Investimento em Participações Sondas, an equity participation fund organized and existing under the laws of Brazil, registered with CVM under No. 413-6, and enrolled in CNPJ/MF under No. 12.396.426/0001-95 ("FIP Sondas"); and

(b) adhere to the applicable Transaction Documents executed by the Original Investors of the Project, provided that the relevant adherence terms shall assure to the Potential Investor the right to appoint one member to the Board of Directors of SETE BRASIL, and replace such member from time to time, for as long as it is in compliance with its obligations under the Transaction Documents.

(ii) the aforementioned Equity Commitment includes a premium of 2.5% composed of (i) an amount in Brazilian reais to be paid on the date of acquisition of FIP Sondas quotas, and (ii) adjustment by the nominal fixed rate of 13% per annum, *pro rata*

3

Confidential

EIG00119469
EIG_KEP_00049153

*temporis*, weighted by the paid in capital over total subscribed capital ("Premium") to be paid in accordance with a schedule of payment for capital increases of SETE BRASIL, provided that, in order to maintain the balance among the FIP Sondas Original Investors, the POTENTIAL INVESTOR shall pay in with priority over the Original Investors, until it reaches the same ratio between subscribed capital and paid in capital than the Original Investors' one, so that their proportional interest in FIP Sondas equity be reflected, as provided for in the respective investment commitment agreements.

2.3. The Equity Commitment shall remain valid and binding upon the POTENTIAL INVESTOR for 98 (ninety eight) months counted from the POTENTIAL INVESTOR's adhesion to the Transaction Documents ("Commitment Term") pursuant to the terms and conditions therein. Until the end of the Commitment Term, the POTENTIAL INVESTOR shall not negotiate its quotas in FIP Sondas, except as expressly set forth in the Investment Commitment Agreement or in the Transaction Documents.

2.4. The investment within the scope of this Agreement is undertaken on an independent basis and shall be valid regardless of any third party's interest in taking part, as investor, in the Project or in any other activity to be developed by SETE BRASIL.

2.5. The POTENTIAL INVESTOR waives and releases SETE BRASIL from any obligation to use the funds of the Equity Commitment as well as from the payment of any premium, fine, adjustment and interests in case SETE BRASIL is not awarded as the winning bidder for the construction, charter and operation of one or more Rigs.

2.6 To the extent that the conditions precedent set forth in the last part of Section 2.1 above are not satisfied and evidenced by SETE BRASIL within the term set forth in Article Four herewith, despite SETE BRASIL diligence to that effect, the POTENTIAL INVESTOR shall be released from any further commitment or obligation hereunder, except for the confidentiality commitment.

2.7 Upon the satisfaction of the conditions precedent set forth in the last part of Section 2.1 above, the Equity Commitment shall be fulfilled by a commitment of the POTENTIAL INVESTOR to invest in the FIP Sondas, in accordance with the terms of its adherence to the Transaction Documents.

4

Confidential

EIG00119470
EIG_KEP_00049154

2.8     The Parties agree that (i) in addition to this Agreement, SETE BRASIL intends to enter into further investment agreements with other potential investors interested in contributing to future capital increases of SETE BRASIL; and (ii) should the equity commitments of all such potential investors, including the POTENTIAL INVESTOR, be greater than the capital needs of SETE BRASIL, the Chief Executive Officer of SETE BRASIL, at his sole discretion, is going to define the amount of the equity commitment which each potential investor and the POTENTIAL INVESTOR shall be required to invest in SETE BRASIL.

ARTICLE THREE – PENALTIES

3.1.    For the material non-compliance with the obligations set forth herein the defaulting Party shall pay R$25,000,000 (twenty five million Brazilian reais) to the innocent Parties.

3.2.    The aforesaid amount shall be paid as a non compensatory penalty, in accordance with Article 416 of the Brazilian Civil Code, and shall not affect the innocent Party's right to claim for losses and damages under applicable law.

3.3.    The payment of the non compensatory penalty due under this Article Three shall not in any way relieve the defaulting Party from its civil or criminal liabilities as a result of the act or omission giving rise to the liquidated damages.

3.4     Once the POTENTIAL INVESTOR adheres to the Transaction Documents, the penalties set forth in this Article Three shall no longer be applicable and shall be deemed superseded by the penalties and provisions contemplated therein

ARTICLE FOUR – TERM

4.1     This Agreement shall enter into effect on the date of its execution and shall remain in full force and effect for a period of one (1) year, renewable upon the agreement of the Parties, and shall be irrevocable and irreversible upon each of the Parties.

