Frade Drilling B.V.                                       Frade Drilling B.V. - 002/2012-FELS
                                                                                    DRU #2

22.3.1  Each member of Contractor Group shall defend, indemnify and hold each member of Owner Group free and harmless from and against any and all claims, losses and/or liabilities (including the cost and expenses related to any administrative, judicial, and arbitration procedures before any court or in any level of jurisdiction that may be filed against any member of Owner Group and related attorneys' fees) suffered or incurred by any member of Owner Group arising out of any actual or alleged infringement of patents, trademarks, or other intellectual property rights, or the improper use of other proprietary rights that may occur in connection with any member of Contractor Group's performance of the Works or the ownership or use of the Equipment by any member of Contractor Group or any member of Owner Group. Subject to Section 22.4, Contractor shall have sole authority for the control of the defense of any such claims. Furthermore, should any such claim materially impair the performance of the Works by any member of Contractor Group or its continued operations, Contractor shall, at its own expense, promptly procure such intellectual property or other rights as may be necessary for such member of Contractor Group to continue its performance of the Works so as not to materially impair the Project Schedule or continuity of operation. Contractor's obligations under this Section 22.3.1 are subject to limitation of liability up to US$ 100,000,000 (one hundred million American Dollars), notwithstanding the provisions under Section 22.6.

22.3.2  Each member of Owner Group shall defend, indemnify and hold each member of Contractor Group free and harmless from and against any and all claims, losses and/or liabilities (including the cost and expenses related to any administrative, judicial, and arbitration procedures before any court or in any level of jurisdiction that may be filed against any member of Contractor Group and related attorneys' fees) suffered or incurred by any member of Contractor Group arising out of any actual or alleged infringement of patents, trademarks, or other intellectual property rights, or the improper use of other proprietary rights that may occur in connection with any member of Owner Group's performance of its obligations hereunder or use of the Equipment by any member of Owner Group. Subject to Section 22.4, Owner shall have sole authority for the control of the defense of any such claims. Furthermore, should any such claim materially impair the performance by Owner of its obligations under this Agreement, Owner shall, at its own expense, promptly procure such intellectual property or other rights as may be necessary for it to continue its performance of its obligations hereunder so as not to materially impair the Project Schedule or continuity of operation. Owner's obligations under this Section 22.3.2 are not subject to or included in the calculation of any limitations of liability contained in this Agreement.

22.4.  Notice. The Parties shall give reasonably prompt written notice to the other of any and all injuries to Persons or damage to property (including any claim with respect thereto) of which such Party has notice or knowledge and which in any way arises from the performance of the Works or this Agreement. The indemnifying Party shall not settle any suit for which it is providing indemnity under this Article 22 without the prior written consent of the indemnified Party, which consent shall not be unreasonably withheld, conditioned or delayed.

SPAULO-1-37048-v3                         - 81 -                            95-40522876

Confidential                                                                KEPPEL00610546

Frade Drilling B.V.                                                     Frade Drilling B.V.- 002/2012-FELS
                                                                                                    DRU #2

22.5. <u>Survival and Duration</u>. The indemnification provisions contained in this Agreement shall survive after Contractor's completion of the Works hereunder and the termination of this Agreement. Claims for indemnification may be made hereunder so long as any claim may be made in respect of such matters under any applicable statute of limitations; <u>provided, however</u>, that the foregoing shall not affect any claim made in good faith prior to the date of such expiration.

22.6. <u>Limitation of Liability</u>. Notwithstanding any provision herein to the contrary, the liability for losses and damages of each Party hereunder shall not exceed, in the aggregate, an amount equal to ten percent (10%) of the Contract Price.

