or bonds required to release any member of Owner Group, and also bearing all costs and expenses incurred from such procedures.

3.7.5.1   If a claim referred to in Section 3.7.5 is made against Owner, Owner shall immediately give notice to Contractor and Contractor shall be entitled to contest any such claim in good faith by appropriate judicial or administrative procedures. If Owner is found liable to any claim listed in Section 3.7.5, and the court, arbitration panel or any other competent Governmental Authority determines such claim resulted solely from Contractor's acts or omissions, Contractor shall pay to Owner, as the case may be, the Owner's liability amount in the decision rendered by the court, arbitration panel or any other competent Governmental Authority that Contractor's action or omission led to the filing of such claim. This indemnity is subject to the limitation of liabilities under Article 22 as well as the exclusions therefrom.

3.7.6   Contractor shall arrange for the technical responsibility annotation (*Anotação de Responsabilidade Técnica*) concerning this Agreement to be obtained at the appropriate engineering, architecture and agronomy regional council (*Conselho Regional de Engenharia, Arquitetura e Agronomia*), forwarding a copy thereof to Owner before the commencement of the Works, as well as demonstrate its compliance with any other such requirements before Owner whenever any amendments are introduced in the Agreement or in any of the cases provided for in the Resolutions of the engineering, architecture and agronomy federal council (*Conselho Federal de Engenharia Arquitetura e Agronomia*).

3.7.7   Contractor shall deliver to Owner: (i) a letter by the nuclear energy national commission (*Comissão Nacional de Energia Nuclear*), approving the physical control system and the contingency plan adopted by Contractor, (ii) industrial safety prescriptions adopted by it in accordance with Applicable Law, (iii) instructions furnished to its employees, agents, representatives and Subcontractors regarding the risks and precautions to be observed, and (iv) affidavits reflecting the verification and assessment of monitoring and measurement equipment, all in accordance with Brazilian law (including nuclear energy national commission norms), in any event prior to the performance of any portion of the Works involving any industrial X-ray and/or gamma-ray service.

3.7.7.1   Contractor shall have a X-Ray and/or gamma-ray Protection Superintendent, whose name and resume shall be submitted to Owner together with the names and resumes of its agents and representatives at the time of the submission of the documents listed in Section 3.7.7. Such X-ray and/or gamma-ray Protection Superintendent shall be responsible for ensuring, especially in emergency cases, the safety of all persons who, given the place and conditions of the activity performed by them, may be exposed to the radiation emitted in connection thereof.

3.7.8   Contractor shall arrange and maintain in effect all the documentation related to any expatriate employees that take part in the performance of any portion of the Works, including the necessary work visas, according to Applicable Law.

3.7.9   Contractor's Additional Obligations.

3.7.9.1 Furnish monthly, or whenever requested by Owner in accordance with the terms and conditions of this Agreement, reports in writing, on the development of the several stages of the Works, as well as of the elements required to the fitness adequacy thereof and preparation of information of a statistic nature, in accordance with the Owner's requirements.

3.7.9.2   [Not Applicable]

Confidential

KEPPEL00490715

3.7.9.3 Correct, immediately and at its own expense, any and all portion of the Works, Equipment or engineering documents that are not in accordance with this Agreement and/or remake the part of the Works that have been rejected by Owner as they have not been carried out in accordance with the requirements contained in this Agreement for engineering documents, specifications, rules and applicable standards or with the Applicable Codes and Standards, including repairs in welding and the relevant X-ray and/or gamma-ray inspection.

3.8.     Key Personnel. Contractor's organizational chart shall be provided to Owner within thirty (30) days from the effective date of the Notice to Proceed and shall be implemented for the Works. Contractor shall promptly advise Owner of any reassignment of its personnel assigned to perform the Works.

3.9.     Operation Personnel and Assisted Operation. Contractor shall provide familiarization with the DRU equipment for Owner's operating and maintenance personnel during the course of construction period. The familiarization shall be performed in accordance with a familiarization plan to be agreed between the Parties prior to the anticipated date of Mechanical Completion.

