Owner's request, Contractor shall furnish additional supporting documentation, including certificates, and provide any further information as may be reasonably requested by Owner to verify such Invoice. Unless disputed pursuant to Article 24, the amount of each Invoice shall be due and payable within thirty (30) Days immediately following the receipt of the Milestone Payment Documents as per Section 8.3 (such payment due date to be adjusted pursuant to Section 10.2 above to reflect any delays in Contractor's Invoice issuance and delivery of requested documentation). If any amount described in any Invoice is disputed by Owner, payment shall be made only with respect to its undisputed portion. Payment of disputed amounts shall be made as soon as the dispute is resolved.

10.6. Payments. The payment amount due to Contractor based on the Milestone Payment Event shall be effected by Owner by means of a bank receipt document issued by a banking institution in the name of Contractor, payable on the thirtieth (30th) day counting from the receipt of the Milestone Payment Documents as per Section 8.3 with due regard for the provisions of Section 10.2, or by wire transfer in favor of Contractor. Contractor hereby notifies Owner that payment shall be made to the following bank and account:

For payments in United States Dollars:

BANK: Citibank N.A, Singapore
SWIFT: CITISGSG
For Account of Keppel FELS Limited
for credit of Fernvale Pte. Ltd.
ACCOUNT no. ▮▮▮▮▮▮▮▮

For payments in Reais:

BANK:
BANCO ITAU
BRANCH NUMBER: 0301
ACCOUNT NUMBER: ▮▮▮▮▮
SWIFT CODE: ITAUBRSP
BANK: BANCO ITAU S/A
BENEFICIARY : BRASFELS S.A.
for credit of Fernvale Pte. Ltd.

BANK: HSBC Bank Brasil S.A.
BRANCH NUMBER : 1508
ACCOUNT NUMBER : ▮▮▮▮▮
SWIFT CODE : BCBBBRPR
BANK: HSBC Bank Brasil S.A.
BENEFICIARY : BRASFELS S.A.
for credit of Fernvale Pte. Ltd.

10.6.1  At Contractor's discretion it can elect to instruct Owner to make payments hereunder to more than one bank account.

10.6.2  If Contractor desires to receive payment at a bank account other than the account described above, it shall notify Owner in accordance with Section 25.5 indicating the new bank reference concurrent with an Invoice to Owner.

Page 44 of 79

KEPPEL00490733

10.6.3   If any amount hereunder is due on a day which is not a Business Day, such amount shall not be due and payable until the next following Business Day, and no interest shall accrue in respect of such delay.

10.6.4   For the first Milestone Payment Event – Down payment.  The amount due as Down Payment shall be paid by Owner in accordance with the date set forth in the applicable Invoice after receipt of the Performance Security, provided in accordance with Exhibit XXIII and issued by a Bank or an Insurance Company prior approved by the Owner.

10.7.   Payments Not Acceptance of Work.   No payment made hereunder shall be considered as an approval or acceptance of the Works or portions of the Works by Owner, or a waiver of any claim or right that Owner may have hereunder.  All payments shall be subject to correction and adjustment to be effected in subsequent payments.

10.8.   Payments Withheld and Deducted.   In addition to disputed amounts set forth in an Invoice, Owner may withhold or deduct payment of any amount described in an Invoice or portions thereof in an amount and to such extent as may be reasonably necessary to protect Owner due to:

(a)   Defective Works that have not been remedied as required under this Agreement and which Owner has incurred expenses for the correction of Defective Works, after Contractor having been duly notified and given a reasonable term for remedying any such faulty or Defective Works, and to the extent (i) any defective Works are due to the Contractor's or Subcontractors' sole fault; and (ii) such Defective Works have been or are being corrected by Owner or by any third parties appointed by Owner;

(b)   Amounts paid by Owner to Contractor, in the month immediately preceding, incorrectly, or for which there was insufficient or inaccurate supporting information;

(c)   Liquidated damages such as Delay Damages which Contractor owes;

(d)   Any undisputed  expenses, costs or liabilities, which Owner has incurred and for which Contractor is legally or contractually responsible, such as undisputed payment under any Subcontracts;

(e)   Amounts corresponding to the satisfaction of any judicial or administrative decision, encumbrances, liabilities to third parties for which Contractor is solely responsible, (whether directly or under any provision of this Agreement, including any provisions relating to Contractor's duty to indemnify any member of Owner Group), and brought against any member of Owner Group or, in the case of an encumbrance or lien, created on any property of any member of Owner Group; provided that the withholding of payments under this item (f) shall be limited to the value of the corresponding final judgment, or encumbrances;

(f)   Any undisputed amounts due and payable by Contractor to Owner; or

(g)   Contractor is in Default pursuant to Section 21.1 and such Default has not been cured within the time set forth in Section 21.1, and any amount withheld pursuant to this Section 10.8 shall not be due and payable hereunder for any purpose under this Agreement until the event or occurrence giving rise to Owner's withholding of payment ceases to exist.