5

Confidential

EIG00119471
EIG_KEP_00049155

## ARTICLE FIVE - CONFIDENTIALITY

5.1. The Parties agree that the terms and conditions of this Agreement shall be used exclusively in relation to the Project and shall be treated as confidential. The information contained herein shall not be used or disclosed for any purpose different than those set forth in this Agreement, except with the express previous written consent of each and all of the Parties.

5.1.1 The confidentiality obligations hereunder are binding, irrevocable and unconditional obligations of the Parties for a period of the earlier of (i) three (3) years from the execution of this Agreement, or (ii) the date of adhesion to the Transaction Documents.

5.1.2 Confidential Information shall not include information which: (a) is or becomes public without breaching the provisions of this Agreement; (b) was already known by the recipient by the time the confidential information was disclosed under the terms of this Agreement; or (c) is received in good faith from any third party or parties that has or have the right to disclose such information, being agreed that, for the purpose of the provisions hereof, in case that any doubt or dispute arises, the recipient shall be obliged to prove the non-confidential nature of any information received by it.

5.1.3 The Parties shall not give access to the terms and conditions of this Agreement to any third parties without the express consent of the others, and the Parties shall not be obliged to release any information to any third party which before receives the confidential information is not expressly bound to keep confidentiality, including in relation to its employees, offices, directors, representatives and agents.

5.1.4 The Parties shall be permitted to make such disclosure of Confidential Information as is required by law, regulatory authority or governmental authority.

## ARTICLE SIX – MISCELLANEOUS

6.1. The Parties shall not assign nor transfer, in whole or in part, any of its rights, obligations, duties, or responsibilities provided for herein, other than to funds managed or controlled by one of the Parties and provided that SETE BRASIL receives notice of such assignment, except with the other Parties previous written consent. Any assignment or transfer performed without such consent

6

shall be null and void. Nevertheless, for the avoidance of doubt, upon the POTENTIAL INVESTOR's adherence to the Transaction Documents, the assignment provisions contemplated therein shall supersede the provisions of this Section 6.1.

6.2. This Agreement is entered into irreversibly and irrevocably, and shall bind and benefit the Parties and its respective successors and assigns, under any title. Any amendment, addendum, or modification of this Agreement shall be celebrated by written agreement of the Parties.

6.3. In case any provision of this Agreement is deemed invalid, illegal or unenforceable by virtue of any Brazilian Law, such invalidity, illegality or unenforceability shall not affect any other provisions hereof.

6.4. No failure or delay by any Party to exercise any right, power or privilege under this Agreement shall operate as a waiver of that right, power or privilege, nor shall any single or partial exercise of that right, power or privilege preclude any further exercise of that right, power or privilege or of any other right, power or privilege set forth herein.

6.5. This Agreement is the sole and entire agreement between the Parties with respect to the subject matter of this Agreement and supersedes all prior memoranda, agreements, understandings and communications, oral or written, between the Parties regarding the subject matter of this Agreement.

6.6. This Agreement shall be governed in all respects by, and construed according to, the laws of Brazil.

6.7. Any and all dispute, doubt or controversy arising under or in direct or indirect connection with this Agreement ("Conflict"), involving any of the subscribers hereof, shall necessarily, finally and definitively be resolved by arbitration to be administered and conducted by the Centro de Arbitragem e Mediação da Câmara de Comércio Brasil-Canadá ("Chamber").

    6.7.1. The arbitration shall be governed by the rules of the Chamber in force on the date on which the request for arbitration is filed ("Chamber's Statute").

7

Confidential

EIG00119473
EIG_KEP_00049157

6.7.2. The Arbitral Tribunal shall be composed of three (3) arbitrators enrolled with the Brazilian Bar Association ("Arbitral Tribunal").

6.7.3. The Claimant shall appoint one arbitrator and the Respondent shall appoint another arbitrator. In the event that there is more than one Claimant, they shall jointly and by mutual agreement appoint only one arbitrator; in the event that there is more than one Respondent, they shall jointly and by mutual agreement appoint only one arbitrator. The two appointed arbitrators shall jointly and by mutual agreement choose the third arbitrator, who shall preside over the Arbitral Tribunal.

(a) Any omission, refusal, dispute, doubt or lack of agreement regarding the appointment or choice of the arbitrators shall be settled by the Chamber.

(b) The proceedings established herein are also applicable in case of substitution of any of member of the Arbitral Tribunal.

6.7.4. The arbitration shall be held in the City of Rio de Janeiro, State of Rio de Janeiro, Brazil, but in case there is reasonable justification, the Arbitral Tribunal may authorize the performance of specific diligences in other places.