22.6.1 For the purpose of calculating whether this limitation of liability has been met, the following items shall be excluded and shall not be subject to any limitation of liability:

(a) losses and damages resulting from any member of Contractor Group's or any member of Owner Group's, as applicable, gross negligence, willful misconduct or fraud related to this Agreement or any Subcontract;

(b) abandonment of the Works by Contractor, or deliberate and unjustified interruption of the Works by Contractor, except when directed by an existing provision of this Agreement or in case of an unjustified non-payment of amounts due by Owner;

(c) losses and damages resulting from any member of Contractor Group's violation of any applicable Environmental Law or the occurrence of any environmental condition caused by any member of the Contractor Group;

(d) losses and damages resulting from any member of Contractor Group's non-observance of any aspect of the fiscal, labor and social security laws, or of any provisions in this Agreement related to the same matters;

(e) if Owner unjustifiably withholds payments due to Contractor;

(f) any third party liabilities arising as a result of any violation by any member of Contractor Group or any member of Owner Group, as applicable, of any right of third parties <u>provided</u> that in such case Contractor shall be liable up to the limit of US$ 100,000,000 (one hundred million American Dollars);

(g) termination for convenience by Owner, as per <u>Section 21.2</u> or suspension of Works by Owner, as per <u>Section 21.3</u>; and

(h) in case Owner fails to provide and maintain the insurance under its responsibility, as per <u>Section 14.1</u>.

Confidential                                                                                   KEPPEL00610547

Frade Drilling B.V.                                                                 Frade Drilling B.V. - 002/2012-FELS
                                                                                                                    DRU #2

22.6.2  In case of oil spill and other wastes discharge at sea, due to any member of the Contractor Group, Contractor shall be liable up to the limit of US$ 1,000,000 (One million United States Dollars), per event and its consequences.

22.6.3  Owner shall be entitled to the right of recourse against Contractor in case, due to a definitive decision (non-appealable) issued under a lawsuit, it is obliged to pay for any losses and damages caused by Contractor to third parties. Contractor shall reimburse the Owner any and all costs and expenses incurred by the Owner with respect to any such lawsuit.

22.6.4  The amount to be collected upon recourse shall include whatever third parties obtain in court and out of court, plus all expenses (court and out of court fees, attorney's fees, among others).

22.7.  Consequential Damages. Except as expressly provided under Section 20.5, but notwithstanding any other provision in this Agreement to the contrary, in no event shall Owner or Contractor be liable to each other for any indirect, special, incidental or consequential loss or damage (other than such damages as may be included as a component of liquidated damages hereunder) including loss of profits or revenue, loss of opportunity or use incurred by either Party to the other, or like items of loss or damage, and each Party hereby releases the other Party therefrom. In no event shall Owner or Contractor be liable to each other for any punitive or exemplary damages.

## ARTICLE 23 FORCE MAJEURE

23.1.  No Liability. Notwithstanding anything to the contrary in this Agreement, neither Contractor nor Owner shall be liable to the other for any damages, claims or suits of any nature arising out of delays or noncompliance of its obligations under this Agreement in cases where such delay or noncompliance is due to Force Majeure.

23.1.1  The Party invoking Force Majeure shall give written notice to other Party pursuant to Section 25.5 immediately following the occurrence of the event of Force Majeure, which shall specify the details, and the anticipated duration of such event of Force Majeure. Once the affected Party is no longer prevented from performing its obligations under this Agreement as a result of an event of Force Majeure, it shall promptly notify the other Party of this fact. In the event that a Party fails to acknowledge the occurrence of an event of Force Majeure, the Party claiming Force Majeure shall bear the burden of proof.

23.1.2  A Force Majeure event shall be deemed to have commenced not earlier than seventy-two (72) hours prior to the giving of such notice. The affected Party shall, in such notice, indicate what actions it is taking to mitigate the effects of such Force Majeure event. The affected Party shall further provide the other Party with (i) periodic supplemental written notices during the period of the Force Majeure event regarding any change, development, progress, or other relevant information concerning the Force Majeure event as per Section 3.17(f), and (ii) written notice promptly after the termination of the Force Majeure event.



SPAULO-1-37048-v3                                        - 83 -                                           95-40572876

Confidential                                                                                          KEPPEL00610548

23.2.  **Prevention and Reduction.**  Both Parties shall: (i) make all reasonable efforts to prevent and reduce to a minimum and mitigate the effect of any delay or cost increase occasioned to the Works by any event of Force Majeure; and (ii) use their reasonable efforts to ensure resumption of normal performance of the Works promptly after the termination of any event of Force Majeure.