3.10. Emergencies.   In the event of any emergency endangering life or property during the performance of Works, Contractor shall take such action as may be reasonable and necessary to prevent, avoid or mitigate injury, damage, or loss and shall, as soon as possible, report any such incidents, including Contractor's response thereto, to Owner. If Contractor has not taken reasonable precautions for the safety of the public or the protection of the Works, and such failure creates an emergency requiring immediate action, then Owner, with or without notice to Contractor may, but shall be under no obligation to, provide reasonable protection as required to control such emergency. The taking of any such action by Owner, or Owner's failure to take any action, shall not limit Contractor's liability. Contractor shall reimburse Owner for the performance of any such Works or the furnishing of any such Equipment in connection with any emergency in an amount equal to the reasonable costs incurred by Owner in such performance of Works or furnishing of Equipment.   The taking by Contractor or Owner of any actions pursuant to this Section 3.10 to prevent, avoid or mitigate injury, damage, or loss as a result of an emergency shall in no way alter or excuse any of Contractor's obligations under this Agreement.

3.11. Approvals, Certificates, Permits and Licenses. Other than those permits and consents listed in Exhibit XIV, which shall be responsibility of Owner, Contractor shall obtain and maintain all Consents, approvals, certificates, permits and licenses required to perform the Works, including the Consents listed on Exhibit XIII. Contractor shall provide Owner with copies of such permits and Consents as soon as they are obtained.   Contractor shall provide information, assistance and documentation to Owner as reasonably requested in connection with the permits and Consents to be obtained by Owner hereunder as listed on Exhibit XIV.

3.12. Books, Records and Audits.

(a)   Contractor shall keep such full and detailed books, construction logs, records, daily reports, accounts, payroll records and other pertinent documents as may be necessary for proper financial management under this Agreement and as required under Applicable Law. Contractor shall maintain all such books and records in accordance with applicable generally accepted accounting principles, or otherwise in the ordinary course of business, and shall retain all such books and records for a minimum period of ten (10) years following issuance of the Notice to Proceed, or such greater period of time as may be required under Applicable Law.

(b)   Upon request by Owner, Contractor shall provide Owner or its agents or

Confidential                                                                                      KEPPEL00490716

representatives with any appropriate information, documents or reports that may be necessary to determine Contractor's compliance with Brazilian Local Content requirements hereunder.

3.13. Tax Accounting. Within a reasonable period of time following Owner's request, Contractor shall provide Owner with any information regarding the quantities, descriptions and costs of any Equipment installed in or incorporated into the DRU as Owner may deem reasonably necessary in connection with its tax planning or the preparation of its tax returns.

3.14. Temporary Facilities. Contractor shall provide Owner, in accordance with Exhibit XI, with sufficient office space at the time of Site mobilization to accommodate Owner's Site representative(s) and support staff (as well as any Lender representatives), without cost to Owner. Contractor shall provide for Owner and its representatives any other temporary facilities required for the execution of the Works, whenever reasonably requested by Owner, without cost to Owner.

3.15. No Liens.

(a) Property To Be Kept Lien Free. Contractor shall keep the DRU, the Site and all Equipment (other than Equipment owned or leased by or procured for Contractor and used in the performance of the Works) free and clear of any and all Liens, claims and encumbrances (including any that arise from the performance of the Works or any reason related thereto or due to Contractor's other transactions, unrelated to the Works).

(b) Notice of Filing of Lien. Contractor agrees to notify Owner immediately of the filing of any Liens, or possible filing of Liens, upon the DRU, the Site, any Equipment (other than Equipment owned or leased by or procured for Contractor and used in the performance of the Works), or any moneys due to Contractor by Owner under this Agreement. If any such Liens are filed, Contractor shall arrange for the removal of such Lien not later than thirty (30) days after such filing. In the event that Contractor fails or refuses to remove such Lien within thirty (30) Days, then Owner shall have the right (but not the obligation) to pay any sums necessary to obtain prompt release of such Lien. In this case, Contractor shall reimburse Owner for any sums so paid within thirty (30) Days of a demand therefor, or Owner shall have the right to set off such amounts against payments owed to Contractor by Owner hereunder in accordance with Section 10.8 (f).