10.9.   Interest on Late Payments.   Any amounts due, but not paid hereunder, from one Party to the other, shall bear interest at a per annum rate equal to the 6-month London Interbank Offered Rate (LIBOR), as published by the Financial Times, London edition, on the relevant due date plus 2%.

Confidential                                                                                 KEPPEL00490734

(two percent) per annum. Any amounts withheld, as per Sections 10.8 and 10.12 of this Agreement shall not be considered due and payable and are not subject to the foregoing interest.

10.10. Payments During Default. Owner shall not be obligated to make any payments hereunder at any time in which a Default shall have occurred and be continuing, (except for all undisputed payments that are due and in respect of which the related Invoice(s) has been accepted by Owner) and Contractor shall have no right to exercise any remedy hereunder in respect of such payments if and for so long as such Default is continuing.

10.11. Offset. Owner may offset any amount due and payable from Contractor to Owner against any amount due and payable to Contractor hereunder, without prejudice to Owner's other rights and remedies under this Agreement.

10.12. Payment Error. Payments made in error shall be immediately returned by the Party receiving the payment in error. Notwithstanding the generality of the foregoing, in the event Owner discovers that a milestone associated with a payment was not in fact achieved, Owner may set off the amount paid by it in respect of the achievement of such milestone against other payment obligations of Owner until such milestone is achieved, at which time the amount recovered by Owner through exercise of such rights of set off shall be due and payable by Owner to Contractor.

10.13. Adjustments. The Parties expressly understand and acknowledge that (i) the formulas set out below include the effects of price fluctuations that affect the Contract Price and (ii) Contractor has taken the effects of exchange rate fluctuations into account in proposing and agreeing to the Contract Price. Owner shall not be obligated to adjust the Contract Price or to pay any additional amounts in respect of the Contract Price for any reason related to fluctuations of exchange rates or price fluctuations not assessed by the price indexes defined in Sections 10.13.1 and 10.13.3 below.

10.13.1    The Parties agree that the amount to be paid in respect of any component of the Contract Price that is denominated in Brazilian Reais, shall be subject to yearly adjustments determined by the following parametric formula, calculated once every twelve months, and counted from the Proposal Submission Date, to reflect the escalation of costs related to the drilling rig industry in the Brazilian market:

$$PM = \left( PO \times \left( \alpha 1 \times \left( \frac{ICSPn}{ICSPo} \right) + \alpha 2 \times \left( \frac{IGP - DIn}{IGP - DIo} \right) \right) \right)$$

Where:

**PM**: Monthly Amount in Brazilian currency Reais (R$).

**PO**: Portion of Contract Price subject to payments in Brazilian Reais (R$) and included in the Milestone Payment Event.

**α1**: coefficient calculated by *Fundação Getulio Vargas – FGV*, representing the weight of production costs in the typical sales Price for the drilling rig industry in the Brazilian market (**α1=0,8**).

**α2**: coefficient calculated by *Fundação Getulio Vargas – FGV*, representing the weight of non production costs, including overhead, in the typical sales Price for the drilling rig industry in Brazilian market (**α2= 0,2**).

Page 46 of 79

KEPPEL00490735

**ICSPn:** Definitive value of the Price Index corresponding to the Brazilian Drilling Rig Building for the month immediately preceding the month to which the adjustment is due, calculated by *Fundação Getulio Vargas - FGV*

**ICSPo:** Definite value of the Price Index corresponding to the Brazilian drilling rig industry for the month immediately preceding the month of the Proposal Submission Date, calculated by *Fundação Getulio Vargas - FGV*

**IGP-DIn:** Definitive value of the *General Price Index on Internal Availability* ("Índice Geral de Preços – Disponibilidade Interna") for the month immediately preceding the month to which the adjustment is due, calculated by *Fundação Getulio Vargas - FGV*

**IGP-DIo:** *General Price Index on Internal Availability* (Índice Geral de Preços – Disponibilidade Interna") for the month immediately preceding the month of the Proposal Submission Date, calculated by *Fundação Getulio Vargas - FGV*

10.13.2   The amount to be paid in respect of any component of the Contract Price that is denominated in United States Dollars (US$) or Euros (€) shall be subject to yearly adjustments, calculated once every twelve (12) months, according to the following formulas:

10.13.3.1 Prices in US Dollars. Except for the provisions of section 10.13.3.1.1, the following formula shall apply to portions of Contract Price in United States Dollars:

$$PM = PO \times Fy$$

Where:

**PM:** Adjusted Foreign Content Amount in U.S. Dollars.

**PO:** Portion of Contract Price corresponding to the Foreign Content in US Dollars included in the Milestone Payment Event.