6.7.5. The arbitration shall be held in Portuguese.

6.7.6. The arbitration shall obey the laws of the Federative Republic of Brazil.

6.7.7. The arbitral award shall be rendered within 6 (six) months; and in case there is reasonable justification, the Arbitral Tribunal may extend such time limit.

6.7.8. The arbitration shall be confidential.

6.7.9. The Arbitral Tribunal shall decide which party shall bear, or in what proportion each party shall bear, (i) the fees and any other amount due, paid or reimbursed to the Chamber, (ii) the fees and any other amount due, paid or reimbursed to the arbitrators, (iii) the fees and any other amount due, paid or reimbursed to the experts, translators, interpreters, stenographers and other assistants eventually appointed by the Chamber or the




8

Confidential

EIG00119474
EIG_KEP_00049158

Arbitral Tribunal, (iv) attorney's fees fixed by the Arbitral Tribunal and (v) indemnification for eventual procedural misconduct. The Arbitral Tribunal shall not condemn any of the parties to bear (i) contractual fees and any other amount due, paid or reimbursed by the counterparty to its attorneys, experts, translators, interpreters and other assistants and (ii) any other amount due, paid or reimbursed by the counterparty with regard to the arbitration, including, for example, photocopy, notarization, consularization and travel costs.

6.7.10. The arbitral award shall be final and binding, and shall not be subject to judicial homologation or appeal of any kind, except for (i) the requests for corrections and clarifications to the Arbitral Tribunal provided for by article 30 of Law No. 9,307/96 and (ii) the annulment action provided for by article 32 of Law No. 9,307/96.

6.7.11. Prior to the constitution of the Arbitral Tribunal, any of the Parties may request precautionary injunctions ("medidas cautelares") or anticipatory injunctions ("antecipações de tutela") to the Judicial Authorities; any such action shall not be construed as a waiver of the arbitration proceedings. After the constitution of the Arbitral Tribunal, the precautionary injunctions ("medidas cautelares") or anticipatory injunctions ("antecipações de tutela") shall be requested to the Arbitral Tribunal.

6.7.12. Judicial assistance may be sought exclusively to: (i) the precautionary injunctions ("medidas cautelares") or anticipatory injunctions ("antecipações de tutela") requested prior to the constitution of the Arbitral Tribunal; (ii) the enforcement of any decision made by the Arbitral Tribunal, including the final award and eventual partial award, (iii) the annulment action provided for by article 32 of Law No. 9,307/96 and (iv) the disputes that, by reason of the Brazilian laws, cannot be settled by arbitration. For such purposes, the Parties elect the courts of the City of Rio de Janeiro, State of Rio de Janeiro, Brazil, to settle any such matters, with the exclusion of any other venue however privileged it may be.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

9

Confidential

EIG00119475
EIG_KEP_00049159

*Signature Page of the Investment Commitment Agreement for the Second Round of Sondas Project's Funding, entered into on June 30, 2011 by and among Sete Brasil Participações S.A., Lakeshore Financial Partners Participações Ltda., and EIG Management Company LLC.*

IN WITNESS WHEREOF, the Parties hereto, acting through their duly authorized representatives, have caused this Agreement to be executed in 3 (three) counterparts of identical form and content.

Rio de Janeiro, June 30, 2011

**SETE BRASIL PARTICIPAÇÕES S.A.**

By: _____
Name: João Carlos de Medeiros Ferraz
Title: Chief Executive Officer

By: _____
Name: Pedro José Barusco Filho
Title: Chief Operations Officer

**LAKESHORE FINANCIAL PARTNERS PARTICIPAÇÕES LTDA.**

By: _____
Name: Luiz Fontoura de Oliveira Reis Filho
Title: Manager

**EIG MANAGEMENT COMPANY, LLC** ("EIG") on behalf of the funds managed or controlled by EIG

By: _____
Name: R. Blair Thomas
Title: Chief Executive Officer

By: _____
Name: Kevin Corrigan
Title: Senior Vice President

Confidential

EIG00119476
EIG_KEP_00049160

Case 1:18-cv-01047-PGG-RWL  Document 156-79  Filed 09/12/23  Page 12 of 12

*Signature Page of the Investment Commitment Agreement for the Second Round of Sondas Project's Funding, entered into on June 30, 2011 by and among Sete Brasil Participações S.A., Lakeshore Financial Partners Participações Ltda., and EIG Management Company LLC.*

Witnesses:

Name: ANA PAULA T. BADDINI
Identity Card: 071822506
CPF/MF: 030065124-56

Name: MELIMAR ROCHA ANTUNES
Identity Card: 0833 7734-1
CPF/MF: 014318077-02



11

**Confidential**

EIG00119477
EIG_KEP_00049161