23.3.  **Mutual Consultation.**  If an event of Force Majeure has occurred, the Parties shall consult with one another as to the effect, if any, of such event of Force Majeure, and if such effect is to delay the completion of the Works. In such a case, the Project Schedule shall be equitably adjusted to take into account the effect that the Party claiming an event of Force Majeure demonstrates is actually and necessarily attributable to such event of Force Majeure. Any such adjustment shall take into account rescheduling or other actions, as Contractor or Owner may reasonably be expected to undertake, in order to minimize the material adverse effect of such event of Force Majeure on the Project Schedule. Each Party shall bear its own increased costs arising from each event of Force Majeure.

23.4.  **Definition.**  For the purposes of this Agreement, "Force Majeure" will be considered as any act, event or condition that (i) delays the performance of the Affected Party or renders it impossible for the affected Party to perform its obligations under this Agreement, (ii) is beyond the reasonable control of the affected Party and not due to its fault or negligence, and (iii) could not have been prevented or avoided by the Affected Party through the exercise of due diligence. Force Majeure includes catastrophic storms or floods, lightning, earthquakes and other typical acts of God, wars, civil disturbances, revolts, insurrections, sabotage, commercial embargoes, fires, explosions, actions of a Governmental Authority that were not requested, promoted or caused by the affected Party, that prevent a Party from timely discharging its duties and obligations hereunder. Notwithstanding the foregoing, Force Majeure shall not include any of the following: (a) economic or financial hardship, including bankruptcy or insolvency of any Party, its Subcontractors and/or suppliers; (b) changes in market conditions; (c) late delivery or failure of Equipment, unless otherwise caused by Force Majeure hereunder; (d) strikes and other industrial disturbances caused exclusively by Contractor or its Subcontractors gross negligence or unreasonable act or omission; (e) nonperformance or delay by Subcontractors, unless otherwise caused by Force Majeure hereunder; (f) weather conditions which could reasonably be anticipated by experienced contractors (and any Site conditions arising therefrom); (g) robbery or theft experienced with warehoused, stored or in-transit Equipment, materials or any other effects under Contractor's responsibility, whether or not owned by Contractor; or (h) lack of environmental licenses or any other license or authorization required for the timely and due performance of the Works under the Applicable Laws, as provided in this Agreement.

23.5.  **Termination for Force Majeure.**  In the event a Force Majeure event makes the performance of the Works impossible for a continuous period of 90 (ninety) days or more, either Party may terminate this Agreement. In the event of such termination, neither Party shall have further obligation to the other hereunder and Contractor shall not be entitled to any portion of the Contract Price which has not been paid prior to the occurrence of the event of Force Majeure.

Confidential                                                                              KEPPEL00610549

Frade Drilling B.V.                                                Frade Drilling B.V.- 002/2012-FELS
                                                                                              DRU #2

## ARTICLE 24 DISPUTE RESOLUTION

24.1. <u>Amicable Resolution</u>.

   (a) In the event of any dispute, claim, or controversy arising out of, relating to, or in connection with this Agreement, including any dispute as to the breach, validity, or existence of this Agreement (a "<u>Dispute</u>"), the Parties agree in the first instance to submit the Dispute to a joint negotiation between two senior management officers, one from each Party. Each Party shall nominate its respective senior management officer within fifteen (15) Days from the earliest date on which a Party shall be deemed to have given notice, pursuant to Section 25.5, of a Dispute (the "<u>Dispute Notice</u>"). The two senior management officers shall meet at a mutually agreeable time and location within thirty (30) Days after the Dispute Notice is given to try to resolve the Dispute in an equitable and good-faith manner. If the Parties cannot agree on a time and location for the senior officers meeting, then they may proceed directly to proceedings under Sections 24.2 or 24.3, as applicable. If any of the Parties considers, at any time and at its sole discretion, that an amicable solution will probably not be reached, it may send a notification to the other Party; once the notification is received, then the Parties may also proceed directly to proceedings under Sections 24.2 or 24.3, as applicable. The Parties expressly acknowledge and agree that Owner's right to terminate this Agreement pursuant to Article 21 is not limited in any way by the Dispute resolution provisions of this Article 24.