(c) Liens to the Benefit of Sureties or Creditors. Notwithstanding the provisions under Section 3.15(a) and Section 3.15(b) above, upon prior written approval of Owner (or its successor or assignee), Contractor and/or the Major Subcontractor listed in item 1.2 of Exhibit XII hereto shall be permitted to create Liens on the Site to secure sureties or financing raised with the specific purpose of developing the Site to allow for the construction of the DRU and other Liens that may be required by Contractor and/or the Major Subcontractor listed in item 1.2 of Exhibit XII hereto to be created in favor of the "*Fundo de Garantia da Construção Naval* – FGCN".

3.16. Quality Assurance. No later than the date indicated in Exhibit VI, Contractor shall submit to Owner for its approval: (i) a Quality Assurance Plan in the form set forth in Exhibits VI and VII; and (ii) a detailed inspection plan, and Contractor shall provide for the Site a quality assurance manager to supervise the implementation of the quality assurance plan, the inspection plan, and the inspection procedures, at the Site; and any other required documentation pursuant to Exhibits VI and VII.

3.17. Plan & Reports. Contractor shall provide to Owner all Plan & Documents specified in

Confidential

KEPPEL00490717

Exhibit VI on the dates therein indicated, with progress reports and such other information as reasonably requested by Owner, including the following:

(a) Minutes for all status and other project meetings within seven (7) Days following any such meeting;

(b) Weekly progress reports, in form and substance reasonably acceptable to Owner, of the progress of the Works during the preceding work week and on all matters deemed significant by Owner or Contractor. Contractor shall, as may be requested from time to time by Owner, deliver to Owner, on a daily basis, a written report, in form and substance reasonably acceptable to Owner of the Works during the preceding day and on all matters deemed significant by Owner or Contractor.

(c) Safety incident reports according to Exhibit IX;

(d) monthly progress reports, in form and substance reasonably acceptable to Owner, containing the following information (each, a "Monthly Progress Report"):

(i) an executive summary with a description of overall progress of the Works compared to the Project Schedule;

(ii) a description, compared against the Project Schedule, of engineering status including actual percentage completed, document status, significant activities accomplished in the previous month and significant activities planned for the current month and next month;

(iii) a description, compared against the Project Schedule, of procurement activities including actual percentage completed, manufacturing and delivery status, significant activities accomplished in the previous month and significant activities planned for the current month;

(iv) a description, compared against the Project Schedule, of construction activities, including actual percentage completed, progress summary, numbers of skilled, unskilled, and supervisory staff on Site, as compared to planned levels, significant activities accomplished in the previous month and significant activities planned for the current month;

(v) a description, compared against the Project Schedule, of start-up activities, including actual percentage completed, progress summary, significant activities accomplished in the previous month and significant activities planned for the current month;

(vi) a description of critical items, including evaluation of problems and, to the extent applicable, of strategies to accelerate the performance of the Works in order to comply with the Project Schedule;

(vii) a description of all permitting and environmental issues and its current status;

(viii) a description of all safety and security issues;

(ix) a description of quality assurance activities; and

(x) any other information reasonably requested by Owner, including any material information of which Contractor is aware that could reasonably be foreseen to adversely affect the performance of the Works.

Page 29 of 79

Confidential

(e)   Contractor shall provide the Monthly Progress Report on or before the tenth (10th) Day of each month.  Monthly Progress Report shall cover activities up to the end of the previous month.  Contractor shall provide copies of the Monthly Progress Reports to any other Persons as Owner may reasonably request.