**Fy:** Yearly adjustment factor determined by the following parametric formula, calculated every twelve months, and counted from the Proposal Submission Date:

$$Fy = 0,95 \times \frac{OFGME}{OFGMEo} + 0,05 \times \frac{ECI}{ECIo}$$

Where:

**OFGME:** Definitive value of the Price Index corresponding to *"Oil and Gas Field Machinery and Equipment (code PCU33313233313/32)"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the month immediately preceding the month to which the adjustment is due.

Confidential

KEPPEL00490736

**OFGMEo:** Definitive value of the Price Index corresponding to *"Oil and Gas Field Machinery and Equipment (code PCU333132333132)"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the month immediately preceding the month of the Proposal Submission Date.

**ECI:** Definitive value of the Price Index corresponding to *"Employment Cost Index, Total Compensation, Private Industry, Not Seasonally Adjusted (code CIU201000000000I)"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the trimester immediately preceding the trimester to which the adjustment is due.

**ECIo:** Definitive value of the Price Index corresponding to *"Employment Cost Index, Total Compensation, Private Industry, Not Seasonally Adjusted (code CIU201000000000I)"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the trimester immediately preceding the trimester of the Proposal Submission Date.

10.13.3.2    Prices in Euros. The following formula shall apply to portions of Contract Price in Euros:

$$PM = PO \times Fy$$

Where:

**PM** = Adjusted Foreign Content Amount in Euros.

**PO** = Portion of Contract Price corresponding to the Foreign Content in Euros included in the Milestone Payment Event

**Fy** = Yearly adjustment factor determined by the following parametric formula, calculated every twelve months, and counted from the Proposal Submission Date:

$$Fy = 0{,}95 \times \frac{MME}{MMEo} + 0{,}05 \times \frac{MO_{EUR}}{MO_{EURO}}$$

Where:

**MME:** Definitive value of the Price Index corresponding to *"Manufacture of Machinery and Equipment (code C28)"* published by *"Eurostat"*, for the month immediately preceding the month to which the adjustment is due.

**MMEo:** Definitive value of the Price Index corresponding to *"Manufacture of Machinery and Equipment (code C28)"* published by *"Eurostat"*, for the month immediately preceding the month of the Proposal Submission Date.

**MO_{EUR}:** Definitive value of the Price Index corresponding to *"Labour Cost Index – Quarterly data (Nace R2) - Industry (except construction), code B-E – Data adjusted by working day – Wages and Salaries"* published by *"Eurostat"*, for the

Confidential                                                                 KEPPEL00490737

trimester immediately preceding the trimester of the Proposal Submission Date.

**MO**$_{nao}$: Definitive value of the Price Index corresponding to *"Labour Cost Index – Quarterly data (Nace R2) - Industry (except construction), code B-E – Data adjusted by working day – Wages and Salaries"* published by *"Eurostat"*, for the trimester immediately preceding the trimester in which Contractor's Commercial Proposal was submitted.

10.13.4   Where the formula provided in Section 10.13.1 is not capable of being ascertained by reason that any one or more of the variables states therein is not established, then the formula which is applicable shall be the following: -

**Brazilian Reais Portion:**

The amount related to the Brazilian Reais amount shall be subjected to the following formula:

$$PM = PO \times Fy$$

Where:

**PM** : Adjusted Milestone Payment Event Amount in BRL

**PO** : Portion of Contract Price corresponding to the Milestone Payment Event in BRL

**Fy** : Yearly adjustment factor determined by the following parametric formula, calculated every twelve months counted from the Proposal Submission Date, to express the escalation costs related to the Brazilian Local Content:

$$Fy = 0{,}70 \times \frac{MOn}{MOo} + 0{,}30 \times \frac{FAn}{FAo}$$

Where,

**MOn** : Definitive value of the Price Index corresponding to *"Custo de construção - Mão-de-obra – Município do Rio de Janeiro – Coluna 10 - FGV (código A0159401)"* representing the cost of man power, referred to the month preceding the one to which the adjustment is due.