   (b) Notwithstanding anything in this Article 24, the Parties may at any time, without prejudice to any other proceedings, seek to settle any Dispute through mediation before one neutral mediator who shall be fluent in the English language and who shall be qualified by experience and education to mediate disputes concerning international commercial agreements. If the Parties elect to settle a Dispute through mediation but cannot agree on a neutral mediator and a method to conduct the mediation, the Parties agree to submit the matter to mediation to be conducted in English under the ICC ADR Rules in force on the date of the dispute. The Parties agree that the neutral mediator cannot serve as the Expert, as that term is defined in Section 24.2, or as an arbitrator under Section 24.3.

24.2. <u>Disputes of Technical Nature</u>.

   (a) Any Dispute that concerns a technical matter which can be reasonably settled by empirical studies and which relates primarily to technical issues, rather than commercial, economic, financial, or accounting issues, shall be deemed a "<u>Technical Dispute</u>".

   (b) If a Technical Dispute exists and is not amicably resolved under Section 24.1, the Parties agree to submit the Technical Dispute to an independent petroleum industry engineering expert (the "<u>Expert</u>"), who shall be fluent in the English language. If the Parties cannot mutually agree on the Expert within fifteen (15)



SPAULO-1-37648-v3                              - 85 -                              95-40532876

Confidential                                                                    KEPPEL00610550

Frade Drilling B.V.                                    Frade Drilling B.V. - 002/2012-FELS
                                                       DRU #2

Days after the senior officers' meeting under Section 24.1, the Parties agree that the International Chamber of Commerce's Centre for Expertise (the "Centre") shall appoint the Expert in accordance with the Rules of Expertise of the International Chamber of Commerce that are in effect on the date of the dispute. The Parties request that the Centre shall endeavor to appoint the Expert within fifteen (15) Days following receipt of a request to appoint the Expert.

(c) Within fifteen (15) Days after the Expert is agreed to or appointed under Section 24.2(b), each Party shall provide the Expert and the other Party with a written notice in English detailing the issues in the Technical Dispute, along with copies of all supporting documentation on which the Party is relying to support its position. The Expert shall complete all proceedings regarding the Technical Dispute and issue a written decision (the "Decision") in English as soon as reasonably possible, but in no event later than thirty (30) Days after the Expert is agreed to or appointed under Section 24.2(b). If the Expert needs additional time to issue the Decision, the Expert shall notify the Parties in writing and shall be entitled to an additional period not to exceed fifteen (15) Days, unless the Parties agree otherwise.

(d) The Decision shall be final and binding on the Parties, unless a Party provides the other Party and the Expert with written notice of dissatisfaction (the "Dissatisfaction Notice") with the Decision within fifteen (15) Days after the issuance of the Decision. If a Party provides a Dissatisfaction Notice, the Technical Dispute shall be finally resolved through arbitration under Section 24.3.

24.3. Binding Arbitration.

(a) Subject to the requirements of Sections 24.1 and 24.2, the Parties agree that any Dispute shall be finally resolved by binding arbitration before three (3) arbitrators in New York City, New York, United States of America, pursuant to the Rules of Arbitration of the International Chamber of Commerce (the "ICC Rules") in force on the date of the Dispute, except as those rules may be modified by this Article 24.

(b) Except as set forth in this Article 24, the Parties agree that Arbitration shall be the exclusive means of resolving the Dispute and the arbitration award shall be final, binding and enforceable. No Party shall refer or attempt to refer a Dispute to any court or other tribunal for resolution.

(c) The Arbitration shall be conducted in the English language. Unless agreed otherwise, all documents submitted in connection with the arbitration shall be in the English language or, if submitted in any other language, shall be accompanied by a certified English translation.

(d) The Party filing the Request for Arbitration (the "Request") under the ICC Rules shall deliver a copy of the Request to the other Party at the same time and in the



SPAULO-1-37048-v3                    - 86 -                         95-40522876

Confidential                                                          KEPPEL00610551

Frade Drilling B.V.                                          Frade Drilling B.V. - 002/2012-FELS
                                                                                        DRU #2

same manner as it delivers the Request to the Secretariat of the International Court of Arbitration (the "Court") of the International Chamber of Commerce. The Request shall be made within a reasonable time after the Dispute arises.