(f)   Reports of any event of Force Majeure duly notified pursuant to Article 23 and Section 25.5 hereof, in a form reasonably acceptable to Owner, detailing the status and developments of such event which occurs or may be anticipated, and any emergency or other unanticipated event, which might adversely affect Contractor's ability to perform its obligations hereunder.  The report shall detail all available information and steps being taken to correct or address such Force Majeure, as well as the estimate time for Contractor to resume the part of the Work affected by an event of Force Majeure and in each case shall be submitted by Contractor as soon as practicable. Owner may at any time request a report on any event, which Owner reasonably regards as significant.

(g)   Reports on damage if any portion of the DRU is materially damaged or is destroyed, as soon as practicable after the occurrence of such damage or destruction, detailing such occurrence, any required repairs or replacement and the estimated duration of such repairs or replacement, including any estimate impact on the Project Schedule. Without limiting the foregoing, such damage report shall be in a form acceptable to any insurance company against which a claim is made for coverage of such damage.

(h)   Written notice to Owner of any unanticipated significant changes or developments in the Works. Contractor shall make available, and upon Owner's request shall furnish, to Owner such documents as may be necessary in Owner's sole discretion for Owner to inspect, evaluate or review the performance of the Works.

(i)   Copies of technical correspondence between Contractor and its Subcontractors of any tier, or their respective suppliers, upon request of Owner, including all notes, designs, drawings, specifications and other technical data pertaining to the technical aspects of the Works; provided that receipt by Owner of such technical correspondence shall not be deemed a consent to or approval by Owner of such technical correspondence and shall not limit any of the obligations of Contractor to perform under this Agreement.

(j)   Reports in form and substance reasonably satisfactory to Owner informing compliance by Contractor and its Subcontractors with health, safety and environmental standards and procedures required pursuant to this Agreement and by Applicable Law.

3.18. Payment.  Contractor shall timely make all payments required to be paid to Owner pursuant to the terms of this Agreement.

3.19. Progress Meetings.  During performance of the Works, periodic progress meetings shall be held at such place mutually agreeable to the Parties.  Such meetings shall be at least weekly or as otherwise agreed.  All matters bearing on the progress and performance of the Works and the Project Schedule since the preceding progress meeting shall be discussed and resolved, including any previously unresolved matters, deficiencies in the Works or the methods being employed for the Works, and problems, difficulties, or delays which may be encountered.  Contractor shall provide Owner with minutes of all progress meetings.  All decisions taken at such progress meetings shall be recorded in the minutes.  Owner shall initial and sign the minutes, noting any disagreements.  The minutes shall be considered the definitive record of what occurred and what was decided at the meetings.

Confidential

KEPPEL00490719

3.20.  Site Security.  The following shall apply to the Site:

   (a)   Contractor shall be responsible for all security matters at the Site during all times prior to Substantial Completion, which shall include measures reasonably required to prevent vandalism, sabotage, loss, theft and danger or any other changes to the Site, any Equipment and personnel.

   (b)   Contractor shall coordinate entrance and exit from the Site so as to minimize disruption to the Works.

   (c)   Contractor shall review all injuries to persons and damage to property arising during the performance of the Works to determine whether any unsafe conditions that exist at the Site contributed to such injuries or damage, and shall be solely responsible for the correction of any such conditions.

   (d)   Contractor shall cooperate with Owner on all security matters and shall promptly comply with any reasonable security requirements for the DRU, the Site or the Works requested by Owner.   Such compliance shall not relieve Contractor of its responsibility for maintaining proper security for the above noted items, nor shall it be construed as limiting in any manner Contractor's obligation to comply with Applicable Laws and to undertake reasonable action to establish and maintain secure conditions at the Site.

   (e)   Contractor shall not be entitled to any extension of time or compensation on account of Contractor's failure to exercise reasonable care to protect the Site and all Equipment as described herein.

   (f)   Contractor shall, and shall cause its Subcontractors to, comply with all Owner Policies when performing any Works at the Site.