**MOo** : Definitive value of the Price Index corresponding to *"Custo de Construção - Mão-de-obra - Município do Rio de Janeiro - Coluna 10 – FGV (código A0159401)"* representing the cost of man power, referred to the month preceding the one of the Proposal Submission Date.

**FAn** : Definitive value of the Price Index corresponding to *"Indústria de Transformação – Metalurgia Básica - Coluna 30 - FGV (código 1006823)"*, representing the cost of raw materials in the price composition, referred to the month preceding the one to which the adjustment is due.

**FAo** : Definitive value of the Price Index corresponding to *"Indústria de Transformação – Metalurgia Básica - Coluna 30 - FGV (código 1006823)"*, representing the cost of raw materials in the price composition, referred to the month preceding the one of the Proposal Submission Date.

**US Dollar Portion**

$$PM = PO \times Fy$$

Where:

Confidential

**PM**: Adjusted Milestone Payment Event Amount in U.S. Dollars.

**PO**: Portion of Contract Price corresponding to the Milestone Payment Event in USD.

**Fy**: Yearly adjustment factor determined by the following parametric formula, calculated every twelve months, and counted from July, 2011 (Proposal Submission Date):

$$Fy = 0.95 \times \frac{OFGME}{OFGMEo} + 0.05 \times \frac{ECI}{ECIo}$$

Where:

**OFGME**: Definitive value of the Price Index corresponding to *"Oil and Gas Field Machinery and Equipment (code PCU333132333132)"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the month immediately preceding the month to which the adjustment is due (i.e., each twelve (12) month anniversary of July 2011 (Proposal Submission Date).

**OFGMEo**: Definitive value of the Price Index corresponding to *"Oil and Gas Field Machinery and Equipment (code PCU333132333132)"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the month immediately preceding July, 2011 (Proposal Submission Date
**ECI**: Definitive value of the Price Index corresponding to *"Employment Cost Index, Total Compensation, Private Industry"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the month immediately preceding the month to which the adjustment is due (i.e. each twelve (12) month anniversary of July 2011 (Proposal Submission Date).

**ECIo**: Definitive value of the Price Index corresponding to *"Employment Cost Index, Total Compensation, Private Industry"* published by *"United States Bureau of Labor Statistics Data – BLS"*, for the month immediately preceding July, 2011 (Proposal Submission Date).

    10.13.4.1  The Owner and the Contractor shall be entitled to compensate any amounts related to the application of the formula set forth in Section 10.13.4 once the variables necessary for the calculations mentioned in Sections 10.13.1 are available.

10.14. <u>Final Completion.</u>Upon Final Completion, Contractor shall submit a statement summarizing and reconciling all previous Invoices, payments received and Change Orders together with an affidavit affirming that all payrolls, taxes, Liens, charges, claims, demands, judgments, security interests, bills, Equipment, and any and all indebtedness connected with the Works have been paid or otherwise satisfied and discharged, and a final Lien waiver in the form specified in <u>Exhibit XXII.</u>

**ARTICLE 11**                **COMMENCEMENT OF WORK: PROJECT SCHEDULE**

11.1. <u>Commencement of Work.</u>Contractor agrees to commence the Works upon the receipt from Owner of a notice to proceed ("<u>Notice to Proceed</u>") with the Work. The Work Authorization Initial Date of this Agreement is considered the date Contractor receives the Notice to Proceed in compliance with the Project Schedule.

11.2. <u>[Not applicable]</u> .

11.3. <u>Project Schedule.</u>
        (a)    <u>Critical Path Schedule.</u> Contractor shall perform the Works in accordance with the schedule and management plan agreed upon between the Parties and set forth in <u>Exhibit XVIII</u> (the "<u>Project Schedule</u>"). After signature of this Agreement, Contractor shall submit for Owner's review and approval, the detailed Project Schedule, in accordance with the Project requirements defined

Confidential                                    KEPPEL00490739

in this Agreement, mainly in Exhibit VI and Section 11.4. The Project Schedule shall include a Precedence Diagram, showing the critical path of the Project, indicating the execution time for all activities of the Works detailed in the Works Breakdown Schedule – WBS, and the logical interrelationship of such activities, (Project Precedence Diagram with Critical Path), complying with the dates indicated in Exhibit VI and Section 11.4. The Project Schedule will be the baseline of the Project and, once expressly approved by Owner, will be revised only as required under Sections 12.1, 12.2, 12.3 12.4, 12.5 and 21.3.