(e) The arbitral tribunal (the "Tribunal") shall consist of three (3) arbitrators who shall be qualified by experience and education to arbitrate disputes concerning international commercial agreements and who shall be chosen as follows:

(i) Each Party shall nominate one arbitrator within twenty (20) Days after the filing of the Request with the Secretariat of the Court. If a Party does not timely nominate an arbitrator, that Party's arbitrator shall be appointed by the Court pursuant to the ICC Rules; and

(ii) Within twenty (20) Days after the latest date on which one of them has been confirmed or appointed by the Court, the two arbitrators selected under Section 24.3(e)(i) shall jointly nominate the third arbitrator, who shall act as chairman of the Tribunal after being confirmed by the Court. If the two arbitrators cannot agree on the third arbitrator, the Court shall appoint the third arbitrator pursuant to the ICC Rules.

(f) The Tribunal's award shall be made and payable in U.S. Dollars after any tax or other deduction. The award shall include interest from the date of breach, if breach of this Agreement is found. The Tribunal shall also fix an appropriate rate of interest from the date of the award until the award is paid in full.

(g) The Parties agree that judgment upon the Tribunal's award may be entered in any court having jurisdiction thereof, and may not be challenged in any court, either at the place of arbitration or elsewhere. Each Party hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of venue of any such enforcement proceeding and to the proceeding being brought in an allegedly inconvenient forum. Each Party also hereby agrees to accept service of process in any such enforcement proceeding.

(h) The Parties agree that each Party shall bear the fees and expenses of the arbitrator nominated by it (or on its behalf) and share of the ICC administrative expenses assessed by the Court. The fees and expenses of the third arbitrator shall be borne by the Parties in equal parts. Any other arbitration fees and expenses, including attorneys' and expert fees, shall be allocated by the Tribunal in its award. The Parties agree to instruct the Tribunal to allocate such fees and expenses to the Parties in a proportion to reflect their relative success on the merits (including the successful assertion of any defense).

(i) The Tribunal shall have the authority to enter interim, conservatory, injunctive, and declaratory relief, if appropriate under applicable substantive law. The Tribunal shall also have the power to determine whether a Dispute is arbitrable. The Tribunal shall not, however, have the power to award punitive or exemplary

SPAULO-1-37048-v3                    - 87 -                              95-40522876

Confidential                                                                   KEPPEL00610552

Frade Drilling B.V.                                                         Frade Drilling B.V.- 002/2012-FELS
                                                                                                       DRU #2

damages. Notwithstanding anything in this subsection (i), each Party retains the right to apply for injunctive relief in any court having jurisdiction thereof prior to or during the arbitration, and any such application shall not be deemed to be an infringement or waiver of the ability to arbitrate under this Section 24.3 and shall not affect the relevant powers reserved to the Tribunal.

(j) In accordance with Section 25.8, the substantive law of the State of New York, without regard to its conflict-of-laws principles, shall apply to the arbitration. The Tribunal shall not have the power of an *amiable compositeur*.

(k) Unless the Parties agree otherwise, the arbitration shall be completed within the shorter of (i) the time limit under the ICC Rules, or (ii) two hundred seventy (270) Days after the confirmation or appointment of the third arbitrator under Section 24.3(e)(ii).

(l) Unless this Agreement is terminated in accordance with its terms, each Party shall continue to perform its obligations under this Agreement during the course of any of the dispute resolution procedures set forth in this Article 24.

(m) This Article 24 shall survive termination of all or any part of this Agreement, as indicated in Section 25.15.

## ARTICLE 25 MISCELLANEOUS PROVISIONS

25.1. Entire Agreement. This Agreement, together with all Exhibits, schedules, and attachments, contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes any and all prior agreements and commitments with respect thereto. There are no other oral understandings, terms or conditions, and neither Party has relied upon any representation, express or implied, which is not contained in this Agreement.