   (g)   Health and Safety. Contractor recognizes and agrees that safety is of paramount importance in the performance of the Works and that Contractor is responsible for performing (and causing the performance of) the Works in a safe manner. Contractor agrees to implement a safety program that is to be submitted to Owner for its approval prior to the commencement of the Works. Contractor shall perform the Works in such a manner as to minimize impact upon human health, safety and the natural environment.   In carrying out the foregoing, Contractor shall comply with Good Industry Practices, Owner Policies, Applicable Laws and Contractor's Safety Program, as approved by Owner, which approval shall not be unreasonably withheld, and Owner's standards as set forth herein and in Exhibit IX.  Such submission shall not be construed as limiting in any manner Contractor's obligation to undertake all reasonable actions toward maintaining safe working conditions at the Site, nor as imposing upon Owner responsibility to review, or for the adequacy of, the environment, health and safety program at the Site. Contractor shall assume all costs associated with compliance therewith. Contractor further agrees to provide necessary training to its employees and Subcontractors to ensure their compliance with the foregoing safety and health rules and standards. Should Owner at any time observe Contractor, or any of its Subcontractors, performing the Works in an unsafe manner, or in a manner that may, if continued, become unsafe, then Owner shall notify Contractor of the unsafe or potentially unsafe condition. Owner's notification shall establish a deadline for Contractor to remedy or rectify such condition. If Contractor fails to remedy the unsafe or potentially unsafe condition in such time, Owner shall have the right (but not the obligation) to require Contractor to stop the Works until such time as the manner of performing the Works have been brought into conformity

Confidential

KEPPEL00490720

with the requirements of this Agreement; provided, however, that at no time shall Contractor be entitled to an adjustment of the Contract Price or the Project Schedule based on such work stoppage. Nothing in this Section 3.20 shall affect Contractor's status as an independent contractor.

(h)   Conditions of the Site.   Contractor represents and warrants that it knows and has carefully reviewed and taken account of all matters concerning the performance of the Works fully and completely, and in accordance with the Project Schedule. Contractor has had the opportunity to investigate and has carefully reviewed and taken account of all matters concerning the Site, including, the topography and weather patterns at the Site and surrounding area, the management and storage of materials, the availability of labor, construction water, construction electricity, and construction communications, the access routes to the Site (including the suitability of those routes, with such modifications or reinforcements as Contractor has identified as part of the Works, for delivery of Equipment) and soil and subsoil conditions and characteristics and accepts them for such performance. Contractor's failure to acquaint itself with such general or local conditions or circumstances affecting the Works existing as of the effective date of this Agreement shall neither relieve it from the responsibility for successfully performing this Agreement nor entitle Contractor to a Change Order. Contractor is responsible for the pertinence, sufficiency and accuracy of all information used in the performance of the Works. Contractor acknowledges that all appropriate allowances for these conditions have been taken into account in the Contract Price and in determining the Project Schedule. No discrepancy between the actual conditions encountered by Contractor and the conditions that Contractor anticipated or allowed for shall excuse Contractor from any failure to perform the Works in accordance with the Project Schedule. In addition, no claim shall be considered for any increase in the Contract Price or for any extension of the Project Schedule, or any other claim, relief or remedy whatsoever, based in whole or in part upon any such discrepancy.

(i)   No Hazardous Materials To Be Brought on Site.   Contractor shall not, nor shall it permit or allow any Subcontractor to, transport any Hazardous Materials to the Site, except to the extent necessary for the performance of the Works. Contractor shall remove, transport and dispose of, in accordance with any Applicable Law and Consents, any Hazardous Materials transported onto the Site or generated in the performance of the Works and so long as the same is done in compliance with Applicable Laws and Contractor shall remain responsible and strictly liable for all such Hazardous Materials. Subject to the other provisions of this Agreement, Contractor, on behalf of itself and of Contractor Group, agrees to defend, indemnify and hold each member of Owner Group free and harmless from and against any and all claims, losses and/or liabilities (including the cost and expenses related to any administrative, judicial, and arbitration procedures before any court or in any level of jurisdiction that may be filed against any member of Owner Group and related attorneys' fees) suffered or incurred by any member of Owner Group that arise from or out of Contractor's use, handling, or disposal of Hazardous Materials on the Site, provided that such claims, losses and/or liabilities do not result in any way whatsoever from the gross negligence or willful misconduct of any member of Owner Group.