(b)   Final Completion. Final Completion shall occur no later than the date (such date, the "Required Final Completion Date") falling one thousand and eight hundred and forty (1,840) Days from the date of issuance of the Notice to Proceed. The Required Final Completion Date shall be adjusted only as provided in this Agreement.

(c)   Acceleration.   If at any time the progress of the Works is delayed by more than sixty (60) Days from the Project Schedule due to Contractor's fault, Owner shall notify Contractor thereof, then Contractor shall within thirty (30) Days present an acceleration plan to Owner, for its approval, specifically identifying the steps to be taken and the resources to be committed to accelerate the progress of the Works in order to bring the Works back into compliance with the Project Schedule ("Acceleration Plan"). All additional costs related to the implementation of any such Acceleration Plan shall be borne by Contractor.

(d)   Failure to comply with the Acceleration Plan.   In case the Contractor fails to prosecute the Work in accordance with the Acceleration Plan and there is a resulting additional delay of thirty (30) Days, the Contractor shall be in Default under this Agreement, pursuant to Section 21.1.

11.4. Project Schedule Baseline. The Works shall be performed in accordance with the milestones and other interim deadlines described below, which shall be included in the Project Schedule to be submitted by Contractor in accordance with Section 11.3(a):

11.4.1   Plans, procedures and documentation. Complete issuance of plans, procedures and documentation shall occur no later than the dates indicated on Exhibit VI.

11.4.2   Purchase Orders. Complete the issuance of Purchase Orders for critical Equipment and materials, which shall be clearly identified as such by Contractor in its Procurement Management Plan, no later than ninety (90) Days from the issuance of the Notice to Proceed.

11.4.3   Start fabrication. Commence fabrication of the first DRU no later than three hundred and sixty five (365) Days from the issuance of the Notice to Proceed.

11.4.4   Start of the DRU Erection. Commence erection of the first DRU no later than six hundred and ten (610) Days from the issuance of the Notice to Proceed.

11.4.5   Handover. The Handover of the DRU shall occur on the date no later than 1,460 (one thousand, four hundred and sixty) Days from the issuance of the Notice to Proceed (such date, the "Handover Date").

11.4.6   Final Completion. Final Completion shall occur no later than the Required Final Completion Date.

11.4.7   [Not applicable].

Confidential                                                                                    KEPPEL00490740

11.4.8  Contractor's technical assistance. Contractor shall provide offshore technical assistance to the Owner during a period of twelve (12) months after the actual date of Handover for the DRU.

**ARTICLE 12            CHANGE ORDERS**

12.1.  Change. Owner shall have the right to make, from time to time, any change, modification, addition/reduction or deletion to, in or from the Scope of Work, and/or to adjust the Project Schedule for performance thereof (a "Change").

12.1.1  As soon as possible, and in any event no later than fourteen (14) Days, extendable upon mutual agreement, Contractor shall prepare and furnish to Owner a written statement specifying the consequences of such Change on the Contract Price and on the Project Schedule, setting out in full details an estimate of the resulting cost or savings from such Change in the DRU, and proposed modification, as the case may be, in the schedule or in the estimated value of this Agreement. The mentioned written statement shall contemplate any requisite adjustment to the time for completion, any proposed modifications to this Agreement and/or any effect that such Change would imply to the DRU, the Works and/or on any other provisions of this Agreement. The Change shall be mutually agreed to by the Parties and set out in a Change Order in accordance with the following:

12.1.1.1. The adjustment to the Contract Price for any Change shall be calculated by Contractor based on cost plus fee (overhead, profit, insurance) in accordance with the Statement of Price Formation as presented in Contractor's original bid proposal. In case of new equipment, not referred to in the Statement of Price Formation, Contractor shall present three price quotations for Owner's analysis and decision. Each Change Order shall present a complete breakdown showing in details quantities, unit prices and taxes, taking into consideration any savings or costs not incurred by Contractor due to such Change, and shall be based on a lump sum fixed price.

12.1.1.2 The Project Schedule will only be adjusted in any Change Order to the extent that Contractor can demonstrate that the Change has affected the Project Schedule. If it is possible to maintain the Project Schedule by accelerating the performance of the Works, then Contractor shall propose such acceleration as an option for Owner, and give Owner the cost impact of performing the Works on an accelerated basis as opposed to the cost impact without acceleration. Contractor shall use its best efforts to minimize the impact of any Change on the Project Schedule.