25.2. Opportunity to Review. Contractor agrees and acknowledges that it has had a full and complete opportunity to examine this Agreement and understands the obligations contained herein. Contractor represents that it has carefully examined the documents listed or referenced in the Scope of Works and all Exhibits attached hereto and has fully acquainted itself with the data and information contained therein (including any and all designs, specifications and estimates). Any failure of Contractor to review such information and data shall not release Contractor of its responsibilities under this Agreement nor shall it give rise to an increase in the Contract Price or an adjustment to the Project Schedule. Notwithstanding the foregoing, it shall be Contractor's responsibility to determine the accuracy, adequacy and completeness of such information and data as Owner makes no guaranty or warranty, express or implied, as to the accuracy, adequacy or completeness of such information or data.

25.3. Amendments. No change, amendment or modification of this Agreement shall be valid or binding upon the Parties unless such change, amendment or modification is in writing and duly executed by both Parties.

Confidential                                                                                                   KEPPEL00610553

Frade Drilling B.V.                                      Frade Drilling B.V.- 002/2012-FELS
                                                                                    DRU #2

25.4. Captions. The captions and section headings contained in this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope of intent of this Agreement or the intent of any provision contained herein.

25.5. Notice. Any notice, demand, offer, or other written instrument required or permitted to be given pursuant to this Agreement shall be in writing signed by the Party giving such notice and shall be hand delivered or sent by overnight courier, messenger, facsimile, e-mail or certified mail, return receipt requested, to the other Party at the address set forth below.

    (a)    If delivered to Owner:

FRADE DRILLING B.V.

Address: De Entree 99 -197, 1101HE Amsterdam, The Netherlands

or

E-mail: pbarusco@setebr.com

Attn: Mr. Pedro Barusco

    (b)    If delivered to Contractor:

FERNVALE PTE. LTD.
Address: 50 Gul Road Singapore 629351
Attention: Yew Yuen Chow
And Jeffery Chow
Email: YewYuen.Chow@Keppelom.com
Jeff.Chow@keppelom.com

With a copy to:

Estaleiro BrasFELS Ltda.
Rua da Quitanda, 86, sala 301
Centro
Zip Code 20091-005, Rio de Janeiro, RJ, Brazil

Attention: K. C. Kwok, President
And Karina Stoff
Email: KaiChoong.Kwok@keppelfels.com
Karina.stoff@kfelsbrasil.com.br

Each Party shall have the right to change the place to which notice shall be sent or delivered by sending a similar notice to the other Party in like manner informing of such change. Notices shall be deemed to have been duly given on the date of delivery if (i) delivered personally, (ii) sent by facsimile or e-mail, if a confirming copy is sent the same day by mail, or (iii) sent by a recognized overnight delivery service to the Party to whom the notice is to be given. All other

SPAULO-1-37648-v3                          - 89 -                              95-40522876

Confidential                                                                  KEPPEL00610554

Frade Drilling B.V.                                        Frade Drilling B.V.- 002/2012-FELS
                                                                                      DRU #2

notices shall be deemed given when received. Notwithstanding the foregoing, if a notice is delivered or sent after the close of regular business hours, it shall be deemed to have been given on the first Business Day following receipt, unless if acknowledged on the same day.

25.5.2 All communications will be in the English language. Portuguese language may be used, as an alternative, when previously allowed by Owner.

25.6. <u>Severability</u>. The invalidity of one or more phrases, sentences, clauses, sections or articles contained in this Agreement shall not affect the validity of the remaining portions of this Agreement so long as the material purposes of this Agreement can be determined and effectuated.

25.7. <u>No Waiver</u>. Any failure of either Party to enforce any of the provisions of this Agreement or to require compliance with any of its terms at any time during the term of this Agreement shall in no way affect the validity of this Agreement, or any part hereof, and shall not be deemed a waiver of the right of such Party thereafter to enforce any and each such provisions.

25.8. <u>Governing Law</u>. This Agreement shall be governed, construed and enforced in accordance with the Laws of the State of New York, without giving effect to its conflicts of law rules.

25.9. <u>Successors and Assigns</u>. This Agreement shall be binding upon the Parties, their successors and permitted assigns.

25.10. <u>Exhibits</u>. All Exhibits, Schedules or other attachments referenced in this Agreement are incorporated into this Agreement by reference and shall be deemed an integral part of this Agreement.