(j)   Clean-up.   Contractor shall at all times keep the Site free from waste materials or rubbish caused by its activities. As soon as practicable, after the completion of all Substantial Completion Punch-list items, Contractor shall remove, at its own cost, all of its equipment and materials not constituting part or otherwise embodied in the DRU, and remove all waste material and rubbish from the Site so as to bring the Site into full compliance with Applicable Laws, Consents and this Agreement. Contractor

Confidential

KEPPEL00490721

shall be responsible for all costs associated with removal of any waste materials and garbage from the Site, including, but not limited to, costs associated with permitting and transportation.

(k)   Non-Interference. During the period from Substantial Completion of the DRU until completion of the Substantial Completion Punch-list for such DRU, Contractor shall ensure that the performance of the Works does not unreasonably interfere with the operation of such DRU or any other DRU. In the event Contractor's performance of the Works interferes with the operation of such DRU, any other DRU and/or any adjoining facility, notwithstanding anything to the contrary in this Agreement, Contractor shall be liable for and shall defend, indemnify and hold each member of Owner Group free and harmless from and against any claims, losses and/or liabilities (including the cost and expenses related to any administrative, judicial, and arbitration procedures before any court or in any level of jurisdiction that may be filed against any member of Owner Group and related attorneys' fees) suffered or incurred by any member of Owner Group resulting from such interference. At no time may Contractor utilize any Owner systems or assets unless specifically authorized by the Scope of Work or as approved by Owner in writing.

(l)   Access to Site. Contractor shall make the Site available to Owner, or to any Person at the request of Owner, including Owner's personnel, its agents, representatives and subcontractors, for the purpose of carrying out Owner's obligations under this Agreement or for the purpose of monitoring the performance of the Works.

3.21. Access to Documents.   Owner, its Owner Project Manager or any person authorized in writing by Owner shall have access, at all reasonable times, to inspect and make copies of all notes, designs, drawings, specifications and other technical data pertaining to the technical aspects of the Works, Equipment specifications, performance guarantee data, warranties, shop and field performance test and field representative reports; provided that Contractor shall not be obligated to provide access to proprietary technical data regarding Equipment manufactured by or for Contractor and not provided by Contractor to other Persons so long as Contractor provides the non-proprietary portion of such technical data and the non-proprietary data provided by Contractor shall be of such type and detail as is customarily provided by vendors and provides Owner with a reasonable basis for technical review of the design of the DRU.   Drawings representing the latest modifications to or the current as-built status of the DRU required pursuant to Exhibit III shall be available for Owner's inspection at the Site at all times during any working day.

3.22. Environmental Compliance.   Contractor shall perform the Works in such a manner as to minimize impact upon human health, safety and the natural environment.   In carrying out the foregoing, Contractor shall comply with Good Industry Practices, Owner Policies, Applicable Laws, Applicable Codes and Standards and Contractor's Safety Program.   Contractor shall dispose of any waste buildup in the water or wastewater treatment systems included in the Site and waste from the sanitary sewer or any other source included in the Site resulting from Contractor's performance of the Works.   Contractor shall dispose of all non-hazardous wastes and Hazardous Materials generated or encountered during performance of the Works only at disposal facilities approved and permitted to receive such wastes and Hazardous Materials.

3.23. Transportation.   Contractor shall be responsible for the transportation to, from and among any of the Sites of all Equipment, Subcontractors and personnel used to perform any Works.

3.24. Export of DRU.   Contractor shall take all necessary steps and shall obtain all necessary authorizations for the timely exportation of the DRU, including the registration of such DRU in all the relevant registries, such as the Registro de Operações de Crédito and the Registro de Exportação with SISCOMEX. Contractor, on behalf of itself and its Affiliates, agrees to defend, indemnify and

Confidential

KEPPEL00490722