12.1.2  If Owner and Contractor reach agreement on all matters identified in the written statement furnished by Contractor under the terms of Section 12.1.1 above, then Owner shall approve a Change Order giving effect thereto. Such Change Order shall contain full particulars of the modifications, any adjustments of the Contract Price and/or the Project Schedule and all other modifications to this Agreement, and shall be signed by Owner and by Contractor. The Change identified in such Change Order shall thereupon be deemed to form part of the Works and to be an amendment to this Agreement, and shall be subject to all of Contractor's obligations under this Agreement. Upon receipt of a Change Order, Contractor shall be obligated to perform the Works as changed by Owner without deficiency or delay. Any Change shall only be executed after approval of the Change Order by Owner.

12.1.3  Owner will have fourteen (14) Days to approve a Change Order submitted to it by Contractor. If Owner does not so approve within such fourteen (14) Day period, Owner shall be deemed to have rejected such Change Order, and the Change Order shall not be implemented.

Confidential                                                                          KEPPEL00490741

12.2    Imputed Change. If Contractor reasonably believes that any action, directive, order, or other communication of or from Owner constitutes a Change but is not formally identified as such, Contractor shall so inform Owner in writing as soon as possible and not later than fifteen (15) Days after receipt of such action, directive, order or other communication, and prior to performing the corresponding tasks. After such notice, within fifteen (15) Days or other period of time to be agreed between the Parties, Contractor shall provide Owner with a detailed estimated cost and other consequences of the alleged Change, in accordance with the requirements of Sections 12.1.1.1 and 12.1.1.2.

12.3    Changes Caused by Owner Delays. As soon as possible, and in any event no later than ten (10) Days after the occurrence of the applicable event, Contractor shall give notice to Owner of any Owner Delay which may impact on the Contract Price or the Project Schedule. Such notice shall specify the estimated effect on the Contract Price and/or Project Schedule and include the other details required pursuant to Section 12.1.1.1 and Section 12.1.1.2. In the event that it is impossible to estimate the impact on the Contract Price or the Project Schedule at the time such notice is delivered, Contractor shall provide Owner with periodic supplemental notices during the period over which the event continues. Such supplemental notices shall be intended to keep Owner informed of any change, development, progress or other relevant information concerning the event of which Contractor is aware.

12.4    Procedures for Negotiation of Change Orders. If either Party believes it is entitled to an adjustment in the Contract Price and/or the Project Schedule as a result of a Change or a Owner Delay, then Owner and Contractor shall use reasonable efforts to negotiate the terms of the Change Order, and if requested by either Party in writing, the Parties shall meet to determine whether a Change Order is appropriate or the extent of the adjustment.

12.5    Unsuccessful Negotiation of Change Orders. If the Parties are unable to agree on the terms of a Change Order, then Owner may elect in writing to have the Change performed on a time and materials basis in accordance with Section 12.5.1 and Section 12.5.2 with the consequences on the Project Schedule and Contract Price to be determined prior to Substantial Completion. In such case, the Parties shall enter into a Change Order, which states that any modification in the Contract Price and/or Project Schedule will be determined after completion of the Works as changed. If the Parties cannot agree on the amount of any adjustment after application of the procedures contained in this Article 12, then the issue shall be resolved under the procedures set forth in Article 24. Pending resolution of the dispute, Contractor shall perform the Works as directed by Owner on a time and material basis as set out in the Statement of Price Formation. Failure to so perform the Works shall constitute a Default.

12.5.1  If a Change Order is performed on a time and materials basis pursuant to Section 12.5, then the Contract Price shall be adjusted by an amount equal to the increase or decrease in Contractor's cost of performing the Works that was affected by the Change or Owner Delay, as provided in Section 12.5.2, on an open book basis. Contractor shall use its best efforts to minimize such costs, and shall provide Owner with options whenever possible for reducing costs. Contractor shall maintain proper and detailed documentation of all such costs and shall provide such documentation and other information reasonably requested by Owner to substantiate any adjustment. Documentation shall include invoices and timesheets, which specifically identify that such amounts relate to changed Works or Owner Delay. To the extent that Contractor has not properly documented such costs, such costs shall not be recoverable from Owner hereunder.

12.5.2  For any adjustments to the Project Schedule or the Contract Price, the requirements of the Sections 12.1.1.1 and 12.1.1.2 shall be considered.

12.6    Rules. If Contractor reasonably believes that a change in the rules set by a relevant coastal or

Confidential

KEPPEL00490742