25.11. <u>Limitations on Third Party Beneficiaries; No Joint Venture</u>. Except as provided in <u>Article 22</u> and any other provision of this Agreement providing for the indemnification of a Person who is not a party to this Agreement, this Agreement is for the sole and exclusive benefit of the Parties and is not intended to stipulate any benefit in favor of any third party. This Agreement establishes no joint venture or partnership between the Parties.

25.12. <u>Further Assurances</u>. Contractor and Owner agree to provide such information, execute and deliver any such instruments and documents and to take such other actions as may be necessary or reasonably requested by the other Party that are not inconsistent with the provisions of this Agreement and that do not involve the assumptions of obligations other than those provided for in this Agreement, in order to give full effect to this Agreement and to carry out the intent of this Agreement.

25.13. <u>Restrictions on Public Announcements</u>. Contractor shall not publicize, issue press releases, participate in interviews, print advertisements, publicity materials, prospectuses, financial documents or in any similar way mention or refer to the DRU or the Works without the prior written consent of Owner, which consent shall not be unreasonably withheld. It is recognized that Contractor may be obliged under its reporting laws and rules to disclose the facts

Confidential                                                                      KEPPEL00610555

Frade Drilling B.V.                                                                             Frade Drilling B.V. - 002/2012-FELS
                                                                                                                        DRU #2

of this Agreement, but shall afford Owner the opportunity to review and comment on such disclosures, provided such review is timely made so that Contractor does not run afoul of the law and rules.

25.14. <u>Confidentiality</u>. Each Party shall keep all Confidential Information provided to it by the other Party strictly confidential and shall not disclose, permit to be disclosed, use, transfer or divulge any Confidential Information except as expressly permitted by the terms of this Agreement.

25.14.1 Each Party shall be permitted to disclose Confidential Information provided to it by the other Party with:

  (a)   Its Affiliates and its Affiliates' respective partners, directors, officers, employees, agents, advisors and other representatives (it being understood that the Persons to whom such disclosure is made will be informed of the confidential nature of such Confidential Information and will agree to keep such Confidential Information confidential); <u>provided</u> that any Party that discloses the Confidential Information of the other Party shall remain liable for any breach of the terms hereof by such Person, as if it had itself committed such breach;

  (b)   Persons with whom such Party is contemplating the formation of a joint venture; <u>provided</u> that (A) the original disclosing Party is notified of the other Party's intention to so disclose such Confidential Information, and (B) such Party will cause any such Person to execute and deliver to the Parties a confidentiality agreement substantially in the form of this <u>Section 25.14</u>;

  (c)   A Governmental Authority, to the extent compelled by any Governmental Authority having jurisdiction over it, and only as may be required by Applicable Law or by any subpoena or similar legal process; <u>provided</u> that if it shall be compelled by any such Governmental Authority to disclose Confidential Information, it shall provide the original disclosing Party with sufficient advance notice of such disclosure as would permit such Party to intervene in any such process, or to initiate process to prevent the disclosure of such Confidential Information.

25.14.2 None of the Parties shall use, or shall permit the use by its Affiliates, successors, assigns, directors, employees or agents of, any Confidential Information for any purpose whatsoever other than in connection with this Agreement.

25.14.3 All Confidential Information disclosed by a Party to the other Party shall remain the sole property of the disclosing Party. Each Party shall take any and all reasonable precautions to prevent any unauthorized disclosure of any Confidential Information to any other Person.

25.14.4 Upon the termination of this Agreement, or upon a Party's earlier request, the other Party shall, within fifteen (15) Business Days of such request: (i) return, or cause any Person to

SPAULO-1-37648-v3                                 - 91 -                                                          95-40522876

Confidential                                                                                                    KEPPEL00610556

Frade Drilling B.V.                                                                 Frade Drilling B.V.- 002/2012-FELS
                                                                                                                  DRU #2

whom it disclosed Confidential Information to return, all Confidential Information in its possession or control, or (ii) destroy, or cause any Person to whom it has disclosed Confidential Information to destroy, all Confidential Information in its possession or control, and deliver a certificate signed by its legal representative, acceptable in substance and form to the original disclosing Party, certifying that all such Confidential Information has been so destroyed.

25.14.5 Contractor acknowledges that the business operations of Owner in the jurisdictions where this Agreement is to be performed are highly competitive, and that Owner's strategies, methods, business relationships, and commercial contractual and financial information concerning such jurisdiction comprise Confidential Information and trade secrets of Owner, which may enable Owner to obtain a competitive advantage over competitors which do not know or use such Confidential Information. Contractor further acknowledges that protection of the Confidential Information and trade secrets against unauthorized disclosure and use is of critical importance to Owner in maintaining its competitive position.

25.14.6 Each Party shall be entitled to enforce the provisions of this section by appropriate judicial action, including orders for specific performance or injunctive relief compelling the other Party's compliance with these restrictions.

25.15. Survival. The provisions of Sections 2.3, 3.1.1, 3.3.8, 3.12, 3.15, 3.20(i), 16.8, 16.9, 17.1, 17.3, 18.1, 18.3, and 18.4, and Article 1, Article 4, Article 6, Article 13, Article 15, Article 22, Article 24 and Article 25 shall survive the termination or expiration of this Agreement.

25.16. Negotiation. Each of the Parties acknowledges and agrees that they have had the opportunity to have their respective legal counsel review this Agreement and participate in the joint negotiation and documentation of this Agreement, and the Parties are fully familiar with each of the provisions of this Agreement and the effect thereof.

25.17. DRU as Sister Vessel. The Parties acknowledge that Owner's affiliate, Urca Drilling B.V. ("Urca"), entered into an EPC Contract dated 16 December 2011, as amended on the date hereof, with Contractor (the "Urca EPC Contract") for the supply of one (1) drilling rig unit in accordance with the specifications set out in the Invitation and as further described in the Urca EPC Contract (the "Urca Unit") and pursuant to the Urca EPC Contract, Contractor granted to Urca an option (which may be exercised by affiliates of Urca, including Owner) to purchase five (5) additional drilling rig units of the same size, description, and specifications as the Urca Unit.

The DRU to be provided by Contractor to Owner under this Agreement shall accordingly be considered a repeat unit (sister vessel) of the Urca Unit, subject to the same rules and regulations applicable to the Urca Unit, hence allowing the Owner and Contractor to benefit from sister vessel advantages under the Classification Society and/or Regulatory Bodies.

Confidential                                                                                                    KEPPEL00610557

Frade Drilling B.V.                                                    Frade Drilling B.V.- 002/2012-FELS
                                                                                              DRU #2

## ARTICLE 26 ADDITIONAL CONSIDERATIONS

26.1. <u>Duty to Perform.</u> Each Party agrees that it is bound to perform its contractual duties hereunder even if events arising on or after the Proposal Submission Date have rendered performance of this Agreement more onerous or less commercially or financially advantageous to it than could reasonably have been anticipated at the Proposal Submission Date.

26.2. <u>Right to Negotiate.</u> Notwithstanding Section 26.1, where a Party to this Agreement proves that:

- (a) the continued performance of its contractual duties has become excessively onerous due to an event beyond its reasonable control arising on or after the Proposal Submission Date which it could not reasonably have been expected to have taken into account at the time of the conclusion of this Agreement; and that

- (b) it could not reasonably have avoided or overcome the event or its consequences,

the Parties agree that they are bound, within a reasonable time of the invocation of this Section 26.2, to negotiate alternative contractual terms which reasonably allow for the consequences of the event.

IN WITNESS WHEREOF, the Parties and Sete International have caused this Agreement to be executed by their duly authorized representatives.

By Owner:                    By Contractor:               By Sete International

Name: Pedro Jose Barusco Filho   Name: TONG CHONG HEANG    Name:
Title: Attorney-in-fact          Title: ATTORNEY-IN-FACT   Title: Attorney-in-fact / Attorney-in-fact

Witnesses:

1. _____    2. _____

Name: KENNETH CHONG YOU KIEN     Name: JOSE CARLOS GOES PINHEIRO
Identity: ARM (LEGAL), KOM       Identity: [REDACTED]

SPAULO-1-37048-v3                        - 93 -                           95-40522876